USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In Re:                                                  :     **REPORT AND**
                                                              **RECOMMENDATION**
    TERRORIST ATTACKS                       :     **TO THE HONORABLE**
    ON SEPTEMBER 11, 2001                          **GEORGE B. DANIELS**
                                                        :
                                                              03 MDL 1570 (GBD) (FM)
----------------------------------------------------------x

This document relates to:

Ashton v. al Qaeda Islamic Army, 02cv6977 (GBD) (FM) ("Ashton"),
and Federal Insurance Co. v. al Qaida, 03cv6978 (GBD) (FM) ("Federal Insurance").

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

       The plaintiffs in Ashton ("Ashton Plaintiffs"), and the AXA, Chubb, Munich Re America ("MRAm"), and OneBeacon plaintiffs in Federal Insurance ("Federal Insurance Plaintiffs," and, together with the Ashton Plaintiffs, "Plaintiffs"), seek the entry of default judgments awarding them damages against the Republic of Iran ("Iran"). For the reasons set forth below, I recommend that the Ashton Plaintiffs be awarded a default judgment against Iran in the amount of $7,556,880,000, and that the Federal Insurance Plaintiffs be awarded a default judgment against Iran in the amount of $3,040,998,426.03. To the extent that the Plaintiffs' claims arise out of injuries in New York State, they should be awarded prejudgment interest at the statutory simple interest rate of nine percent per annum from September 11, 2001, through the date judgment is entered. To the extent that the Plaintiffs' claims arise out of injuries occurring elsewhere,

they should be awarded interest for the same period at the rate of 4.96 percent per annum, compounded annually if Your Honor deems that appropriate.

II.    Discussion

    A.    Compensatory and Punitive Damages

On August 31, 2015, Your Honor entered "Order[s] of Judgment" granting the Plaintiffs' motions for default judgments against Iran. (ECF Nos. 3020, 3021). Both orders referred to me any remaining issues regarding Iran, including compensatory and punitive damages. The damages issues referred are virtually identical to those that I addressed in connection with prior motions seeking the determinations of damages in Federal Insurance and another action in this multi-district litigation, Havlish v. bin Laden, 03cv9848 (GBD) (FM) ("Havlish"). My Reports and Recommendations in those actions, (ECF Nos. 2479 ("Federal Insurance Report"), 2618 ("Havlish Report")), are incorporated herein by reference. I will discuss those Reports and Recommendations only to the extent necessary to explain the bases for the awards I am now recommending.

    1.    Ashton Plaintiffs

Havlish is a suit brought by the estates of victims who died at the World Trade Center and the Pentagon as a result of the terrorist attacks on September 11, 2001, ("9/11 Attacks"), and by members of the decedents' families suing in their own right. Insofar as relevant, the Havlish Report concluded that the estates should each recover from Iran and other defendants the sum of $2 million for their decedents' conscious pain

2

and suffering, and that these awards should be multiplied by 3.44 to determine punitive damages. (See Havlish Report at 9, 13).

Much like Havlish, Ashton is a suit brought against Iran and other defendants by the estates of persons who either were on flights that crashed or were present at the World Trade Center and the Pentagon during the 9/11 Attacks. For the reasons set forth previously in the Havlish Report, the 851 Ashton Plaintiffs, (see ECF No. 3135), should each be awarded $2 million for their decedents' conscious pain and suffering, plus an additional $6.88 million in punitive damages, for a total of $8.88 million per estate. This would result in the entry of a judgment against Iran in Ashton in the amount of $7,556,880,000.[1]

    2.    Federal Insurance Plaintiffs

Federal Insurance is a suit brought by insurance carriers that made payments in response to property damage, business interruption, and other claims arising out of the 9/11 Attacks. In that case, I previously recommended that the Federal Insurance Plaintiffs, and a fifth carrier, TIG Insurance Company, be awarded damages against al Qaeda that corresponded to treble their out-of-pocket costs. (See Federal Insurance Report).[2]

---

[1] In their motion, the Ashton Plaintiffs seek only partial judgment for their decedents' conscious pain and suffering. (See ECF No. 3123 ("Ashton Mem.") at 7). Accordingly, they may wish to move in the future to recover any additional damages to which they may be entitled.

[2] TIG Insurance Company is not seeking a damages award against Iran at this
(continued...)

