USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-1570 (GBD)(SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

On December 4, 2017, the Plaintiffs' Executive Committees ("PECs") filed a motion to compel Defendant Yassin Abdullah Al Kadi to produce additional documents and a revised privilege log. ECF Nos. 3823, 3830. The motion to compel is GRANTED in part and DENIED in part.

## BACKGROUND

The PECs allege that Kadi "co-founded the Muwafaq Foundation with Khaled Bin Mahfouz for the purpose of serv[ing] as a vehicle for funding and otherwise supporting terrorist organizations, including al Qaida." In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 669 (2d Cir. 2013) (alteration in original) (internal quotation marks omitted). In October 2001, "Kadi was designated as a Specially Designated Global Terrorist." Id. at 670. But he was subsequently de-listed by the United States, the United Kingdom, the European Union, and the United Nations. ECF Nos. 3877-22, 3879-1, 3879-2, 3879-3.

In April 2013, the U.S. Court of Appeals for the Second Circuit vacated the District Court's decision dismissing Plaintiffs' claims against Kadi and remanded the case "for the prompt commencement of a course of judicially-supervised jurisdictional discovery." In re Terrorist Attacks, 714 F.3d at 682. Later that year, the PECs served their first set of jurisdictional document requests. ECF No. 3877-1. Kadi subsequently asserted objections to some of the

PECs' document requests and produced more than 104,000 pages of documents on a rolling basis between November 2013 and December 2014. ECF No. 3877 ¶ 5; ECF No. 3877-2. On December 15, 2014, Kadi sent the PECs a disk containing his "fifth and final document production." ECF No. 3831-1. A few days later, on December 19, 2014, Kadi's counsel sent the PECs a letter enclosing a privilege log and listing the requests with respect to which Kadi objected and had withheld responsive documents. ECF No. 3877-3.

On May 6, 2015, the PECs sent Kadi a letter that raised various inadequacies in his production and enclosed a second set of document requests. ECF Nos. 3831-2, 3877-4. Kadi and his counsel later produced approximately 171,000 additional pages of documents. ECF No. 3876 at 2–3. According to Kadi, at that point in the discovery process, he produced documents that he had previously withheld based on objections to the PECs' document requests and only withheld documents on the basis of privilege and two other categories of objections that the parties apparently do not contest. Id. Kadi claims that his "decision subsequently to produce all documents in [his] possession, custody or control without regard to [the previously asserted] objections was an effort to avoid litigation about them." Id. at 3.

Nevertheless, on December 4, 2017, the PECs filed a motion to compel Kadi to produce additional documents and a revised privilege log. ECF No. 3830. The PECs state that "Kadi claims, once again, that he has produced all responsive documents, save for the 277 documents listed on a privilege log and similar redactions made to approximately 429 other documents created before September 11, 2001." ECF No. 3831 at 2. But "[b]ased on the circumstances and characterizations of missing documents, Plaintiffs contend that documents that clearly existed at some point in time are missing from Kadi's productions." Id. "The PECs also take issue with

some of the documents that Kadi withheld in whole or in part (i.e., Kadi's redactions to some of the documents) based on his assertion of privilege." Id.

## DISCUSSION

### I. Document Production

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A party may serve on any other party a request" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "The responding party must produce documents sought in each request or 'state an objection to the request, including the reasons.'" Pegoraro v. Marrero, 281 F.R.D. 122, 132 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 34(b)(2)). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B).

#### A. Rowad Development and Investment Company

First, the PECs argue that there must be more documents that Kadi has not yet produced regarding Rowad Development and Investment Company ("Rowad"). ECF No. 3831 at 3–6. For the most part, the PECs have not pointed to any concrete evidence showing that Kadi possesses additional documents that he failed to produce. For example, the PECs believe that Kadi has copies of minutes of corporate meetings of Rowad's directors and shareholders, but they do not cite any evidence to suggest that any such minutes exist or that Kadi possesses copies of them. Id. at 6. Similarly, the PECs contend that Kadi must have access to communications between Rowad and the government of South Darfur. Id. The final report of Rowad's liquidation committee does indicate that Rowad communicated with the government of South Darfur leading

up to Rowad's liquidation. ECF No. 3831-5 at 123. But the report does not give any indication that Kadi was included in those communications. Id.

