USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/30/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

-----------------------------------------------------------------X

03-MD-1570 (GBD)(SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge**:

On July 6, 2018, the Court issued an Opinion and Order imposing sanctions on Defendants Abdullah Bin Saleh Al-Obaid, Abdullah Mahsen Al-Turki, Adnan Basha, and Abdullah Omar Naseef (collectively, the "Charity Officials"). ECF No. 4043. On July 20, 2018, the Charity Officials filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b). ECF No. 4064. The Charity Officials' motion for reconsideration is DENIED.

## BACKGROUND

On August 22, 2013, the Plaintiffs' Executive Committees ("PECs") served the Charity Officials with jurisdictional discovery request, which sought, among other things, the Charity Officials' passports. ECF Nos. 3750-4, 3750-5, 3750-6, 3750-7. During a conference on March 22, 2016, after the Charity Officials argued that they had substantially complied with their jurisdictional discovery obligations, the Court ordered each of the Charity Officials to produce "a sworn or affirmed certification" stating that "they have produced all documents responsive to the requests." ECF No. 3253 at 85:12–19. In June 2017, the Charity Officials sent the PECs indexes identifying documents that the Charity Officials believed were responsive to the PECs' document requests. ECF No. 3750-9 at 1. But counsel explained that because the Charity Officials "travelled on official passports, which the government retained after each trip, they do not have personal possession of those passports." Id.

On September 7, 2017, the parties again appeared before the Court and discussed the outstanding document requests. ECF No. 3725. Addressing defense counsel, the Court stated, "I don't understand why your clients can't obtain . . . certified cop[ies] of their passports from the relevant government entit[ies]." Id. at 11:7–9. In response, counsel merely stated, "Our client inquired about that, and we have not been successful so far." Id. at 11:12–14. The Court then ordered each Charity Official to produce "certified copies of both the official passport [used for government travel] and any personal passport." Id. at 12:25–13:1. The Court explained, "You've been ordered to produce these documents. You failed to do so. . . . I'll give you time to have one last opportunity to cure, to produce these documents, but . . . if they aren't produced within the next 30 days, I am going to invite a sanctions motion from the Plaintiffs' Executive Committee[s]." Id. at 11:17–24.

Following the conference, Al-Obaid and Basha produced certifications attesting that they no longer had copies of their passports. ECF No. 3750-14; ECF No. 3764 Attach. J. None of the four Charity Officials obtained or produced copies of their passports in accordance with the Court's orders. Accordingly, on October 6, 2017, the PECs filed a motion requesting that the Court impose sanctions on the Charity Officials pursuant to Federal Rule of Civil Procedure 37(b) for failing to comply with the Court's prior orders. ECF No. 3748.

On July 6, 2018, the Court issued an Opinion and Order granting in part and denying in part the PECs' motion for sanctions. ECF No. 4043. The Court explained that it was "highly skeptical of the suggestion that Al-Obaid, Al-Turki, Basha, and Naseef are entirely unable to obtain copies of the passports, especially in light of the fact that [another similarly situated codefendant] has already produced copies of his passports." Id. at 13. Although the Court acknowledged that the Charity Officials had recently sent "a formal written request to the Saudi

government," the Court ultimately concluded that these four Charity Officials had not made "adequate endeavors to obtain copies of their passports." ECF No. 12–14. The Court noted that it had "given the Charity Officials several years to submit requests to the relevant government agencies and go through the processes necessary to obtain certified copies." Id. at 13. Moreover, the Court pointed out that the Charity Officials "could have contacted their codefendant," the Kingdom of Saudi Arabia, "and sought assistance in obtaining copies of the passports that the Court ordered them to produce." Id. But despite being given many opportunities to seek assistance from the Kingdom of Saudi Arabia, the Charity Officials had failed to produce the passports and had given "no explanation for the Saudi government's refusal to provide copies of the passports." Id. Accordingly, the Court precluded the Charity Officials from offering any evidence, other than evidence they had already produced, "to rebut admissible evidence offered by a party to establish these defendants' whereabouts on a particular date." Id.

