UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

    TERRORIST ATTACKS ON
    SEPTEMBER 11, 2001

------------------------------------------------------------X

03-MDL-01570 (GBD)(SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS**

This document relates to:

    <u>Ashton et al. v. al Qaeda Islamic Army, et al.</u>, No. 02-cv-6977 (GBD)(SN)

On August 31, 2015, the Honorable George B. Daniels granted the <u>Ashton</u> Plaintiffs an Order of Judgment by default against the Islamic Republic of Iran. <u>See</u> Order of Judgment, ECF No. 3021. The Court has issued numerous orders addressing the <u>Ashton</u> Plaintiffs' requests for damages. Here, pursuant to § 1605A of the Foreign Sovereign Immunities Act, Plaintiffs seek an award of solatium damages on behalf of seven non-immediate family members of victims of the terrorist attacks on September 11, 2001. ECF No. 4718. Plaintiffs' motion should be GRANTED in part and DENIED in part.

**DISCUSSION**

The Court assumes the parties' familiarity with the extensive rulings related to this multi-district litigation. As relevant here, on October 14, 2016, the Court detailed a framework to evaluate damages requests by non-immediate family members of the victims of the September 11 attacks. ECF No. 3363, <u>adopted by</u>, ECF No. 3384 ("<u>Hoglan II</u>"). The Court clarified this framework in a subsequent decision issued on August 8, 2017. ECF No. 3676, <u>adopted by</u>, ECF

No. 3795 ("Hoglan IV"). This motion asks the Court to apply the legal principles set forth in Hoglan IV and award solatium damages to seven "functional equivalents" of immediate family members. In addition, in keeping with the Court's prior rulings, Plaintiffs seek 4.96 percent per annum from September 11, 2001, until the date of judgment, and permission to file applications for any remaining Ashton Plaintiffs at a later date.

THE ASHTON XIII PLAINTIFFS' CLAIMS

Consistent with the framework set forth in Hoglan IV, the Court analyzes each Plaintiff's claim for solatium damages individually using the objective criteria set forth therein. See generally Hoglan IV.

**A. Alexandria Catalano**

Alexandria Catalano is the granddaughter of 9/11 decedent Harry Taback. Alexandria met Harry just hours after she was born, five years before 9/11. ECF No. 4718, Alexandria Catalano Decl. ¶ 2. In 1997, Alexandria and her mother and father moved in with Harry. Id. ¶ 3. Harry provided Alexandria's family with financial support, and Harry and Alexandria ate meals together, watched TV together, and took vacations together. Id. ¶ 4. Harry came to Alexandria's dance recitals and sports practices, and became the "official" team photographer of the soccer team. Id. ¶ 4.

While Harry played a central role in Alexandria's upbringing, and served as a protector, teacher, and friend, there is no indication that Harry was a functional equivalent of a parent, as opposed to a grandparent who was actively involved in his granddaughter's upbringing. While grandparents may be considered the functional equivalent of parents in certain limited circumstances, this would generally require permanent abandonment by both parents. See Hoglan IV (citing Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 236 (S.D.N.Y.

2003)) (awarding solatium damages to a grandmother who had acted as the decedent's "surrogate mother" continuously since 1973). Barring extraordinary circumstances not present here, a grandparent cannot overcome the general rule that they are not immediate family merely by proving significant cohabitation and a strong emotional bond. Accordingly, the Court recommends that Alexandria Catalano's claim for solatium damages be DENIED.

### B.  Mariano D'Alessandro

Mariano D'Alessandro is the nephew of 9/11 decedent Rocco Nino Gargano. Mariano and his mother lived with Rocco from the time he was approximately six years old until Rocco's death in 2001, when Mariano was fifteen years old. ECF No. 4718, Mariano D'Alessandro Decl. ¶ 3. Mariano's father was incarcerated, and Rocco took on the role of a father, supporting Mariano emotionally and financially. Id. ¶ 4. Rocco took Mariano on family vacations, enrolled him in soccer, and attended school functions on his behalf. Id. Rocco was the sole provider in Mariano's household. Id. ¶ 5.

