# 23-_____

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆

IN RE: LISA O'BRIEN and PATRICIA RYAN,

*Plaintiffs-Petitioners.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001
03-MD-01570 (GBD)(SN)

## PETITION FOR WRIT OF MANDAMUS

JOHN F. SCHUTTY
LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, 9th Floor
New York, New York 10022
(646) 345-1441

*Attorneys for Plaintiffs-Petitioners*

# **TABLE OF CONTENTS**

**Page No.**

**RELIEF SOUGHT**.........................................................................................1

**THE ISSUES PRESENTED** .........................................................................2

**THE FACTS NECESSARY TO UNDERSTAND THE ISSUES
PRESENTED FOR REVIEW** ......................................................................3

**THE WRIT OF MANDAMUS** .....................................................................4

**A. Adequate means of obtaining relief.**..................................................6

**B. Appropriate under the circumstances**...............................................10

**C. "Clear and Indisputable" Right to the Writ** .................................12

1. The District Court's Determination that the ATA Was Intended to
   Preempt State Law & Create a New "National Standard" in Wrongful
   Death Actions Filed Against Terrorists Is Clearly Erroneous.......................12

2. A Proper Interpretation of the ATA (and FSIA) Can Resolve Thousands
   of Wrongful Death Claims in This MDL Litigation. .....................................18

3. Who Qualifies to Pursue Wrongful Death Damages Under the ATA (and
   FSIA), and When Wrongful Death Actions Had to Be Filed – Are Novel
   Questions of First Impression in this Circuit..................................................18

4. The ATA's Plain Language and the "Canons of Construction" Support
   the Petitioners' Reading of the ATA. ............................................................20

5. The Case Law Precedent Cited by the District Court Does Not Support
   the Claim that "Immediate Family Members" Qualify for Wrongful Death
   Damages...........................................................................................................24

6. Enforcement of the FSIA's and ATA's Statute of Limitations Would Not
   Only Protect Plaintiffs Who Have Filed Timely Claims, Such Action
   Would Promote Important Institutional Interests of the Court – the
   Reduction of an Ever-Expanding, *Ad Infinitum* Docket.................................26

7. An Immediate Appeal Will Advance the Ultimate Termination of the
   Litigation & Will Resolve Uncertainty for Thousands of Plaintiffs. .............29

**CONCLUSION**.............................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

## <u>Cases</u>

*Allied Chem. Corp. v. Daiflon, Inc.*,
   449 U.S. 33 (1980)...................................................................................4

*Arizona v. California*,
   530 U.S. 392 (2000).................................................................................28

*Baker v. Cuomo*,
   58 F.3d 814 (2d Cir.), *vacated in part on other grounds*, 85 F.3d
   919 (2d Cir. 1996) (en banc) (per curiam)............................................19

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005).................................................................................16

*Bettis v. Islamic Republic of Iran*,
   315 F.3d 325 (D.C. Cir 2003)..................................................................9

*Boim v. Quranic Literacy Inst. & Holy Land Found.*,
   291 F.3d 1000 (7th Cir. 2002) ...............................................................17

*Capitol Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013) ............................................18, 20

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)..................................................................................4

*De Sylva v. Ballentine*,
   351 U.S. 570 (1956).................................................................................14

*Donell v. Keppers*,
   835 F. Supp. 2d 871 (S.D. Cal. 2011)....................................................19

*Estates of Ungar ex reI. Strachman v. Palestinian Auth.*,
   304 F.Supp.2d 232 (D.R.I. 2004) .....................................................24, 25

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981)...................................................................................................10

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999) ..............................................................................14, 20

*In re The City of New York*,
    607 F.3d 923 (2d Cir. 2010) ................................................................................5, 10

*Knox v. Palestine Liberation Organization*,
    442 F. Supp. 2d 62 (S.D.N.Y. 2006) ..................................................................24, 25

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996) ...................................................................................30

*Leonhard v. United States*,
    633 F.2d 599 (2d Cir. 1980) ...................................................................................28

*Linde v. Arab Bank, PLC*,
    706 F.3d 92 (2d Cir. 2013) .......................................................................................4

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962)..................................................................................19, 20, 28

*Markham v. Allen*,
    326 U.S. 490 (1946)................................................................................................21

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013)................................................................................................13

*Maryland v. Louisiana*,
    451 U.S. 725 (1981)................................................................................................15

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)................................................................................................16

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994)..................................................................................................26

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)..........................................................................................12, 18

*Rodriguez v. FDIC,*
  140 S. Ct. 713 (2020) ...................................................................................25, 26

*SEC v. Rajaratnam,*
  622 F.3d 159 (2d Cir. 2010) ..............................................................................5, 6

*Shiekh v. Republic of Sudan,*
  308 F.Supp.3d 46 (D.D.C. 2018), *rev'd on other grounds by,*
  *Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) ...........................27

*Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.,*
  486 F. App'x 671 (9th Cir. 2012) ..........................................................................19

*Tex. Indus. v. Radcliff Materials,*
  451 U.S. 630 (1981) ..............................................................................................22

*United States. v. Smith,*
  832 F.2d 774 (2d Cir. 1987) ..................................................................................20

*United States v. Am. Trucking Ass'ns, Inc.,*
  310 U.S. 534 (1940)...............................................................................................12

*United States v. Kimbell Foods, Inc.,*
  440 U.S. 715 (1979)...............................................................................................23

*Wright v. Rensselaer Cty Jail,*
  771 Fed.Appx. 58 (2d Cir. 2019)...........................................................................28

*Wyeth v. Levine,*
  555 U.S. 555 (2009)........................................................................................16, 17

## **Statutes**

18 U.S.C. § 2333 ...........................................................................................*passim*

18 U.S.C. § 2333 *et seq.*........................................................................................2

28 U.S.C. §§ 1330, 1441(d), 1602 *et seq.*.......................................................*passim*

28 U.S.C. § 1292(b) .................................................................................................6

28 U.S.C. § 605A(b) ..............................................................................................26

28 U.S.C. § 1606.......................................................................................................9

28 U.S.C. § 1651 .................................................................................................1

28 U.S.C. § 1651(a) ............................................................................................4

28 U.S.C. § 1652 ...............................................................................................23

34 U.S.C. § 20144(d)(3)(A)(i), (e)(6) ...............................................................8

Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555 .......................22

N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2 .............................................22

N.Y. Estate Powers &Trust Law § 5-4.2 ....................................................22

N.Y. Estate Powers & Trusts Law § 5-4.4...............................................22

N.Y. Surr. Ct. Proc. Act § 205(1) ..................................................................23

National Defense Authorization Act for Fiscal Year 2013, Pub. L. No.
112-239, § 1251(c), 126 Stat. 1632, 2017 (2013)................................26

Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506......................................2

**Other Authorities**

C. Wright & A. Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August
2019 update)................................................................................................20

137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of
Sen. Grassley) ..........................................................................................17

Bradford R. Clark, *Federal Common Law: A Structural
Reinterpretation*, 144 U. Pa. L. Rev. 1245, 1248 (1996) ...................26

Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022)....................7

Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L.
Rev. 66 (1955) ..........................................................................................23

Note, *Supervisory and Advisory Mandamus Under the All Writs Act*,
86 Harv. L. Rev. 595, 611 n. 69 (1973)................................................10

S. REP. 102-342 (1992) ...................................................................................16

USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php ...................8

Weber Bill,
https://weber.house.gov/news/documentsingle.aspx?DocumentID=
1333...................................................................................................................7

**RELIEF SOUGHT**

Petitioners Lisa O'Brien and Patricia Ryan[1] request the issuance of a writ of mandamus under 28 U.S.C. § 1651 compelling the Hon. George Daniels, United States District Judge, to: (1) dismiss the wrongful death claims filed against the Taliban and the Islamic Republic of Iran ("Iran") by individuals who are not authorized to receive estate distributions under applicable state law, and (2) dismiss any actions filed against the latter two defendants after the expiration of the statute of limitations.  Petitioners are wrongful death plaintiffs (widows and personal representatives of 9/11 decedents) in an MDL litigation pending in the United States District Court for the Southern District of New York: *In re: Terrorist Attacks on September 11, 2001*, 03-MD-01570 (GBD)(SN).  This relief is sought through this extraordinary remedy because exceptional circumstances exist – no other adequate means exist to obtain Petitioners' requested relief, and there has been a judicial usurpation of power that will continue to cause irreparable financial injury to the Petitioners (this can be shown through injuries that have already occurred in the litigation) through erroneous, non-appealable decisions by the district court.

---

[1]    The Petitioners represent all state-authorized heirs of decedents killed on September 11, 2001 who have been injured by improper wrongful death awards issued to "non-heirs" in violation of state estate distribution laws.  These improper awards have diluted/reduced the recoveries of heirs, resulting in irreparable injuries described below.

## THE ISSUES PRESENTED

This application concerns two controlling questions of law surrounding default judgments that the district court has entered against two defendants-in-default, Iran and the Taliban (the presently-unrecognized terrorist group now controlling Afghanistan).  At the moment, more than four sub-sets of plaintiffs, with adverse interests, disagree on two key legal issues:

1.  Whether Congress intended to preempt state wrongful death distribution laws in enacting the Anti-Terrorism Act, ("ATA"),[2] 18 U.S.C. § 2333, or whether state law was intended to supplement the wrongful death cause of action supplied by the federal statute?

2.  Whether the institutional interests of the federal courts require the enforcement of a statute of limitations against defendants-in-default, in a two-decade-old litigation, where the alternative is an ever-expanding court docket for decades to come and where untimely claims reduce the money paid to authorized heirs who have filed timely claims?

Prompt appellate review is necessary to address these controlling questions of law because a failure of this Court to act will: (a) cause irreparable injury to

---

[2]     The ATA provides a private right of action for any United States national injured by an act of international terrorism.  18 U.S.C. § 2333 *et seq.*, is the civil remedies provision of the Anti-Terrorism Act, added Oct. 29, 1992, Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506, codified as amended.

heirs, (b) further prolong this costly and complex litigation, and (c) create continued uncertainty in terrorist actions brought not only in this Circuit, but in other federal courts throughout the United States.

**THE FACTS NECESSARY TO**
**UNDERSTAND THE ISSUES PRESENTED FOR REVIEW**

Petitioners are wrongful death plaintiffs (widows, personal representatives and state-authorized heirs of 9/11 decedents) seeking damages against those nations and individuals responsible for the terrorist events of September 11, 2001. The Petitioners (two of approximately 2,800 9/11 widows) received substantially diminished wrongful death awards from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") (a limited-assets fund that pays claimants on a pro rata basis) following the entry of default judgments granted in favor of thousands of untimely plaintiffs (those who filed actions after the statute of limitations expired) who are "non-heirs" (under applicable state law); the Petitioners now fear further irreparable injury will result due to a recent Order (Addendum A) and Report & Recommendation (Addendum B) of the district court that promises, once again, to enter default judgments against the Taliban in favor of "non-heirs" and untimely plaintiffs.  State law defines who may recover wrongful death damages;

federal statutory law does not.  The Foreign Sovereign Immunities Act (FSIA)[3] and the ATA contain statutes of limitations that have not been enforced.   No factual issues are present, only pure questions of law.

## THE WRIT OF MANDAMUS

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Act empowers this Court to issue a writ of mandamus directing a district court to correct an erroneous order.  *Linde v. Arab Bank, PLC*, 706 F.3d 92, 103, 107 (2d Cir. 2013).  "[T]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (citation omitted).   "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy."  *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks and citations omitted).

To obtain a writ of mandamus: "(1) the party seeking issuance of the writ must have no other adequate means to attain the relief it desires; (2) the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate

---

[3]      The FSIA, 28 U.S.C. 1330, 1441(d), 1602 *et seq.*, provides that a foreign state and its agencies and instrumentalities are immune from the jurisdiction of federal and state courts in civil actions, subject to limited exceptions.

under the circumstances; and (3) the petitioner must demonstrate that the right to issuance of the writ is clear and indisputable." *In re The City of New York*, 607 F.3d 923, 932–33 (2d Cir. 2010) (internal quotation marks and citations omitted). This Court will issue a writ "only in exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion." *Id.* at 943 (internal quotation marks, emphasis and citation omitted). "A district court abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if it has rendered a decision that cannot be located within the range of permissible decisions. We will issue the writ only if a district court committed a clear and indisputable abuse of its discretion in one of these ways." *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010) (internal quotation marks and citations omitted).

