# 23-_____

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

IN RE: LISA O'BRIEN and PATRICIA RYAN,

*Plaintiffs-Petitioners.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001
03-MD-01570 (GBD)(SN)

## APPENDIX TO PETITION FOR WRIT OF MANDAMUS
## VOLUME I OF II
### (Pages A1 to A192)

JOHN F. SCHUTTY
LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, 9th Floor
New York, New York 10022
(646) 345-1441

*Attorneys for Plaintiffs-Petitioners*

## APPENDIX TO PETITION

| Page Numbers | Date Filed | MDL ECF# | Legal Action | Document Description |
|---|---|---|---|---|
| A 1-3 | 04/06/2022 | (*Fed. Ins.* ECF# 1107) | *Federal Insurance Co. v. al Qaeda*, 03-cv-6978 | Order: Plaintiffs [Commercial Insurance Companies] Have Moved for a Partial Final Default Judgment against the Taliban.  The Motion Is Granted. |
| A 4-15 | 10/14/2011 | 2479 | *Federal Insurance Co. v. al Qaeda*, 03-cv-6978 | Report and Recommendations: Plaintiffs [Commercial Insurance Companies] Should Be Awarded Judgment on Their Subrogation Claims Against al Qaeda Under the ATA. |
| A 16-20 | 12/16/2011 | 2502 | *Federal Insurance Co. v. al Qaeda*, 03-cv-6978 | Memorandum Decision & Order: Court adopts the Report and Recommendation (ECF#2479) in its entirety. |
| A 21-23 | 12/22/2011 | 2516 | *Havlish v. Bin Laden*, 03-cv-9848 | Order and Judgment: Plaintiffs' Motion for Judgment by Default [Wrongful Death] Against the Sovereign Defendants, The Islamic Republic of Iran, *et al*., and Non-Sovereign Defendants, The Taliban *et al.,* Is Granted and Final Judgment on Liability Is Entered in Favor of All *Havlish* Plaintiffs. |
| A 24-42 | 07/30/2012 | 2618 | " | Report & Recommendation to the Honorable George B. Daniels: [Wrongful Death] Plaintiffs Should Be Awarded Described Damages Against the Sovereign (Iran, *et al*.) and Non-Sovereign Defendants (Taliban, *et al*.). |
| A 43-49 | 10/03/2012 | 2623 | " | Memorandum Decision and Order: Court Adopts the Report and Recommendation (ECF#2618) in Its Entirety. Judgment Should Be Entered Against the Sovereign Defendants (Iran, *et al*.) for the Following Damages: (1) Economic Damages; (2) Damages for Pain and Suffering; (3) Punitive Damages; and (4) Damages for Solatium.  The Non-Sovereign Defendants (Taliban, *et al*.) Are Jointly and Severally Liable for Same Damages as Foreign Sovereigns Under Traditional Tort Principles. |

| | | | | |
|---|---|---|---|---|
| A 50-62 | 12/16/2019 | 5367 | *Ashton et al. v. al Qaeda Islamic Army et al., 02-cv-6977* | Motion for Default Judgment as to Certain Plaintiffs in *Burlingame* (*Ashton-Dickey* Plaintiffs) Against the Islamic Republic of Iran. |
| A 63-69 | " | 5368 | " | Declaration of John F. Schutty in Support re: ECF#5367. |
| A 70-71 | " | 5368-1 | " | Ex. A - Declaration of Irene Dickey (without exhibits). |
| A 72-73 | " | 5368-2 | " | Ex. B - Declaration of Jacqueline Eaton (without exhibits). |
| A 74 | " | 5368-3 | " | Ex. C - Declaration of Joanne Kelly (without exhibits). |
| A 75-76 | " | 5368-4 | " | Ex. D - Declaration of Lisa O'Brien (without exhibits). |
| A 77-78 | " | 5368-5 | " | Ex. E - Declaration of Dara Seaman (without exhibits). |
| A 79-80 | " | 5368-6 | " | Ex. F - Declaration of Susan Sliwak (without exhibits). |
| A 81-82 | " | 5368-7 | " | Ex. G - Declaration of Allison Wallice (without exhibits). |
| A 83-84 | " | 5369 | " | Proposed Order. |
| A 85-88 | 08/17/2022 | 8386 | *Ashton et al. v. al Qaeda Islamic Army et al., 02-cv-6977* | Amended Motion for Default Judgment of the *Ashton-Dickey* Plaintiffs as to the Taliban and Omar Defendants. |
| A 89-103 | " | 8387 | " | Declaration of John F. Schutty, Esq. in Support re: Amended Motion for Default Judgment as to Taliban and Omar Defendants. |
| A 104-105 | " | 8387-1 | " | Ex. 1 - Declaration of Irene Dickey for Default Judgment Against the Taliban (without exhibits) |
| A 106-107 | " | 8387-2 | " | Ex. 2 - Declaration of Jacqueline Eaton for Default Judgment Against the Taliban (without exhibits). |
| A 108 | " | 8387-3 | " | Ex. 3 - Declaration of Joanne Kelly for Default Judgment Against the Taliban (without exhibits). |
| A 109-110 | " | 8387-4 | " | Ex. 4 - Declaration of Lisa O'Brien for Default Judgment Against the Taliban (without exhibits). |
| A 111-112 | " | 8387-5 | " | Ex. 5 - Declaration of Dara Seaman for Default Judgment Against the Taliban |

| | | | | |
|---|---|---|---|---|
| | | | | (without exhibits). |
| A 113-114 | " | 8387-6 | " | Ex. 6 - Declaration of Susan Sliwak for Default Judgment Against the Taliban (without exhibits). |
| A 115-116 | " | 8387-7 | " | Ex. 7 - Declaration of Allison Wallice for Default Judgment Against the Taliban (without exhibits). |
| A 117-118 | " | 8387-8 | " | Ex. 8 - Declaration of Eileen Lynch for Default Judgment Against the Taliban (without exhibits). |
| A 119-158 | " | 8387-9 | " | Ex. 9 - Court Orders Appointing Personal Representatives of the Eight Decedent Estates. |
| A 159-162 | " | 8387-10 | " | Ex. 10 - List of Plaintiffs & Proposed Awards in Default Judgment Against the Taliban (re: ECF#8386). |
| A 163-192 | " | 8389 | " | Memorandum of Law in Support re: Amended Motion for Default Judgment as to the Taliban (re: ECF#8386). |
| A 193-195 | 10/25/2022 | 8668 | " | Proposed Entry of Partial Final Judgments against the Taliban on Behalf of Certain *Burlingame* Plaintiffs (re: ECF#8386). |
| A 196-202 | 10/21/2022 | 8662 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Letter Addressed to Judge George B. Daniels from John F. Schutty, Esq. dated October 21, 2022 re: ECF#8590 Order that Requested Advice on How Taliban Default Judgment Applications Might Be Resolved Fairly. |
| A 203-204 | 11/21/2022 | 8767 | " | Letter Addressed to Judge George B. Daniels from John F. Schutty, Esq. dated Nov. 21, 2022 re: Suggestions to Ensure that Taliban Wrongful Death Default Judgments Are Entered & Executed Properly and Fairly. |
| A 205 | 12/01/2022 | 8778 | " | Order: To aid in resolving Default Judgment Motions Against the Taliban, the Court Requests Briefing on Two Questions |
| A 206-225 | 12/22/2022 | 8814 | " | Brief (re: ECF#8778 Order): Memorandum of Points & Authorities re: Law to Be Applied in Wrongful Death Applications Filed against the Taliban. |
| A 226-242 | 03/15/2023 | 8929 | *Ashton et al. v. al Qaeda Islamic* | Amended Report and Recommendation (re: ECF#8568).  M.J. Netburn Determines that Statutes of Limitation |

| | | | *Army et al.,* 02-cv-6977 | Will Not Be Enforced as to any Defendant-in-Default and "Immediate Family Members" May Recover Wrongful Death Damages Against the Taliban. |
|---|---|---|---|---|
| A 243-285 | 03/28/2023 | 8959 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Plaintiff's Motion to Set Aside (re: ECF#8929) – the Amended Report & Recommendation re: Taliban Wrongful Death Claims. |
| A 286-293 | " | 8960 | " | Declaration of John F. Schutty, Esq. in Support (re: ECF#8959). |
| A 294-297 | " | 8960-1 | " | Exhibit A-Summaries of Applicable State Wrongful Death. |
| A 298-304 | " | 8961 | " | Declaration of Plaintiff Lisa O'Brien in Support (re: ECF#8959). |
| A 305-315 | 03/30/2023 | 8973 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Memorandum Decision & Order: Terminating (ECF#8386 and 8959) and Adopting (ECF#8929) M.J. Netburn's Report and Recommendation. |
| A 316-317 | 04/06/2023 | 8992 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Plaintiff's Motion for Certificate of Appealability Pursuant to 28 U.S.C. Section 1292(b). |
| A 318-338 | " | 8993 | " | Memorandum of Law in Support (re: ECF#8992). |
| A 339-342 | 04/21/2023 | 9041 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Motion for Default Judgment as to Taliban by Certain *Ashton-Dickey* Plaintiffs. |
| A 343-356 | " | 9042 | " | Declaration of John F. Schutty, Esq. in Support re: Motion for Default Judgment as to Taliban by Certain *Ashton-Dickey* Plaintiffs (re: ECF#9041). |
| A 357-359 | " | 9042-1 | " | Ex. A-Declaration of Kristen Breitweiser (without exhibits). |
| A 360-366 | " | 9042-2 | " | Ex. B-Declaration of Patricia Ryan (without exhibits). |
| A 367-370 | " | 9042-3 | " | Ex. C-Court Orders Appointing Personal Representatives. |
| A 371 | " | 9042-4 | " | Ex. D-List of Plaintiffs & Requested Awards. |
| A 372-373 | " | 9045 | " | Proposed Judgment (re: ECF#9041). |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

IN RE:                             :

TERRORIST ATTACKS ON       :        ORDER
SEPTEMBER 11, 2001         :    03 MDL 1570 (GBD) (SN)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

This document relates to:

    Fed. Ins. Co. v. al Qaida, Case No. 03-cv-06978

    Certain plaintiffs in *Fed. Ins. Co. v. al Qaida*, No. 03-cv-06978 (the "*Federal Insurance Plaintiffs*") move for a partial final default judgment against the Taliban under Federal Rule of Civil Procedure 54(b). (Case No. 03-md-1570, ECF No. 7496.) This Motion is GRANTED.

    A default judgment against the Taliban and others, including Al Qaeda and Hezbollah, was entered in favor of the *Federal Insurance* Plaintiffs on April 7, 2006. (Case No. 03-md-1570, ECF No. 1755.) The *Federal Insurance* Plaintiffs' total damages against Al Qaeda were assessed at $9,351,247,965.99. (Case No. 03-md-1570, ECF Nos. 2479, 2502.) This assessment was later extended against Hezbollah. (Case No. 03-md-1570, ECF No. 2582.)

    Several Plaintiffs in the multi-district litigation have used judgments against the Taliban in an attempt to attach assets of Da Afghanistan Bank held in the Federal Reserve Bank of New York. (*See* Writ of Execution. *Havlish, et al. v. Iran, et al.*, Case No. 03-cv-9848, ECF No. 526-1.) Parties in other cases have sought prejudgment attachments of these assets as well. (*See e.g.*, *Owens v. Taliban. et al.*, Case No. 22-cv-1949, ECF Nos. 32, 33.)

    There are more that a dozen motions for default judgment against the Taliban pending in the multi-district litigation. The *Federal Insurance* Plaintiffs' motion is the most procedurally

advanced. Liability and damages have already been determined as to Al Qaeda and Hezbollah. It is appropriate to extend these prior liability and damages determinations to the Taliban.

The Court will continue to adjudicate pending default judgment motions as efficiently as possible. The Court encourages all plaintiffs to continue to meet and propose strategies for an efficient and fair process to adjudicate pending default judgment motions.

Accordingly, for the reasons set forth in the Court's Order at Case No. 03-md-1570, ECF No. 2502, adopting the Report and Recommendation at Case No. 03-md-1570, ECF No. 2479, partial final default judgment under Federal Rule of Civil Procedure 54(b) is entered against the Taliban and in favor of the *Federal Insurance* Plaintiffs in the following amounts:

| Plaintiff | Compensatory Damages | Trebled Award |
|---|---|---|
| Vigilant Insurance Company | $42,305,933.24 | $126,917,799.72 |
| Chubb Custom Insurance Company | $612,585.00 | $1,837,755.00 |
| Chubb Indemnity Insurance Company | $4,083,878.20 | $12,251,634.60 |
| Federal Insurance Company | $1,513,667,597.39 | $4,541,002,792.17 |
| Chubb Insurance Company of New Jersey | $412,681.71 | $1,238,045.13 |
| Chubb Insurance Company of Canada | $50,452,395.71 | $151,357,187.13 |
| Pacific Indemnity Company | $9,936,536.66 | $29,809,609.98 |
| Great Northern Insurance Company | $595,997,113.79 | $1,787,991,341.37 |
| AXA Art Insurance Group | $14,287,543.00 | $42,862,629.00 |
| AXA Global Risk (UK) Ltd. | $10,986,623.57 | $32,959,870.71 |
| AXA CSA UK Branch | $64,779,883.00 | $194,339,649.00 |
| AXA Insurance Company | $131,696,044.96 | $395,088,134.88 |
| AXA Reinsurance Company | $82,714,778.00 | $248,144,334.00 |
| AXA RE | $105,790,023.00 | $317,370,069.00 |
| AXA RE Canadian Branch | $26,138,407.11 | $78,415,221.33 |
| AXA RE UK Plc | $18,162,701.70 | $54,488,105.10 |
| AXA Vericherung | $923,053.00 | $2,769,159.00 |
| SPS RE | $84,305,160.00 | $252,915,480.00 |
| American Alternative Insurance Co. | $3,922,782.07 | $11,768,346.21 |
| Princeton Excess and Supply Lines Insurance Company | $3,796,292.50 | $11,388,877.50 |
| Great Lakes UK Reinsurance Company | $99,511,427.02 | $298,534,281.06 |
| OneBeacon | $176,514,985.40 | $529,544,956.20 |

| TIG | | | $76,084,229.30 | $228,252,687.90 |
| Total Award | | | $3,117,082,655.33 | $9,351,247,965.99 |

The *Federal Insurance* Plaintiffs are also awarded prejudgment interest at the rate of 4.96 percent, compounded annually. Pursuant to Federal Rule of Civil Procedure 62(a), the stay normally imposed under that Rule is lifted. The *Federal Insurance* Plaintiffs may execute on and enforce the judgment immediately. The Clerk of the Court is respectfully directed to prepare and enter a final judgment. To aid this preparation, the *Federal Insurance* Plaintiffs shall file a document calculating the prejudgment interest at their earliest convenience.

Dated: April 6, 2022
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

3

**A4**

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  10/14/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In Re:

TERRORIST ATTACKS ON
SEPTEMBER 11, 2001

-------------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
GEORGE B. DANIELS**

03 MDL 1570 (GBD) (FM)

This Document Relates to
Federal Insurance Co. v. al Qaeda,
03 Civ. 6978 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

On April 7, 2006, several plaintiffs in the Federal Insurance action obtained

default judgments against al Qaeda and other defendants.[1]  The Plaintiffs subsequently

moved pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, et seq., to assess

damages against al Qaeda alone for injuries that their "property or business" sustained.

(See ECF No. 688).  The Plaintiffs contend that these damages (trebled) amount to

$9,481,764,208.61.

For the reasons set forth below, the Court should award the Plaintiffs

damages against al Qaeda in the amount of $9,351,247,965.99.

