*law*), the attorneys who have been seeking these awards (presently the D&I PEC attorneys) have relied on ATA case law precedent rendered in the District of Columbia Circuit courts (in a default judgment setting), precedent that has not been fully evaluated in the Second Circuit where state law is present (with a limiting effect on who is entitled to recover wrongful death damages[11]).

25.     Case law in the Second Circuit has yet to resolve these thorny ATA issues properly, and yet awards issued against the Republic of Iran have been awarded without a determination of whether the ATA is being properly interpreted in light of the applicability of state law.

26.     Virtually all of the D&I PEC law firms representing personal representatives have engaged in a "follow the leader" process and have "compelled" their personal representative clients to allow their firms also to represent "all immediate family members," apparently without advising the personal representatives of the consequences of such an acquiescence (dilution of fixed USVSST proceeds if state law "non-heirs" also recover); these D&I PEC law firms now have proceeded to present claims broadly on behalf of two separate classes of survivors against Sudan, Iran, Saudi Arabia and the *Taliban* and *Omar* Defendants: (1) all broadly alleged "survivors and heirs" of 9/11 Decedents, under the ATA, for solatium and other damages, and (2) court-appointed personal representatives and "heirs," under state law, for traditional wrongful death and survival damages.

27.     As a great majority of these D&I PEC law firms are collecting attorneys' fees from these two classes of clients with very different interests, these firms have chosen *not* take a position

---

[11]     *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)).  *But see Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985).

on the very vital question of whether state wrongful death and survival law (based on the domicile of the 9/11 decedent) has any applicability when seeking recover wrongful death damages under the ATA.

28.     Moreover, an issue has arisen here as to whether a filing by a "personal representative" appointed under state law constitutes a timely filing for claims belatedly asserted by parents and siblings (among others) of 9/11 decedents who are not within their 9/11 decedent's defined "estate" under state law.

29.     The statute of limitations here required claimants to file ATA claims in this litigation by January 2, 2019, because Congress extended the ATA statute of limitations to that date.  18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).

30.     The D&I PEC has argued that one lawsuit, filed broadly on behalf of an "estate," should be deemed an action filed on behalf of "all survivors" (undefined) of the decedent.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660.

31.     My clients have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other domicile state law) is *only* authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4.  This objection has, thus far, been ignored (and thousands of parents and siblings have been added belatedly to this litigation).

32.     Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or by any other family member for that matter*.

33.     Under New York law, there is no question that the appointed personal representative under state law is the only person who can commence and ultimately resolve litigation against the

defendants here.

34.     Finally, under New York law, it does not matter if the decedent and his parents and/or siblings had a great relationship with the decedent, or whether the decedent provided them with financial support, etc., because the extended family members are not within the legal class of beneficiaries entitled to share in damages.  Thus, regardless of their relationship with the decedent, New York law does not allow those individuals (extended family members) to recover.  Thus, the filing of a timely lawsuit by a personal representative (or other family member) does not protect an untimely filing by a parent or sibling of the decedent.

35.     My law office feels compelled to make this issue clearly at this time[12] because the undersigned attorney was retained precisely because the *Ashton-Burlingame-Dickey* Plaintiff families that I represent did not want to be forced to add their in-laws as party-plaintiffs at the urgings of their then-attorneys.

36.     As the default judgments entered by this Court are having a dramatic effect on the distributions already made by the USVSST, and as any future distributions made from the judgments against the *Taliban* and *Omar* Defendants will likely have a serious effect on future distributions from any future-created limited fund, the Plaintiffs on this motion urge the Court to reconsider the effect of state law in interpreting the damages recoverable under the ATA, and the individuals who may claim damages within this precedent-setting litigation.

**Damages Due Diligence:**

37.     As to the damages claimed herein, the sources of my information and the basis for my

---

[12]     At an April 26, 2022 court conference, Judge Daniels stated to me: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues – *the issues of the availability of funds, and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side – anyone who disagrees with your position – be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard."*  April 26, 2022 Transcript at 37-38 (emphasis added).

belief in my statements contained herein are: (a) my personal involvement in this litigation and my regular review of the MDL docket; (b) my representation of the *Ashton-Burlingame-Dickey* Plaintiffs in connection with this litigation; (c) my communications directly with family members of the *Ashton-Burlingame-Dickey* 9/11 Decedents listed in Exhibit A through Exhibit H; (d) my communications with counsel for other plaintiffs in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation; and, (e) documents and records contained in my firm's files and other court records relating to the multi-district litigation to which the *Ashton-Burlingame-Dickey* Plaintiffs are parties.   I can affirm that all of *Ashton-Burlingame-Dickey* Plaintiffs are all United States citizens and all were domiciled in New York State at the time of their respective decedents' deaths.   Any matters about which I lack personal knowledge are asserted herein upon information and belief.

38.     All of the *Ashton-Burlingame-Dickey* 9/11 Decedents listed in the accompanying Proposed Order and attached Exhibit J died in the September 11, 2001 terrorist attacks.   My law firm has been retained by the state-appointed personal representatives of the Estates of the *Ashton* 9/11 Decedents listed in Exhibit A through Exhibit H to represent those Estates.

39.     For the *Ashton-Burlingame-Dickey* 9/11 Decedents listed in Exhibit J, we have confirmed that the decedent was a United States national as of September 11, 2001, based on documentary evidence (such as copies of birth certificates, passports and /or verified applications to the September 11, 2001 Victim Compensation Fund ("VCF")), or personal interviews, and/or written communications with the personal representatives of the Estates of those 9/11 Decedents.

40.     Exhibit J sets forth the same compensatory damages amount this Court previously awarded to the Estates of the *Ashton-Burlingame-Dickey* 9/11 Decedents herein for conscious pain and suffering in connection with claims asserted against the Defendant Islamic Republic of Iran ("Iran").

41.     Exhibit J also sets forth claims by the personal representatives of the Estates of the

*Ashton-Burlingame-Dickey* 9/11 Decedents for an award of economic damages in the amounts listed therein.  For all of these Estates who are seeking economic damages, such amounts are based upon reports prepared by an economic expert who, relying on materials provided by the Plaintiffs herein (economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty.   The underlying materials included economic expert reports, VCF files and other documentary evidence and include damages calculations that, when calculated soon after the September 11, 2001 terrorist attacks, have now been brought up to present value, as explained in connection with our prior motion for economic damages on behalf of the Estates of the *Ashton-Burlingame-Dickey* 9/11 Decedents herein, and are the same amounts that this Court granted following prior motions for economic damages in connection with claims asserted against the Defendant Islamic Republic of Iran.

42.    This Court previously awarded *solatium* damages to immediate family members to the individuals listed in Exhibit I in the following amounts (*should the Court deem New York State law is not a bar to such an award, we request that solatium damages be awarded to the within Plaintiffs*):

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Child | $8,500,000 |

43.    The *Ashton-Burlingame-Dickey* Plaintiffs herein, described within Exhibit A through Exhibit H, are the personal representatives of the Estates of the *Ashton* 9/11 Decedents named in the *Ashton* Complaints underlying the default judgment against the *Taliban* and *Omar* Defendants, which

Case 1:03-md-01570-GBD-SN   Document 9095-3   Filed 05/18/23   Page 6 of 96
**A102**
Case 1:03-md-01570-GBD-SN   Document 8387   Filed 08/17/22   Page 14 of 15

asserted claims for all members of the Estate of the *Ashton* 9/11 Decedents – the widows and children of the *Ashton* 9/11 Decedents named in those Complaints (and recognized heirs of these Estates under New York State law). *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 485 at ¶ 482 (seeking, among other things, solatium damages). These individuals have been added by name via Notice of Amendment by the process this Court established concerning the claims against Iran and Sudan. We have confirmed the relationship between the *Ashton* 9/11 Decedent and the individuals listed in Exhibit I through documentary evidence (attached Declarations) and interviews with and written confirmation with my clients.

44.     The *Ashton-Burlingame-Dickey* Plaintiffs listed in Exhibit J are qualified heirs (widows and children) of the *Ashton* 9/11 Decedents named in the *Ashton* Complaints (underlying the default judgment against the *Taliban* and *Omar* Defendants), which asserted claims for all the recognized heirs of the Estates of the *Ashton* 9/11 Decedents (even those not set forth by name individually in those Complaints as these individuals are represented by the appointed Personal Representative of each Estate). The latter individuals (children of the decedent) have been added by name via Notice of Amendment of the Master Complaint by the process this Court established concerning the claims against Iran. We have confirmed the relationship between each *Ashton-Burlingame-Dickey* 9/11 Decedent and the individuals listed in Exhibit J through documentary evidence (attached Declarations) and interviews with and written confirmation with my clients.

45.     The *Ashton-Burlingame-Dickey* Plaintiffs described within the Exhibits to this declaration have received final judgments against Iran but have received no final judgment against the *Taliban* or *Omar* Defendants, nor have they collected anything close to the full amounts of their judgments against Iran.

46.     In order to allow the Plaintiffs described herein to attempt to satisfy any portion of the outstanding judgment amounts against the *Taliban* or *Omar* Defendants, the *Ashton* Plaintiffs

respectfully request that the Court issue the same damage awards for these Plaintiffs that the Court ordered in the final judgments against Iran (as is reflected in Exhibits J, and A through H) (with a consideration of whether solatium damages may be awarded in light of the applicability of New York State law, along with an award of treble damages under the ATA).

47.     For any *Ashton* Plaintiffs not set forth in the attached exhibits, including those represented by other *Ashton* counsel but consolidated on the *Ashton* Complaint, and for any damages not included herein, we expect additional claims to be asserted.

48.     For all of the reasons set forth in this Declaration and within the *Ashton* Plaintiffs' Motion for Final Judgments against the *Taliban* and *Omar* Defendants, I respectfully request that this Court grant the instant motion and sign the Proposed Order filed herewith.

Dated: August 17, 2022
      New York, New York

                                                    /s/ *John F. Schutty*
                                                    John F. Schutty

**A104**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

.

**DECLARATION OF PLAINTIFF IRENE DICKEY**
**IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN**
**AND MUHAMMUD OMAR**

.                                                                                          .

Irene Dickey, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Joseph Dickey Jr., who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of Joseph Dickey and on behalf of the New York State designated "heirs" of my late husband, our two children: Joseph Dickey III and Elizabeth Dickey.

3.      I can affirm to the Court that my deceased husband lived with me and my two children at a private home at 315 Ryder Road, Manhasset, New York 11030 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Joseph Dickey and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
        December 11, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Irene Dickey

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF JACQUELINE EATON
<u>IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN
AND MUHAMMAD OMAR</u>**

Jacqueline Eaton, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury

under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Robert Eaton,

who perished at the World Trade Center as a result of the terrorist attacks on September 11,

2001.