There is a difference between the Federal Insurance Plaintiffs' prior application and the one presently before the Court. Previously, the Federal Insurance Plaintiffs sought to pursue subrogation claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, et seq. ("ATA"). (See id. at 1). The ATA permits any United States national injured in its business or property by an act of international terrorism to recover treble its damages, plus the cost of its suit, including attorneys' fees. 18 U.S.C. § 2333(a). The Federal Insurance Plaintiffs now seek an award against Iran under a different statute, 28 U.S.C. § 1605A, which abrogates the immunity of state sponsors of terrorism. (See Fed. Ins. Mem. at 1-2). Similar to the ATA, section 1605A provides that United States nationals may recover damages for loss of "property" resulting from terrorist acts. 28 U.S.C. § 1605A(a), (d). As the Federal Insurance Report establishes, the Federal Insurance policyholders clearly suffered such losses, for which they have been compensated, thereby entitling the Federal Insurance Plaintiffs to be subrogated. (Federal Insurance Report at 3, 5). Indeed, section 1605A expressly authorizes a court to award damages for "loss claims under . . . property insurance policies, by reason of" terrorist acts. 28 U.S.C. § 1605A(d).

Unlike the ATA, section 1605A(d) does not, by it terms, authorize an award of punitive damages. Although section 1605A(c), relating to personal injury and death

---

[2](...continued)
juncture because it made additional payments to its insureds after entry of the prior judgment and wishes to compile that data to ensure that its eventual application reflects its total expenditures. (See ECF No. 3125 ("Fed. Ins. Mem.") at 3 n.2).

4

claims, authorizes the award of "economic damages, solatium, pain and suffering, and punitive damages," id. at § (c), plaintiffs moving under section 1605A(d), as here, may only seek damages for "reasonably foreseeable property loss," id. at § (d). Accordingly, the Federal Insurance Plaintiffs are entitled only to compensatory damages. Cf. Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya, 811 F. Supp. 2d 53, 74-75 (D.D.C. 2011) (awarding plaintiffs only their net out-of-pocket costs).

      In an effort to avoid this conclusion, the Federal Insurance Plaintiffs maintain that the "remedies applicable to actions [under both sections] are identical." (Fed. Ins. Mem. at 9 n.6). They therefore contend that punitive damage awards are authorized under section 1605A(d). Id. The Federal Insurance Plaintiffs cite no authority in support of this assertion, see id., nor is the Court aware of any. Their reading of section 1605A also is inconsistent with the structure and express language of the Act. Had Congress intended for claims under both sections to have identical remedies, it could have combined both causes of action into a single provision, as in the ATA. See 18 U.S.C. § 2333 ("Any national . . . injured in his or her person, property, or business by reason of an act of international terrorism . . . shall recover threefold the damages he or she sustains.") (emphasis added). Instead, Congress created two sections and made actions under section 1605A(d) derivative of those arising under section 1605A(c). See 28 U.S.C. § 1605A(d) ("After an action has been brought under [section 1605A(c)], actions may also be brought [under section 1605A(d)].").

Congress thus appears to have subordinated property claims to personal injury and death actions. Consequently, there is no justification for interpreting the Act as making available under section 1605A(d) all remedies authorized under section 1605A(c). The language of the Act also makes clear that the remedies under both sections cannot be "identical." Section 1605A(c), for example, authorizes the awarding of damages for "solatium" and "pain and suffering," both of which are irrelevant to property claims.

In sum, because section 1605A(d) is, at best, silent with regard to punitive damages, the Court cannot reasonably assume that Congress intended for there to be punitive damage awards in cases involving property loss. Indeed, it appears that Congress wished to treat property damage and subrogation cases differently than personal injury and wrongful death claims since it expressly provided for punitive damages only in subsection (c).

Accordingly, the damages that the Federal Insurance Plaintiffs are entitled to recover in this action are the same as the compensatory damages I previously recommended in the Federal Insurance Report. There, I determined that the amounts of compensatory damages the Federal Insurance Plaintiffs should receive are as follows:

| CARRIER | AMOUNT |
|---|---|
| AXA | $539,784,217.34 |
| Chubb | 2,217,468,721.70 |
| MRAm | 107,230,501.59 |
| OneBeacon | 176,514,985.40 |
| Total | $3,040,998,426.03 |

Federal Insurance Report at 8.[3] A more detailed analysis of the amount that each of the Federal Insurance Plaintiffs' constituent companies is entitled to is set forth in their memorandum of law. (See Fed. Ins. Mem. at 4-5).