The liquidation committee's final report does reference two documents that are likely to be in Kadi's possession, custody, or control. The report mentions "a final report on [Rowad's] performance while working in South Darfur" and "a report to the Board on or before 15 February 1996." Id. Evidence in the record also demonstrates that two entities affiliated with Kadi, the Muwafaq Foundation and the Loxhall Corporation, held shares in Rowad, and that Muwafaq Foundation officials played an active role in administering Rowad. Id.; ECF No. 3831-5 at 113. In light of these ownership interests and the Muwafaq Foundation's involvement in Rowad, it seems likely that Kadi or one of the entities under his control has access to the report regarding Rowad's performance in South Darfur and the liquidation committee's 1996 report to Rowad's board of directors. Thus, within 30 days of this Opinion and Order, Kadi is ORDERED to search for and produce these two reports. If Kadi is unable to locate the reports, Kadi is ORDERED to produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail his efforts to locate and obtain copies of the reports.

### B. Records Regarding Other Entities

The PECs also ask the Court to compel Kadi to produce additional documents regarding three other entities with which Kadi was allegedly affiliated: Solano Limited; KA Stan; and Maram Travel Limited. ECF No. 3831 at 6–7, 11–14. But the PECs have not pointed to any concrete evidence suggesting that additional documents regarding these entities even exist. The PECs' mere speculation that "[t]here had to be more records" does not constitute grounds for granting a motion to compel. See Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A., No. 99-CV-1330 (AGS), 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000) (noting that "the Court cannot

compel production of what does not exist"). Moreover, Kadi has described the extensive efforts his counsel took to gather relevant documents and produce them to the PECs. ECF No. 3876 at 3–4. "[W]hen counsel represent that they have conducted a reasonable search and have not uncovered all requested documents, it is up to the requesting party to show that the search was inadequate." Gary Friedrich Enters. v. Marvel Enters., No. 08-CV-1533 (BSJ)(JCF), 2011 WL 2623458, at *1 (S.D.N.Y. June 21, 2011). The PECs have proffered no evidence suggesting that the steps Kadi took to search for documents were insufficient. Thus, the PECs' motion to compel Kadi to produce additional documents relating to Solano Limited, KA Stan, and Maram Travel Limited is DENIED. If the PECs wish to obtain additional information about these entities, they may ask Kadi about them during his deposition.

### C. Saudi Arabia's Investigations of Kadi

Following Kadi's designation as a supporter of terrorism shortly after September 11, 2001, Kadi's counsel wrote to various offices and officials of the Kingdom of Saudi Arabia seeking their assistance in having him de-listed. ECF No. 3831-5 at 64–97. The PECs note that Kadi has produced several letters from Kadi's counsel to Saudi officials as well as a letter from the Saudi Arabian Monetary Authority indicating that it found no connections between Kadi and terror financing. ECF No. 3831 at 8. The PECs complain that no other documents relating to the Saudi government's investigations have been produced. Id. Thus, the PECs ask the Court to compel Kadi to produce a long list of additional documents relating to Saudi Arabia's investigations of Kadi. ECF No. 3831 at 8–11.

For many of these documents, the PECs cite the wrong pages of their own submission in support or reference material that does not appear on the cited pages. For example, the PECs discuss "a file" supposedly referenced in correspondence that Kadi sent to the Saudi Arabian

5

Monetary Authority. ECF No. 3831 at 9. But the page the PECs cite for this correspondence does not appear to be included in the PECs' submission. Although Kadi seeks to direct the Court to the appropriate page in the record, see ECF No. 3876 at 8 n.9, it seems that the PECs have failed to include an English translation of that page in their submission, see ECF No. 3831-6 at 24.

Despite these shortcomings in the PECs' submission, however, the Court has painstakingly sorted through the PECs' citations to look for any evidence demonstrating that the documents the PECs have requested actually exist. The PECs have offered sufficient evidence to suggest that the following documents exist:

1. Royal Orders of July 18, 2003, and August 15, 2004, see ECF No. 3831-5 at 76;

2. A Statement of Claim that Kadi filed under No. 429/Q/804 on 18/8/1425 AH, see ECF No. 3831-6 at 28;

3. Two files that Kadi submitted to the Foreign Ministry on 16/7/1423 AH, see id. at 34;

4. An Arabic translation of Kadi's files that was apparently submitted on 2/7/1423 AH, see id.;

5. The first report by the Permanent Counter-Terrorism Committee ("PCTC") to the Supreme Authority on 15/6/1423 AH, see id.;

6. A High Order, dated 25/7/1423 AH, approving the recommendation of the Foreign Ministry adopted by the PCTC, see id.;

7. A referral to the PCTC on 2/8/1423 AH, see id.;

8. A referral by the Supreme Counter-Terrorism Committee ("SCTC") on 1/1/1424 AH, with a recommendation to support Kadi's case, see id.;

9. A High Order, dated 9/5/1424 AH, endorsing the SCTC's recommendation, see id. at 36;

10. A High Order, dated 11/4/1425 AH, requiring the SCTC to examine a request from Kadi, see id.; and

11. A High Order, dated 29/6/1425 AH, endorsing the recommendation of the PCTC to support Kadi's request to deduct an amount from his frozen accounts to cover the expenses of his case, see id.