On July 20, 2018, the Charity Officials filed a motion for reconsideration. ECF No. 4064. According to the motion, at some point after they filed their opposition to the PECs' motion for sanctions, the Charity Officials apparently learned that the Saudi government does not "retain or archive expired passports as a matter of policy and did not maintain any passports in the date range." Id. at 1. Thus, the Charity Officials argue that "this matter has been clarified and the documents that Plaintiffs have been seeking simply do not exist, either with the Saudi Government or with the Charity Officials." Id. at 2. The Charity Officials also contend that the Court "made a mistake of fact when it assumed that these Defendants had made no effort to obtain their passports from the Saudi government." Id. at 3. The Charity Officials note that they "had, in fact, contacted the Saudi government for the defendants' passports, contrary to the Court's mistaken assumption that the Defendants had not done so." Id. at 4. Finally, the Charity

Officials argue that "the sanction of precluding the Charity Officials from presenting evidence to rebut Plaintiffs' assertions as to their whereabouts is a harsh sanction that is incommensurate with their conduct." ECF No. 4064 at 6. Therefore, the Charity Officials ask the Court to reconsider the portion of its Opinion and Order that granted the sanction of preclusion. Id. at 1.

**DISCUSSION**

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Because the Court's July 6, 2018 Opinion and Order did not adjudicate any of the parties' claims in this case, Rule 54(b) is inapplicable here. See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 339 n.47 (S.D.N.Y. 2012) (noting that Rule 54(b) governs any decision that "adjudicates some but not all of the claims at issue in the suit"). Nevertheless, the Court will consider the Charity Officials' motion for reconsideration under Local Civil Rule 6.3.[1] The Court further overrules the PEC's objection to the filing of the Charity Official Defendants' affidavits in the interest of justice.

"A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001);

---

[1] The PECs contend that "[t]he appropriate mechanism to challenge a magistrate judge's ruling on a pre-trial, nondispositive matter, including discovery sanctions, is Rule 72(a), not Rule 54(b)." ECF No. 4091 at 1. But magistrate judges can—and often do—consider motions for reconsideration with respect to their own discovery rulings. See, e.g., Sigmon v. Goldman Sachs Mortg. Co., 229 F. Supp. 3d 254, 256–57 (S.D.N.Y. 2017); see also Norex Petroleum Ltd. v. Access Indus., Inc., No. 02-CV-1499 (LTS)(KNF), 2003 WL 21872389, at *1 (S.D.N.Y. Aug. 7, 2003) (noting that "during the pendency of a motion for reconsideration before a magistrate judge, the time for filing an objection to the District Court is tolled").

accord In re Facebook, Inc., IPO Sec. & Derivative Litig., 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014), aff'd sub nom. Lowinger v. Morgan Stanley & Co., 841 F.3d 122 (2d Cir. 2016). The Court will deny a motion for reconsideration unless the moving party demonstrates an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." In re Facebook, 43 F. Supp. 3d at 373 (quoting Schoolcraft v. City of New York, 298 F.R.D. 134, 136 (S.D.N.Y. 2014)).

As an initial matter, when the Court decided the PECs' motion for sanctions, the Court was well aware that the Charity Officials had submitted a formal written request to the Saudi government in an attempt to obtain copies of their passports. ECF No. 4043 at 12–13. The Court specifically acknowledged this fact in its Opinion and Order. Id. In stating that the Charity Officials "could have contacted their codefendant," the Kingdom of Saudi Arabia, "and sought assistance in obtaining copies of the passports," id. at 13, the Court meant that the Charity Officials' counsel could have worked with counsel for their codefendant to obtain copies of the passports that their codefendant purportedly possessed.