The Court is constrained to conclude that, despite Rocco Nino Gargano's special relationship with his nephew, he does not meet the "exacting standard" to be the functional equivalent of a parent that this Court extrapolates from Sullivan v. Ford Motor Co., No. 97-CV-0593 (RCC), 2000 WL 343777 (S.D.N.Y. Mar. 31, 2000). As this Court outlined in Hoglan IV, Sullivan reflects an "adopted in all but name" standard. While the Court does not require a legal custodian relationship as existed in Sullivan as a *sine qua non* of demonstrating functional equivalence for these categories of plaintiffs, only in the rarest cases will such a plaintiff be able to demonstrate functional equivalence absent one. Such a showing could be made where both parents were wholly absent from the decedent's life, such that the relevant individual fulfilled the entirety of the parental role. See Hoglan IV at 10.

The Court recognizes that Rocco Nino Gargano was a parental figure in his nephew's life and therefore, his relationship was in some respects functionally equivalent to a parent. Unlike the plaintiff in Sullivan, however, Rocco did not have custody of, or any other legal relationship with, his nephew; Mariano's biological mother did. Rocco did not fulfill the entirety of the parental role in Mariano's life. The Court celebrates the positive role that Rocco Nino Gargano played in Mariano's life, providing financial and moral support, and acknowledges the genuine grief that Mariano has suffered because of his loss. In light of the fact, however, that no court in an FSIA terrorism case has ever allowed a niece or nephew to recover solatium damages, the Court can only do so in the most exceptional of circumstances, such as those present in Sullivan. Accordingly, the Court recommends that Mariano D'Alessandro's request for solatium damages be DENIED.

### C. James Della Bella

James Della Bella is the stepson of 9/11 decedent Andrea Della Bella. When James was six months old, Andrea welcomed James into her home, and since that time Andrea served as a supporting and loving parent to James until her untimely death on 9/11. ECF No. 4718, James Bella Della Decl. ¶ 2. While James's father drifted in and out of James's life, Andrea often raised James as a single parent, enrolling him in school as her son and spending time caring and playing with him. Id. ¶ 3. James did not learn until he was seventeen years old that Andrea was not his biological mother. Id. ¶ 2. Because Andrea began parenting James so soon after his birth, and because of their subsequent period of extended cohabitation and guardianship, the Court recommends that James be awarded $8,500,000 in solatium damages, the full amount paid to the biological or adopted children of 9/11 victims.

### D. Aaron Pagan

Aaron Pagan is the nephew of 9/11 decedent Angela Rosario. Aaron's biological father was not present in his household growing up, and Angela stepped in to fill the role of a second parent for Aaron alongside his mother. ECF No. 4718, Aaron Pagan Decl. ¶ 3. Angela contributed to Aaron's financial expenses, id., and picked Aaron up from school, helped him with homework, and gave him advice on how to better himself. Id. ¶ 4.

The Court is constrained to conclude that, despite Angela Rosario's special relationship with her nephew, she does not meet the "exacting standard" to be considered the functional equivalent of a parent that the Court extrapolates from Sullivan, 2000 WL 343777. The Court recognizes that Angela Pagan was a parental figure in her nephew's life and therefore, her relationship was in some respects functionally equivalent to a parent. Unlike the plaintiff in Sullivan, however, Angela Rosario did not have custody or any other legal relationship with her nephew; Aaron's biological mother did. Nor was Aaron solely and wholly dependent on his aunt for financial support. The Court applauds the tremendous role that Angela Rosario played in Aaron's life, providing financial and moral support, and acknowledges the void that Aaron feels in his life owing to Angela's untimely death. But under the prevailing law, the Court cannot award damages to Aaron arising out of the death of his aunt. Accordingly, the Court recommends that Aaron Pagan's request for solatium damages be DENIED.

### E. Julian Perez

Julian Perez is the nephew of 9/11 decedent Marlyn Carmen Garcia. Julian's biological father did not want to be involved in his life at birth, and Julian's biological mother was overwhelmed with the work of caring for her other children and holding down a job. ECF No. 4718, Julian Perez Decl. ¶ 2. Though Marlyn was only twelve when Julian was born, Marlyn

took on the role of Julian's caregiver, watching him in the afternoons and overnight, preparing his meals, putting him to bed, and using her earnings to purchase clothes, toys, and food for him. Id. ¶ 3.

By the time Marlyn was finishing high school, Julian, then about seven years old, was staying most nights with her. Id. ¶ 4. When Julian started school, Marlyn would supervise his homework, eat dinner with Julian and read to him every day. Id. ¶ 5. She would get Julian ready for bed and wake him up in the morning to prepare Julian for school. Id. As of 2000, Marlyn was declaring Julian as a dependent on her income tax returns. During the summer of 2001, Julian's mother in theory agreed to Marlyn's legal adoption of Julian, and Julian's mother had begun consulting with an attorney on the steps to begin the legal adoption process. Id. ¶ 7.