All three requirements are satisfied here. Petitioners lack an adequate alternate means to obtain relief; they have already suffered irreparable injuries and those injuries will continue; the issues involved are significant and their proper resolution will aid in the administration of justice, and the district court committed clear error in interpreting federal statutes that affect thousands of authorized heirs in this two-decade-old litigation. Here, the district court acted egregiously – it rejected applicable state law (a usurpation of state sovereignty), which has historically governed the administration of decedents' estates and it has failed to

enforce applicable statutes of limitations that would protect those authorized heirs who have filed timely claims.  We discuss each requirement below.

## A.    Adequate means of obtaining relief.

No other adequate means exist to obtain Petitioners' requested relief and prevent further injury.[4]  Petitioners are otherwise unable to obtain relief from the clearly erroneous interpretation of the federal statutes involved (and the blatant disregard of applicable state law), and the refusal of the district court to apply the FSIA and ATA statutes of limitations (and enforce a reasonable end to litigation as against the defendants-in-default).  The irreparable harm that will be sustained by Petitioners, who are state-authorized heirs of 9/11 decedents with timely filed legal actions, can be seen by examining what has already happened to Petitioners through the previous entry of billions of dollars in default judgments against Iran (from which no appeal was possible) on behalf of thousands of "non-heirs."

Practically speaking, the most immediate Order below completes all 9/11 wrongful death claims against the Taliban, once formal dollar awards are calculated for each plaintiff (default judgments have already been issued against the Taliban in favor of commercial insurers and one set of *Havlish* wrongful death

---

[4]    Petitioners have sought leave to appeal through 28 U.S.C. § 1292(b) (Appendix 316-338), but Judge Daniels has not ruled on their unopposed April 6, 2023 motion for "certification."   *SEC v. Rajaratnam*, 622 F.3d 159, 169 (2d Cir. 2010) ("Even though we lack interlocutory jurisdiction to review the district court's order, a writ of mandamus may still be appropriate.").

plaintiffs, providing the latter with a distinctive and unfair "head start" (Appendix 1-49).   In doing so, the district court has summarily determined that: (1) the Taliban may be held liable for the wrongful death claims, (2) all "immediate family members" (heirs and non-heirs) may sue for wrongful death damages against the Taliban, and (3) that the ATA statute of limitations will *not* be applied to such claims – ever.   All that remains is the awarding of additional, individual damage awards.   Although the district court may title its ultimate results as individual "partial default judgments," these are, in all respects, "final judgments." As precedent has shown, these "final judgments" now will result in a race for recovery from some fund or limited source[5] (as happened with all the default judgments issued against Iran – where partial final judgments resulted in awards

_____

[5]   If any money is recovered from any damage awards against the Taliban, it may come from the assets held in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), held at the Federal Reserve Bank of New York (the "FRBNY").  When the Republic of Afghanistan fell in August 2021, the DAB held approximately $7 billion in assets at the FRBNY.  *See* ECF MDL#8866 at 6.  In February 2022, President Biden issued an executive order titled "Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan." Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022).  The frozen, limited assets of the DAB are now sought by the plaintiffs herein, through appeal from an Order of this Court.  ECF MDL#8866.  And a bill has been prepared, the so-called "Weber Bill," a bill that seeks to redirect $3.5 billion of frozen Afghan funds into the USVSST Fund, so that all U.S. victims of terror, including military and civilian victims and the families of deceased victims, will be equitably compensated for their losses.  The legislation would amend President Biden's executive order dictating that funds be distributed to a small subset of U.S. terror victims through the American legal system.  *See* https://weber.house.gov/news/documentsingle. aspx?DocumentID=1333

from the USVSST Fund with no appellate review possible).  In short, the district court is or will be entering "final" judgments in favor of thousands and thousands of authorized heirs and "non-heirs" and, for this reason, this Court should address the erroneous rulings of the district court before more irreparable injury occurs.

The irreparable injuries that will result is evident by examining the injuries that state-authorized "heirs" suffered when the district court entered similar default judgments against another defendant-in-default, Iran.  *See* Declarations of Lisa O'Brien (Addendum C hereto) and Patricia Ryan (Addendum D hereto).  The "non-final" judgments against Iran, which were not appealable as of right, improperly allowed thousands upon thousands of non-heirs (under state law) and non-dependents, and those filing untimely claims, to obtain and then file judgments with the USVSST and obtain substantial awards – awards that ultimately diluted and diminished the moneys available to "heirs" and dependents who had filed timely claims against Iran.  *Id*.  The USVSST pro rata payments are "based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full" or the fund terminates in 2039.  34 U.S.C. § 20144(d)(3)(A)(i), (e)(6).  *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.  That means payments to any individual claimant are dependent on other claimants' awards.  Thus, all past, present or future filers against Iran and the Taliban will have their recoveries substantially diminished by non-heirs (and untimely

claimants) who obtain default judgments that result in payment by a "fund."  Thus, with no right of appellate review previously available in this MDL litigation– these "non-heirs" were and will continue to be awarded millions of dollars of damages against Iran through 2039 (under the FSIA and ATA) in direct violation of state estate administration laws, state policy and state interests.[6]  In this respect, we refer this Court to the Declarations filed by Petitioners (Add. C/D), which show on an individualized basis the amount of the default judgments entered against Iran and in favor of their late husband's "non-heirs" (*i.e.*, parents and siblings who did not live with the decedent and who were not financially dependent on the decedent) and the amount of the default judgments awarded to authorized heirs – Petitioners

_____

[6]     Congress' purpose in creating a federal cause of action (FSIA) under § 1605A was to ensure that a "foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.  *See Bettis v. Islamic Republic of Iran,* 315 F.3d 325, 333 (D.C. Cir 2003): "The term 'federal common law' seems to us to be a misnomer.  Indeed, it is a mistake, we think, to label actions under the FSIA and Flatow Amendment [and ATA] for solatium damages as "federal common law" cases, for these actions are based on *statutory* rights . . . Rather, . . . because the FSIA instructs that 'the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 1606, it in effect instructs federal judges to find the relevant [state common] law, not to make it."  As the Court of Appeals noted in *Bettis*, "this fact is not a license for judges to legislate from the bench," for "[a]s much as we sympathize with appellants' claims, we have no authority to stretch the law beyond its *clear bounds* to satisfy our sense of justice." 315 F.3d at 338, 336.  And this is precisely what the district court did here – legislate from the bench – by expanding the number of claimants who might recover wrongful death damages over and above what the common law (state) allows.

and their children.  Every bit of money paid to the non-heirs and non-dependents in this instance undeniably depleted the USVSST awards to the true heirs and dependents of 9/11 decedents.  In sum, Petitioners have already been irreparably injured and this process will now continue unless this Court issues the requested writ and overturns the erroneous rulings of the district court.[7]  An appeal after a final judgment will be of no avail as payment from the USVSST (or any similar fund) will already have been awarded.  The Supreme Court has noted that mandamus is appropriate in "situations in which a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation before securing review of an order . . ."  *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 378 n. 13 (1981).

### B.    Appropriate under the circumstances.

The writ is appropriate here because this case implicates significant and novel questions of law regarding ongoing terrorist litigation, and because resolving these issues will aid in the administration of justice.  *City of New York*, 607 F.3d at

---

[7]    Supervisory or advisory mandamus should be exercised when "there is a likelihood of recurring error which will be forestalled by immediately confronting the challenged order."  Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv. L. Rev. 595, 611 n. 69 (1973).  This can occur where there are "novel and important questions" which "like the recurrence of a past error, may be viewed as a factor upon which a court of appeals may decide that there exists a likelihood a significant error will be recurrently made in the future unless it reviews a question by petition for mandamus."  *Id*., at 611-612.

942–43.   Questions of first impression have been presented: the respect federal courts should pay to applicable state law and the need to bring a reasonable end to lawsuits filed against a defendant-in-default, to both reduce docket congestion and provide justice to those authorized heirs who have filed timely claims. Addressing this unusual set of circumstances will offer useful guidance to the district courts and ensure justice is served to the widows and children of the 9/11 decedents.

Here, the district court committed clear error in resolving: (1) whether the estate administration laws of a decedent's domicile state, which definitively detail which "heirs" are qualified to receive wrongful death damages, are *preempted* by the ATA's statutory language (in § 2333) and/or the legislative history of the ATA (*viz.*, does the ATA's express language and/or its legislative history require the preemption of otherwise applicable state law) and (2) whether a statute of limitations should never be enforced against a defaulting defendant.   These are controlling questions of law because the only claims asserted against the defendants-in-default (the Taliban and Iran) are based on: (1) state law, (2) the FSIA and (3) the ATA.   If the Petitioners' interpretation of the FSIA and ATA is adopted, if state law was never intended to be preempted by the FSIA and § 2333, and if the applicable statutes of limitation are enforced to protect the claims of plaintiffs who have filed timely claims, the claims of thousands of plaintiffs will be

dismissed in their entirety.  The parties would, therefore, certainly benefit from an immediate appellate review of the Orders below.

**C. "Clear and Indisputable" Right to the Writ.**

The findings of the district court are so clearly erroneous and so constitute an abuse of discretion that immediate appellate review is required to ensure that the state-authorized "heirs" of 9/11 decedents do not continue to suffer irreparable injury.

1.  **The District Court's Determination that the ATA Was Intended to Preempt State Law & Create a New "National Standard" in Wrongful Death Actions Filed Against Terrorists Is Clearly Erroneous.**

The district court's interpretation of the ATA's phrase "estate, survivors, or heirs" contradicts the plain language of the statute and the applicable canons of statutory interpretation,[8] both of which support Petitioners' position that the federal judiciary may not interpret that phrase to mean "immediate family members," if it cannot be shown that Congress intended that interpretation.

---

[8] The predominant view of a judge's proper role in statutory interpretation is one of "legislative supremacy." This theory holds that when a court interprets a federal statute, it seeks "to give effect to the intent of Congress." *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542 (1940).  Under this view, judges attempt to act as "faithful agents" of Congress.  The judiciary is not free to substitute their policy views for those of the legislature that enacted the statute. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014) ("[C]ourts are not at liberty to jettison Congress' judgment[.]").

The starting place for any statutory interpretation question is the statute's plain language, and the plain language of § 2333 is entirely consistent with the interpretation suggested by the Petitioners:

> **Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism, or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.

The phrase in question – "**Any national** … **or his or her estate, survivors, or heirs**" – in no way suggests that "estate, survivors, or heirs" means the same thing as "immediate family members" (a non-legal, vague category of individuals) as claimed by the district court.  Petitioners suggest, on the other hand, that the use of the words "estate" and "heirs" show that Congress meant to limit those who might recover under the statute to a legally-recognized group of "survivors."[9]  And since the federal courts have always relied upon state law to define who qualifies as a member of an "estate" and who qualifies as an "heir" of a decedent, the statute

---

[9]     In fact, it is the extra word "survivors" in § 2333, a lay term with no legal meaning, which seems to have spurred the district court to expand the number of qualifying "injured," beyond the known meaning of who might qualify as "injured" if the words "estate" and "heirs" were used alone.  "Survivors" fails to define a specific group of qualifying "injured."  Congress may have affirmatively chosen redundancy as part of a belt-and-suspenders approach, to add extra clarity—and may have done so in a statute like this where it recognized that claims against terrorists would proceed under *traditional tort law* that would provide that necessary clarity.  *See, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013).

-13-

implies the need to look to state law to help define these terms.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established laws of the several states.  For example, in *De Sylva v. Ballentine*, 351 U.S. 570, 580–581 (1956), the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.).  Instead, the district court read the ATA as requiring a judicially-created interpretation – "immediate family members" – a term that exists nowhere in the statute or the congressional notes surrounding the creation of the statute.