---

[1]      These Plaintiffs are AXA Art Insurance Company, AXA Global Risks (LTK)
Ltd., AXA CSA UK Branch, AXA Insurance Company, AXA Reinsurance Company, AXA
Re, AXA Re Canadian Branch, AXA Re UK Plc, AXA Versicherung, and SPS Re (collectively,
"AXA"); Chubb Custom Insurance Company, Chubb Insurance Company of Canada, Chubb
Insurance Company of New Jersey, Chubb Indemnity Insurance Company, Federal Insurance
Company, Great Northern Insurance Company, Pacific Indemnity Company, and Vigilant
Insurance Company (collectively, "Chubb"); American Alternative Insurance Corporation, the
Princeton Excess and Surplus Lines Insurance Company, and the Great Lakes (UK) Insurance
Company (collectively, "MRAm"); OneBeacon; and TIG Insurance Company ("TIG").  (ECF
No. 688).

I.    <u>Standard of Review</u>

      In light of al Qaeda's default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true.  <u>See</u> <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Time Warner Cable of N.Y.C. v. Barnes</u>, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

      Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, <u>see</u> <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, <u>see</u> <u>Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.</u>, 109 F.3d 105, 111 (2d Cir. 1997).  Here, because both requirements have been met, a hearing is unnecessary.

II.    <u>Facts</u>

      The Plaintiffs have submitted five affidavits in support of their ATA damage claims.  (<u>See</u> ECF No. 688-4 (Affirm. of Sean P. Carter, Esq., in Sup. of Pls.' Mot. to Assess Damages against Defaulted Defs. for Bus. and Prop. Claims under the ATA, dated Feb. 12, 2007) ("Carter Affirm."), Exs. C-G).  In these affidavits, the Plaintiffs seek to recover two types of damages.  First, the Plaintiffs ask to be made whole for claims that they paid to their insureds for business interruption, property damage, and

2

other losses resulting directly from the September 11th terrorist attacks.  Second, the

Plaintiffs, each of which is an insurance carrier, contend that they are entitled to "direct"

damages in the form of claim adjustment costs and legal expenses associated with paying

claims.  Each of the Plaintiffs has submitted an individualized affidavit in support of its

claim.

The Plaintiffs' affidavits each establish that the affiant has personal

knowledge of the relevant plaintiff's day-to-day operations, (see, e.g., Carter Affirm., Ex.

C ¶ 4), and that all of the claims for which recovery is sought were subject to an exacting

adjustment process requiring compliance with well-established standards and procedures,

(see, e.g., id. ¶ 5), as well as internal scrutiny and outside analysis by independent

adjusters (see, e.g., id. ¶¶ 7-8).  Through their affidavits and the attachments thereto, the

plaintiffs allege damages for claims paid to insureds, reinsureds, and cedents in the

following amounts:

| CARRIER | CLAIM |
|---|---|
| AXA | $539,784,217.34 |
| Chubb | 2,217,468,721.70 |
| MRAm | 107,230,501.59 |
| OneBeacon | 185,805,247.79 |
| TIG | 76,084,229.30 |
| Total | $3,126,372,917.72 |

(Carter Affirm., Exs. C ¶ 14, D ¶ 14, E ¶ 15, F ¶ 14, G ¶ 15).[2]   The supporting schedules list the name of each policyholder, the associated policy number, and the amount paid on each claim.  (See, e.g., Carter Affirm. Ex. C at Ex. A).[3]

In addition to their claims reimbursements, each of the Plaintiffs other than AXA has identified additional damages in the form of its expenditures associated with adjusting the underlying claims, including legal expenses.  (See, e.g., Carter Affirm. Ex. D at Ex. B).  The Plaintiffs' schedules, however, do not identify the recipients of these payments or show that they were reasonable and necessary.

III.    Damages

The Plaintiffs have brought multiple claims against numerous defaulting defendants as part of this multi-district litigation.  At present, however, they seek an assessment of damages only against al Qaeda, based only on their ATA claims.  (See 03 MDL 1570, ECF No. 2462; 03 Civ. 6978, ECF No. 688 ("Pls.' Br.") at 5).

The ATA provides in relevant part:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

---

[2]      Unlike the other plaintiffs, OneBeacon's claim schedule incorporates both its adjustment costs and its legal expenses into the single amount that it reports having paid to each of its insureds.  (See Carter Affirm., Ex. F ¶¶ 15, 16).

[3]      These schedules have been submitted to the Court under seal.

18 U.S.C. § 2333(a).

     A.    <u>Subrogated Claims</u>

     The Plaintiffs contend that the insurance claims that they paid as a consequence of the September 11th attacks constitute injury to their "property or business" within the meaning of the ATA, therefore entitling Plaintiffs to treble damages in excess of $9 billion.

     To the extent that the Plaintiffs seek to recover amounts paid to their insureds, they unquestionably are subrogated to their insureds' ATA claims. "[T]he general rule is that upon payment of a loss the insurer is entitled to be subrogated *pro tanto* to any right of action which the insured may have against a third person whose negligence or wrongful act caused the loss." <u>Redington v. Touche Ross & Co.</u>, 592 F.2d 617, 624 (2d Cir. 1978), <u>rev'd on other grounds</u>, 442 U.S. 560 (1979) (quotation and citation omitted). Subrogation is an equitable remedy that "entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." <u>Luna v. Am. Airlines</u>, 769 F. Supp. 2d 231, 248 (S.D.N.Y. 2011) (quoting <u>Northstar Reins. Corp. v. Cont'l Ins. Co.</u>, 82 N.Y.2d 281, 294 (1993). Therefore, the relevant inquiry is whether — and to what extent — the Plaintiffs' policyholders suffered damage to their "property or business" by reason of an act of international terrorism.

     The Plaintiffs point to no case law discussing the proper measure of damages under the "property or business" prong of the ATA, nor am I aware of any.

5

Consequently, the Plaintiffs urge the Court to adopt the analysis applied to two other

statutes with language nearly identical to that of the ATA: the Clayton Act, 15 U.S.C. §§

12 et seq., and the civil RICO statute, 18 U.S.C. § 1964.  The Clayton Act reads in

relevant part:

> [A]ny person who shall be injured in his business or property
> by reason of anything forbidden in the antitrust laws may
> sue . . . and shall recover threefold the damages by him
> sustained . . . .

15 U.S.C. § 15(a).  The civil RICO statute contains similar language:

> Any person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue . . . and shall
> recover threefold the damages he sustains . . . .

18 U.S.C. § 1964(c).

Courts have interpreted the injury to "business or property" language

broadly under both the Clayton Act and the civil RICO statute.  As the Supreme Court

stated in Reiter v. Sonotone Corp., 442U.S. 330 (1979), a Clayton Act case, "the word

'property' has a naturally broad and inclusive meaning. . . .  '[P]roperty' comprehends

anything of material value owned or possessed." Id. at 338 (quoting Webster's Third

New Int'l Dictionary 1818 (1961)).  Money losses incurred by commercial enterprises

constitute injuries to both "business" and "property."  Id. at 339.  Both statutes, however,

also require a plaintiff to show that the defendant's statutory violation proximately caused

plaintiff's damages.  See Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268-69 (1992)

(Congress intended both the RICO statute and Clayton Act to include the element of

proximate cause).  In <u>Holmes</u>, the Court cautioned that "[a]llowing suits by those injured only indirectly would open the door to massive and complex damages litigation, which would not only burden the courts, but would also undermine the effectiveness of treble-damages suits."  <u>Id.</u> at 274 (quotations, alterations, and citation omitted).

Applying the decisions interpreting the identical language of the Clayton Act and the civil RICO statute, the Plaintiffs here are clearly entitled to treble damages for any claims that they reasonably paid to insureds who suffered business and property damage as a result of the September 11th terrorist attacks.  In that regard, in the context of an inquest, the Court must accept as true the factual allegations in the complaint, and the Plaintiffs are entitled to "all reasonable inferences" from their proffered evidence.  <u>See Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981).  As noted above, the Plaintiffs' affidavits identify each of the insurance claims they paid as compensation for property loss, business interruption, and related damages, and attest that these damages were directly caused by the September 11th terrorist attacks.  (<u>See, e.g.</u>, Carter Affirm., Ex. C ¶ 14 & Ex. A).  The Plaintiffs further allege in their First Amended Complaint that al Qaeda orchestrated the September 11th attacks.  (See 03 Civ. 6978, ECF No. 104). The Plaintiffs therefore are entitled to damages on their subrogation claims in the following amounts:

| CARRIER | AMOUNT |
|---------|--------|
| AXA | $539,784,217.34 |
| Chubb | 2,217,568,721.70 |
| MRAm | 107,320,501.59 |
| OneBeacon | 176,514,985.40 |
| TIG | 76,084,229.30 |
| Total | $3,117,272,655.33 |

The amount set forth for OneBeacon is less than the amount it seeks because, unlike the other carriers, OneBeacon failed to set forth its adjustment costs and legal expenses on a separate schedule.  The other carriers collectively seek to recover such costs and expenses in sums which amount to 1.43 percent of their subrogated costs.  To ensure that OneBeacon does not recover costs and expenses that exceed its actual subrogation outlays, I have reduced OneBeacon's recovery by 5 percent.  This reduction is made without prejudice to a subsequent, more detailed application by OneBeacon.

Because the Plaintiffs are entitled to treble damages under the ATA, the total damages awarded to each plaintiff should be as follows:

**A12**

| CARRIER | AMOUNT |
|---|---|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| Total | $9,351,247,965.99 |

B.    "Direct" Claims

In addition to their subrogated claims, the Plaintiffs also seek damages in the form of claim adjustment costs and legal expenses incidental to the payments made to their insureds.  The Plaintiffs have failed to prove these damages in the manner required by Second Circuit case law.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (party seeking such an award of attorneys' fees must support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done."); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) (hourly rate should reflect "what a reasonable, paying client would be willing to pay").  The Court therefore should deny without prejudice the Plaintiffs' motion insofar as it seeks damages for their "direct" claims.

Should the Plaintiffs seek to submit further evidence regarding their direct claims against al Qaeda or, in the future, against other defendants, they will have another, arguably greater hurdle to surmount.  It is by no means clear that such damages are recoverable under the ATA.  See Great Am. Ins. Co. v. United States, 575 F.2d 1031, 1033 (2d Cir. 1978) ("There is not a single reported case in American jurisprudence . . . which holds that upon an insurance carrier's payment to its insured, the insurer becomes vested with a claim arising out of an implied contract of indemnity with the tortfeasor who caused the damage . . . .  On the contrary, the authorities and the cases unanimously hold that the insurer's recovery is premised exclusively upon subrogation."); cf. Laborers Local 17 Health and Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229 (2d Cir. 1999) (labor union health funds and trusts could not recover from tobacco companies under RICO because the economic injuries caused by providing health care to smokers were too remote for funds to have standing to sue); Int'l Bhd. of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris, Inc., 196 F.3d 818 (5th Cir. 1999) (funds and insurers who provided health care to smokers denied recovery from cigarette manufacturers under Sherman Act and RICO).  The Plaintiffs consequently will have to establish their entitlement to direct damages before the Court could consider the appropriateness of the actual amounts sought.

IV.   Conclusion

For the reasons set forth above, Plaintiffs should be awarded judgment on their subrogation claims against al Qaeda under the ATA as follows:

10

| CARRIER | AMOUNT |
|---|---|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| Total | $9,351,247,965.99 |

The Plaintiffs' additional claims for their adjustment costs and legal fees should be denied without prejudice.

VI.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels and to the Chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Daniels.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

Dated:      New York, New York
            October 13, 2011

                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge

Copies to:

All counsel via ECF

12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
IN RE TERRORIST ATTACKS ON SEPTEMBER 11, 2001 :

 

                              :     MEMORANDUM DECISION
                              :             AND ORDER
                              :     03 MDL 1570 (GBD)(FM)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

This Document Relates to
Federal Insurance Co. v. al Qaeda,
03 Civ. 6978 (GBD) (FM)

GEORGE B. DANIELS, District Judge:

        The plaintiffs in this multi-district litigation seek monetary damages from defendants

who they allege are liable for the physical destruction, death, and injuries suffered as a result of

the terrorist attacks of September 11, 2001 ("September 11th Attacks"). On April 7, 2006, Judge

Casey ordered that a default judgment be entered against al Qaeda and a number of other

defendants as to liability, based upon their failure to appear to defend the claims against them.

The plaintiffs in Federal Insurance Co. v. al Qaeda ("Plaintiffs")[1] subsequently moved pursuant

to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, et seq., to assess damages against al

Qaeda alone for injuries sustained by their "property or business." See Docket Entry No. 688.

---

[1] These Plaintiffs are AXA Art Insurance Company, AXA Global Risks (UK) Ltd., AXA CSA UK Branch, AXA
Insurance Company, AXA Reinsurance Company, AXA Re, AXA Re Canadian Branch, AXA Re UK Plc, AXA
Versicherung, and SPS Re (collectively, "AXA"); Chubb Custom Insurance Company, Chubb Insurance Company
of Canada, Chubb Insurance Company of New Jersey, Chubb Indemnity Insurance Company, Federal Insurance
Company, Great Northern Insurance Company, Pacific Indemnity Company, and Vigilant Insurance Company
(collectively, "Chubb"); American Alternative Insurance Corporation, the Princeton Excess and Surplus Lines
Insurance Company (collectively, "MRAm"); One Beacon Insurance Company; and TIG Insurance Company
("TIG"). Docket Entry No. 688.

Case 1:03-md-01570-GBD-SN   Document 9095-2   Filed 05/18/23   Page 22 of 101
**A17**
Case 1:03-md-01570-GBD-SN   Document 2502   Filed 12/16/11   Page 2 of 5

This Court referred the matter to Magistrate Judge Frank Maas for his Report and Recommendation ("Report"). Magistrate Judge Maas recommended that Plaintiffs be awarded damages on their subrogation claims against al Qaeda as follows:

| CARRIER | AMOUNT |
|---------|--------|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| **Total** | $9,351,247,965.99 |

Magistrate Judge Maas recommended that Plaintiffs' additional claims for their adjustment costs and legal fees be denied without prejudice.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. 28 U.S.C. § 636(b)(1). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. Id.; see also Rivera v. Barnhart, 432 F.Supp. 2d 271, 273 (S.D.N.Y. 2006). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c). It is not required, however, that the Court conduct a *de novo* hearing on the matter. See United States v. Raddatz, 447 U.S. 667, 676 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding those portions to which objections were made. Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y.1985) (quoting Hernandez v. Estelle, 711 F.2d 619,

620 (5th Cir.1983)). When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record." Adee Motor Cars, LLC v. Amato, 388 F.Supp. 2d 250, 253 (S.D.N.Y.2005) (citation omitted). In his report, Magistrate Judge Maas advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). No party objected to the Report. As there is no clear error on the face of the record, this Court adopts the Report in its entirety.

Magistrate Judge Maas properly determined that Plaintiffs suffered injury to their "property or business" entitling them to treble damages pursuant to the ATA on their subrogation claims. While the Court is not aware of any case law discussing the proper interpretation of "property or business" under the ATA, similar language in the Clayton Act, 15 U.S.C. §§ 12 et seq., and the civil RICO statute, 18 U.S.C. § 1964 has been interpreted broadly to include money losses incurred by commercial enterprises where the statutory violation proximately caused plaintiff's damages. See Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979); Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268-69 (1992). The same broad interpretation is appropriate in the context of the ATA.