2.      I submit this Declaration on my own behalf as the spouse of Robert Eaton.

3.      I can affirm to the Court that my deceased husband lived with me at a private

home at 7 Paper Hill Road, Manhasset, New York 11030 at the time of his death. I can further

affirm that I was the only "immediate family member" living with my husband and that no other

family member lived with us (or was dependent on my husband – financially or emotionally) at

the time of his death. I am, therefore, the only New York State designated "heir" of my late

husband.

4.      Finally, I can affirm that the death of my husband affected me not only in the days following his death, but my emotional and financial condition continues to be affected adversely even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem me as the only "immediate family member" of Robert Eaton and then enter a default judgment award in the amount requested by my attorney (and economist).

Dated: New York, New York
        December 11, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jacqueline Eaton

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Terrorist Attacks on September 11, 2001 03 MDL 1570 (GBD)(SN)

ECF Case

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)

### DECLARATION OF PLAINTIFF JOANNE KELLY
### IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST
### TALIBAN AND MUHAMMAD OMAR

Joanne Kelly, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.       I am the court-appointed personal representative of the Estate of James Kelly, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.       I submit this Declaration on my own behalf as the spouse of James Kelly and on behalf of the only other New York State designated "heirs" of my late husband, our four children: Brianne Kelly, Kaitlyn Kelly, Colleen Kelly and Erin Kelly.

3.       I can affirm to the Court that my deceased husband lived with me and my four children at a private home at 2405 Rockville Centre Parkway, Oceanside, New York 11572 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.       Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.       For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of James Kelly and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York

December _12_ 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Joanne Kelly

-2-

**A109**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF LISA O'BRIEN
IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST
TALIBAN AND MUHAMMAD OMAR**

Lisa O'Brien, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Timothy O'Brien, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of Timothy O'Brien and on behalf of the only other New York State designated "heirs" of my late husband, our three children: John O'Brien, Madeline O'Brien, and Jacqueline O'Brien.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 16 Wishing Well Lane, Old Brookville, New York 11545 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Timothy O'Brien and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
       December 11, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Lisa O'Brien

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
|---|---|
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF DARA SEAMAN
IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN
AND MUHAMMAD OMAR**

Dara Seaman, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Michael Seaman, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of Michael Seaman and on behalf of the only other New York State designated "heirs" of my late husband, our three children: Michaella Seaman, Mary Seaman and Edward Seaman.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 222 Chapel Road, Manhasset, New York 11030 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.     Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.     For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Michael Seaman and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
        December *12*, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Dara Seaman*
Dara Seaman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| --- | --- |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF SUSAN SLIWAK**
**IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN**
**AND MUHAMMAD OMAR**

Susan M. Sliwak, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under
the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Robert F. Sliwak,
who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of Robert F. Sliwak and
on behalf of the only other New York State designated "heirs" of my late husband, our three
children: Ryan M. Sliwak, Kyle J. Sliwak, and Nicole T. Sliwak.

3.      I can affirm to the Court that my deceased husband lived with me and my three
children at a private home at 1653 Hannington Avenue, Wantagh, New York 11793 at the time of
his death.  I can further affirm that my children and I were the only "immediate family members"
living with my husband and that no other family member lived with us (or was dependent on my
husband -- financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Robert F. Sliwak and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
      December 12, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                   Susan M. Sliwak

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

### DECLARATION OF PLAINTIFF ALLISON WALLICE IN SUPPORT OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN AND MUHAMMAD OMAR

Allison Wallice, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of John Wallice Jr., who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the spouse of John Wallice Jr. and on behalf of the only other New York State designated "heirs" of my late husband, our three children: John Wallice III, Christian Wallice and Patrick Wallice.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 43 Taylor Road, Huntington, New York 11743 at the time of his death. I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      Finally, I can affirm that the death of my husband affected us not only in the days following his death, but our emotional and financial condition continues to be adversely affected by his death even up and through the present day.

5.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of John Wallice Jr. and enter a default judgment award in the amounts requested by our attorney (and economist).

Dated: New York, New York
       December /2, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
        Allison Wallice

**A117**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

**DECLARATION OF PLAINTIFF EILEEN LYNCH IN SUPPORT
OF APPLICATION FOR A FINAL JUDGMENT AGAINST TALIBAN AND
MUHAMMAD OMAR**

Eileen Lynch, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.     I am the court-appointed personal representative of the Estate of Farrell Lynch, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.     I submit this Declaration on my own behalf as the spouse of Farrell Lynch and on behalf of the only other New York State designated "heirs" of my late husband, our three children: Anne Lynch, Kathleen Lynch, and Meghan Lynch.

3.     I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 43 Seaspray Drive, Centerport, New York 11721 at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      Finally, I am affirm that the death of my husband affected me and our children not only in the days following his death, but his death continues to adversely affect our emotional and financial condition up to and through the present day.

5.      I am now represented by the Law Office of John F. Schutty, P.C. My prior lawyers obtained a default judgment for me personally and on behalf of my three children only for *solatium* damages.

6.      My prior attorneys (Speiser Krause) did not seek a default judgment previously for the following damages: (a) the economic loss suffered by my late husband's Estate as a result of his death, or (b) for my late husband's conscious pain and suffering before his death (by previous court order, $2 million per decedent). I am asking this Court to add these damage items to the default judgment entered against the Islamic Republic of Iran on my behalf and on behalf of my three daughters.

7.      Annexed hereto is the Report of Dr. Gary Crakes summarizing the economic loss sustained by the Estate of Farrell Lynch as a result of his death. Dr. Crakes has opined that my husband's Estate sustained economic losses totaling $18,289,314.

9.      For the foregoing reasons, I ask that the Court deem my children and me as the only "immediate family members" of Farrell Lynch and thereafter enter a default judgment award in the amounts requested by our new attorney (and economist).

Dated: New York, New York
        December 20, 2019

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

                                        Eileen Lynch

-4-

# Exhibit I

SCPRLT02

Case No. 320669

Letters Testamentary

# THE PEOPLE OF THE STATE OF NEW YORK

### BY THE GRACE OF GOD FREE AND INDEPENDENT

TO:   Irene Sangas Dickey, 315 Ryder Street, Manhasset, NY, 11030

SEND GREETINGS:

WHEREAS, The Last Will and Testament of

JOSEPH D. DICKEY,

a/k/a JOSEPH D. DICKEY, JR.,

a/k/a JOSEPH DERMOT DICKEY, JR.

deceased was duly admitted to probate by decree of the Judge of the Surrogate's Court of Nassau County, New York, on the 27th day of February, 2002, which directed the issuance to you of Letters Testamentary upon your qualifying according to law:

NOW, THEREFORE, KNOW YE that you are hereby appointed Executor of said Will and authorized to administer the estate of said deceased subject to the laws appertaining thereto and the jurisdiction and supervision of this Court.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court of Nassau County to be hereunto affixed.

(SEAL)

WITNESS,   HON. JOHN B. RIORDAN         , Judge of the Surrogate's Court of the County of Nassau, at Mineola New York, this 28th day of February, 2002.

**Letters are subject to Rule 207.20 of the Uniform Rules of the Surrogate's Court. An estate inventory, under the rule, must be filed within the required time period.**

Clerk of the Surrogate's Court

**(See Back)**

**THE FIDUCIARY** (Executor, Administrator, Guardian, Trustee) HEREIN APPOINTED:

<u>**RETAIN THIS INSTRUMENT FOR YOUR PERMANENT RECORD.**</u>

This instrument is your authority to act and serve in the capacity to which you were appointed.

When proof is required of your appointment of such fiduciary (Executor, Administrator, Guardian, Trustee), apply to this Court for a " Certificate of Letters" of such appointment.

## TAKE NOTICE OF THE FOLLOWING SECTIONS OF ESTATES, POWERS AND

## TRUSTS LAW AND THE SURROGATE'S COURT PROCEDURE ACT

Section 11-1.6 EPTL. PROPERTY HELD AS FIDUCIARY (Executor, Administrator, Guardian, Trustee) TO BE KEPT SEPARATE. Every fiduciary shall keep property received as fiduciary separate from his individual property. He shall not invest or deposit such property with any corporation or other person doing business under the banking law, or with any other person or institution, in his own name, but all transactions by him affecting such property shall be in his name as fiduciary.

**Any person violating any of the provisions of this section shall be guilty of a misdemeanor.**

**Section 719-SCPA (7). He may also be removed without petition or citation.**

PRCT01
320669

756125

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/27/2002.

Letters Testamentary on the estate of **JOSEPH D DICKEY, a/k/a JOSEPH D DICKEY JR, JOSEPH DERMOT DICKEY JR, decedent having resided in** the County of Nassau, were granted by this Court unto **Irene Sangas Dickey, 315 Ryder Street, Manhasset NY 11030**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

PRCT01
320669

756126

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/27/2002.

Letters Testamentary on the estate of **JOSEPH D DICKEY**, a/k/a **JOSEPH D DICKEY JR**, **JOSEPH DERMOT DICKEY JR, decedent having resided in** the County of Nassau, were granted by this Court unto **Irene Sangas Dickey, 315 Ryder Street, Manhasset NY 11030**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, October 10, 2002.

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

PRCT01
320669

756127

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/27/2002.

Letters Testamentary on the estate of **JOSEPH D DICKEY, a/k/a JOSEPH D DICKEY JR, JOSEPH DERMOT DICKEY JR, decedent having resided in** the County of Nassau, were granted by this Court unto **Irene Sangas Dickey, 315 Ryder Street, Manhasset NY 11030,** Executor(s) named in the last will and testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

PRCT01
320669

756128

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/27/2002.

Letters Testamentary on the estate of **JOSEPH D DICKEY, a/k/a JOSEPH D DICKEY JR, JOSEPH DERMOT DICKEY JR, decedent having resided in** the County of Nassau, were granted by this Court unto **Irene Sangas Dickey, 315 Ryder Street, Manhasset NY 11030**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

ADCT01
321213

804412

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **12/05/2001.**

Letters of Administration on the estate  of  **ROBERT D EATON , decedent having resided in the  County  of Nassau**, were granted by this Court unto **Jacqueline Eaton**, as Administrator (s), and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/02/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 2, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

ADCT01
321213

804413

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **12/05/2001.**

Letters of Administration on the estate  of  **ROBERT D EATON , decedent having resided in** the  County  of Nassau, were granted by this Court unto **Jacqueline Eaton**, as Administrator (s), and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/02/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 2, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

ADCT01
321213

804414

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **12/05/2001.**

Letters of Administration on the estate  of  **ROBERT D EATON , decedent having resided in** the  County  of Nassau, were granted by this Court unto **Jacqueline Eaton**, as Administrator (s), and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/02/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 2, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

ADCT01
321213

804415

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **12/05/2001.**

Letters of Administration on the estate  of  **ROBERT D EATON , decedent having resided in** the  County  of Nassau, were granted by this Court unto **Jacqueline Eaton**, as Administrator (s), and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/02/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 2, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                         Chief Clerk of the Surrogate's Court

ADCT03
320662                                                                          799872

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**12/07/2001.**

Letters of Administration on the Estate  of  **JAMES J KELLY a/k/a JAMES KELLY, JAMES JOSEPH
KELLY, decedent having resided in**     the  County  of Nassau, were granted by this Court
unto **Joanne S Kelly**, as Administrator(s), and that the Letters have not been revoked.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from selling,
mortgaging, leasing or otherwise encumbering REAL PROPERTY of the decedent without first
applying to this Court for fixation and filing of an adequate bond, and is further
restrained from collecting any personal assets in excess of  **$415,000.00** without first
applying to this Court for the fixation of the amount of the bond.