    B.    Prejudgment Interest

Pursuant to sections 5001 and 5004 of the New York Civil Practice Law and Rules ("CPLR"), the Plaintiffs seek prejudgment interest at the nine percent rate applicable to property damage and wrongful death claims under New York law ("New York Rate"), reasoning that their claims against Iran arise under both state and federal law. (See Ashton Mem. at 11-12 (citing In re Sept. 11 Litig., 802 F.3d 314, 343 (2d Cir. 2015)), Fed. Ins. Mem. at 12 (citing Worley v. Islamic Republic of Iran, 75 F. Supp. 3d 311, 332 n.6 (D.D.C. 2014))). The Federal Insurance Plaintiffs further maintain that such interest should be compounded annually. (Fed. Ins. Mem. at 13) (citing cases arising under federal law).

---

[3]     I have amended typographical errors contained in the compensatory damage calculations in the Federal Insurance Report. Those errors did not impact the final judgment I recommended.

The most compelling argument for application of the New York Rate is the recent decision of the Second Circuit in In re September 11 Litigation. There, the Second Circuit held that lessees of World Trade Center properties that had prevailed on claims against airlines and related entities under the Air Transportation Safety and System Stabilization Act of 2001, 49 U.S.C. § 40101 ("ATSSSA"), were entitled to recover prejudgment interest at the New York Rate because the ATSSSA directs courts to apply the law of the state where the injury occurred. 802 F.3d at 321, 325, 343. Citing the decision of the District of Columbia in Worley, the Federal Insurance Plaintiffs note that their "claims against Iran under §1605A arise under both federal common law and state law, including in particular New York law." (Fed. Ins. Mem. at 12). They also concede, however, that certain of the injuries for which they seek to recover occurred outside New York State. (See id. at n.8).

To the extent that the Plaintiffs' claims arise out of losses in New York State, they are entitled to recover prejudgment interest at the New York Rate. Contrary to their suggestion, however, awards under that statute must provide for simple, not compounded, interest. See, e.g., Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998) ("[W]e hold that under New York law the district court should have awarded prejudgment interest calculated at the simple statutory rate of nine percent."); Long Playing Sessions, Inc. v. Deluxe Labs., Inc., 514 N.Y.S.2d 737, 738 (1st Dep't 1987) ("CPLR 5001 provides the statutory warrant for the payment of interest in such a case,

8

and CPLR 5004 provides for a 9% rate per annum. Thus, any judgment entered herein must provide for the payment of interest at the statutory simple annual rate.").

The prejudgment interest rate to be applied to any of the Plaintiffs' claims not arising under New York law is a matter of discretion. See generally Gierlinger v. Gleason, 160 F.3d 858, 873 (2d Cir. 1998). In Havlish, based upon the report of an expert, I recommended that the Court award interest based on the 4.96 percent average prime rate published by the Federal Reserve Board during the period from September 11, 2001, through January 1, 2013. (See Havlish Report at 13-14 (citing ECF No. 2554-10)). Although that average interest rate could be recalculated to account for the passage of additional time, I recommend for the sake of consistency that this same 4.96 percent rate be applied to any non-New York claims that are the subject of this Report and Recommendation. These non-New York claims are not subject to a statutory prohibition against compound interest. Accordingly, Your Honor may wish to provide that interest on the non-New York claims be compounded annually.

III. Conclusion

For the reasons set forth above, the Ashton Plaintiffs should be awarded a default judgment against Iran in the amount of $7,556,880,000, and the Federal Insurance Plaintiffs should be awarded a default judgment against Iran in the amount of $3,040,998,426.03. To the extent that the Plaintiffs' claims arise out of injuries in New York State, they should be awarded prejudgment interest at the statutory simple interest rate of nine percent per annum from September 1, 2001, through the date judgment is

entered. To the extent that their claims arise out of injuries occurring elsewhere, they should be awarded interest for the same period at the rate of 4.96 percent per annum, compounded annually should Your Honor deem that appropriate.

IV.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, to my chambers at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file timely objections will result in a waiver of those

objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

        SO ORDERED.

Dated:       New York, New York
               December 28, 2015

_____
FRANK MAAS
United States Magistrate Judge

Copies to all counsel via ECF