These documents relate to a government investigation that was commenced on Kadi's behalf based upon requests that he filed with the Saudi government. Some of the documents were even prepared and submitted by Kadi's legal team. Therefore, it seems likely that Kadi's counsel possessed these documents or received copies of the documents in connection with the Saudi government's investigation. Kadi contends that he does not have access to these documents because "the Kingdom of Saudi Arabia is not forthcoming with documents." ECF No. 3876 at 8. But the Kingdom of Saudi Arabia is a codefendant in this matter and is currently engaging in jurisdictional discovery on a parallel track. Thus, to the extent that Kadi and his counsel do not possess copies of these documents, Kadi should immediately contact his codefendant and seek assistance in obtaining them. Within 30 days of this Opinion and Order, Kadi is ORDERED to search his records and his counsel's records and request any documents that are in the custody of the Kingdom of Saudi Arabia and produce the 11 documents listed above. If he is unable to produce all of the 11 listed documents, Kadi is ORDERED to produce a sworn declaration in accordance with 28 U.S.C. § 1746 describing in detail his efforts to locate and obtain the documents.

With respect to the various other documents the PECs seek, the PECs have not provided adequate evidence to suggest that the documents actually exist and are within Kadi's possession, custody, or control. For example, the PECs contend that Kadi should produce additional records relating to Saudi Arabia's "investigation of Kadi, leading to the freezing of his assets and maintaining the freezing of his assets." ECF No. 3831 at 8. But the PECs do not offer any evidence to show that such documents were ever generated or that Kadi had access to them. The PECs also list several telegrams and other correspondence between the Saudi Foreign Ministry, the Saudi Embassy in Washington, D.C., the Saudi delegation in New York, the Saudi Prime

Minister's Office, the Saudi Minister of Interior, and the U.S. Embassy in Riyadh. Id. at 10–11; see also ECF No. 3831-6 at 36, 38. The Court is not convinced that Kadi ever had access to these diplomatic communications and will not compel Kadi to produce them. Finally, in his opposition brief, Kadi states that he previously produced certain documents that the PECs listed as deficient in their motion to compel. ECF No. 3876 at 8–9. The PECs' reply brief does not refute that these documents have been produced. Therefore, apart from the 11 documents listed above, the Court is satisfied that Kadi searched for and produced all documents within his possession, custody, or control. Kadi is not required to search for and produce any other documents relating to Saudi Arabia's investigation of Kadi.

## II. Privilege Log

The PECs argue that a significant number of entries in Kadi's privilege log "appear to be communications about business matters . . . that do not appear to request or contain legal advice." ECF No. 3831 at 16. The PECs also contend that Kadi has waived the attorney-client privilege with respect to certain documents "created by, sent to or shared with third parties." Id. Thus, the PECs ask that the Court order Kadi to "provide a privilege log that properly evidences, as to each communication, that the communication was for legal advice and that the document contained legal questions or provided legal advice, rather than routine personal or business information and that an applicable privilege has not been waived by disclosure to a third party." Id. at 17. The PECs also ask the Court to order Kadi to produce any documents with respect to which the attorney-client privilege has been waived. Id.

### A. Work Product Immunity

Work product immunity "shields materials prepared in anticipation of litigation or for trial." ACLU v. U.S. Dep't of Justice, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015) (quoting Tax

Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997)); accord Fed. R. Civ. P. 26(b)(3). Three requirements must be met for work product protection to apply: "The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." SEC v. Yorkville Advisors, LLC, 300 F.R.D. 152, 159 (S.D.N.Y. 2014) (quoting In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)). A document does not need to be produced when it "can fairly be said to have been prepared . . . *because of* the prospect of litigation." United States v. Adlman, 134 F.3d 1194, 1203–04 (2d Cir. 1998) (emphasis added) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (3d ed. 1994)). But the work-product doctrine does not protect "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. at 1202.

### B. Attorney-Client Privilege

Attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). The attorney-client privilege "is triggered only by a client's request for legal, as contrasted with business advice." In re Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984). "[I]f the lawyer is serving as a business representative of his client, those functions that he performs purely in that capacity—such as negotiation of the provisions of a business contract or relationship—are not the source of a privilege." TVT Records v. Island Def Jam Music Grp., 214 F.R.D. 143, 147 (S.D.N.Y. 2003) (quoting Note Funding Corp. v. Bobian Inv. Co., No. 93 Civ. 7427, 1995 WL 662402, at *3 (S.D.N.Y. Nov. 9, 1995)).