The Charity Officials' eventual discovery that the Saudi government did not in fact retain copies of their passports is not an adequate ground for granting their motion for reconsideration. The PECs requested that the Charity Officials produce their passports in August 2013. Thus, the Charity Officials had more than four years to contact the relevant Saudi agencies and officials to obtain copies of their passports or information about the Saudi government's passport-retention practices. On September 7, 2017, the Court gave the Charity Officials one last chance to obtain copies of their passports from the Saudi government and warned that the Court would consider sanctions if the defendants did not comply within 30 days. But the Charity Officials waited until October 10, 2017—more than 30 days after the Court's order and a few days after the PECs filed

their motion to compel—to send their first formal written request to the Saudi government. ECF No. 4065 at 14. This delay in seeking the Saudi government's assistance undermines the Charity Officials' contention that they made good faith efforts to comply with their discovery obligations in a timely manner. If the Charity Officials had contacted the appropriate officials in the Saudi government earlier in the discovery process, they likely could have informed the Court—before it decided the motion for sanctions—that the Saudi government did not retain copies of the Charity Officials' passports.

Moreover, if the Charity Officials' attorneys were unfamiliar with the Saudi legal system and unable to communicate effectively with their clients and the appropriate Saudi officials, the attorneys should have promptly sought assistance from co-counsel with greater proficiency in the legal system and language. Yet defense counsel waited almost five years after the PECs served their discovery demands—and waited until after the Court imposed sanctions on the Charity Officials—to enlist the assistance of attorneys familiar with Saudi law who could communicate with the relevant individuals in Arabic. See ECF No. 4064 at 4–5. At this late stage in a lengthy discovery process, the Court is unsympathetic to complaints that defense counsel had difficulty communicating with their clients and others in Saudi Arabia. The Charity Officials have failed to demonstrate that the Court clearly erred in imposing the preemption sanction. This sanction is entirely just in light of the Charity Officials' failure to produce their passports or obtain credible information about the Saudi government's policies for many years after the PECs served the discovery requests, despite being given numerous opportunities to do so. Moreover, the Court's sanction is narrowly tailored to the misconduct: the Charity Officials are only precluded from relying on any evidence (should any exist) to rebut allegations regarding their travel that has not

produced before July 6, 2018, but they may rely on evidence produced during the years of discovery before that date. Thus, the Charity Officials' motion for reconsideration is DENIED.

Finally, in their opposition to the motion for reconsideration, the PECs ask the Court to "hold a hearing at which counsel who has long represented the Charity Official Defendants—Mr. [Alan] Kabat—be required to attend to answer inquiry about the period of time that he was not in contact with any Charity Official Defendant but nonetheless made representations specifically on their behalf." ECF No. 4091 at 9. In his recent declaration, Al-Turki states, "I was not aware until a few weeks ago that any attorney was trying to contact me or seek a declaration from me with respect to discovery." ECF No. 4065 at 7. Although he notes that he has "been informed that Mr. Kabat did try to make contact through intermediaries," Al-Turki states that he "had no contact by telephone or in person with any attorneys" since his departure from the Muslim World League in 2016 until July 9, 2018. Id. In addition, a declaration from Naseef's doctor indicates that Naseef has been almost entirely incapacitated for many months due to serious health problems and is unable to carry on conversations with his doctors and loved ones. ECF No. 4113. Nevertheless, it appears that Mr. Kabat made representations on behalf of Al-Turki and Naseef over the last year, even though he was unable to communicate with them. See ECF No. 4091 at 9–10. The Court will discuss this issue at the discovery conference that has been scheduled for October 12, 2018, at 11:00 a.m. in Courtroom 110, Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. Mr. Kabat, the Charity Officials' attorneys from Lewis Baach Kaufmann Middlemiss PLLC, and the appropriate representatives from the PECs are ORDERED to appear in person at that conference.

## CONCLUSION

For the foregoing reasons, the Charity Officials' motion for reconsideration is DENIED. In addition, Mr. Alan Kabat, the Charity Officials' attorneys from Lewis Baach Kaufmann Middlemiss PLLC, and the appropriate representatives from the PECs are ORDERED to appear in person at the discovery conference scheduled for October 12, 2018, at 11:00 a.m. in Courtroom 110, Thurgood Marshall Courthouse, 40 Foley Square, New York, New York. The Court intends to discuss why Mr. Kabat made representations on behalf of Al-Turki and Naseef during periods of time when he was not in communication with those clients. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 4064.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:	August 30, 2018
	New York, New York