While the Court recognizes the extraordinary role that Marlyn played in Julian's life, the Court is constrained to conclude that Marlyn Carmen Garcia does not meet the "exacting standard" that the Court extrapolates from Sullivan, 2000 WL 343777. Marlyn did not have legal custody over her nephew. Absent legal custodianship, demonstrating functional equivalence requires a showing that both parents were wholly absent from the decedent's life, such that the relevant individual fulfilled the entirety of the parental role. See Hoglan IV at 10. While Marlyn was heavily involved in Julian's life, including when she herself was an adolescent, plaintiffs have not demonstrated that Julian's mother was wholly absent. And while Marlyn apparently declared Aaron her dependent for tax purposes in 2000, and began adoption discussions with Aaron's biological mother months before Marlyn's untimely death, these factors are insufficient—even if compelling—to grant Aaron relief. Given the need for the Court's decisions to rest on "generally accepted legal standards," the Court cannot extend Sullivan to more ambiguous cases. See Bettis v. Islamic Republic of Iran, 315 F.3d 325, 336 (D.C. Cir. 2003)

("As much as we sympathize with appellants' claims, we have no authority to stretch the law beyond its *clear bounds* to satisfy our sense of justice."). Accordingly, the Court recommends that Julian Perez's request for solatium damages be DENIED.

### F. Jason Schoenholtz

Jason Schoenholtz is the stepbrother of 9/11 decedent Alexander ("Alex") Steinman. Alex entered Jason's life in 1982, when Jason was seven years old and Alex was thirteen years old. ECF No. 4718, Jason Schoenholtz Decl. ¶ 2. Alex and Jason began living in the same household in 1983, after Jason's mother married Alex's father. Id. ¶ 3. Jason looked up to Alex as a role model, wanting to follow his achievements in sports, school, and work. Id. ¶ 4. Jason visited Alex frequently while Alex was at boarding school and in college, and Alex would allow Jason to shadow him at his finance job in New York City. Id. ¶ 5. Accordingly, the Court finds that Jason Schoenholtz was the functional equivalent of Alex Steinman's brother. Because Jason and Alex began cohabitating when Alex was fourteen years old, the Court recommends that Jason Schoenholtz be awarded partial solatium damages of $2,125,000, one half the amount for biological or adopted siblings.

### G. Terrence M. Smith, Jr.

Terrence M. Smith, Jr. is the stepson of 9/11 decedent William Ward Haynes. William first came into Terrence's life in 1992 when Terrence was just two and a half years old. ECF No. 4718, Terrence M. Smith Decl. ¶ 2. William and Terrence lived together on a full-time basis from 1993 until William's untimely death. Id. ¶ 3. William cared for Terrence and supported him as his own true son, providing financial support as well as emotional support. Id. William supported Terrence's education, driving him to school and doing homework with him, and guided Terrence in sports, attending all his games and cheering him on. Id. ¶ 5,6. Accordingly,

the Court finds that Terrence M. Smith, Jr. was the functional equivalent of William Ward Haynes's child, and recommends that he be awarded $8,500,000 in solatium damages.

## CONCLUSION

For the foregoing reasons, Plaintiffs should receive solatium damages as follows:

| **Number** | **Decedent** | **Plaintiff** | **Relationship** | **Solatium Damages** |
|---|---|---|---|---|
| 1 | Andrea Della Bella | James Della Bella | Stepchild | $8,500,000 |
| 2 | Alexander Steinman | Jason Schoenholtz | Stepsibling | $2,125,000 |
| 3 | William W. Haynes | Terrence M. Smith, Jr. | Stepchild | $8,500,000 |

The solatium claims for Alexandria Catalano, Aaron Pagan, Julian Perez, and Mariano D'Alessandro should be DENIED under the principles established in Hoglan IV.

Plaintiffs should also be awarded prejudgment interest on these damages from September 11, 2001, through the date of judgment, at a rate of 4.96 percent per annum, compounded annually. See ECF No. 3358, adopted by, ECF No. 3383.

Finally, any Ashton Plaintiffs not appearing in this motion and who were not previously awarded damages may still submit applications for solatium and/or economic damages awards.

DATED:   December 19, 2019
         New York, New York

_____
SARAH NETBURN
United States Magistrate Judge

8

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).