By diverging from well-established principles of statutory interpretation and by giving the phrase "estate, survivors, or heirs" a judicially-created meaning ("immediate family members"), the district court departed from the plain meaning of the statute, well-known canons of construction, the presumption against preemption and applicable state law.  The district court held (Add. A at 8) (emphasis added in bold):

> [T]he Court "has *discretion* [but is not required] to borrow from state law when there are deficiencies in the federal statutory scheme." *Hardy*

*v. New York City Health & Hosp. Corp.,* 164 F .3d 789, 793 (2d Cir. 1999) (emphasis added).  **This Court need not restrict to state law the interpretation of the term "survivors" in the ATA, particularly in light of the "distinct need for nationwide legal standards" in the ATA context** … Magistrate Judge Netburn thus correctly held that Americans directly injured, estates and heirs of Americans killed, and immediate family members (and functional equivalents of immediate family members) of Americans killed in the 9/11 Attacks can all bring claims under § 2333. (Report at 8.)

The district court's proposed award(s) of wrongful death damages to "non-heirs" (*e.g.*, parents and siblings of decedents who are survived by widows and children) is undeniably in express conflict with explicit state law, but the district court argued that it was entitled to *preempt* the otherwise applicable state law stating there is a "'distinct need for nationwide legal standards' in the ATA context."  A district court judge simply lacks the authority to "legislate" like this from the bench.  In short, the district court committed an abuse of discretion.

The "presumption against preemption" doctrine[10] is often stated as follows: [i]n all pre-emption cases, and particularly in those in which Congress has

---

[10]     The cornerstone of the preemption doctrine is that courts should presume that Congress does *not* intend to displace state law, particularly where the state law concerns traditional areas that come within the police power, such as health and safety laws.  *See, e.g., Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) ("consideration under the Supremacy clause starts with the basic assumption that congress did not intend to displace state law."). This presumption stems from the importance of federalism and dual sovereignty in our system of government. Precluding a state from regulating in an area within the state's sovereignty is a grave act that should not casually be attributed to Congress.

"legislated ... in a field which the States have traditionally occupied,"... we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (second and third alterations in original). The Supreme Court has long held that federal laws preempt state laws *if, first and foremost, that is Congress's clear and manifest intent:* "The purpose of Congress is the ultimate touchstone in every preemption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).[11]

The ATA's legislative history simply does not support the district court's finding that someone other than a "legal heir" is entitled to recover ATA (and FSIA) wrongful death damages – based on an alleged need for "nationwide standards" – since the ATA's and FSIA's legislative histories[12] show the exact opposite was intended – that "[t]*he substance of such an [ATA] action is not*

---

[11]    In *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 450 (2005) the Court noted that the "long history of tort litigation against manufacturers of poisonous substances adds force to the basic presumption against pre-emption [of traditional tort remedies].'"

[12]    "This section [ATA] creates the right of action, allowing any U.S. national who has been injured in his person, property, or business by an act of international terrorism to bring an appropriate action in a U.S. district court. *The substance of such an action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.* This bill opens the courthouse door to victims of international terrorism." S. REP. 102-342 *45 (1992) (emphasis added).

*defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts."* Congress sought only "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law."[13]  *Boim v. Quranic Literacy Inst. & Holy Land Found.,* 291 F.3d 1000, 1010 (7th Cir. 2002); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (The ATA accords victims of terrorism "the remedies of American tort law, including treble damages and attorney's fees.").

The ATA (and FSIA) purposely did not set forth a detailed liability scheme, as that was left to general tort law in each instance.  Rather, Congress through the enactment of the ATA and FSIA merely intended to provide "victims" a cause of action and to codify that additional damages might be sought by victims of terrorism to punish wrongdoers (treble damages and attorneys' fees that might not be recoverable under the common law) *in traditional wrongful death actions.  Id.* The most recent Order below cites no legislative history and no Congressional intent to support the erroneous holding that Congress intended to preempt long-established state estate laws through its creation of the ATA or FSIA.

---

[13]    *See Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1200  (2009) ("The case for federal pre-emption is particularly weak where congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.").

-17-

The judiciary is simply not free to substitute their policy views for those of the legislature that enacted the statute.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014) ("[C]ourts are not at liberty to jettison Congress' judgment[.]").  And what the district court has done here is to take the control of a decedent's estate distributions from control by the state, by judicially determining which individuals merit an award of wrongful death damages – disregarding centuries of state/federal relations on this very issue (estate administration).

### 2.   A Proper Interpretation of the ATA (and FSIA) Can Resolve Thousands of Wrongful Death Claims in This MDL Litigation.

Determining who qualifies to recover wrongful death damages from within the § 2333 phrase "estate, survivors, or heirs" involves "a question of statutory interpretation" that can be resolved by this Court "quickly and cleanly without having to study the record."  *See Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551, 552 (S.D.N.Y. 2013).   If this Court agrees with the plain-language interpretation provided by applicable state law that has been advanced by Petitioners, thousands of claims will be dismissed in their entirety, thereby unclogging an already overburdened and overwhelmed Court and docket.

### 3.   Who Qualifies to Pursue Wrongful Death Damages Under the ATA (and FSIA), and When Wrongful Death Actions Had to Be Filed – Are Novel Questions of First Impression in this Circuit.

Here, the district court's decision to award damages to non-heirs is not only novel, it conflicts with the (1) plain language of the statutes, (2) the applicable

canons of construction, (3) the legislative history of the ATA and FSIA, (4) the "presumption against preemption," and (5) prior precedent that suggests that law of the decedent's domicile (state law) should be employed to determine this question.

And, the issue of whether a statute of limitations should be applied against a defendant-in-default is also a very novel issue in this Circuit.[14] The Supreme Court's guidance on this subject was ignored by the district court – namely, the Supreme Court has noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to

---

[14]     A substantial number of courts have found that they have the discretion to raise the statute of limitations *sua sponte* and have dismissed time-barred claims when presented with a request for a default judgment. *See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671, 671-72 (9th Cir. 2012) ("[T]he district court did not err by addressing the statute of limitations issue *sua sponte* in ruling on plaintiffs' motion for default judgment."); *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (prior to entering default judgment, "it is proper for the Court to consider sua sponte whether Plaintiff's claims are barred by the relevant statute of limitations"); *see also Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir.) (stating in dictum that dismissal is "appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations"), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) (per curiam),

manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630-31.   A level of control over the docket by this Court is desperately needed.   Because "the issue is particularly difficult and of first impression," immediate appellate review is appropriate.   *Capitol Records*, 972 F. Supp. 2d at 551.

### 4.   The ATA's Plain Language and the "Canons of Construction" Support the Petitioners' Reading of the ATA.

"The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."  C. Wright & A. Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update).   A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).

State estate administration laws explicitly limit who qualifies to receive wrongful death damages as an "heir" as to any decedent domiciled in that state at the time of the decedent's death – and the involved states (NY/NJ/CT) all limit wrongful death proceeds to those individuals who were financially dependent on the decedent.   State law necessarily must define what individuals qualify to share

-20-

in an estate's proceeds (including wrongful death proceeds), since it is the states, not the federal government (nor the federal courts), who are responsible for handling the distribution of an estate's proceeds to ensure support for those family members surviving the decedent.  In *Markham v. Allen*, 326 U.S. 490, 494 (1946), the Supreme Court held that Congress did not confer on the federal courts jurisdiction to "probate a will or administer an estate."[15]  As shown below, the state law of the decedent's domicile governs – who is authorized to claim status as a legal "heir," who may bring a claim for wrongful death damages, and how any wrongful death proceeds should be distributed amongst defined heirs.  The district court ruling suggests that it can wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration,

---

[15]    The Supreme Court went on to hold that beyond the probate of a will or administration of an estate, the "federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' *so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*"  *Markham, supra*, at 494 (emphasis added).  Here, expanding who may recover wrongful death damages (beyond the state defined "heirs"), "interferes" with the distribution of "property" (wrongful death damages) that is or should be more properly "in the control of the state."

and wholly ignore federal precedent that frowns upon the creation of federal common law.[16]

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents.   In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate (dependent) family members explicitly described within a statute, in proportion to their financial loss.   *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.[17]   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings.   *Id.* Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate.   *Id.*, § 5-4.1.   Finally, the New York State Surrogate's Court has

---

[16]   *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").

[17]   In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative.   *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555.   State wrongful death claims must be brought within two years.   *See, e.g.*, N.Y. EPTL § 5-4.2.

jurisdiction over the estate of any decedent who was a domiciliary of New York at the time of his or her death to ensure that the estate administration laws are followed. S*ee* N.Y. Surr. Ct. Proc. Act § 205(1). Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate" (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, *expressly violates New York State law*. On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member *in direct disregard of state law, state interests and state policy*. Allowing the district court to flout the control of wrongful death damages distribution by the involved states (domiciles of the decedents) compounds the ongoing harm to heirs that began with the awards of wrongful death damages to non-heirs against Iran (now continuing in awards against the Taliban).[18]

---

[18]    28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent. *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases).

5.     **The Case Law Precedent Cited by the District Court Does Not Support the Claim that "Immediate Family Members" Qualify for Wrongful Death Damages.**

In claiming that the word "survivors" is broader than the legal term "heirs"; in suggesting that the word "survivors" means "immediate family members," and, in implicitly ruling that state estate administration law need not be applied, the Order quotes as precedent, *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006). In fact, *Knox* casts enormous doubt on the claim that the ATA supports claims by "parents and siblings," as *Knox* applied the law of the decedent's domicile (Israel) in determining the applicable interpretation of "survivors or heirs"; *Knox* held that the phrase "survivors or heirs" should include parents and siblings *only* because *Israeli law applied on this issue. Knox*, 442 F. Supp.2d at 74 ("The ATA does *not* define the terms 'survivors' or 'heirs,' *which are usually defined by state law*. . . 'Israeli law provides that …'the legal heirs entitled to succession [are]: (1) [s]pouse of deceased; (2) children and their descendants and parents of deceased and their descendants.'") (emphasis added).

*Knox* otherwise cites as precedent the decision in *Estates of Ungar ex reI. Strachman v. Palestinian Auth.,* 304 F.Supp.2d 232, 261 (D.R.I. 2004) ("*Ungar*"), which the Magistrate Judge cites at the R&R at 7-8 (Add. B), for the unsupported claim that Congress "intended" that "family members who are not legal heirs (such as parents and a sibling of a decedent who leaves children) may bring an action

-24-

pursuant to [§ 2333(a)]." In *Ungar,* however, state law was again *not* in conflict with the applicable law providing a broader number of "survivors or heirs," because *Ungar* expressly recognized that "*Yaron Ungar had not been a resident of any state in this country since he was fourteen years old... the meaning of the terms "survivors" and "heirs" as used in § 2333(a) cannot be determined by referring to the law of a particular [American] state. . . Israeli law provides that … the 'legal heirs entitled to succession [are]: (1) Spouse of deceased; (2) children and their descendants and parents of deceased and their descendants.*'" *Ungar,* 304 F. Supp.2d at 261 (emphasis added).

In short, the two principal decisions relied upon below, in disregarding state law, are inapposite to the conclusion that state law (decedent's domicile) on estate administration need not be considered in interpreting the phrase "survivors, estate or heirs" – *Knox* and *Ungar* properly determined that the law of the decedent's domicile (Israel) controlled who qualified for damages under this phrase. Thus, here these two decisions would require that the estate administration laws of the decedent's domicile be employed in determining who qualifies as "heirs."

It is black letter law that federal courts should *not* create federal common law to displace state-created rules in the absence of strong justifications. *See Rodriguez v. FDIC*, 140 S. Ct. 713, 718 (2020) (emphasizing "the care federal courts should exercise before taking up an invitation to try their hand at common

lawmaking"). "[C]ases in which judicial creation of a special federal rule would be justified" are "'few and restricted,'" *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (citation omitted), and creating a federal rule "must be necessary to protect uniquely federal interests." *Rodriguez*, 140 S. Ct. at 717 (citation and internal quotation marks omitted). Federal judge made law may also have the consequence of impeding upon the autonomy and independence of states by preempting state law signaling federalism concerns. Bradford R. Clark, *Federal Common Law: A Structural Reinterpretation*, 144 U. Pa. L. Rev. 1245, 1248 (1996).