Accepting as true all of the factual allegations in Plaintiffs' complaint and making "all reasonable inferences" from their proferred evidence, as required in the context of an inquest, Plaintiffs have identified each of the insurance claims they paid as compensation for property loss, business interruption, and related damages, and have attested that these damages were directly caused by the September 11th terrorist attacks. (See, e.g., Carter Affirm., Ex. C ¶ 14 & Ex. A). Further, Plaintiffs allege in their First Amended Complaint that al Qaeda orchestrated the September 11th attacks. (See 03 Civ. 6978, Docket Entry No. 104). Plaintiffs have provided

3

a sufficient basis to determine damages and thus are entitled to damages on their subrogation

claims as outlined above.  See Transatl. Marine Claims Agency, Inc. v. ACE Shipping Corp.,

109 F. 3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to

establish damages with reasonable certainty").

Magistrate Judge Maas also properly determined that Plaintiffs are not entitled to

damages in the form of claim adjustment costs and legal expenses incidental to the payments

made to their insureds.  Plaintiffs have not provided sufficient evidence to establish these

damages with reasonable certainty.  Id.;  See N.Y. State Ass'n for Retarded Children, Inc. v.

Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

### Conclusion

This Court adopts the Report and Recommendation in its entirety.  Plaintiffs should be

awarded judgment on their subrogation claims against al Qaeda under the ATA as follows:

| CARRIER | AMOUNT |
|---------|--------|
| AXA | $1,619,352,652.02 |
| Chubb | 6,652,406,165.10 |
| MRAm | 321,691,504.77 |
| OneBeacon | 529,544,956.20 |
| TIG | 228,252,687.90 |
| **Total** | $9,351,247,965.99 |

Plaintiffs' additional claims for their adjustment costs and legal fees should be denied without prejudice.

Dated: New York, New York
          December 15, 2011

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 22 2011

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

IN RE TERRORIST ATTACKS ON

SEPTEMBER 11, 2001

----------------------------------------------------------x

FIONA HAVLISH, in her own right
and as Executrix of the ESTATE OF
DONALD G. HAVLISH, JR., Deceased, *et al.*,

          Plaintiffs,

    v.

USAMA BIN LADEN,

AL-QAEDA/ISLAMIC ARMY,

THE TALIBAN, a.k.a. the Islamic
Emirate of Afghanistan

MUHAMMAD OMAR,

THE ISLAMIC REPUBLIC OF IRAN,

AYATOLLAH ALI HOSEINI KHAMENEI,

ALI AKBAR HASHEMI RAFSANJANI,

INFORMATION AND SECURITY,

THE ISLAMIC REVOLUTIONARY
GUARD CORPS,

HEZBOLLAH,

THE IRANIAN MINISTRY OF PETROLEUM,

THE NATIONAL IRANIAN
TANKER CORPORATION,

THE NATIONAL IRANIAN
OIL CORPORATION,

Civil Action No.

03 MDL 1570 (GBD)

CIVIL ACTION NO. 03-CV-9848 --GBD

THE NATIONAL IRANIAN                    :
GAS COMPANY,                            :
                                        :
IRAN AIRLINES,                          :
                                        :
THE NATIONAL IRANIAN                    :
PETROCHEMICAL COMPANY,                  :
                                        :
IRANIAN MINISTRY OF                     :
ECONOMIC AFFAIRS AND FINANCE            :
                                        :
IRANIAN MINISTRY OF                     :
COMMERCE,                               :
                                        :
IRANIAN MINISTRY OF DEFENSE             :
AND ARMED FORCES LOGISTICS,             :
                                        :
THE CENTRAL BANK OF THE                 :
ISLAMIC REPUBLIC OF IRAN, *et al.*,     :
                                        :
          Defendants.                   :

## ORDER OF JUDGMENT

Upon consideration of the evidence submitted by the Plaintiffs in filings with this Court

on May 19, 2011, July 13, 2011 and August 19, 2011, and the evidence presented at the

December 15, 2011 hearing on liability, together with the entire record in this case, it is hereby;

**ORDERED** that Plaintiffs' Motion for Judgment by Default Against Sovereign

Defendants, The Islamic Republic of Iran, Ayatollah Ali Hoseini-Khamenei, Ali Akbar Hashemi

Rafsanjani, Iranian Ministry of Information and Security, The Islamic Revolutionary Guard

Corps., Hezbollah, The Iranian Ministry of Petroleum, The National Iranian Tanker Corporation,

The National Iranian Gas Company, Iran Airlines, The National Iranian Petrochemical

Company, Iranian Ministry of Economic Affairs and Finance, Iranian Ministry of Commerce,

Iranian Ministry of Defense and Armed Forces Logistics, and The Central Bank of the Islamic

2

Republic of Iran (the "Sovereign Defendants") is GRANTED and final judgment on liability is entered in favor of all Plaintiffs and against all Sovereign Defendants;

**ORDERED** that Plaintiffs' Motion for Judgment by Default Against Non-Sovereign Defendants, Sheikh Usamah Bin-Muhammad Bin-Laden, a/k/a Osama bin-Laden, The Taliban, a/k/a The Islamic Emirate of Afghanistan, Muhammad Omar, and Al Qaeda/Islamic Army (the "Non-Sovereign Defendants") is GRANTED and final judgment on liability is entered in favor of all Plaintiffs and against all Non-Sovereign Defendants;

**ORDERED** that the Plaintiffs are hereby referred to Magistrate Judge Frank Maas to resolve any remaining issues, including but not limited to damages both compensatory and punitive.

**SO ORDERED**

DATED ___DEC 2 2 2011___                    _George B. Daniels_
                                            George B. Daniels
                                            United States District Judge

3

**A24**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 30, 2012
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In Re:                                       :
                                                  **REPORT AND
                                                  RECOMMENDATION
        TERRORIST ATTACKS ON                      TO THE HONORABLE
        SEPTEMBER 11, 2001          :             GEORGE B. DANIELS**

------------------------------------------------------------x   03 MDL 1570 (GBD) (FM)

This Document Relates to
<u>Havlish v. bin Laden</u>,
03 Civ. 9848 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

   The former World Trade Center site is only a few blocks from this

Courthouse.  At that location, the 9/11 Memorial opened last year, and a new One World

Trade Center, known as the "Freedom Tower," is rapidly nearing completion.  Sadly,

despite these and other reaffirmations of the human spirit, there remains one group of

Americans affected by the September 11th tragedy for whom it will always be difficult to

achieve closure – those whose immediate relatives lost their lives as a result of the

terrorists' acts.  The plaintiffs in this multidistrict litigation include many such persons

who are seeking to recover monetary compensation from the individuals and entities that

carried out, or aided and abetted, the September 11th attacks.

   On December 22, 2011, Your Honor entered a default judgment on behalf

of the plaintiffs in the <u>Havlish</u> action ("Plaintiffs"), one of the cases comprising this MDL

proceeding, against two groups of defendants:  (a) certain sovereign defendants, including

the Islamic Republic of Iran, Ayatollah Ali Hoseini Khamenei, Hezbollah, and other

Iranian individuals and entities ("Sovereign Defendants"); and (b) certain non-sovereign

**A25**

defendants, including Osama bin Laden, the Taliban, and al Qaeda ("Non-Sovereign Defendants") (collectively, the "Defendants").  (ECF No. 2516).  The case subsequently was referred to me to report and recommend with respect to the Plaintiffs' damages.  For the reasons set forth below, I find that the Plaintiffs collectively should be awarded damages in the amount of $6,048,513,805, plus prejudgment interest on their non-economic damages.

I.      Standard of Review

In light of the Defendants' default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although plaintiffs seeking to recover damages against defaulting defendants must prove their claims through the submission of admissible evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, a hearing is unnecessary.

II.      Factual and Procedural Background

The Havlish action concerns fifty-nine victims of the September 11, 2001

terrorist attacks.  Seventeen of the victims were killed in the South Tower of the World

Trade Center, thirty-two in the North Tower of the World Trade Center, and three in the

Pentagon in Washington, D.C.  (See ECF No. 2553 (Pls.' Proposed Findings of Fact and

Conclusions of Law ("Proposed Findings")) ¶¶ 159-66).  Three further victims were

inside the airplane that crashed into the South Tower, including the plane's captain, who

was murdered by the hijackers; another victim was a passenger on United Airlines Flight

93, which crashed near Shanksville, Pennsylvania; and three victims were killed in the

immediate vicinity of the World Trade Center.  (Id. ¶¶ 165, 167-70).  Forty-seven of the

plaintiffs ("Estate Plaintiffs") sue in their capacity as the legal representatives of their

decedents.  Claims also are brought individually on behalf of 111 family members of the

fifty-nine victims of the attacks ("Individual Plaintiffs").

On December 22, 2011, in addition to entering a default judgment, Your

Honor issued Findings of Facts and Conclusions of Law regarding the liability of the

Sovereign Defendants.[1]  (ECF No. 2515).  In that document, Your Honor concluded that

the "Plaintiffs ha[d] established by evidence satisfactory to the Court that the [Sovereign

---

[1]      To obtain a default judgment in an action under the Foreign Sovereign Immunity
Act ("FSIA"), a plaintiff must demonstrate a right to relief "by evidence satisfactory to the
court," 28 U.S.C. § 1608(e), a standard that may be met "through uncontroverted factual
allegations, which are supported by . . . documentary and affidavit evidence."   Valore v. Islamic
Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (internal quotation marks omitted).

Defendants] provided material support and resources to" the perpetrators of the

September 11th terrorist attacks, by, "inter alia, planning funding, [and]

facilitat[ing] . . . the hijackers' travel and training," and providing the hijackers with

"services, money, lodging, training, expert advice or assistance, safehouses, false

documentation or identification, and/or transportation."  (Id. at 50-53).  By virtue of their

defaults, the Non-Sovereign Defendants also have admitted their role in the September

11th terrorist attacks.

Accordingly, because all questions concerning the Havlish defendants'

liability have been fully resolved, the only remaining task is the determination of the

Plaintiffs' damages.

III.  Damages

A.  Sovereign Defendants

Among the claims that the Plaintiffs assert against the Sovereign

Defendants in their third amended complaint (ECF No. 2259 ("Complaint" or "Compl."))

are survival, wrongful death, and solatium claims under section 1605A of the FSIA, 28

U.S.C. § 1605A ("Section 1605A").  Section 1605A creates an exception to sovereign

immunity pursuant to which a United States citizen can sue "[a] foreign state that is or

was a state sponsor of terrorism . . . , and any official, employee, or agent of that foreign

state while acting within the scope of his or her office, employment, or agency," for

damages arising out of an act of terrorism sponsored by that state.  See Section 1605A(c).

Although Congress enacted Section 1605A in 2008, it applies retroactively to suits then

pending against foreign states that had been designated as state sponsors of terrorism by the time the suits originally were filed.  <u>See</u> Section 1605A(2)(A)(i)(II); Nat'l Defense Auth. Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3.

Section 1605A effected a "sea change" in suits against state sponsors of terrorism.  <u>Read v. Islamic Republic of Iran</u>, ___ F. Supp. 2d ___, ___, 2012 WL 639139, at *8 (D.D.C. Feb. 28, 2012).  Previously, to recover damages against such defendants, plaintiffs had to demonstrate their entitlement under state or foreign law.  <u>Id.</u>  Now, such claims are subject to a "uniform federal standard."  <u>Id.</u> (citing <u>In re Terrorism Litig.</u>, 659 F. Supp. 2d 31, 85 (D.D.C. 2009)).  Courts therefore usually determine damages under Section 1605A by applying the legal principles found in the Restatement of Torts and other leading treatises.  <u>Harrison v. Republic of Sudan</u>, ___ F. Supp. 2d ___, ___, 2012 WL 1066683, at *3 (D.D.C. Mar. 30, 2012).

In an action under Section 1605A, "damages may include economic damages, solatium, pain and suffering, and punitive damages."  Section 1605A(c)(4).  Additionally, "[i]n any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents."  <u>Id.</u>  Consequently, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  <u>Valore</u>, 700 F. Supp. 2d at 83.

1.    <u>Economic Damages</u>

The Estate Plaintiffs seek economic damages for (a) the past and future lost wages and benefits of each decedent; (b) the estate's loss of household services; (c) its loss of advice, counsel, guidance, instruction, and training services; (d) its loss of accompaniment services; and (e) prejudgment interest.  (<u>See</u> ECF No. 2554 (Pls.' Am. Damages Inquest Mem. ("Pls.' Mem.")) Ex. H).  To support their claims for these damages, the Estate Plaintiffs have submitted extensive analyses by Dr. Stan V. Smith, a forensic economist.  (<u>See</u> Pls.' Mem. Ex. F (Dr. Smith's <u>curriculum vitae</u>)).  Dr. Smith calculated each decedent's lost wages and benefits by assuming that the decedent would have worked until the age of sixty-seven and adjusting his calculations through the use of growth and discount rates.  Dr. Smith also calculated each decedent's estate's non-wage-related losses by determining the replacement cost of those services.  Finally, Dr. Smith calculated the prejudgment interest on these damages using the annual average of monthly interest rates for thirty-day Treasury Bills.  (<u>See</u> <u>id.</u> Ex. H).

Dr. Smith has provided detailed reports for two decedents and calculated the economic damages for the other forty-five decedents in the same manner.  Having reviewed Dr. Smith's reports, I find that his calculations are reasonable, and yield proposed economic damages awards comparable to those in other cases.  <u>See, e.g.</u>, <u>Dammarell v. Islamic Republic of Iran</u>, 404 F. Supp. 2d 261, 310-24 (D.D.C. 2005); <u>Alejandre v. Republic of Cuba</u>, 996 F. Supp. 1239, 1249 (S.D. Fla. 1997); <u>Ferrarelli v. United States</u>, CV 90-4478 (JMA), 1992 WL 893461, at *19 (E.D.N.Y. Sept. 24, 1992).  I

therefore adopt his findings regarding lost wages, benefits, and services, and prejudgment interest thereon, which leads to a finding that the Estate Plaintiffs' economic damages total $394,277,884. The separate award to each individual Estate Plaintiff is set forth in Appendix 1 to this Report and Recommendation.

      2.    <u>Pain and Suffering</u>

The Estate Plaintiffs also seek damages for their decedents' pain and suffering. "When determining the appropriate damages for pain and suffering, [the Court] is bound by a standard of reasonableness." <u>Mastrantuono v. United States</u>, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001) (citing <u>Battista v. United States</u>, 889 F. Supp. 716, 727 (S.D.N.Y. 1995)).

Relying on <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>, 530 F. Supp. 2d 216 (D.D.C. 2008), the Estate Plaintiffs seek $18 million for each decedent's pain and suffering. (Pls.' Mem. at 10). In <u>Pugh</u>, a suitcase bomb on an airplane detonated mid-flight, killing everyone on board. The court awarded the estate of each passenger $18 million for the passenger's pain and suffering, but did not explain how it arrived at that number, nor did it cite any cases in which there had been similar awards. <u>See</u> 530 F. Supp. 2d at 266-73. In other FSIA cases, courts have made considerably lower pain and suffering awards to the estates of victims of state-sponsored terrorism. For example, in <u>Stethem v. Islamic Republic of Iran</u>, 201 F. Supp. 2d 78, 89 (D.D.C. 2002), the court awarded $1.5 million to an estate for the pain and suffering of a decedent who was tortured for fifteen hours before being shot to death. Similarly, in <u>Eisenfeld v.</u>

Islamic Republic of Iran, 172 F. Supp. 2d 1, 8 (D.D.C. 2000), the court awarded $1

million in damages for pain and suffering to the estate of a victim of a bus bombing who

had survived for several minutes before ultimately dying.  See also Weinstein v. Islamic

Republic of Iran, 184 F. Supp. 2d 13, 22-23 (D.D.C. 2002) ($10 million award to estate of

victim who survived for forty-nine days with limited pain medication after suffering

extensive burn and blast injuries during a terrorist bombing of a bus).