**\*Pursuant to the Order of the Surrogate dated December 17, 2001, Letters of Administration
are amended to increase the value of personal assets not to exceed the sum of $415,000.00.**

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **05/12/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **November 12, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                          Chief Clerk of the Surrogate's Court

ADCT03
320662

799873

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**12/07/2001.**

Letters of Administration on the Estate of **JAMES J KELLY a/k/a JAMES KELLY, JAMES JOSEPH
KELLY, decedent having resided in**   the County of Nassau, were granted by this Court
unto **Joanne S Kelly**, as Administrator(s), and that the Letters have not been revoked.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from selling,
mortgaging, leasing or otherwise encumbering REAL PROPERTY of the decedent without first
applying to this Court for fixation and filing of an adequate bond, and is further
restrained from collecting any personal assets in excess of  **$415,000.00** without first
applying to this Court for the fixation of the amount of the bond.

**\*Pursuant to the Order of the Surrogate dated December 17, 2001, Letters of Administration
are amended to increase the value of personal assets not to exceed the sum of $415,000.00.**

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **05/12/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **November 12, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID

(SEAL)          Chief Clerk of the Surrogate's Court

ADCT03
320662                                                                           799874

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**12/07/2001.**

Letters of Administration on the Estate  of  **JAMES J KELLY a/k/a JAMES KELLY, JAMES JOSEPH
KELLY, decedent having resided in**   the  County  of Nassau, were granted by this Court
unto **Joanne S Kelly**, as Administrator(s), and that the Letters have not been revoked.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from selling,
mortgaging, leasing or otherwise encumbering REAL PROPERTY of the decedent without first
applying to this Court for fixation and filing of an adequate bond, and is further
restrained from collecting any personal assets in excess of  **$415,000.00** without first
applying to this Court for the fixation of the amount of the bond.

**\*Pursuant to the Order of the Surrogate dated December 17, 2001, Letters of Administration
are amended to increase the value of personal assets not to exceed the sum of $415,000.00.**

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **05/12/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **November 12, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

        (SEAL)                    Chief Clerk of the Surrogate's Court

**A133**

ADCT03
320662                                                                      799875

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**12/07/2001.**

Letters of Administration on the Estate of **JAMES J KELLY a/k/a JAMES KELLY, JAMES JOSEPH
KELLY, decedent having resided in**   the County of Nassau, were granted by this Court
unto **Joanne S Kelly**, as Administrator(s), and that the Letters have not been revoked.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from selling,
mortgaging, leasing or otherwise encumbering REAL PROPERTY of the decedent without first
applying to this Court for fixation and filing of an adequate bond, and is further
restrained from collecting any personal assets in excess of **$415,000.00** without first
applying to this Court for the fixation of the amount of the bond.

**\*Pursuant to the Order of the Surrogate dated December 17, 2001, Letters of Administration
are amended to increase the value of personal assets not to exceed the sum of $415,000.00.**

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **05/12/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **November 12, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

ADCT03
320662

799876

CERTIFICATE OF

LETTERS OF ADMINISTRATION

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**12/07/2001.**

Letters of Administration on the Estate of  **JAMES J KELLY a/k/a JAMES KELLY, JAMES JOSEPH
KELLY, decedent having resided in**   the  County  of Nassau, were granted by this Court
unto **Joanne S Kelly**, as Administrator(s), and that the Letters have not been revoked.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from selling,
mortgaging, leasing or otherwise encumbering REAL PROPERTY of the decedent without first
applying to this Court for fixation and filing of an adequate bond, and is further
restrained from collecting any personal assets in excess of  **$415,000.00** without first
applying to this Court for the fixation of the amount of the bond.

**\*Pursuant to the Order of the Surrogate dated December 17, 2001, Letters of Administration
are amended to increase the value of personal assets not to exceed the sum of $415,000.00.**

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **05/12/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **November 12, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)            Chief Clerk of the Surrogate's Court

INDEX NO. 320662                                    CERTIFICATE NO. 752988

<u>CERTIFICATE OF</u>

<u>LETTERS OF ADMINISTRATION</u>

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we
have inspected the records of our Surrogate's Court in and for the
County of Nassau, and do find that on the 7th day of December, 2001.

Letters of Administration on the estate of JAMES J KELLY a decedent
having resided in the County of Nassau, were granted by this Court
unto JOANNE S KELLY, as Administrator(s) , and that the Letters have not
been revoked.

*Note that during lifetime the decedent was also known as JAMES JOSEPH
KELLY & JAMES KELLY.

*Pursuant to the Order of the Surrogate dated December 17, 2001, the
Administrator, Joanne S. Kelly is allowed to collect personal assets of
the Deceased valued up to $415,000. without first applying to this Court
for the fixation of the amount of the bond.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from
selling, mortgaging, leasing or otherwise encumbering REAL PROPERTY of
the decedent without first applying to this Court for fixation and
filing of an adequate bond, and is further restrained from collecting
any personal assets in excess of $415,000.00 without first applying to
this Court for the fixation of the amount of the bond.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER
03/11/2003.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court
Nassau County, to be hereunto affixed.

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court,
Nassau County, at the Surrogate's office, in said County, 09/10/2002.

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                          Chief Clerk of the Surrogate's Court

INDEX NO. 320662                          CERTIFICATE NO. 752987

<u>CERTIFICATE OF</u>

<u>LETTERS OF ADMINISTRATION</u>

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we
have inspected the records of our Surrogate's Court in and for the
County of Nassau, and do find that on the 7th day of December, 2001.

Letters of Administration on the estate of JAMES J KELLY a decedent
having resided in the County of Nassau, were granted by this Court
unto JOANNE S KELLY, as Administrator(s) , and that the Letters have not
been revoked.

*Note that during lifetime the decedent was also known as JAMES JOSEPH
KELLY & JAMES KELLY.

*Pursuant to the Order of the Surrogate dated December 17, 2001, the
Administrator, Joanne S. Kelly is allowed to collect personal assets of
the Deceased valued up to $415,000. without first applying to this Court
for the fixation of the amount of the bond.

THE APPOINTMENT EVIDENCED HEREIN IS MADE SUBJECT TO THE FOLLOWING:
That each of the above named Administrator(s) is hereby restrained from
selling, mortgaging, leasing or otherwise encumbering REAL PROPERTY of
the decedent without first applying to this Court for fixation and
filing of an adequate bond, and is further restrained from collecting
any personal assets in excess of $415,000.00 without first applying to
this Court for the fixation of the amount of the bond.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER
03/11/2003.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court
Nassau County, to be hereunto affixed.

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court,
Nassau County, at the Surrogate's office, in said County, 09/10/2002.

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                          Chief Clerk of the Surrogate's Court

Elizabeth Q. Boehmcke
Associate
Direct Dial: 646-218-7544
ebochmck@hodgsonruss.com



September 12, 2002

Mrs. Joanne S. Kelly
2405 Rockville Centre Parkway
Oceanside, New York 11572

      Re:    Estate of James J. Kelly

Dear Joanne:

      Enclosed please find two original certificates of Letters of Administration for Kels' estate. You need one for the Red Cross application. Keep the other one for your records. I have retained three other original certificates for use in filing the estate tax return.

      Please call me so we can set up a date to cover some open administration matters. I'd like to meet with you and your Mom before I go to Ireland on September 27.

      Sincerely,

      Beth

      Elizabeth Q. Boehmcke

cc: Edward C. Northwood

NYCDOCS 86182v1 (1%HY01!.DOC)

Carnegie Hall Tower  •  152 West 57th Street  •  New York, New York  10019  •  telephone 212.751.4300  •  facsimile 212.751.0928
Albany  •  Boca Raton  •  Buffalo  •  New York City  •  Newark  •  Palm Beach Gardens  •  Toronto  •  www.hodgsonruss.com

PRCT01
320796

798428

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**02/14/2002.**

Letters Testamentary on the estate of **TIMOTHY O BRIEN, a/k/a TIMOTHY M. O BRIEN, TIMOTHY
MICHAEL O BRIEN, decedent having resided in** the County of Nassau, were granted by this
Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545,** Executor(s)
named in the last will and testament of said **decedent,** and that the Letters have not been
revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/26/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **October 27, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                        Chief Clerk of the Surrogate's Court

PRCT01
320796

798429

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **02/14/2002.**

Letters Testamentary on the estate of **TIMOTHY O BRIEN, a/k/a TIMOTHY M. O BRIEN, TIMOTHY MICHAEL O BRIEN, decedent having resided in** the County of Nassau, were granted by this Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/26/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 27, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

PRCT01
320796

798430

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**02/14/2002.**

Letters Testamentary on the estate of **TIMOTHY O BRIEN, a/k/a TIMOTHY M. O BRIEN, TIMOTHY
MICHAEL O BRIEN, decedent having resided in** the County of Nassau, were granted by this
Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545**, Executor(s)
named in the last will and testament of said **decedent**, and that the Letters have not been
revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/26/04**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **October 27, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                  Chief Clerk of the Surrogate's Court

PRCT01
320796

798431

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **02/14/2002.**

Letters Testamentary on the estate of **TIMOTHY O BRIEN, a/k/a TIMOTHY M. O BRIEN, TIMOTHY MICHAEL O BRIEN, decedent having resided in** the County of Nassau, were granted by this Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/26/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 27, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

INDEX NO. 320796                                    CERTIFICATE NO. 730362

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we
have inspected the records of our Surrogate's Court in and for the
County of Nassau, and do find that on the 14th day of February, 2002.

Letters Testamentary on the estate of TIMOTHY O BRIEN a decedent having
resided in the County of Nassau, were granted by this Court unto LISA M
O BRIEN, Executor(s) named in the last will and testament of said
decedent, and that the Letters have not been revoked.

*NOTE that during lifetime the decedent was also known as TIMOTHY M. O
BRIEN and TIMOTHY MICHAEL O BRIEN.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER
08/22/2002.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court
Nassau County, to be hereunto affixed.

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court,
Nassau County, at the Surrogate's office, in said County, 02/21/2002.

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

        (SEAL)               Chief Clerk of the Surrogate's Court

PRCT01
320796

756141

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/14/2002.

Letters Testamentary on the estate of **TIMOTHY O BRIEN, , decedent having resided in** the County of Nassau, were granted by this Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545,** Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/10/03**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)          Chief Clerk of the Surrogate's Court

**A144**

PRCT01
320796                                                              756142

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/14/2002.