In addition, "[t]he attorney-client privilege is not absolute . . . and may be waived through, among other things, the voluntary disclosure of a privileged communication to a third party, especially a litigation adversary." Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, 03-CV-5560 (RMB)(HBP), 2007 WL 1837133, at *2 (S.D.N.Y. June 27, 2007) (collecting cases). But confidential information provided by a client to an attorney's agent or contractor "at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989). This extension of the privilege from an attorney to the attorney's agent "has always been a cabined one." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011). It applies only to "communications between a client and an attorney" when those communications are mediated through a third party agent. United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999). It does not apply to an attorney's communications with its agent or contractor, even those "that prove important to an attorney's legal advice to a client." Id.

Courts have also recognized the necessity of corporate employees discussing advice received by one agent of the corporation. "Therefore, although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege." Strougo v. BEA Associates, 199 F.R.D. 515, 519–20 (S.D.N.Y. 2001); accord Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc., 06-CV-7785 (PKC), 2007 WL 1573913, at *2 (S.D.N.Y. May 24, 2007) ("The distribution of attorney communications between or among senior officers of a corporation who have a need to know the information also does not vitiate the privilege."); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 442

(S.D.N.Y. 1995) ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.").

### C. Privilege Log Descriptions

When a party withholds documents on the basis of privilege, Federal Rule of Civil Procedure 26(b)(5)(A) requires the party to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Likewise, Local Civil Rule 26.2(a)(1) requires a party asserting that a document is privileged to "identify the nature of the privilege (including work product) which is being claimed." The local rule also requires the party asserting the privilege to provide:

> (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . . .

Local Civil Rule 26.2(a)(2)(A).

Without reviewing the documents that Kadi has withheld as privileged, the Court cannot effectively assess whether the descriptions in Kadi's privilege log adequately describe the documents or whether Kadi has withheld only those documents that are privileged. Moreover, the Court is not convinced that the parties engaged in a meaningful meet-and-confer process regarding Kadi's privilege log before raising these issues with the Court. Accordingly, within 30 days of this Opinion and Order, the parties are directed to meet and confer and make good faith efforts to resolve the disputes regarding Kadi's privilege log. The parties should discuss specific privilege log entries, rather than dealing in generalities. The parties should also be mindful of the governing law that the Court has summarized above. Kadi should revise his privilege log if the parties determine that greater clarity is necessary. If the parties are unable to reach an amicable

resolution, the PECs may file a letter motion requesting an *in camera* review of no more than 10 exemplars.

## III.    Attorneys' Fees

Finally, in their motion to compel, the PECs briefly request that the Court order Kadi to "pay for the reasonable attorneys' fees for bringing this motion." ECF No. 3831 at 17. In their reply brief, however, the PECs state that they "have not and do not seek attorneys' fees and costs for bringing this good faith motion." ECF No. 3897 at 10. Accordingly, the Court considers the PECs' request for attorneys' fees withdrawn.

In addition, Kadi asks the Court to order the PECs to pay the attorneys' fees and expenses that he incurred in responding to the PECs' purportedly "frivolous motion." ECF No. 3876 at 18–19. Federal Rule of Civil Procedure 37(a)(5)(B) provides that when a motion to compel is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Here, the PECs' motion to compel has been granted in part. Therefore, the Court will not order the PECs to pay the attorneys' fees and costs that Kadi incurred in connection with the motion to compel.

## CONCLUSION

For the foregoing reasons, the PECs' motion to compel is GRANTED in part and DENIED in part. Within 30 days of the date of this Opinion and Order, Kadi is ORDERED to search for and produce the two reports discussed above that were prepared in anticipation of Rowad's liquidation and the 11 documents discussed above regarding Saudi Arabia's investigations of Kadi. If he is unable to locate or obtain all of these reports and documents, Kadi is ORDERED to produce a sworn declaration within 30 days of the date of this Opinion and

Order that describes in detail his efforts to locate the reports and documents. Kadi is not required to produce any other documents at this time. In addition, within 30 days of this Opinion and Order, the parties are directed to meet and confer and make good faith efforts to resolve the disputes regarding Kadi's privilege log. Finally, the PECs' request for attorneys' fees is treated as withdrawn, and Kadi's request for attorneys' fees is DENIED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 3823, 3830 in the MDL and ECF No. 872 in 02-CV-6977.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:	August 27, 2018
	New York, New York