> **6.     Enforcement of the FSIA's and ATA's Statute of Limitations Would Not Only Protect Plaintiffs Who Have Filed Timely Claims, Such Action Would Promote Important Institutional Interests of the Court – the Reduction of an Ever-Expanding, *Ad Infinitum* Docket.**

To be timely in their own right, the wrongful death actions against the Taliban based on the ATA must have been commenced no later than January 1, 2019. *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). The FSIA contains a ten year statute of limitations that commences on the date giving rise to liability. 28 U.S.C. 1605A(b). Many of the Iran and Taliban wrongful death actions here were, however, filed long after these deadlines.

Under the district court's Order, no statute of limitations ever exists as to any defendant-in-default (Add. at 8-9).  This leads not only to absurd and unjust results, it invites serious consequences.  The district court has opened the floodgates to tens of thousands of potential plaintiffs who may now file 9/11 claims in the decades to come against any defendant-in-default, and this is at the expense of the judiciary and the plaintiffs who have filed timely claims.  Surely, that cannot be correct.  Plaintiffs can now "continue piggybacking off of older decisions for decades to come to extract multimillion dollar judgments from absent [defendants-in-default]."  *Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095,  1114 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant-in-default, but the Circuit Court acknowledged that it could not recognize an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs -- since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants -- "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.").

The Supreme Court has ruled that a district court has the "inherent power" to dismiss a case *sua sponte* without prompting by an adverse party.  *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *Leonhard v. United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019).   These decisions address a district court's power to protect important institutional interests of the court.   In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* at 630-31.   A level of control over the docket by this Court is desperately needed.   Here, the enormous and unmanageable size of the ever-expanding docket in this MDL litigation, and the district court's failure to enforce a statute of limitations defense in favor of those plaintiffs who have filed timely claims, directly implicates the institutional interests of the judiciary.

**7.      An Immediate Appeal Will Advance the Ultimate Termination of the Litigation & Will Resolve Uncertainty for Thousands of Plaintiffs.**

Granting this petition will materially advance the ultimate termination of this two-decade-long litigation, and resolve uncertainty that surrounds thousands of wrongful death claims asserted against Iran and the Taliban.   If this Court interprets "estate, survivors, or heirs" in accordance with the state law of the decedent's domicile, and/or applies the FSIA's and ATA's statute of limitations, that will materially advance the litigation by completely ending it as to thousands of plaintiffs, and thereby avoid the significant expense and burdens attendant to this type of complex, MDL litigation.   Granting this Petition is appropriate for an additional reason: this Court's interpretation of the FSIA and ATA will have substantial ramifications in terrorist actions across the United States. Finally, if review is delayed or denied, the legal "heirs" of 9/11 decedents may lose their right to seek appellate guidance forever.

## CONCLUSION

Because irreparable injury will continue to result if this Petition is not granted, because the district court has usurped state law and has been clearly erroneous in doing so, and because the grant of this Petition will advance the ultimate termination of this lawsuit, and resolve uncertainty in thousands of wrongful death actions brought under the ATA, the controlling questions of law involving the statute of limitations and "heirs" vs. "non-heirs," presents the "rare exception to the final judgment rule that generally prohibits piecemeal appeals," *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996), and this Petition should therefore be granted. The district court should be ordered to apply state estate distribution law to the wrongful death claims brought under the FSIA and ATA and dismiss the FSIA and ATA wrongful death claims that have been filed after the FSIA and/or ATA statute of limitations expired.

Dated: May 18, 2023                    Respectfully submitted,

By: _John F. Schutty_

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
Attorneys for the Petitioners
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 7,729 words, excluding the parts of the brief exempted by Rule 32.

This brief complies with the typeface and type style requirements of Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

*John F. Schutty*
John F. Schutty
*Counsel for Plaintiffs-Petitioner*

## ADDENDUM TO PETITION

| | | Document Description |
|---|---|---|
| **A** | | Memorandum Decision & Order: Terminating (ECF#8386 and 8959) and Adopting (ECF#8929) M.J. Netburn's Report and Recommendation. |
| **B** | | Amended Report and Recommendation (re: ECF#8568).  M.J. Netburn Determines that Statutes of Limitation Will Not Be Enforced as to any Defendant-in-Default and "Immediate Family Members" May Recover Wrongful Death Damages Against the Taliban. |
| **C** | | Declaration of Plaintiff Lisa O'Brien. |
| **D** | | Declaration of Patricia Ryan. |

# ADDENDUM A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| IN RE: | <u>MEMORANDUM DECISION</u> |
| | <u>AND ORDER</u> |
| TERRORIST ATTACKS ON | |
| SEPTEMBER 11, 2001 | 03 MDL 1570 (GBD) (SN) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This document relates to:

> *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977
> *Burlingame, et al. v. Bin Laden, et al.*, No. 02-cv-07230
> *Bauer, et al. v. Al Qaeda Islamic Army, et al.*, No. 02-cv-07236
> *Leftt, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353

GEORGE B. DANIELS, United States District Judge:

In July and August 2022, six groups of Plaintiffs moved this Court to issue partial final

default judgments against the Taliban and its former leader Mullah Muhammad Omar based on

injuries sustained in the September 11, 2001 terrorist attacks ("9/11 Attacks"). (*See* ECF Nos.

8274, 8298, 8335, 8363, and 8386;[1] ECF No. 75 in No. 18-cv-03353.[2]) Before this Court is

Magistrate Judge Sarah Netburn's March 15, 2023 Report and Recommendation (the "Report"),[3]

recommending that this Court grant the motions for default judgment and award damages for

certain claims against the Taliban and deny all other motions with leave to refile. (Report, ECF

No. 8929, at 1.) Magistrate Judge Netburn advised the parties that failure to file timely objections

---

[1] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict litigation. *See In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570.

[2] Counsel appears to have transposed case names and misfiled its motion against the Taliban and Muhammad Omar in *Leftt, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353, rather than in *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977. (*See* Mot. Default J., ECF No. 75, at 1 (citing case as "*Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 18-cv-03353").) Neither the Taliban nor Muhammad Omar is a named Defendant in *Leftt, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353. (*See also Ashton* Pls.' Mar. 21, 2023 Letter, ECF No. 8942.)

[3] Magistrate Judge Netburn amended her original March 14, 2023 Report and Recommendation on the motions (ECF No. 8925) with updated exhibit numbers and a revised appendix. (Report at 1 n.2.)

1

to the Report would constitute a waiver on appeal. (*Id.* at 15.) *Dickey* Plaintiffs filed objections on March 28, 2023, (*see* Objections, ECF No. 8959).[4] Because *Dickey* Plaintiffs filed timely objections to the Report regarding default judgments both for parents and siblings of 9/11 victims and for claims filed after the statute of limitations, this Court undertakes a *de novo* review of those portions of the Report. After doing so, this Court ADOPTS the Report.

## I.   BACKGROUND[5]

Plaintiffs filed a complaint seeking to hold the Taliban and Mullah Muhammad Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court order (ECF No. 445), Plaintiffs served the Taliban and Omar by publication. (*See* 2005 Service Verifications, ECF Nos. 709 and 735.) On September 30, 2005, Plaintiffs filed their Sixth Amended Consolidated Master Complaint (ECF No. 1463), the operative complaint for these motions. (*See* Report at 2.) This complaint continued to name the Taliban and Omar as Defendants, with most Plaintiffs also named in the complaint and others added later. (*Id.* (citing Sixth Am. Consolidated Master Compl.; also citing Notice Am., ECF No. 7856).) After Defendants neither responded nor appeared, Plaintiffs moved for entry of default, which this Court granted on May 12, 2006. (*See* Order, ECF No. 1797.)

The present motions seek partial final default judgment against the Taliban and Omar on behalf of different groups of Plaintiffs: U.S. citizens and noncitizens, estate and personal injury Plaintiffs, and immediate family members and their functional equivalents. (*See* Report at 2 (listing motions).) These Plaintiffs have all been awarded relief against Iran and now seek similar damages against the Taliban and Omar. (*Id.*)

---

[4] Given Defendant's default in all related cases, no responses from Defendant are expected.

[5] This Court assumes familiarity with the general background of this multidistrict litigation and will only restate factual background as necessary to address the pending motions. Because the Report is adopted in full unless otherwise noted, this Court refers to facts detailed in the Report throughout this decision.

## II.   LEGAL STANDARDS

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Default Judgments

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. This process includes two steps: (1) determining that the defendant defaulted, and then (2) entering a default judgment. *Nationsbank of Fla. v. Banco Exterior de España*, 867 F. Supp. 167, 174 n. 9 (S.D.N.Y. 1994); *see also* Fed. R. Civ. P. 55(a)–(b). In defaulting, a defendant admits "all of the factual allegations of the complaint, except those relating to damages." *Au Bon Pain Corp. v. Artect, Inc.*,

3

653 F.2d 61, 65 (2d Cir. 1981). A court must evaluate those admissions to determine whether there is "a sufficient basis in the pleadings" to establish defendants' liability. *Di Marco Constructors, LLC v. Sinacola, Inc.*, 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); *accord Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990). If there is a sufficient basis, the court then assesses damages, relying on plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." *DIRECTV, Inc. v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1992).

## III.    MAGISTRATE JUDGE NETBURN DID NOT ERR IN RECOMMENDING THAT ONLY CLAIMS BROUGHT BY U.S. CITIZENS AGAINST THE TALIBAN SHOULD BE GRANTED

Magistrate Judge Netburn properly assessed three groups of claims: (1) against Muhammad Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban. (Report at 4–14.) This Court denies all claims against Omar. This Court denies without prejudice to refile all claims against the Taliban brought by noncitizens. This Court grants judgment against the Taliban on claims brought by U.S. citizens for damages consistent with prior awards against Iran.

### A.  Defendant Muhammad Omar Is Dismissed, and All Motions for Default Judgments against Omar Are Denied as Moot

Plaintiffs' claims against former Taliban leader Muhammad Omar are not viable because he is dead and the Plaintiffs' Executive Committees ("PECs") do not intend to substitute any party for him. (Report at 4 (citing PECs' Sept. 16, 2022 Letter, ECF No. 8535; also citing Sept. 19, 2022 Report and Recommendation, ECF No. 8540).) Magistrate Judge Netburn previously recommended that all claims against Omar be dismissed, to which no party objected. (*See* Sept. 19, 2022 Report and Recommendation.) Finding "no clear error on the face of the record," *see Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted), this Court adopts Magistrate Judge Netburn's September 19, 2022 Report and Recommendation

4

as to Muhammad Omar. Muhammad Omar is therefore dismissed from all actions in this multidistrict litigation pursuant to Federal Rule of Civil Procedure 25(a)(1). In accordance with the Report at issue for the present motions, this Court denies all motions for default judgments against Omar, (*see* Report at 4), leaving the pending motions for default against the Taliban.

### B. All Noncitizens' Motions for Default Judgment Are Denied without Prejudice

Motions by noncitizen estates and noncitizen solatium Plaintiffs ("noncitizen Plaintiffs") against the Taliban cite a number of causes of action under federal and state law. (*See id.*) The complaint, however, includes only three of these grounds: the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 (Count Four); the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note (Count Five); and state law (Counts One, Two, and Three). (Report at 4–5 (citing Sixth Am. Consolidated Master Compl. ¶¶ 463–83).)

Magistrate Judge Netburn properly found that the ATA permits claims only by an injured "national of the United States . . . or his or her estate, survivors, or heirs," 18 U.S.C. § 2333(a), while TVPA claims may only be against individuals. (Report at 5.) Neither statute permits noncitizen Plaintiffs' claims against the unincorporated association of the Taliban.[6] As for state law, noncitizen Plaintiffs assert three claims: "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery." (Report at 5 (citing Sixth Am. Consolidated Master Compl. ¶¶ 463–75.) Noncitizen Plaintiffs, however, fail to identify the specific "causes of action for which the plaintiffs seek damages," rendering this Court unable to determine with certainty the appropriate damages for each noncitizen Plaintiff. (*Id.* (quoting Jul. 11, 2022 Order, ECF No. 8198 (listing requirements for default judgment motions)).)