   Although the specifics of each decedent's demise remain largely unknown,

the Plaintiffs have submitted the expert report of Dr. Alberto Diaz, Jr., M.D., a retired

Navy Rear Admiral, which provides a chilling account of the horrific conditions that each

of the Estate Plaintiffs' decedents likely encountered immediately before his or her death.

(See Pls.' Mem. Exs. D, E).  As Dr. Diaz's report confirms, there is little doubt that many,

if not all, of the decedents in this case experienced unimaginable pain and suffering on

September 11, 2001.  As Judge Baer noted in a previous case brought by two of the Estate

Plaintiffs:

> The effort after a tragedy of this nature to calculate pain and
> suffering is difficult at best.  Unfortunately, there is no way to
> bring back [the decedents] and no way to even come close to
> understanding what [they] experienced during their last
> moments.  Under our legal system, compensation can only be
> through the award of a sum of money.  While always difficult
> and never exact, the devastation and horror accompanying
> this tragedy makes a realistic appraisal almost impossible.

Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 233

(S.D.N.Y. 2003), amended, 2003 WL 23324214 (S.D.N.Y. May 19, 2003).

**A32**

Judge Baer awarded the two <u>Smith</u> plaintiffs $1 million and $2.5 million, respectively, for their decedents' pain and suffering.  <u>Id.</u> at 234, 239.  Judge Baer reasoned that a $1 million award was reasonable for the first victim, who died in the South Tower, because there was no evidence that he survived the plane's impact, and that a $2.5 million award was appropriate for the second victim, because there <u>was</u> evidence that he had survived the initial impact and subsequently was trapped in the North Tower for some time before his death.  <u>Id.</u>

As Judge Baer's analysis in <u>Smith</u> suggests, the decedents in this case arguably may have experienced different levels of pain and suffering dependant upon whether they were in the North Tower (the first to be hit but the second to collapse), the South Tower (where they may have had knowledge of the first attack but less notice that a structural collapse was likely), the Pentagon, one of the airplanes, or on the ground.  The decedents' precise locations when the attack occured also may have affected their levels of conscious pain and suffering.  In these circumstances, calculating a precise award for each decedent's individual pain and suffering obviously would be impossible.  Nonetheless, the Estate Plaintiffs are entitled to fair compensation for their injuries; the awards in other FSIA cases – particularly those made by Judge Baer in <u>Smith</u> – suggest that $2 million per decedent is a reasonable figure.  Accordingly, I recommend that each of the Estate Plaintiffs be awarded that amount for their decedents' pain and suffering.  The total recommended pain and suffering award is therefore $94,000,000.

3.      Solatium

Under Section 1605A, family members of the decedents also are entitled to

damages for solatium.  "A claim for solatium refers to the mental anguish, bereavement,

and grief that those with a close relationship to the decedent experience as a result of the

decedent's death, as well as the harm caused by the loss of decedent's society and

comfort."  Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C.

2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).  "Acts of terrorism

are by their very definition extreme and outrageous and intended to cause the highest

degree of emotional distress."  Belkin v. Islamic Republic of Iran, 667 F. Supp. 2d 8, 22

(D.D.C. 2009).  For that reason, in FSIA cases, courts have recognized that a solatium

claim is "'indistinguishable' from the claim of intentional infliction of emotional

distress."  See, e.g., Surette v. Islamic Republic of Iran, 231 F. Supp. 2d 260, 267 n.5

(D.D.C. 2002) (quoting Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128, 135

n.11 (D.D.C. 2001)).

In Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C.

2006), District Judge Royce Lamberth articulated a framework for determining solatium

damages pursuant to which spouses of deceased victims each received approximately $8

million, parents each received $5 million, and siblings each received $2.5 million.

Several courts subsequently have followed the Heiser framework while acknowledging

that upward or downward departures are sometimes appropriate.  See, e.g., Estate of

Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); Valore, 700

F. Supp. 2d at 85.

        Here, each of the Individual Plaintiffs has submitted a declaration attesting

to the traumatic effects of the loss of his or her loved one.  (See Pls.' Mem. Ex. B).  A

review of those submissions makes clear that all of the Individual Plaintiffs have suffered

profound agony and grief as a result of the tragic events of September 11th.  Worse yet,

the Individual Plaintiffs clearly are faced with frequent reminders of the events of that

day.  (Id.).  Considering the extraordinarily tragic circumstances surrounding the

September 11th attacks, and their indelible impact on the lives of the victims' families, I

find that it is appropriate to grant the upward departures from the Heiser framework that

the Individual Plaintiffs collectively have requested.  Accordingly, I recommend that with

one exception[2] the Individual Plaintiffs be awarded solatium damages as follows:

| Relationship to Decedent | Solatium Award |
|:---:|:---:|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

---

    [2]    The exception relates to Chrislan Fuller Manuel ("Manuel"), the niece of one of the decedents.  Typically, solatium damages are available only to the spouses, children, parents, and siblings of decedents.  See Smith, 262 F. Supp. 2d at 234.  Although courts occasionally have awarded solatium damages to more distant relatives who served functionally as immediate family members, see, e.g., id. at 236 (grandmother who raised decedent from an early age); Surette, 231 F. Supp. 2d at 270 (decedent's unmarried partner of over twenty years), Manuel did not have that sort of relationship with her aunt.  (See Pls.' Mem. Ex. B).

If this recommendation is adopted, the 110 Individual Plaintiffs entitled to recover damages for solatium will receive a total of $874,000,000. The separate solatium award for each Individual Plaintiff is set forth in Appendix 2 to this Report and Recommendation.

    4.    <u>Punitive Damages</u>

Pursuant to the FSIA, the Plaintiffs also are entitled to punitive damages. <u>See</u> Section 1605A(c)(4). The Plaintiffs propose two different ways to calculate their punitive damages. First, the Plaintiffs propose that the Court follow the reasoning articulated in <u>Estate of Bland</u>, 831 F. Supp. 2d at 158. Under that rubric, the Court would calculate punitive damages by multiplying the Plaintiffs' compensatory damages by 3.44. (<u>See</u> Pls.' Mem. at 20). Alternatively, the Plaintiffs propose applying a 5.35 ratio as the court did in <u>Flax v. DaimlerChrysler Corp.</u>, 272 S.W.3d 521 (Tenn. 2008). (<u>See</u> Pls.' Mem at 21).

In <u>Estate of Bland</u>, an FSIA case arising out of the bombing of the United States Marine barracks in Beirut, the court, "relying on the Supreme Court's opinion in <u>Philip Morris USA v. Williams</u>, 549 U.S. 346 (2007)," applied a 3.44 ratio, noting that several courts previously had applied that ratio in FSIA cases. <u>Estate of Brand</u>, 831 F. Supp. 2d at 158 (citing <u>Murphy v. Islamic Republic of Iran</u>, 740 F. Supp. 2d 51, 75 (D.D.C. 2010), and <u>Valore</u>, 700 F. Supp. 2d at 52). In <u>Flax</u>, a products liability case arising out of a car accident, the Tennessee Supreme Court upheld a punitive damages award that was 5.35 times the victim's compensatory damages. 272 S.W.3d at 540, <u>cert.</u>

12

denied, 129 S. Ct. 2433.  In the course of approving that higher multiplier, however, the

court expressly noted that the victim's compensatory damages were not so substantial as

to render such a high ratio unconstitutional.  Id. at 539.

  As the court explained in Estate of Bland, the 3.44 ratio "has been

established as the standard ratio applicable to cases arising out of" terrorist attacks.  831

F. Supp. 2d at 158.  Moreover, the Plaintiffs in this case are entitled to substantial

compensatory damages.  Accordingly, Flax, which was decided several years before

Bland and involves dissimilar facts, does not suggest that this Court should deviate from

the established standard in FSIA cases.  The Plaintiffs' compensatory damages amount to

$1,362,277,884.  I therefore recommend that they be awarded punitive damages based on

a 3.44 multiplier, yielding a punitive damages total of $4,686,235,921.

  5. Prejudgment Interest

  Recognizing that an award of prejudgment interest is warranted when

plaintiffs are delayed in recovering compensation for non-economic injuries caused by

acts of terrorism, Magistrate Judge Facciola recently awarded such plaintiffs prejudgment

interest at the prime rate.  See Baker v. Socialist People's Libyan Arab Jamahirya, 775 F.

Supp. 2d 48, 86 (D.D.C. 2011).  Dr. Smith similarly has used the average prime rate

published by the Federal Reserve Bank for the period from September 11, 2001, through

the date of his report and assumed that prejudgment interest would be awarded through

January 1, 2013.  (See Pls.' Mem. Ex. J).  There is, however, no reason to believe that this

Report and Recommendation will be reviewed by a particular date.  Accordingly, if this

Report and Recommendation is adopted, the Clerk of the Court should simply be directed to award prejudgment interest on the Plaintiffs' damages for solatium and pain and suffering, which total $968,000,000, at the rate of 4.96 percent per annum for the period from September 11, 2001, through the date that judgment is entered.

B.     Non-Sovereign Defendants

Although the Plaintiffs' submissions do not discuss their claims against the Non-Sovereign Defendants in great detail, those Defendants are liable for the same damages as the Sovereign Defendants under traditional tort principles.[3]  See Valore, 700 F. Supp. 2d at 76-80.  The Non-Sovereign Defendants consequently should be held jointly and severally liable for the damages set forth above and in the appendices to this Report and Recommendation.[4]

C.     Costs

The Plaintiffs also seek approximately $2 million in costs.  (See Pls.' Mem. Ex. M).  Pursuant to 28 U.S.C. § 1920 and Local Civil Rule 54.1(c), only certain expenditures may be taxed as costs.  The Plaintiffs have requested an award of costs

---

[3]     The Plaintiffs, however, cannot recover treble damages against the Non-Sovereign Defendants pursuant to the Antiterrorism Act, 18 U.S.C. § 2333, see Smith, 262 F. Supp. 2d at 220-22, because they did not assert such a claim in their Complaint.  (See Compl. ¶¶ 401-21).

[4]     As discussed above, at least two of the Estate Plaintiffs already have been awarded damages against some of the Non-Sovereign Defendants.  See Smith, 262 F. Supp. 2d at 240-41.  To the extent that the damages awarded in this action may exceed those awarded in a previous action, the Non-Sovereign Defendants have waived any potential res judicata defense by failing to appear.

primarily for expenses that are not recoverable.  In addition, the proffered evidence is

insufficient for the Court to calculate any taxable costs that could be allowed.  The

Plaintiffs' application for costs consequently should be denied without prejudice to a

renewed application.

IV.    Conclusion

            For the reasons set forth above, the Plaintiffs should be awarded damages

against the Sovereign and Non-Sovereign Defendants in the amount of $6,048,513,805.

Additionally, the Plaintiffs are entitled to prejudgment interest on their non-economic

compensatory damages at the rate of 4.96 percent per annum from September 11, 2001,

through the date judgment is entered.

V.    Notice of Procedure for Filing of Objections to this Report and Recommendation

            The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

to the Chambers of the Honorable George B. Daniels and to the Chambers of the

undersigned at the United States Courthouse, 500 Pearl Street, New York, New York

10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Daniels. The failure to file these timely objections will result in a waiver of those

objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

Dated:       New York, New York
             July 30, 2012

                                          _____
                                          FRANK MAAS
                                          United States Magistrate Judge

Copies to:

Hon. George B. Daniels
United States District Judge

All counsel via ECF

**Appendix 1**
**Economic Damage Awards**

| ESTATE | ECONOMIC DAMAGES |
|---|---|
| Bane, Michael | $5,960,665 |
| Boryczewski, Martin | 17,363,416 |
| Cafiero, Steven | 1,754,202 |
| Caproni, Richard M. | 3,551,011 |
| Chirchirillo, Peter | 5,440,587 |
| Coale, Jeffrey | 5,558,859 |
| Coffey, Daniel M. | 5,059,077 |
| Coffey, Jason | 4,006,486 |
| Collman, Jeffrey | 4,318,172 |
| Diehl, Michael | 5,584,103 |
| Dorf, Stephen | 3,242,690 |
| Fernandez, Judy | 2,852,544 |
| Gamboa, Ronald | 2,890,981 |
| Godshalk, William | 16,672,472 |
| Grazioso, John | 7,376,753 |
| Gu, Liming | 11,883,059 |
| Halvorson, James | 9,464,745 |
| Havlish, Donald | 6,711,879 |
| Lavelle, Dennis | 4,039,992 |
| Levine, Robert | 4,520,876 |
| Lostrangio, Joseph | 5,777,844 |
| Mauro, Dorothy | 1,580,579 |
| Melendez, Mary | 7,531,551 |
| Milano, Peter T. | 22,153,588 |

| | |
|---|---|
| Moreno, Yvette | 2,360,239 |
| Nunez, Brian | 2,499,922 |
| Ognibene, Philip | 4,435,087 |
| Papasso, Salvatore T. | 6,289,680 |
| Perry, John | 4,924,240 |
| Ratchford, Marsha | 6,233,977 |
| Reiss, Joshua | 7,726,738 |
| Rodak, John M. | 24,440,747 |
| Romero, Elvin | 14,783,971 |
| Rosenthal, Richard | 7,274,204 |
| Santillan, Maria Theresa | 3,255,002 |
| Saracini, Victor | 9,593,658 |
| Schertzer, Scott | 2,792,107 |
| Sloan, Paul K. | 5,967,696 |
| Smith, George | 2,609,215 |
| Soulas, Timothy | 86,796,344 |
| Steiner, William | 6,443,814 |
| Stergiopoulos, Andrew | 5,716,259 |
| Straub, Edward W. | 16,552,703 |
| Tino, Jennifer | 2,625,577 |
| Wallendorf, Jeanmarie | 1,768,803 |
| Waller, Meta | 1,200,501 |
| Ward, Timothy | 2,691,269 |
| **TOTAL** | **$394,277,884** |

(See Pls.' Mem. Ex. H).

2

**Appendix 2**
**Solatium Damages**

| RELATIONSHIP | NUMBER OF PLAINTIFFS | DAMAGES | TOTAL |
|---|---|---|---|
| Spouse | 23 | $12,500,000 | $287,500,000 |
| Parent | 41 | 8,500,000 | 348,500,000 |
| Child | 10 | 8,500,000 | 85,000,000 |
| Sibling | 36 | 4,250,000 | 153,000,000 |
| **Total** | **110** | | **$874,000,000** |

(See Pls.' Mem. Ex. A)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In Re Terrorist Attacks on September 11, 2001 :

```
┌─────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____              │
│ DATE FILED: 10·2·12                 │
└─────────────────────────────────────┘
```

:

:                          MEMORANDUM DECISION
                              AND ORDER
:                          03 MDL 1570 (GBD)(FM)

:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

This Document Relates to
Havlish v. bin Laden,
03 Civ. 9848 (GBD) (FM)

GEORGE B. DANIELS, District Judge:

      The plaintiffs in this multi-district litigation ("MDL") seek monetary damages from

defendants who are liable for the physical destruction, death, and injuries suffered as a result of

the terrorist attacks of September 11, 2001 ("September 11th Attacks"). On December 22, 2011,

default judgment was entered on behalf of the plaintiffs in the Havlish action ("Plaintiffs"),

against (a) certain sovereign defendants, including the Islamic Republic of Iran, Ayatollah Ali

Hoseini Khamenei, Hezbollah, and other Iranian individuals and entities ("Sovereign

Defendants"); and (b) certain non-sovereign defendants, including Osama bin laden, the Taliban,

and al Qaeda ("Non-Sovereign Defendants") (collectively, the "Defendants"). See Docket Entry

No. 2516. This Court referred the matter to Magistrate Judge Frank Maas for an inquest on

damages.