Letters Testamentary on the estate of **TIMOTHY O BRIEN, , decedent having resided in** the County of Nassau, were granted by this Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545,** Executor(s) named in the last will and testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/10/03.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

        (SEAL)              Chief Clerk of the Surrogate's Court

PRCT01
320796

756143

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 02/14/2002.

Letters Testamentary on the estate of **TIMOTHY O BRIEN, , decedent having resided in** the County of Nassau, were granted by this Court unto **Lisa M O Brien, 16 Wishing Well Lane, Old Brookville NY 11545,** Executor(s) named in the last will and testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **04/10/03.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

PRCT01
321155

805549

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**04/12/2002.**

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN,**
**decedent having resided in** the County of Nassau, were granted by this Court unto **Dara**
**Seaman, 222 Chapel Rd, Manhasset NY 11030**, Executor(s) named in the last will and
testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/13/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **January 13, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)          Chief Clerk of the Surrogate's Court

PRCT01
321155

805550

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**04/12/2002.**

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN,
decedent having resided in** the County of Nassau, were granted by this Court unto **Dara
Seaman, 222 Chapel Rd, Manhasset NY 11030**, Executor(s) named in the last will and
testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/13/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **January 13, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

PRCT01
321155                                                                    805551

<u>CERTIFICATE OF</u>

<u>LETTERS TESTAMENTARY</u>

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **04/12/2002.**

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN, decedent having resided in** the County of Nassau, were granted by this Court unto **Dara Seaman, 222 Chapel Rd, Manhasset NY 11030,** Executor(s) named in the last will and testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/13/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 13, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

PRCT01
321155

805552

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on **04/12/2002.**

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN, decedent having resided in** the County of Nassau, were granted by this Court unto **Dara Seaman, 222 Chapel Rd, Manhasset NY 11030,** Executor(s) named in the last will and testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **07/13/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **January 13, 2004.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court



# SPEISER, KRAUSE, NOLAN & GRANITO

### COUNSELLORS AT LAW

*Two Grand Central Tower*
*140 East 45th Street*
*New York, New York 10017*

PHONE: (212) 661-0011  FAX: (212) 953-6483

**WASHINGTON D.C. OFFICE**
2300 CLARENDON BOULEVARD, SUITE 306
ARLINGTON, VIRGINIA 22201
(703) 522-7500
FAX: (703) 522-7905

**CALIFORNIA OFFICE**
ONE PARK PLAZA, SUITE 470
IRVINE, CALIFORNIA 92614
(949) 553-1421
FAX: (949) 553-1346

**TEXAS OFFICE**
900 JACKSON STREET, SUITE 750
DALLAS, TEXAS 75202-4427
(214) 752-4664
FAX: (214) 752-4774

**FLORIDA OFFICE**
201 SOUTH BISCAYNE BOULEVARD
MIAMI, FLORIDA 33131
(305) 375-9400
FAX: (305) 375-0337

January 14, 2004

Surrogate's Court – Nassau County
262 Old Country Road
Mineola, NY 11501

Re:     Request for Updated Letters of Administration
        Phillip Paul Ognibene - Deceased

Dear Sir or Madam:

Our law firm is handling a number of wrongful death claims arising out of the World Trade Center tragedy. As you may know, to obtain critical information such as financial records, and to apply for certain benefits on behalf of our clients, we must present original Letters of Administration.

We are writing to request five (5) such original documents for the decedent listed below. Please note that the court's case number is listed next to the decedent's name. The date of death for the decedent is 09/11/01:

- Phillip Paul Ognibene (Index No.: 321338)

Enclosed is a reply envelope you can use to forward the Letters.

Please call us if you have any questions.

Very truly yours,

*sent signed Copy*

JFS:fa

Enclosure

PRCT01
321155

756135

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 04/12/2002.

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN, decedent having resided in** the County of Nassau, were granted by this Court unto **Dara Seaman, 222 Chapel Rd, Manhasset NY 11030,** Executor(s) named in the last will and testament of said decedent, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

PRCT01
321155

756136

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 04/12/2002.

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN**, decedent having resided in the County of Nassau, were granted by this Court unto **Dara Seaman, 222 Chapel Rd, Manhasset NY 11030**, Executor(s) named in the last will and testament of said decedent, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & **THIS CERTIFICATE IS NOT VALID AFTER 04/10/03**.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002**.

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                    Chief Clerk of the Surrogate's Court

PRCT01
321155

756137

<u>CERTIFICATE OF</u>

<u>LETTERS TESTAMENTARY</u>

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
04/12/2002.

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN,**
decedent **having resided in** the County of Nassau, were granted by this Court unto **Dara
Seaman, 222 Chapel Rd, Manhasset NY 11030,** Executor(s) named in the last will and
testament of said **decedent,** and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                          Chief Clerk of the Surrogate's Court

PRCT01
321155

756138

## CERTIFICATE OF

## LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the records of our Surrogate's Court in and for the County of Nassau, and do find that on 04/12/2002.

Letters Testamentary on the estate of **MICHAEL SEAMAN, a/k/a MICHAEL HERMAN SEAMAN**, decedent having resided in the County of Nassau, were granted by this Court unto **Dara Seaman, 222 Chapel Rd, Manhasset NY 11030**, Executor(s) named in the last will and testament of said **decedent**, and that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER 04/10/03.

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the Surrogate's Office, in said County, **October 10, 2002.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)                Chief Clerk of the Surrogate's Court

PRCT01
320895

794499

CERTIFICATE OF

LETTERS TESTAMENTARY

THE PEOPLE OF THE STATE OF NEW YORK
SURROGATE'S COURT OF THE COUNTY OF NASSAU
BY THE GRACE OF GOD FREE AND INDEPENDENT

To all persons having an interest herein, please take notice that we have inspected the
records of our Surrogate's Court in and for the County of Nassau, and do find that on
**02/22/2002.**

Letters Testamentary on the estate of **ROBERT F SLIWAK, , decedent having resided in the**
County of Nassau, were granted by this Court unto **Susan M Sliwak, 1653 Kannington Ave,**
**Wantagh NY 11793,** Executor(s) named in the last will and testament of said **decedent,** and
that the Letters have not been revoked.

PHOTOCOPIES ARE INVALID & THIS CERTIFICATE IS NOT VALID AFTER **03/24/04.**

IN TESTIMONY WHEREOF, we have caused the seal of the Surrogate's Court Nassau County, to
be hereunto affixed

WITNESS, HON. JOHN B. RIORDAN, Judge of the Surrogate's Court, Nassau County, at the
Surrogate's Office, in said County, **September 24, 2003.**

PHOTOCOPIES OF THIS CERTIFICATE ARE INVALID.

(SEAL)

Chief Clerk of the Surrogate's Court

212-006357-0147

CERTIFICATE OF
LETTERS OF ADMINISTRATION



FILE NO.768 A 2001

A      053606

SURROGATE'S COURT : SUFFOLK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

To All to Whom These Presents Shall Come, or May Concern,
Greeting:

IT IS HEREBY CERTIFIED, that on the 28th day of November,
2001, Letters of Administration upon the estate of JOHN WALLICE,
JR., deceased, late of Suffolk County, New York, were duly granted
and issued by this Court to ALLISON WALLICE, the Administrator(s)
and that the same are still valid and in full force.

IN TESTIMONY WHEREOF, this certificate is issued under the
seal of the Court.

WITNESS, HON. JOHN M. CZYGIER, JR., Surrogate of said
Surrogate's Court this 6th day of December, 2001.

(SEAL)

MICHAEL CIPOLLINO
Chief Clerk, Surrogate's Court
Suffolk County, New York

33-107..5/86

CERTIFICATE OF
LETTERS OF ADMINISTRATION



FILE NO. 768 A 2001

A     053607

SURROGATE'S COURT : SUFFOLK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

To All to Whom These Presents Shall Come, or May Concern, Greeting:

IT IS HEREBY CERTIFIED, that on the 28th day of November, 2001, Letters of Administration upon the estate of JOHN WALLICE, JR., deceased, late of Suffolk County, New York, were duly granted and issued by this Court to ALLISON WALLICE, the Administrator(s) and that the same are still valid and in full force.

IN TESTIMONY WHEREOF, this certificate is issued under the seal of the Court.

WITNESS, HON. JOHN M. CZYGIER, JR., Surrogate of said Surrogate's Court this 6th day of December, 2001.

(SEAL)

MICHAEL CIPOLLINO
Chief Clerk, Surrogate's Court
Suffolk County, New York

33-107..5/86

CERTIFICATE OF                                    FILE NO. 2107 P 2001
LETTERS TESTAMENTARY                                                  P    068418

SURROGATE'S COURT : SUFFOLK COUNTY

THE PEOPLE OF THE STATE OF NEW YORK

To All to Whom These Presents Shall Come, or May Concern, Greeting:


IT IS HEREBY CERTIFIED that on the 3rd day of December, 2001, Letters Testamentary of the Last Will of FARRELL LYNCH a/k/a FARRELL PETER LYNCH, deceased, late of Suffolk County, New York, were duly issued by the Surrogate's Court of Suffolk County to EILEEN LYNCH, the Executor(s) and that the same are still valid and in full force.

IN TESTIMONY WHEREOF this certificate is issued under the seal of the Court.

WITNESS, HON. JOHN M. CZYGIER, JR., Surrogate, at Riverhead, in Suffolk County, New York, this 18th day of July, 2003.