---

[6] Because noncitizen solatium Plaintiffs here do not clearly identify the nationalities of the decedents and bring their claims pursuant to ATA § 2333, this Court declines to rule on whether § 2333 permits noncitizens to bring solatium claims where decedent family members were U.S. citizens. (*See* Report at 5 n.3.)

5

This Court therefore denies without prejudice the motions brought by noncitizen Plaintiffs and directs that they may refile. In accordance with this Court's prior orders and Magistrate Judge Netburn's Report, any renewed motions are to address the bases for jurisdiction, address the relevant state or federal law authorizing the cause of action, identify the allegations in the complaint establishing liability for each cause of action, provide exhibits that designate the cause of action relevant to each request for damages, and assess the scope of damages available under the relevant law. (*See id.* at 5–6 (citing Jul. 11, 2022 Order).)

### C. U.S. Citizens' Motions for Default Judgment under the ATA against the Taliban Are Granted

In evaluating U.S. citizen Plaintiffs' motions, Magistrate Judge Netburn properly determined (1) who may sue under the ATA, (2) that the Taliban forfeited its statute of limitations defense, and (3) that citizen Plaintiffs are entitled to default judgment awards against the Taliban.

#### 1. The Report Correctly Determined Who May Sue under the ATA

The ATA permits "any national of the United States" or "his or her estate, survivors, or heirs" to sue for "injur[ies]" caused by acts of terrorism. 18 U.S.C. § 2333(a). *Dickey* Plaintiffs argue that the ATA is "silent" as to which individuals may bring an ATA wrongful death claim and who qualifies as "survivors" or "heirs." (*See* Objections at 2–17.) *Dickey* Plaintiffs thus urge this Court to rely on state common law as a "gap filler" for determining who has a cause of action under the ATA, thereby ruling that only legal heirs have such a right. (*Id.* at 9–13.)

Magistrate Judge Netburn correctly found that immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA. (*See* Report 7–8.) First, a wrongful death caused by an act of international terrorism constitutes an "injury" under the ATA. *See, e.g., Honickman v. BLOM Bank SAL*, 6 F.4th 487, 490 (2d Cir. 2021) ("Plaintiffs-Appellants and their family members . . . were injured or *killed* in attacks carried out by Hamas" and sued

6

under the ATA, 18 U.S.C. § 2333) (emphasis added). Second, by its plain text, section 2333 distinguishes between "survivors" and "heirs." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (courts should "give effect . . . to every word Congress used."). The ATA's statutory language is therefore clear both as to who may bring an ATA wrongful death claim and that individuals beyond "heirs" may sue, notwithstanding the *Dickey* Plaintiffs' reliance on unclear legislative history concerning the ATA. (*See* Objections at 4–6); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not . . . allow[] ambiguous legislative history to muddy clear statutory language.")

Moreover, the ability of parents and siblings to seek relief for the 9/11 Attacks has longstanding support in both the law of this multidistrict litigation, *see, e.g.*, *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234–37 (S.D.N.Y. 2003) (awarding default judgments to parents and siblings); (Oct. 3, 2012 Order, ECF No. 2623 (same under the Foreign Sovereign Immunities Act with current framework)), and in other ATA cases, *see e.g.*, *Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 263 (D.R.I. 2004) (finding that use of the term "survivors" in § 2333(a) demonstrates Congress sought to extend liability to "family members who are not legal heirs"); *Knox v. Palestine Liberation Organization*, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) (holding parents and siblings are "survivors" under the ATA). This interpretation of the ATA does not depend on the choice of law analysis at issue in *Ungar* and *Knox*. *See Knox*, 442 F. Supp. 2d at 75 ("The *Ungar* court concluded that, based on the legislative history of the ATA and the underlying purpose of the ATA . . . , the term 'survivors' as used in § 2333(a) includes parents and grown siblings of United States nationals killed by an act of international terrorism."); (*Contra* Objections at 13–15).

Furthermore, the Court "has *discretion* [but is not required] to borrow from state law when there are deficiencies in the federal statutory scheme." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis added). This Court need not restrict to state law the interpretation of the term "survivors" in the ATA, particularly in light of the "distinct need for nationwide legal standards" in the ATA context. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98 (1991) (explaining when federal courts should "fill the interstices of federal remedial schemes with uniform federal rules"). Magistrate Judge Netburn thus correctly held that Americans directly injured, estates and heirs of Americans killed, and immediate family members (and functional equivalents of immediate family members) of Americans killed in the 9/11 Attacks can all bring claims under § 2333. (Report at 8.)

### 2. *The Report Properly Declined to Invoke the Statute of Limitations* Sua Sponte

"District court[s] ordinarily should not raise [the statute of limitations] *sua sponte*," *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016); *see also Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1114–15 (D.C. Cir. 2019) (holding that district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations"). On January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 Attacks to January 2, 2019. *See* Nat'l Def. Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). *Dickey* Plaintiffs urge this Court to deny other Plaintiffs' motions for default judgment filed after that date.[7] (*See* Objections 17–33.) Because the statute of limitations is "an affirmative defense that is waived [or

---

[7] *Dickey* Plaintiffs lack standing to assert the Taliban's statute of limitations defense against other Plaintiffs; it is thus incumbent on this Court to evaluate raising the defense *sua sponte*. (*See* Report at 9 n.5.)

forfeited] if not raised," *Kropelnicki v. Siegel*, 290 F.3d 118, 130 n.7 (2d Cir. 2002), and a district court raising the defense *sua sponte* is disfavored, this Court declines to dismiss *sua sponte* claims by other Plaintiffs against the Taliban as time-barred.

### 3. U.S. Citizen Plaintiffs Are Entitled to Default Judgment Awards

This Court has jurisdiction over the U.S. citizens' default judgment motions under the ATA, (*see* Report at 9–11), and Plaintiffs' allegations establish the Taliban's primary and aiding-and-abetting liability in the 9/11 Attacks,[8] (*see id.* at 11–13). This Court therefore enters default judgment against the Taliban in favor of U.S. citizen Plaintiffs and must assess Plaintiffs' damages.[9] The ATA supports "threefold" damages for pain and suffering, economic loss, and loss of solatium. 18 U.S.C. § 2333; (*see also* Report at 13 (citing cases)). This Court has previously awarded Plaintiffs such damages against Iran. (Report at 13 (citing orders).) Magistrate Judge Netburn correctly adopted and applied to the Taliban this Court's prior damages determinations of pain and suffering and economic damages for the estates of people killed, pain and suffering damages for people injured, and solatium damages for immediate family members (and their functional equivalents) of people killed in the 9/11 Attacks. (*Id.* (citing Plaintiffs' exhibits; also citing Appendix A (calculating damages for *Dickey* Plaintiffs)).) Having reviewed the exhibits filed by Plaintiffs against Iran and the new economic damages sought by the *Burlingame II* Plaintiffs (ECF No. 8364-1), this Court adopts the Report's recommendations and awards treble damages, as provided under § 2333, against the Taliban. (*See* Report at 13–14.)

---

[8] As alleged by Plaintiffs, the Taliban is a non-sovereign "unincorporated association." (*See* Report at 10; *see also* Feb. 21, 2023 Decision, ECF No. 8866, at 22–29 (holding that the United States has not recognized the Taliban as the government of Afghanistan and the Judiciary cannot do so).)

[9] Five citizen Plaintiffs (Diane Genco, Janlyn Scauso, Laurie Spampinato, Kimberly Trudel, and Cella Woo-Yuen) are excluded at counsel's request. (Report at 13 n.7 (citing Oct. 20, 2022 Letter, ECF No. 8660).)

9

Awards are subject to all caveats and corrections noted below and in Report Appendix A. Because U.S. citizens Plaintiffs named in the motion in Case No. 18-cv-03353 (ECF No. 75) have failed to demonstrate that they appear in the Sixth Amended Consolidated Master Complaint at ECF No. 1463, (*see* Report App. A), or file sufficient evidence as to economic damages and solatium damages, that motion is denied without prejudice and with leave to refile.[10]

## IV.   CONCLUSION

This Court GRANTS partial final default judgment as to U.S. citizen Plaintiffs listed in ECF Nos. 8275-1, 8275-3 (other than the five Plaintiffs' claims that will be adjudicated with the motion at ECF No. 8568, *see supra* note 9), 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3,[11] and Report Appendix A, subject to the corrections and caveats described therein.[12]  It is

**ORDERED** that U.S. citizen Plaintiffs are awarded damages as provided in ECF Nos. 8275-1,[13] 8275-3,[14] 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, and Report Appendix A;[15] and it is

---

[10] *See also supra* note 2 (noting motion also filed in case in which the Taliban is not a Defendant).

[11] Decedent columns should read "Michael Bocchino" and Plaintiff columns should read "Mary Ann Falzone, as Personal Representative of the Estate of Thomas Bocchino." (*See* ECF No. 8755-3, ¶ 3.)

[12] In accordance with the Report's recommendations and this Court's February 21, 2023 Decision denying Plaintiffs' motion to satisfy their judgments with DAB funds, the PECs' separate letter request to include "stay" language, staying the effect of default judgments issued to these new default judgment Plaintiffs, is DENIED. (*Contra* PECs' Mar. 24, 2023 Letter, ECF No. 8951.)

[13] Trebled damages of $18,893,874 are awarded to the Estate of Christine Barbuto (pain and suffering of $2,000,000 and economic loss of $4,297,958 for total compensatory of $6,297,958). (*Compare* ECF No. 8275-1, ¶ 27 (listing economic damages as $2,368,810), *with* ECF No. 3370-1, at 1 (listing economic damages as $4,297,958).)

[14] Trebled solatium damages of $25,500,000 are awarded to Frederick Irby (compensatory of $8,500,000). (*Compare* ECF No. 8275-3, ¶ 250 (relationship as parent but the amount of $4,250,000 for siblings), *with* ECF No. 4880, ¶ 441 (relationship as parent and the amount of $8,500,000 for parents).)

[15] Trebled solatium damages of $25,500,000 are also awarded to Anne Lynch, the child of decedent Farrell Lynch. (*Compare* Report at 17, *with* Decl. John F. Schutty, ECF No. 8387-8, at 4.)

**ORDERED** that prejudgment interest is awarded at a rate of 4.96 percent per annum, all interest compounded annually for the period from September 11, 2001 until the date of the judgment for damages; and it is

**ORDERED** that these Plaintiffs may apply for punitive, economic, and/or other damages at a later date, to the extent such damages were not sought in these motions.

Default judgment motion at ECF No. 75 in Case No. 18-cv-03353 and all noncitizen Plaintiffs' motions are DENIED without prejudice and with leave to refile.  Muhammad Omar is dismissed from all actions in this multidistrict litigation.  The Clerk of Court is directed to close the open motions (ECF Nos. 8274, 8298, 8335, 8363, 8386, and 8959 in 03-md-01570; ECF Nos. 1691, 1701, 1708, 1713, 1720, and 1934 in 02-cv-06977; ECF Nos. 230 and 234 in 02-cv-07230; ECF No. 167 in 02-cv-07236; ECF No. 75 in 18-cv-03353).


Dated: March 30, 2023
       New York, New York

                                        SO ORDERED.