      Magistrate Judge Maas issued a Report and Recommendation ("Report") recommending

that Plaintiffs collectively be awarded damages in the amount of $6,048,513,805, plus

prejudgment interest.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. 28 U.S.C. § 636(b)(1). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. Id.; see also Rivera v. Barnhart, 432 F.Supp. 2d 271, 273 (S.D.N.Y. 2006). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(c). It is not required, however, that the Court conduct a *de novo* hearing on the matter. See United States v. Raddatz, 447 U.S. 667, 676 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding those portions to which objections were made. Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y.1985) (quoting Hernandez v. Estelle, 711 F.2d 619, 620 (5th Cir.1983)). When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record." Adee Motor Cars, LLC v. Amato, 388 F.Supp. 2d 250, 253 (S.D.N.Y.2005) (citation omitted). In his report, Magistrate Judge Maas advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). No party objected to the Report. As there is no clear error on the face of the record, this Court adopts the Report in its entirety.

**Sovereign Defendants**

Magistrate Judge Maas properly determined that Plaintiffs may recover for "economic damages, solatium, pain and suffering, and punitive damages" in an action under Section 1605A. 28 U.S.C. § 1605A(c)(4). In such an action, the "estates of those who [died] can recover economic losses stemming from the wrongful death of the decedent; family members can

recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."
<u>Valore v. Islamic Republic of Iran</u>, 700 F. Supp. 2d 52, 83 (D.D.C. 2010).

Magistrate Judge Maas properly determined that economic damages totaling $394,277,884, as broken down in Appendix 1 of this opinion, are appropriate. Plaintiffs submitted extensive analyses from a forensic economist with detailed calculations for two decedents, as well as damage calculations for the remaining forty-five decedents done in the same manner. These analyses yield proposed economic damages comparable to those in other cases. <u>See, e.g.</u>, <u>Dammarell v. Islamic Republic of Iran</u>, 404 F. Supp. 2d 261, 310-24 (D.D.C. 2005); <u>Alejandre v. Republic of Cuba</u>, 996 F. Supp. 2d 261, 310-24 (D.D.C. 2005). Plaintiffs have thus provided a sufficient basis to determine damages and are entitled to economic damages as outlined in the Report. <u>See</u> <u>Transatl. Marine Claims Agency, Inc. v. ACE Shipping Corp.</u>, 109 F. 3d 105, 111 (2d Cir. 1997) (noting that the Court "should take the necessary steps to establish damages with reasonable certainty").

Magistrate Judge Maas also properly determined that $2,000,000 per decedent, for a total of $94,000,000, is an appropriate measure of damages which meets the standard of reasonableness for pain and suffering awards. <u>See</u> <u>Mastrantuono v. United States</u>, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001). Calculating a precise award for each decedent's individual pain and suffering would be impossible because the decedents in this case may have experienced different levels of pain and suffering dependent on their precise locations at the time of the September 11th attacks. However, Plaintiff's expert report confirms that many, if not all of the decedents in this case experienced horrific pain and suffering on September 11, 2001. Awards in other FSIA cases, particularly those determined by Judge Baer in <u>Smith ex rel. Smith v. Islamic Emirate of Afghanistan</u>, suggest that $2 million per decedent is a reasonable figure. <u>See</u> <u>Smith</u>

ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 233 (S.D.N.Y. 2003), amended, 2003 WL 23324214 (S.D.N.Y. May 19, 2003); see also Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d 216 (D.D.C. 2008); Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 87, 89 (D.D.C. 2002).

 Magistrate Judge Maas properly determined that the following solatium[1] awards are appropriate[2], as an upward departure from the framework in Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006):

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

 A review of Plaintiff's submissions makes clear that all of the Individual Plaintiffs have suffered profound agony and grief as a result of the tragic events of September 11th. Considering the extraordinarily tragic circumstances surrounding the September 11th attacks, the indelible impact on the lives of the victims' families, and the frequent reminders that each of the individual Plaintiffs face daily, upward departures from the Heiser framework are warranted.

---

[1] "A claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." Dammarell v. Islamic Republic of Iran, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), vacated on other grounds, 404 F. Supp. 2d 261 (D.D.C. 2005).

[2] Magistrate Judge Maas properly determined that one individual Plaintiff is not entitled to a solatium award because he is not a spouse, child, parent, or sibling of a decedent. Although that plaintiff is the niece of one of the decedents, she has not demonstrated that she is entitled to a solatium award because she does not serve functionally as an immediate family member. See Smith, 262 F. Supp. 2d at 234.

Magistrate Judge Maas also properly determined that Plaintiffs are entitled to punitive damages pursuant to the FSIA in an amount of 3.44 multiplied by their compensatory damages, for a total of $4,686,235,921. See Section 1605(c)(4); Estate of Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 158 (D.D.C. 2011). The 3.44 ratio has been used as the standard ratio applicable to a number of cases arising out of terrorist attacks. See id.; Valore, 700 F. Supp. 2d at 52; Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 76 (D.D.C. 2011).

Magistrate Judge Maas also properly determined that prejudgment interest is appropriate on Plaintiffs' damages for solatium and pain and suffering. The decision to award prejudgment interest, as well as how to compute that interest, rests within the discretion of the court, subject to equitable considerations. Baker v. Socialist People's Libyan Arab Jamahirya, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). Courts "have awarded prejudgment interest in cases where plaintiffs were delayed in recovering compensation for their injuries—including, specifically, where such injuries were the result of targeted attacks perpetrated by foreign defendants." Id. (internal quotations omitted). An appropriate measure of what rate to use when calculating prejudgment interest is the prime rate. Id. Magistrate Judge Maas properly accepted testimony from Plaintiffs' expert that the average prime rate from September 11, 2001 through the date of his report was 4.96%. Thus, Plaintiffs should be awarded prejudgment interest at the rate of 4.96% per annum on their damages of solatium and pain and suffering damages, which total $968,000,000, from the period from September 11, 2001, through the date that judgment is entered.

**Non-Sovereign Defendants**

Magistrate Judge Maas properly determined that the Non-Sovereign Defendants are jointly and severally liable for the damages against the Sovereign Defendants. The Non-

Sovereign Defendants are liable for the same damages as the Sovereign Defendants under traditional tort principles.  See Valore, 700 F. Supp. 2d at 76-80.

**Costs**

Magistrate Judge Maas properly determined that Plaintiffs are not entitled to the $2 million they seek in costs.  Plaintiffs' requested costs are primarily for expenses that are not recoverable pursuant to 28 U.S.C. § 1920 and Local Rule 54.1(c).  For expenses that are recoverable, Plaintiffs have not provided sufficient evidence to establish these amounts with reasonable certainty.  Transatl. Marine Claims Agency, Inc. v. ACE Shipping Corp., 109 F. 3d 105, 111 (2d Cir. 1997; See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  Thus Plaintiffs' application for costs is denied without prejudice.

**Conclusion**

This Court adopts the Report and Recommendation in its entirety. Judgment should be entered against the Sovereign Defendants for (1) economic damages totaling $394,277,884 as broken down in Appendix 1 of this Opinion; (2) damages for pain and suffering of $2,000,000 per decedent totaling $94,000,000; (3) punitive damages totaling $4,686,235,921; and (4) damages for solatium totaling $874,000,000. The Non-Sovereign Defendants are joint and severally liable for these damages. Plaintiffs' additional claims for costs are denied without prejudice.

Dated: New York, New York
      October 3, 2012

SO ORDERED:

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge

**A50**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
    *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBN)(SN)
*Dickey, et al. v. Republic of Iran,* 18-CV-11417 (UA)

### The *Burlingame* Wrongful Death Plaintiffs' Motion for Partial Final Judgments

For the reasons set forth below, and the exhibits attached to and statements contained in

the Declaration of John F. Schutty, Esq. ("Schutty Declaration") and the Declarations of the

Personal Representatives of the Estates of the following set of 9/11 decedents: Joseph D. Dickey,

Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak,

and John Wallice, Jr., Plaintiffs herein, a *Burlingame* subset of *Ashton* Plaintiffs,[1] by and

through their counsel, the Law Office of John F. Schutty, P.C., respectfully move this Court

to award them: (1) economic damages as described herein; (2) *solatium* damages for the losses

suffered by the "immediate family members" and state-recognized heirs of the aforementioned

Estates in the same amounts previously awarded by this Court to other *Ashton* Plaintiffs-Heirs,

---

[1]    The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were ordered consolidated for
liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al.*
master docket number 02-cv-6977, with the filing of a consolidated master complaint. *See* 02-cv-6977,
Doc. No. 15, entered 11/19/2002. There are 167 *Burlingame* Plaintiffs who bring claims for themselves
and/or as representatives of their respective decedents' estates. 108 *Burlingame* Plaintiffs were named in
the original *Burlingame* complaint (02-cv-7230) while an estimated additional 59 were named in
subsequent amendments to the consolidated *Ashton* complaint (02-cv-6977). The *Burlingame* plaintiffs
remain segregated within all consolidated *Ashton* filings and are identified therein according to their
separate docket number and counsel. *See, e.g.*, 02-cv-6977, Doc. No. 465, filed 03/30/2005. The *Dickey,
et al. v. Republic of Iran* action, more fully described in the caption, was filed by the same identical
Plaintiffs on this motion, to ensure that service was properly completed upon Iran.

as well as to other plaintiffs in this consolidated multidistrict litigation against the Islamic Republic of Iran ("Iran"); and (3) prejudgment interest on those damages as set forth below; to (4) permit *Burlingame* claimants to submit future applications for punitive damages consistent with any future rulings of this Court; and (5) permit remaining *Burlingame* claimants to submit motions for final judgment in future stages.

This motion is made only on behalf of the appointed Personal Representatives and state-recognized heirs of the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., and, specifically, the individuals and amounts listed in the simultaneously filed "[Proposed] Order of Partial Final Judgments Against Iran on Behalf of Certain *Burlingame* Plaintiffs," in light of this Court's previous order granting permission to allow certain remaining *Burlingame* Plaintiffs to move for this relief. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3987, filed 04/30/2018.

Having already been awarded a partial judgment for the conscious pain and suffering of their decedent, the awards in the simultaneously filed "Proposed Order" will constitute partial final awards and judgments against the Islamic Republic of Iran in the matter brought by the Personal Representatives and state-recognized heirs of the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr.

## I.    Procedural Background

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001, terror attacks, this Court previously issued a default judgment on liability against Iran to all *Ashton* Plaintiffs (including the

*Burlingame* Plaintiffs, including the Personal Representatives named as Plaintiffs herein)[2] for claims arising out of the deaths of the Plaintiffs' decedents (the "*Ashton* wrongful death Plaintiffs"). *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3008, Entered 08/26/2015. Thereafter, the *Ashton* wrongful death Plaintiffs (including the *Burlingame* Plaintiffs) moved for partial summary judgment for the conscious pain and suffering that their decedents suffered before death, which a December 28, 2015 Report and Recommendation to this Court recommended be granted, and recommended awarding a default judgment against Iran in the amount of $7,556,880,000, representing compensatory damages of $2 million per decedent and punitive damages of $6.88 million per decedent. *See* 03-md-1570 (02-cv- 6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3175, Entered 12/28/2015. Certain *Ashton* wrongful death Plaintiffs (not including any of the *Burlingame* Plaintiffs) moved for default judgments on economic damages as well. This Court granted those motions. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3229, Entered 03/09/2016 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and 3356, Entered 10/11/2016 (awarding damages for economic loss).

The Report and Recommendation also concluded that to the extent the *Ashton* wrongful death Plaintiffs' claims arose out of injuries in New York State the rate of prejudgment interest was 9 percent per annum from September 11, 2001, until the date judgment was entered and to the extent the injuries arose elsewhere 4.96 percent interest per annum compounded annually was appropriate. *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3175, Entered 12/28/2015, pp. 1-2. In addition to awarding pre-death conscious pain and suffering in certain wrongful death actions, this Court previously considered the issue of

---

[2]     Proof of the Islamic Republic of Iran's default in answering the Complaint filed by the *Ashton/Burlingame* Plaintiffs was set forth in the Affidavit of Andrew J. Maloney III sworn to on the 13th day of April 2006 (ECF#524-2 filed 4/28/06 in Case No. 1:02-cv-GBD-SN).

*solatium* damages suffered by certain of the *Ashton* Plaintiffs and the *Havlish* Plaintiffs and the economic damages arising out certain of the *Ashton* Plaintiffs and each of the *Havlish* cases.  In connection with a first group of *Ashton* Plaintiffs *("Ashton I"),* this Court found, among other things, that an award to the immediate family members of each decedent was proper and that prejudgment interest on the *solatium* loss amounts was warranted.  *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBN) (FM), Doc. No. 2623, Entered 10/03/12. pp. 4-5; 03-md-1570 (S.D.N.Y.) (GBN) (FM), Doc. No. 3300, Filed 06/16/2016, p. 1.  The District Court adopted that Report and Recommendation in its entirety in connection with the application made by the *Ashton I* claimants.  *See*  03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3229, Entered 03/09/2016.

In connection with the motion for final judgment for a different group of plaintiffs, an October 14, 2016 Report and Recommendation disagreed with the prior conclusion on punitive damages and permitted plaintiffs to file supplemental briefing at a later date to justify their claim to punitive damages.  *See* 03-md-1570 (11-cv-7550) Doc. No. 3358, Entered 10/12/201 6, pp. 11–16.  The October 14, 2016 Report and Recommendation also adopted a rate of prejudgment interest of 4.96 percent, regardless of where the injuries arose.  *Id.,* p. 20.  A second group of *Ashton* Plaintiffs *("Ashton II")* moved for final judgment on all claims against the Islamic Republic of Iran, asking to defer the issue of punitive damages and employing the 4.96 percent prejudgment interest rate previously adopted by this Court.  *See* 03-md-1570 (11-cv-7550) Doc. No. 3370, Entered 10/21/2016.  On October 31, 2016, this Court granted the *Ashton II* proposed order.  *See* 03-md-1570 (02-cv-6977), Doc. No. 3387, Entered 10/31/2016.  A third group of Ashton Plaintiffs ("*Ashton III"*) then moved for final judgments as well, also employing the 4.96 percent prejudgment interest rate.  *See* Doc. No. 3686, Entered 08/16/2017 (Motion for Final

Judgment for *Ashton III* claimants including claims for *solatium* damages).  On 08/22/2017 this Court granted the *Ashton III* proposed order.  Doc. No. 3706.  A fourth group of Ashton Plaintiffs followed ("*Ashton IV*"), and the Court granted their similar request employing a 4.96 percent prejudgment interest rate.  *See* 03-md-1570 (02-cv-6977), Doc. No. 3977, Entered 04/24/2018 (Motion for Final Judgment for *Ashton IV* claimants including claims for *solatium* damages) Doc. No. 3979 Entered 04/25/2018 (granting proposed order).  On April 27, 2018, the first of the *Burlingame* subset of Ashton Plaintiffs moved for final judgments, similarly employing a 4.96 percent prejudgment interest rate.  *See* Doc. No. *See* 02-cv-6977, Doc. No. 897, Entered 04/27/2018.  The Court granted the *Burlingame* Plaintiffs' proposed order.  *See* 03-md-1570 (02 cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 3987, Filed 04/30/2018.