(SEAL)
                                        _Michael Cipollino_
                                        _____
                                        MICHAEL CIPOLLINO
                                        Chief Clerk, Surrogate's Court
                                        Suffolk County, New York

33-107_5/86

Case 1:03-md-01570-GBD-SN   Document 8387-10   Filed 08/17/22   Page 1 of 4

## EXHIBIT J: LIST OF PLAINTIFFS & AWARDS FOR ENTRY OF PARTIAL FINAL JUDGMENTS AGAINST THE TALIBAN AND MUHAMMAD OMAR

| Estate | Immediate Family Members (Heirs) | Relationship | Solatium Damages | Conscious Pain & Suffering | Economic Loss | TOTAL without SOLATIIUM | TOTALS with SOLATIIUM |
|---|---|---|---|---|---|---|---|
| Estate of Joseph Dickey Jr. | **Dickey, Irene** | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $16,022,303.00 | $18,022,303.00 | $30,522,303.00 |
| | **Dickey, Joseph III** | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| | **Dickey, Elizabeth** | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| **Damage Award to Estate of Dickey Before Award of Treble Damages** | | | | | | **$18,022,303.00** | **$47,522,303.00** |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar** | | | | | | **$54,066,909.00** | **$142,566,909.00** |

| Estate of Robert Eaton | **Eaton, Jacqueline** | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $20,689,993.00 | $22,689,993.00 | $35,189,993.00 |
| **Damage Award to Estate of Eaton Before Award of Treble Damages** | | | | | | **$22,689,993.00** | **$35,189,993.00** |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar** | | | | | | **$68,069,979.00** | **$105,569,979.00** |

**A160**

| Estate of James Kelly | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $19,639,410.00 | $21,639,410.00 | $34,139,410.00 |
|---|---|---|---|---|---|---|
| Kelly, Joanne | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $19,639,410.00 | $21,639,410.00 | $34,139,410.00 |
| Kelly, Brianne | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| Kelly, Kaitlyn | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| Kelly, Colleen | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| Kelly, Erin | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| **Damage Award to Estate of Kelly Before Award of Treble Damages** | | | | | **$21,639,410.00** | **$68,139,410.00** |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar** | | | | | **$64,918,230.00** | **$204,418,230.00** |

| Estate of Timothy O'Brien | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $94,984,220.00 | $96,984,220.00 | $109,484,220.00 |
|---|---|---|---|---|---|---|
| O'Brien, Lisa | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $94,984,220.00 | $96,984,220.00 | $109,484,220.00 |
| O'Brien, John | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| O'Brien, Madeline | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| O'Brien, Jacqueline | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| **Damage Award to Estate of O'Brien Before Award of Treble Damages** | | | | | **$96,984,220.00** | **$134,984,220.00** |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar** | | | | | **$290,952,660.00** | **$404,952,660.00** |

| Estate of Michael Seaman | Seaman, Dara | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $15,768,595.00 | $17,768,595.00 | $30,268,595.00 |
|---|---|---|---|---|---|---|---|
| | Seaman, Michaella | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| | Seaman, Mary | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| | Seaman, Edward | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| Damage Award to Estate of Seaman Before Award of Treble Damages | | | | | | **$17,768,595.00** | **$55,768,595.00** |
| Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar | | | | | | **$53,305,785.00** | **$167,305,785.00** |

| Estate of Robert Sliwak | Sliwak, Susan | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $3,698,489.00 | $5,598,489.00 | $18,198,489.00 |
|---|---|---|---|---|---|---|---|
| | Sliwak, Ryan | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| | Sliwak, Kyle | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| | Sliwak, Nicole | Child | $ 8,500,000.00 | | | $0 | $ 8,500,000.00 |
| **Damage Award to Estate of Sliwak Before Award of Treble Damages** | | | | | | **$5,598,489.00** | **$43,698,489.00** |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar** | | | | | | **$17,095,467.00** | **$131,095,467.00** |

| Estate of John Wallice, Jr. | | | | | | | |
|---|---|---|---|---|---|---|---|
| Wallice, Allison | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $16,298,335.00 | $18,298,335.00 | | $30,798,335.00 |
| Wallice III, John | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Wallice, Christian | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Wallice, Patrick | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Damage Award to Estate of Wallice Before Award of Treble Damages | | | | | $18,298,335.00 | | $56,298,335.00 |
| Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar | | | | | $54,895,005.00 | | $168,895,005.00 |

| Estate of Farrell Lynch | | | | | | | |
|---|---|---|---|---|---|---|---|
| Lynch, Eileen | Spouse/PR | $ 12,500,000.00 | $2,000,000.00 | $18,289614.00 | $20,289,614.00 | | $32,789,614.00 |
| Lynch, Anne | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Lynch, Kathleen | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Lynch, Meaghan | Child | $ 8,500,000.00 | | | $0 | | $ 8,500,000.00 |
| Damage Award to Estate of Lynch Before Award of Treble Damages | | | | | $20,289,614.00 | | $58,289,614.00 |
| Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban and Muhammad Omar | | | | | $60,868,842.00 | | $174,868,842.00 |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
*Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

**MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT OF THE *ASHTON-BURLINGAME-DICKEY*
PLAINTIFFS' MOTION FOR ENTRY OF A DEFAULT JUDGMENT
AWARDING DAMAGES AGAINST THE TALIBAN & OMAR DEFENDANTS**

LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, 9th Floor
New York, New York 10022
(212) 745-1157

Counsel for *Ashton-Burlingame-Dickey* Plaintiffs

**A164**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 3

RELEVANT FACTS...................................................................................................... 5

ARGUMENT ................................................................................................................. 8

POINT I:      ANY COMMON LAW AWARD OF WRONGFUL DEATH DAMAGES
             AGAINST THE *TALIBAN* & *OMAR* DEFENDANTS MUST COMPLY
             WITH THE LAW OF THE DOMICILE OF THE DECEDENT.......................... 8

     A.      Economic Loss.................................................................................... 9

     B.      Conscious Pain and Suffering ............................................................ 10

     C.      Solatium Damages ............................................................................. 11

     D.      Punitive Damages .............................................................................. 14

     E.      Prejudgment Interest ......................................................................... 14

POINT II:     THE ANTI-TERRORISM ACT PROVIDES AN ADDITIONAL AVENUE
             FOR THE DAMAGE AWARDS SOUGHT, BUT THE ACT IS SILENT AS
             TO CERTAIN  ELEMENTS THAT NECESSARILY MUST BE SUPPLIED
             BY APPLICABLE STATE LAW GOVERNING WRONGFUL DEATH
             AWARDS. ......................................................................................... 15

     A.      The Anti-Terrorism Act Has Previously Not Been Interpreted Properly in this
             MDL Litigation Because the Court Improperly Applied Novel "Federal
             Common Law" Instead of Applicable & Governing State Law .......................... 15

     B.      The Statute of Limitations Is a Bar to Newly-Filed Claims by Parents &
             Siblings Against the Taliban and Omar Defendants............................................. 21

CONCLUSION................................................................................................................ 24

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

#### <u>Cases</u>

*Babcock v. Jackson,*
    12 N.Y.2d 473, 240 N.Y.S.2d 743 (1963) ...................................................................8

*Belkin v. Islamic Republic of Iran,*
    667 F. Supp. 2d 8 (D.D.C. 2009) ...........................................................................11

*Bell v. City of Milwaukee,*
    746 F.2d 1205 (7th Cir. 1984) ...............................................................................20

*Bob Jones Univ. v. Simon,*
    416 U.S. 725 (1974).................................................................................................17

*Brandon v. Travelers Ins. Co.,*
    18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)) ...........................................................................................16, 17

*Brazier v. Cherry,*
    293 F.2d 401 (5th Cir. 1961) ................................................................................20

*Carter v. City of Emporia,*
    543 F. Supp. 354 (D. Kan. 1982).........................................................................20

*Cooney v. Osgood Mach.,*
    81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993) ...............................................................8

*De Sylva v. Ballentine,*
    351 U.S. 570, 76 S. Ct. 974, 100 L. Ed. 1415 (1956)....................................16, 17

*Dragan v. Miller,*
    679 F.2d 712 (7th Cir. 1982) ...............................................................................18

*Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,*
    304 F. Supp. 2d 232 (D.R.I. 2004)..................................................................11, 12

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran,*
    313 F. Supp. 3d 50 (D.D.C. 2018)........................................................................17

*Hardy v. New York City Health & Hosp. Corp.,*
    164 F.3d 789 (2d Cir. 1999)............................................................................16, 17

*Heiser v. Islamic Republic of Iran,*
    466 F.Supp.2d 229 (D.D.C. 2006) .......................................................................12

*Henkin v. Kuveyt Turk Katilim Bankasi*,
    495 F.Supp.3d 144 (E.D.N.Y. 2020) .................................................................11

*Huang v. Lee*,
    734 F.Supp. 71 (E.D.N.Y.1990) ........................................................................4

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03-md-1570, 2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015).............................17

*Knox v. Palestine Liberation Org.*,
    442 F. Supp. 2d 62 (S.D.N.Y. 2006).................................................................12

*Lelchook v. Commerzbank AG*,
    2011 WL 4087448 (S.D.N.Y. Aug. 2, 2011) ........................................................11

*Maalouf v. Republic of Iran*,
    306 F.Supp.3d 203 (D.D.C. 2018), *rev'd on other grounds,* 923 F.3d 1095
    (D.C. Cir. 2019) .............................................................................................1

*Markham v. Allen*,
    326 U.S. 490 (1946)......................................................................................18

*Morris v. Khadr*, 415 F.Supp.2d 1323, 1337 (D. Utah 2006).......................................12

*Nice v. Centennial Area School Dist.*,
    98 F. Supp. 2d 665 (E.D. Pa. 2000) .............................................................16, 17

*Padula v. Lilarn Props. Corp.*,
    84 N.Y.2d 519, 620 N.Y.S.2d 310 (1994) ...........................................................8

*Sager v. City of Woodland Park*,
    543 F. Supp. 282 (D. Colo. 1982)....................................................................20

*Sanchez v. Marquez*,
    457 F. Supp. 359 (D. Colo. 1978)....................................................................20

*Shiekh v. Republic of Sudan*,
    308 F.Supp.3d 46 (D.D.C. 2018) ......................................................................1

*Tex. Indus. v. Radcliff Materials*,
    451 U.S. 630 (1981).................................................................................16, 17

*Trujillo v. Board of County Comm'rs*,
    768 F.2d 1186 (10th Cir. 1985) .......................................................................20

*U.S. v. Smith*,
    832 F.2d 774 (2d Cir. 1987)......................................................................16, 17

iv

*United States v. Kimbell Foods, Inc.*,
 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979)..................................................4

*Wasserberg v. Menorah Center for Rehabilitation & Nursing Care*,
 __ A.D.3d __, 2021 NY Slip.Op. 04923 (2d Dept. Sept. 1, 2021)...............................9

**Statutes**

18 U.S.C. § 2335.............................................................................................................21

28 U.S.C. § 1350...............................................................................................................5

28 U.S.C. § 1738.............................................................................................................16

42 U.S.C. §§ 1981, 1983, and 1988...............................................................................20

Anti-Terrorism Act (18 U.S.C. § 2333).................................................................... *passim*

Rules of Decision Act., 28 U.S.C. § 1652 ....................................................................4, 16

EPTL, Section 5-4.1....................................................................................................4, 8, 18

Federal Tort Claims Act, 28 U.S.C. § 1346(b) .................................................................16

Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)(7)) ......................................2, 5

N.Y. Estate Powers & Trusts Law § 5-4.4...............................................................4, 8, 18, 21

Torture Victim Protection Act (28 U.S.C. § 1350 note)....................................................5

**Other Authorities**

19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update) ....................................16, 17

Fed.R.Civ.P. 15(d) ............................................................................................................5

Fed. R. Civ. P. 60(b) .........................................................................................................2

H.R. 4310, 112th..............................................................................................................21

https://www.kreindler.com/Publications/Aviation-Law-10.shtml........................4, 9, 18

New York State "Rules of Professional Conduct" .........................................................22

*Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955).................................................4, 16

Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969) ......................15

S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update) ........16, 17

**A168**

<u>PRELIMINARY STATEMENT</u>

The Plaintiffs described in the accompanying Declaration of John F. Schutty, Esq. dated August 17, 2022 (hereinafter "*Ashton-Burlingame-Dickey* Plaintiffs"), respectfully move this Court to determine definitively that: (1) these Plaintiffs are qualified to recover against the Taliban and the founder and former leader of the Islamic Emirate of Afghanistan, Emir Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), and (2) what final damages judgments are recoverable by them as a result of the deaths of Plaintiffs' decedents during the September 11, 2001 terrorist attacks, in light of the default liability judgment plaintiffs previously obtained against, among others, the *Taliban* and *Omar* Defendants. While the Court has suggested that the *Ashton-Burlingame-Dickey* Plaintiffs "may not seek an opinion on judgments sought or received by other parties in this case" (MDL ECF#8242),[1] as an officer of the Court, the undersigned attorney is obliged to ensure that the Court renders a proper and viable judgment here (and proper judgments in all similar cases) since all judgments entered against the *Taliban* and *Omar* Defendants affect all other plaintiffs in this MDL litigation (justice should prevail) where a limited fund of money exists in the "possession" of one of these Defendants.