                                        GEORGE B. DANIELS
                                        United States District Judge

11

# ADDENDUM B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

       **TERRORIST ATTACKS ON**
       **SEPTEMBER 11, 2001**


-----------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:___3/15/2023___ |

**03-MD-01570 (GBD)(SN)**

<u>AMENDED REPORT &</u>
<u>RECOMMENDATION</u>

**SARAH NETBURN, United States Magistrate Judge.**

**TO GEORGE B. DANIELS, United States District Judge:**

This document relates to:

> <u>Ashton et al. v. al Qaeda Islamic Army, et al.</u>, No. 02-cv-06977
> <u>Burlingame v. Bin Laden, et al.</u>, No. 02-cv-07230
> <u>Bauer et al. v. al Qaeda Islamic Army, et al.</u>, No. 02-cv-07236
> <u>Ashton et al. v. al Qaeda Islamic Army, et al.</u>, No. 18-cv-03353

      Six sets of plaintiffs (collectively, "Plaintiffs") in this multidistrict litigation move for partial final default judgments against the Taliban and Muhammad Omar ("Omar"). ECF No. 8274, 8298, 8335, 8363, 8386; No. 18-cv-03353, ECF No. 75.[1] The Plaintiffs include the estates and family members of people killed and individuals who were injured in the 9/11 Attacks. They assert various federal and state law claims against the Taliban and Omar, who are alleged to have aided al Qaeda and facilitated the 9/11 Attacks. The Court recommends granting default judgments and awarding damages as to certain claims against the Taliban and denying all other motions with leave to re-file.[2]

---

[1] Unless otherwise note, all ECF numbers refer to the main MDL docket, No. 03-md-01570.
[2] This Report & Recommendation solely amends exhibit numbers referenced in ECF No. 8925. Appendix A no longer includes a proposed correction that Plaintiffs corrected in their amended exhibits.

**BACKGROUND**

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. Plaintiffs filed a complaint seeking to hold the Taliban and Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court order, ECF No. 445, Plaintiffs served the Taliban and Omar by publication, ECF Nos. 709, 735 (verifications filed March 2005). The publication notices directed defendants to answer the complaints filed on the multidistrict litigation docket at No. 03-md-01570. Id.

After effectuating service, Plaintiffs filed their Sixth Amended Consolidated Master Complaint, the operative complaint for these purposes. ECF No. 1463. Like their previous complaints, it named the Taliban and Omar as defendants and repeated the same factual allegations asserting the bases for jurisdiction and liability. See id. Most Plaintiffs were named in that complaint, but some were substituted or added later. See, e.g., ECF No. 7856.

Eight months later, neither defendant had responded or appeared, so Plaintiffs moved for entry of default. See ECF No. 1782 (moving under Rule 55.1 of the Local Civil Rules of the Southern and Eastern Districts of New York, which governs entry of default). The Court granted that motion on May 12, 2006. ECF No. 1797.

The present motions ask the Court to grant partial final default judgments against the Taliban and Omar in favor of diversely situated plaintiffs—citizens and noncitizens, estate and personal injury plaintiffs, immediate family members and their functional equivalents. See ECF Nos. 8274 (Ashton I motion), 8298 (Burlingame I motion), 8335 (Burlingame II motion), 8363 (Bauer motion), 8386 (Dickey motion); No. 18-cv-03353, ECF No. 75 (Ashton II motion). The Plaintiffs have all been awarded relief against Iran and now seek similar damages against the Taliban and Omar.

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. This process includes "two steps"—determining that the defendant defaulted and then entering a default judgment. Nationsbank of Fla. v. Banco Exterior de Espana, 867 F. Supp. 167, 274 n. 9 (S.D.N.Y. 1994); see Fed. R. Civ. P. 55(a), (b).

Step one has long been satisfied. The Taliban and Omar were properly served but have not appeared in this case. See ECF Nos. 709, 735. The Court determined that they defaulted in 2006. ECF No. 1797. This default applies even to Plaintiffs added later. See, e.g., ECF No. 5234 (explaining that plaintiffs added by notice of amendment "need not re-serve defendants who have already been served" and that prior Court orders "shall apply with equal force" to the new plaintiffs).

Step two is now before us. Plaintiffs ask the Court to enter default judgment and award damages against the Taliban and Omar. In defaulting, the defendants admitted "all of the factual allegations of the complaint, except those relating to damages." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Court must evaluate those admissions to determine whether there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco Constructors, LLC v. Sinacola, Inc., 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); accord Wagstaff-El v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990). If there is, the Court assesses damages, relying on Plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); accord Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008); see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1992).

The Court evaluates separately claims: (1) against Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban. I recommend denying without prejudice all claims against Omar and claims against the Taliban brought by noncitizens. I recommend granting judgment against the Taliban on claims brought by U.S. citizens with damages consistent with previous awards against Iran.

## I.    The Court Recommends Denying All Motions for Default Judgments Against Omar

Plaintiffs' claims against Omar are not viable. Omar is dead, and the PECs do not intend to substitute any party for him. See ECF Nos. 8535, 8540. The Court determined in a prior Report and Recommendation that all claims against Omar should be dismissed without prejudice. ECF No. 8540. No party objected. In line with that Report, the Court recommends denying Plaintiffs' motions for default judgment against Omar. See Floors-N-More, Inc. v. Freight Liquidators, 142 F. Supp. 2d 496, 503 (S.D.N.Y. 2001) (dismissing complaint rather than entertaining default judgment because "'a default should not be entered when it would be promptly set aside'" (quoting Fed. R. Civ. P. 55(c))).

## II.   The Court Recommends Denying Noncitizens' Motions for Default Judgment

The Court next turns to motions for default judgment brought by noncitizens' estates and noncitizen solatium plaintiffs ("noncitizen plaintiffs") against the Taliban. ECF Nos. 8274, 8298, 8335, 8363. In various places, noncitizen plaintiffs cite causes of action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), (a)(7) (now codified at § 1605A), the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, and state law. ECF No. 8335 at 3–4; see also ECF No. 8275-4 at 2–4 (listing the TVPA, FSIA, and state law as bases for claims by noncitizens). The complaint, however, includes only three of these grounds: the ATA

4

(Count Five), the TVPA (Count Four), and state law (Counts One, Two, and Three). ECF No. 1463 at ¶¶ 463–83.

The ATA permits claims only by an injured "national of the United States . . . or his or her estate, survivors, or heirs." 18 U.S.C. § 2333(a).[3] And the TVPA permits claims only against individuals. 28 U.S.C. § 1350 note. See Mohamad v. Palestinian Auth., 566 U.S. 449, 461 (2012) ("The text of the TVPA . . . d[oes] not extend liability to organizations, sovereign or not."). As such, neither statute authorizes claims by these plaintiffs (noncitizens' estates or noncitizen solatium plaintiffs) against the Taliban (an "unincorporated association"). ECF No. 1493 at ¶ 10.

That leaves state law. The noncitizen plaintiffs assert three claims under state tort law: "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery." ECF No. 1463 at ¶¶ 463–75. The noncitizen plaintiffs do not, however, indicate which state's law applies to which claims or what damages are available for each cause of action.[4] See, e.g., ECF No. 8275-4 at 2–3 (listing noncitizen plaintiffs without indicating cause of action). Without identifying the specific "causes of action for which the plaintiffs seek damages," the Court is unable to determine with certainty the appropriate damages for each noncitizen plaintiff. ECF No. 8198 (listing requirements for renewed motions for default judgment).

The Court therefore recommends DENYING the motions brought by noncitizen plaintiffs and directing them to re-file. In accordance with prior Court orders, renewed motions should

---

[3] Courts disagree about whether § 2333 permits noncitizens to bring solatium claims where their decedent family members were U.S. citizens. See Lelchook v. Islamic Republic of Iran, No. 16-cv-07078 (ILG)(RLM), 2020 WL 12656283, at *3–7 (E.D.N.Y. Nov. 23, 2020) (discussing split in authority) adopted at 2022 WL 7534195 (Oct. 13, 2022). That question is not presented here because Plaintiffs' exhibits listing noncitizen solatium plaintiffs do not identify the nationalities of the decedents.
[4] The Plaintiffs' citation to judgments against Iran is unhelpful on this front because those claims were based on the FSIA.

include exhibits that designate the cause of action relevant to each request for damages, see ECF
No. 8198, and should additionally indicate the relevant state or federal law authorizing that cause
of action. Further, motions should address the bases for jurisdiction, the allegations in the
complaint establishing liability for each cause of action, and the scope of damages available
under the relevant law.

### III.  The Court Recommends Granting Citizens' Motions for Default Judgment Under the ATA

Finally, the Court addresses motions by U.S. citizens ("citizen plaintiffs") for default
judgment against the Taliban. Citizen plaintiffs assert claims pursuant to the ATA, 18 U.S.C.
§ 2333, and other state and federal law. If their motions are granted, they will join a growing
class of people trying to collect judgments from the Taliban. No Taliban funds are currently
available, but the prospect of many judgment creditors vying for limited assets triggered concern
among the Dickey Plaintiffs. They fear that it will be hard to collect on their own judgments if
the Court enters default judgments on behalf of plaintiffs whose claims are, in their view, legally
invalid.

With the goal of allowing every party to be heard and to ensure that the Court is carefully
applying the law in these uncontested motions, the Court permitted supplemental briefing on: (1)
whether the ATA authorizes claims by immediate family members who are not "heirs" under the
relevant state law; and (2) whether the Court should sua sponte invoke the statute of limitations
when adjudicating motions for default judgment against the Taliban.

It is within the Court's authority to consider and decide these issues. Who can assert
claims against the Taliban is a threshold inquiry at the default judgment stage—that is, whether
there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco
Constructors, 407 F. Supp. 2d at 445. Whether a claim is barred by the statute of limitations is

one of the "three factors" courts can consider when exercising their "discretion" to enter default

judgments—namely, the existence of "a meritorious defense." <u>Gunnells v. Teutul</u>, 469 F. Supp.

3d 100, 102–03 (S.D.N.Y. 2020).

A.    **The ATA Authorizes Claims by Immediate Family Members**

The ATA permits "any national of the United States" or "his or her estate, survivors, or

heirs" to sue for injuries caused by acts of terrorism. 18 U.S.C. § 2333(a). The <u>Dickey</u> Plaintiffs

argue that federal law does not sufficiently define who qualifies as "survivors" or "heirs" under

the ATA and urge the Court to look to state law to fill in the resulting gap. <u>See</u> ECF No. 8814.

The <u>Dickey</u> Plaintiffs, accordingly, assert that only plaintiffs who are "heirs" under applicable

state law can bring ATA claims. <u>See id.</u> The PECs argue that the Court should interpret § 2333 in

line with other district courts that have interpreted the term "survivors" to encompass immediate

family members who might not qualify as legal heirs. <u>See</u> ECF No. 8813. The Court draws on

the statute's text, history, and purpose to conclude that immediate family members of people

killed in terrorist attacks, not just their legal heirs, may sue under the ATA.

The plain text of § 2333 dictates that "survivors" include people other than "heirs." A

contrary ruling would defy basic rules of statutory construction that direct courts to "give effect

. . . to every word Congress used." <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 339 (1979). This

alone requires reading "survivors" to include family members who are not considered "heirs"

under the relevant estate law.

Several courts agree. In <u>Estates of Ungar ex rel. Strachman v. Palestinian Authority</u>, 304

F. Supp. 2d 232 (D.R.I. 2004), the district court analyzed the text, history, and purpose of § 2333

to hold that the parents and siblings of a person killed in a terrorist attack were entitled to bring

claims under the ATA. The court explained, "Congress did not intend that the class of persons

able to bring actions pursuant to § 2333(a) should be interpreted narrowly." <u>Id.</u> at 263. By

"including the term 'survivors,'" it "evidenced an intention" to extend liability to "family members who are not legal heirs." Id. In adopting Ungar's analysis, the district court in Knox v. Palestine Liberation Organization, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006), emphasized that the "legislative history of the ATA and the underlying purpose of the ATA to deter and punish acts of international terrorism" supports including parents and siblings in "survivors." See also Est. of Henkin v. Kuveyt Turk Katilim Bankasi, A.S., 495 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (clarifying that § 2333 does not limit a family to a single suit brought by either the injured person, his estate, his heir, or his survivor).

Linking the interpretation of § 2333 to state law would also prevent the ATA from providing uniform access to the federal courts. Through the ATA and similar causes of action, Congress aimed to "provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief" for injuries from terrorist acts. 28 U.S.C. § 2333 note. That goal is inconsistent with an interpretation of § 2333 that depends on states' estate law, which varies in breadth and application.