In addition to economic losses, certain *Aston* Plaintiffs have previously moved this court for *solatium* damages suffered by those family members allegedly eligible to recover such damages under 28 U.S.C. § 1605A.  *See* 03-md-1570 (02-cv-697), Doc. Nos. 3295, Entered 06/08/2016 (Motion for Final Judgment for *Ashton I* claimants including claims for *solatium* damages), 3356, Entered 10/11/2016 (Motion for Final Judgment for *Ashton II* claimants including claims for *solatium* damages); 3686, Entered 08/16/2017 (Motion for Final Judgment for *Ashton III* claimants including claims for *solatium* damages); and Doc. No. 3977, Entered 04/24/2018 (Motion for Final Judgment for *Ashton IV* claimants including claims for *solatium* damages).  Thereafter, the first group of *Burlingame* Plaintiffs moved this court for *solatium* damages under 28 U.S.C. § 1605A.  *See* Doc. No. *See* 02-cv-6977, Doc. No. 897, Entered 04/27/2018.  This Court granted all these motions, finding that an award to the "immediate family members" of each decedent was proper and, as set forth above, that prejudgment interest on the *solatium* loss amounts was warranted.  *See* 03- md-1570 (02-cv-

6977) (S.D.N.Y.) (GBD) (FM), Doc. Nos. 3300, Entered 06/16/16, 3387, Entered 10/31/2016,

3706, Entered 08/22/2017 and 3987, Filed 04/30/2018.

 For the reasons below, as well as those set forth in the prior motions made in *Ashton I,*

*Ashton II, Ashton III, Ashton IV* and the first set of *Burlingame* wrongful death Plaintiffs, the

Personal Representatives of the Estates and state-recognized heirs of the Estates of Joseph D.

Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F.

Sliwak, and John Wallice, Jr. described in the "[Proposed] Order of Partial Final Judgments

Against Iran on Behalf of Certain *Burlingame* Plaintiffs" now move this Court to grant the

simultaneously filed Proposed Order awarding them economic damages as described below,

awarding the same amount of compensatory damages for their *solatium* losses as awarded to the

prior rounds of the *Ashton I, Ashton II, Ashton III, Ashton IV* and the first set of *Burlingame*

wrongful death Plaintiffs and awarded in the *Bauer* and *Havlish* cases, and directing that pre-

judgment interest be assessed at the rates previously awarded in connection with the *Ashton II,*

*Ashton III* and first *Burlingame* Plaintiffs' motions.  The remaining *Burlingame* Plaintiffs may

ask for permission to continue to submit applications in subsequent stages on behalf of those

claimants for whom motions have not been submitted, should other applications be

warranted.

 **II.** **Damages**

 Under 28 U.S.C. § 1605A ("Section 1605A"), which applies to the claims against Iran,

damages are available under the federal law and state law and include money damages "for

personal injury or death."  *See* 28 U.S.C. § 1605 A(a)(1) and (c)(4).  The damages available to

plaintiffs in a Section 1605A action include "economic damages, *solatium*, pain and suffering,

and punitive damages."  28 U.S.C. § 1605A(c)(4).  That is, the "estates of those who [died] can

-6-

recover economic losses stemming from wrongful death of the decedent, family members can recover *solatium* for their emotional injury, and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran,* 700 F. Supp. 2d 52, 83 (D.D.C. 2010).  As this Court has previously held, certain qualified *Ashton* Plaintiffs are therefore entitled to compensation under Section 1605A for the *solatium* and economic losses suffered as a result of the wrongful death of each of their decedents.

A.    ***Solatium* Damages**

Section 1605A specifically provides for *solatium* damages.  Under that provision, the state-recognized heirs of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran,* 281 F. Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005).  Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran,* 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  Given that, in FSIA cases, *solatium* claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the "immediate family members" of the decedents are treated as direct victims.  *See, e.g. Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115 n. 12 (D.D.C. 2005) ("[c]ourts have uniformly held that a terrorist attack – by its nature – is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2001)).  Thus, this Court has previously awarded *solatium* damages to

"immediate family members"[3] who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities.  *See In re Terrorist Attacks on Sept. 11, 2001,* No. 03-MDL-1570 (GBD)(FM) (S.D.N.Y. Oct. 12, 2016) (ECF No. 3358) ("*Hoglan* Report"); *In re Terrorist Attacks on Sept. 11, 2001,* No. 03-MDL-1570 (GBD)(FM), 2015 WL 9468813 (S.D.N.Y. Dec 28, 2015) ("*Ashton* Report"); *In re Terrorist Attacks on Sept. 11, 2001,* No. 03-MDL-1570 (GBD)(FM), 2012 WL 4711404 (S.D.N.Y. Oct 3, 2012) ("*Havlish* Report").

In defining those family members eligible to make a claim for *solatium* damages, this Court previously determined, among other things, that spouses and children who survived the 9/11 decedent were entitled to recover for their losses.  *See* 03-md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3363, Entered 10/14/2016.  Spouses and children – are members of the decedent's estate under New York State law and they do not, therefore, require any additional showing of the nature of their underlying  relationship with their decedent.  Those claimants  falling  into  these  categories  appear,  as  described,  on  Exhibit  A  to  the simultaneously  filed  "[Proposed]  Order  of  Partial  Final  Judgments  Against  Iran  on

---

[3]      This undersigned explicitly objects to this Court's prior awards of *solatium* damages to family members who have not proven that they were either state-recognized heirs of their decedents or "immediate  family  members"  of  their  decedents  (*i.e.*,  domiciled  with  the  decedent  and financially/emotionally dependent on the decedent).  In fact, *solatium* damages are available only to the decedents' "estate, survivors or heirs," described in the Anti-Terrorism Act (the "ATA")**,** 18 U.S.C. § 2333*,* as those terms have been defined by applicable state law governing the decedent's estate*.  See, e.g., Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003)).  In *Bettis*, the D.C. Circuit found that courts should look to state common law to define the class of plaintiffs for whom *solatium* damages are available, reasoning that the FSIA terrorism exception provides for the foreign state sponsor of terrorism to be "liable in the same manner and to the same extent as a private individual under like circumstances," and thus instructs courts to "find the relevant law, not to make" federal common law.  *Bettis*, 315 F.3d at 333 (quoting 28 U.S.C. § 1606).  State substantive tort law governing estate distribution may apply to claims brought under the FSIA.  *See, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591 [2598 n. 11], 77 L.Ed.2d 46 (1983) (finding that under the commercial exceptions to the FSIA, "where state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances").

Behalf of Certain *Burlingame* Plaintiffs."

To fashion a *solatium* award adequately compensating the surviving "immediate family members" in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lambert in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). There, Judge Lamberth concluded that *solatium* damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.*[4]

Magistrate Judge Frank Maas previously recognized that the "immediate family members" of those killed in the September 11th terrorist attacks suffered and continue to suffer "profound agony and grief" and, "[w]orse yet … are faced with frequent reminders of the events that day." *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (GM), Doc. No. 2618, Entered 07/30/12, pp. 10–12. Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," the *Havlish* Report and Recommendation concluded that an upward departure was appropriate and recommended *solatium* damages in the following amounts:

| Relationship to Decedent | *Solatium* Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The *solatium* losses suffered by the surviving, state-recognized heirs of Joseph D.

---

[4]     This formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran,* 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore,* 700 F. Supp. 2d at 85.

Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. are legally and factually comparable to those suffered by the *Havlish* claimants. The deaths of Messrs. Dickey, Eaton, Kelly, O'Brien, Seaman, Sliwak, and Wallice, were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice. These gentlemen were civilians whose deaths, along with those of the other September 11th victims, were intended to create an environment of fear and terror. The claimants here were not attenuated victims, but they paid the immediate price for the terrorist acts and consequences. The surviving and state-recognized heirs of Messrs. Dickey, Eaton, Kelly, O'Brien, Seaman, Sliwak, and Wallice, can visit no private cemetery plot or gravestone to visit their loved one, but are instead resigned to never have the closure that might otherwise be expected after the death of an immediate family member. The amount of *solatium* damages previously adopted by the District Court in the *Havlish* cases should apply equally to the surviving spouses and children of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. and they therefore respectfully request that they be awarded *solatium* damages in those same amounts, based on their relationship with Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. as set forth in Exhibit A to the simultaneously filed "[Proposed] Order of Partial Final Judgments Against Iran on Behalf of Certain *Burlingame* Plaintiffs."

### B.   Economic Damages

The FSIA specifically provides for economic damages. *See* 28 U.S.C. § 1605A(c). The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic*

*Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's estate [are] . . . entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths."  *Valore v. Islamic Republic of Iran,* 700 F. Supp. 2d 52, 81-82 (D.D.C. 2010), citing *Heiser,* 466 F. Supp. 2d 229.  Thus, for example, Royce C. Lamberth of the United States District Court for the District of Columbia, in a series of decisions issuing final judgments against the Islamic Republic of Iran under the FSIA, has held Iran "liable for the economic damages caused to decedents' estates."  *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore*, 700 F. Supp. 2d at 78.

Previously, this Court awarded economic damages in each *Havlish* case for the "economic losses stemming from the wrongful death of the decedent[.]"  *See* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD) (FM), Doc. No. 2623, Entered 10/03/12, pp. 2-3.  In doing so, it adopted the economic loss calculations set forth in the *Havlish* plaintiffs' economic expert reports.  The Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. respectfully ask this Court to award economic damages set forth in the simultaneously filed "[Proposed] Order of Partial Final Judgments Against Iran on Behalf of Certain *Burlingame* Plaintiffs" and supported by the economic expert reports attached as Exhibits A thru G to the Schutty Declaration.  The Personal Representative claimants listed in the "[Proposed] Order of Partial Final Judgments Against Iran on Behalf of Certain *Burlingame* Plaintiffs" opted to seek compensation through the September 11 Victim Compensation Fund of 2001 (the "VCF") and in connection with that claim, gathered information relevant to the economic losses suffered as result of their decedent's wrongful death, which included both documentary evidence of the decedent's earnings as well as

interviews with decedent's surviving spouse, colleagues and other witnesses.  The Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. retained an expert who has rendered recent opinions as to the economic losses that resulted from the wrongful deaths of Messrs. Dickey, Eaton, Kelly, O'Brien, Seaman, Sliwak, and Wallice.  Attached as Exhibit A thru G to the Schutty Declaration are copies of those economic expert reports.  The expert reports also include a description of methodology used and the expert's curriculum vitae.

Accordingly, the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. respectfully request that the economic damages as set forth in the attached Exhibits A thru G of the Schutty Declaration be awarded here, which are the figures calculated by the Plaintiffs' economic expert as the economic losses suffered as a result of the wrongful deaths of Messrs. Dickey, Eaton, Kelly, O'Brien, Seaman, Sliwak, and Wallice Jr.'s  and brought to present value.

### C.      Prejudgment Interest

Additionally, this set of *Burlingame* Plaintiffs also ask that this Court direct that prejudgment interest of 4.96% running from September 11, 2001 until the date of judgment to the extent that their injuries arose in New York be assessed, as was done previously for the *Ashton II*, *Ashton III*, *Ashton* IV and *Burlingame* Plaintiffs, as well as for other plaintiffs in this consolidated litigation.

### D.      Punitive Damages

Previously, in connection with a motion for final judgment on behalf of other *Ashton* claimants, this Court asked that to expedite issuance of final judgments, they defer decision as to the appropriate quantum of punitive damages.   *See*  03-md-1570 (S.D.N.Y.)

(GBD)(SN), Doc. No. 3362, Entered 10/14/2016.  The *Burlingame* Plaintiffs herein ask that

this Court allow them to submit future applications for punitive damages consistent with any

future ruling of this Court.

### III.    Conclusion

For all the reasons herein, as well as those set forth in the previous submissions of the

*Ashton* Plaintiffs and other plaintiffs, the *Burlingame* Plaintiffs herein respectfully request that this

Court grant the "[Proposed] Order of Partial Final Judgments Against Iran on Behalf of

Certain *Burlingame* Plaintiffs" and (1) award economic loss damages in the amounts set forth

therein, as supported by the attached economic expert reports and analysis; (2) award *solatium*

damages to immediate family members as set forth in the Proposed Order; (3) direct that

prejudgment interest of 4.96% running from September 11, 2001 until the date of judgment be

assessed; (4) permit *Burlingame* claimants to submit future applications for punitive damages

consistent with any future ruling of this Court; and (5) permit remaining *Burlingame* claimants to

submit motions for final judgment in future stages.

Dated:  New York, New York
        December 16, 2019

Respectfully submitted,

LAW OFFICE OF JOHN F. SCHUTTY, P.C.

By: /s/ *John F. Schutty*
John F. Schutty (JS2173)
445 Park Avenue, 9th Floor
New York, NY 10022
Tel: (212) 745-1157
Fax: (917) 591-5980

### UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
    *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBN)(SN)
*Dickey v. Republic of Iran, et al.,* 18-CV-11417 (UA)

### DECLARATION OF JOHN F. SCHUTTY IN
### SUPPORT OF MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENTS
### <u>AGAINST IRAN ON BEHALF OF CERTAIN *BURLINGAME* PLAINTIFFS</u>

JOHN F. SCHUTTY, ESQ., hereby states under penalty of perjury that:

1.     I am an attorney representing a *Burlingame* subset of *Ashton* Plaintiffs in the above-captioned litigation.

2.     I submit this Declaration in support of the present motion for the entry of partial final judgments against the Islamic Republic of Iran ("Iran") on behalf of various Estates of decedents described below, all of whom perished at the World Trade Center as a result of the terrorist acts perpetrated on September 11, 2001.  In support of this application, and for the convenience of this Court, I am separately filing a "Proposed Order for the Entry of Partial Final Judgments Against Iran" on behalf of the following Estates:

    a.     The Estate of Joseph D. Dickey (described within the Irene Dickey Declaration and accompanying economist report, both attached hereto as Exhibit A);

    b.     The Estate of Robert D. Eaton (described within the Jacqueline Eaton Declaration and accompanying economist report, both attached hereto as Exhibit B);

c.      The Estate of James J. Kelly (described within the Joanne Kelly Declaration and accompanying economist report, both attached hereto as Exhibit C);

d.      The Estate of Timothy M. O'Brien (described within the Lisa O'Brien Declaration and accompanying economist report, both attached hereto as Exhibit D);

e.      The Estate of Michael H. Seaman  (described within the Dara Seaman Declaration and accompanying economist report, both attached hereto as Exhibit E);

f.      The Estate of Robert F. Sliwak  (described within the Susan Sliwak Declaration and accompanying economist report, both attached hereto as Exhibit F); and

g.      The Estate of John Wallice, Jr. (described within the Allison Wallice Declaration and accompanying economist report, both attached hereto as Exhibit G).

3.      The source of information and the basis for belief in the statements contained herein are my representation of the *Burlingame* Plaintiffs listed in Exhibits A through G (the attached Declarations and economist reports), my work in connection with the September 11th terror attacks, my firm's files, my conversations with the widows of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., as well as other court records relating to the multi-district litigation to which these *Burlingame* Plaintiffs are parties.  Any matters about which I lack personal knowledge are asserted herein upon information and belief.

4.      Claims brought on behalf of the Plaintiffs described herein and within Exhibits A through G were part of the original *Burlingame* Complaint, styled *Burlingame, et al. v. Bin Laden, et al.*, filed on September 10, 2002, and bearing civil action number 02-cv-7230.  Since these Plaintiffs remain segregated in the consolidated *Ashton* filings under their original civil action number and thus can easily be identified, Plaintiffs appearing under the *Burlingame* civil

action number 02-cv-7230 within the consolidated *Ashton* Complaint are being collectively referred to hereinafter as the "*Burlingame* Plaintiffs."

5.     Mr. Joseph D. Dickey was 50 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Irene Dickey, son, Joseph Dickey and daughter, Elizabeth Dickey (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as set forth in Exhibit A). At the time of his death, Mr. Dickey was a Managing Director and Partner at Cantor Fitzgerald.