---

[1]  Where a limited fund of money exists in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs may be truly be adverse to one another, and their respective claims should be challenged to ensure that justice is obtained. The docket of the court would otherwise become a "blank-check-writing" enterprise for untested claims, rather than a court of law. Will there be no policing of who may bring suit and when the filing of new claims must end? *See, e.g., Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), and *Maalouf v. Republic of Iran*, 306 F.Supp.3d 203, 211 (D.D.C. 2018) ("without some policing of time limits, plaintiffs may seek to exploit prior decisions finding nations liable for certain conduct to later pursue large damage awards decades after the fact . . . In this way, plaintiffs can continue piggybacking off of older decisions for decades to extract multimillion dollar judgments from absent sovereigns . . . As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizeable damage awards for decades in response to a single act."), *Shiekh* and *Maalouf both rev'd on other grounds by, Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant in default).

A cursory review of the claims asserted against the *Taliban* and *Omar* Defendants reveals that the great majority of the MDL plaintiffs herein have asserted causes of action based on common law wrongful death and the Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA").  In light of the liability finding this Court has entered against the *Taliban* and *Omar* Defendants, what remains to be resolved before damage awards and default judgments are entered on any ATA wrongful death claim against these Defendants are the following issues: (1) who has standing to assert any such claim, (2) which individuals may claim lawfully to be "heirs" of the decedent, (3) is there an applicable statute of limitations that applies to the claim, and (4) what damages are recoverable.[2]  These issues appear to be without precedent in the United States Court of Appeals for the Second Circuit.

Since this Court has yet to determine what law may apply to any award of damages against the *Taliban* and *Omar* Defendants,[3] the *Ashton-Burlingame-Dickey* Plaintiffs respectfully ask this Court to determine definitively who may recover wrongful death damages (and what

---

[2]     The claims asserted against the *Taliban* and *Omar* Defendants are *not* governed by the Foreign Sovereign Immunities Act, like those previously adjudicated against the Islamic Republic of Iran.

[3]     The Court will recall that the Law Office of John F. Schutty, P.C. has sought leave to file a Fed. R. Civ. P. 60(b) motion to vacate the default judgment obtained by the *Havlish* plaintiffs – on the ground that this default judgment was rendered without regard to the actual scheme of liability pled by those plaintiffs (common law, and not the FSIA).  For the convenience of the Court, reference is made to a prior letter to the Court on this subject (Case 1:03-cv-09848-GBD-SN, Document 615 Filed 04/20/22).  *In claiming damages against ALL of the defendants, the Havlish Plaintiffs relied exclusively on the FSIA* – "Damages available under the FSIA-created cause of action include "economic damages, solatium, pain and suffering, and punitive damages" – even though the FSIA clearly does not provide a cause of action in favor of the *Havlish* Plaintiffs against the Taliban.  *Havlish* Plaintiffs' Damages Inquest Memorandum (ECF#301 Filed February 14. 2012) at 5.  At an April 26, 2022 hearing, Judge Netburn stated on this subject: "I'll just note that I've received your letter application. I haven't acted on it. We will shortly."  April 26, 2022 Transcript at 34.  At this same hearing, Judge Daniels stated: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues – the issues of the availability of funds, *and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side – anyone who disagrees with your position – be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard."*  April 26, 2022 Transcript at 37-38.

2

Case 1:03-md-01570-GBD-SN   Document 9095-3   Filed 05/18/23   Page 74 of 96
**A170**
Case 1:03-md-01570-GBD-SN   Document 8389   Filed 08/17/22   Page 8 of 30

damages may be recovered) against these Defendants before issuing default judgments in the many wrongful death cases now before the Court.

### SUMMARY OF ARGUMENT

Common law wrongful death and Anti-Terrorism Act (18 U.S.C. § 2333) claims are each subject to applicable state law. This Court should reach this result since the law of the decedent's domicile has a great interest in the outcome of this litigation and the eventual administration of each estate. Here, assuming that a decedent was domiciled in New York (the case for all of the *Ashton-Burlingame-Dickey* Plaintiffs on this motion), New York State law determines the parameters of each wrongful death claim – *viz.*, who is authorized to pursue the death claim, which "heirs" are entitled to recover, and the measure of damages that may be awarded. This is true also as to any Anti-Terrorism Act ("ATA") claim simply because the ATA does not explicitly provide answers to these questions, and a federal court usually must resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action (see below) for money damages; creating federal common law in such instances, and ignoring otherwise applicable state law, is without viable precedent.

In light of the base liability default finding this Court has entered against the *Taliban* and *Omar* Defendants, what remains to be resolved before damage awards and default judgments are entered on any wrongful death claim are the following issues: (1) who has standing to assert any such claim, (2) which individuals may claim lawfully to be "heirs" of the decedent, (3) is there an applicable statute of limitations that applies to the claims, and (4) what damages are recoverable.

Each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents. In New York, for example, wrongful death

**A171**

damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury.  *Id.*  Also, New York State law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.[4]  *See* EPTL, Section 5-4.1.

Where a federal statute creating a cause of action does not provide guidance on an issue involving estate administration law (like the ATA), reference is made to applicable state law (here, the law of the decedent's domicile).[5]  Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[6]

In sum, New York State law applies to all wrongful death claims in this MDL proceeding, if the decedent was domiciled in New York at the time of his death.

---

[4]     "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries."  https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[5]     The District Court should issue an Opinion that determines how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler.  Such an Order might allow a review by the Court of Appeals on an issue without precedent in the Second Circuit.

[6]     28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases); *see also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding that the decedent's domicile has the greatest interest in regulating damages).

## RELEVANT FACTS

On September 4, 2002, the original *Ashton* Plaintiffs filed their first Complaint against the alleged sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar, among others. *See* 02-cv-6977 (S.D.N.Y.) ECF 1.[7] That complaint was consolidated and amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.[8]

In their Complaints, the *Ashton* Plaintiffs asserted federal jurisdiction against the *Taliban* and *Omar* Defendants pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)(7)) ("FSIA"), common law, and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"); the within plaintiffs are now making claims for damages against those defendants under the Anti-Terrorism Act (18 U.S.C. § 2333) and state law for the deaths, injuries and losses suffered in the Sept. 11 terrorist attacks. *See, e.g.* 02-cv-6977, ECF 465 at ¶¶ 2-3, 10-12, 464-466, 469-70, 473-74, 477-78, 481-82, 486-89.

This Court issued an order authorizing service of process by publication on certain defendants, including the *Taliban* and *Omar* Defendants. ECF 445 at 1, 8, 11. The *Ashton* Plaintiffs, and others, served the *Taliban* and *Omar* Defendants by publication with verification of publication filed on March 16, 2005 and March 31, 2005. ECF 709, 735.[9] The *Taliban* and

---

[7]    References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by ECF MDL number; references to individual civil case docket entries are preceded by the case number.

[8]    In a Case Management Order, this Court set forth a process for adding plaintiffs by listing theirnames and filing as supplemental pleadings under Fed.R.Civ.P. 15(d) and ordering that "[p]laintiffs added by this procedure need not re-serve defendants who have already been served."  ECF MDL#247 at ¶ 12.

[9]    The publication notices directed the named defendants to the MDL docket, both in English and in Arabic, to answer the Complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days. ECF MDL#709 at 2; 735 at 2.  The jurisdictional and factual

*Omar* Defendants never answered, and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006.  ECF No. 1782 *et seq.*, (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs liability default motion, including the *Taliban* and *Omar* Defendants).

Previously, in connection with their claims against the Islamic Republic of Iran ("Iran"), another defendant in the Complaints naming the *Taliban* and *Omar* Defendants, this Court granted the *Ashton* Plaintiffs a default liability judgment.  ECF 3014.  Thereafter, in connection with the damages assertions set forth in the *Ashton* Complaints, in a series of Orders this Court issued final damages judgments against Iran, granting the various *Ashton* Plaintiffs' motions for:

- Compensatory damages for the conscious pain and suffering of the *Ashton* 9/11 Decedents (*e.g.*, ECF MDL#5376, 5449);

- Economic damages for the Estates of the *Ashton* 9/11 Decedents (*e.g.,* ECF MDL#5376, 5449), which damages claims were supported by the expert analysis, reports or other economic loss calculations that these same *Ashton* Plaintiffs filed with this Court (ECF 5376, 5449); and

- *Solatium* damages for the widows and children of these *Ashton* 9/11 Decedents (*e.g,*. ECF MDL#5376, 5449) (the applicability of state law on the issue of wrongful death damages was *not* then considered).

The *Ashton-Burlingame-Dickey* Plaintiffs described within the exhibits to the Schutty Declaration now move this Court to grant the proposed Order awarding them damages for, as noted on those exhibits, conscious pain and suffering, economic loss, and solatium damages (*if New York State wrongful death law is determined not to apply*) arising out of the deaths of those

---

allegations against the *Taliban* and *Omar* Defendants as set forth in the operative complaint at the time of service did not change in subsequent amendments.  *Compare* 02-cv-6977 (S.D.N.Y.) (*Ashton* Consolidated Master Complaint, Filed 03/06/2003), ECF 11 at ¶¶ 2, 10-12, 112-14, 178-79, 600, 602-03, 605-06, 09, 610-12, 615-19, *with* 02-cv-6977 (S.D.N.Y.) (Sixth Amended Complaint, Filed 09/03/2005) ECF 465 at ¶¶ 2, 10-12, 78-79, 123-25, 464-66, 469-70, 473-74, 477-78, 481-82.

individuals killed in the September 11 terrorist attacks in the same amounts as awarded previously against defaulting Defendant Iran (*plus treble damages*) and directing that pre-judgment interest be assessed at 4.96 percent per annum.

The damages of the *Ashton-Burlingame-Dickey* Plaintiffs herein, all United States citizens, are set forth in chart form in Exhibit J to the accompanying Schutty Declaration.  Since this Court has yet to rule definitively as to what damages are recoverable against the *Taliban* and *Omar* Defendants, the *Ashton-Burlingame-Dickey* Plaintiffs are submitting this Memorandum of Points & Authorities to address the salient issues not yet resolved.