For these reasons, the Court holds that people directly injured, estates and heirs of people killed, and immediate family members (and functional equivalents of immediate family members) of people killed in the 9/11 Attacks can all bring claims under § 2333.

**B.     The Court Will Not Invoke the Statute of Limitations *Sua Sponte***

On January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 Attacks to January 2, 2019. See National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). The Dickey Plaintiffs ask the Court to reject motions for default judgment from plaintiffs who filed their claims after that date. Typically, such a request would come from a defendant. After all, the statute of limitations is "an affirmative defense that is waived if not raised." Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d

8

Cir. 2002). Here, in the default posture, the Court must decide whether to invoke the statute of limitations *sua sponte*.

The Court of Appeals for the D.C. Circuit has authoritatively addressed this issue and held that it is reversable error for a district court to invoke the statute of limitations on behalf of a defaulting defendant in the terrorism context. In Maalouf v. Islamic Republic of Iran, 923 F.3 1095, 1114–15 (D.C. Cir. 2019), the court held that the district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations" to dismiss cases brought under the FSIA. Its reasoning is consistent with precedent from the Court of Appeals for the Second Circuit, which recognizes that "district court[s] ordinarily should not raise [the statute of limitations] sua sponte," Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, Sec. & Exch. Comm'n v. Amerindo Inv. Advisors, 639 F. App'x 752, 754 (2d Cir. 2016). See also Davis, 810 F.2d at 45 (finding "an error of law" where district court raised statute of limitations *sua sponte*). Accordingly, the Court declines to dismiss *sua sponte* claims against the Taliban as time-barred.[5]

### C.   The Court's Jurisdiction Is Sufficient for Default Judgment

The Court has subject matter jurisdiction over ATA claims under § 2333(a). Sokolow v. Palestine Liberation Org., 583 F. Supp. 2d 451, 455 (S.D.N.Y. 2008). Default judgment is therefore appropriate for these claims. See Bracken v. MH Pillars Inc., 290 F. Supp. 3d 258, 268 (S.D.N.Y 2017) (dismissing rather than granting default judgment where court lacked subject matter jurisdiction).

---

[5] The Dickey Plaintiffs contend that such dismissal would not be on the Court's own motion (that is, *sua sponte*) because they are raising it. While the Court concludes that it is appropriate to confirm its own authority before entering default judgments, for the reasons stated by the PECs, the Dickey Plaintiffs do not have standing to assert the Taliban's defense against other parties.

The Court need not establish its personal jurisdiction over the Taliban before entering default judgment. Personal jurisdiction protects an individual right that can be "purposely waived or inadvertently forfeited" by a defendant (much like the statute of limitations). City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011). Where no defendant appears, the Court of Appeals does not require courts to analyze personal jurisdiction before granting default judgment. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213, 213 n. 7 (2d Cir. 2010) (holding that courts "may" analyze personal jurisdiction but leaving open the question whether they "*must*" do so before entering default judgment). Here, the Court is "skeptical" that addressing personal jurisdiction "without the benefit of adversarial briefing" would "actually preserve[] judicial resources." CKR Law LLP v. Anderson Invs. Int'l, LLC, 544 F. Supp. 3d 474, 480 (S.D.N.Y. 2021) (declining to analyze personal jurisdiction). It therefore declines to decide whether it has jurisdiction over the Taliban in this context.

If the Court were required to reach the issue, Plaintiffs' allegations offer a "prima facie" case that the Taliban is subject to the Court's jurisdiction. Mwani v. bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005) (explaining that courts within the D.C. Circuit must establish "prima facie" jurisdiction before entering default judgment). To begin, Plaintiffs describe the Taliban as a non-sovereign "unincorporated association," so the jurisdictional requirements of the FSIA would not apply.[6] As with all non-sovereign defendants, the Taliban is subject to the Court's jurisdiction if (1) it was properly served; (2) there is a statutory basis for personal jurisdiction; and (3) the

_____

[6] The Court treats the Taliban as a non-sovereign defendant for two additional reasons. First, "[a] defendant seeking to invoke the FSIA's protections must make a *prima facie* showing that it is a foreign sovereign," which the Taliban has failed to do. Beierwaltes v. L'Office Federale De La Culture D LA Confederation Suisse, 999 F.3d 808, 817 (2d Cir. 2021). Second, the United States has not recognized the Taliban as the government of Afghanistan, and the judicial branch cannot do so. See ECF No. 8866 at 22–29.

exercise of jurisdiction is consistent with due process. Esso Expl. & Prod. Nigeria Ltd. v.

Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 69 (2d Cir. 2022). Plaintiffs meet the first prong

because they served the Taliban by publication pursuant to the Court's order. ECF Nos. 445,

709, 735. They meet the second under either a state long-arm statute or Rule 4(k). Cf. ECF No.

8911 at 14–16 (discussing interplay between state long-arm statutes and Rule 4(k)). And they

meet the third with allegations that the Taliban "supplied material and logistical support to AL

QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of

American and murder U.S. citizens." ECF No. 1463 at ¶ 11. That is the type of "intentional, and

allegedly tortious," conduct "expressly aimed" at the United States that would satisfy due

process. In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008). Collectively,

these allegations create a *prima facie* case for personal jurisdiction. Jurisdiction poses no barrier

to granting default judgment.

> **D.    Plaintiffs' Allegations Establish the Taliban's Liability**

Section 2333 creates both primary and aiding-and-abetting liability for non-sovereign

defendants. A defendant is subject to primary liability under § 2333(a) if he engaged in unlawful

acts of international terrorism that proximately caused the plaintiff's injuries. Lelchook v.

Islamic Republic of Iran, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019). International terrorism

"involve[s] violent acts or acts dangerous to human life that are a violation of the criminal laws";

"appear to be intended" "to intimidate or coerce a civilian population," "influence the policy of a

government by intimidation or coercion," or "affect the conduct of a government by mass

destruction, assassination, or kidnapping"; and "occur primarily outside" the U.S. or "transcend

national boundaries." 18 U.S.C. § 2331(1). As such, "material support to a known terrorist

organization" can trigger liability if that material support "involve[ed] violence or endangering

human life" and "appear[ed] intended to intimidate or coerce civilian populations or to influence or affect governments." Linde v. Arab Bank, PLC, 882 F.3d 314, 332 (2d Cir. 2018).

Alternatively, a defendant is subject to aiding-and-abetting liability under § 2333(d)(2) if: (i) he "'aid[ed]'" the designated foreign terrorism organization whose act of terrorism caused the plaintiff's injury; (ii) he was "'generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance'"; and (iii) he "'knowingly and substantially assist[ed]'" the act of terrorism. Honickman v. BLOM Bank SAL, 6 F.4th 487, 494 (2d Cir. 2021) (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)); see also 18 U.S.C. § 2333(d)(2).

Plaintiffs' allegations, taken as true, satisfy both theories. They allege that the Taliban "supplied material and logistical support to AL QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of American and murder U.S. citizens." ECF No. 1463 at ¶ 11. The Taliban was so "closely linked" with al Qaeda that bin Laden allegedly served as "the *de facto* head of TALIBAN intelligence and security." Id. at ¶ 12. It allegedly provided bin Laden with the resources to "construct and maintain camps in Afghanistan and train AL QAEDA members and other terrorists from around the world in the deadly and depraved methods of committing acts of violence, murder, destruction and mayhem." Id. And the Taliban "continued to offer sanctuary to BIN LADEN and AL QAEDA members" after 9/11. Id. By facilitating al Qaeda's terrorist training camps, the Taliban materially supported the 9/11 Attacks in a way that "endanger[ed] human life," was "intended to intimidate or coerce civilian[s]" or their governments, and proximately caused citizen plaintiffs' injuries, such that it is primarily liable under § 2333(a). Linde, 882 F.3d at 332. Those same allegations show the mental state and assistance to a foreign terrorism organization necessary to establish aiding-and-abetting liability

under § 2333(d)(2). See Honickman, 6 F.4th at 494. Based on these liability findings, the Court recommends entering default judgment against the Taliban in favor of citizen plaintiffs.[7]

**E.**     **Plaintiffs Are Entitled to Treble Damages**

All that remains is for the Court to assess damages. The ATA supports "threefold" damages for pain and suffering, economic loss, and loss of solatium. § 2333; see Morris v. Khadr, 415 F. Supp. 2d 1323 (D. Utah 2006) (awarding pain and suffering damages under the ATA); Knox, 442 F. Supp. 2d 62 (same for economic damages); Pescatore v. Palmera Pineda, 345 F. Supp. 3d 68 (D.D.C. 2018) (same for solatium damages).

The Court has previously awarded Plaintiffs these types of damages against Iran. See, e.g., ECF Nos. 3226 (pain and suffering damages), 3296 (economic damages), 3396 (solatium damages), 5954 (pain and suffering for personal injury damages). The Court does not need to re-evaluate the evidence supporting those determinations. It adopts and applies to the Taliban each prior determination of pain and suffering and economic damages for the estates of people killed, pain and suffering damages for people injured, and solatium damages for immediate family members (and the functional equivalents of immediate family members) of people killed in the 9/11 Attacks, as set forth in ECF Nos. 8275-1, 8275-3, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A (calculating appropriate damages for Dickey plaintiffs), subject to the corrections and caveats described in Appendix A. In accordance with § 2333, it also recommends awarding treble damages.

---

[7] At counsel's request, the Court excludes five plaintiffs from this motion—Diane Genco, Janlyn Scauso, Laurie Spampinato, Kimberly Trudel, and Cella Woo-Yuen. See ECF No. 8660. These plaintiffs' claims will be promptly resolved with the motion for default judgment at ECF No. 8568.

One group of plaintiffs requires the Court to make new findings. The Burlingame II plaintiffs seek economic damages not awarded in connection with any previous default judgment motion. The Court has reviewed the evidence supplied by these plaintiffs and concludes that it supports the requested amounts. Accordingly, the Court recommends awarding economic damages to the plaintiffs as listed in ECF No. 8364-1, and awarding treble damages as provided under § 2333.

## CONCLUSION

The Court recommends GRANTING partial final default judgment as to the U.S. citizen plaintiffs listed in ECF Nos. 8275-1, 8275-3 (other than the five whose claims will be adjudicated with the motion at ECF No. 8568 in accordance with ECF No. 8660), 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A, subject to the corrections and caveats described there. To that end, it recommends:

- awarding these plaintiffs damages as provided in ECF Nos. 8275-1, 8275-3, 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A;

- awarding pre-judgment interest assessed at 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages; and

- permitting these plaintiffs to seek punitive, economic, and other appropriate damages at a later date, to the extent such damages were not sought in these motions.

The Court recommends DENYING all other motions with leave to re-file. It further recommends permitting all plaintiffs in these actions to apply for default judgment awards in later stages, to the extent such awards have not already been addressed.

SARAH NETBURN
United States Magistrate Judge

DATED:      March 15, 2023
            New York, New York

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

# APPENDIX A

Caveats & Corrections:

The Court was unable to locate the <u>Ashton II</u> Plaintiffs in the complaint at ECF No. 1463. Its recommendation is therefore contingent on counsel providing the Court with the docket number(s) or the page number(s) of the complaint that added them as plaintiffs against the Taliban. Counsel should file this information with 14 days.