6.     Mr. Robert D. Eaton was 37 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Jacqueline Eaton (the only "immediate family member" living with him at the time of his death and his only New York State designated "heir," as set forth in Exhibit B).  At the time of his death, Mr. Eaton was an NASD Registered Dealer at Espeed, Cantor Fitzgerald, and Liberty Brokerage - Patriot Securities.

7.     Mr. James J. Kelly was 39 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Joanne Kelly, and daughters, Brianne Kelly, Kaitlyn Kelly, Erin Kelly and Collen Kelly (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as set forth in Exhibit C).  At the time of his death, Mr. Kelly was a Partner - Mortgage Backed Securities Broker at Cantor Fitzgerald.

8.     Mr. Timothy M. O'Brien was 40 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Lisa O'Brien, son, John O'Brien, and daughters, Madeline O'Brien and Jacqueline O'Brien (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as

Case 1:03-md-01570-GBD-SN   Document 9095-2   Filed 05/18/23   Page 71 of 101
**A66**
Case 1:03-md-01570-GBD-SN   Document 5368   Filed 12/16/19   Page 4 of 7

set forth in Exhibit D).  At the time of his death, Mr. O'Brien was a Partner - Mortgage Backed Securities Broker at Cantor Fitzgerald.

9.     Mr. Michael H. Seaman was 41 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Dara Seaman, son, Edward Seaman, and daughters Michaella Seaman and Mary Seaman (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as set forth in Exhibit E).  At the time of his death, Mr. Seaman was an Interest Rate Derivatives Swaps Broker at Cantor Fitzgerald.

10.     Mr. Robert F. Sliwak was 43 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Susan Sliwak, sons, Ryan Sliwak, Kyle Sliwak and daughter, Nicole Sliwak (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as set forth in Exhibit F).  At the time of his death, Mr. Sliwak was an Institutional Bond Trader at Cantor Fitzgerald.

11.     Mr. John Wallice, Jr. was 44 years of age when he died in the September 11th terrorist attacks.  He was survived by his wife, Allison Wallice, sons, John Wallice III, Christian Wallice, and Patrick Wallice (the only "immediate family members" living with this decedent at the time of his death and his only surviving New York State designated "heirs," as set forth in Exhibit G).  At the time of his death, Mr. Wallice was a Broker - Emerging Markets Securities at Cantor Fitzgerald.

12.     In connection with the filing of a claim to the September 11th Victim Compensation Fund on behalf of the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., I

obtained information and materials relevant to the calculation of economic loss attributable to their wrongful deaths as of the time their claims were submitted to the Victim Compensation Fund.  That information has been provided to Steven J. Shapiro, Ph.D., of Analytic Resources, LLC, Economic Consultants.   Dr. Shapiro took the information we obtained relevant to economic loss and prepared expert report calculations as to the present value of each Estate's economic damages.  These reports, which set forth Dr. Shapiro's methodology, are attached hereto to the Declarations signed by each surviving spouse as Exhibits A through G.  Attached to the reports in each case is Dr. Shapiro's curriculum vitae.

13.    The economic loss figures set forth in each economist report represents the present value (based on the calculations attached in Exhibits A through G) of the estimated economic loss suffered as a result of the wrongful deaths of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr.

14.    The decedents' surviving wives and children have suffered tremendously as a result of the loss of their husband and father.  In addition to the economic losses set forth herein, they have suffered unimaginable mental anguish and grief as a result of the acts of terror that so tragically and violently took the lives of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., and devastated their families.

15.    I have been retained by the Plaintiffs described in Exhibits A through G to pursue recovery for their wrongful death damages and *solatium* losses arising out of the deaths of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr. on September 11, 2001.  I have verified via written

documentation and interviews, and through the Declarations attached as Exhibit A through G, that these Plaintiffs were the only "immediate family members" living with their respective husbands/fathers at the time of their deaths, that these Plaintiffs are the only New York State defined "heirs" of their decedent husbands/fathers, that these Plaintiffs did in fact survive the decedent and that they have not recovered fully for their economic or *solatium* damages previously. I have further confirmed that they do not have any prior judgment or pending motion before this Court for compensation arising out of the September 11th attacks.

16. In prior orders, the Court has established the loss amounts for *solatium* damages based on familial relationship to the decedents. *See, e.g.,* 03-md-1570 (02-cv-6977) (S.D.N.Y.) (GBD)(FM), Doc. No. 2623, Entered 10/03/12, pp. 4-5; 03-md-1570 (S.D.N.Y.) (GBD)(FM), Doc. No. 3300, Filed 06/16/2016, p. 1. The *solatium* amounts requested in Exhibits A through G are the figures determined appropriate in the Court's prior orders.

17. Previously, in connection with a motion for final judgment on behalf of other *Ashton* claimants, this Court asked that to expedite issuance of final judgments, the claimants defer decision as to the appropriate quantum of punitive damages and present a proposed order with a rate of prejudgment interest of 4.96 per annum, compounded annually. *See* 03- md-1570 (S.D.N.Y.) (GBD)(SN), Doc. No. 3362, Entered 10/14/2016. The form of the proposed Order submitted simultaneously herewith therefore conforms to the Court's prior orders.

18. Accordingly, simultaneously filed herewith is a "[Proposed] Order for the Entry of Partial Final Judgments Against Iran" conforming with the Court's previous orders. This Proposed Order contains economic loss figures supplied by the expert reports attached as

- 6 -

Exhibits A through G, and the *solatium* damages reflect the amounts previously awarded to relatives of those killed on September 11, 2001.

19.     Accordingly, I respectfully request that this Court grant the Proposed Order submitted simultaneously herewith.

Dated:  December 16, 2019
          New York, New York

LAW OFFICE OF JOHN F. SCHUTTY, P.C.

By: /s/ *John F. Schutty*

John F. Schutty (JS2173)
445 Park Avenue, 9th Floor
New York, New York 10022
Tel: (212) 745-1157
Fax: (917) 591-5980

**A70**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN) (and member case
        *Burlingame v. Bin Laden, et al.,* 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran,* 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF IRENE DICKEY
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Irene Dickey, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under

the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Joseph Dickey

Jr., who perished at the World Trade Center as a result of the terrorist attacks on September 11,

2001.

2.      I submit this Declaration on my own behalf as the spouse of Joseph Dickey and

on behalf of the New York State designated "heirs" of my late husband, our two children: Joseph

Dickey III and Elizabeth Dickey.

3.      I can affirm to the Court that my deceased husband lived with me and my two

children at a private home at 315 Ryder Road, Manhasset, New York 11030 at the time of his

death. I can further affirm that my children and I were the only "immediate family members"

living with my husband and that no other family member lived with us (or was dependent on my

husband – financially or emotionally) at the time of his death.

    4.       Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

    5.       For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Joseph Dickey and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
       December *11*, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Irene Dickey

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN) (and member case
    *Burlingame v. Bin Laden, et al.,* 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran,* 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF JACQUELINE EATON
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Jacqueline Eaton, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury

under the laws of the United States of America, that the following is true and correct:

1.    I am the court-appointed personal representative of the Estate of Robert Eaton,

who perished at the World Trade Center as a result of the terrorist attacks on September 11,

2001.

2.    I submit this Declaration on my own behalf as the spouse of Robert Eaton.

3.    I can affirm to the Court that my deceased husband lived with me at a private

home at 7 Paper Hill Road, Manhasset, New York 11030 at the time of his death. I can further

affirm that I was the only "immediate family member" living with my husband and that no other

family member lived with us (or was dependent on my husband – financially or emotionally) at

the time of his death. I am, therefore, the only New York State designated "heir" of my late

husband.

4.      Finally, I can affirm that the death of my husband affected me not only in the days following his death, but my emotional and financial condition continues to be affected adversely even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem me as the only "immediate family member" of Robert Eaton and then enter a default judgment award in the amount requested by my attorney (and economist).

Dated: New York, New York
         December 11, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                    _Jacqueline Eaton_
                                                    Jacqueline Eaton

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks on September 11, 2001 03 MDL 1570 (GBD)(SN)

ECF Case

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member case
   *Burlingame v. Bin Laden, et al.*, 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia*, 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran*, 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF JOANNE KELLY
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Joanne Kelly, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.       I am the court-appointed personal representative of the Estate of James Kelly, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.       I submit this Declaration on my own behalf as the spouse of James Kelly and on behalf of the only other New York State designated "heirs" of my late husband, our four children: Brianne Kelly, Kaitlyn Kelly, Colleen Kelly and Erin Kelly.

3.       I can affirm to the Court that my deceased husband lived with me and my four children at a private home at 2405 Rockville Centre Parkway, Oceanside, New York 11572 at the time of his death. I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.       Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.       For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of James Kelly and enter a default judgment award in the amounts requested by our attorney (and economist).
Dated: New York, New York

December 12 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Joanne Kelly

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN) (and member case
   *Burlingame v. Bin Laden, et al.,* 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran,* 18-CV-11417 (UA)

**DECLARATION OF PLAINTIFF LISA O'BRIEN
IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN**

Lisa O'Brien, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under

the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Timothy

O'Brien, who perished at the World Trade Center as a result of the terrorist attacks on September

11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of Timothy O'Brien and

on behalf of the only other New York State designated "heirs" of my late husband, our three

children: John O'Brien, Madeline O'Brien, and Jacqueline O'Brien.

3.      I can affirm to the Court that my deceased husband lived with me and my three

children at a private home at 16 Wishing Well Lane, Old Brookville, New York 11545 at the

time of his death.  I can further affirm that my children and I were the only "immediate family

members" living with my husband and that no other family member lived with us (or was

dependent on my husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Timothy O'Brien and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
        December 11, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                                Lisa O'Brien

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN) (and member case
     *Burlingame v. Bin Laden, et al.,* 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran,* 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF DARA SEAMAN
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Dara Seaman, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under

the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Michael Seaman,

who perished at the World Trade Center as a result of the terrorist attacks on September 11,

2001.

2.      I submit this Declaration on my own behalf as the spouse of Michael Seaman and

on behalf of the only other New York State designated "heirs" of my late husband, our three

children: Michaella Seaman, Mary Seaman and Edward Seaman.

3.      I can affirm to the Court that my deceased husband lived with me and my three

children at a private home at 222 Chapel Road, Manhasset, New York 11030 at the time of his

death.  I can further affirm that my children and I were the only "immediate family members"

living with my husband and that no other family member lived with us (or was dependent on my

husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Michael Seaman and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
      December /2, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                  Dara Seaman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN) (and member case
    *Burlingame v. Bin Laden, et al.,* 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran.* 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF SUSAN SLIWAK
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Susan M. Sliwak, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under

the laws of the United States of America, that the following is true and correct:

1.    I am the court-appointed personal representative of the Estate of Robert F. Sliwak,

who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.    I submit this Declaration on my own behalf as the spouse of Robert F. Sliwak and

on behalf of the only other New York State designated "heirs" of my late husband, our three

children: Ryan M. Sliwak, Kyle J. Sliwak, and Nicole T. Sliwak.

3.    I can affirm to the Court that my deceased husband lived with me and my three

children at a private home at 1653 Hannington Avenue, Wantagh, New York 11793 at the time of

his death.  I can further affirm that my children and I were the only "immediate family members"

living with my husband and that no other family member lived with us (or was dependent on my

husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Robert F. Sliwak and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
        December 12, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Susan M. Sliwak_
Susan M. Sliwak

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN) (and member case
    *Burlingame v. Bin Laden, et al.*, 02-cv-7230)
*Ashton, et al. v. Kingdom of Saudi Arabia*, 17-cv-02003 (GBD)(SN)
*Dickey, et al. v. Republic of Iran*, 18-CV-11417 (UA)

## DECLARATION OF PLAINTIFF ALLISON WALLICE
## IN SUPPORT OF APPLICATION FOR A DEFAULT JUDGMENT AGAINST IRAN

Allison Wallice, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury

under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of John Wallice Jr.,

who perished at the World Trade Center as a result of the terrorist attacks on September 11,

2001.

2.      I submit this Declaration on my own behalf as the spouse of John Wallice Jr. and

on behalf of the only other New York State designated "heirs" of my late husband, our three

children: John Wallice III, Christian Wallice and Patrick Wallice.

3.      I can affirm to the Court that my deceased husband lived with me and my three

children at a private home at 43 Taylor Road, Huntington, New York 11743 at the time of his

death. I can further affirm that my children and I were the only "immediate family members"

living with my husband and that no other family member lived with us (or was dependent on my

husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of John Wallice Jr. and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
       December 2, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Allison Wallice_
Allison Wallice

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)  ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
   *Burlingame v. Bin Laden, et al.*, 02-cv-7230 (GBD)(SN))
*Ashton, et al. v. Kingdom of Saudi Arabia,* 17-cv-02003 (GBN)(SN)
*Dickey v. Republic of Iran, et al.,* 18-CV-11417 (UA)

### [PROPOSED] ORDER OF PARTIAL FINAL JUDGMENTS
### AGAINST IRAN ON BEHALF OF CERTAIN *BURLINGAME* PLAINTIFFS

Upon consideration of the evidence and arguments submitted by the Personal Representatives of the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., regarding their wrongful death claims (the Plaintiffs named herein are *Ashton*/*Burlingame* parties to the above-captioned litigation), and the Judgment by Default Against the Islamic Republic of Iran entered on August 26, 2015, together with the entire record in this case, and in addition to the prior default judgment award for compensatory damages for the pre-death conscious pain and suffering of the decedents Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, and John Wallice, Jr., (*see* ECF Nos. 3226, 3229), it is hereby;

**ORDERED** that partial final judgment is entered on behalf of the *Burlingame* Plaintiffs identified in the attached Exhibit A against the Islamic Republic of Iran; and it is

**ORDERED** that the *Burlingame* Plaintiffs identified in the attached Exhibit A are awarded economic damages as set forth in Exhibit A; and it is

**ORDERED** that the *Burlingame* Plaintiffs identified in the attached Exhibit A are awarded *solatium* damages as set forth in Exhibit A; and it is

**ORDERED** that prejudgment interest on those awards is to be calculated at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and it is

**ORDERED** that the *Burlingame* Plaintiffs identified in the attached Exhibit A may submit a future application for punitive damages consistent with any future rulings of this Court; and it is

**ORDERED** that the *Burlingame* Plaintiffs not appearing on Exhibit A who were not previously awarded *solatium* and/or economic damages may submit applications in later stages and they will be approved on the same basis as currently approved for those Plaintiffs appearing on Exhibit A.

Dated: New York, New York
      December 16, 2019

SO ORDERED:

_____
GEORGE B. DANIELS
UNITED STATES DISTRICT COURT JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |
|---|---|

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
*Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

***Ashton-Burlingame-Dickey* Plaintiffs' Amended Motion**
**for Final Judgments Against the Taliban and Muhammad Omar**

For the reasons set forth below, and in the statements contained in the Declaration of John F.

Schutty, Esq. ("Schutty Declaration") dated August 17, 2022, the exhibits thereto, the accompanying

Memorandum of Points & Authorities, and the record in this case, those plaintiffs in the above-

captioned *Ashton* matter (a subset of original *Burlingame* plaintiffs,[1] hereinafter referred to as the

*Ashton-Burlingame-Dickey* Plaintiffs) who are represented by the Law Office of John F. Schutty,

P.C.,[2] described within the exhibits to the Schutty Declaration, respectfully move for an Order

determining the liability of the Taliban and the founder and former leader of the Islamic Emirate of

Afghanistan, Emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants") for final

---

[1]     The *Burlingame* (02-cv-7230) and *Ashton* (02-cv-6977) matters were ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al.* master docket number 02-cv-6977, with the filing of a consolidated master complaint.  *See* 02-cv-6977, Doc. No. 15, entered 11/19/2002.  There were 167 *Burlingame* Plaintiffs who brought claims for themselves and/or as representatives of their respective decedents' estates.  108 *Burlingame* Plaintiffs were named in the original *Burlingame* complaint (02-cv-7230).  The *Burlingame* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket number and counsel.  *See, e.g.*, 02-cv-6977, Doc. No. 465, filed 03/30/2005.