<u>ARGUMENT</u>

<u>POINT I:</u>     **ANY COMMON LAW AWARD OF WRONGFUL DEATH DAMAGES AGAINST THE *TALIBAN* & *OMAR* DEFENDANTS MUST COMPLY WITH THE LAW OF THE DOMICILE OF THE DECEDENT**

All eight of the decedents involved in the instant application for an award of damages and entry of a default judgment were New York State domiciliaries at the time of their deaths (as were their widows and children), and the tort causing the deaths of these decedents was perpetrated in New York.  Under applicable choice of law rules, New York State common law therefore applies to the wrongful death claims here.[10]

Each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents.  In New York, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury.  *Id*.  Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death arising to a decedent's estate.[11]  *See* EPTL, Section 5-4.1.  Finally, the wrongful death claim must be put into suit within two years of the death of the decedent.  *Id*.

---

[10]     New York's choice of law analysis, commonly referred to as an "interest analysis," focuses on determining which jurisdiction, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993), *quoting Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743 (1963).  "'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders'" (citation omitted).  *Padula v. Lilarn Props. Corp.,* 84 N.Y.2d 519, 620 N.Y.S.2d 310 (1994).

[11]     "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal

Here, the within plaintiffs have provided proof that they have been appointed the "personal representative" of their late husband's estate; they have provided affidavits showing that that they and their children are the only "heirs" that should share in the recovery by the estate and that each was an American national living in New York with the decedent at the time of his death; they also have submitted detailed expert reports outlining the economic losses sustained by each estate.[12]   Finally, they have proven that their lawsuit was filed against the *Taliban* and *Omar* Defendants within two years of the death of their decedent.

The *Ashton-Burlingame-Dickey* Plaintiffs described within Exhibit J are: (1) the state-appointed personal representatives of the Estates of decedents who were murdered on September 11, 2001 (*Ashton* 9/11 Decedents), and (2) heirs of those Estates recognized by New York State law as such.   Schutty Decl. at ¶ 8.   As liability by default has been established against the *Taliban* and *Omar* Defendants, the moving Plaintiffs herein now seek a final order of damages in the amounts set forth on Exhibit J on behalf of themselves and other heirs qualified to recover under applicable New York law.

### A.  Economic Loss

Previously, this Court awarded economic damages, in prior claims against Iran, for the "economic losses stemming from the wrongful death of the decedent[.]"   ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in each plaintiff's economic expert reports.   Schutty Decl. at ¶¶ 11-13.   The economic loss amount was calculated in each case based on updated, present-value figures of either the economic damages provided by an

---

representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries."   https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[12]    The conscious pain and suffering of the decedent prior to death is also recoverable under New York law.   *Wasserberg v. Menorah Center for Rehabilitation & Nursing Care*, __ A.D.3d __, 2021 NY Slip.Op. 04923 (2d Dept. Sept. 1, 2021).

economic expert, or that generated by the September 11 Victim Compensation Fund ("VCF"); this Court previously found that those economic damages amounts were proper.  Schutty Decl. at ¶ 12.

In their prior motion for economic damages as to Defendant Iran, these same *Ashton* Plaintiffs presented reports prepared by their economic expert who, relying on materials provided by these Plaintiffs (economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty.   Schutty Decl. at ¶ 12.  These expert reports were filed with this Court (ECF 3433) and the Court credited those reports and granted the motion as to each Estate's individual economic loss and other damages as to Iran (ECF 3435).

Accordingly, the *Ashton-Burlingame-Dickey* Plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents listed in Exhibit J in the amounts set forth therein, the same amounts that were previously awarded to these Estates by this Court in the final judgments against Iran.

### B.  Conscious Pain and Suffering

Plaintiffs' decedents identified in Exhibit J to the Schutty Declaration all experienced agonizing suffering prior to their deaths in the September 11, 2001 terrorist attacks.  Schutty Decl. at ¶ 11.  This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives on September 11, 2001.  ECF Nos. 2618 at 7 – 9.  Accordingly, the *Ashton* Plaintiffs now respectfully request that this Court grant those *Ashton* 9/11 Decedents, whose estates are set forth in Exhibit J, total compensatory damages

judgments that reflect the previously awarded $2,000,000 for each 9/11 Decedent.  That total final damages amount sought for each *Ashton* 9/11 Decedent is listed in Exhibit J (Exhibit A to the accompanying Proposed Order).

### C.  Solatium Damages

The within Plaintiffs recognize that solatium (pain and suffering of heirs) damages are not recoverable under a strict application of New York State law.  However, to the extent this Court fails to apply New York law in entering judgment based on the ATA cause of action, then an award of solatium damages to each of the *Ashton-Burlingame-Dickey* plaintiffs on this motion is requested (in the alternative).

"Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress."  *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009).  Reflecting the nature of terrorist attacks, which are intended to cause emotional damages to those closest to the physically injured party, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort."  *Ests. of Ungar ex rel. Strachman v. Palestinian Auth.,* 304 F. Supp. 2d 232, 264-65 (D.R.I. 2004) (fullest range of damages should be available to plaintiffs in terrorism litigation, including "all the weapons available in civil litigation"); *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2, 2011) (plaintiffs may "'pursue claims for solatium [emotional] damages' under the ATA") (brackets in original); *Henkin v. Kuveyt Turk Katilim Bankasi*, 495 F.Supp.3d 144, 152 (E.D.N.Y. 2020) ("[c]ourts permit "[p]laintiffs to pursue claims for solatium [emotional] damages" under the ATA.") *citing Lelchook*, 2011 WL 4087448,at *2.

To this end, "[s]pouses and relative[s] in direct lineal relationships are presumed to suffer damages for mental anguish. *Knox v. Palestine Liberation Org*., 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006); *Morris v. Khadr*, 415 F.Supp.2d 1323, 1337 (D. Utah 2006) (holding that "victim's family may recover under § 2333 for the victim's lost wages and pain and suffering, and for the victim's wife and children's loss of companionship, society, and guidance, and mental anguish); *Ungar*, 304 F. Supp 2d at 267 (holding plaintiffs entitled under § 2333 to economic and non- economic damages, including loss of companionship and society, and mental anguish experienced by the victim's surviving family members).

 Two of the established categories of family relationships – spouses and children – do not require any additional showing of the nature of the underlying relationship.  To fashion a solatium award adequately compensating the surviving family members in the litigation when issuing solatium damages as against defendant Iran, this Court looked to the analysis undertaken by District Court Judge Royce Lambert in *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006).  There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million.  *Id*.

Recognizing that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief and, "[w]orse yet, … are faced with frequent reminders of the events of that day," ECF 2618 at 10 – 12, this Court adopted the following solatium damages framework:

| Relationship to Decedent | Solatium Award |
| --- | --- |
| Spouse | $12,500,000 |

| Child | $8,500,000 |
|---|---|

The losses claimed in this motion are identical to those that this Court ordered in connection with the final judgment against Iran. The amount of solatium damages previously adopted in the judgments against Iran should apply equally to the *Taliban* and *Omar* Defendants, *if New York State law is not applied to the ATA cause of action*.

The relationships between each decedent and each *Ashton-Burlingame-Dickey* Plaintiff herein are set forth within the exhibits attached to the Schutty Declaration.  These Plaintiffs have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between these *Ashton* Plaintiffs and the decedents killed in the September 11, 2001 terrorist attacks have been verified; these *Ashton* Plaintiffs survived the death of their husband or father on September 11, 2001; these *Ashton* Plaintiffs do not have another known claim pending before this Court for compensation against the *Taliban* or *Omar* Defendants; these *Ashton-Burlingame-Dickey* Plaintiffs have not recovered against the *Taliban* or *Omar* Defendants; these *Ashton* Plaintiffs have not come close to satisfying their judgments against Iran; and, this Court previously granted solatium damages in the amounts sought here. Schutty Decl. at ¶¶ 13-17.

The Plaintiffs described in Exhibit J are all individuals who were either identified by name as the state-appointed personal representatives of the Estate of an *Ashton* 9/11 Decedents (no later than the filing of the Sixth Amended Complaint, which expressly identified claims for solatium damages, or were added as qualified heirs to the Estate via Notice of Amendment as to defendants Iran and Sudan.  Schutty Decl. at ¶ 15.  The Plaintiffs here, other than the widows-personal representatives identified in Exhibit J, are the children of the of *Ashton* 9/11 Decedents on the Sixth Amended Complaint, a Complaint that asserted claims for all qualified heirs of the

Case 1:03-md-01570-GBD-SN   Document 9095-3   Filed 05/18/23   Page 85 of 96
**A181**
Case 1:03-md-01570-GBD-SN   Document 8389   Filed 08/17/22   Page 19 of 30

*Ashton* 9/11 Decedents and that expressly identified claims for solatium damages; these children were not included by name in that original pleading; and have now been added via Notice of Amendment as to these defendants.  Schutty Decl. at ¶ 15.

These *Ashton-Burlingame-Dickey* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Ashton* Plaintiffs listed in Exhibit I, in the amounts set forth in that Exhibit, *if New York law is determined not to limit the damages recoverable under the ATA.*

### D.  Punitive Damages

While *Ashton* Plaintiffs are also entitled to punitive damages, in light of prior differing decisions on the proper punitive multiplier (*compare*, *e.g.,* ECF 3175 at 3 *with* ECF 3384 at 6), they request permission to address the issue of punitive damages at a later date, as this Court has previously allowed.  ECF No. 3666.

### E.  Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate.  ECF No. 3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate.  ECF No. 3384 at 6.

Accordingly, these *Ashton-Burlingame-Dickey* Plaintiffs ask that this Court direct that prejudgment interest of  4.96 percent per annum be awarded on their awards running from

September 11, 2001 until the date of judgment, as was done previously done in this consolidated litigation.

**POINT II:**  **THE ANTI-TERRORISM ACT PROVIDES AN ADDITIONAL AVENUE FOR THE DAMAGE AWARDS SOUGHT, BUT THE ACT IS SILENT AS TO CERTAIN  ELEMENTS THAT NECESSARILY MUST BE SUPPLIED BY APPLICABLE STATE LAW GOVERNING WRONGFUL DEATH AWARDS.**

    **A.  The Anti-Terrorism Act Has Previously Not Been Interpreted Properly in this MDL Litigation Because the Court Improperly Applied Novel "Federal Common Law" Instead of Applicable & Governing State Law**

The Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 provides (emphasis added):

**Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.

In the event of a death by an act of international terrorism, the ATA is patently: (1) *silent* as to which individuals fit within the scope of the decedent's "estate, survivors, or heirs" (how that phrase should be interpreted), (2) *silent* as to whom may assert a claim for the decedent's "estate, survivors, or heirs" on their behalf, and (3) *silent* as to what damages may be awarded to surviving family members.[13]  Typically, where a federal statute does not provide guidance on an issue relating to estate law, reference is made to state law.[14]  Federal law is interstitial and federal

---

[13]    When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule is applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).  *See also* footnote 6 above.