The plaintiffs and decedents listed at ECF Nos. 8364-1 at ¶ B-8, 8755-1 at ¶ 41, and 8755-3 at ¶ 32 appear to have been inadvertently switched. Damages should therefore should be awarded to the person named in the decedent's column. Plaintiffs should advise the Court within 14 days if this is incorrect.

| <u>Dickey</u> Plaintiff | Pain & Suffering | Economic | Solatium | Total Compensatory | Treble Damages |
|---|---|---|---|---|---|
| Estate of Joseph Dickey, Jr. | $2,000,000 | $16,022,303.00 | | $18,022.303.00 | $54,066,909.00 |
| Irene Dickey | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Joseph Dickey III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Elizabeth Dickey | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Eaton | $2,000,000 | $20,689,993.00 | | $22,689,993.00 | $68,069,979.00 |
| Jacqueline Eaton | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Estate of James Kelly | $2,000,000 | $19,639,410.00 | | $21,639,410.00 | $64,918,230.00 |
| Joanne Kelly | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Brianne Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kaitlyn Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Colleen Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Erin Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Timothy O'Brien | $2,000,000 | $94,984,220.00 | | $96,984,220.00 | $290,952,660.00 |
| Lisa O'Brien | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Madeline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Jacqueline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Michael Seaman | $2,000,000 | $15,768,595.00 | | $17,768,595.00 | $53,305,785.00 |
| Dara Seaman | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Michaella Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Mary Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Edward Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Sliwak | $2,000,000 | $3,698,489.00 | | $5,598,489.00 | $17,095,467.00 |
| Susan Sliwak | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Ryan Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kyle Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Nicole Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of John Wallice, Jr. | $2,000,000 | $16,298,335.00 | | $18,298,335.00 | $54,895,005.00 |
| Allison Wallice | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John Wallice III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Christian Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| Patrick Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Farrell Lynch | $2,000,000 | $18,289,614.00 | | $20,289,614.00 | $60,868,842.00 |
| Eileen Lynch | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Kathleen Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Meaghan Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |

# ADDENDUM C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br><br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)
                         -and-
All Wrongful Death Default Judgment Applications Filed Against the Taliban


**DECLARATION OF PLAINTIFF LISA O'BRIEN IN SUPPORT OF RULE 72(b)(2) OBJECTIONS TO MARCH 15 REPORT & RECOMMENDATION [ECF#8929]**

Lisa O'Brien, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Timothy M. O'Brien, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the surviving spouse of Timothy M. O'Brien, and on behalf of the only other New York State designated "heirs" of my late husband, our three children: John O'Brien, Madeline O'Brien, and Jacqueline O'Brien.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 16 Wishing Well Lane, Old Brookville, New York 11545 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.     For the foregoing reasons, I ask that the Court to deem my children and me as the only "immediate family members" of Timothy O'Brien.

5.     My attorney (John F. Schutty) has advised me that under New York State estate administration law, when a decedent is survived by a spouse and children, they are considered the decedent's only "legal heirs" (New York estate administration law explicitly denies parents and siblings of a decedent any wrongful death damages under such circumstances).

6.     I was originally unaware that my ex-in-laws (my deceased husband's parents and siblings) had filed lawsuits (separate apart from mine) for alleged wrongful death damages sustained as a result of my husband's death.

7.     My attorney only recently completed a search of the MDL docket and advised me, for the first time, about the substantial wrongful death damages that were awarded against the Islamic Republic of Iran ("Iran") and in favor of my ex-in-laws.

8.     I was dismayed to learn how large the awards were to my ex-in-laws and even more dismayed to learn how these judgments affected/reduced the distribution of money from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") to me and my children.

9.     Here is what my attorney has told me about the default judgments that were awarded to my ex-in-laws against Iran:

-2-

| **Non-Legal Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran** | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards** |
| 12/18/2015 *Burnett* ECF#1 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 7/31/2017 ECF#3666 |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 7/29/2019 ECF#4706 |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 4/27/2018 ECF#3986 |
| 09/04/2019 ECF#5087 | " | " | Kevin O'Brien (Sibling) | $4,250,000* 9/6/2019 ECF#5087 |
| - | *[No DJ Filed Yet]* | - | Sean O'Brien (Sibling) | *[$4,250,000] [No DJ Filed Yet]* |
| **Total Solatium Damages Awarded to Non-Heirs Thus Far** | | | | **$38,500,000** |

*We have been unable to determine when if Kevin O'Brien was added as a party-plaintiff, but he was issued a default judgment award.

10.     And here are the default judgment awards granted to me and my three children against Iran:

-3-

| Legal Heirs of Timothy O'Brien Awarded Solatium Damages against Iran[1] | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Awards |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 01/07/2020 ECF#5452 |
| " | " | " | John O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| **Total Solatium Damages Awarded to Legal Heirs Against Iran** | | | | **$38,000,000** |

11.     Upon information and belief, awards against Iran were granted to non-heirs without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (a 10-year statute of limitations).  And non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants. Undeniably, my children and I were hurt by the award of wrongful death damages to my deceased husband's parents and siblings and resulting payments by the USVSST.

12.     My attorney now has advised that my ex-in-laws also have default judgment applications for wrongful death damages against the Taliban.

13.     Below is what my attorney has advised me:

---

[1]     The Estate of Timothy M. O'Brien was also awarded economic loss damages of $94,984,220 (ECF MDL#5376), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal heirs of my husband to a total cap of $35 million (solatium plus economic loss damages) before our USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent." What is undeniable is that the recoveries of parents and siblings necessarily decrease the Fund's assets and limit what is available to heirs. *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

-4-

| Non-Heirs of Timothy O'Brien Who Have Requested Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 04/29/2017 ECF #3663 | *Burnett et al. v. Al Baraka Inv. Dev. Corp., et al.,* No. 03-cv-9849 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 01/20/2022 ECF#7618 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 " " |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 " " |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 |
| 10/25/2022 ECF #8679-1 | " | " | Kevin O'Brien (Sibling) | $4,250,000 09/26/2022 ECF#8559 |
| " | " | " | Sean O'Brien (Sibling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$42,500,000** |

| **Legal Heirs of Timothy O'Brien Seeking Solatium Damages against the Taliban** |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 08/17/2022 ECF#8386 |
| " | " | " | John O'Brien (Child) | $8,500,000 " " |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 " " |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

14.     Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban.  Again, awards to non-heirs, and those who have filed untimely claims, will, at a minimum, reduce the recoveries of my children and me from the Taliban and any limited fund of money that may be available.

15.     I expressly object to the Court making wrongful death awards to "non-heirs."

16.     I also object to the Court issuing awards to plaintiffs who have filed claims after the statute of limitations has expired.  This Court apparently has previously determined that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent, against the statute of limitations.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1.  Please do not allow non-heirs to "piggy-back" on my timely legal action, and then reduce the wrongful death damage money paid to my late husband's estate.

Dated: New York, New York
     March 28, 2023

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Lisa O'Brien

-8-

# ADDENDUM D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF PATRICIA RYAN IN SUPPORT
OF DEFAULT JUDGMENT APPLICATION AGAINST THE TALIBAN**

Patricia Ryan, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of John J. Ryan, Jr., who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the surviving spouse of John J. Ryan, Jr., and on behalf of the only other New Jersey State designated "heirs" of my late husband, our three children: Colin Ryan, Kristen Ryan and Laura Ryan.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 53 Ellsworth Drive, W. Windsor, New Jersey 08550, at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      For the foregoing reasons, I ask that the Court to deem my children and me as the only "immediate family members" of John J. Ryan, Jr.

5.      My attorney (John F. Schutty) has advised me that under New Jersey State estate administration law, when a decedent is survived by a spouse and children, they are considered the decedent's only "legal heirs" (New Jersey estate administration law explicitly denies parents and siblings of a decedent any wrongful death damages under such circumstances).

6.      I was originally unaware that my ex-in-laws (my deceased husband's parents and siblings) had filed lawsuits (separate apart from mine) for alleged wrongful death damages sustained as a result of my husband's death.

7.      My attorney only recently completed a search of the MDL docket and advised me about the substantial wrongful death damages that were awarded against the Islamic Republic of Iran ("Iran") and in favor of my ex-in-laws.

8.      I was dismayed to learn how large the awards were to my ex-in-laws and even more dismayed to learn how these judgments affected/reduced the distribution of money from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") to me and my children.

9.      Here is what my attorney has told me about the default judgments that were awarded to my ex-in-laws against Iran:

| Non-Legal Heirs of John J. Ryan, Jr. Awarded Solatium Damages Against Iran | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Awards |
| 12/28/2015 *Burnett* ECF#1 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 *(In-laws were individually named in complaint)* | Motley Rice LLC | John J. Ryan (Parent-Deceased) | $8,500,000 10/31/2016 ECF#3387 |
| ECF#3371-1 | *Bauer, et al. v. al Qaeda Islamic Army, et al.,* No. 02-cv-7236 *(In-laws were not individually named in complaint)* | Baumeister & Samuels, P.C. | Mary V. Ryan (Parent-Deceased) | $8,500,000 10/31/2016 ECF#3387 |
| | | | Colleen Ryan (Sibling-Deceased) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Aileen Ryan (Sibling) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Patrick Ryan (Sibling) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Teague M. Ryan (Silbling) | $4,250,000 10/31/2016 ECF#3387 |
| **Total Solatium Damages Awarded to Non-Heirs Thus Far** | | | | **$34,000,000** |

10.    And here are the default judgment awards granted to me and my three children against Iran:

| Legal Heirs of John J. Ryan, Jr. Awarded Solatium Damages Against Iran[1] | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards** |
| 8/31/2015 ECF#3014 | *Ryan, et al. v. Islamic Republic of Iran, et al.,* No. 20-cv-00266 (default judgment now moved to *Ashton* action by virtue of MDL ECF#8985) | Law Office of John F. Schutty P.C. | Patricia Ryan (Spouse) | $12,500,000 2/21/2020 ECF#5999 |
| | | | Colin Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| | | | Kristen Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| | | | Laura Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| **Total Solatium Damages Awarded to Heirs Thus Far** | | | | **$38,000,000** |

11.     Upon information and belief, awards against Iran were granted to non-heirs without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (a 10-year statute of limitations).  And non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants. Undeniably, my children and I were hurt by the award of wrongful death damages to my deceased husband's parents and siblings and resulting payments by the USVSST.

---

[1]     The Estate of John J. Ryan, Jr. was also awarded economic loss damages of $16,159,990 (ECF MDL#5999), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal heirs of my husband to a total cap of $35 million (solatium plus economic loss damages) before our USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent."  What is undeniable is that the recoveries of parents and siblings necessarily decrease the Fund's assets and limit what is available to heirs.  *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

12.     My attorney now has advised that my ex-in-laws also have filed default judgment applications for wrongful death damages against the Taliban.

13.     Below is what my attorney has advised me has been filed by the non-heirs and heirs of my deceased husband:

| **Non-Heirs of John J. Ryan, Jr. Who Have Requested Solatium Damages against the Taliban** | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 01/20/2022 ECF#7618 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 | Motley Rice LLC | John J. Ryan (Parent-Deceased) | $8,500,000 01/20/2022 ECF#7621 |
| | | | Mary V. Ryan (Parent-Deceased) | $8,500,000 " |
| | | | Colleen Ryan (Sibling-Deceased) | $4,250,000 " " |
| | | | Aileen Ryan (Sibling) | $4,250,000 " " |
| | | | Patrick Ryan (Sibling) | $4,250,000 " " |
| | | | Teague M. Ryan (Silbling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$34,000,000** |

| Legal Heirs of John J. Ryan, Jr. Seeking Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Awards Sought |
| 02/01/2022 ECF#7643 | *Ryan, et al. v. Islamic Republic of Iran, et al.,* No. 20-cv-00266 (default judgment now moved to *Ashton* action by virtue of MDL ECF#8985) | Law Office of John F. Schutty P.C. | Patricia Ryan (Spouse) | $12,500,000 02/01/2022 ECF#7644 |
| | | | Colin Ryan (Child) | $8,500,000 " " |
| | | | Kristen Ryan (Child) | $8,500,000 " " |
| | | | Laura Ryan (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

14.     Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban.  Again, awards to non-heirs, and those who have filed untimely claims, will, at a minimum, reduce the recoveries of my children and me from the Taliban and any limited fund of money that may be available.

15.     I expressly object to the Court making wrongful death awards to "non-heirs."

16.     I also object to the Court issuing awards to plaintiffs who have filed claims after the statute of limitations has expired.  This Court apparently has previously determined that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent, against the statute of limitations.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1.  Please do not allow non-heirs to "piggy-

-6-

back" on my timely legal action, and then reduce the wrongful death damage money paid to my

late husband's estate.

Dated: New York, New York
        April 2⎵, 2023

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

                                        Patricia Ryan