[2]     The *Ashton* Complaints include the Plaintiffs represented by the Law Office of John F. Schutty P.C. Each of the Plaintiffs' claims identified in Exhibits A through H to the Declaration of John F. Schutty accompanying the instant motion were included in the *Ashton* 6th Amended Complaint filed September 30, 2005 (ECF 1463), which was the operative pleading at the time this Court issued a liability judgment for the consolidated *Ashton* plaintiffs against the *Taliban* and *Omar* Defendants (and others) on May 12, 2006, ECF 1797.

damages judgments in connection with the losses and injuries these Plaintiffs suffered as a result of the deaths of their decedents in the September 11, 2001 terrorist attacks.

As shown through the accompanying Schutty Declaration (and exhibits attached thereto): (a) all eight of the wrongful death claims at issue on this motion are being pursued by the "personal representative" of each respective decedent's estate, appointed in accordance with the law of the state (New York) where each decedent was domiciled at the time of his death, (b) all of the claimants seeking damages herein are "heirs" (widows and children of each decedent), qualified to receive wrongful death damages under the law of the state where each decedent was domiciled at the time of his death, (c) their claims against the *Taliban* and *Omar* Defendants were filed against these Defendants in a timely manner in 2002 (*See* 02-cv-6977 (S.D.N.Y.) ECF 1.  That Complaint was consolidated and amended several times.  *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.), and (d) all the claimants were United States citizens domiciled in New York State at the time of each decedent's death.

In light of the base default liability judgment the *Ashton* plaintiffs previously obtained against, among others, the *Taliban* and *Omar* Defendants, the *Ashton-Burlingame-Dickey* Plaintiffs now specifically request an Order:

1.      Determining that a common law cause of action for wrongful death and/or a cause of action for wrongful death under the Anti-Terrorism Act (18 U.S.C. § 2333) each require an application of applicable state law on estate administration to determine: (a) who may bring such a wrongful death claim (*i.e.,* who are the recognized heirs, and who may bring such a claim on their behalf), (b) when such a claim must be brought to be timely (statute of limitations), and (c) the measure of damages on any such claim.  *See* the accompanying Memorandum of Points & Authorities.

2.      Awarding each Estate of the individuals killed in the September 11 terrorist attacks

listed in Exhibit J (the "*Ashton-Burlingame-Dickey* 9/11 Decedents") damages for their decedent's conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them in a default judgment against the Defendant Islamic Republic of Iran (an item recoverable under applicable New York State law by each Estate) (MDL ECF#5376);

3.      Awarding each Estate of the *Ashton-Burlingame-Dickey* 9/11 Decedents herein damages as set forth in Exhibit J for economic loss against the *Taliban* and *Omar* Defendants, in the same amounts that this Court awarded to those Estates on the basis of the expert analysis and reports that these same Plaintiffs previously filed in their default judgment application against Iran (those same expert reports are filed here) (MDL ECF#5376);

4.      Awarding the Estate Personal Representatives listed in Exhibit J, who are named as such in the original Complaints, and who are also the widows of *Ashton* 9/11 Decedents (qualified heirs of each estate under New York State law), solatium damages in the same amount that this Court has previously awarded to these widows *(if New York State law is deemed not to apply)* (MDL ECF#5376);

5.      Awarding the children of the *Ashton* 9/11 Decedents listed in Exhibit J (qualified heirs of each estate under New York State law), whose 9/11 Decedents were named in the original Complaints, solatium damages in the same amounts that this Court has previously awarded to these children *(if New York State law is deemed not to apply* (MDL ECF#5376*)*;

6.      Awarding these *Ashton-Burlingame-Dickey* Plaintiffs treble damages under the Anti-Terrorism Act (18 U.S.C. § 2333).

7.      Awarding these *Ashton-Burlingame-Dickey* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

8.      Granting these *Ashton-Burlingame-Dickey* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date; and

9.      Granting permission for all other *Ashton* plaintiffs in this action, not appearing within the Exhibits to the Schutty Declaration, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

As the awards set forth in the accompanying Proposed Order will represent the only direct recovery by these *Ashton-Burlingame-Dickey* Plaintiffs against the *Taliban* and *Omar* Defendants, the Proposed Order will constitute final awards and judgments against the *Taliban* and *Omar* Defendants for these Plaintiffs.

Dated: New York, New York
          August 17, 2022

Respectfully submitted,

LAW OFFICE OF JOHN F. SCHUTTY, P.C.

BY:___ /s/ *John F. Schutty* _____
John F. Schutty, Esq. (JS2173)
445 Park Ave., 9th Floor
New York, New York 10022
Tel: (212) 745-1157
*Counsel for Ashton-Burlingame-Dickey*
*Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) |
| | ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
*Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

**Declaration of John F. Schutty, Esq. in Support**
**of the *Ashton-Burlingame-Dickey* Wrongful Death Plaintiffs'**
**Amended Motion for Final Judgments Against the Taliban and Muhammad Omar**

I, JOHN F. SCHUTTY, ESQ., pursuant to 28 U.S.C. § 1746, hereby state under the penalty of

perjury that:

1.      I am an attorney representing certain Plaintiffs in the above-referenced matter (the

"*Ashton-Burlingame-Dickey* Plaintiffs").

2.      I submit this declaration in support of the present amended motion for final judgment

(original motion – MDL ECF#7577 (Motion), 7578 (Declaration) and 7579 (Proposed Order) in 1:03-

md-01570-GBD-SN, and ECF#1584, 1585 and 1586 in 1:02-cv-06977-GBD-SN) and amended

motion (amended motion – MDL ECF#7678 (Motion), 7683 (Declaration) and 7685 (Proposed

Order), on behalf of various Estates of decedents described below, all of whom perished at the World

Trade Center as a result of the terrorist acts perpetrated on September 11, 2001.  The earlier filed

motions have been withdrawn (MDL ECF#7577) or denied without prejudice to renewal by this

Court's Orders (MDL ECF#7968 and 8242).  *This amended motion is seeks clarify the basis for the*

*within Plaintiffs' liability and damage claims in this action and to comply with this Court's Orders*

*requiring additional information.*  In support of this application, and for the convenience of this

Court, I am separately filing a "Memorandum of Points & Authorities," and a "Proposed Order for the

Entry of Partial Final Judgments Against the Taliban and Muhammad Omar Defendants" on behalf of the following Estates:

    a.    The Estate of Joseph D. Dickey (described within the Irene Dickey Declaration and accompanying economist report, both attached hereto as Exhibit A);

    b.    The Estate of Robert D. Eaton (described within the Jacqueline Eaton Declaration and accompanying economist report, both attached hereto as Exhibit B);

    c.    The Estate of James J. Kelly (described within the Joanne Kelly Declaration and accompanying economist report, both attached hereto as Exhibit C);

    d.    The Estate of Timothy M. O'Brien (described within the Lisa O'Brien Declaration and accompanying economist report, both attached hereto as Exhibit D);

    e.    The Estate of Michael H. Seaman (described within the Dara Seaman Declaration and accompanying economist report, both attached hereto as Exhibit E);

    f.    The Estate of Robert F. Sliwak (described within the Susan Sliwak Declaration and accompanying economist report, both attached hereto as Exhibit F);

    g.    The Estate of John Wallice, Jr. (described within the Allison Wallice Declaration and accompanying economist report, both attached hereto as Exhibit G); and

    h.    The Estate of Farrell Lynch (described within the Eileen Lynch Declaration

and accompanying economist report, both attached as Exhibit H).

i.   Copies of the state court orders appointing the widows of each decedent as the "personal representative" of each Estate for the purpose of pursuing wrongful death damages on behalf of the Estate (attached as Exhibit I).

3.   The form of this amended motion and the relief requested herein are intended to comply with the prior orders of this Court.  ECF MDL#3433, 3435 (requiring sworn declaration of due diligence safeguards and verification regarding any prior relief) and 8198 (requiring the identification of the claimants as U.S. Nationals).[1]

**Procedural Background**

4.   On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), among others.  *See* 02-cv-6977 (S.D.N.Y.) ECF 1.  That Complaint was consolidated and amended several times.  *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.

5.   The Law Office of John F. Schutty, P. C. represents some, but not all, of the plaintiffs identified on the *Ashton* Complaints (formerly *Burlingame* plaintiffs) (the plaintiffs represented on this motion will be hereinafter referred to as the *Ashton-Burlingame-Dickey* Plaintiffs).  I anticipate additional plaintiffs on the *Ashton* Complaints to move shortly for relief similar to that sought on this motion.

6.   Pursuant to this Court's Order, the *Ashton* Plaintiffs served the *Taliban* and *Omar* Defendants by publication. ECF 445 at 1, 8, 11.  Verification of service by publication on among others, the *Taliban* and *Omar* Defendants, was provided on March 16, 2005 and March 31, 2005, for

---

[1]   References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by the MDL ECF number; references to individual civil case docket entries are preceded by the case number.

publication in both English and Arabic, consistent with the service Order.  ECF 709, 735.[2]  The

*Taliban* and *Omar* Defendants never answered and the *Ashton* Plaintiffs thereafter moved for a

Certificate of Default and a default judgment, which this Court granted on May 12, 2006.  ECF 1782

*et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including

the *Taliban* and *Omar* Defendants).[3]  That is, as of May 12, 2006, the *Ashton* Plaintiffs had a base

liability default judgment against the *Taliban* and *Omar* Defendants, among others.

       7.      The *Ashton-Burlingame-Dickey* Plaintiffs herein now seek final damage judgments

against the *Taliban* and *Omar* Defendants.

       8.      This amended motion and declaration are being filed to clarify the liability and

damage claims of these *Ashton-Burlingame-Dickey* Plaintiffs (and to comply with prior Orders of this

Court), as their claims differ in several significant ways from the claims sought by virtually every

other member of the Death and Injury Plaintiff's Executive Committee in this MDL litigation.

       9.      The Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 provides (emphasis added):

> *Any national* of the United States injured in his or her person, property, or business by
> reason of an act of international terrorism, *or his or her estate, survivors, or heirs*, may
> sue therefor in any appropriate district court of the United States and shall recover
> threefold the damages he or she sustains and the cost of the suit, including attorney's
> fees.

       10.     In the event of a death resulting from an act of international terrorism, this ATA cause

of action is *not* clear as to which individuals fit within the scope of the phrase "his or her estate,

survivors, or heirs."

       11.     In this MDL litigation, plaintiffs claiming on behalf of 9/11 decedents have asserted

---

[2]    The publication notices were directed at the named defendants to the MDL docket and advised them in
both English and Arabic that they were required to answer the Complaints on that docket, which sought, among
other things, compensatory, treble and punitive damages, within 60 days.  ECF 709 at 2; 735 at 2.

[3]    This Court's default liability judgment was issued on May 12, 2006 and stated that it applied to all
claims, between plaintiffs and defendants, included up to and through the Sixth Amended Complaint.  ECF
1797.

causes of action based on both state wrongful death law and the ATA.

12.     In the default judgment filings sought against Iran, many of the plaintiffs were parents and siblings of 9/11 decedents who asserted individual and personal claims as plaintiffs asserting the ATA cause of action (these individuals were not court-appointed personal representatives) and many were belatedly added to the litigation in amended pleadings; most of these parents-siblings of decedents were not within the "estate" of their 9/11 decedent, as that "estate" is defined by governing state law.

13.     In claiming money damages for this class of plaintiffs under the ATA, the Death & Injury Plaintiffs' Executive Committee ("D&I PEC") has claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA), in a default judgment setting (*see* accompanying Memorandum of Points & Authorities), is relevant; in turn, the PEC implicitly suggested that the MDL court here could wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration.[4]  No precedent existed within

---

[4]     *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").  "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it." 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update).  A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.  *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999).  *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).  When federal law does not expressly establish the legal rule for a federal question case, a federal court may borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).  *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully

-5-

the District Court (S.D.N.Y.) or the governing Circuit (Second) on this novel issue at that time.

14.     In fact, each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents.  In New York, for example, which governs the claims of the Plaintiffs on this motion, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.  Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury.  *Id*.  This fact has been given no regard in the MDL litigation to date.  Also, New York State law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.[5]  *See* EPTL, Section 5-4.1.

15.     New York "estate distribution" law and wrongful death law, which require a result different than that reached by this Court in entering default judgments against Iran, was not only ignored, it was violated – by awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."[6]

---

protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)).  "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death."  S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[5]     "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries."  https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[6]     In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the court failed to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

16.     In the event of a death by an act of international terrorism, the ATA is patently: (1) *silent* as to which individuals fit within the scope of the decedent's "estate, survivors, or heirs" (how that phrase should be interpreted), (2) *silent* as to whom may assert a claim for the decedent's "estate, survivors, or heirs" on their behalf, and (3) *silent* as to what damages may be awarded to surviving family members.[7]

17.     Typically, where a federal statute does not provide guidance on an issue relating to estate law, reference is made to state law.[8]

18.     Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[9]

19.     Here, the laws of the domiciles of the decedents have apparently been given little regard in evaluating the wrongful death claims of individuals outside the "estate, survivors, or heirs" explicitly defined by state law.

20.     On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and

---

[7]     When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[8]     The District Court, when and if it reaches the merits of this issue again, will have to decide how the ATA should be applied as a wrongful death remedy.  It will have to address the applicable damage policies and, if state wrongful death causes of action are incorporated into the ATA, whether state damage limitations, such as ceilings on recoveries or prohibitions on awards for nonpecuniary losses, are also incorporated.

[9]      28 U.S.C. § 1652.  The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955).  There are also more specific federal statutes that require the use of state law on both procedural and substantive matters.  *See, e.g.*, 28 U.S.C. § 1738 (federal courts required to give state court judgments the same full faith and credit that state courts would give them); Federal Tort Claims Act, 28 U.S.C. § 1346(b).

state policy.

21.     In seeking wrongful death damages in this litigation, my firm presently represents only court-appointed personal representatives and members of 9/11 decedent "estates," as that latter term is defined by New York State law; my law firm has chosen to represent these limited family members (spouses and children) of 9/11 decedent estates, to avoid a conflict of interest (a battle over the distribution of wrongful death damages).[10]   My firm has rejected offers to represent parents and siblings of these decedents (who would be denied a distribution of wrongful death proceeds under New York law), who might affect distributions to surviving spouses and children by diminishing their recoveries.

22.     The clients that I represent were allowed to seek compensation under the "Justice For United States Victims of State Sponsored Terrorism Act Fund" ["Iran Fund"], 42 U.S.C. § 10609(b)(2) a/k/a "USVSST," only after parents and siblings of 9/11 decedents had already received a distribution from the USVSST (and, thereafter, my clients received a smaller overall distribution than the parents and siblings).

23.     I continue to represent my clients zealously in claiming that they are the only recipients worthy of wrongful death proceeds in this MDL litigation under applicable law (and within the USVSST, where parents and siblings are siphoning large sums away from the decedent's true "heirs" because only a shared, limited fund exists).

24.     In requesting wrongful death solatium damages on behalf of individuals who are not within a defined "estate" under state law (*we request such damages, in the alternative, should the Court determine that solatium damages may be awarded despite the applicability of New York State*

---

[10]     *See* Rule 1.7(1)(a) of the New York State "Rules of Professional Conduct" for lawyers ("a lawyer shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the lawyer in representing differing interests….").