[14]    The District Court, when and if it reaches the merits of this issue as against the *Taliban* or *Omar* Defendants, will have to decide how the ATA should be applied as a wrongful death remedy.  The Court should address the applicable damage policies and, if state wrongful death causes of action are incorporated into the ATA, whether state damage limitations, such as ceilings on recoveries or prohibitions on awards for non-pecuniary losses, are also incorporated.

15

courts often look to the law of the forum state[15] to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[16]

In the default judgment filings previously entered against Iran, many of the plaintiffs were parents and siblings of 9/11 decedents who asserted individual and personal claims as plaintiffs asserting the ATA cause of action (most of these individuals were not court-appointed personal representatives) and they were belatedly added to the litigation in amended pleadings; most of these parents-siblings of decedents were not within the "estate" of their 9/11 decedent, as that "estate" is defined by governing state law.

---

[15]    *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."). "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it." 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update). A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999). *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests. When federal law does not expressly establish the legal rule for a federal question case, a federal court may borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest. Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states. *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000). *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)). "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[16]    28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent. *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955). There are also more specific federal statutes that require the use of state law on both procedural and substantive matters. *See, e.g.*, 28 U.S.C. § 1738 (federal courts required to give state court judgments the same full faith and credit that state courts would give them); Federal Tort Claims Act, 28 U.S.C. § 1346(b).

In claiming money damages for this class of plaintiffs under the ATA, the Plaintiffs'

Executive Committee ("PEC") has claimed that precedent issued by a different jurisdiction (the

District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting

who may recover for a decedent's death under the ATA) is applicable[17]; in turn, the PEC

implicitly suggested that the MDL court here could wholly ignore the interests and laws of the

decedents' domiciles (state law) regarding wrongful death estate administration.[18]   No precedent

---

[17]   The PEC has previously asserted that decisions from the U.S. District Court for the District of Columbia support their view. These cases, however, lack "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign. *See, e.g., Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2015 WL 9468813, at *1 (S.D.N.Y. Dec. 28, 2015) (addressing motion for default judgment filed against Iran); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").

[18]   *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").   "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."   19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update).   A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.   *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999).   *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).   When federal law does not expressly establish the legal rule for a federal question case, a federal court may borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.   Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.   *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).   *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)).   "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death."   S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

existed within the District Court (S.D.N.Y.) or the governing Circuit (Second) on the issue at that time.

In fact, each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents.  As seen above, in New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury.  *Id.* This fact has been given no regard in the MDL litigation to date.  Also, New York State law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.[19]  *See* EPTL, Section 5-4.1.  New York law "estate" and wrongful death law, which requires a result different than that reached previously by this Court, was not only ignored, it was violated – by awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."[20]

---

[19]    "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries."  https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[20]    In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the court failed to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children. These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

Here, the laws of the domiciles of the decedents have apparently been given little regard in evaluating the wrongful death claims of individuals outside the "estate, survivors, or heirs" explicitly recognized by state law.  On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

In seeking wrongful death damages in this litigation against the *Taliban* and *Omar* Defendants, the *Ashton-Burlingame-Dickey* Plaintiffs are state court-appointed "personal representatives" and members of 9/11 Decedent "estates," as those terms are defined by New York State law.  The undersigned law firm has chosen to represent these limited family members (spouses and children) of 9/11 Decedent Estates, to avoid a conflict of interest (a battle over the distribution of wrongful death damages).  My firm has rejected offers to represent parents and siblings of these decedents (who would be denied a distribution of wrongful death proceeds under New York law) who might affect reduce distributions to surviving spouses and children. The undersigned law firm continues to represent our clients zealously in claiming that they are the only "heirs" worthy of wrongful death proceeds of distributions in this MDL litigation under applicable law (and within the USVSST, where parents and siblings are siphoning large sums away from the decedent's true "heirs" because only a shared, limited fund exists).

In requesting wrongful death damages on behalf of individuals who are not within a defined "estate" under state law, again the attorneys who have been seeking these awards (presently the PEC attorneys) have relied on ATA case law precedent rendered only in the District of Columbia Circuit courts, precedent that has not been fully evaluated in the Second

19

Circuit where state law is present (with a limiting effect on who is entitled to recover wrongful death damages[21]).

Case law in the Second Circuit has yet to resolve these thorny ATA issues properly and yet awards may again be issued hastily against the *Taliban* and *Omar* Defendants, without a determination of whether the ATA is being properly interpreted.  Virtually all of the PEC law firms representing personal representatives have engaged in a "follow the leader" process and have "compelled" their naïve personal representative clients to allow their firms also to represent "all immediate family members" without advising the personal representatives of the consequences of such an acquiescence; these law firms now have proceeded to present claims broadly on behalf of two separate classes of survivors against Sudan, Iran and Saudi Arabia: (1) all alleged "survivors and heirs" of 9/11 decedents, under the ATA, for "*solatium*" and other damages, and (2) court-appointed personal representatives and more limited "heirs," under state law, for traditional wrongful death and survival damages.

As a great majority of these PEC law firms are collecting attorneys' fees from these two classes of clients with very different interests, these firms have chosen *not* take a position on the very vital question of whether state wrongful death and survival law (based on the domicile of the 9/11 decedent) has any applicability when seeking recover wrongful death damages under the ATA.

---

[21]   *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit.  *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)).  *But see Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985).

### B. The Statute of Limitations Is a Bar to Newly-Filed Claims by Parents & Siblings Against the Taliban and Omar Defendants

Finally, an issue has arisen in this MDL litigation as to whether a filing by a "personal representative" appointed under state law constitutes a timely filing for claims belatedly asserted by parents and siblings (among others) of 9/11 decedents who are not within their 9/11 decedent's defined "estate" under state law.

The statute of limitations here required claimants to file suits against the "foreign states" in this litigation by January 2, 2019, because Congress extended the ATA statute of limitations to that date.  18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).[22]

The PEC has argued that one lawsuit, filed broadly on behalf of an "estate," should be deemed an action filed on behalf of "all survivors" (undefined) of the decedent.  *See, e.g.*, MDL ECF#5095 at 1, 5096 at 1 and 5097 at 1.  The within plaintiffs have objected to this suggestion contending that a "personal representative" appointed under New York State law is the *only* person authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4.  This objection has, thus far, been ignored. Individuals "outside" the defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or by any other family member for that matter*.

Under New York law, there is no question that the appointed personal representative is the *only* person who can commence and ultimately resolve wrongful death litigation against the defendants here.  Under New York law, when someone dies leaving a spouse and children, *only*

---

[22]     Judge Richard Conway Casey's June 16, 2004 Case Management Order required all parties to be added to the litigation on or before October 4, 2004.  ECF MDL#247.  The ATA statute of limitations required claimants to file ATA claims in this litigation by January 2, 2019, since Congress extended the ATA statute of limitations to that date.  18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).

the spouse and children are entitled to receive wrongful death damages as a result of their loved one's death.  Finally, under New York law, it does not matter if the decedent and his parents and/or siblings had a great relationship with the decedent, or whether the decedent provided them with financial support, *etc.*, because the extended family members are not within the legal class of beneficiaries entitled to share in damages.  Thus, regardless of their relationship with the decedent, New York law does not allow those individuals (extended family members) to recover. Thus, the filing of a timely lawsuit by a personal representative (or other family member) does not protect an untimely filing by a parent or sibling of the decedent.

While it is true that the ATA does not specify who may recover under that cause of action for the death of an individual, the PEC law firms, originally representing only court-appointed personal representatives should have zealously and forcefully represented those personal representatives before the courts and Congress (and not sought to represent family members excluded from the "estate") to ensure that the personal representatives (mostly widows and their children) received the full and complete benefit of the ATA cause of action.  The PEC law firms had only one master – the court-appointed personal representatives of the 9/11 decedents.  What the PEC law firms have done, for example, violates Rule 1.7 of the New York State "Rules of Professional Conduct" for lawyers:

> **RULE 1.7.**
>
> **Conflict of Interest: Current Clients**
>
> (a)      Except as provided in paragraph (b), **a lawyer shall not represent a client if a reasonable lawyer would conclude that either**:
>
>          **(1)      the representation will involve the lawyer in representing differing interests; or**

**(2)     there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.**

**(b)      Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:**

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) **the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal**; and

(4) each affected client gives informed consent, confirmed in writing.

An undeniable conflict of interest is present here for any law firm/attorney purporting to represent the personal representative of a 9/11 Decedent's Estate under applicable state law and any "extended family members" who, for example, have no entitlement to wrongful death damages under New York law.

The conflict is patent, especially since extended family members are receiving USVSST Fund distributions (and/or future distributions from a limited fund set aside to pay Taliban judgments), and are (or will be) depleting what might be recovered by the true heirs of a decedent's estate, because there is a limited fund "shared" by all who have received default judgments.  The "dual" representation by attorneys of both court-appointed personal representatives (under state law) and "extended family members" necessarily involves "the assertion of a claim by one client against another client represented by the lawyer in the same litigation" and would promote the "lawyer's own financial interests."  Thus, the "dual" representation that many attorneys are undertaking should be deemed impermissible.

23

**CONCLUSION**

For all of the reasons herein, as well as those set forth in the previous submissions, these *Ashton-Burlingame-Dickey* Plaintiffs respectfully request that this Court grant the Proposed Order (and Exhibit A thereto) filed simultaneously with this motion:

1. Awarding the Estates of the individuals killed in the September 11 Terrorist Attacks listed in Exhibit A to the Proposed Order damages for conscious pain and suffering against the *Taliban* and *Omar* Defendants in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to these Estates against Iran;

2. Awarding the Estates of the *Ashton* 9/11 Decedents listed in Exhibit A to the Proposed Order damages for economic loss against the *Taliban* and *Omar* Defendants (as established in the accompanying expert reports) in the same amounts that this Court previously awarded to these Estates against Iran;

3. Awarding the widows and children of the *Ashton* 9/11 Decedents listed in Exhibit A to the Proposed Order (heirs of each Estate under New York State law), who are also named in the Complaints, solatium damages in the same amounts that this Court has previously awarded to them against Iran (*if New York law is not applied to their ATA cause of action*);

4. Awarding these *Ashton-Burlingame-Dickey* Plaintiffs treble damages under the ATA;

5. Awarding these *Ashton-Burlingame-Dickey* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

6. Granting these *Ashton-Burlingame-Dickey* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date; and

**A192**

7. Granting permission for any other *Ashton* plaintiffs to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: New York, New York
August 17, 2022

Respectfully submitted,

By: *John F. Schutty*

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Tel: (646) 345-1441

Counsel to the *Ashton-Burlingame-Dickey* Plaintiffs

25