# 23-_____

## IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

IN RE: LISA O'BRIEN and PATRICIA RYAN,

*Plaintiffs-Petitioners.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: TERRORIST ATTACKS ON
SEPTEMBER 11, 2001
03-MD-01570 (GBD)(SN)

---

## APPENDIX TO PETITION FOR WRIT OF MANDAMUS
## VOLUME II OF II
### (Pages A193 to A373)

---

JOHN F. SCHUTTY
LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, 9th Floor
New York, New York 10022
(646) 345-1441

*Attorneys for Plaintiffs-Petitioners*

## APPENDIX TO PETITION

| Page Numbers | Date Filed | MDL ECF# | Legal Action | Document Description |
|---|---|---|---|---|
| A 1-3 | 04/06/2022 | (Fed. Ins. ECF# 1107) | *Federal Insurance Co. v. al Qaeda,* 03-cv-6978 | Order: Plaintiffs [Commercial Insurance Companies] Have Moved for a Partial Final Default Judgment against the Taliban.  The Motion Is Granted. |
| A 4-15 | 10/14/2011 | 2479 | *Federal Insurance Co. v. al Qaeda,* 03-cv-6978 | Report and Recommendations: Plaintiffs [Commercial Insurance Companies] Should Be Awarded Judgment on Their Subrogation Claims Against al Qaeda Under the ATA. |
| A 16-20 | 12/16/2011 | 2502 | *Federal Insurance Co. v. al Qaeda,* 03-cv-6978 | Memorandum Decision & Order: Court adopts the Report and Recommendation (ECF#2479) in its entirety. |
| A 21-23 | 12/22/2011 | 2516 | *Havlish v. Bin Laden,* 03-cv-9848 | Order and Judgment: Plaintiffs' Motion for Judgment by Default [Wrongful Death] Against the Sovereign Defendants, The Islamic Republic of Iran, *et al.*, and Non-Sovereign Defendants, The Taliban *et al.,* Is Granted and Final Judgment on Liability Is Entered in Favor of All *Havlish* Plaintiffs. |
| A 24-42 | 07/30/2012 | 2618 | " | Report & Recommendation to the Honorable George B. Daniels: [Wrongful Death] Plaintiffs Should Be Awarded Described Damages Against the Sovereign (Iran, *et al.*) and Non-Sovereign Defendants (Taliban, *et al.*). |
| A 43-49 | 10/03/2012 | 2623 | " | Memorandum Decision and Order: Court Adopts the Report and Recommendation (ECF#2618) in Its Entirety. Judgment Should Be Entered Against the Sovereign Defendants (Iran, *et al.*) for the Following Damages: (1) Economic Damages; (2) Damages for Pain and Suffering; (3) Punitive Damages; and (4) Damages for Solatium.  The Non-Sovereign Defendants (Taliban, *et al.*) Are Jointly and Severally Liable for Same Damages as Foreign Sovereigns Under Traditional Tort Principles. |

| A 50-62 | 12/16/2019 | 5367 | *Ashton et al. v. al Qaeda Islamic Army et al., 02-cv-6977* | Motion for Default Judgment as to Certain Plaintiffs in *Burlingame* (*Ashton-Dickey* Plaintiffs) Against the Islamic Republic of Iran. |
|---|---|---|---|---|
| A 63-69 | " | 5368 | " | Declaration of John F. Schutty in Support re: ECF#5367. |
| A 70-71 | " | 5368-1 | " | Ex. A - Declaration of Irene Dickey (without exhibits). |
| A 72-73 | " | 5368-2 | " | Ex. B - Declaration of Jacqueline Eaton (without exhibits). |
| A 74 | " | 5368-3 | " | Ex. C - Declaration of Joanne Kelly (without exhibits). |
| A 75-76 | " | 5368-4 | " | Ex. D - Declaration of Lisa O'Brien (without exhibits). |
| A 77-78 | " | 5368-5 | " | Ex. E - Declaration of Dara Seaman (without exhibits). |
| A 79-80 | " | 5368-6 | " | Ex. F - Declaration of Susan Sliwak (without exhibits). |
| A 81-82 | " | 5368-7 | " | Ex. G - Declaration of Allison Wallice (without exhibits). |
| A 83-84 | " | 5369 | " | Proposed Order. |
| A 85-88 | 08/17/2022 | 8386 | *Ashton et al. v. al Qaeda Islamic Army et al., 02-cv-6977* | Amended Motion for Default Judgment of the *Ashton-Dickey* Plaintiffs as to the Taliban and Omar Defendants. |
| A 89-103 | " | 8387 | " | Declaration of John F. Schutty, Esq. in Support re: Amended Motion for Default Judgment as to Taliban and Omar Defendants. |
| A 104-105 | " | 8387-1 | " | Ex. 1 - Declaration of Irene Dickey for Default Judgment Against the Taliban (without exhibits) |
| A 106-107 | " | 8387-2 | " | Ex. 2 - Declaration of Jacqueline Eaton for Default Judgment Against the Taliban (without exhibits). |
| A 108 | " | 8387-3 | " | Ex. 3 - Declaration of Joanne Kelly for Default Judgment Against the Taliban (without exhibits). |
| A 109-110 | " | 8387-4 | " | Ex. 4 - Declaration of Lisa O'Brien for Default Judgment Against the Taliban (without exhibits). |
| A 111-112 | " | 8387-5 | " | Ex. 5 - Declaration of Dara Seaman for Default Judgment Against the Taliban |

| | | | | |
|---|---|---|---|---|
| | | | | (without exhibits). |
| A 113-114 | " | 8387-6 | " | Ex. 6 - Declaration of Susan Sliwak for Default Judgment Against the Taliban (without exhibits). |
| A 115-116 | " | 8387-7 | " | Ex. 7 - Declaration of Allison Wallice for Default Judgment Against the Taliban (without exhibits). |
| A 117-118 | " | 8387-8 | " | Ex. 8 - Declaration of Eileen Lynch for Default Judgment Against the Taliban (without exhibits). |
| A 119-158 | " | 8387-9 | " | Ex. 9 - Court Orders Appointing Personal Representatives of the Eight Decedent Estates. |
| A 159-162 | " | 8387-10 | " | Ex. 10 - List of Plaintiffs & Proposed Awards in Default Judgment Against the Taliban (re: ECF#8386). |
| A 163-192 | " | 8389 | " | Memorandum of Law in Support re: Amended Motion for Default Judgment as to the Taliban (re: ECF#8386). |
| A 193-195 | 10/25/2022 | 8668 | " | Proposed Entry of Partial Final Judgments against the Taliban on Behalf of Certain *Burlingame* Plaintiffs (re: ECF#8386). |
| A 196-202 | 10/21/2022 | 8662 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Letter Addressed to Judge George B. Daniels from John F. Schutty, Esq. dated October 21, 2022 re: ECF#8590 Order that Requested Advice on How Taliban Default Judgment Applications Might Be Resolved Fairly. |
| A 203-204 | 11/21/2022 | 8767 | " | Letter Addressed to Judge George B. Daniels from John F. Schutty, Esq. dated Nov. 21, 2022 re: Suggestions to Ensure that Taliban Wrongful Death Default Judgments Are Entered & Executed Properly and Fairly. |
| A 205 | 12/01/2022 | 8778 | " | Order: To aid in resolving Default Judgment Motions Against the Taliban, the Court Requests Briefing on Two Questions |
| A 206-225 | 12/22/2022 | 8814 | " | Brief (re: ECF#8778 Order): Memorandum of Points & Authorities re: Law to Be Applied in Wrongful Death Applications Filed against the Taliban. |
| A 226-242 | 03/15/2023 | 8929 | *Ashton et al. v. al Qaeda Islamic* | Amended Report and Recommendation (re: ECF#8568).  M.J. Netburn Determines that Statutes of Limitation |

| | | | | |
|---|---|---|---|---|
| | | | *Army et al.,* 02-cv-6977 | Will Not Be Enforced as to any Defendant-in-Default and "Immediate Family Members" May Recover Wrongful Death Damages Against the Taliban. |
| A 243-285 | 03/28/2023 | 8959 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Plaintiff's Motion to Set Aside (re: ECF#8929) – the Amended Report & Recommendation re: Taliban Wrongful Death Claims. |
| A 286-293 | " | 8960 | " | Declaration of John F. Schutty, Esq. in Support (re: ECF#8959). |
| A 294-297 | " | 8960-1 | " | Exhibit A-Summaries of Applicable State Wrongful Death. |
| A 298-304 | " | 8961 | " | Declaration of Plaintiff Lisa O'Brien in Support (re: ECF#8959). |
| A 305-315 | 03/30/2023 | 8973 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Memorandum Decision & Order: Terminating (ECF#8386 and 8959) and Adopting (ECF#8929) M.J. Netburn's Report and Recommendation. |
| A 316-317 | 04/06/2023 | 8992 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Plaintiff's Motion for Certificate of Appealability Pursuant to 28 U.S.C. Section 1292(b). |
| A 318-338 | " | 8993 | " | Memorandum of Law in Support (re: ECF#8992). |
| A 339-342 | 04/21/2023 | 9041 | *Ashton et al. v. al Qaeda Islamic Army et al.,* 02-cv-6977 | Motion for Default Judgment as to Taliban by Certain *Ashton-Dickey* Plaintiffs. |
| A 343-356 | " | 9042 | " | Declaration of John F. Schutty, Esq. in Support re: Motion for Default Judgment as to Taliban by Certain *Ashton-Dickey* Plaintiffs (re: ECF#9041). |
| A 357-359 | " | 9042-1 | " | Ex. A-Declaration of Kristen Breitweiser (without exhibits). |
| A 360-366 | " | 9042-2 | " | Ex. B-Declaration of Patricia Ryan (without exhibits). |
| A 367-370 | " | 9042-3 | " | Ex. C-Court Orders Appointing Personal Representatives. |
| A 371 | " | 9042-4 | " | Ex. D-List of Plaintiffs & Requested Awards. |
| A 372-373 | " | 9045 | " | Proposed Judgment (re: ECF#9041). |

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11,2001 | 03 MDL 1570 (GBD) (SN) <br><br> ECF Case |

This document relates to:

> *Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
> *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

### [PROPOSED] ENTRY OF PARTIAL
### FINAL JUDGMENTS AGAINST THE TALIBAN AND
### MUHAMMAD OMAR ON BEHALF OF CERTAIN *BURLINGAME* PLAINTIFFS

Upon consideration of the evidence and arguments submitted by the Personal

Representatives of the Estates of Joseph D. Dickey, Robert D. Eaton, James J. Kelly, Timothy M.

O'Brien, Michael H. Seaman, Robert F. Sliwak, John Wallice, Jr. and Farrell Lynch (set forth in

the Declaration of John F. Schutty, Esq. and the exhibits thereto), regarding their wrongful death

claims (the Plaintiffs named herein are *Ashton-Burlingame-Dickey* parties to the above-captioned

litigation), and in light of the Judgment by Default for liability against defendants the Taliban

and Muhammed Omar entered on May 12, 2006 (ECF No. 1797), together with the entire record

in this case, and in addition to the prior default judgment award for compensatory damages for the

pre-death conscious pain and suffering of the decedents Joseph D. Dickey, Robert D. Eaton,

James J. Kelly, Timothy M. O'Brien, Michael H. Seaman, Robert F. Sliwak, John Wallice, Jr.

and Farrell Lynch, (*see* ECF Nos. 3226, 3229) and the economic losses and solatium damages

previously awarded herein to these Plaintiffs under this Court's Order of December 17, 2019

(ECF#5376) awarding damages against the Defendant Islamic Republic of Iran, it is hereby;

**ORDERED** that partial final judgment is entered on behalf of the *Ashton-Burlingame-*

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 7 of 186
**A194**
Case 1:03-md-01570-GBD-SN   Document 8668   Filed 10/25/22   Page 2 of 3

*Dickey* Plaintiffs identified in the attached Exhibit A (Exhibit I to the Schutty Declaration) against the Taliban and Muhammad Omar; and it is

**ORDERED** that the *Ashton-Burlingame-Dickey* Plaintiffs identified in the attached Exhibit A are awarded economic damages as set forth in Exhibit A; and it is

**ORDERED** that the *Ashton-Burlingame-Dickey* Plaintiffs identified in the attached Exhibit A are awarded *solatium* damages as set forth in Exhibit A (if federal common law, rather than state law, is found applicable); and it is

**ORDERED** that the *Ashton-Burlingame-Dickey* Plaintiffs identified in the attached Exhibit A are awarded $2 million for the conscious pain and suffering of their decedent as set forth in Exhibit A; and it is

**ORDERED** that prejudgment interest on those awards is to be calculated at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment, in the amount $_____; and it is

**ORDERED** that the *Ashton-Burlingame-Dickey* Plaintiffs identified in the attached Exhibit A may submit a future application for punitive damages consistent with any future rulings of this Court; and it is

**ORDERED** that the *Ashton* Plaintiffs not appearing on Exhibit A, who were not previously awarded *solatium* and/or economic damages, may submit applications in later stages and they will be approved on the same basis as currently approved for those Plaintiffs appearing on Exhibit A.

*Furthermore, in light of the above, the Court respectfully directs the Clerk of the Court to terminate the Motion of the Ashton-Burlingame-Dickey at ECF No. 8386.*

Dated: New York, New York
_____, 2022

SO ORDERED:


_____
GEORGE B. DANIELS
UNITED STATES DISTRICT COURT JUDGE

## LAW OFFICE OF JOHN F. SCHUTTY, P.C.

445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441 Fax: (917) 591-5980
john@johnschutty.com

October 21, 2022                                              **Via ECF**

Honorable George B. Daniels
United States District Court Judge
Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York

Re:   *In re Terrorist Attacks on September 11, 2001*
MDL No. 03-MDL-1570 (GBD) (SN)
*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)
(and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230
(GBD)(SN))

Your Honors:

I refer to Magistrate Judge Netburn's Order dated September 30, 2022 (MDL ECF#8590)
("Sept. 30 Order") regarding the resolution of default judgments motions filed against the
Taliban "in a way that permits plaintiffs to 'proceed on equal footing with one another.'"[1]

As I have previously advised, I represent the personal representatives (all widows) and
"heirs" (qualified by applicable state law) of eight decedents killed within the World
Trade Center on September 11, 2001.  My clients are *not* properly represented by the

---

[1]    Where a limited fund of money may exist in the "possession" of a defendant-in-default, and
that money is sought by a multitude of plaintiffs, the claims of various plaintiffs may be truly
adverse to one another, and their respective claims should be challenged to ensure that justice is
obtained.  The docket of the court would otherwise become a "blank-check-writing" enterprise
for untested claims, rather than a court of law.  Will there be no policing of who may bring suit
and when the filing of new claims must end?  *See, e.g., Shiekh v. Republic of Sudan*, 308
F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and
more troubling dimension when paired with the murky public policy consequences of enabling
untimely judgments"), and *Maalouf v. Republic of Iran*, 306 F.Supp.3d 203, 211 (D.D.C. 2018)
("without some policing of time limits, plaintiffs may seek to exploit prior decisions finding
nations liable for certain conduct to later pursue large damage awards decades after the fact . . . In
this way, plaintiffs can continue piggybacking off of older decisions for decades to extract
multimillion dollar judgments from absent sovereigns . . . As long as each crop of plaintiffs could
show that they were victims or proper third-party claimants, they could continue racking up
sizeable damage awards for decades in response to a single act."), *Shiekh* and *Maalouf both rev'd
on other grounds by, Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (holding:
district court may not raise a statute of limitations defense *sua sponte* against a defendant in
default).

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 2

existing "Plaintiffs Executive Committee for Personal Injury & Wrongful Death" ("PI&WD PEC") with respect to the wrongful death applications because the law firms on this Committee represent both "heirs" recognized under applicable state law, but also "other family members" who are not qualified heirs (or appointed personal representatives) and who have not filed timely claims under applicable state law. In short, surviving spouses and children (qualified heirs under applicable state law) are not properly represented on the Taliban default judgments for wrongful death damages, except through pleas and objections made by my office.

**Wrongful Death Claims Asserted Against the Taliban**

The wrongful death plaintiffs asserting claims against the Taliban must "proceed on equal footing" *based on applicable law.*[2]

My clients all have timely and viable claims filed against the Taliban,[3] while the PEC firms are pursuing wrongful death damage claims in violation of applicable state law by:

---

[2]     The Court will recall that the Law Office of John F. Schutty, P.C. has sought leave to file a Fed. R. Civ. P. 60(b) motion to vacate the wrongful death default judgment obtained by the *Havlish* plaintiffs – on the ground that this default judgment was rendered without regard to the actual scheme of liability pled by those plaintiffs (common law, and not the FSIA). For the convenience of the Court, reference is made to my prior letter to the Court on this subject (Case 1:03-cv-09848-GBD-SN, Document 615 Filed 04/20/22). *In claiming damages against ALL of the defendants, the Havlish Plaintiffs relied exclusively on the FSIA* – "Damages available under the FSIA-created cause of action include "economic damages, solatium, pain and suffering, and punitive damages" – even though the FSIA clearly does *not* provide a cause of action in favor of the *Havlish* Plaintiffs against the Taliban. *Havlish* Plaintiffs' Damages Inquest Memorandum (ECF#301 Filed February 14. 2012) at 5. At an April 26, 2022 hearing, Judge Netburn stated on this subject: "I'll just note that I've received your letter application. I haven't acted on it. We will shortly." April 26, 2022 Transcript at 34. At this same hearing, Judge Daniels stated: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues – the issues of the availability of funds, *and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side – anyone who disagrees with your position – be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard."* April 26, 2022 Transcript at 37-38. The *Havlish* plaintiffs recently filed for an "Abstract of Judgment" so that they can file their defective Judgment in state court – does that send a signal that they may seek to avoid adverse rulings here in the SDNY?

[3]     On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar (hereinafter the "*Taliban* and *Omar* Defendants"), among others. *See* 02-cv- 6977 (S.D.N.Y.) ECF 1. That Complaint was consolidated and amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465. The *Taliban* and *Omar* Defendants never answered, and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a liability default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including the *Taliban* and *Omar* Defendants).

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 3

(1) requesting death damages for family members who are not represented by a state-appointed personal representative, (2) requesting death damages on behalf of non-heir individuals in violation of estate administration laws, and (3) adding additional non-heir family members to the litigation long after the statute of limitations for wrongful death has expired.

The undeniable conflict between state wrongful death law and the federal common law wrongful death urged by the PEC should be addressed and properly resolved in one MDL Order, rather than considered through a plethora of individual default judgment orders.

### A. Information Needed from Each Wrongful Death Plaintiff

The Court's July 11 Order requires, among other things, that every plaintiff identify when they were added to the Complaint "against the relevant defendant" (p. 4). This will be most helpful, but two more items should be identified by each plaintiff claiming wrongful death damages:

1. Whether that plaintiff has been appointed the personal representative of the decedent's estate (and, if so, provide proof of that appointment); and

2. The familial relationship of that plaintiff to the decedent, *viz.*, whether that plaintiff qualifies as an "heir" under the estate administration law (and wrongful death law) of the state where the decedent was domiciled at the time of his/her death.

The Court should issue a single Order that definitively determines: (1) who has standing/authorization to bring a wrongful death action against the Taliban, (2) when their action must have been filed to satisfy the applicable statute of limitations or laches (to distinguish between "timely" claims and "untimely" claims), and (3) who qualifies as an "heir" (under applicable state law). The Court has already been inundated with very diverse filings by the numerous law firms pursuing Taliban death claims. One Order of the Court can simplify the default judgment process and clean up the docket. As things stand now, any family member can file a wrongful death claim decades after the death of their decedent, as long as some family member has previously filed a timely claim.

When dealing with any defaulting defendant, some "adversary" party needs to advise the Court when certain plaintiffs, lacking standing and timely claims, seek money from a "limited fund," or those invalid claims will take money from court-authorized plaintiffs with timely, long-standing claims.

### B. State Law on Estate Administration Must Not Be Ignored

I respectfully ask the Court to require briefing on the law applicable to recovery from the Taliban – the PI&WD PEC can state its position on which plaintiffs are entitled to recover damages in a single brief, and any party who disagrees with the PEC's

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 4

assessment should, in turn, be entitled to brief and challenge what the PEC claims is applicable law. In this manner the Court will hear from all "adversarial" wrongful death parties with an interest in any limited fund of money that may be disbursed.

A cursory review of the many complaints filed by plaintiffs against the Taliban indicates that there are two viable causes of action against this defendant: (1) a cause of action provided by the Anti-Terrorism Act, and (2) a common law cause of action for wrongful death based on state law.

The applicable state law (*e.g.*, NY, NJ and CT) governing wrongful death claims (estate administration law) shows that in a wrongful death action each such state: (1) requires that the plaintiff be an appointed personal representative of the decedent's estate, and (2) strictly defines, by statute, which family members qualify as "heirs" of the decedent (defines who is entitled to a distribution of a wrongful death award). Thus, there is an undeniable conflict between the applicable state law and state interests and the novel federal common law urged by the PI&WD PEC.

The federal cause of action created by the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 provides (emphasis added):

> **Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism, or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.

In the event of a death resulting from an act of international terrorism, this cause of action is *silent* as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs," and is *silent* as to which individuals may pursue a claim for wrongful death.[4] In the default judgment applications filed against Iran, the PI&WD PEC has claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA) is applicable; in turn, the PEC implicitly suggested that the MDL Court here could wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration.[5]

---

[4]     When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[5]     *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to

Footnote continued on next page

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 5

Significantly, no precedent then existed within the District Court (S.D.N.Y.) or the governing Circuit (Second) on this issue to support the PEC's position.

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents.  In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.  Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings.  *Id.*  Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate.[6]  *See* EPTL, Section 5-4.1.  Thus, awarding money damages to individuals outside

---

Footnote continued from previous page
formulate federal common law.").  "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."  Wright & Miller, 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update).  A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.  *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).  When federal law does not expressly establish the legal rule for a federal question case, a federal court should borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).  *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)).  "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death."  S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[6]   "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory

Footnote continued on next page

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 6

the state-prescribed and statutorily-defined "heirs of the estate"[7] (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, expressly violates New York State law. On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

Moreover, where a federal statute does not provide guidance on an issue relating to estate administration law (like the ATA), reference is made to applicable state law (here, the law of the decedent's domicile).[8] Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[9]

Common law wrongful death and Anti-Terrorism Act (18 U.S.C. § 2333) claims are each subject to applicable state law. This Court should reach this result since the law of the decedent's domicile has a great interest in the outcome of this litigation and the eventual administration of each estate. Here, assuming that a decedent was domiciled in New York (the case for all of the *Ashton-Burlingame-Dickey* Plaintiffs that I represent), New

---

Footnote continued from previous page
trustee for all of the statutory beneficiaries." https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[7] In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates. *Markham v. Allen*, 326 U.S. 490, 494 (1946). It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982). Yet, here, the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children. These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

[8] The District Court should determine how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler. When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv. L. Rev. 1512, 1519 (1969).

[9] 28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent. *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955).

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
October 21, 2022, Page 7

York State law determines the parameters of each wrongful death claim – *viz.*, who is authorized to pursue the death claim, which "heirs" are entitled to recover, and the measure of damages that may be awarded. This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA does not explicitly provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action for money damages; creating federal common law in such instances, and ignoring otherwise applicable state law, lacks viable precedent.

Finally, and very importantly, the PI&WD PEC is promoting an "unlimited" statute of limitations as against the Taliban, *i.e.*, they have argued that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent against the statute of limitations. *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660. My clients have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other domicile-state law) is the *only* individual authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4. Untimely actions, filed by non-heirs under state law, should be dismissed. This objection has, thus far, been ignored (and thousands of parents and siblings – non-heirs – have been added belatedly to this litigation). Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or a filing by any other family member for that matter*.

In the interest of justice, I ask the Court to consider all of the above and issue an appropriate Order on the liability of the Taliban with respect to wrongful death claims, prior to issuing Orders on an avalanche of renewed and varied motions for default judgment damages against the Taliban.

Sincerely yours,

*John F. Schutty*

## LAW OFFICE OF JOHN F. SCHUTTY, P.C.

445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441  Fax: (917) 591-5980
john@johnschutty.com

November 21, 2022                                                    **Via ECF**

Honorable George B. Daniels
United States District Court Judge
Honorable Sarah Netburn
United States Magistrate Judge
Southern District of New York

       Re:    *In re Terrorist Attacks on September 11, 2001*
               MDL No. 03-MDL-1570 (GBD) (SN)
               *Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)
               (and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230
               (GBD)(SN))

Your Honors:

I write to respond to recent letters (MDL/ECF#8765 and 8766) filed by members of the Plaintiff's Executive Committee ("PEC"), and to supplement our discussions at the conference held this past Friday, regarding suggestions for resolving outstanding default judgment motions against the Taliban "in a way that permits plaintiffs to 'proceed on equal footing with one another.'"

I applaud the Court's concern expressed last Friday that, in evaluating what next steps should be taken to resolve the Taliban default judgment applications, the Court will not "rubber stamp" these applications and will attempt a degree of "quality control" to ensure fairness in the entry, execution and enforcement of any Taliban default judgments.

The *O'Neill* Plaintiffs (04-cv-1076), for example, have now written to the Court (MDL/ECF#8765) seeking confirmation of "liability judgments" against the Taliban. While the Court has issued a "general" liability judgment against the Taliban, that fact does not mean that every one of the new 2,900 *O'Neill* plaintiffs-claimants seeking damages is entitled to an award.  I once again ask the Court to weigh the merits and standing of *each* plaintiff seeking an award of damages, especially where wrongful death claims appear to have been filed belatedly by thousands of plaintiffs, and where many claimants do not appear to be qualified personal representatives *or* "heirs" under applicable law.  *See* my letter to the Court dated October 21, 2022 (MDL/ECF#8662).

I reiterate my request for a single Order from the Court (applying to all Taliban wrongful death claimants) that determines: (1) who may sue for wrongful death damages (only "personal representatives," as required by state law?), (2) when the wrongful death action must have been filed against the Taliban to be timely (under both state and federal law), and (3) what "heirs" may claim damages in a wrongful death context (does applicable

Honorable George P. Daniels & Magistrate Judge Sarah Netburn
November 21, 2022, Page 2

state estate administration law or new judicially-created federal common law apply to determine eligible "heirs"). *See* Ex. A – Summaries of the wrongful death laws of New York, New Jersey and Connecticut used previously by the United States Victim Compensation Fund.  I am asking that the PEC be asked to explain and brief why state estate administration laws do not apply to the Taliban wrongful death claims.

Without an explicit resolution of these seminal wrongful death issues in a single Order, the Court is faced with resolving thousands of disparate default judgment claims, often through motions lacking the facts needed to determine each plaintiff's eligibility.  A resolution of these issues in a preliminary Order will provide the "quality control" and docket cleansing that is now absolutely necessary in this ever-expanding litigation.

Finally, I remind the Court that a major hurdle in ensuring an equitable resolution and distribution of any fixed fund of Taliban money is the early wrongful death judgment issued to the *Havlish* Plaintiffs (03-cv-09848).  I submit, once again (see my prior letter in 03-cv-09848 at ECF#615), that this judgment should be vacated on the ground that it is incorrect/defective as it was/is based on counsel's express misrepresentation to the Court that the *Havlish* Plaintiffs were entitled to damages under the Foreign Sovereign Immunities Act (when the Taliban was/is not a foreign sovereign, and the only viable claim asserted was a "state" wrongful death claim that was not evaluated in awarding damages).  *See Havlish* Plaintiffs' Damages Inquest Memorandum (ECF#301 filed February 14. 2012).[1]  If the Court were to vacate the *Havlish* default judgment on the ground that it is void or voidable under Fed. R. Civ. P. 60, that fact might place all Taliban wrongful death plaintiffs on an "equal footing."

In sum, I respectfully ask the Court to require briefing on the law applicable to recovery from the Taliban – the PEC can state its position on which plaintiffs are entitled to recover wrongful death damages in a single brief, and any party who disagrees with the PEC's assessment should, in turn, be entitled to brief and challenge what the PEC claims is applicable law.  In this manner the Court will hear from all "adversarial" wrongful death parties with an interest in any limited fund of money that may be disbursed.

Sincerely yours,

*John F. Schutty*

---

[1]     *In claiming damages against all of the defendants, the Havlish Plaintiffs relied exclusively on the FSIA* – "Damages available under the FSIA-created cause of action include "economic damages, solatium, pain and suffering, and punitive damages," (Brief at 5) – even though the FSIA clearly does not provide a cause of action in favor of the *Havlish* Plaintiffs against the Taliban.  No attempt was made in their judgment application to distinguish between the claims asserted against Sovereign Defendants (FSIA claims) and the claims asserted against the Taliban, a Non-Sovereign Defendant (on a traditional state tort claim), nor was any attempt made to justify the requested damage awards under applicable state law.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  12/01/2022
```

**03-MD-01570 (GBD)(SN)**

**ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

    To aid in resolving default judgment motions against the Taliban, the Court requests

briefing on two questions.

    1.  Who qualifies as a proper plaintiff in a federal claim against the Taliban?

    2.  Should the Court *sua sponte* invoke the statute of limitations for claims against the
       Taliban?

    Any party wishing to address these issues shall file a brief of no more than 15 pages,

double-spaced, by December 22, 2022.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:     December 1, 2022
            New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBN)(SN) ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)
(and member case *Burlingame v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN))

and ALL Wrongful Death Cases

**MEMORANDUM OF POINTS & AUTHORITIES
REGARDING LAW TO BE APPLIED IN WRONGFUL DEATH
<u>DEFAULT JUDGMENT APPLICATIONS AGAINST THE TALIBAN</u>**

LAW OFFICE OF JOHN F. SCHUTTY, P.C.
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 20 of 186
A207
Case 1:03-md-01570-GBD-SN   Document 8814   Filed 12/22/22   Page 2 of 20

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

STATEMENT OF FACTS ........................................................................................................ 1

The Wrongful Death Claims Asserted Against the Taliban ................................................... 2

A. Information Needed from Each Wrongful Death Plaintiff........................................... 3

B. State Law on Estate Administration Must Not Be Ignored........................................ 4

I.   STATE LAW CLAIMS:  APPLICABLE STATE LAW REQUIRES THAT WRONGFUL
     DEATH CLAIMS BE BROUGHT BY "PERSONAL REPRESENTATIVES" & THAT
     "HEIRS" OF AN ESTATE BE STRICTLY LIMITED BY STATUTE............................... 5

II.  FEDERAL LAW CLAIMS:  THE ANTI-TERRORISM ACT IS SILENT AS TO  WHICH
     INDIVIDUALS ARE QUALIFIED TO BRING A  WRONGFUL DEATH CLAIM & IT
     FAILS TO DEFINE WHO  QUALIFIES AS "SURVIVORS OR HEIRS": APPLICABLE
     STATE LAW SHOULD BE APPLIED TO FILL THE GAPS ............................................... 5

     "Who qualifies as a proper plaintiff in a federal claim against the Taliban?".......................... 6

     "Should the Court sua sponte invoke the statute of limitations for claims against the
     Taliban?"................................................................................................................................. 11

CONCLUSION.................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Maalouf v. Republic of Iran*,
   306 F.Supp.3d 203 (D.D.C. 2018)........................................................................2

*Arizona v. California*,
   530 U.S. 392 (2000)...........................................................................................12

*Babcock v. Jackson*,
   12 N.Y.2d 473 (1963) .........................................................................................4

*Bell v. City of Milwaukee*,
   746 F.2d 1205 (7th Cir. 1984) ..........................................................................10

*Bob Jones Univ. v. Simon*,
   416 U.S. 725 (1974)............................................................................................6

*Brandon v. Travelers Ins. Co.*,
   18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan
   Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009))..............................7

*Brazier v. Cherry*,
   293 F.2d 401 (5th Cir. 1961) ............................................................................10

*Maalouf v. Republic of Iran*,
   923 F.3d 1095 (D.C. Cir. 2019) ..........................................................................2

*Carter v. City of Emporia*,
   543 F. Supp. 354 (D. Kan. 1982) ......................................................................10

*Cooney v. Osgood Mach.*,
   81 N.Y.2d 66 (1993) ...........................................................................................4

*County of Suffolk v. Long Island Lighting Co.*,
   728 F.2d 52 (2d Cir. 1984)..................................................................................9

*De Sylva v. Ballentine*,
   351 U.S. 570, 76 S. Ct. 974, 100 L. Ed. 1415 (1956)........................................7

*Dragan v. Miller*,
   679 F.2d 712 (7th Cir. 1982) .........................................................................8, 10

*Environmental Encapsulating Corp. v. City of New York*,
   855 F.2d 48 (2d Cir. 1988)..................................................................................9

*Eriline Co. S.A. v. Johnson,*
    440 F.3d 648 (4th Cir. 2006) ..................................................................................13

*Florida Lime Avocado Growers, Inc. v. Paul,*
    373 U.S. 132 (1963)..................................................................................................9

*Freightliner Corp. v. Myrick,*
    514 U.S. 280 (1995)................................................................................................10

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran,*
    313 F. Supp. 3d 50 (D.D.C. 2018) ...........................................................................6

*Hardy v. New York City Health & Hosp. Corp.,*
    164 F.3d 789 (2d Cir. 1999)......................................................................................7

*Hines v. Davidowitz,*
    312 U.S. 52 (1941)....................................................................................................9

*Huang v. Lee,*
    734 F.Supp. 71 (E.D.N.Y.1990) ...............................................................................9

*Kamen v. Kemper Financial Servs., Inc.,*
    500 U.S. 90 (1991)....................................................................................................7

*Knox v. Palestine Liberation Organization,*
    442 F. Supp. 2d 62 (S.D.N.Y. 2006)......................................................................6, 7

*Lassiter v. City of Phila.,*
    716 F.3d 53 (3d Cir. 2013)......................................................................................13

*Leonhard v. United States,*
    633 F.2d 599 (2d Cir. 1980)................................................................................12, 13

*Link v. Wabash R.R. Co.,*
    370 U.S. 626 (1962)................................................................................................12

*Markham v. Allen,*
    326 U.S. 490 (1946)............................................................................................8, 10

*Nice v. Centennial Area School Dist.,*
    98 F. Supp. 2d 665 (E.D. Pa. 2000) .........................................................................7

*Pino v. Ryan,*
    49 F.3d 51 (2d Cir. 1995) .......................................................................................13

*Robins v. Rarback,*
    325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974 (1965)............................13

iv

*Sager v. City of Woodland Park,*
    543 F. Supp. 282 (D. Colo. 1982)..................................................................................10

*Sanchez v. Marquez,*
    457 F. Supp. 359 (D. Colo. 1978)..................................................................................10

*Shiekh v. Republic of Sudan,*
    308 F.Supp.3d 46 (D.D.C. 2018) ....................................................................................2

*Tex. Indus. v. Radcliff Materials,*
    451 U.S. 630 (1981)..........................................................................................................7

*U.S. v. Smith,*
    832 F.2d 774 (2d Cir. 1987)............................................................................................7

*U.S. v. Yazell,*
    282 U.S. 341 (1996)..........................................................................................................7

*United States v. Kimbell Foods, Inc.,*
    440 U.S. 715 (1979)..........................................................................................................9

*Walters v. Indus. and Com. Bank of China,*
    651 F.3d 280 (2d Cir. 2011)......................................................................................2, 13

*Wright v. Rensselaer Cty Jail,*
    771 Fed.Appx. 58 (2d Cir. 2019)..............................................................................12, 13

*Yamaha Motor Corp., U.S.A. v. Calhoun,*
    566 U.S. 199 (1996)..........................................................................................................7

**<u>Statutes</u>**

18 U.S.C. § 2335(a) ............................................................................................................11

42 U.S.C. §§ 1981, 1983, and 1988 ..................................................................................10

Anti-Terrorism Act**,** 18 U.S.C. § 2333..................................................................*pasim*

Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555..................................8

Rules of Decision Act., 28 U.S.C. § 1652 .........................................................................9

N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2 .......................................................8

N.Y. Estate Powers & Trusts Law § 5-4.1 .........................................................................8

N.Y. Estate Powers & Trusts Law § 5-4.2.......................................................................5, 8

N.Y. Estate Powers & Trusts Law § 5-4.4.................................................................8, 11

N.Y. Surr. Ct. Proc. Act § 205(1) ...............................................................................8

Pub. L. No. 114-222, 130 Stat. 852 .............................................................................5

**Other Authorities**

Wright & Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update)..............................7

Wright A. Miller, 5 *Fed. Prac. & Proc* § 1357 (1969)..................................................13

Fed.R.Civ.P. 16(c)(2)(A) ..........................................................................................13

Fed. R. Civ. P. 60(b) ..................................................................................................3

https://www.kreindler.com/Publications/Aviation-Law-10.shtml ..................................8

Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955) .....................9

Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969) ...................................6, 9

S. REP. 102-342 (1992)...............................................................................................6

S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update)................................7

## STATEMENT OF FACTS

In response to a December 1, 2022 Court Order, this Memorandum of Points & Authorities addresses the following questions: (1) "Who qualifies as a proper plaintiff in a federal [wrongful death] claim against the Taliban?" and (2) "Should the Court *sua sponte* invoke the statute of limitations for claims against the Taliban?" *See* ECF MDL#8778.

The undersigned law firm represents the estates of eight 9/11 decedents[1]; a "personal representative," appointed by a New York State Surrogates Court, has appeared to represent each of these eight estates in this litigation; each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against the Taliban,[2] and each personal representative seeks damages only on behalf of the "heirs" of each estate, as that word "heirs" and the phrase "survivors or heirs" is defined by applicable state law (the law of the decedent's domicile).

The Court has advised counsel that it will not "rubber stamp" the Taliban wrongful death default judgment applications and will attempt a degree of "quality control" to ensure fairness in

---

[1]   My clients are not properly represented by the existing "Plaintiffs Executive Committee for Personal Injury & Wrongful Death" ("PI&WD PEC") with respect to the Taliban wrongful death applications because the law firms on this Committee represent both "heirs" recognized under applicable state law, but also "other family members" who are not qualified heirs (or appointed personal representatives) and individuals who have not filed timely claims. In short, surviving spouses and children (qualified heirs under applicable state law) are not properly represented on the Taliban default judgments for wrongful death damages, except through pleas and objections made by my office.

[2]   On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al Qaeda Islamic Army, the Taliban and Muhammad Omar (hereinafter the "*Taliban and Omar* Defendants"), among others. *See* 02-cv-6977 (S.D.N.Y.) ECF 1. That Complaint was consolidated and amended several times. *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465. The *Taliban and Omar* Defendants never answered, and the *Ashton* Plaintiffs thereafter moved for a Certificate of Default and a liability default judgment, which this Court granted on May 12, 2006. ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs' motion, including the *Taliban* and *Omar* Defendants).

the entry, execution and enforcement of any Taliban default judgments.[3]   The Court also has recognized that the claims of many of the plaintiffs are presently "adverse" to one another.

A review of the wrongful death Complaints filed against the Taliban reveals that two viable causes of action have been alleged: (1) a common (state) law claim for wrongful death, and (2) a federal claim arising out of the Anti-Terrorism Act.   Each type of claim will be addressed below.   This brief reiterates a request for a single Order from the Court (applying to all Taliban wrongful death claimants) that determines: (1) who may sue for wrongful death damages (only "personal representatives," as required by state law?), (2) when the wrongful death action must have been filed against the Taliban to be timely (under both state and federal law), and (3) what "heirs" may claim damages in a wrongful death context (does applicable state estate administration law or new, judicially-created federal common law apply to determine eligible "heirs").

### THE WRONGFUL DEATH CLAIMS ASSERTED AGAINST THE TALIBAN

The wrongful death plaintiffs asserting claims against the Taliban must "proceed on equal footing" *based on applicable law*.[4]   Today, however, the PEC firms are pursuing wrongful death

---

[3]     Where a limited fund of money may exist in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained.   The docket of the court would otherwise become a "blank-check-writing" enterprise for untested claims, rather than a court of law.  *See, e.g., Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), and *Maalouf v. Republic of Iran*, 306 F.Supp.3d 203, 211 (D.D.C. 2018) ("without some policing of time limits, plaintiffs may seek to exploit prior decisions finding nations liable for certain conduct to later pursue large damage awards decades after the fact . . . In this way, plaintiffs can continue piggybacking off of older decisions for decades to extract multimillion dollar judgments from absent sovereigns . . . As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizeable damage awards for decades in response to a single act."), *Shiekh* and *Maalouf* both rev'd on other grounds by, *Maalouf v. Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant in default).   This Court, based on the objections of "personal representatives" and proper "heirs," is not acting *sua sponte*.   Moreover, the Second Circuit clearly supports *sua sponte* dismissals based on the statute of limitations. *Walters v. Indus. and Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011).

damage claims, on behalf of "new" plaintiffs (additional family members) in violation of applicable state law by: (1) requesting death damages for family members personally, who are not represented by a state-appointed personal representative, (2) requesting damages on behalf of non-heir individuals in violation of estate administration laws, and (3) adding additional non-heir family members to the litigation long after the statute of limitations for wrongful death has expired. The undeniable conflict between state wrongful death law and the federal (judicially-created) common law urged by the PEC must be addressed and properly resolved in one MDL Order, rather than evaluated through a plethora of individual default judgment orders.

### A. Information Needed from Each Wrongful Death Plaintiff

A July 11, 2022 Court Order required, among other things, that every plaintiff identify when they were added to the Complaint "against the relevant defendant" (p. 4). As a starter, this

---

4    The Court will recall that the Law Office of John F. Schutty, P.C. has sought leave to file a Fed. R. Civ. P. 60(b) motion to vacate the wrongful death default judgment obtained by the *Havlish* plaintiffs – on the ground that this default judgment was rendered without regard to the actual scheme of liability pled by those plaintiffs (common law, and not the FSIA). For the convenience of the Court, reference is made to my prior letter to the Court on this subject (Case 1:03-cv-09848-GBD-SN, Document 615 Filed 04/20/22). In claiming damages against ALL of the defendants, the *Havlish* Plaintiffs relied exclusively on the FSIA – "Damages available under the FSIA-created cause of action include 'economic damages, solatium, pain and suffering, and punitive damages'" – even though the FSIA clearly does not provide a cause of action in favor of the *Havlish* Plaintiffs against the Taliban. *Havlish* Plaintiffs' Damages Inquest Memorandum (ECF#301 Filed February 14, 2012) at 5. At an April 26, 2022 hearing, Judge Netburn stated on this subject: "I'll just note that I've received your letter application. I haven't acted on it. We will shortly." April 26, 2022 Transcript at 34. At this same hearing, Judge Daniels stated: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues – the issues of the availability of funds, and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side – anyone who disagrees with your position – be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard." April 26, 2022 Transcript at 37-38. Vacating the defective *Havlish* default judgment would have the beneficial effect of placing all viable wrongful death claims "on equal footing." In drafting the ATA, it is noteworthy that the Treasury and State Departments expressed concern about a few ATA claimants racing to the courthouse ahead of other worthy claimants: "We are also deeply concerned that the proposed legislation would frustrate equity among U.S. nationals with claims against terrorism-list states. It would create a winner-take-all race to the courthouse, arbitrarily permitting recovery for the first, or first few, claimants from limited available assets, leaving other similarly-situated claimants with no recovery at all. In fact, it would take away assets potentially available to them." H. Rept. 106-733 - JUSTICE FOR VICTIMS OF TERRORISM ACT 106th Congress (1999-2000), Agency Views, Item 3.

is helpful, but two more items should be identified by each plaintiff claiming wrongful death damages against the Taliban:

1. Whether that plaintiff has been appointed the personal representative of the decedent's estate (and, if so, provide proof of that appointment); and

2. The relationship of each plaintiff to the decedent, *viz.*, whether the plaintiff qualifies as an "heir" under the estate administration law (and wrongful death law) of the state where the decedent was domiciled at the time of his/her death.

The Court has already been inundated with very diverse filings by the numerous law firms pursuing Taliban death claims. One Order of the Court can simplify the default judgment process and clean up the docket. As things stand now, any family member can file a wrongful death claim, decades after the death of their decedent, as long as some family member has previously filed a timely claim – this is wrong. When dealing with any defaulting defendant, some "adversary" party needs to advise the Court when certain plaintiffs, lacking standing and timely claims, seek money from a "limited fund," or those invalid claims will take money from court-authorized plaintiffs with timely, long-standing claims.

**B. State Law on Estate Administration Must Not Be Ignored**

A cursory review of the many Complaints filed by plaintiffs against the Taliban indicates that there are two viable causes of action asserted against this defendant: (1) a cause of action provided by the Anti-Terrorism Act, and (2) a common law cause of action for wrongful death based on state law. State law applies to each claim for the reasons stated below.[5]

---

[5] New York's choice of law analysis, commonly referred to as an "interest analysis," focuses on determining which jurisdiction, "because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Cooney v. Osgood Mach.*, 81 N.Y.2d 66 (1993), *quoting Babcock v. Jackson*, 12 N.Y.2d 473 (1963). Typically, the domicile of the defendant has the greatest interest in the resolution of a wrongful death action.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 29 of 186
**A216**
Case 1:03-md-01570-GBD-SN   Document 8814   Filed 12/22/22   Page 11 of 20

I.     **STATE LAW CLAIMS:  APPLICABLE STATE LAW REQUIRES THAT WRONGFUL DEATH CLAIMS BE BROUGHT BY "PERSONAL REPRESENTATIVES" & THAT "HEIRS" OF AN ESTATE BE STRICTLY LIMITED BY STATUTE**

The state law (*e.g.*, NY, NJ and CT) governing most of the wrongful death claims (estate administration law) shows that, each such state's laws: (1) requires that the plaintiff be an appointed personal representative of the decedent's estate, (2) strictly defines, by statute, which family members qualify as "heirs" of the decedent (*viz.,* who is entitled to a distribution of a wrongful death award), and (3) requires that the wrongful death action be filed by the personal representative within two years of the decedent's death (EPTL 5-4.2).  *See* page 8 below, and fn. 13 below.  Thus, each Plaintiff asserting a state law claim for wrongful death against the Taliban must establish that they are an authorized "personal representative" of the decedent's estate and that they have filed their action within two years of September 11, 2001.

II.    **FEDERAL LAW CLAIMS: THE ANTI-TERRORISM ACT IS SILENT AS TO WHICH INDIVIDUALS ARE QUALIFIED TO BRING A WRONGFUL DEATH CLAIM & IT FAILS TO DEFINE WHO  QUALIFIES AS "SURVIVORS OR HEIRS": APPLICABLE STATE LAW SHOULD BE APPLIED TO FILL THE GAPS**

The other wrongful death claim asserted against the Taliban is the federal cause of action created by the Anti-Terrorism Act ("ATA")**,** 18 U.S.C. § 2333, which provides (emphasis added):

> **Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.[6]

---

[6]    In 2016, the "Justice Against Sponsors of Terrorism Act" (JASTA), Pub. L. No. 114-222, 130 Stat. 852, amended the ATA to provide that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism."  The applicability of the ATA and JASTA, as a viable cause of action against the Taliban, is not in dispute.  The legislative history and subsequent court decisions show, however, that the focus of the ATA has always been on "who may be sued," rather than on "who may sue" for wrongful death.

In the event of a death resulting from an act of international terrorism, this ATA cause of action is *silent* as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs,"[7] and is *silent* as to which individuals may pursue a claim for wrongful death.[8]  The legislative history that the undersigned has been able to secure shows that the ATA's framers were focused primarily on punishing terrorists and not on setting up a full and complete liability remedy (by specifying who might recover wrongful death damages).[9]

**"Who qualifies as a proper plaintiff in a federal claim against the Taliban?"**

In the default judgment applications filed against the Taliban, the PI&WD PEC attorneys have claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA[10]) is applicable; in turn, the PEC has implicitly suggested that the MDL Court here could wholly ignore the interests and laws of the decedents' domiciles (state

---

[7]   "The ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law." *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under the ATA).

[8]   When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[9]   "This section [ATA] creates the right of action, allowing any U.S. national who has been injured in his person, property, or business by an act of international terrorism to bring an appropriate action in a U.S. district court. *The substance of such an action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.* This bill opens the courthouse door to victims of international terrorism."  S. REP. 102-342 *45 (1992) (emphasis added).

[10]   These D.C. cases, are not only not binding precedent in this district, they also lack true "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign in a non-state (D.C.).  *See, e.g., Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran,* 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").

law) regarding wrongful death estate administration and wholly ignore federal precedent that

frowns upon the creation of federal common law.[11]   Significantly, no precedent exists within the

District Court (S.D.N.Y.) or the governing Circuit (Second) to support the PEC's position, and

no court previously has resolved the undeniable conflict present here between state law and the

federal common law promoted by the PEC.[12]   At a recent conference, a member of the PEC

asserted that there is a 'great amount' of precedent surrounding the interpretation of the ATA's

cause of action for wrongful death.   That simply is not the case and there are certainly no

---

[11]      *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting
of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common
law.").   "The Supreme Court has put increasing emphasis on the notion that when determining the content of
federal common law, forum state law should be adopted as federal law absent some good reason to displace
it."  Wright & Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update).   A federal court has
discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.
*Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d
Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with
adequate protection of federal interests).   When federal law does not expressly establish the legal rule for a
federal question case, a federal court should borrow state law to fill the gap in the statutory scheme so long as
the state rule does not impinge upon any federal interest.   Particularly in the area of family relationships and
domestic relations, a federal court should defer to the well-established law of the several states.   *Nice v.
Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).   *See also De Sylva v. Ballentine*, 351 U.S.
570, 580–581 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the
owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a
federal right is, of course, a federal question, but that does not mean that its content is not to be determined by
state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there
is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper,
therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon
v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct
enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r
for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 566
U.S. 199, 116 S.Ct 619, 627 (1996) (legislative intent would be more closely served by preserving the
application of state statutes to deaths within territorial waters where the victims are not persons covered by
federal legislation providing a uniformly applied and comprehensive tort recovery regime); *Kamen v. Kemper
Financial Servs., Inc.*, 500 U.S. 90 (1991) (federal courts should incorporate forum state law as the federal rule
unless the application of the particular state law would frustrate specific federal objectives); *U.S. v. Yazell*, 282
U.S. 341, 352 (1996) ("theory and the precedents of this Court teach us solicitude for state interests,
particularly in the field of family and family-property arrangements").   "[T]here is no federal common-law or
statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful
death."  S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

[12]      *But see Knox v. Palestine Liberation Organization*, 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court
properly applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under
the ATA).   This Court must carefully parse any "precedent" allegedly supporting the PEC's claim that
individuals other than widows and children can recover wrongful death damages – did these other courts
employ a choice of law analysis in determining who qualifies as a "survivor" or "heir" of the decedent?

decisions resolving the conflict between state estate administration law and the proposed federal common law proposed by the PEC.

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents.  In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.  *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.[13]   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings.  *Id*.  Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful death on behalf of a decedent's estate.[14]  *Id.*, § 5-4.1.  Finally, the New York State Surrogate's Court has jurisdiction over the estate of any decedent who was a domiciliary of New York at the time of his or her death to ensure that the estate administration laws are followed.  S*ee* N.Y. Surr. Ct. Proc. Act § 205(1).  Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate"[15] (*e.g.*, parents and siblings,

---

[13]   In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative. *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq.*, and § 52-555.  State wrongful death claims must be brought within two years.  *See, e.g.*, EPTL § 5-4.2.

[14]   "It is settled beyond any doubt that under the New York wrongful death statute the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate, who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries."  https://www.kreindler.com/Publications/Aviation-Law-10.shtml.

[15]   In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – states

where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, expressly violates New York State law.[16]  On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

Moreover, where a federal statute does not provide guidance on an issue relating to estate administration law (like the ATA), reference must be made to applicable state law (here, the law of the decedent's domicile).[17]  Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[18]  *See also* footnote 11.

---

left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

[16]   A state statute "directly conflicts" with federal law when: (1) compliance with both state and federal regulations is a "physical impossibility," *Florida Lime Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); *Environmental Encapsulating Corp. v. City of New York*, 855 F.2d 48, 53 (2d Cir. 1988); or (2) the state law "stands as an obstacle" to the "execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir. 1984).

[17]   The District Court should determine how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler.  When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv. L. Rev. 1512, 1519 (1969).

[18]   28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases); *see also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding that the decedent's domicile has the greatest interest in regulating damages).

Thus, both the common law wrongful death claims and the Anti-Terrorism Act (18 U.S.C. § 2333) claims are subject to applicable state law.  This Court should reach this result since the law of the decedent's domicile has a great interest in the outcome of this litigation and the eventual administration of each estate.  Here, assuming that a decedent was domiciled in New York (the case for all of the *Ashton-Burlingame-Dickey* Plaintiffs represented here), New York State law determines the parameters of each wrongful death claim[19] – *viz.*, who is authorized to pursue the death claim and which "heirs" are entitled to recover.  This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA does not explicitly provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action for money damages as it has done on other federal claims for damages[20]; creating federal common law in such instances,[21] and ignoring otherwise applicable state law, lacks viable precedent.

---

[19]    Again, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the PEC fails to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

[20]    When Congress expressly defines a statute's preemptive reach, and the definition provides "a reliable indicium" of congressional intent as to what should be left to state authority, there is a "reasonable inference" that Congress did not intend to preempt matters beyond that reach.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

[21]    *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit.  *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits.  Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.") (citations omitted).  A similar result should be reached here.

**"Should the Court *sua sponte* invoke the statute of limitations for claims against the Taliban?" Yes.**

The PI&WD PEC has promoted an "unlimited" statute of limitations as against the Taliban, *i.e.*, they have argued that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent against the statute of limitations. *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660. My clients have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other domicile-state law) is the *only* individual authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4 (and similar state statutes governing other death claims), and that individual must file a timely claim.

The ATA originally contained an explicit four-year statute of limitations. 18 U.S.C. § 2335(a). On January 3, 2013, Congress extended the statute of limitations for ATA claims to ten years, allowing plaintiffs to bring those claims until January 2, 2019. Thus, claims filed against the Taliban after January 2, 2019 are undeniably untimely.

Untimely actions, filed by non-heirs under state law, should be dismissed. This objection has, thus far, not been ruled upon (and thousands of parents and siblings – non-heirs – have been added belatedly to this litigation). Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the State of New York, *or a filing by any other family member for that matter*.

The Court has asked counsel to address the question of whether the Court may address this statute of limitations issue *sua sponte*. In fact, the Court here is reacting to objections filed by plaintiffs with adverse interests, so this Court is not truly acting *sua sponte*. *Sua sponte* refers

-11-

to action taken by the court without the prompting of the parties.  Here, the Court will be taking

action on objections filed by plaintiffs with adverse interests.

Moreover, it is now well-established that a district court has the "inherent power" to

dismiss a case *sua sponte* without prompting by an adverse party.  *See, e.g., Link v. Wabash R.R.*

*Co.*, 370 U.S. 626 (1962); [22] *Arizona v. California*, 530 U.S. 392, 412-13 (2000)*; Leonhard v.*

*United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v. Rensselaer Cty Jail,* 771

Fed.Appx. 58, 59-60 (2d Cir. 2019).  These decisions address a district court's power to protect

important institutional interests of the court.  While our judicial system generally relies on a

contest of adversaries, requiring an assertion and contested resolution of an affirmative

defense, a narrow but recognized exception exists when the viability of a subset of plaintiffs'

claims implicates the court's power to protect its own important institutional

interests.  *See Arizona,* 530 U.S. at 412; *Link,* 370 U.S. at 629-31.  In *Link*, the Supreme Court

concluded that a district court possesses the "inherent power" to dismiss a case *sua sponte* for

failure to prosecute, explaining that such authority derives from "the control necessarily vested in

courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases." 370 U.S. at 630-31.  That is the case here, especially where groups of adverse plaintiffs

are now vying for what may be a limited fund of money and thousands of plaintiffs have been

belatedly added to this litigation.  "Quite aside from the interests of the individual parties in a

lawsuit, a district court has an important interest in keeping its docket from becoming clogged

---

[22]        In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for
failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent
undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District
Courts."  *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the
control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious
disposition of cases." *Id.* at 630-31.  A level of control over the docket by this Court is desperately needed
here.

with dormant cases and in ensuring that a party does not use the court as an instrument of fraud or deceit." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4ᵗʰ Cir. 2006).[23]

The Second Circuit has now definitively ruled:

> **The district court has the power to dismiss a complaint sua sponte for failure to state a claim**, *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); *see* 5 C. Wright A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969). **There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds, at least where, as here, the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.** *See* 10 *id.* § 2719.

*Leonhard v. United States*, 633 F.2d 599, 609, n. 11 (2d Cir. 1980) (emphasis added); *see also Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district court can sua sponte dismiss untimely claims where the defense is apparent on the face of the complaint." (italics omitted) (citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as frivolous on statute of limitations grounds); *Walters v. Indus. and Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011) ("district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where "the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted," *citing Leonhard, supra*); *see also* Fed. R. Civ. P. 16(c)(2) ("*Matters for Consideration*. At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues or eliminating frivolous claims or defenses….").[24]

---

[23]    *See also Lassiter v. City of Phila.*, 716 F.3d 53, 55 (3d Cir. 2013) (in raising the statute of limitations *sua sponte*: "Rule 16 of the Federal Rules of Civil Procedure contemplates that a trial court should assume an 'active managerial role' in the litigation process to expedite the efficient disposition of a case. At a Rule 16 conference, a district court 'may consider and take appropriate action' on a broad variety of topics, including 'formulating and simplifying the issues, and eliminating frivolous claims or defenses[.]' Fed.R.Civ.P. 16(c)(2)(A).") (citation omitted).

[24]    This rule should also apply to belated actions filed against the Defendant Islamic Republic of Iran. Any default judgment requested by a plaintiff who filed an action against Iran after January 2, 2019 should be

<u>**CONCLUSION**</u>

The Court should issue a single Order that definitively determines: (1) who has standing/authorization to bring a wrongful death action against the Taliban with due consideration of applicable state law (the state law of the decedent's domicile usually will require the appointment of a "personal representative"), (2) when the wrongful death action must have been filed to satisfy the applicable statute of limitations or laches (to distinguish between "timely" claims and "untimely" claims – two years from date of death for state law claims – by September 11, 2003 – or by January 2, 2019 for ATA claims), and (3) who qualifies as an "heir" (under applicable state law and the ATA).

Dated:   New York, New York
       December 22, 2022

                     Respectfully submitted,

                     By:___*John F. Schutty*_____

                         John F. Schutty, Esq.
                            (JS2173)
                     Law Office of John F. Schutty, P.C.
                     445 Park Avenue, Ninth Floor
                     New York, New York 10022
                     Telephone: (646) 345-1441
                     Fax: (917) 591-5980
                     john@johnschutty.com

---

denied and that action should be dismissed.  This rule should also be applied to any wrongful death actions filed against the Kingdom of Saudi Arabia and the Republic of Sudan.  Accordingly, counsel for the latter two defendants should be asked to weigh in on these issues – to both reduce the existing docket congestion and ensure uniformity of results in this MDL litigation.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**



------------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO GEORGE B. DANIELS, United States District Judge:**

This document relates to:

      <u>Ashton et al. v. al Qaeda Islamic Army, et al.</u>, No. 02-cv-06977
      <u>Burlingame v. Bin Laden, et al.</u>, No. 02-cv-07230
      <u>Bauer et al. v. al Qaeda Islamic Army, et al.</u>, No. 02-cv-07236
      <u>Ashton et al. v. al Qaeda Islamic Army, et al.</u>, No. 18-cv-03353

      Six sets of plaintiffs (collectively, "Plaintiffs") in this multidistrict litigation move for

partial final default judgments against the Taliban and Muhammad Omar ("Omar"). ECF No.

8274, 8298, 8335, 8363, 8386; No. 18-cv-03353, ECF No. 75.[1] The Plaintiffs include the estates

and family members of people killed and individuals who were injured in the 9/11 Attacks. They

assert various federal and state law claims against the Taliban and Omar, who are alleged to have

aided al Qaeda and facilitated the 9/11 Attacks. The Court recommends granting default

judgments and awarding damages as to certain claims against the Taliban and denying all other

motions with leave to re-file.[2]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/15/2023

03-MD-01570 (GBD)(SN)

<u>AMENDED REPORT &</u>
<u>RECOMMENDATION</u>

---

[1] Unless otherwise note, all ECF numbers refer to the main MDL docket, No. 03-md-01570.
[2] This Report & Recommendation solely amends exhibit numbers referenced in ECF No. 8925. Appendix
A no longer includes a proposed correction that Plaintiffs corrected in their amended exhibits.

**BACKGROUND**

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background. Plaintiffs filed a complaint seeking to hold the Taliban and Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court order, ECF No. 445, Plaintiffs served the Taliban and Omar by publication, ECF Nos. 709, 735 (verifications filed March 2005). The publication notices directed defendants to answer the complaints filed on the multidistrict litigation docket at No. 03-md-01570. Id.

After effectuating service, Plaintiffs filed their Sixth Amended Consolidated Master Complaint, the operative complaint for these purposes. ECF No. 1463. Like their previous complaints, it named the Taliban and Omar as defendants and repeated the same factual allegations asserting the bases for jurisdiction and liability. See id. Most Plaintiffs were named in that complaint, but some were substituted or added later. See, e.g., ECF No. 7856.

Eight months later, neither defendant had responded or appeared, so Plaintiffs moved for entry of default. See ECF No. 1782 (moving under Rule 55.1 of the Local Civil Rules of the Southern and Eastern Districts of New York, which governs entry of default). The Court granted that motion on May 12, 2006. ECF No. 1797.

The present motions ask the Court to grant partial final default judgments against the Taliban and Omar in favor of diversely situated plaintiffs—citizens and noncitizens, estate and personal injury plaintiffs, immediate family members and their functional equivalents. See ECF Nos. 8274 (Ashton I motion), 8298 (Burlingame I motion), 8335 (Burlingame II motion), 8363 (Bauer motion), 8386 (Dickey motion); No. 18-cv-03353, ECF No. 75 (Ashton II motion). The Plaintiffs have all been awarded relief against Iran and now seek similar damages against the Taliban and Omar.

## DISCUSSION

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. This process includes "two steps"—determining that the defendant defaulted and then entering a default judgment. Nationsbank of Fla. v. Banco Exterior de Espana, 867 F. Supp. 167, 274 n. 9 (S.D.N.Y. 1994); see Fed. R. Civ. P. 55(a), (b).

Step one has long been satisfied. The Taliban and Omar were properly served but have not appeared in this case. See ECF Nos. 709, 735. The Court determined that they defaulted in 2006. ECF No. 1797. This default applies even to Plaintiffs added later. See, e.g., ECF No. 5234 (explaining that plaintiffs added by notice of amendment "need not re-serve defendants who have already been served" and that prior Court orders "shall apply with equal force" to the new plaintiffs).

Step two is now before us. Plaintiffs ask the Court to enter default judgment and award damages against the Taliban and Omar. In defaulting, the defendants admitted "all of the factual allegations of the complaint, except those relating to damages." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The Court must evaluate those admissions to determine whether there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco Constructors, LLC v. Sinacola, Inc., 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); accord Wagstaff-El v. Carlton Press Co., 913 F.2d 56, 57 (2d Cir. 1990). If there is, the Court assesses damages, relying on Plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); accord Overcash v. United Abstract Grp., Inc., 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008); see Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1992).

The Court evaluates separately claims: (1) against Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban. I recommend denying without prejudice all claims against Omar and claims against the Taliban brought by noncitizens. I recommend granting judgment against the Taliban on claims brought by U.S. citizens with damages consistent with previous awards against Iran.

**I.      The Court Recommends Denying All Motions for Default Judgments Against Omar**

Plaintiffs' claims against Omar are not viable. Omar is dead, and the PECs do not intend to substitute any party for him. See ECF Nos. 8535, 8540. The Court determined in a prior Report and Recommendation that all claims against Omar should be dismissed without prejudice. ECF No. 8540. No party objected. In line with that Report, the Court recommends denying Plaintiffs' motions for default judgment against Omar. See Floors-N-More, Inc. v. Freight Liquidators, 142 F. Supp. 2d 496, 503 (S.D.N.Y. 2001) (dismissing complaint rather than entertaining default judgment because "'a default should not be entered when it would be promptly set aside'" (quoting Fed. R. Civ. P. 55(c))).

**II.     The Court Recommends Denying Noncitizens' Motions for Default Judgment**

The Court next turns to motions for default judgment brought by noncitizens' estates and noncitizen solatium plaintiffs ("noncitizen plaintiffs") against the Taliban. ECF Nos. 8274, 8298, 8335, 8363. In various places, noncitizen plaintiffs cite causes of action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(5), (a)(7) (now codified at § 1605A), the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note, and state law. ECF No. 8335 at 3–4; see also ECF No. 8275-4 at 2–4 (listing the TVPA, FSIA, and state law as bases for claims by noncitizens). The complaint, however, includes only three of these grounds: the ATA

(Count Five), the TVPA (Count Four), and state law (Counts One, Two, and Three). ECF No. 1463 at ¶¶ 463–83.

The ATA permits claims only by an injured "national of the United States . . . or his or her estate, survivors, or heirs." 18 U.S.C. § 2333(a).[3] And the TVPA permits claims only against individuals. 28 U.S.C. § 1350 note. See Mohamad v. Palestinian Auth., 566 U.S. 449, 461 (2012) ("The text of the TVPA . . . d[oes] not extend liability to organizations, sovereign or not."). As such, neither statute authorizes claims by these plaintiffs (noncitizens' estates or noncitizen solatium plaintiffs) against the Taliban (an "unincorporated association"). ECF No. 1493 at ¶ 10.

That leaves state law. The noncitizen plaintiffs assert three claims under state tort law: "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery." ECF No. 1463 at ¶¶ 463–75. The noncitizen plaintiffs do not, however, indicate which state's law applies to which claims or what damages are available for each cause of action.[4] See, e.g., ECF No. 8275-4 at 2–3 (listing noncitizen plaintiffs without indicating cause of action). Without identifying the specific "causes of action for which the plaintiffs seek damages," the Court is unable to determine with certainty the appropriate damages for each noncitizen plaintiff. ECF No. 8198 (listing requirements for renewed motions for default judgment).

The Court therefore recommends DENYING the motions brought by noncitizen plaintiffs and directing them to re-file. In accordance with prior Court orders, renewed motions should

---

[3] Courts disagree about whether § 2333 permits noncitizens to bring solatium claims where their decedent family members were U.S. citizens. See Lelchook v. Islamic Republic of Iran, No. 16-cv-07078 (ILG)(RLM), 2020 WL 12656283, at *3–7 (E.D.N.Y. Nov. 23, 2020) (discussing split in authority) *adopted at* 2022 WL 7534195 (Oct. 13, 2022). That question is not presented here because Plaintiffs' exhibits listing noncitizen solatium plaintiffs do not identify the nationalities of the decedents.
[4] The Plaintiffs' citation to judgments against Iran is unhelpful on this front because those claims were based on the FSIA.

include exhibits that designate the cause of action relevant to each request for damages, see ECF

No. 8198, and should additionally indicate the relevant state or federal law authorizing that cause

of action. Further, motions should address the bases for jurisdiction, the allegations in the

complaint establishing liability for each cause of action, and the scope of damages available

under the relevant law.

### III. The Court Recommends Granting Citizens' Motions for Default Judgment Under the ATA

Finally, the Court addresses motions by U.S. citizens ("citizen plaintiffs") for default

judgment against the Taliban. Citizen plaintiffs assert claims pursuant to the ATA, 18 U.S.C.

§ 2333, and other state and federal law. If their motions are granted, they will join a growing

class of people trying to collect judgments from the Taliban. No Taliban funds are currently

available, but the prospect of many judgment creditors vying for limited assets triggered concern

among the Dickey Plaintiffs. They fear that it will be hard to collect on their own judgments if

the Court enters default judgments on behalf of plaintiffs whose claims are, in their view, legally

invalid.

With the goal of allowing every party to be heard and to ensure that the Court is carefully

applying the law in these uncontested motions, the Court permitted supplemental briefing on: (1)

whether the ATA authorizes claims by immediate family members who are not "heirs" under the

relevant state law; and (2) whether the Court should *sua sponte* invoke the statute of limitations

when adjudicating motions for default judgment against the Taliban.

It is within the Court's authority to consider and decide these issues. Who can assert

claims against the Taliban is a threshold inquiry at the default judgment stage—that is, whether

there is "a sufficient basis in the pleadings" to establish defendants' liability. Di Marco

Constructors, 407 F. Supp. 2d at 445. Whether a claim is barred by the statute of limitations is

one of the "three factors" courts can consider when exercising their "discretion" to enter default judgments—namely, the existence of "a meritorious defense." <u>Gunnells v. Teutul</u>, 469 F. Supp. 3d 100, 102–03 (S.D.N.Y. 2020).

### A.    The ATA Authorizes Claims by Immediate Family Members

The ATA permits "any national of the United States" or "his or her estate, survivors, or heirs" to sue for injuries caused by acts of terrorism. 18 U.S.C. § 2333(a). The <u>Dickey</u> Plaintiffs argue that federal law does not sufficiently define who qualifies as "survivors" or "heirs" under the ATA and urge the Court to look to state law to fill in the resulting gap. <u>See</u> ECF No. 8814. The <u>Dickey</u> Plaintiffs, accordingly, assert that only plaintiffs who are "heirs" under applicable state law can bring ATA claims. <u>See id.</u> The PECs argue that the Court should interpret § 2333 in line with other district courts that have interpreted the term "survivors" to encompass immediate family members who might not qualify as legal heirs. <u>See</u> ECF No. 8813. The Court draws on the statute's text, history, and purpose to conclude that immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA.

The plain text of § 2333 dictates that "survivors" include people other than "heirs." A contrary ruling would defy basic rules of statutory construction that direct courts to "give effect . . . to every word Congress used." <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 339 (1979). This alone requires reading "survivors" to include family members who are not considered "heirs" under the relevant estate law.

Several courts agree. In <u>Estates of Ungar ex rel. Strachman v. Palestinian Authority</u>, 304 F. Supp. 2d 232 (D.R.I. 2004), the district court analyzed the text, history, and purpose of § 2333 to hold that the parents and siblings of a person killed in a terrorist attack were entitled to bring claims under the ATA. The court explained, "Congress did not intend that the class of persons able to bring actions pursuant to § 2333(a) should be interpreted narrowly." <u>Id.</u> at 263. By

"including the term 'survivors,'" it "evidenced an intention" to extend liability to "family members who are not legal heirs." Id. In adopting Ungar's analysis, the district court in Knox v. Palestine Liberation Organization, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006), emphasized that the "legislative history of the ATA and the underlying purpose of the ATA to deter and punish acts of international terrorism" supports including parents and siblings in "survivors." See also Est. of Henkin v. Kuveyt Turk Katilim Bankasi, A.S., 495 F. Supp. 3d 144, 152 (E.D.N.Y. 2020) (clarifying that § 2333 does not limit a family to a single suit brought by either the injured person, his estate, his heir, or his survivor).

Linking the interpretation of § 2333 to state law would also prevent the ATA from providing uniform access to the federal courts. Through the ATA and similar causes of action, Congress aimed to "provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief" for injuries from terrorist acts. 28 U.S.C. § 2333 note. That goal is inconsistent with an interpretation of § 2333 that depends on states' estate law, which varies in breadth and application.

For these reasons, the Court holds that people directly injured, estates and heirs of people killed, and immediate family members (and functional equivalents of immediate family members) of people killed in the 9/11 Attacks can all bring claims under § 2333.

**B.      The Court Will Not Invoke the Statute of Limitations *Sua Sponte***

On January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 Attacks to January 2, 2019. See National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). The Dickey Plaintiffs ask the Court to reject motions for default judgment from plaintiffs who filed their claims after that date. Typically, such a request would come from a defendant. After all, the statute of limitations is "an affirmative defense that is waived if not raised." Kropelnicki v. Siegel, 290 F.3d 118, 130 n.7 (2d

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 47 of 186
**A234**
Case 1:03-md-01570-GBD-SN   Document 8929   Filed 03/15/23   Page 9 of 17

Cir. 2002). Here, in the default posture, the Court must decide whether to invoke the statute of limitations *sua sponte*.

The Court of Appeals for the D.C. Circuit has authoritatively addressed this issue and held that it is reversable error for a district court to invoke the statute of limitations on behalf of a defaulting defendant in the terrorism context. In Maalouf v. Islamic Republic of Iran, 923 F.3 1095, 1114–15 (D.C. Cir. 2019), the court held that the district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations" to dismiss cases brought under the FSIA. Its reasoning is consistent with precedent from the Court of Appeals for the Second Circuit, which recognizes that "district court[s] ordinarily should not raise [the statute of limitations] sua sponte," Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, Sec. & Exch. Comm'n v. Amerindo Inv. Advisors, 639 F. App'x 752, 754 (2d Cir. 2016). See also Davis, 810 F.2d at 45 (finding "an error of law" where district court raised statute of limitations *sua sponte*). Accordingly, the Court declines to dismiss *sua sponte* claims against the Taliban as time-barred.[5]

**C.    The Court's Jurisdiction Is Sufficient for Default Judgment**

The Court has subject matter jurisdiction over ATA claims under § 2333(a). Sokolow v. Palestine Liberation Org., 583 F. Supp. 2d 451, 455 (S.D.N.Y. 2008). Default judgment is therefore appropriate for these claims. See Bracken v. MH Pillars Inc., 290 F. Supp. 3d 258, 268 (S.D.N.Y 2017) (dismissing rather than granting default judgment where court lacked subject matter jurisdiction).

---

[5] The Dickey Plaintiffs contend that such dismissal would not be on the Court's own motion (that is, *sua sponte*) because they are raising it. While the Court concludes that it is appropriate to confirm its own authority before entering default judgments, for the reasons stated by the PECs, the Dickey Plaintiffs do not have standing to assert the Taliban's defense against other parties.

The Court need not establish its personal jurisdiction over the Taliban before entering

default judgment. Personal jurisdiction protects an individual right that can be "purposely waived

or inadvertently forfeited" by a defendant (much like the statute of limitations). City of New

York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011). Where no defendant

appears, the Court of Appeals does not require courts to analyze personal jurisdiction before

granting default judgment. Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d

207, 213, 213 n. 7 (2d Cir. 2010) (holding that courts "may" analyze personal jurisdiction but

leaving open the question whether they "*must*" do so before entering default judgment). Here, the

Court is "skeptical" that addressing personal jurisdiction "without the benefit of adversarial

briefing" would "actually preserve[] judicial resources." CKR Law LLP v. Anderson Invs. Int'l,

LLC, 544 F. Supp. 3d 474, 480 (S.D.N.Y. 2021) (declining to analyze personal jurisdiction). It

therefore declines to decide whether it has jurisdiction over the Taliban in this context.

If the Court were required to reach the issue, Plaintiffs' allegations offer a "prima facie"

case that the Taliban is subject to the Court's jurisdiction. Mwani v. bin Laden, 417 F.3d 1, 6

(D.C. Cir. 2005) (explaining that courts within the D.C. Circuit must establish "prima facie"

jurisdiction before entering default judgment). To begin, Plaintiffs describe the Taliban as a non-

sovereign "unincorporated association," so the jurisdictional requirements of the FSIA would not

apply.[6] As with all non-sovereign defendants, the Taliban is subject to the Court's jurisdiction if

(1) it was properly served; (2) there is a statutory basis for personal jurisdiction; and (3) the

_____

[6] The Court treats the Taliban as a non-sovereign defendant for two additional reasons. First, "[a] defendant seeking to invoke the FSIA's protections must make a *prima facie* showing that it is a foreign sovereign," which the Taliban has failed to do. Beierwaltes v. L'Office Federale De La Culture D LA Confederation Suisse, 999 F.3d 808, 817 (2d Cir. 2021). Second, the United States has not recognized the Taliban as the government of Afghanistan, and the judicial branch cannot do so. See ECF No. 8866 at 22–29.

exercise of jurisdiction is consistent with due process. Esso Expl. & Prod. Nigeria Ltd. v.

Nigerian Nat'l Petroleum Corp., 40 F.4th 56, 69 (2d Cir. 2022). Plaintiffs meet the first prong

because they served the Taliban by publication pursuant to the Court's order. ECF Nos. 445,

709, 735. They meet the second under either a state long-arm statute or Rule 4(k). Cf. ECF No.

8911 at 14–16 (discussing interplay between state long-arm statutes and Rule 4(k)). And they

meet the third with allegations that the Taliban "supplied material and logistical support to AL

QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of

American and murder U.S. citizens." ECF No. 1463 at ¶ 11. That is the type of "intentional, and

allegedly tortious," conduct "expressly aimed" at the United States that would satisfy due

process. In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008). Collectively,

these allegations create a *prima facie* case for personal jurisdiction. Jurisdiction poses no barrier

to granting default judgment.

### D.   Plaintiffs' Allegations Establish the Taliban's Liability

Section 2333 creates both primary and aiding-and-abetting liability for non-sovereign

defendants. A defendant is subject to primary liability under § 2333(a) if he engaged in unlawful

acts of international terrorism that proximately caused the plaintiff's injuries. Lelchook v.

Islamic Republic of Iran, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019). International terrorism

"involve[s] violent acts or acts dangerous to human life that are a violation of the criminal laws";

"appear to be intended" "to intimidate or coerce a civilian population," "influence the policy of a

government by intimidation or coercion," or "affect the conduct of a government by mass

destruction, assassination, or kidnapping"; and "occur primarily outside" the U.S. or "transcend

national boundaries." 18 U.S.C. § 2331(1). As such, "material support to a known terrorist

organization" can trigger liability if that material support "involve[ed] violence or endangering

human life" and "appear[ed] intended to intimidate or coerce civilian populations or to influence or affect governments." Linde v. Arab Bank, PLC, 882 F.3d 314, 332 (2d Cir. 2018).

Alternatively, a defendant is subject to aiding-and-abetting liability under § 2333(d)(2) if: (i) he "'aid[ed]'" the designated foreign terrorism organization whose act of terrorism caused the plaintiff's injury; (ii) he was "'generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance'"; and (iii) he "'knowingly and substantially assist[ed]'" the act of terrorism. Honickman v. BLOM Bank SAL, 6 F.4th 487, 494 (2d Cir. 2021) (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983)); see also 18 U.S.C. § 2333(d)(2).

Plaintiffs' allegations, taken as true, satisfy both theories. They allege that the Taliban "supplied material and logistical support to AL QAEDA and BIN LADEN in furtherance of their terrorist plans to attack the United States of American and murder U.S. citizens." ECF No. 1463 at ¶ 11. The Taliban was so "closely linked" with al Qaeda that bin Laden allegedly served as "the *de facto* head of TALIBAN intelligence and security." Id. at ¶ 12. It allegedly provided bin Laden with the resources to "construct and maintain camps in Afghanistan and train AL QAEDA members and other terrorists from around the world in the deadly and depraved methods of committing acts of violence, murder, destruction and mayhem." Id. And the Taliban "continued to offer sanctuary to BIN LADEN and AL QAEDA members" after 9/11. Id. By facilitating al Qaeda's terrorist training camps, the Taliban materially supported the 9/11 Attacks in a way that "endanger[ed] human life," was "intended to intimidate or coerce civilian[s]" or their governments, and proximately caused citizen plaintiffs' injuries, such that it is primarily liable under § 2333(a). Linde, 882 F.3d at 332. Those same allegations show the mental state and assistance to a foreign terrorism organization necessary to establish aiding-and-abetting liability

under § 2333(d)(2). See Honickman, 6 F.4th at 494. Based on these liability findings, the Court recommends entering default judgment against the Taliban in favor of citizen plaintiffs.[7]

### E.      Plaintiffs Are Entitled to Treble Damages

All that remains is for the Court to assess damages. The ATA supports "threefold" damages for pain and suffering, economic loss, and loss of solatium. § 2333; see Morris v. Khadr, 415 F. Supp. 2d 1323 (D. Utah 2006) (awarding pain and suffering damages under the ATA); Knox, 442 F. Supp. 2d 62 (same for economic damages); Pescatore v. Palmera Pineda, 345 F. Supp. 3d 68 (D.D.C. 2018) (same for solatium damages).

The Court has previously awarded Plaintiffs these types of damages against Iran. See, e.g., ECF Nos. 3226 (pain and suffering damages), 3296 (economic damages), 3396 (solatium damages), 5954 (pain and suffering for personal injury damages). The Court does not need to re-evaluate the evidence supporting those determinations. It adopts and applies to the Taliban each prior determination of pain and suffering and economic damages for the estates of people killed, pain and suffering damages for people injured, and solatium damages for immediate family members (and the functional equivalents of immediate family members) of people killed in the 9/11 Attacks, as set forth in ECF Nos. 8275-1, 8275-3, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A (calculating appropriate damages for Dickey plaintiffs), subject to the corrections and caveats described in Appendix A. In accordance with § 2333, it also recommends awarding treble damages.

_____

[7] At counsel's request, the Court excludes five plaintiffs from this motion—Diane Genco, Janlyn Scauso, Laurie Spampinato, Kimberly Trudel, and Cella Woo-Yuen. See ECF No. 8660. These plaintiffs' claims will be promptly resolved with the motion for default judgment at ECF No. 8568.

One group of plaintiffs requires the Court to make new findings. The Burlingame II plaintiffs seek economic damages not awarded in connection with any previous default judgment motion. The Court has reviewed the evidence supplied by these plaintiffs and concludes that it supports the requested amounts. Accordingly, the Court recommends awarding economic damages to the plaintiffs as listed in ECF No. 8364-1, and awarding treble damages as provided under § 2333.

## CONCLUSION

The Court recommends GRANTING partial final default judgment as to the U.S. citizen plaintiffs listed in ECF Nos. 8275-1, 8275-3 (other than the five whose claims will be adjudicated with the motion at ECF No. 8568 in accordance with ECF No. 8660), 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A, subject to the corrections and caveats described there. To that end, it recommends:

- awarding these plaintiffs damages as provided in ECF Nos. 8275-1, 8275-3, 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, No. 18-cv-03353 at ECF Nos. 76-1, 76-2, and Appendix A;

- awarding pre-judgment interest assessed at 4.96 percent per annum, compounded annually for the period from September 11, 2001, until the date of the judgment for damages; and

- permitting these plaintiffs to seek punitive, economic, and other appropriate damages at a later date, to the extent such damages were not sought in these motions.

The Court recommends DENYING all other motions with leave to re-file. It further recommends permitting all plaintiffs in these actions to apply for default judgment awards in later stages, to the extent such awards have not already been addressed.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      March 15, 2023
            New York, New York

14

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 53 of 186
**A240**
Case 1:03-md-01570-GBD-SN   Document 8929   Filed 03/15/23   Page 15 of 17

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). These objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**APPENDIX A**

Caveats & Corrections:

The Court was unable to locate the <u>Ashton II</u> Plaintiffs in the complaint at ECF No. 1463. Its recommendation is therefore contingent on counsel providing the Court with the docket number(s) or the page number(s) of the complaint that added them as plaintiffs against the Taliban. Counsel should file this information with 14 days.

The plaintiffs and decedents listed at ECF Nos. 8364-1 at ¶ B-8, 8755-1 at ¶ 41, and 8755-3 at ¶ 32 appear to have been inadvertently switched. Damages should therefore should be awarded to the person named in the decedent's column. Plaintiffs should advise the Court within 14 days if this is incorrect.

| <u>Dickey</u> Plaintiff | Pain & Suffering | Economic | Solatium | Total Compensatory | Treble Damages |
|---|---|---|---|---|---|
| Estate of Joseph Dickey, Jr. | $2,000,000 | $16,022,303.00 | | $18,022.303.00 | $54,066,909.00 |
| Irene Dickey | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Joseph Dickey III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Elizabeth Dickey | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Eaton | $2,000,000 | $20,689,993.00 | | $22,689,993.00 | $68,069,979.00 |
| Jacqueline Eaton | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Estate of James Kelly | $2,000,000 | $19,639,410.00 | | $21,639,410.00 | $64,918,230.00 |
| Joanne Kelly | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Brianne Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kaitlyn Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Colleen Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Erin Kelly | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Timothy O'Brien | $2,000,000 | $94,984,220.00 | | $96,984,220.00 | $290,952,660.00 |
| Lisa O'Brien | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Madeline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Jacqueline O'Brien | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Michael Seaman | $2,000,000 | $15,768,595.00 | | $17,768,595.00 | $53,305,785.00 |
| Dara Seaman | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Michaella Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Mary Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Edward Seaman | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Robert Sliwak | $2,000,000 | $3,698,489.00 | | $5,598,489.00 | $17,095,467.00 |
| Susan Sliwak | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Ryan Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Kyle Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Nicole Sliwak | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of John Wallice, Jr. | $2,000,000 | $16,298,335.00 | | $18,298,335.00 | $54,895,005.00 |
| Allison Wallice | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| John Wallice III | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Christian Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| Patrick Wallice | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Estate of Farrell Lynch | $2,000,000 | $18,289,614.00 | | $20,289,614.00 | $60,868,842.00 |
| Eileen Lynch | | | $12,500,000.00 | $12,500,000.00 | $37,500,000.00 |
| Kathleen Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |
| Meaghan Lynch | | | $8,500,000.00 | $8,500,000.00 | $25,500,000.00 |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
In re:

                  **03-MD-01570 (GBD)(SN)**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**
-----------------------------------------------------------------------X

This document relates to:

  *Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

  AND ALL WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN

**OBJECTIONS TO THE MARCH 15, 2023**
**REPORT & RECOMMENDATION (MDL ECF NO. 8929)**
<u>**RE: WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN**</u>

Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

**TABLE OF CONTENTS**

I.        INTRODUCTION ................................................................................. 1

II.       STANDARD OF REVIEW ................................................................... 2

III.      ARGUMENT ........................................................................................ 2

    A.    The Court Should Resolve the Conflict of Laws Issue Ignored in the March 15
          Report: Does the Law of a Decedent's Domicile (Estate Administration Law)
          Govern the Taliban Wrongful Death Claims or Should State Law Be Ignored in
          Favor of Judicially-Created "Federal Common Law"? ......................................... 2

          1.  State Law on Estate Administration Was Improperly Disregarded ............ 3

              a.  State Law Claims: Applicable State Law Requires that Wrongful
                  Death Claims Against the Taliban Be Brought by "Personal
                  Representatives" Within 2 years of Death & that "Heirs" of an Estate
                  Be Strictly Limited. .............................................................. 4

          2.  Federal Law Claims: the Anti-Terrorism Act ("ATA") Is Silent as to
              Which Individuals Are Qualified to Bring an ATA Wrongful Death Claim
              & the ATA Fails to Define Who Qualifies as "Survivors or Heirs" –
              Applicable State Law Should Have Been Employed to "Fill the Gaps" in
              the Statute, Not a Judicially-Created "Federal Common Law"
              Interpretation of that Phrase ...................................................... 4

              a.  The ATA's explicit text provides no guidance as to which individuals
                  qualify as "survivors or heirs" in claiming wrongful death damages. . 6

              b.  The ATA's legislative history does not help in determining who
                  qualifies as "survivors or heirs." ............................................ 7

              c.  Since the ATA's explicit text and legislative history fail to state which
                  individuals qualify as "survivors or heirs," one must resort to state
                  common law for a "gap filler" ................................................. 9

              d.  The case law precedent cited in the Report does not support the
                  Report's claim that "immediate family members" qualify for wrongful
                  death damages; in fact, the Report's cited cases actually support the
                  argument that the law of the decedent's domicile should be used to
                  define "heirs." ................................................................. 13

    B.    The Court Should Decline to Adopt the Report's Recommendation that No
          Statute of Limitations Will Be Applied to Taliban Claims Because the Dismissal

of Untimely Claims Is Required To Ensure Both Justice & Reasonable Docket Management.......................................................................................................... 17

1.  There Must Always Be a Reasonable End to Litigation.......................... 18

2.  The *Ashton-Dickey* Plaintiffs have standing to assert a statute of limitations defense against untimely claims that will dilute the recoveries of the *Ashton-Dicke*y Plaintiffs. ................................................................. 18

3.  This Court, *sua sponte*, has the right and obligation to dismiss untimely claims to address unusual, but serious institutional issues here............... 25

CONCLUSION.................................................................................................... 33

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**<u>Cases</u>**

*Acosta v. Artuz,*
  221 F.3d 117 (2d Cir. 2000)....................................................................................29

*Adams v. Woods*,
  6 U.S. (2 Cranch) 336 (1804).................................................................................29

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ............................................................................................. 29

*Arizona v. California*,
  530 U.S. 392 (2000).................................................................................18, 26, 29

*Baker v. Cuomo,*
  58 F.3d 814 (2d Cir.), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir.
  1996) (en banc) (per curiam) .................................................................................29

*Bell v. City of Milwaukee,*
  746 F.2d 1205 (7th Cir. 1984) ...............................................................................17

*Bell v. Morrison*,
  26 U.S. (1 Pet.) 351 (1828) (Story, J.) ...................................................................29

*Bettis v. Islamic Republic of Iran,*
  315 F.3d 325 (D.C. Cir 2003) ..................................................................................8

*Bob Jones Univ. v. Simon,*
  416 U.S. 725 (1974)................................................................................................15

*Boim v. Quranic Literacy Inst. & Holy Land Found.*
  291 F.3d 1000 (7th Cir. 2002) .................................................................................8

*Brandon v. Travelers Ins. Co.*,
  18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan
  Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009))...................................9

*Brazier v. Cherry,*
  293 F.2d 401 (5th Cir. 1961) .................................................................................17

*Burnett v. New York Cent. R.R.,*
  380 U.S. 424 (1965)........................................................................................ 29, 32

*Carter v. City of Emporia,*
  543 F. Supp. 354 (D. Kan. 1982)...........................................................................17

iv

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................................19

*Costello v. United States*
    365 US 265 (1961)...................................................................................................32

*Davis v. Bryan*,
    810 F.2d 42 (2d Cir. 1987)..............................................................................17, 28

*Day v. McDonough*,
    547 U.S. 198 (2006)................................................................................................29

*De Sylva v. Ballentine*,
    351 U.S. 570 (1956)..................................................................................................9

*Donell v. Keppers*,
    835 F. Supp. 2d 871 (S.D. Cal. 2011).....................................................................29

*Dragan v. Miller*,
    679 F.2d 712 (7th Cir. 1982) ..................................................................................12

*Eriline Co. S.A. v. Johnson*,
    440 F.3d 648 (4th Cir. 2006) ..................................................................................27

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995)................................................................................................17

*Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*,
    313 F. Supp. 3d 50 (D.D.C. 2018) ..........................................................................15

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
    138 S. Ct. 13 (2017)................................................................................................17

*Hardy v. New York City Health & Hosp. Corp.*,
    164 F.3d 789 (2d Cir. 1999)......................................................................................9

*Huang v. Lee*,
    734 F.Supp. 71 (E.D.N.Y.1990) .............................................................................13

*In re Mentor Corp. Obtape Transobturator Sling Prods.*,
    MDL Docket No. 2004, 2016 U.S. Dist. LEXIS 121608 (M.D. Ga. Sep. 7,
    2016) (Land, J.)......................................................................................................28

*In re World Trade Ctr. Disaster Site Lit.*,
    769 F. Supp. 2d 650 (S.D.N.Y. 2011)..............................................................6, 20

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)....................................................................................32

*J & J Sports Prods., Inc. v. Martinez*,
  2010 WL 1038467 (N.D. Cal. Mar. 2, 2010)..............................................29

*Joe Hand Promotions, Inc. v. Tu Minh Nguyen*,
  2011 WL 1642306 (N.D. Cal. May 2, 2011) ..............................................29

*Kamen v. Kemper Financial Servs., Inc.*,
  500 U.S. 90 (1991)..................................................................................10

*Knox v. Palestine Liberation Organization*,
  442 F. Supp. 2d 62 (S.D.N.Y. 2006)................................................. *passim*

*Lassiter v. City of Phila.*,
  716 F.3d 53 (3d Cir. 2013).......................................................................27

*Leonhard v. United States*,
  633 F.2d 599 (2d Cir. 1980).........................................................26, 27, 28

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962).........................................................................26, 27

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................19

*M'Cluny v. Silliman*,
  28 U.S. (3 Pet.) 270 (1830) .....................................................................30

*Markham v. Allen*,
  326 U.S. 490 (1946)..........................................................................10, 12

*Nice v. Centennial Area School Dist.*,
  98 F. Supp. 2d 665 (E.D. Pa. 2000) ..........................................................9

*O'Melveny & Myers v. FDIC*,
  512 U.S. 79 (1994)..................................................................................16

*Order of R.R. Telegraphers v. Railway Express Agency*,
  321 U.S. 342 (1944)................................................................................29

*Owens v. Taliban*,
  No. 22-cv-1949-VEC (S.D.N.Y.) ...............................................................31

*Pino v. Ryan*,
  49 F.3d 51 (2d Cir. 1995) ........................................................................27

*Rampersad v. Deutsche Bank Sec., Inc.*,
  2004 WL 616132 (S.D.N.Y. Mar. 30, 2004) .............................................29

*Reches v. Morgan Stanley & Co.*,
    No. 16-3294-cv (2d Cir. Apr. 14, 2017) ...................................................................28

*Robins v. Rarback*,
    325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13
    L.Ed.2d 565 (1965) .......................................................................................................27

*Rodriguez v. FDIC*,
    140 S. Ct. 713 (2020) ....................................................................................................16

*Rotella v. Wood*,
    528 U.S. 549 (2000) ......................................................................................................32

*Sager v. City of Woodland Park*,
    543 F. Supp. 282 (D. Colo. 1982) ................................................................................17

*Sanchez v. Marquez*,
    457 F. Supp. 359 (D. Colo. 1978) ................................................................................17

*Shiekh v. Republic of Sudan*,
    308 F.Supp.3d 46 (D.D.C. 2018), *rev'd on other grounds by*, *Maalouf v.*
    *Republic of Iran*, 923 F.3d 1095 (D.C. Cir. 2019) ................................................30, 31

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 ..............................................................................................................19

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ......................................................................................................20

*Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*,
    486 F. App'x 671 (9th Cir. 2012) .................................................................................29

*Tex. Indus. v. Radcliff Materials*,
    451 U.S. 630 (1981) (Burger, C.J.) ..............................................................................11

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020) ..................................................................................................19

*Ungar ex reI. Strachman v. Palestinian Auth.*,
    304 F.Supp.2d 232 (D.R.I. 2004) ..........................................................................14, 15

*U.S. v. Smith*,
    832 F.2d 774 (2d Cir. 1987) ...........................................................................................9

*U.S. v. Yazell*,
    282 U.S. 341 (1996) ......................................................................................................10

*United States v. Kimbell Foods, Inc.*,
    440 U.S. 715 (1979) ................................................................................................13

*United States v. Mitchell*,
    518 F.3d 740 (10th Cir. 2008) ...............................................................................29

*United States v. Olano*,
    507 U.S. 725 (1993) ................................................................................................17

*United States v. Romano*,
    794 F.3d 317 (2d Cir. 2015) ....................................................................................2

*United States v. Western Pac. R.R.*,
    352 U.S. 59 (1956) ..................................................................................................29

*Walters v. Indus. and Com. Bank of China*,
    651 F.3d 280 (2d Cir. 2011) ..................................................................................28

*Wood v. Milyard*,
    566 U.S. 463 (2012) ................................................................................................18

*Wright v. Rensselaer Cty Jail*,
    771 Fed.Appx. 58 (2d Cir. 2019) .....................................................................26, 27

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    566 U.S. 199, 116 S.Ct 619 (1996) ........................................................................10

<u>Statutes</u>

18 U.S.C. § 2333 ...........................................................................................4, 6, 15, 16

28 U.S.C. § 636(b)(1) .........................................................................................................2

28 U.S.C. § 1606 ................................................................................................................8

34 U.S.C. § 20144(d)(3)(A)(i), (e)(6) ..............................................................................22

42 U.S.C. §§ 1981, 1983, and 1988 ................................................................................17

Anti-Terrorism Act ..................................................................................................... passim

Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq*., and § 52-555 ..............................11

Rules of Decision Act., 28 U.S.C. § 1652 ......................................................................13

N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2 ....................................................11

N.Y. Estate Powers & Trusts Law § 5-4.2 ...............................................................4, 11

N.Y. Estate Powers & Trusts Law § 5-4.4.................................................................................11, 30

N.Y. Surr. Ct. Proc. Act § 205(1) ...............................................................................................12

National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, §
    1251(c), 126 Stat. 1632, 2017 (2013) ...............................................................................30

Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506 .........................................................4

Pub. L. No. 114-222, 130 Stat. 852 .............................................................................................5

<u>Other Authorities</u>

137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley).....................8

22 N.Y.C.R.R § 1200.7(a)(1).........................................................................................................6

Bradford R. Clark, "Federal Common Law: A Structural Reinterpretation," 144
    U. Pa. L. Rev. 1245, 1248 (1996) ....................................................................................16

*Cambridge Dictionary* ..................................................................................................................6

Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022) .....................................................19

Fed. R. Civ. P. 16(c)(2)..........................................................................................................27, 28

Fed. R. Civ. P. 72(b)(2)...........................................................................................................1, 33

Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955) ...................13

Ibrahim, Ashraf Ray, "The Doctrine of Laches in International Law," 83 Va. L.
    Rev. 647 (April 1997)........................................................................................................32

Letter from Sen. Grassley and Rep. Goodlatte to Sec'y Tillerson,
    https://www.judiciary.senate.gov/imo/media/doc/2017-09-
    27%20CEG,%20Goodlatte%20to%20Tillerson(Sudan%20Sanctions).pdf ...........................22

New York Rules of Professional Conduct Rule 1.7(a)(1) .............................................................6

Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969) ...............................5, 13

Report from the Special Master at 3, U.S. Victims of State Sponsored Terrorism
    Fund (Aug. 2017),
    http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20Congre
    ssional%20Report%208-2-2017.pdf..................................................................................22

S. REP. 102-342 (1992)................................................................................................................5

S. Pounian, "Aviation Law: Plaintiff's Rights in a Multidistrict Litigation
  Context," https://www.kreindler.com/articles/plaintiff-multidistrict-litigation-
  context ..................................................................................................................12

S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update) .............................10

*The Law Dictionary* .........................................................................................................7

USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php ..................................................22, 23

5 C. Wright A. Miller, *Federal Prac. & Proc.* § 1357 (1969).......................................................27

19 C. Wright & A. Miller, *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019
  update)....................................................................................................................9

### I.     INTRODUCTION

On March 15, 2023, Magistrate Judge Sarah Netburn issued a decision (the "R&R" or the "Report," ECF No. 8929), which addressed certain issues raised by the *Ashton-Dickey* Plaintiffs[1] concerning the law to be applied in the wrongful death actions filed against the Taliban. Pursuant to Fed. R. Civ. P. 72(b), the *Ashton-Dickey* Plaintiffs respectfully object to the March 15 Report as described below.   These Objections are supported by the accompanying Declarations of John F. Schutty, Esq. and Plaintiff Lisa O'Brien, both dated March 28, 2023.

These Fed. R. Civ. P. 72(b)(2) Objections show that the March 15 Report failed to consider fundamental legal defects in many of the Taliban default judgment applications, and these legal defects and issues affect all of the Taliban wrongful death actions filed with this Court, namely: (1) who is authorized to bring a lawsuit for the wrongful death damages claimed, (2) who are the "heirs" entitled to recover wrongful death damages from the Taliban, (3) is there no statute of limitations that will be enforced as to these Taliban death claims, and (4) generally, whether undeniably applicable state estate administration law (providing laws relating to wrongful death damage recovery) may be wholly ignored.   Magistrate Judge Netburn has ruled that no statute of limitations will be applied to the Taliban wrongful death claims (*i.e.*, legal

---

[1]        The undersigned law firm represents the estates of ten 9/11 decedents (*Ashton-Dickey* Plaintiffs); a "personal representative," appointed by a state Surrogates Court, has appeared to represent each of these ten estates in this litigation, and each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against the defendants herein (all timely and viable claims).   We contend that "standing" exists to assert these Objections.   *See* the accompanying Declaration of Plaintiff Lisa O'Brien.   Here, where a limited fund of money may exist in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained in favor of the timely and viable claims.   The docket of the court otherwise becomes a "blank-check-writing" enterprise for untested claims, rather than a court of law.   Here each default judgment entered against the Taliban results in new claims against assets presently held by the Federal Reserve Bank of New York, and these new untimely claims and judgments by "non-heirs" dilute the recoveries of state-authorized heirs who have filed timely legal actions.   *See* pp. 20-25 below.

actions may be filed against the Taliban *ad infinitum*[2]) (R&R at 9), and that this Court's application of "federal common law" allows a total abrogation of the long-established estate administration laws of the states where the 9/11 decedents were domiciled (R&R at 8). The Magistrate Judge reached the latter result even though the legal precedent, text and legislative history surrounding the federal statute in question warrant an application of state law (the estate administration law of the decedent's domicile).

## II.   STANDARD OF REVIEW

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). The *Ashton-Dickey* Plaintiffs, by and through these Objections, respectfully request that the Court decline to adopt the recommendations addressed herein.

## III.   ARGUMENT

### A.   The Court Should Resolve the Conflict of Laws Issue Ignored in the March 15 Report: Does the Law of a Decedent's Domicile (Estate Administration Law) Govern the Taliban Wrongful Death Claims or Should State Law Be Ignored in Favor of Judicially-Created "Federal Common Law"?

A review of the wrongful death Complaints filed against the Taliban reveals that two viable causes of action have been alleged: (1) a common (state) law claim for wrongful death, and (2) a federal claim arising out of the Anti-Terrorism Act. These Objections reiterate a request for a single Order from the Court (applying to all Taliban wrongful death claimants) that determines: (1) who may sue for wrongful death damages (only "personal representatives," as

---

[2]      The Report's finding, that district courts are forbidden from considering whether claims against a defendant-in-default are untimely, has no limiting principle. The Report suggests that there is no time restriction for future plaintiffs to obtain default judgments against a defendant-in-default, no matter how many years or decades have passed since the injury or death. The rule applied by the Magistrate Judge raises the real possibility of litigation "without end."

required by state law), (2) what "heirs" may claim damages in a wrongful death context (does applicable state estate administration law or new, judicially-created federal common law apply to determine eligible "heirs"), and (3) when the wrongful death action must have been filed against the Taliban to be timely (under both state and federal law).   In fact, state law (estate administration laws of most, if not all, of the decedents' domiciles) leads to a very different result than the "federal common law" remedy created and applied by the Magistrate Judge.   The conflict in the laws was, in fact, not properly resolved by the Magistrate Judge.

The PEC firms are pursuing wrongful death damage claims, on behalf of newly-filed plaintiffs' actions (on behalf of so-called "immediate family members" or non-legal heirs) in violation of applicable state law (estate administration law governing the recovery of wrongful death damages) by: (1) requesting death damages for family members personally, who are not represented by a state-appointed personal representative, (2) requesting damages on behalf of non-heir individuals in violation of estate administration laws, and (3) adding additional non-heir family members to the litigation long after the statute of limitations has expired.   The undeniable conflict between state wrongful death law and the federal (judicially-created) common law urged by the PEC has not been acknowledged, nor properly addressed, in the Report.

### 1.   State Law on Estate Administration Was Improperly Disregarded.

A cursory review of the many Complaints filed by plaintiffs against the Taliban indicates that there are two viable causes of action asserted against this defendant: (1) a cause of action provided by the Anti-Terrorism Act, and (2) a common law cause of action for wrongful death based on state law.   State law applies to each claim for the reasons stated below.

  a. **State Law Claims: Applicable State Law Requires that Wrongful Death Claims Against the Taliban Be Brought by "Personal Representatives" Within 2 years of Death & that "Heirs" of an Estate Be Strictly Limited.**

The state law (*e.g.*, NY, NJ and CT) governing most of the Taliban wrongful death claims (estate administration law of the decedent's domicile based on choice of law principles) shows that, each such state's laws: (1) requires that the plaintiff be an appointed "personal representative" of the decedent's estate, (2) strictly defines, by statute, which family members qualify as "heirs" of the decedent (*viz.,* who is entitled to a distribution of any wrongful death award), and (3) requires that the wrongful death action be filed by the personal representative within two years of the decedent's death (*e.g.,* EPTL 5-4.2).  *See* pages 11-12 below, and fn. 12 below.  Thus, each plaintiff asserting a state law claim for wrongful death against the Taliban must establish that they are an authorized "personal representative" of the decedent's estate, that they qualify as an heir under the applicable state's estate administration law, and that they have filed their action within two years of September 11, 2001 to satisfy the state law wrongful death statute of limitations.  *See* Schutty Declaration and Summaries of State Law (Ex. A).

  2. **Federal Law Claims: the Anti-Terrorism Act ("ATA") Is Silent as to Which Individuals Are Qualified to Bring an ATA Wrongful Death Claim & the ATA Fails to Define Who Qualifies as "Survivors or Heirs" – Applicable State Law Should Have Been Employed to "Fill the Gaps" in the Statute, Not a Judicially-Created "Federal Common Law" Interpretation of that Phrase.**

The other wrongful death claim asserted against the Taliban is the federal cause of action created by the **Anti-Terrorism Act ("ATA"),**[3] 18 U.S.C. § 2333, which provides (emphasis added):

---

[3] The ATA provides a private right of action for any United States national injured by an act of international terrorism.  18 U.S.C. § 2333 *et seq*., is the civil remedies provision of the Anti-Terrorism Act, added Oct. 29, 1992, Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506, codified as amended.

**Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.[4]

In the event of a death resulting from an act of international terrorism, this ATA cause of action is *silent* as to precisely which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs,"[5] and is *silent* as to which individuals may pursue the ATA claim for wrongful death.[6] The legislative history that the undersigned has been able to secure shows that the ATA's framers were focused primarily on punishing terrorists and not on setting up a full and complete liability remedy (by specifying who might recover wrongful death damages).[7]

The Report wholly fails to acknowledge the *express* conflict between state estate administration law defining "heirs" and the Report's *interpretation* of who is covered by the

---

[4]   In 2016, the "Justice Against Sponsors of Terrorism Act" (JASTA), Pub. L. No. 114-222, 130 Stat. 852, amended the ATA to provide that "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." The applicability of the ATA and JASTA, as a viable cause of action against the Taliban, is not in dispute. The legislative history and subsequent court decisions show, however, that the focus of the ATA has always been on "who may be sued and what should they be required to pay," rather than on "who may sue" for wrongful death.

[5]   "The ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law." *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) (the court applied the estate administration law of the decedent's domicile (Israel) in determining "heirs" under the ATA).

[6]   When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule is to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied." Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[7]   "This section [ATA] creates the right of action, allowing any U.S. national who has been injured in his person, property, or business by an act of international terrorism to bring an appropriate action in a U.S. district court. *The substance of such an action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts.* This bill opens the courthouse door to victims of international terrorism." S. REP. 102-342 *45 (1992) (emphasis added).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 71 of 186
**A258**
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 16 of 43

ATA's "survivors or heirs" phrase – the latter phrase Magistrate Judge Netburn has *interpreted* as necessarily including "parents and siblings" (alleged "immediate family members") of the decedent, who are expressly not state law "heirs" when a decedent is survived by a spouse and children.[8]

The Report claims that its reasoning is supported by "the text, history, and purpose [of the ATA]" and concludes that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA." R&R at 7. In fact, we show below the exact opposite – that the explicit ATA text, the ATA's legislative history, and the purpose of the ATA – do NOT support the Report's conclusion that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA."

> **a. The ATA's explicit text provides no guidance as to which individuals qualify as "survivors or heirs" in claiming wrongful death damages.**

The Report alleges that "[t]he plain text of § 2333 dictates that 'survivors' include people other than 'heirs.'" R&R at 7. This statement is plainly incorrect. "Survivors" is not a legal term and it certainly cannot be interpreted as describing a specific class of individuals. The *Cambridge Dictionary* defines "Survivor" as (1) "a person who continues to live, despite almost

---

[8]    The Report notes that the "PECs argue that the Court should interpret § 2333 in line with other district courts that have interpreted the term 'survivors' to encompass immediate family members who might not qualify as legal heirs. *See* ECF No. 8813." R&R at 7. It is very significant that virtually all the PEC law firms represent "parents and siblings," as well as authorized state law heirs (a hopeless conflict of interest), so these firms have no choice but to argue for the broadest possible definition of "survivors," regardless of whether it is correct or not under the law – to do otherwise would be to commit disloyalty to their "parents and sibling" clients. Rule 1.7(a)(1) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R § 1200.7(a)(1), provides in pertinent part that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." Comment 1 to Rule 1.7 explains "Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests." *See, e.g.*, *In re World Trade Center Disaster Site Lit.*, 769 F. Supp. 2d 650 (S.D.N.Y. 2011) (law firm disqualified by the court, after citing Code of Professional Responsibility Rule 1.7(a), and holding that 59 plaintiffs had legal positions different from other plaintiffs and needed separate advice).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 72 of 186
**A259**
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 17 of 43

dying, (2) a person who is able to continue living his or her life successfully, despite almost dying, or (3) a person's survivors are the members of his or her family who continue to live after he or she has died."   https://dictionary.cambridge.org/us/dictionary/english/survivor.   While clearly the last of the three definitions seems to apply to the phrase as used in the ATA, even that definition is far too vague and broad to be interpreted as limited to "immediate family members" (parents and siblings) as claimed in the Report.   *The Law Dictionary* describes "Survivorship" in a legal manner, but again its definition is so vague and overly broad that it cannot possibly be interpreted to mean "immediate family members": "The living of one of two or more persons after the death of the other or others.   Survivorship is where a person becomes entitled to property by reason of his having survived another person who had an interest in it."   https://thelawdictionary.org/survivorship/#:~:text=The%20living%20of%20one%20of,of%20the%20other%20or%20others.   How the Magistrate Judge determined that the ATA phrase "survivors or heirs" explicitly includes "immediate family members" is not disclosed in the Report, but the phrase certainly *cannot* be said to be explicitly inclusive of "immediate family members" (inclusive of parents and siblings, but not, for example, grandparents, cousins and others).   The Report's finding in this regard is absolutely contrary to another decision in this district: "[t]he ATA does not define the terms 'survivors' or 'heirs,' terms that are usually defined by state law."   *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006).   Since "survivor" is not defined by the ATA, it clearly can mean the same thing as "heirs," and the phrase requires a legal "gap filler" to determine precisely who qualifies.

   **b.   The ATA's legislative history does not help in determining who qualifies as "survivors or heirs."**

   The ATA's legislative history also does not support the Report's finding that someone other than a "legal heir" is entitled to recover ATA wrongful death damages, since the legislative

history states that "[t]*he substance of such an [ATA] action is not defined by the statute, because the fact patterns giving rise to such suits will be as varied and numerous as those found in the law of torts." See* footnote 7.[9]   Congress sought only "to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law." *Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000, 1010 (7th Cir. 2002); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (The ATA accords victims of terrorism "the remedies of American tort law, including treble damages and attorney's fees.").   The ATA purposely did not set forth a detailed liability scheme, as that was left to general tort law; the ATA merely intended to codify that additional damages might be sought by victims of terrorism to punish wrongdoers (treble damages and attorneys' fees that might not be recoverable under the common law) in traditional wrongful death actions.   *Id*.   Despite its claim, the March 15 Report simply fails to cite any legislative history that would support its claim that "survivors or heirs" was intended to be inclusive of "immediate family members" (parents and siblings, *i.e.,* non-heirs).

---

[9]       *See also Bettis v. Islamic Republic of Iran,* 315 F.3d 325, 333 (D.C. Cir 2003):

> The term "federal common law" seems to us to be a misnomer.  Indeed, it is a mistake, we think, to label actions under the FSIA and Flatow Amendment [and ATA] for solatium damages as "federal common law" cases, for these actions are based on *statutory* rights. . . . Rather, . . . because the FSIA instructs that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, it in effect instructs federal judges to find the relevant law, not to make it.

As the Court of Appeals noted in *Bettis*, "this fact is not a license for judges to legislate from the bench," for "[a]s much as we sympathize with appellants' claims, we have no authority to stretch the law beyond its *clear bounds* to satisfy our sense of justice." 315 F.3d at 338, 336.

    **c.  Since the ATA's explicit text and legislative history fail to state which individuals qualify as "survivors or heirs," one must resort to state common law for a "gap filler."**

"The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it."  C. Wright & A. Miller, 19 *Fed. Prac. & Proc.* § 4518 (3d ed. August 2019 update).  A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme.  *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999); *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests).

    When federal law does not expressly establish the legal rule for a federal question case, a federal court should borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000).  *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute; the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other

grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)); *see also Yamaha Motor Corp., U.S.A. v. Calhoun*, 566 U.S. 199, 116 S.Ct 619, 627 (1996) (legislative intent would be more closely served by preserving the application of state statutes to deaths within territorial waters where the victims are not persons covered by federal legislation providing a uniformly applied and comprehensive tort recovery regime); *Kamen v. Kemper Financial Servs., Inc.,* 500 U.S. 90 (1991) (federal courts should incorporate forum state law as the federal rule unless the application of the particular state law would frustrate specific federal objectives); *U.S. v. Yazell,* 282 U.S. 341, 352 (1996) ("theory and the precedents of this Court teach us solicitude for state interests, particularly in the field of family and family-property arrangements").  "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

State estate administration laws explicitly limit who qualifies to receive wrongful death damages as a "survivor or heir" as to any decedent domiciled in that state at the time of his or death.  State law necessarily must define what individuals qualify to share in an estate's proceeds (including wrongful death proceeds), since it is the states, not the federal government (nor the federal courts), who are responsible for handling the distribution of an estate's proceeds.   In *Markham v. Allen*, 326 U.S. 490, 494 (1946), the Supreme Court held that Congress did not confer on the federal courts jurisdiction to "probate a will or administer an estate."[10]  As seen

---

[10]      The Supreme Court went on to hold that beyond the probate of a will or administration of an estate, the "federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' *so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.*"  *Markham, supra*, at 494 (emphasis added).  Here, expanding who may recover wrongful death damages (beyond the state defined "heirs"), "interferes with probate proceedings" and "interferes" with the distribution of "property" (wrongful death damages) that is or should be more properly "in the control of the state."

above, the state law of the decedent's domicile governs – who is authorized to claim status as a legal "heir," who may bring a claim for wrongful death damages, and how any wrongful death proceeds should be distributed amongst defined heirs.

The laws of the decedents' domiciles here would require the application of state estate administration law and that would expressly deny parents and siblings of wrongful death damage awards where a decedent is survived by a spouse and children. In the Report, it is implicitly suggested that the MDL Court may wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration, and wholly ignore federal precedent that frowns upon the creation of federal common law.[11]

In fact, each American *state* has different laws surrounding the determination and distribution of wrongful death proceeds in administering the estates of decedents. In New York, for example, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss. *See, e.g.,* N.Y. Estate Powers & Trusts Law ("EPTL") § 5-4.4.[12] Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New York law, regardless of any claimed injury of the parents and siblings. *Id.* Also, New York State law gives the court-appointed personal representative of an estate the *exclusive* authority to bring an action for a wrongful

---

[11]     *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law.").

[12]     In New Jersey and Connecticut, similar rules exist to limit wrongful death damages to prescribed "heirs" (to protect widows and children) and such actions must be brought by an appointed personal representative. *See* N.J. Stat. Ann. § 2A: 31-4, § 3B: 5-3 and § 2A:31-2; Conn. Gen. Stat. § 45a-448(b), §§ 45a-437, *et. seq*., and § 52-555. State wrongful death claims must be brought within two years. *See, e.g.*, EPTL § 5-4.2. *See* Schutty Declaration, Summaries of NY, NJ and CT law (Ex. A).

death on behalf of a decedent's estate.[13]  *Id.*, § 5-4.1.  Finally, the New York State Surrogate's Court has jurisdiction over the estate of any decedent who was a domiciliary of New York at the time of his or her death to ensure that the estate administration laws are followed. S*ee* N.Y. Surr. Ct. Proc. Act § 205(1).  Thus, awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate"[14] (*e.g.*, parents and siblings, where the decedent is survived by a wife and children), and allowing individual family members to pursue death claims personally, *expressly violates New York State law*.[15]  On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member *in direct disregard of state law, state interests and state policy*.

Moreover, where a federal statute does not provide guidance on an issue relating to estate administration law (like the ATA), reference must be made to applicable state law (here, the law

---

[13]     In a wrongful death action "an MDL court applying the various choice of law tests of the various transferor courts will often choose the same standard of law to govern compensatory damages in all cases in one air crash, and that law typically will be the place of death or the place of domicile of the decedent . . . It is settled beyond any doubt that under the New York wrongful death statute, the right to prosecute, settle and compromise the wrongful death claim lies exclusively with the personal representative of the estate who brings the suit in his or her representative capacity as statutory trustee for all of the statutory beneficiaries.  The administrator can seek an order of compromise even against the wishes of decedent's children."     S. Pounian, "Aviation Law: Plaintiff's Rights in a Multidistrict Litigation Context," https://www.kreindler.com/articles/plaintiff-multidistrict-litigation-context.

[14]     In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.  *Markham v. Allen*, 326 U.S. 490, 494 (1946).  It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Yet, here, the PEC has urged the Court to give no regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.  These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal courts.

[15]     *See* footnotes 12, 13 and 14.

of the decedent's domicile).[16]  Federal law is interstitial and federal courts often look to the law

of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules

of Decision Act.[17]  *See also* footnote 14.

> **d.  The case law precedent cited in the Report does not support the Report's claim that "immediate family members" qualify for wrongful death damages; in fact, the Report's cited cases actually support the argument that the law of the decedent's domicile should be used to define "heirs."**

Finally, the case law precedent cited in the Report does not support the Magistrate

Judge's claim that the Court need not resort to state law to determine how the phrase "survivors

or heirs" should be interpreted.  In claiming that the word "survivors" is broader than the legal

term "heirs" and in suggesting that the word means "immediate family members," and in

implicitly ruling that state estate administration law need not be applied, the Report quotes as

precedent a Southern District of New York court decision, *Knox v. Palestine Liberation

Organization,* 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) *that applied the law of the decedent's

domicile, Israeli law*: "the legislative history of the ATA and the underlying purpose of the ATA

is to deter and punish acts of international terrorism supports *including parents and siblings* in

'survivors'" (R&R at 8) (emphasis added).  In fact, the *Knox* decision itself casts enormous

doubt on the alleged claim by the Magistrate Judge that the ATA supports claims by "parents and

---

[16]      The District Court should determine how the ATA should be applied as a wrongful death remedy where state law seemingly applies and the federal cause of action requires a gap-filler.  When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv. L. Rev. 1512, 1519 (1969).

[17]      28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases); *see also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding that the decedent's domicile has the greatest interest in regulating damages).

siblings," as the district court in *Knox* applied the law of the decedent's domicile (Israel) in determining the applicable interpretation of "survivors or heirs"; *Knox* held that the phrase "survivors or heirs" should include parents and siblings *only* because *Israeli law applied on this issue. See Knox*, 442 F. Supp.2d at 74 ("The ATA does not define the terms 'survivors' or 'heirs,' *which are usually defined by state law*. . . 'Israeli law provides that when a decedent dies intestate 'the legal heirs entitled to succession [are]: (1) [s]pouse of deceased; (2) children and their descendants and parents of deceased and their descendants.'") (emphasis added).

    *Knox* otherwise cites as precedent the district court (Rhode Island) decision in *Estates of Ungar ex reI. Strachman v. Palestinian Auth.,* 304 F.Supp.2d 232, 261 (D.R.I. 2004) ("*Ungar*"), which the Magistrate Judge cites at the R&R at 7-8, for the unsupported claim that Congress "intended" that "family members who are not legal heirs (such as parents and a sibling of a decedent who leaves children) may bring an action pursuant to [§ 2333(a)]." Importantly, in *Ungar,* state law was again *not* in conflict with the applicable law providing a broader number of "survivors or heirs," because *Ungar* expressly recognized that "*Yaron Ungar had not been a resident of any state in this country since he was fourteen years old. See* 7/12/02 Hearing Tr. at 92, 100. *Thus, the meaning of the terms "survivors" and "heirs" as used in § 2333(a) cannot be determined by referring to the law of a particular [American] state*. . . *Israeli law provides that when a decedent dies intestate the 'legal heirs entitled to succession [are]: (1) Spouse of deceased; (2) children and their descendants and parents of deceased and their descendants*.'" *Ungar,* 304 F. Supp.2d at 261 (emphasis added). In short, the two principal decisions relied upon by the Magistrate Judge in disregarding state law are inapposite to her conclusion that state law (decedent's domicile) on estate administration need not be considered in interpreting the phrase "survivors or heirs" – both *Knox* and *Ungar* properly determined that the law of the decedent's

domicile (Israel) controlled who qualified for damages under the phrase "survivors or heirs."[18] Thus, here these two decisions[19] would require that the estate administration laws of the decedent's domicile be employed in determining who qualifies as "heirs."

Significantly, no precedent exists within the District Court (S.D.N.Y.) or the governing Circuit (Second) to support the Report and claims of the PEC, and no court previously has resolved the undeniable conflict present here between state law and the federal common law promoted by the PEC and applied within the March 15 Report.[20]   At a recent conference, a member of the PEC asserted that there is a 'great amount' of precedent surrounding the interpretation of the ATA's cause of action for wrongful death, but there is little or no precedent as persuasive as *Knox* and *Ungar*, both of which resorted to the decedent's domicile to determine who qualified as "survivors or heirs."[21]

---

[18]     The Report also claims incorrectly that "[l]inking the interpretation of § 2333 to state law would also prevent the ATA from providing uniform access to the federal courts."  R&R at 8.  This is not true. Applying state law to fill the gaps in the ATA cause of action will in no way limit access to the federal courts by any victim claiming federal question jurisdiction – a claim arising under a federal statutory cause of action.  State estate administration law will merely condition the remedy that is applied and that is totally normal in a mass tort context.

[19]     The Report also cites to *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 Supp. 3d 144, 152 (E.D.NY 2020) (§ 2333 does not limit a family to a single suit brought by either the injured person, his estate, his heir, or his survivor), but this decision does not attempt to define "survivors or heirs,″  the true issue here, and the court's reference to who might bring an ATA cause of action is *dicta* to what is at issue here.  The terrorist act in question there occurred on the West Bank, and no one argued for the application of U.S. state law on the issue of who qualified as "survivors or heirs."

[20]     This Court must carefully parse any "precedent" allegedly supporting the PEC's claim that individuals other than widows and children can recover wrongful death damages – did these other courts employ a choice of law analysis in determining who qualifies as a "survivor" or "heir" of the decedent?

[21]     The District of Columbia cases previously cited by the PEC, not only lack binding precedential value in this district, they also lack true "precedential weight" because they were decided in the context of a default by a non-appearing foreign sovereign in a non-state (D.C.).  *See, e.g., Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53 (D.D.C. 2018) (acknowledging that "Iran has never entered an appearance in this action"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 740 n.11 (1974) (finding decision lacked "precedential weight" where the case did not "involve[e] a truly adversary controversy").

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 81 of 186
**A268**
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 26 of 43

It is black letter law that federal courts should not create federal common law to displace state-created rules in the absence of strong justifications. *See Rodriguez v. FDIC*, 140 S. Ct. 713, 718 (2020) (emphasizing "the care federal courts should exercise before taking up an invitation to try their hand at common lawmaking"). "[C]ases in which judicial creation of a special federal rule would be justified" are "'few and restricted,'" *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994) (citation omitted), and creating a federal rule "must be necessary to protect uniquely federal interests." *Rodriguez*, 140 S. Ct. at 717 (citation and internal quotation marks omitted). Federal judge made law may also have the consequence of impeding upon the autonomy and independence of states by preempting state law signaling federalism concerns. Bradford R. Clark, "Federal Common Law: A Structural Reinterpretation," 144 U. Pa. L. Rev. 1245, 1248 (1996).

In sum, both the common law wrongful death claims and the Anti-Terrorism Act (18 U.S.C. § 2333) claims are subject to applicable state law. Since the decedent's domicile state has a much greater interest in the outcome of this litigation and the eventual administration of each 9/11 decedent's estate, the March 15 Report should be corrected. Here, assuming that a decedent was domiciled in New York or New Jersey (the case for all of the *Ashton-Dickey* Plaintiffs represented here), New York and New Jersey State law determines the parameters of each wrongful death claim – *viz.*, who is authorized to pursue the death claim and which "heirs" are entitled to recover. This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA's text and legislative history do not provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action, as it has done when dealing with other federal claims for damages[22]; creating

---

[22]     When Congress expressly defines a statute's preemptive reach, and the definition provides "a reliable indicium" of congressional intent as to what should be left to state authority, there is a

federal common law in such instances,[23] and ignoring otherwise applicable state law, lacks viable precedent.

**B. The Court Should Decline to Adopt the Report's Recommendation that No Statute of Limitations Will Be Applied to Taliban Claims Because the Dismissal of Untimely Claims Is Required To Ensure Both Justice & Reasonable Docket Management.**

Magistrate Judge Netburn began her analysis of the statute of limitations issue with the correct statement that "[o]n January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 attacks to January 2, 2019" (R&R at 8), but then she went on to hold that "the Court declines to dismiss *sua sponte* claims against the Taliban as time-barred." The *Ashton-Dickey* Plaintiffs respectfully seek review of this ruling since it is contrary not only to good sense (it promotes an *ad infinitum* filing of lawsuits in this MDL litigation), it is also contrary to law, equity and the practical needs of the judicial system.

The Report correctly states that as a general matter, a party's failure to plead an affirmative defense, like a statute of limitations, leads to a forfeiture[24] of that defense. *Davis v.*

---

"reasonable inference" that Congress did not intend to preempt matters beyond that reach. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995).

[23]    *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit.  *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988.") (citations omitted).  A similar result should be reached here.

[24]    Although litigants and jurists have sometimes used the terms "waiver and forfeiture" interchangeably, they have different meanings.  *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17, n.1 (2017).  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted).  The Taliban forfeited—rather than waived—the

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 83 of 186
A270
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 28 of 43

*Bryan*, 810 F.2d 42, 44-45 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court *ordinarily* should not raise it *sua sponte*.") (citations omitted and emphasis added).  There is, however, an exception to this general rule: if an affirmative defense implicates "values beyond the concerns of the parties," the district court has "the authority— though not the obligation—to raise a forfeited . . . defense on [its] own initiative."  *Wood v. Milyard*, 566 U.S. 463, 472, 473 (2012); *see also Arizona v. California*, 530 U.S. 392, 412 (2000) (forfeited *res judicata* defense may be raised *sua* sponte in "special circumstances").  This is especially true where a failure to enforce a statute of limitations will adversely affect other plaintiffs who have filed viable and timely claims.

     **1.   There Must Always Be a Reasonable End to Litigation.**

Under the Report, no statute of limitations ever exists as to any defendant-in-default.  This leads not only to absurd and unjust results, it invites serious consequences.  The Magistrate Judge has opened the floodgates to thousands of potential plaintiffs who may now file 9/11 claims in the decades to come against any defendant-in-default, and this is at the expense of the judiciary and the plaintiffs who have filed timely claims (for the reasons set forth below).  Surely, that cannot be correct.  And untimely actions should be dismissed for the benefit not only of those who have filed timely claims, but also for effective docket control and judicial management.  Thousands of plaintiffs have already been added belatedly to this litigation against the Taliban (and Iran) and now, based the March 15 Report, more will likely follow (every individual claiming any alleged injury resulting from the aftermath of the 9/11 events).

     **2.   The *Ashton-Dickey* Plaintiffs have standing to assert a statute of limitations defense against untimely claims that will dilute the recoveries of the *Ashton-Dickey* Plaintiffs.**

---

statute of limitations defense.  It did not "deliberately steer[] the District Court away from the [timeliness] question and towards the merits."  *See Wood v. Milyard*, 566 U.S. 463, 474 (2012).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 84 of 186
A271
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 29 of 43

In footnote 4 of the Report (R&R at 9), Magistrate Judge Netburn contends that "the Dickey Plaintiffs do not have standing to assert the Taliban's defenses against the other parties," but no "standing" precedent is cited in support of this claim.  In fact, the *Ashton-Dickey* Plaintiffs do have "standing" because they are asserting claims that are directly adverse to those asserted by other claimants seeking funds from an anticipated limited fund of money.[25]  *See* the accompanying Declaration of Plaintiff Lisa O'Brien.

The United States Supreme Court has made clear that a future injury constitutes an Article III injury in fact if the threatened injury is *certainly impending*, or there is a *substantial risk* that the harm will occur.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).  To establish standing, plaintiffs must demonstrate that they have (1) "suffered an injury in fact" (2) that "was caused by the defendant [or an adverse party]," and which (3) "would likely be redressed by the requested judicial relief."  *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  In turn, an injury in fact requires "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  While an alleged risk of future harm may suffice, a mere "possible future injury" or even an "objectively reasonable likelihood" of a future injury is not enough to meet the injury in fact requirement.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013).  Instead, the future injury must be "certainly impending" or there must be "a substantial risk that the harm

---

[25]   If any money is recovered from any damage awards against the Taliban it may come from the assets held in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), held at the Federal Reserve Bank of New York (the "FRBNY").  When the Republic of Afghanistan fell in August 2021, the DAB held approximately $7 billion in assets at the FRBNY.  *See* ECF MDL#8866 at 6.  In February 2022, President Biden issued an executive order titled "Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan."  Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022).  The frozen, limited assets of the DAB are now sought by the plaintiffs herein, through appeal from an Order of this Court.  ECF MDL#8866.

will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted). Here, injuries have already occurred – when this Court awarded wrongful death damage awards against the Islamic Republic of Iran to "non-heirs" asserting untimely legal claims – and those Iran default judgments were subsequently converted to awards issued by the U.S. Victims of State Sponsored Terrorism Fund ("USVSST"); the awards to parents and siblings diluted/reduced the award amounts received by heirs; that wrongful action is expected to continue if Taliban default judgments are entered in favor of untimely claims (and they dilute the recoveries of timely filed claims from a limited fund of money). *See* footnotes 27 and 28 below.

Accompanying these Objections is the Declaration of Plaintiff Lisa O'Brien dated March 28, 2023, which shows that many of the *Ashton-Dickey* Plaintiffs are directly competing for wrongful death damages with the untimely claims asserted by "non-heirs" under state law (parents and siblings of the decedent), since if there is a limited fund of money from which damages will be paid, the *Ashton-Dickey* Plaintiffs will recover diluted (less) damages.[26]

We offer, as one example, the wrongful death claims asserted based on the death of Timothy M. O'Brien, a 9/11 decedent who perished on September 11, 2001 while working for Cantor Fitzgerald. Among the *Ashton-Dickey* Plaintiffs are Mr. O'Brien's widow, Lisa O'Brien, who is pursuing a wrongful death claim in this litigation as the state-court-appointed "personal representative" of the estate of Timothy M. O'Brien, on behalf of herself and her three children. The parents and siblings of Timothy M. O'Brien have, however, filed their own legal actions

---

[26]   *See In re World Trade Ctr. Disaster Site Lit.*, 769 F. Supp. 2d 650, 652 (S.D.N.Y. 2011) (recognizing that recovery of one set of plaintiffs can dilute the recovery of another set of plaintiffs: "Napoli Bern [plaintiffs' law firm] had conflicting obligations. If the 59 Plaintiffs were admitted to the SPA, as many of them requested, the final settlement amount would be spread thinner, affecting in particular the most severely injured Plaintiffs, the "Tier 4" Plaintiffs, whose recoveries were variable and dependent on how much of the fixed settlement amount would remain after the less severely injured Plaintiffs had been paid. . . On the other hand, Napoli Bern had to make any possible arguments it could on behalf of these 59 Plaintiffs. Any way one looks at it, Napoli Bern's common representation of these 59 Plaintiffs and its thousands of other Plaintiffs put the firm in conflict.").

seeking wrongful death damages against the Islamic Republic of Iran and the Taliban, separate and apart from the claims of Lisa O'Brien.

Set below are the default judgment awards issued by this Court on the wrongful death claims against the Islamic Republic of Iran to the various family members of 9/11 decedent, Timothy M. O'Brien (non-heirs and heirs):

| Non-Legal Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Award |
| 12/18/2015 *Burnett* ECF#1 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 7/31/2017 ECF#3666 |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 7/29/2019 ECF#4706 |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 4/27/2018 ECF#3986 |
| 09/04/2019 ECF#5087 | " | " | Kevin O'Brien (Sibling) | $4,250,000* 9/6/2019 ECF#5087 |
| - | *[No DJ Filed Yet]* | - | Sean O'Brien (Sibling) | *$4,250,000 [No DJ Filed Yet]* |
| **Total Solatium Damages Awarded to Non-Heirs Thus Far** | | | | **$38,500,000** |

*We have been unable to determine when and if Kevin O'Brien was added as a party-plaintiff, but he was issued a default judgment award.

| Legal Heirs of Timothy O'Brien Awarded Solatium Damages against Iran[27] | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Award** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 01/07/2020 ECF#5452 |
| " | " | " | John O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| **Total Solatium Damages Awarded to Legal Heirs Against Iran** | | | | **$38,000,000** |

Awards against Iran were granted without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (10-year statute of limitations). Non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants.[28] One cannot deny that, as a result of an enormous number of non-

---

[27]     The Estate of Timothy M. O'Brien was also awarded economic loss damages of $94,984,220 (ECF MDL#5376), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal "heirs" of Mr. O'Brien to a total cap of $35 million (solatium plus economic loss damages) before the "heirs" USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent." What is undeniable is that the recoveries of parents and siblings necessarily decreased the Fund's assets and limited what is available to "heirs." *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

[28]     The USVSST Fund implicates "values beyond the concerns of the parties." This is so because it "has only finite funding available to pay claims on a pro rata basis." *See* Letter from Sen. Grassley and Rep. Goodlatte to Sec'y Tillerson, https://www.judiciary.senate.gov/imo/media/doc/2017-09-27%20CEG,%20Goodlatte%20to%20Tillerson(Sudan%20Sanctions).pdf [https://perma.cc/S92Q-5JW2] (Sept. 27, 2017). The pro rata payments are "based on the amounts outstanding and unpaid on eligible claims, until all such amounts have been paid in full" or the fund terminates in 2039. 34 U.S.C. § 20144(d)(3)(A)(i), (e)(6). *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php. That means payments to any individual claimant are "dependent on other claimants' awards." Supplemental Report from the Special Master at 3, U.S. Victims of State Sponsored Terrorism Fund (Aug. 2017), http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20Congressional%20Report%208-2-

heirs entering the USVSST Fund (most, if not all of whom had filed untimely legal actions),

heirs (like Lisa O'Brien and her children) received smaller (diluted) distributions (an injury-in-

fact).

Set below are the default judgment application awards sought regarding the wrongful

death claims filed by the various family members of 9/11 decedent, Timothy M. O'Brien (non-

heirs and heirs) against the Taliban:

---

2017.pdf [https://perma.cc/67AT-67UZ].  If this Court refuses to recognize the district courts' authority to consider timeliness *sua sponte*, all past, present or future filers against Iran and the Taliban may have their recoveries diminished by untimely claimants who obtain default judgments payable by a "Fund." "In general, eligible claims will be paid on a *pro rata* basis out of available funds, based on the amounts outstanding and unpaid on eligible claims, until all those amounts have been paid in full or the USVSST Fund sunsets in 2039."  USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

| Non-Heirs of Timothy O'Brien Who Have Requested Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 04/29/2017 ECF #3663 | *Burnett et al. v. Al Baraka Inv. Dev. Corp., et al.,* No. 03-cv-9849 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 01/20/2022 ECF#7618 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 " " |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 " " |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 |
| 10/25/2022 ECF #8679-1 | " | " | Kevin O'Brien (Sibling) | $4,250,000 09/26/2022 ECF#8559 |
| " | " | " | Sean O'Brien (Sibling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$42,500,000** |

| Legal Heirs of Timothy O'Brien Seeking Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 08/17/2022 ECF#8386 |
| " | " | " | John O'Brien (Child) | $8,500,000 " " |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 " " |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

Again, a limited fund of money is expected to be available to all plaintiffs making claims against the Taliban.[29]  Again, awards to non-heirs, who have filed untimely claims, will, at a minimum, reduce the recoveries of Mrs. Lisa O'Brien and her children (injury-in-fact) from the Taliban and the limited fund of money that may be available.

**3. This Court, *sua sponte*, has the right and obligation to dismiss untimely claims to address unusual, but serious institutional issues here.**

Magistrate Judge Netburn previously asked counsel to address the question of whether the Court may address this statute of limitations issue *sua sponte* as to claims belatedly asserted against the Taliban (MDL ECF#8778) and the undersigned attorney addressed that issue in a

---

[29]     Like the money that may be awarded through by the USVSST (a limited fund), any money that may flow to plaintiffs here will likely flow from what is presently held at the FRBNY in the name of the DAB Bank and that, again, is a limited fund of money sought by those who have filed timely claims, as well as those who have filed untimely claims.

legal memorandum submitted on December 22, 2022 (MDL ECF#8814).[30]   However, the Magistrate Judge wholly failed to address a line cases cited to her.   We advised the Magistrate Judge that it is now well-established, through Supreme Court precedent, that a district court has the "inherent power" to dismiss a case *sua sponte* without prompting by an adverse party.   *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); [31] *Arizona v. California*, 530 U.S. 392, 412-13 (2000)*; Leonhard v. United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019).   These decisions address a district court's power to protect important institutional interests of the court.

Here, the enormous and unmanageable size of the ever-expanding docket in this MDL litigation, and the Magistrate Judge's failure to enforce a statute of limitations defense in favor of those plaintiffs who have filed timely claims, directly implicates the institutional interests of the judiciary.   While our judicial system generally relies on a contest of adversaries, requiring an assertion and contested resolution of an affirmative defense, a narrow but recognized exception exists when the viability of a subset of plaintiffs' claims implicates the court's power to protect its own important institutional interests.   *See Arizona,* 530 U.S. at

---

[30]      In fact, the Court here is being asked to react to objections filed by a set of plaintiffs with adverse interests, so this Court is *not* acting *sua sponte*.  *Sua sponte* refers to action taken by the court without the prompting of the parties.   Here, the Court will be taking action on objections filed by plaintiffs with adverse interests to the untimely filed claims.   Standing exists to assert these objections (*see* the accompanying O'Brien Declaration).   Moreover, while in the normal course of events, a defaulting defendant may appropriately punished by a court by deeming the statute of limitations forfeited, here, where a limited fund of money, not in the possession of that defaulting defendant, will likely be used to satisfy the judgments of the plaintiffs, why should ultra-untimely plaintiffs be granted judgments that will dilute the recoveries of plaintiffs who have had timely claims for close to two decades?   This is certainly not a just result – untimely claims will otherwise "swallow" timely claims.

[31]      In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630-31.   A level of control over the docket by this Court is desperately needed here.

412; *Link,* 370 U.S. at 629-31.   In *Link*, the Supreme Court concluded that a district court possesses the "inherent power" to dismiss a case *sua sponte* for failure to prosecute, explaining that such authority derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."   370 U.S. at 630-31. That is this case, especially here, where large groups of adverse plaintiffs are now vying for what is a limited source of money and thousands of plaintiffs have been belatedly added to this litigation to dilute what may be paid to timely claimants.   "Quite aside from the interests of the individual parties in a lawsuit, a district court has an important interest in keeping its docket from becoming clogged with dormant cases and in ensuring that a party does not use the court as an instrument of fraud or deceit."   *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 (4th Cir. 2006).[32]

The Second Circuit has definitively ruled:

> **The district court has the power to dismiss a complaint sua sponte for failure to state a claim**, *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); *see* 5 C. Wright A. Miller, *Federal Practice and Procedure* § 1357, at 593 (1969).   **There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds, at least where, as here, the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.**   *See* 10 *id.* § 2719.

*Leonhard v. United States*, 633 F.2d 599, 609, n. 11 (2d Cir. 1980) (emphasis added); *see also Wright v. Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019) (summary order) ("While untimeliness is an affirmative defense, a district court can sua sponte dismiss untimely claims where the defense is apparent on the face of the complaint.") (italics omitted) (citation omitted); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (affirming *sua sponte* dismissal of complaint as

---

[32]   *See also Lassiter v. City of Phila.*, 716 F.3d 53, 55 (3d Cir. 2013) (in raising the statute of limitations *sua sponte*: "Rule 16 of the Federal Rules of Civil Procedure contemplates that a trial court should assume an 'active managerial role' in the litigation process to expedite the efficient disposition of a case.   At a Rule 16 conference, a district court 'may consider and take appropriate action' on a broad variety of topics, including 'formulating and simplifying the issues, and eliminating frivolous claims or defenses[.]' Fed.R.Civ.P. 16(c)(2)(A).") (citation omitted).

frivolous on statute of limitations grounds); *Walters v. Indus. and Com. Bank of China*, 651 F.3d

280, 293 (2d Cir. 2011) ("district courts may dismiss an action *sua sponte* on limitations grounds

in certain circumstances where "the facts supporting the statute of limitations defense are set

forth in the papers plaintiff himself submitted," *citing Leonhard, supra*); *see also* Fed. R. Civ. P.

16(c)(2) ("*Matters for Consideration*.  At any pretrial conference, the court may consider and

take appropriate action on the following matters: (A) formulating and simplifying the issues and

eliminating frivolous claims or defenses….").[33]

   While we acknowledge the Second Circuit decision, *Davis v. Bryan*, 810 F.2d 42, 44-

45 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district

court *ordinarily* should not raise it *sua sponte*.") (citations omitted and emphasis added), the

*Davis* decision uses the word "ordinarily" to describe whether the statute of limitations should be

deemed waived, and the statement is otherwise *dicta* in the opinion ("We wish to make it clear

that we do not express the opinion that the appellees have waived the statute of limitations

defense; any such determination is for the district court to make when and if that defense is

asserted by the appellees.").  Nonetheless, the Second Circuit has on several occasions indicated

that a court has the discretion to raise the defense *sua sponte,* and should raise

it.  *See Walters*, *supra*, 651 F.3d at 293; *Leonhard, supra,* 633 F.2d 599 at 609 n.11 (2d Cir.

1980); *Reches v. Morgan Stanley & Co.*, No. 16-3294-cv (2d Cir. Apr. 14, 2017) (holding that

district court did not err in dismissing plaintiff's claim *sua sponte* as time-barred, where "all of

---

[33]  One of the greatest problems identified with the MDL process is its tendency to attract meritless claims.  *See In re Mentor Corp. Obtape Transobturator Sling Prods.*, MDL Docket No. 2004, 2016 U.S. Dist. LEXIS 121608, *7-8 (M.D. Ga. Sep. 7, 2016) (Land, J.) ("based on fifteen years on the federal bench and a front row seat as an MDL transferee judge on two separate occasions, the undersigned is convinced that MDL consolidation for products liability actions does have the unintended consequence of producing more new case filings of marginal merit in federal court, many of which would not have been filed otherwise").  Dockets overloaded with meritless claims harm the judiciary because they decrease public confidence in the courts and consume judicial resources.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 94 of 186
**A281**
Case 1:03-md-01570-GBD-SN   Document 8959   Filed 03/28/23   Page 39 of 43

the operative facts [for dismissal] were set forth in the [c]omplaint."). And, as seen above, the

Supreme Court as well has recognized that a limitations defense may "'implicat[e] values beyond

the concerns of the parties.'" *Day v. McDonough*, 547 U.S. 198, 205 (2006) (quoting *Acosta v.

Artuz*, 221 F.3d 117, 123 (2d Cir. 2000)); *United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir.

2008) (court may raise defense *sua sponte* when "the issue implicates the court's power to protect

its own important institutional interests") (citing *Arizona v. California*, 530 U.S. 392,

412 (2000)).[34]   In fact, in the context of this MDL litigation, where thousands of untimely actions

have been filed and tens of thousands of untimely claims may be filed in the years ahead, this

Court must set an end to such a chaotic docket and protect those who have filed timely claims.[35]

Time bars are "wise and beneficial," *Bell v. Morrison*, 26 U.S. (1 Pet.) 351, 360 (1828) (Story,

---

[34]    Consistent with these principles, a number of courts have found that they have the discretion to raise the statute of limitations *sua sponte* and have dismissed time-barred claims when presented with a request for a default judgment. *See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671, 671-72 (9th Cir. 2012) ("[T]he district court did not err by addressing the statute of limitations issue *sua sponte* in ruling on plaintiffs' motion for default judgment."); *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (prior to entering default judgment, "it is proper for the Court to consider sua sponte whether Plaintiff's claims are barred by the relevant statute of limitations"); *Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, 2011 WL 1642306, at *2 (N.D. Cal. May 2, 2011) (same); *J & J Sports Prods., Inc. v. Martinez*, 2010 WL 1038467, at *6 (N.D. Cal. Mar. 2, 2010) (same); *see also Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir.) (stating in dictum that dismissal is "appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations"), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) (per curiam); *Rampersad v. Deutsche Bank Sec., Inc.*, 2004 WL 616132, at *9 (S.D.N.Y. Mar. 30, 2004) (suggesting that time barred claims against defaulting defendant may be dismissed when the defect is apparent from face of complaint, but dismissing on other grounds).

[35]    Today's overloaded dockets demand procedures that reduce burdensome litigation levels. By keeping stale claims out of court, statutes of limitations relieve courts "of the burden of trying stale claims when a plaintiff has slept on his rights." *Burnett v. New York Cent. R.R.*, 380 U.S. 424, 428 (1965) (footnote omitted); *see United States v. Western Pac. R.R.*, 352 U.S. 59, 72 (1956) ("purpose of [statutes of limitations] is to keep stale litigation out of the courts"). Limitations periods also preserve the credibility of the judicial system by barring claims that "have been allowed to slumber until evidence has been lost, memories faded, and witnesses disappeared." *Order of R.R. Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944) (quoted in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). Chief Justice Marshall warned that having no limitation on rights of action would be "utterly repugnant to the genius of our laws." *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 342 (1804) (dicta).

J.), "tend[ing] to the peace and welfare of society," *M'Cluny v. Silliman*, 28 U.S. (3 Pet.) 270, 278 (1830).

To be timely in their own right, the wrongful death actions against the Taliban based on the Anti-Terrorism Act must have been commenced no later than January 1, 2019. *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). Many of the Taliban wrongful death (and personal injury) actions here were, however, filed long after this deadline.

The PI&WD PEC has promoted an "unlimited" statute of limitations as against the Taliban. Among other things, the PEC has argued that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent against the statute of limitations.[36] *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against the Taliban – MDL ECF#7654, 7657 and 7660. The *Ashton-Dickey* Plaintiffs have objected to this suggestion, contending that a "personal representative" appointed under New York State law (or other decedent-domicile-state law) is the *only* individual authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4 (and similar state statutes governing other death claims), and that individual must file a timely claim (and such action protects *only* legal heirs). *See Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095, 1114 (D.C. Cir. 2019) (holding: district court may

---

[36]     This selfish position by the PEC should be seen for what it is – attorneys attempting to protect their untimely claims and ensure that the judicial "checkbook" remains open for future claims not yet asserted.

not raise a statute of limitations defense *sua sponte* against a defendant in default, but the Circuit Court acknowledged that it could not recognize an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs -- since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants -- "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.").

Finally, we ask that the Court consider the prescient words of another district court judge who addressed a similar issue not long ago:

> For how long should such claims be allowed?  From the standpoint of the judicial branch, only two principled time limits present themselves: either the ten-year statute of limitations Congress has imposed, or no time limit at all.  After all, if a sixteen-year (or a twenty-nine-year) gap is acceptable, there is little reason to prohibit suits brought forty, fifty, or more years after the fact.  The claimants could easily glean evidence of a defendant's culpability by dusting off old volumes of the Federal Supplement.  As long as each crop of plaintiffs could show that they were victims or proper third-party claimants, they could continue racking up sizable damages awards for decades in response to a single act.

*Shiekh v. Republic of Sudan*, *supra*, 308 F.Supp.3d at 55.[37]

Will there ever be an end to the filing of new legal actions and default judgment applications in this litigation against the defendants-in-default?  Will innumerable new claimants now belatedly file new actions against the defendants-in-default without any future time limit imposed?  The March 15, 2023 Report allows plaintiffs to "continue piggybacking off of older decisions for decades to come to extract multimillion dollar judgments from absent [defendants-in-default]."  *Shiekh v. Republic of Sudan*, *supra*, 308 F.Supp.3d at 54.  The Report thus undermines the purpose of a statute of limitations — a limitations period generally serves to

---

[37]    It is noteworthy that in another "terrorist" case pending in this District, *Owens v. Taliban*, No. 22-cv-1949-VEC (S.D.N.Y.), Judge Caproni noted *sua sponte* that statute of limitations problems infect the plaintiffs' claims, given that their complaint was filed almost 24 years after the relevant terrorist attacks. *See* Owens Dkt. ECF#34 at 6 (transcript of March 28, 2022 hearing).

prevent plaintiffs from sleeping on their rights, promote judicial economy, and provide parties

with certainty.  *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[T]he basic policies of all

limitations provisions [are] repose, elimination of stale claims, and certainty about a plaintiff's

opportunity for recovery and a defendant's potential liabilities."); *Burnett v. New York Cent. R.R.

Co.*, 380 U.S. 424, 428 (1965) ("[C]ourts ought to be relieved of the burden of trying stale claims

when a plaintiff has slept on his rights.").[38]  If the Report is upheld, and the statute of limitations

is not enforced in some manner, this Court will literally be advancing the interests of an always-

still-expanding subset of plaintiffs who have "slept on their rights," at the expense of plaintiffs

who filed timely actions and preserved the ongoing litigation for a belated throng of

newcomers.[39]

---

[38]  "Modern statutes of limitations trace directly back to 1624, and embody the notion that fixing the periods for bringing damages actions is a legislative function that imposes certainty and predictability upon how long a defendant should be subject to suit."  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

[39]  The principle of "laches" also supports this argument.  In *Costello v. United States* 365 US 265, 282 (1961), United States Supreme Court defined laches as "Lack of diligence by the party against whom the defense is asserted combined with prejudice to the party asserting the defense."  Laches is associated with the maxim of equity: *Vigilantibus non dormientibus æquitas subvenit* ("Equity aids the vigilant, not the sleeping ones [that is, those who sleep on their rights]").  Ibrahim, Ashraf Ray, "The Doctrine of Laches in International Law," 83 Va. L. Rev. 647, 692 (April 1997).

<u>**CONCLUSION**</u>

For the reasons set forth above, and pursuant to Fed. R. Civ. P. 72(b)(2), the *Ashton-Dickey* Plaintiffs respectfully request that the Court decline to adopt the R&R (MDL ECF#8925) and issue a new Order that dismisses the untimely actions filed against the Taliban and otherwise recognizes the applicability of the estate administration laws of each decedent's domicile state.

Dated:   New York, New York
              March 28, 2023

Respectfully submitted,

By: _John F. Schutty_____

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) <br> ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)
-and-
All Wrongful Death Default Judgment Applications Filed Against the Taliban

**DECLARATION OF JOHN F. SCHUTTY, ESQ. IN SUPPORT
OF THE *ASHTON-DICKEY* PLAINTIFFS' RULE 72(B)(2) OBJECTIONS
TO THE MARCH 15, 2023 REPORT & RECOMMENDATION [ECF#8929]**

I, JOHN F. SCHUTTY, ESQ., pursuant to 28 U.S.C. § 1746, hereby state under the penalty of

perjury that:

1.      I am an attorney representing certain Plaintiffs in the above-referenced matter (the

"*Ashton-Dickey* Plaintiffs").

2.      I submit this declaration in support of the Fed. R. Civ. P. 72(b)(2) Objections of the

*Ashton-Dickey* Plaintiffs[1] to the March 15, 2023 Report & Recommendation [ECF#8929] of

Magistrate Judge Sarah Netburn regarding the law to be applied on the Taliban wrongful death default

judgment motions presently before the Court.

3.      The widows-personal representatives that I represent have discovered, somewhat

belatedly, that their ex-in-laws (parents and siblings of their deceased husbands) have filed their own

---

[1]      The undersigned represents the estates of ten 9/11 decedents ("*Ashton-Dickey* Plaintiffs"); a widow, "personal representative," appointed by a state Surrogates Court, has appeared to represent each of these ten estates in this litigation, and each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against the defendants herein (all timely and viable claims).  We contend that "standing" exists to assert these Objections and this Declaration (along with the accompanying Declaration of Plaintiff Lisa O'Brien) is submitted in support this "standing" claim.  Here, where a limited fund of money may exist in the "possession" of a defendant-in-default, and that money is sought by a multitude of plaintiffs, the claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained in favor of the timely and viable claims.

lawsuits in this MDL litigation and have learned, belatedly, that the wrongful death awards issued to their ex-in-laws have not only been substantial, but these wrongful death judgments have seriously reduced the damages that the "legal heirs" of their husbands have received from the United States Victim Compensation Fund ("USVSST").  *See* accompanying Declaration of Plaintiff Lisa O'Brien.

4.  Magistrate Judge Netburn has claimed that the *Ashton-Dickey* Plaintiffs lack "standing" to assert objections to her plan to award damages to "immediate family members" (parents and siblings) of the decedents, even when these plaintiffs have filed untimely lawsuits — "the *Dickey* Plaintiffs do not have standing to assert the Taliban's defenses against other parties."  R&R at 9, n. 5. We respectfully disagree, since the *Ashton-Dickey* Plaintiffs have been and will continue to be injured in fact by the misapplication of wrongful death law in this litigation.

5.  The *Ashton-Dickey* Plaintiffs therefore will submit an example[2] of their "injury in fact," by detailing the injuries sustained by one set of legal heirs of a 9/11 decedent as an exemplar case – we will detail the injuries sustained by the widow and children of 9/11 decedent, Timothy M. O'Brien, by submitting the supporting Declaration of Plaintiff Lisa O'Brien.

6.  In the default judgment filings sought against Iran and the Taliban, many of the plaintiffs are parents and siblings of 9/11 decedents who have asserted individual and personal claims as plaintiffs; these plaintiffs claim that the Anti-Terrorism Act ("ATA") (and Foreign Sovereign Immunities Act or "FSIA") cause of action was intended to provide damage recoveries to "immediate family members," even though the ATA does not so state and even though many of these plaintiffs were belatedly added to the litigation in amended pleadings after the statute of limitations for bringing such claims had expired (on January 1, 2019); most of these parents and siblings of 9/11 decedents are not the "heirs" of their 9/11 decedent, as that the term "heir" is defined by applicable state law.

---

[2]     Several other *Ashton-Dickey* Plaintiffs are aware that their ex-in-laws have filed their own personal wrongful death actions in this MDL litigation and that these ex-in-laws have obtained default judgments and USVSST awards that have reduced the awards given to the state-authorized heirs of their husbands.  We raise only the O'Brien cases at this time as an example of what is happening.

-2-

7.      In claiming money damages for this class of plaintiffs under the ATA, the Death &

Injury Plaintiffs' Executive Committee ("D&I PEC") has claimed that "federal common law" should

be applied in interpreting who may recover for a decedent's death under the ATA; the PEC has

implicitly suggested that the MDL court here can wholly ignore the interests and laws of the

decedents' domiciles (state law) regarding wrongful death estate administration.   No precedent

existed within the District Court (S.D.N.Y.) or the governing Circuit (Second) to support the PEC's

claim in this regard.

8.      State law necessarily must define what individuals qualify to share in an estate's

proceeds (including wrongful death proceeds), since it is the states, not the federal government (nor

the federal courts), who are responsible for handling the distribution of an estate's proceeds.  State

estate administration laws explicitly limit who qualifies to receive wrongful death damages as a

"survivor or heir" as to any decedent domiciled in that state at the time of his or death. In New York,

for example, wrongful death damages are distributed *only* to members of a decedent's defined

"estate," *i.e.,* "heirs" explicitly defined within a statute, in proportion to their financial loss.  *See* N.Y.

Estate Powers & Trusts Law ("EPTL") § 5-4.4.   Where a 9/11 decedent is survived by a spouse and

children, for example, parents and siblings of the decedent are denied wrongful death damages under

New York law, regardless of any claimed injury.  *Id*.  This fact has been given no regard in the MDL

litigation to date.  Also, New York State law gives the court-appointed personal representative of an

estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.

*See* EPTL, Section 5-4.1.  The laws of the States of New Jersey and Connecticut are quite similar.

For the convenience of the Court, I am attaching short summaries of the wrongful death laws of New

York, New Jersey and Connecticut (Exhibit A) that were published online by the original Victim's

Compensation Fund (by no means am I suggesting that these summaries express the current state of

the law in each state, but only to show that state law can easily be located and applied).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 102 of 186
**A289**
Case 1:03-md-01570-GBD-SN   Document 8960   Filed 03/28/23   Page 4 of 8

9.      The Report wholly fails to acknowledge the *express* conflict between state estate administration law defining "heirs" and the Report's *interpretation* of who is covered by the ATA's "survivors or heirs" phrase – the latter phrase Magistrate Judge Netburn has *interpreted* as necessarily including "parents and siblings" (alleged "immediate family members") of the decedent, who are expressly not state law "heirs" when a decedent is survived by a spouse and children.

10.      New York, New Jersey and Connecticut "estate distribution" law and wrongful death law, which require a result different than that reached by this Court in entering default judgments against Iran, was not only ignored, it was violated and now will be violated again if awards are once again issued to parents and siblings on their wrongful death claims against the Taliban under the ATA – by awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."

11.      On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

12.      The March 15 Report claims that its recommendations were "drawn on the text, history, and purpose [of the ATA]," and it concludes that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA."  R&R at 7.  In fact, we show in the accompanying "Objections" memorandum of law just the opposite – that the explicit ATA text, the ATA's legislative history, and the purpose of the ATA – do NOT support the Report's conclusion that "immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA."

13.      As the accompanying "Objections" memorandum of law shows, both the common law wrongful death claims and the Anti-Terrorism Act (18 U.S.C. § 2333) death claims asserted against

the Taliban are subject to applicable state law.  Since the decedent's domicile state has a much greater interest in the outcome of this litigation and the eventual administration of each 9/11 decedent's estate, the March 15 Report should be corrected.  Here, assuming that a decedent was domiciled in New York or New Jersey (the case for all of the *Ashton-Dickey* Plaintiffs represented here), New York and New Jersey State law determines the parameters of each wrongful death claim – *viz.*, who is authorized to pursue the death claim and which "heirs" are entitled to recover.  This is true also as to the Anti-Terrorism Act ("ATA") claims simply because the ATA's text and legislative history do not provide answers to these questions, and a federal court should resort to applicable state law to "fill in" the gaps in a federal, statute-created cause of action, as it has done when dealing with other federal claims for damages;  creating federal common law in such instances, and ignoring otherwise applicable state law, lacks viable precedent.

14.      In seeking wrongful death damages in this litigation, my firm presently represents only court-appointed personal representatives and members of 9/11 decedent estates ("heirs," as that latter term is defined by New York, New Jersey and Connecticut state law); my law firm has chosen to represent these limited family members (spouses and children) of 9/11 decedent estates, to avoid a conflict of interest (a battle over a distribution of wrongful death damages).[3]  My firm has rejected offers to represent parents and siblings of these decedents (who would be denied a distribution of wrongful death proceeds under applicable state law), who might affect distributions to surviving spouses and children, by diminishing their recoveries.

15.      The clients that I represent were allowed to seek compensation under the "Justice For

---

[3]      *See* Rule 1.7(1)(a) of the New York State "Rules of Professional Conduct" for lawyers ("a lawyer shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the lawyer in representing differing interests…").  Comment 1 to Rule 1.7 explains "Differing interests exist if there is a significant risk that a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected or the representation would otherwise be materially limited by the lawyer's other responsibilities or interests."

United States Victims of State Sponsored Terrorism Act Fund" ["Iran Fund" or "USVSST"], 42 U.S.C. § 10609(b)(2) a/k/a "USVSST," only after parents and siblings of 9/11 decedents had already received a distribution from the USVSST (and, thereafter, my clients received a smaller overall distribution than the parents and siblings).

16.     I continue to represent my clients zealously in claiming that they are the only "heirs" worthy of wrongful death proceeds in this MDL litigation under applicable law (and within the USVSST, where parents and siblings are siphoning large sums away from the decedent's true "heirs" because only a shared, limited fund exists).

17.     As the default judgments entered by this Court are having a dramatic effect on the distributions already made by the USVSST, and as any future distributions made from the judgments against the Taliban will likely have a serious effect on future distributions from any future-created limited fund, the *Ashton-Dickey* Plaintiffs urge the Court to reconsider the effect of state law in interpreting the damages recoverable under the ATA, and the individuals who may claim damages within this precedent-setting litigation.  *See* accompanying Declaration of Plaintiff Lisa O'Brien.

18.     Under the March 15 Report, no statute of limitations ever exists as to any defendant-in-default.  This leads not only to absurd and unjust results, it invites serious consequences.  The Magistrate Judge has opened the floodgates to thousands of potential plaintiffs who may now file 9/11 claims in the decades to come against any defendant-in-default, and this is at the expense of the judiciary and the plaintiffs who have filed timely claims.  Surely, that cannot be correct.  Untimely actions should be dismissed for the benefit not only of those who have filed timely claims, but also for effective docket control and judicial management.  Thousands of plaintiffs have already been added belatedly to this litigation against the Taliban (and Iran) and now, based the March 15 Report, more will likely follow (every individual claiming any alleged injury resulting from the aftermath of the 9/11 events).

19.     The widows and "personal representatives" of the following 9/11 decedents' estates (the "*Ashton-Dickey* Plaintiffs") are the parties I represent in filing these Objections:

  a. The Estate of Joseph D. Dickey (by widow and personal representative, Irene Dickey);

  b. The Estate of Robert D. Eaton (by widow and personal representative, Jacqueline Eaton Declaration);

  c. The Estate of James J. Kelly (by widow and personal representative, Joanne Kelly Declaration);

  d. The Estate of Timothy M. O'Brien (by widow and personal representative, Lisa O'Brien);

  e. The Estate of Michael H. Seaman (by widow and personal representative, Dara Seaman);

  f. The Estate of Robert F. Sliwak (by widow and personal representative, Susan Sliwak);

  g. The Estate of John Wallice, Jr. (by widow and personal representative, Allison Wallice);

  h. The Estate of Farrell P. Lynch (by widow and personal representative, Eileen Lynch);

  i. The Estate of Ronald M. Breitwesier (by widow and personal representative, Kristen Breitweiser); and

  j. The Estate of John J. Ryan, Jr. (by widow and personal representative, Patricia Ryan).

20.     For all of the reasons set forth in this Declaration, the accompanying Declaration of Lisa O'Brien and the accompanying "Objections" memorandum of law filed pursuant to Fed. R. Civ.

P. 72(b)(2), the *Ashton-Dickey* Plaintiffs respectfully request that the Court decline to adopt the March 15, 2023 R&R (MDL ECF#8925) and issue a new Order that dismisses the untimely actions filed against the Taliban and otherwise recognizes the applicability of the estate administration laws of each decedent's domicile state.

Dated: March 28, 2023
New York, New York

_/s/ John F. Schutty_

John F. Schutty

EXHIBIT A

## Summary of State Wrongful Death and Intestacy Statutes

| State | Wrongful Death | Intestacy | |
|-------|----------------|-----------|---|
| | Economic Portion of the Presumed Award | Priority Under Intestate Laws | When there are Children of Different Generations (ie: grandchildren) |
| New York | Damages are distributed to those eligible to recover under intestate law, in proportion to their pecuniary loss, except that when there is a surviving spouse and parents, but no children (or grandchildren), the parents will also recover in proportion to their pecuniary loss.<br><br>Pecuniary loss is defined by the New York Wrongful Death statute and cases interpreting the statute.<br><br>See N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney 2002) | 1. A spouse and no children-- the whole to the spouse.<br><br>2. A spouse and children-- $50,000 and 1/2 of the balance of the estate to the spouse, and the remainder divided equally among the children as long as they are in the same generation.<br><br>3. Children and no spouse -- the whole to the children, divided equally as long as they are in the same generation.<br><br>4. One or both parents and no spouse and no children -- the whole to the surviving parent or parents.<br><br>5. Parent's children (brothers, sisters, or their children) and no spouse, children or parent -- the whole to the parent's children, divided equally as long as they are in the same generation.<br><br>See N.Y. Est. Powers & Trusts Law § 4-1.1 (McKinney 2002) | In New York, a share is set aside for each surviving child of the closest generation to the victim where there are survivors, and those survivors receive equal shares. An equal share is also set aside for each deceased member of the first generation who left behind children. Those shares are combined and distributed in equal shares to all the members of the next generation.<br><br>The New York Practice Commentary gives the following example:<br><br>Assume that an intestate victim with a net estate of $450,000 is survived by a husband and four children, A, B, C, and D. Her husband gets $50,000 plus one-half of the residue ($200,000), and the children get the rest in equal shares ($50,000 each). If A predeceases the victim, leaving Grandchild-1, Grandchild-2, and Grandchild-3, they share his $50,000 equally ($16,667 each). If B also predeceases the victim, leaving Grandchild-4 and Grandchild-5, the five grandchildren take $20,000 each (one-fifth of the $100,000 of A and B).<br><br>See N.Y. Est. Powers & Trusts Law § 4-1.1 (McKinney 2002) (Practice Commentary) | |

This is a general summary. It is only meant to provide information to personal representatives regarding relevant state law in order to guide them in devising plans for distributions that are consistent with state law. It does not include distributions when none of the relatives set forth in these charts is alive. Calculation of the total award is determined by the Fund's regulations. This is not a substitute for state law, and to the extent state law varies with this chart, state law controls. For more information, an attorney familiar with state statutes and case law should be consulted.

## Summary of State Wrongful Death and Intestacy Statutes

| State | Wrongful Death Laws | | Intestacy Laws | |
|-------|--------------------|---|----------------|---|
| | Economic Portion of the Presumed Award | Priority Under Intestate Laws | When there are Children of Different Generations (ie. grandchildren) | |
| New Jersey | Damages are distributed to those eligible to recover under intestate law, in proportion to their pecuniary loss.<br><br>Pecuniary loss is defined by the New Jersey Wrongful Death statute and cases interpreting the statute.<br><br>See N.J. Stat. Ann. § 2A: 31-4 (2002). | 1.  Spouse and no parents or children-- everything to spouse.<br><br>2. Spouse and children - spouse takes the first $50,000 plus ½ of the balance of the estate if the children are also the spouse's. If they are not, spouse only takes ½ of the estate.  Remainder is divided equally among the children in the same generation.<br><br>3. Spouse and parents (no children) - spouse takes the first $50,000 plus ½ of the balance of the estate. Remainder is divided equally among parents.<br><br>4. No children but parents -- parents share equally.<br><br>5. No parents -- the parent's children take all (i.e. brothers and sisters or their descendants). Shares are divided equally among the children in the same generation.<br><br>See N.J. Stat. Ann. § 3B: 5-3 (2002). | The estate is divided into as many shares as there are living members of the nearest generation of children to the victim, including deceased children in the same generation who left behind children. Each surviving heir in the nearest generation to the victim receives one share and the share of each deceased person in the same generation is divided among his or her descendants in the same manner.<br><br>See N.J. Stat. Ann. § 3B: 5-3 (2002). | |

This is a general summary.  It is only meant to provide information to personal representatives regarding relevant state law in order to guide them in devising plans for distributions that are consistent with state law.  It does not include distributions when none of the relatives set forth in these charts is alive.  Calculation of the total award is determined by the Fund's regulations.  This is not a substitute for state law, and to the extent state law varies with this chart, state law controls.  For more information, an attorney familiar with state statutes and case law should be consulted.

## Summary of State Wrongful Death and Intestacy Statutes

| State | Wrongful Death Laws | Intestacy Laws | |
|---|---|---|---|
| | Economic Portion of the Presumed Award | Priority Under Intestate Laws | When there are Children of Different Generations (ie. grandchildren) |
| Connecticut | Damages are distributed to the class of people defined by the will or, if there is no will, in accordance with the intestate laws.<br><br>See Conn. Gen. Stat. § 45a-448(b) (2002). | 1. Spouse and no children or parent -- the whole estate goes to the spouse.<br><br>2. Spouse and parent (but no children) -- first $100,000 and 3/4 of the estate goes to the spouse. The remainder is divided equally among the parents.<br><br>3. Spouse and children -- spouse takes 1/2 the estate. If the children are also the spouse's, the spouse also takes $100,000. If they are not, spouse only takes 1/2. Whatever remains is divided equally among the children in the same generation.<br><br>4. Children, no spouse --- shares are divided equally among the children in the same generation.<br><br>5. No spouse or children -- shares are divided equally among the parents.<br><br>5. No children, parents, or spouse-- shares go to brothers and sisters or descendants. Shares are divided equally if takers are in the same generation. If there are no brothers and sisters, then to the "next of kin in equal degree."<br><br>See Conn. Gen. Stat. §§ 45a-437, et. seq. (2002). | The estate is divided into as many shares as there are living members of the nearest generation of children, including deceased children in the same generation who left behind children. Each surviving heir in the nearest generation to the victim receives one share and the share of each deceased person in the same generation is divided among his or her descendants in the same manner.<br><br>See Conn. Gen. Stat. §§ 45a-437, et. seq. (2002). |

This is a general summary. It is only meant to provide information to personal representatives regarding relevant state law in order to guide them in devising plans for distributions that are consistent with state law. It does not include distributions when none of the relatives set forth in these charts is alive. Calculation of the total award is determined by the Fund's regulations. This is not a substitute for state law, and to the extent state law varies with this chart, state law controls. For more information, an attorney familiar with state statutes and case law should be consulted.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)
                         -and-
All Wrongful Death Default Judgment Applications Filed Against the Taliban

**DECLARATION OF PLAINTIFF LISA O'BRIEN IN SUPPORT OF RULE
72(b)(2) OBJECTIONS TO MARCH 15 REPORT & RECOMMENDATION [ECF#8929]**

Lisa O'Brien, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under

the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of Timothy M.

O'Brien, who perished at the World Trade Center as a result of the terrorist attacks on September

11, 2001.

2.      I submit this Declaration on my own behalf as the surviving spouse of Timothy

M. O'Brien, and on behalf of the only other New York State designated "heirs" of my late

husband, our three children: John O'Brien, Madeline O'Brien, and Jacqueline O'Brien.

3.      I can affirm to the Court that my deceased husband lived with me and my three

children at a private home at 16 Wishing Well Lane, Old Brookville, New York 11545 at the

time of his death.  I can further affirm that my children and I were the only "immediate family

members" living with my husband and that no other family member lived with us (or was

dependent on my husband – financially or emotionally) at the time of his death.

4.      For the foregoing reasons, I ask that the Court to deem my children and me as the only "immediate family members" of Timothy O'Brien.

5.      My attorney (John F. Schutty) has advised me that under New York State estate administration law, when a decedent is survived by a spouse and children, they are considered the decedent's only "legal heirs" (New York estate administration law explicitly denies parents and siblings of a decedent any wrongful death damages under such circumstances).

6.      I was originally unaware that my ex-in-laws (my deceased husband's parents and siblings) had filed lawsuits (separate apart from mine) for alleged wrongful death damages sustained as a result of my husband's death.

7.      My attorney only recently completed a search of the MDL docket and advised me, for the first time, about the substantial wrongful death damages that were awarded against the Islamic Republic of Iran ("Iran") and in favor of my ex-in-laws.

8.      I was dismayed to learn how large the awards were to my ex-in-laws and even more dismayed to learn how these judgments affected/reduced the distribution of money from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") to me and my children.

9.      Here is what my attorney has told me about the default judgments that were awarded to my ex-in-laws against Iran:

| **Non-Legal Heirs of Timothy O'Brien Awarded Solatium Damages Against Iran** | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards** |
| 12/18/2015 *Burnett* ECF#1 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 7/31/2017 ECF#3666 |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 9/6/2019 ECF#5087 |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 7/31/2017 ECF#3666 |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 7/29/2019 ECF#4706 |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 4/27/2018 ECF#3986 |
| 09/04/2019 ECF#5087 | " | " | Kevin O'Brien (Sibling) | $4,250,000* 9/6/2019 ECF#5087 |
| - | *[No DJ Filed Yet]* | - | Sean O'Brien (Sibling) | *[$4,250,000] [No DJ Filed Yet]* |
| **Total Solatium Damages Awarded to Non-Heirs Thus Far** | | | | **$38,500,000** |

*We have been unable to determine when if Kevin O'Brien was added as a party-plaintiff, but he was issued a default judgment award.

10.    And here are the default judgment awards granted to me and my three children

against Iran:

-3-

| Legal Heirs of Timothy O'Brien Awarded Solatium Damages against Iran[1] | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 01/07/2020 ECF#5452 |
| " | " | " | John O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 01/07/2020 ECF#5452 |
| **Total Solatium Damages Awarded to Legal Heirs Against Iran** | | | | **$38,000,000** |

11.    Upon information and belief, awards against Iran were granted to non-heirs without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (a 10-year statute of limitations).  And non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants. Undeniably, my children and I were hurt by the award of wrongful death damages to my deceased husband's parents and siblings and resulting payments by the USVSST.

12.    My attorney now has advised that my ex-in-laws also have default judgment applications for wrongful death damages against the Taliban.

13.    Below is what my attorney has advised me:

---

[1]    The Estate of Timothy M. O'Brien was also awarded economic loss damages of $94,984,220 (ECF MDL#5376), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal heirs of my husband to a total cap of $35 million (solatium plus economic loss damages) before our USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent." What is undeniable is that the recoveries of parents and siblings necessarily decrease the Fund's assets and limit what is available to heirs. *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

-4-

| **Non-Heirs of Timothy O'Brien Who Have Requested Solatium Damages against the Taliban** | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 04/29/2017 ECF #3663 | *Burnett et al. v. Al Baraka Inv. Dev. Corp., et al.,* No. 03-cv-9849 | Motley Rice LLC | Bernard J. O'Brien (Parent) | $8,500,000 01/20/2022 ECF#7618 |
| " | " | " | Marilyn O'Brien (Parent) | $8,500,000 " " |
| " | " | " | Robert L. O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Kathleen Tighe (Sibling) | $4,250,000 " " |
| " | " | " | Patrick O'Brien (Sibling) | $4,250,000 " " |
| " | " | " | Therese A. Visconti (Sibling) | $4,250,000 |
| 10/25/2022 ECF #8679-1 | " | " | Kevin O'Brien (Sibling) | $4,250,000 09/26/2022 ECF#8559 |
| " | " | " | Sean O'Brien (Sibling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$42,500,000** |

# A303

| **Legal Heirs of Timothy O'Brien Seeking Solatium Damages against the Taliban** | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 09/10/2002 *Burlingame* ECF#1 | *Burlingame, et al. v. Laden, et al.,* 02-cv-7230 (now *Ashton*) | Law Office of John F. Schutty P.C. | Lisa O'Brien (Spouse) | $12,500,000 08/17/2022 ECF#8386 |
| " | " | " | John O'Brien (Child) | $8,500,000 " " |
| " | " | " | Madeline O'Brien (Child) | $8,500,000 " " |
| " | " | " | Jacqueline O'Brien (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

14. Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban. Again, awards to non-heirs, and those who have filed untimely claims, will, at a minimum, reduce the recoveries of my children and me from the Taliban and any limited fund of money that may be available.

15. I expressly object to the Court making wrongful death awards to "non-heirs."

16. I also object to the Court issuing awards to plaintiffs who have filed claims after the statute of limitations has expired. This Court apparently has previously determined that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent, against the statute of limitations. *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1. Please do not allow non-heirs to "piggy-back" on my timely legal action, and then reduce the wrongful death damage money paid to my late husband's estate.

Dated: New York, New York
       March 28, 2023

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Lisa O'Brien

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN RE:                                        :          <u>MEMORANDUM DECISION</u>
                                              :              <u>AND ORDER</u>
TERRORIST ATTACKS ON                          :
SEPTEMBER 11, 2001                            :          03 MDL 1570 (GBD) (SN)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

This document relates to:

      *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977
      *Burlingame, et al. v. Bin Laden, et al.*, No. 02-cv-07230
      *Bauer, et al. v. Al Qaeda Islamic Army, et al.*, No. 02-cv-07236
      *Lefit, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353

GEORGE B. DANIELS, United States District Judge:

      In July and August 2022, six groups of Plaintiffs moved this Court to issue partial final

default judgments against the Taliban and its former leader Mullah Muhammad Omar based on

injuries sustained in the September 11, 2001 terrorist attacks ("9/11 Attacks"). (*See* ECF Nos.

8274, 8298, 8335, 8363, and 8386;[1] ECF No. 75 in No. 18-cv-03353.[2]) Before this Court is

Magistrate Judge Sarah Netburn's March 15, 2023 Report and Recommendation (the "Report"),[3]

recommending that this Court grant the motions for default judgment and award damages for

certain claims against the Taliban and deny all other motions with leave to refile. (Report, ECF

No. 8929, at 1.) Magistrate Judge Netburn advised the parties that failure to file timely objections

---

[1] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict litigation. *See In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570.

[2] Counsel appears to have transposed case names and misfiled its motion against the Taliban and Muhammad Omar in *Lefit, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353, rather than in *Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 02-cv-06977. (*See* Mot. Default J., ECF No. 75, at 1 (citing case as "*Ashton, et al. v. Al Qaeda Islamic, et al.*, No. 18-cv-03353").) Neither the Taliban nor Muhammad Omar is a named Defendant in *Lefit, et al. v. Kingdom of Saudi Arabia, et al.*, No. 18-cv-03353. (*See also Ashton* Pls.' Mar. 21, 2023 Letter, ECF No. 8942.)

[3] Magistrate Judge Netburn amended her original March 14, 2023 Report and Recommendation on the motions (ECF No. 8925) with updated exhibit numbers and a revised appendix. (Report at 1 n.2.)

1

to the Report would constitute a waiver on appeal. (*Id.* at 15.) *Dickey* Plaintiffs filed objections on March 28, 2023, (*see* Objections, ECF No. 8959).[4] Because *Dickey* Plaintiffs filed timely objections to the Report regarding default judgments both for parents and siblings of 9/11 victims and for claims filed after the statute of limitations, this Court undertakes a *de novo* review of those portions of the Report. After doing so, this Court ADOPTS the Report.

## I.   BACKGROUND[5]

Plaintiffs filed a complaint seeking to hold the Taliban and Mullah Muhammad Omar liable for injuries caused by the 9/11 Attacks. Pursuant to Court order (ECF No. 445), Plaintiffs served the Taliban and Omar by publication. (*See* 2005 Service Verifications, ECF Nos. 709 and 735.) On September 30, 2005, Plaintiffs filed their Sixth Amended Consolidated Master Complaint (ECF No. 1463), the operative complaint for these motions. (*See* Report at 2.) This complaint continued to name the Taliban and Omar as Defendants, with most Plaintiffs also named in the complaint and others added later. (*Id.* (citing Sixth Am. Consolidated Master Compl.; also citing Notice Am., ECF No. 7856).) After Defendants neither responded nor appeared, Plaintiffs moved for entry of default, which this Court granted on May 12, 2006. (*See* Order, ECF No. 1797.)

The present motions seek partial final default judgment against the Taliban and Omar on behalf of different groups of Plaintiffs: U.S. citizens and noncitizens, estate and personal injury Plaintiffs, and immediate family members and their functional equivalents. (*See* Report at 2 (listing motions).) These Plaintiffs have all been awarded relief against Iran and now seek similar damages against the Taliban and Omar. (*Id.*)

---

[4] Given Defendant's default in all related cases, no responses from Defendant are expected.

[5] This Court assumes familiarity with the general background of this multidistrict litigation and will only restate factual background as necessary to address the pending motions. Because the Report is adopted in full unless otherwise noted, this Court refers to facts detailed in the Report throughout this decision.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 120 of 186
**A307**
Case 1:03-md-01570-GBD-SN   Document 8973   Filed 03/30/23   Page 3 of 11

## II.   LEGAL STANDARDS

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth in a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

### B. Default Judgments

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter default judgments against defendants who fail to appear in or defend cases against them. This process includes two steps: (1) determining that the defendant defaulted, and then (2) entering a default judgment. *Nationsbank of Fla. v. Banco Exterior de España*, 867 F. Supp. 167, 174 n. 9 (S.D.N.Y. 1994); *see also* Fed. R. Civ. P. 55(a)–(b). In defaulting, a defendant admits "all of the factual allegations of the complaint, except those relating to damages." *Au Bon Pain Corp. v. Artect, Inc.*,

3

653 F.2d 61, 65 (2d Cir. 1981). A court must evaluate those admissions to determine whether there is "a sufficient basis in the pleadings" to establish defendants' liability. *Di Marco Constructors, LLC v. Sinacola, Inc.*, 407 F. Supp. 2d 442, 445 (W.D.N.Y. 2006) (cleaned up); *accord Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990). If there is a sufficient basis, the court then assesses damages, relying on plaintiffs' "affidavits or documentary evidence in lieu of an evidentiary hearing." *DIRECTV, Inc. v. Hamilton*, 215 F.R.D. 460, 462 (S.D.N.Y. 2003); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1992).

### III.   MAGISTRATE JUDGE NETBURN DID NOT ERR IN RECOMMENDING THAT ONLY CLAIMS BROUGHT BY U.S. CITIZENS AGAINST THE TALIBAN SHOULD BE GRANTED

Magistrate Judge Netburn properly assessed three groups of claims: (1) against Muhammad Omar; (2) by noncitizens against the Taliban; and (3) by U.S. citizens against the Taliban. (Report at 4-14.) This Court denies all claims against Omar. This Court denies without prejudice to refile all claims against the Taliban brought by noncitizens. This Court grants judgment against the Taliban on claims brought by U.S. citizens for damages consistent with prior awards against Iran.

#### A.  Defendant Muhammad Omar Is Dismissed, and All Motions for Default Judgments against Omar Are Denied as Moot

Plaintiffs' claims against former Taliban leader Muhammad Omar are not viable because he is dead and the Plaintiffs' Executive Committees ("PECs") do not intend to substitute any party for him. (Report at 4 (citing PECs' Sept. 16, 2022 Letter, ECF No. 8535; also citing Sept. 19, 2022 Report and Recommendation, ECF No. 8540).) Magistrate Judge Netburn previously recommended that all claims against Omar be dismissed, to which no party objected. (*See* Sept. 19, 2022 Report and Recommendation.) Finding "no clear error on the face of the record," *see Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (citation omitted), this Court adopts Magistrate Judge Netburn's September 19, 2022 Report and Recommendation

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 122 of 186
**A309**
Case 1:03-md-01570-GBD-SN   Document 8973   Filed 03/30/23   Page 5 of 11

as to Muhammad Omar.  Muhammad Omar is therefore dismissed from all actions in this multidistrict litigation pursuant to Federal Rule of Civil Procedure 25(a)(1).  In accordance with the Report at issue for the present motions, this Court denies all motions for default judgments against Omar, (*see* Report at 4), leaving the pending motions for default against the Taliban.

### B. All Noncitizens' Motions for Default Judgment Are Denied without Prejudice

Motions by noncitizen estates and noncitizen solatium Plaintiffs ("noncitizen Plaintiffs") against the Taliban cite a number of causes of action under federal and state law.  (*See id.*)  The complaint, however, includes only three of these grounds: the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333 (Count Four); the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350 note (Count Five); and state law (Counts One, Two, and Three).  (Report at 4–5 (citing Sixth Am. Consolidated Master Compl. ¶¶ 463–83).)

Magistrate Judge Netburn properly found that the ATA permits claims only by an injured "national of the United States . . . or his or her estate, survivors, or heirs," 18 U.S.C. § 2333(a), while TVPA claims may only be against individuals.  (Report at 5.)  Neither statute permits noncitizen Plaintiffs' claims against the unincorporated association of the Taliban.[6]  As for state law, noncitizen Plaintiffs assert three claims: "Wrongful Death Based on Intentional Murder," "Survival Damages Based on Intentional Murder," and "Assault and Battery."  (Report at 5 (citing Sixth Am. Consolidated Master Compl. ¶¶ 463–75.)  Noncitizen Plaintiffs, however, fail to identify the specific "causes of action for which the plaintiffs seek damages," rendering this Court unable to determine with certainty the appropriate damages for each noncitizen Plaintiff.  (*Id.* (quoting Jul. 11, 2022 Order, ECF No. 8198 (listing requirements for default judgment motions)).)

------------------------------
[6] Because noncitizen solatium Plaintiffs here do not clearly identify the nationalities of the decedents and bring their claims pursuant to ATA § 2333, this Court declines to rule on whether § 2333 permits noncitizens to bring solatium claims where decedent family members were U.S. citizens. (*See* Report at 5 n.3.)

This Court therefore denies without prejudice the motions brought by noncitizen Plaintiffs and directs that they may refile. In accordance with this Court's prior orders and Magistrate Judge Netburn's Report, any renewed motions are to address the bases for jurisdiction, address the relevant state or federal law authorizing the cause of action, identify the allegations in the complaint establishing liability for each cause of action, provide exhibits that designate the cause of action relevant to each request for damages, and assess the scope of damages available under the relevant law. (*See id.* at 5–6 (citing Jul. 11, 2022 Order).)

### C.  U.S. Citizens' Motions for Default Judgment under the ATA against the Taliban Are Granted

In evaluating U.S. citizen Plaintiffs' motions, Magistrate Judge Netburn properly determined (1) who may sue under the ATA, (2) that the Taliban forfeited its statute of limitations defense, and (3) that citizen Plaintiffs are entitled to default judgment awards against the Taliban.

#### *1.  The Report Correctly Determined Who May Sue under the ATA*

The ATA permits "any national of the United States" or "his or her estate, survivors, or heirs" to sue for "injur[ies]" caused by acts of terrorism. 18 U.S.C. § 2333(a). *Dickey* Plaintiffs argue that the ATA is "silent" as to which individuals may bring an ATA wrongful death claim and who qualifies as "survivors" or "heirs." (*See* Objections at 2–17.) *Dickey* Plaintiffs thus urge this Court to rely on state common law as a "gap filler" for determining who has a cause of action under the ATA, thereby ruling that only legal heirs have such a right. (*Id.* at 9–13.)

Magistrate Judge Netburn correctly found that immediate family members of people killed in terrorist attacks, not just their legal heirs, may sue under the ATA. (*See* Report 7–8.) First, a wrongful death caused by an act of international terrorism constitutes an "injury" under the ATA. *See, e.g., Honickman v. BLOM Bank SAL*, 6 F.4th 487, 490 (2d Cir. 2021) ("Plaintiffs-Appellants and their family members . . . were injured or *killed* in attacks carried out by Hamas" and sued

6

under the ATA, 18 U.S.C. § 2333) (emphasis added). Second, by its plain text, section 2333 distinguishes between "survivors" and "heirs." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (courts should "give effect . . . to every word Congress used."). The ATA's statutory language is therefore clear both as to who may bring an ATA wrongful death claim and that individuals beyond "heirs" may sue, notwithstanding the *Dickey* Plaintiffs' reliance on unclear legislative history concerning the ATA. (*See* Objections at 4–6); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not . . . allow[] ambiguous legislative history to muddy clear statutory language.")

Moreover, the ability of parents and siblings to seek relief for the 9/11 Attacks has longstanding support in both the law of this multidistrict litigation, *see, e.g., Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 234–37 (S.D.N.Y. 2003) (awarding default judgments to parents and siblings); (Oct. 3, 2012 Order, ECF No. 2623 (same under the Foreign Sovereign Immunities Act with current framework)), and in other ATA cases, *see e.g., Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 263 (D.R.I. 2004) (finding that use of the term "survivors" in § 2333(a) demonstrates Congress sought to extend liability to "family members who are not legal heirs"); *Knox v. Palestine Liberation Organization*, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) (holding parents and siblings are "survivors" under the ATA). This interpretation of the ATA does not depend on the choice of law analysis at issue in *Ungar* and *Knox. See Knox*, 442 F. Supp. 2d at 75 ("The *Ungar* court concluded that, based on the legislative history of the ATA and the underlying purpose of the ATA . . . , the term 'survivors' as used in § 2333(a) includes parents and grown siblings of United States nationals killed by an act of international terrorism."); (*Contra* Objections at 13–15).

7

Furthermore, the Court "has *discretion* [but is not required] to borrow from state law when there are deficiencies in the federal statutory scheme." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (emphasis added). This Court need not restrict to state law the interpretation of the term "survivors" in the ATA, particularly in light of the "distinct need for nationwide legal standards" in the ATA context. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98 (1991) (explaining when federal courts should "fill the interstices of federal remedial schemes with uniform federal rules"). Magistrate Judge Netburn thus correctly held that Americans directly injured, estates and heirs of Americans killed, and immediate family members (and functional equivalents of immediate family members) of Americans killed in the 9/11 Attacks can all bring claims under § 2333. (Report at 8.)

### 2. The Report Properly Declined to Invoke the Statute of Limitations Sua Sponte

"District court[s] ordinarily should not raise [the statute of limitations] *sua sponte*," *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987), even in favor of a defendant who has never appeared in the case, *Sec. & Exch. Comm'n v. Amerindo Inv. Advisors*, 639 F. App'x 752, 754 (2d Cir. 2016); *see also Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1114–15 (D.C. Cir. 2019) (holding that district court "lacked authority or discretion to *sua sponte* raise the terrorism exception's statute of limitations"). On January 2, 2013, Congress extended the statute of limitations for ATA cases related to the 9/11 Attacks to January 2, 2019. *See* Nat'l Def. Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). *Dickey* Plaintiffs urge this Court to deny other Plaintiffs' motions for default judgment filed after that date.[7] (*See* Objections 17–33.) Because the statute of limitations is "an affirmative defense that is waived [or

---

[7] *Dickey* Plaintiffs lack standing to assert the Taliban's statute of limitations defense against other Plaintiffs; it is thus incumbent on this Court to evaluate raising the defense *sua sponte*. (*See* Report at 9 n.5.)

forfeited] if not raised," *Kropelnicki v. Siegel*, 290 F.3d 118, 130 n.7 (2d Cir. 2002), and a district court raising the defense *sua sponte* is disfavored, this Court declines to dismiss *sua sponte* claims by other Plaintiffs against the Taliban as time-barred.

### 3. U.S. Citizen Plaintiffs Are Entitled to Default Judgment Awards

This Court has jurisdiction over the U.S. citizens' default judgment motions under the ATA, (*see* Report at 9–11), and Plaintiffs' allegations establish the Taliban's primary and aiding-and-abetting liability in the 9/11 Attacks,[8] (*see id.* at 11-13). This Court therefore enters default judgment against the Taliban in favor of U.S. citizen Plaintiffs and must assess Plaintiffs' damages.[9] The ATA supports "threefold" damages for pain and suffering, economic loss, and loss of solatium. 18 U.S.C. § 2333; (*see also* Report at 13 (citing cases)). This Court has previously awarded Plaintiffs such damages against Iran. (Report at 13 (citing orders).) Magistrate Judge Netburn correctly adopted and applied to the Taliban this Court's prior damages determinations of pain and suffering and economic damages for the estates of people killed, pain and suffering damages for people injured, and solatium damages for immediate family members (and their functional equivalents) of people killed in the 9/11 Attacks. (*Id.* (citing Plaintiffs' exhibits; also citing Appendix A (calculating damages for *Dickey* Plaintiffs)).) Having reviewed the exhibits filed by Plaintiffs against Iran and the new economic damages sought by the *Burlingame II* Plaintiffs (ECF No. 8364-1), this Court adopts the Report's recommendations and awards treble damages, as provided under § 2333, against the Taliban. (*See* Report at 13-14.)

---

[8] As alleged by Plaintiffs, the Taliban is a non-sovereign "unincorporated association." (*See* Report at 10; *see also* Feb. 21, 2023 Decision, ECF No. 8866, at 22–29 (holding that the United States has not recognized the Taliban as the government of Afghanistan and the Judiciary cannot do so).)

[9] Five citizen Plaintiffs (Diane Genco, Janlyn Scauso, Laurie Spampinato, Kimberly Trudel, and Cella Woo-Yuen) are excluded at counsel's request. (Report at 13 n.7 (citing Oct. 20, 2022 Letter, ECF No. 8660).)

Awards are subject to all caveats and corrections noted below and in Report Appendix A. Because U.S. citizens Plaintiffs named in the motion in Case No. 18-cv-03353 (ECF No. 75) have failed to demonstrate that they appear in the Sixth Amended Consolidated Master Complaint at ECF No. 1463, (*see* Report App. A), or file sufficient evidence as to economic damages and solatium damages, that motion is denied without prejudice and with leave to refile.[10]

## IV.   CONCLUSION

This Court GRANTS partial final default judgment as to U.S. citizen Plaintiffs listed in ECF Nos. 8275-1, 8275-3 (other than the five Plaintiffs' claims that will be adjudicated with the motion at ECF No. 8568, *see supra* note 9), 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3,[11] and Report Appendix A, subject to the corrections and caveats described therein.[12] It is

**ORDERED** that U.S. citizen Plaintiffs are awarded damages as provided in ECF Nos. 8275-1,[13] 8275-3,[14] 8364-1, 8380-1, 8380-2, 8490-1, 8755-1, 8755-3, and Report Appendix A;[15] and it is

---

[10] *See also supra* note 2 (noting motion also filed in case in which the Taliban is not a Defendant).

[11] Decedent columns should read "Michael Bocchino" and Plaintiff columns should read "Mary Ann Falzone, as Personal Representative of the Estate of Thomas Bocchino." (*See* ECF No. 8755-3, ¶ 3.)

[12] In accordance with the Report's recommendations and this Court's February 21, 2023 Decision denying Plaintiffs' motion to satisfy their judgments with DAB funds, the PECs' separate letter request to include "stay" language, staying the effect of default judgments issued to these new default judgment Plaintiffs, is DENIED. (*Contra* PECs' Mar. 24, 2023 Letter, ECF No. 8951.)

[13] Trebled damages of $18,893,874 are awarded to the Estate of Christine Barbuto (pain and suffering of $2,000,000 and economic loss of $4,297,958 for total compensatory of $6,297,958). (*Compare* ECF No. 8275-1, ¶ 27 (listing economic damages as $2,368,810). *with* ECF No. 3370-1, at 1 (listing economic damages as $4,297,958).)

[14] Trebled solatium damages of $25,500,000 are awarded to Frederick Irby (compensatory of $8,500,000). (*Compare* ECF No. 8275-3, ¶ 250 (relationship as parent but the amount of $4,250,000 for siblings), *with* ECF No. 4880, ¶ 441 (relationship as parent and the amount of $8,500,000 for parents).)

[15] Trebled solatium damages of $25,500,000 are also awarded to Anne Lynch, the child of decedent Farrell Lynch. (*Compare* Report at 17, *with* Decl. John F. Schutty, ECF No. 8387-8, at 4.)

**ORDERED** that prejudgment interest is awarded at a rate of 4.96 percent per annum, all interest compounded annually for the period from September 11, 2001 until the date of the judgment for damages; and it is

**ORDERED** that these Plaintiffs may apply for punitive, economic, and/or other damages at a later date, to the extent such damages were not sought in these motions.

Default judgment motion at ECF No. 75 in Case No. 18-cv-03353 and all noncitizen Plaintiffs' motions are DENIED without prejudice and with leave to refile. Muhammad Omar is dismissed from all actions in this multidistrict litigation. The Clerk of Court is directed to close the open motions (ECF Nos. 8274, 8298, 8335, 8363, 8386, and 8959 in 03-md-01570; ECF Nos. 1691, 1701, 1708, 1713, 1720, and 1934 in 02-cv-06977; ECF Nos. 230 and 234 in 02-cv-07230; ECF No. 167 in 02-cv-07236; ECF No. 75 in 18-cv-03353).

Dated: March 30, 2023
       New York, New York

                                        SO ORDERED.

                                        *George B. Daniels*
                                        GEORGE B. DANIELS
                                        United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
**In re:**

                                                          **03-MD-01570 (GBD)(SN)**

**TERRORIST ATTACKS ON SEPTEMBER 11, 2001**
-----------------------------------------------------------------------X   **ORAL ARGUMENT**
This document relates to:                                  **REQUESTED**

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)
AND ALL WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN

**NOTICE OF MOTION FOR AN ORDER CERTIFYING**
**THE COURT'S MARCH 30 ORDER [ECF#8973] FOR APPEAL & MOTION FOR**
**AN ORDER STAYING CLAIMS AGAINST THE TALIBAN PENDING THE APPEAL**

PLEASE TAKE NOTICE that, on April 20, 2023, at 9:30 a.m., or as soon thereafter as

counsel may be heard, in Courtroom 11A of the Daniel Patrick Moynihan United States

Courthouse, located at 500 Pearl Street, New York, NY, the *Ashton-Dickey* Plaintiffs* will and

hereby do move, pursuant to Fed. Rule of App. P. 5(a)(3) and 28 U.S.C. § 1292(b), for an order

certifying the Court's March 30, 2023 "Memorandum Decision and Order" (the "Order") (MDL

ECF#8973) affirming the Report & Recommendation of Magistrate Judge Sarah Netburn (ECF

MDL#8929) (collectively, the "Order," since the March 30 Order adopts the reasoning of the

Report & Recommendation in virtually all respects), for an interlocutory appeal.  The *Ashton-*

*Dickey* Plaintiffs seek this certification to petition the United States Court of Appeals for the

Second Circuit to review the Order's holdings that:  (1) Congress intended to preempt state

wrongful death distribution law in enacting the Anti-Terrorism Act, 18 U.S.C. § 2333, and (2)

the institutional interests of this Court do *not* require the enforcement of a statute of limitations

against a defendant-in-default (in a two-decades-old litigation), despite an undeniable

consequence: an ever-expanding-court-docket for decades to come.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 130 of 186
A317
Case 1:03-md-01570-GBD-SN   Document 8992   Filed 04/06/23   Page 2 of 2

District courts granting 28 U.S.C. § 1292(b) certification frequently also grant a stay of proceedings in the district court pending the appellate court's determination of the appeal, thus ensuring that the goal of interlocutory appeal – to avoid needless proceedings in the district court – is not undermined.  The *Ashton-Dickey* Plaintiffs therefore ask the Court to grant a stay as to all claims against the Taliban until the requested appeal is resolved in the Second Circuit.

This request is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the Order, all pleadings and papers on file with the Court in this action, and on such other matters as may be presented to the Court at or before the hearing of this Motion.

Dated:  April 6, 2023                                  Respectfully submitted,

By: _John F. Schutty_

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs*
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

* The *Ashton-Dickey* Plaintiffs are the widows and personal representatives representing the estates of their late husbands, 9/11 decedents (their deceased husband's names follow in parentheses after their names: Irene Dickey (Joseph Dickey), Lisa O'Brien (Timothy O'Brien), Dara Seaman (Michael Seaman), Jacqueline Eaton (Robert Eaton), Joanne Kelly (James Kelly), Allison Wallice (John Wallice, Jr.), Susan Sliwak (Robert Sliwak), Eileen Lynch (Farrell Lynch), Patricia Ryan (John Ryan, Jr.) and Kristen Breitweiser (Ronald Breitweiser).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
In re:

TERRORIST ATTACKS ON SEPTEMBER 11, 2001

                                                           03-MD-01570 (GBD)(SN)

------------------------------------------------------------------------X
This document relates to:

    *Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

    AND ALL WRONGFUL DEATH ACTIONS FILED AGAINST THE TALIBAN

***ASHTON-DICKEY* PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) AND REQUEST FOR A STAY OF ALL PROCEEDINGS AGAINST THE TALIBAN PENDING THIS APPEAL**

Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs

445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................1

SUMMARY OF ARGUMENT ...................................................................................................6

ARGUMENT ...............................................................................................................................7

I.      The Interpretation of the ATA Presents a Controlling Question of Law That Can Resolve
Thousands of Wrongful Death Claims in This Litigation. ...................................................7

II.     There Are, at a Minimum, Substantial Grounds for Difference of Opinion About Who
Qualifies to Pursue Wrongful Death Damages Under the ATA and When Wrongful
Death Actions Had to Be Filed. ...........................................................................................7

     A.    The Statute's Plain Language and the "Canons of Construction" Support the *Ashton-
Dickey* Plaintiffs' Reading of the ATA. ..........................................................................9

     B.    Enforcement of the ATA's Statute of Limitations Would Not Only Protect Plaintiffs
Who Have Filed Timely Claims, Such Action Would Promote Important Institutional
Interests of the Court – the Reduction of an Ever-Expanding, *Ad Infinitum* Docket. ...11

III.    An Immediate Appeal Will Advance the Ultimate Termination of the Litigation & Will
Resolve Uncertainty for Thousands of Plaintiffs. ...............................................................14

     A.    An Immediate Appeal Could Lead to the Prompt End of This Litigation for Thousands
of Plaintiffs ......................................................................................................................14

     B.    An Immediate Appeal Would Resolve Uncertainty for Thousands of Plaintiffs ...........15

IV.    The Wrongful Death Actions Against the Taliban Should Be
Stayed Pending the Determination of the Interlocutory Appeal .......................................15

CONCLUSION ............................................................................................................................16

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*Arizona v. California,*
    530 U.S. 392 (2000) ................................................................................................ 12

*Baker v. Cuomo,*
    58 F.3d 814 (2d Cir.), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996)
    (en banc) (per curiam) ............................................................................................. 8

*Boim v. Quranic Literacy Inst. & Holy Land Found.*
    291 F.3d 1000 (7th Cir. 2002) ................................................................................. 3

*Brandon v. Travelers Ins. Co.,*
    18 F.3d 1321 (5th Cir. 1994) (abrogated on other grounds by, *Kennedy v. Plan Adm'r*
    *for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)) .......................................... 10

*Burnett v. New York Cent. R.R. Co.,*
    380 U.S. 424 (1965) ............................................................................................... 13

*Capitol Records, LLC v. Vimeo, LLC,*
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) (Abrams, J.) ............................................ 7, 9, 14, 15

*Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC,*
    No. 11 Civ. 3238 (ALC) (GWG), 2015 WL 545565 (S.D.N.Y. Feb. 9, 2015) .................. 11

*City of New York v. Beretta U.S.A. Corp.,*
    401 F. Supp. 2d 244 (E.D.N.Y. 2005) ................................................................... 15

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949) ................................................................................................. 6

*De Sylva v. Ballentine,*
    351 U.S. 570 (1956) ............................................................................................... 10

*Donell v. Keppers,*
    835 F. Supp. 2d 871 (S.D. Cal. 2011) .................................................................... 8

*Estates of Ungar ex reI. Strachman  v. Palestinian Auth.,*
    304 F.Supp.2d 232 (D.R.I. 2004) ............................................................................ 2

*Geron v. Robinson & Cole LLP,*
    476 B.R. 732 (S.D.N.Y. 2012) .............................................................................. 15

*In re Duplan Corp.,*
    591 F.2d 139 (2d Cir. 1978) ................................................................................... 14

*Ivani Contracting Corp. v. City of New York*,
103 F.3d 257 (2d Cir. 1997) ..................................................................... 13

*J & J Sports Prods., Inc. v. Martinez*,
2010 WL 1038467 (N.D. Cal. Mar. 2, 2010) ............................................. 8

*Joe Hand Promotions, Inc. v. Tu Minh Nguyen*,
2011 WL 1642306 (N.D. Cal. May 2, 2011) .............................................. 8

*Kai Wu Chan v. Reno*,
932 F. Supp. 535 (S.D.N.Y. 1996) ........................................................... 11

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990) ................................................................... 5, 7

*Knox v. Palestine Liberation Organization*,
442 F. Supp. 2d 62 (S.D.N.Y. 2006) ......................................................... 2

*Koehler v. Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996) ................................................................... 16

*Lee v. Coughlin*,
26 F. Supp. 2d 615 (S.D.N.Y. 1998) (Sotomayor, J.) .............................. 15

*Leonhard v. United States*,
633 F.2d 599 (2d Cir. 1980) ................................................................... 12

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962) ...................................................................... 8, 12, 13

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) ............................................................................... 10

*McGourkey v. Toledo & Ohio Cent. Ry. Co.*,
146 U.S. 536 (1892) ................................................................................. 4

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) ................................................................................. 5

*Nice v. Centennial Area School Dist.*,
98 F. Supp. 2d 665 (E.D. Pa. 2000) ....................................................... 10

*Obduskey v. McCarthy & Holthus LLP*,
139 S. Ct. 1029 (2019) ........................................................................... 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) ................................................................................. 9

*Rampersad v. Deutsche Bank Sec., Inc.*,
2004 WL 616132 (S.D.N.Y. Mar. 30, 2004) ............................................. 8

iv

*Rederi A/B Disa v. Cunard S.S. Co.*,
   389 U.S. 852 (1967) (Black, J., dissenting), (2d Cir. 1967) ................................................ 4

*Rotella v. Wood*,
   528 U.S. 549 (2000) .............................................................................................................. 13

*Shiekh v. Republic of Sudan*,
   308 F.Supp.3d 46 (D.D.C. 2018), *rev'd on other grounds by*, *Maalouf v. Republic of
   Iran*, 923 F.3d 1095 (D.C. Cir. 2019) .................................................................................... 12

*Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*,
   486 F. App'x 671 (9th Cir. 2012) ........................................................................................... 8

*Transp. Workers Union of Am., Local 100 v. New York City Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005) .................................................................................... 15

*United States v. Am. Trucking Ass'ns, Inc.*,
   310 U.S. 534 (1940) ................................................................................................................ 9

*Will v. Hallock*,
   546 U.S. 345 (2006) ................................................................................................................ 7

*Wright v. Rensselaer Cty Jail*,
   771 Fed.Appx. 58 (2d Cir. 2019) ........................................................................................... 12

**Statutes**

Anti-Terrorism Act, 18 U.S.C. § 2333 ................................................................................... *passim*

28 U.S.C. § 1292(b) ................................................................................................................ *passim*

**Other Authorities**

National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, §
   1251(c), 126 Stat. 1632, 2017 (2013) .................................................................................. 11

Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506 ..................................................... 1

137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) ................. 3

Andrew S. Pollis, *The Need for Non-Discretionary Interlocutory Appellate Review in
   Multidistrict Litigation*, 79 Fordham L. Rev. 1643, 1646 (2011) ........................................ 14

Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022) .................................................... 4

Federal Rule of Civil Procedure 60 .......................................................................................... 11

**INTRODUCTION**

The *Ashton-Dickey* Plaintiffs respectfully request that this Court certify for interlocutory appeal the March 30, 2023 "Memorandum Decision and Order" (the "Order") (MDL ECF#8973) affirming the Report & Recommendation of Magistrate Judge Sarah Netburn (ECF MDL#8929) (collectively, the "Order"). The Order adopts the reasoning of the Report & Recommendation in virtually all respects. Accordingly, for convenience, this memorandum cites to the Order, but the arguments herein apply equally to the Report & Recommendation.

The Order meets all the requirements for interlocutory review. Prompt appellate review is necessary to address controlling questions of law that could obviate the need for prolonged, costly, and complex litigation, and resolve uncertainty in terrorist actions brought not only in this Circuit but also in other federal courts throughout the United States—uncertainty that will be sown by an irreconcilable conflict between the interpretation of law adopted in the Order, on the one hand, the plain language and history of the Anti-Terrorism Act ("ATA"),[1] 18 U.S.C. § 2333, and the practical reality of not enforcing a statute of limitations against a defendant-in-default that encourages the filing of lawsuits *ad infinitum*.

***First***, the Order decided an issue of first impression in the Second Circuit – whether the estate administration laws of a decedent's domicile state, which definitively detail which "heirs" are qualified to receive wrongful death damages, are *preempted* by the ATA's statutory language (in § 2333) and/or the legislative history of the ATA (*viz.*, does the ATA's express language and/or its legislative history require the preemption of otherwise applicable state law). This is a controlling question of law because the only claims asserted against the defendant-in-default (the

---

[1]     The ATA provides a private right of action for any United States national injured by an act of international terrorism. 18 U.S.C. § 2333 *et seq.*, is the civil remedies provision of the Anti-Terrorism Act, added Oct. 29, 1992, Pub. L. No. 102-572, Title X, § 1003(a)(4), 106 Stat. 4506, codified as amended.

Taliban) are based on: (1) state law and (2) the ATA.  If the *Ashton-Dickey* Plaintiffs'

interpretation of the statute is adopted, and if state law was never intended to be preempted by §

2333, the claims of thousands of plaintiffs would be dismissed in their entirety.  The parties

would certainly benefit from an immediate appellate review of the Order on this issue.

**Second**, there is at least substantial ground for difference of opinion regarding the proper

interpretation of the statutory language.  The *Ashton-Dickey* Plaintiffs contend that the precise

phrase "estate, survivors, or heirs" cannot be twisted and contorted to mean "immediate family

members" (whatever that latter phrase means in legal terms), as this Court determined.  The

Court adopted a reading of the ATA that simply cannot be squared with the plain language of the

statute ("estate, survivors, or heirs" = "immediate family members").  And, this Court's

interpretation of the phrase conflicts with the interpretation of the statute by the two district court

decisions,[2] cited in the Order (Order at 7-8 ) as supporting its interpretation, because both of

these decisions looked to the decedent's domicile to determine how the relevant language should

be interpreted, with one of those decisions stating in terms, absolutely contrary to the Order here,

that "[t]he ATA does not define the terms 'survivors' or 'heirs,' *terms that are usually defined by*

*state law.*"  *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006).

Choice of law principles caused those two district judges to apply the law of Israel and that is the

only reason why damages were awarded to parents and siblings in those two cases (it was not

due to an "interpretation" of the language in the statute).  Those two decisions provide precedent

---

[2]      *Knox v. Palestine Liberation Organization,* 442 F. Supp. 2d 62, 74 (S.D.N.Y. 2006) ("*Knox*")
(the court applied the estate administration law of the decedent's domicile (Israel) in determining "heirs"
under the ATA) (Order at 7); *Estates of Ungar ex reI. Strachman v. Palestinian Auth.,* 304 F.Supp.2d
232, 261 (D.R.I. 2004) ("*Ungar*") ("the meaning of the terms "survivors" and "heirs" as used in § 2333(a)
cannot be determined by referring to the law of a particular [American] state. . . Israeli law provides that
[law]" in this instance because "Yaron Ungar had not been a resident of any state in this country since he
was fourteen years old.") (Order at 7).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 138 of 186
A325
Case 1:03-md-01570-GBD-SN   Document 8993   Filed 04/06/23   Page 8 of 21

for applying the laws of the decedents' domiciles in determining how wrongful death damages should be distributed, which supports the interpretation of the statute suggested by the *Ashton-Dickey* Plaintiffs.

**Third,** the legislative history of the ATA does not support this Court's claim that Congress intended the ATA to preempt state law on estate administration with respect to the distributees of wrongful death damages. In fact, the legislative history shows the exact opposite – Congress sought only "*to codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law.*" *Boim v. Quranic Literacy Inst. & Holy Land Found.* 291 F.3d 1000, 1010 (7th Cir. 2002) (emphasis added); *see also* 137 CONG REC. S4511-04 (daily ed. Apr. 16, 1991) (statement of Sen. Grassley) (emphasis added) (The ATA accords victims of terrorism "*the remedies of American tort law*, including treble damages and attorney's fees."). The ATA purposely did not set forth a detailed liability scheme, as that was left to general tort law (state law); the ATA merely intended to codify that additional damages might be sought by victims of terrorism to punish wrongdoers (treble damages and attorneys' fees that might not be recoverable under the common law) *in traditional wrongful death actions*. *Id*. In no way has this Court demonstrated that Congress intended to supplant/preempt traditional tort law developed by each state.

**Fourth,** the *Ashton-Dickey* Plaintiffs suggest that it is in the best interests of this Court to enforce a statute of limitations in this MDL litigation as against defendants-in-default since the practical reality of not enforcing a time bar will force the courthouse doors to remain open to new 9/11 legal actions for decades to come. That cannot be the law. This court is already burdened by extraordinary docket congestion. The appellate court should surely weigh in on this very important question.

*Fifth*, an interlocutory appeal would materially advance the ultimate termination of thousands of lawsuits and resolve nationwide-wide uncertainty as to: (1) who is a proper plaintiff in a "terrorist wrongful death case," and (2) when their lawsuit must be filed against a defendant-in-default.  If the Court of Appeals were to agree to enforce state law and a statute of limitations, that undeniably would put an end to thousands of lawsuits, and thereby avoid costly and burdensome litigation for both the parties and the Court.  There could not be a clearer need for appellate review.

*Sixth,* for all intents and purposes, the Order resolves all the wrongful death claims against the Taliban, once formal dollar awards are calculated for each plaintiff asserting such claims.  Although the Court may title its ultimate results through individual "partial default judgments," these will be final as to each claimant and may result in an award from some fund or limited source (as happened with all the default judgments issued against the Islamic Republic of Iran, where partial final judgments resulted in awards from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST")).[3]  In short, this court is entering or will be entering "final" judgments[4] in favor of thousands and thousands of plaintiffs and, for this

---

[3]      If any money is recovered from any damage awards against the Taliban, it may come from the assets held in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), held at the Federal Reserve Bank of New York (the "FRBNY").  When the Republic of Afghanistan fell in August 2021, the DAB held approximately $7 billion in assets at the FRBNY.  *See* ECF MDL#8866 at 6.  In February 2022, President Biden issued an executive order titled "Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan."  Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022).  The frozen, limited assets of the DAB are now sought by the plaintiffs herein, through appeal from an Order of this Court.  ECF MDL#8866.  And a bill has been prepared, the so-called "Weber Bill" , a bill that seeks to redirect $3.5 billion of frozen Afghan funds into the USVSST Fund, so that all U.S. victims of terror, including military and civilian victims and the families of deceased victims, will be equitably compensated for their losses.  The legislation would amend President Biden's executive order dictating that funds be distributed to a small subset of U.S. terror victims through the American legal system.  *See* https://weber.house.gov/news/documentsingle.aspx?DocumentID=1333

[4]      Justice Hugo Black observed that the Court's decisions "dealing with the meaning of finality have provided no satisfactory definition of this term."  *Rederi A/B Disa v. Cunard S.S. Co.*, 389 U.S. 852, 854 (1967) (Black, J., dissenting), *denying cert. to* 376 F.2d 125 (2d Cir. 1967); *see also McGourkey v. Toledo*

reason, this Court should certify its Order for appeal now.

*Seventh,* interlocutory review is particularly appropriate because the issues are of significance to the general public.  This litigation is already over two decades old and has been newsworthy over its long history.  This Court should do what is right and just – provide widows and children of 9/11 decedents a voice in an appellate court.

As the Supreme Court has explained, "district courts should not hesitate to certify an interlocutory appeal" if the relevant criteria are satisfied and a decision "involves a new legal question or is of special consequence."  *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009); *see Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (stating that "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment" (alteration in original)).  This case presents exactly the type of exceptional circumstances that warrant interlocutory appeal.

---

*& Ohio Cent. Ry. Co.*, 146 U.S. 536, 544–45 (1892) ("Probably no question of equity practice has been the subject of more frequent discussion in this court than the finality of decrees."); Maurice Rosenberg, *Solving the Federal Finality-Appealability Problem*, LAW & CONTEMP. PROBS., Summer 1984, at 170, 171 ("The idea that an appeal to the second level of a court system should wait until a final decision has issued at the first level of the system is as sweet and simple as a baby's kiss. But as so often happens with legal affairs that are simple in theory the finality requirement in actual operation becomes 'dazzling in its complexity' . . . ." (quoting Edward H. Cooper, *Timing As Jurisdiction: Federal Civil Appeals in Context*, LAW & CONTEMP. PROBS., Summer 1984, at 156, 156)).

## SUMMARY OF ARGUMENT

The Order addressed two issues that are without question matters of first impression:

1.   Whether Congress intended to preempt state wrongful death distribution law in enacting the Anti-Terrorism Act?

2.   Whether the institutional interests of this Court require the enforcement of a statute of limitations against a defendant-in-default, in a two-decades-old litigation, where the alternative is an ever-expanding-court-docket for decades to come?

*First*, the Court judicially-created an interpretation of language in the ATA that is not supported by the ATA's express language and legislative history, and an interpretation that preempts and disregards otherwise applicable state law, despite black letter law that there is a "presumption against preemption" long-followed by the Supreme Court and the Second Circuit.

*Second*, while a Court should "ordinarily" not enforce a statute of limitations against a defendant-in-default, this litigation is over two decades old and there must be some reasonable end to it.  The latter fact has been recognized by both the Supreme Court and the Second Circuit to ensure that the institutional interests of the judicial system are protected.  The Court's refusal to enforce any reasonable end to this litigation simply cannot be correct.

The Court's decision on these important issues of first impression should be certified for interlocutory appeal under 28 U.S.C. § 1292(b) because they involve "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  Here, not only would an immediate appeal advance this litigation,[5] but it is also necessary to provide future guidance on issues that are at the very heart

---

[5]     We also may claim that the Order allows for an appeal as of right under the "Collateral Order Doctrine."  The Supreme Court has long construed "final decisions" to include judgments that "terminate

of this MDL litigation.

<strong>ARGUMENT</strong>

**I.      The Interpretation of the ATA Presents a Controlling Question of Law That Can Resolve Thousands of Wrongful Death Claims in This Litigation.**

The interpretation of the ATA involves a "controlling question of law."  28 U.S.C. § 1292(b).  Determining who qualifies to recover wrongful death damages from within the § 2333 phrase "estate, survivors, or heirs" involves "a question of statutory interpretation" that the Court of Appeals can resolve "quickly and cleanly without having to study the record."  *See Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551,552 (S.D.N.Y. 2013) (Abrams, J.).  In this case, if the Court of Appeals agrees with the plain-language interpretation provided by applicable state law that has been advanced by the *Ashton-Dickey* Plaintiffs, thousands of claims would be dismissed in their entirety.  Accordingly, because "reversal of the . . . order would terminate the action," it is "clear that [the] question of law is controlling" within the meaning of Section 1292(b).  *See Klinghoffer*, 921 F.2d at 24.

**II.     There Are, at a Minimum, Substantial Grounds for Difference of Opinion About Who Qualifies to Pursue Wrongful Death Damages Under the ATA and When Wrongful Death Actions Had to Be Filed.**

The question of who may recover wrongful death damages under § 2333 of the ATA presents a novel issue of first impression in this Circuit, and the Court implicitly recognized that there are substantial grounds for difference of opinion about the requirements of the statute by failing to cite a single Second Circuit decision in support of its Order.  And, not only does the

---

an action" as well as a "small class" of collateral rulings that are deemed "final" despite not ending the litigation. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-56 (1949). This "small class" resolves "claims of right separate from, and collateral to, rights asserted in the action" that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Will v. Hallock*, 546 U.S. 345, 349 (2006). Such an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* The Order satisfies all three of these criteria.

Court's decision conflict with the position of the *Ashton-Dickey* Plaintiffs, it also conflicts with the (1) plain language of the statute, (2) the applicable canons of construction, (3) the legislative history of the ATA, (4) the "presumption against preemption," and (5) prior precedent that suggests that law of the decedent's domicile (state law) should be employed to determine this question.

Moreover, there is a substantial difference of opinion in the federal courts as to whether a statute of limitations should be enforced to protect the institutional interests of the courts.[6]  And the Supreme Court's guidance on this subject was ignored in the Order – namely, the Supreme Court has noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Id.* at 630-31.  A level of control over the docket by this Court is desperately needed.

The difference between the Court's decision and these other sources confirms that

---

[6]      A substantial number of courts have found that they have the discretion to raise the statute of limitations *sua sponte* and have dismissed time-barred claims when presented with a request for a default judgment.  *See, e.g., Taiwan Civil Rights Litig. Org. v. Kuomintang Bus. Mgmt. Comm.*, 486 F. App'x 671, 671-72 (9th Cir. 2012) ("[T]he district court did not err by addressing the statute of limitations issue *sua sponte* in ruling on plaintiffs' motion for default judgment.");  *Donell v. Keppers*, 835 F. Supp. 2d 871, 877 (S.D. Cal. 2011) (prior to entering default judgment, "it is proper for the Court to consider sua sponte whether Plaintiff's claims are barred by the relevant statute of  limitations");  *Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, 2011 WL 1642306, at *2 (N.D. Cal. May 2, 2011) (same); *J & J Sports Prods., Inc. v. Martinez*, 2010 WL 1038467, at *6 (N.D. Cal. Mar. 2, 2010) (same); *see also Baker v. Cuomo*, 58 F.3d 814, 819 (2d Cir.) (stating in dictum that dismissal is "appropriate if it appears from the face of the complaint that the action is barred, for example by expiration of the statute of limitations"), *vacated in part on other grounds*, 85 F.3d 919 (2d Cir. 1996) (en banc) (per curiam); *Rampersad v. Deutsche Bank Sec., Inc.*, 2004 WL 616132, at *9 (S.D.N.Y. Mar. 30, 2004) (suggesting that time barred claims against defaulting  defendant may be dismissed when the defect is apparent from face of complaint, but dismissing on other grounds).

substantial grounds for difference of opinion exist as to the proper interpretation of § 2333 of the ATA and its statute of limitations.  Because "the issue is particularly difficult and of first impression," certification for interlocutory appeal is appropriate.  *Capitol Records*, 972 F. Supp. 2d at 551.

> **A.   The Statute's Plain Language and the "Canons of Construction"**
> **Support the *Ashton-Dickey* Plaintiffs' Reading of the ATA.**

The Court's interpretation of the ATA's phrase "estate, survivors, or heirs" conflicts with the language of the statute and the applicable canons of statutory interpretation;[7] these facts support the *Aston-Dickey* Plaintiff's position that the federal judiciary may not interpret that phrase to mean "immediate family members," if it cannot be shown that Congress intended that interpretation.

The starting place for any statutory interpretation question is the statute's plain language. Here, the plain language of § 2333 is entirely consistent with the interpretation suggested by the *Ashton-Dickey* Plaintiffs.  The statute provides in relevant part:

> **Any national** of the United States **injured** in his or her person, property, or business **by reason of an act of international terrorism**, **or his or her estate, survivors, or heirs**, **may sue therefor** in any appropriate district court of the United States **and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees**.

The phrase in question – "**Any national … or his or her estate, survivors, or heirs**" – in no way suggests that "estate, survivors, or heirs" means the same thing as "immediate family members" (a non-legal, undefined category of individuals).  The *Ashton-Dickey* Plaintiffs

---

[7]     The predominant view of a judge's proper role in statutory interpretation is one of "legislative supremacy." This theory holds that when a court interprets a federal statute, it seeks "to give effect to the intent of Congress."  *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542 (1940).  Under this view, judges attempt to act as "faithful agents" of Congress.  The judiciary is not free to simply substitute their policy views for those of the legislature that enacted the statute.  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014) ("[C]ourts are not at liberty to jettison Congress' judgment[.]").

suggest, on the other hand, that the use of the words "estate" and "heirs" show that Congress meant to limit those who might recover under the statute to a legally-recognized group of "survivors."[8]   And since the federal courts have always relied upon state law to define who qualifies as a member of an "estate" and who qualifies as an "heir" of a decedent, the statute implies the need to look to state law to help define these terms.  Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established laws of the several states.  *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000). For example, in *De Sylva v. Ballentine*, 351 U.S. 570, 580–581 (1956), where the issue was whether the illegitimate son of a copyright owner was one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law … *This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern ... We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children'* …." (Harlan, J.) (emphasis added); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285 (2009)).  By contrast, the Order here

---

[8]      In fact, it is the extra word "survivors" in § 2333, a lay term with no legal meaning (here, surplasage), which seems to have spurred the Court to expand the number of qualifying "injured," beyond the known meaning of who might qualify as "injured" if the words "estate" and "heirs" were used alone in the statute.  The "surplusage canon" asks whether a particular interpretation of the statute renders language in that statute, as the statute is actually written, mere surplusage.  *See, e.g., Obduskey v. McCarthy& Holthus LLP*, 139 S. Ct. 1029, 1037 (2019).  "Survivors" has no legal meaning and it fails to define a specific group of qualifying "injured."  Congress may have affirmatively chosen redundancy as part of a belt-and-suspenders approach, to add extra clarity—and may have done so in a statutelike this where it recognized that claims against terrorists would proceed under *traditional tort law* that would provide that necessary clarity.  *See, e.g., Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013).

interpreted the language of the statute in a manner that is inconsistent with its plain meaning. And instead, the Court read the statute as requiring a judicially-created interpretation – "immediate family members."

In short, by diverging from well-established principles of statutory interpretation and giving the phrase "estate, survivors, or heirs" a judicially-created meaning ("immediate family members"), the Court departed from the plain meaning of the statute, well-known canons of construction, the presumption against preemption and applicable state law. This shows, at least, that there are substantial grounds for difference of opinion concerning the proper interpretation of the statute.[9]

> ### B. Enforcement of the ATA's Statute of Limitations Would Not Only Protect Plaintiffs Who Have Filed Timely Claims, Such Action Would Promote Important Institutional Interests of the Court – the Reduction of an Ever-Expanding, *Ad Infinitum* Docket.

To be timely in their own right, the wrongful death actions against the Taliban based on the Anti-Terrorism Act must have been commenced no later than January 1, 2019. *See* National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112-239, § 1251(c), 126 Stat. 1632, 2017 (2013). Many of the Taliban wrongful death (and personal injury) actions here were, however, filed long after this deadline.

Under the Order, no statute of limitations ever exists as to any defendant-in-default. This leads not only to absurd and unjust results, it invites serious consequences. The Order opens the floodgates to thousands of potential plaintiffs who may now file 9/11 claims in the decades to

---

[9]     Of course, the Court also has the authority to reconsider its decision *sua sponte*, with full briefing on its novel interpretation of the statute and in light of the fact that that interpretation is inconsistent with the long-standing interpretation of "estate" and "heirs" under state law. *See, e.g.*, *ChartisSeguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11 Civ. 3238 (ALC) (GWG), 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015); *Kai Wu Chan v. Reno*, 932 F. Supp. 535, 540 (S.D.N.Y. 1996) (inviting motion under Federal Rule of Civil Procedure 60 because the court *sua sponte* decided an issue not briefed by either party).

come against any defendant-in-default, and this is at the expense of the judiciary and the plaintiffs who have filed timely claims (*see* fn. 3 above – if DAB assets are placed in a Fund, awards to "untimely plaintiffs" ultimately will reduce the recoveries of "timely plaintiffs"). Surely, that is cannot be correct; it certainly is not just.

Will there ever be an end to the filing of new legal actions and default judgment applications in this litigation against the defendants-in-default?  Will innumerable new claimants now belatedly file new actions against the defendants-in-default without any future time limit imposed?  The Order allows plaintiffs to "continue piggybacking off of older decisions for decades to come to extract multimillion dollar judgments from absent [defendants-in-default]." *Shiekh v. Republic of Sudan*, 308 F.Supp.3d 46, 55 (D.D.C. 2018) ("The possibility of nearly endless litigation takes on a new and more troubling dimension when paired with the murky public policy consequences of enabling untimely judgments"), *rev'd on other grounds by*, *Maalouf v. Republic of Iran*, 923 F.3d 1095,  1114 (D.C. Cir. 2019) (holding: district court may not raise a statute of limitations defense *sua sponte* against a defendant-in-default, but the Circuit Court acknowledged that it could not recognize an argument by plaintiffs with timely claims, who alleged an adverse interest to that of untimely plaintiffs -- since the recoveries of timely-filed plaintiffs were allegedly diluted in the USVSST Fund by the untimely claimants -- "because the Fund was not addressed by the District Courts. We therefore have no record on which to assess the accuracy or import of the parties' claims.").

It is well-established, through Supreme Court precedent, that a district court has the "inherent power" to dismiss a case *sua sponte* without prompting by an adverse party.  *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); *Arizona v. California*, 530 U.S. 392, 412-13 (2000)*; Leonhard v. United States*, 633 F.2d 599, 608, fn. 11 (2d Cir. 1980); *Wright v.*

*Rensselaer Cty Jail,* 771 Fed.Appx. 58, 59-60 (2d Cir. 2019).  These decisions address a district court's power to protect important institutional interests of the court.  In *Link, supra,* the Supreme Court noted that courts have always had the power to dismiss for failure to prosecute, and explained "[t]he power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id.* at 629-30. This authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 630-31.  A level of control over the docket by this Court is desperately needed.  Here, the enormous and unmanageable size of the ever-expanding docket in this MDL litigation, and the Order's failure to enforce a statute of limitations defense in favor of those plaintiffs who have filed timely claims, directly implicates the institutional interests of the judiciary.

The Order undermines the purpose of a statute of limitations — a limitations period generally serves to prevent plaintiffs from sleeping on their rights, promote judicial economy, and provide parties with certainty.  *Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("[T]he basic policies of all limitations provisions [are] repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities."); *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) ("[C]ourts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.").[10]  If the Order is upheld, and the statute of limitations is not enforced in some manner, this Court will literally be advancing the interests of an always-still-expanding subset of plaintiffs who have "slept on their rights," at the

---

[10]     "Modern statutes of limitations trace directly back to 1624, and embody the notion that fixing the periods for bringing damages actions is a legislative function that imposes certainty and predictability upon how long a defendant should be subject to suit." *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

expense of plaintiffs who filed timely actions and preserved the ongoing litigation for a belated

throng of newcomers.

**III.   An Immediate Appeal Will Advance the Ultimate Termination of the Litigation &**
**Will Resolve Uncertainty for Thousands of Plaintiffs.**

Certifying this matter for interlocutory appeal now "may materially advance the ultimate

termination of the litigation," 28 U.S.C. § 1292(b), and resolve uncertainty that surround

thousands of wrongful death claims asserted against the Taliban.  This is especially true in an

MDL context:

> Consolidation of power in a single federal judge offers advantages in terms of
> uniformity, efficiency, and the facilitation of global settlement. **But it also ratchets**
> **up considerably the risk and consequences of legal error, particularly when the**
> **MDL raises issues of first impression. A single judge's thinking exerts a**
> **disproportionate influence on the evolution of the law. New legal theories**
> **emerge, unrefined by the scrutiny of other trial court judges wrestling with the**
> **same problems. And, because interlocutory rulings generally are not subject to**
> **immediate appeal, the trial judge presiding over an MDL lacks any meaningful**
> **appellate supervision**. . .
>
> . . . Early appellate scrutiny would serve as a much-needed antidote to the excess
> power the current MDL system bestows on the individual presiding judge.

Andrew S. Pollis, *The Need for Non-Discretionary Interlocutory Appellate Review in*

*Multidistrict Litigation* , 79 Fordham L. Rev. 1643, 1646 (2011) (emphasis added).

**A.   An Immediate Appeal Could Lead to the Prompt End of This**
**Litigation for Thousands of Plaintiffs.**

If the Court of Appeals interprets "estate, survivors, or heirs" in accordance with the state

law of the decedent's domicile, and/or applies ATA's statute of limitations, as the *Ashton-Dickey*

Plaintiffs believe it should, that will materially advance the litigation by completely ending it as

to thousands of plaintiffs, and thereby avoid significant expense and burdens attendant to this

type of complex, MDL litigation.  The material advancement prong of Section 1292(b) is

satisfied when a decision by the Court of Appeals would resolve all of a plaintiff's claims, or

even "most" of them. *Capitol Records*, 972 F. Supp. 2d at 554; *see also, e.g.*, *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (material advancement prong satisfied if appeal has "the potential for substantially accelerating the disposition of the litigation"); *Transp. Workers Union of Am., Local 100 v. New York City Transit Auth.*, 358 F. Supp. 2d 347, 352-53 (S.D.N.Y. 2005) (certifying order because "[i]f the Court of Appeals reverses . . . the litigation will end"). Accordingly, certification is an appropriate use of judicial resources to materially advance this litigation.

> **B.      An Immediate Appeal Would Resolve Uncertainty for Thousands of Plaintiffs.**

Certifying the Order for interlocutory appeal is appropriate for an additional reason: the Court's interpretation of the ATA will have substantial ramifications in terrorist actions across the United States. Courts recognize that the interlocutory appeal procedure is appropriate when "[r]esolution of the[] arguments will have far-reaching implications" for a form of litigation. *See Capitol Records*, 972 F. Supp. 2d at 551-54 (noting "important ramifications" of case for industry participants). As explained above, the Order interprets § 2333 contrary to how the federal courts have enforced federal statutes when state law is applicable. Courts have recognized that the interlocutory review process is appropriate when the issue "raises a novel issue of great importance to many other" parties. *Transp. Workers Union of Am.*, 358 F. Supp. 2d at 353. Here, if review is delayed or denied, the legal "heirs" of 9/11 decedents may lose their right to seek appellate guidance forever.

> **IV.     The Wrongful Death Actions Against the Taliban Should Be Stayed Pending the Determination of the Interlocutory Appeal**

District courts granting 28 U.S.C. § 1292(b) certification frequently also grant a stay of proceedings in the district court pending the appellate court's determination of the appeal, thus ensuring that the goal of interlocutory appeal – to avoid needless proceedings in the district court

– is not undermined.  *See, e.g.*, *Geron v. Robinson & Cole LLP*, 476 B.R. 732, 746 (S.D.N.Y.

2012); *City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244, 298 (E.D.N.Y. 2005); *Lee

v. Coughlin*, 26 F. Supp. 2d 615, 638 (S.D.N.Y. 1998) (Sotomayor, J.). This Court should do

so here as well because, as just discussed, a strong reason for certifying the Order for

interlocutory appeal is that an appellate decision will potentially lead to the dismissal of

thousands of lawsuits.

## CONCLUSION

Because an interlocutory appeal will advance the ultimate termination of this lawsuit, and

resolve uncertainty in thousands of wrongful death actions brought under the Anti-Terrorism

Act, the controlling questions of law involving the statute of limitations and "heirs" vs. "non-

heirs," presents the "rare exception to the final judgment rule that generally prohibits piecemeal

appeals," *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996), and warrants

certifying the Order for interlocutory appeal.

Accordingly, the *Ashton-Dickey* Plaintiffs respectfully requests that this Court certify the

Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Within ten days of such a

certification, the *Ashton-Dickey* Plaintiffs will ask the Second Circuit for permission to take an

appeal from the Order.  *See* 28 U.S.C. § 1292(b).

Dated:  April 6, 2023                                    Respectfully submitted,

By:___*John F. Schutty*_____

John F. Schutty, Esq.
(JS2173)
Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Dickey* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
Fax: (917) 591-5980
john@johnschutty.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD) (SN) (and member cases
   *Bauer et al, v. al Qaeda et al.,* 02-cv-7236 and *Burlingame v. Bin Laden, et al.,* 02-cv-7230)

*Ashton-Dickey* **Plaintiffs' Motion**
**for Final Judgments Against the Taliban**

For the reasons set forth below, and in the statements contained in the Declarations of John F.

Schutty, Esq. ("Schutty Declaration"), Plaintiff Patricia Ryan  and Plaintiff Kristen Breitweiser, the

exhibits thereto, and the record in this case, certain plaintiffs (the Breitweiser and Ryan families) in

the above-captioned *Ashton* action (a subset of original *Burlingame* and *Bauer* plaintiffs,[1] hereinafter

referred to as part of the *Ashton-Dickey* Plaintiffs), who are represented by the Law Office of John F.

Schutty, P.C.,[2] described within the exhibits to the Schutty Declaration, respectfully move for an

Order determining the liability of the Taliban for final damage judgments in connection with the

losses and injuries these Plaintiffs suffered as a result of the deaths of their decedents in the

September 11, 2001 terrorist attacks.

---

[1]     The *Burlingame* (02-cv-7230), *Bauer* (02-cv-7236) and *Ashton* (02-cv-6977) matters were ordered consolidated for liability purposes and mandated to proceed under the *Ashton, et al. v. al Qaeda Islamic Army, et al.* master docket number 02-cv-6977, with the filing of a consolidated master complaint.  *See* 02-cv-6977, Doc. No. 15, entered 11/19/2002.  The *Burlingame* and *Bauer* plaintiffs remain segregated within all consolidated *Ashton* filings and are identified therein according to their separate docket numbers and counsel. *See, e.g.*, 02-cv-6977, Doc. No. 465, filed 03/30/2005.

[2]     The *Ashton* Complaints now include ten families represented by the Law Office of John F. Schutty P.C.; these ten families are pursuing wrongful death claims and are referred to hereinafter as the *Ashton-Dickey* Plaintiffs.  Each of the Plaintiffs' claims identified in Exhibits A and B to the Declaration of John F. Schutty accompanying the instant motion were included in the *Ashton* 6th Amended Complaint filed September 30, 2005 (ECF 1463), which was the operative pleading at the time this Court issued a liability judgment for the consolidated *Ashton* plaintiffs against the *Taliban* and *Omar* Defendants on May 12, 2006, ECF 1797.

As shown through the accompanying Schutty Declaration (and exhibits attached thereto): (a) the two wrongful death claims at issue on this motion are being pursued by the "personal representative" of each decedent's estate, appointed in accordance with the law of the state (New Jersey) where each decedent was domiciled at the time of his death, (b) all of the claimants seeking damages herein are "heirs" (widows and children of each decedent), qualified to receive wrongful death damages under the law of the state where each decedent was domiciled at the time of his death, (c) their claims against the Taliban were filed against this Defendant in a timely manner in 2002 (*See* 02-cv-6977 (S.D.N.Y.) ECF 1).  That Complaint was consolidated and amended several times.  *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11, 32, 38, 111, 465.), and (d) all the claimants were United States citizens domiciled in the State of New Jersey at the time of each decedent's death.

In light of the base default liability judgment the *Ashton* plaintiffs previously obtained against, among others, the Taliban, the *Ashton-Dickey* Plaintiffs herein (Breitweiser and Ryan Plaintiffs) now specifically request an Order:

1.        Determining that a common law cause of action for wrongful death and/or a cause of action for wrongful death under the Anti-Terrorism Act (18 U.S.C. § 2333) each require an application of applicable state law on estate administration to determine: (a) who may bring such a wrongful death claim (*i.e.,* who are the recognized heirs, and who may bring such a claim on their behalf), (b) when such a claim must be brought to be timely (statute of limitations), and (c) the measure of damages on any such claim.

2.        Awarding each Estate of the individuals killed in the September 11 terrorist attacks listed in Exhibit D (two of the "*Ashton-Dickey* 9/11 Decedents") damages for their decedent's conscious pain and suffering against the Taliban in the amount of $2,000,000 per decedent, which is the same amount this Court previously awarded to them in a default judgment against the Defendant Islamic Republic of Iran (an item recoverable under applicable New Jersey state law by each Estate)

-2-

(*see* previous damage awards: Breitweiser: MDL ECF#4011 and Ryan: MDL ECF#5999).

3.       Awarding each of the two Estates of the *Ashton-Dickey* 9/11 Decedents herein damages as set forth in Exhibit D for economic loss against the *Taliban*, in the same amounts that this Court awarded to those Estates on the basis of the expert analysis and reports that these same Plaintiffs previously filed in their default judgment applications against Iran (those same expert reports are filed here) (Breitweiser: MDL ECF#4011 and Ryan: MDL ECF#5999).

4.       Awarding the Estate Personal Representatives listed in Exhibit C, who are named as such in the original Complaints, and who are also the widows of *Ashton-Dickey* 9/11 Decedents (qualified heirs of each Estate under the law of the State of New Jersey), solatium damages in the same amount that this Court has previously awarded to these widows *(if New Jersey state law is deemed not to apply)*(Breitweiser: MDL ECF#4011 and Ryan: MDL ECF#5999).

5.       Awarding the children of the *Ashton-Dickey* 9/11 Decedents listed in Exhibit D (qualified heirs of each estate under the law of the State of New Jersey), whose 9/11 Decedents were named in the original Complaints, solatium damages in the same amounts that this Court has previously awarded to these children *(if New Jersey state law is deemed not to apply* (Breitweiser: MDL ECF#4011 and Ryan: MDL ECF#5999).

6.       Awarding these *Ashton-Dickey* Plaintiffs treble damages under the Anti-Terrorism Act (18 U.S.C. § 2333).

7.       Awarding these *Ashton-Dickey* Plaintiffs pre-judgment interest at the rate of 4.96 percent perannum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

8.       Granting these *Ashton-Dickey* Plaintiffs permission to seek punitive damages and other appropriate damages at a later date; and

9.       Granting permission for all other *Ashton* plaintiffs in this action, not appearing within

the exhibits to the Schutty Declaration, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

    As the awards set forth in the accompanying Proposed Order will represent the only direct recovery by these *Ashton-Dickey* Plaintiffs against the Taliban, the Proposed Order will constitute final awards and judgments against the Taliban for these Plaintiffs.

Dated: New York, New York              Respectfully submitted,
      April 21, 2023

                                      LAW OFFICE OF JOHN F. SCHUTTY, P.C.

                                      By:___ */s/ John F. Schutty*_____
                                      John F. Schutty, Esq. (JS2173)
                                      445 Park Ave., 9th Floor
                                      New York, New York 10022
                                      Tel: (646) 345-1441
                                      *Counsel for the Ashton-Dickey Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

    *Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member cases
        *Bauer et al, v. al Qaeda et al.,* 02-cv-7236 and *Burlingame v. Bin Laden, et al.,* 02-cv-7230)

**Declaration of John F. Schutty in Support**
**of the *Ashton-Dickey* Wrongful Death Plaintiffs'**
**Motion for Final Judgments Against the Taliban**

        I, JOHN F. SCHUTTY, ESQ., pursuant to 28 U.S.C. § 1746, hereby state under the penalty of

perjury under the laws of the United States that:

        1.      I am an attorney representing certain Plaintiffs in the above-referenced matter (the

"*Ashton-Dickey* Plaintiffs").

        2.      I submit this declaration in support of the present motion for final judgment on behalf

of two Estates of decedents described below, decedents who perished at the World Trade Center as a

result of the terrorist acts perpetrated on September 11, 2001.  In support of this application, and for

the convenience of this Court, I am separately filing a "Proposed Order for Final Judgments Against

the Taliban" on behalf of the following Estates:

        a.      The Estate of Ronald M. Breitweiser (described within the Kristen

              Breitweiser Declaration and accompanying economist report, both attached

              hereto as Exhibit A);

        b.      The Estate of John J. Ryan (described within the Patricia Ryan Declaration

              and accompanying economist report, both attached hereto as Exhibit B);

              and

c.     Copies of the state court orders appointing the widows of each decedents as

the "personal representative" of each Estate for the purpose of pursuing

wrongful death damages on behalf of the Estate (attached as Exhibit C).

3.     The form of this motion (and the relief requested herein) is intended to comply with

the prior orders of this Court.  ECF MDL#3433, 3435 (requiring a sworn declaration of due diligence

safeguards and verification regarding any prior relief) and 8198 (requiring the identification of the

claimants as U.S Nationals).[1]

**Procedural Background**

4.     On September 4, 2002, the *Ashton* Plaintiffs filed their first Complaint against the

sponsors of the September 11, 2001 terrorist attacks, which included claims against defendants al

Qaeda Islamic Army and the Taliban, among others.  *See* 02-cv- 6977 (S.D.N.Y.) ECF 1.  That

Complaint was consolidated and amended several times.  *See, e.g.,* 02-cv-6977 (S.D.N.Y.) ECF 2, 11,

32, 38, 111, 465.

5.     The Law Office of John F. Schutty, P. C. represents some, but not all, of the plaintiffs

identified on the *Ashton* Complaints (9 former *Burlingame* plaintiffs and one former *Bauer* plaintiff,

now referred to as the *Ashton-Dickey* Plaintiffs).  I anticipate additional plaintiffs within the *Ashton*

Complaints to move shortly for relief similar to that sought on this motion.

6.     Pursuant to this Court's Order, the *Ashton* Plaintiffs served the Taliban by publication.

ECF 445 at 1, 8, 11.  Verification of service by publication on among others, the *Taliban*, was

provided on March 16, 2005 and March 31, 2005, for publication in both English and Arabic,

consistent with the service Order.  ECF 709, 735.[2]  The *Taliban* never answered, and the *Ashton*

---

[1]     References to MDL docket entries found at 03-md-1570 (S.D.N.Y.) are noted only by the MDL ECF
number; references to individual civil case docket entries are preceded by the case number.

[2]     The publication notices were directed at the named defendants to the MDL docket and advised them in

-2-

Plaintiffs thereafter moved for a Certificate of Default and a default judgment, which this Court granted on May 12, 2006.  ECF 1782 *et seq.*, 1797 (referring to the defendants listed in Exhibit B to the *Ashton* Plaintiffs motion, including the Taliban).[3]   That is, as of May 12, 2006, the *Ashton* Plaintiffs had a base liability default judgment against the Taliban, among others.

7.     The *Ashton-Dickey* Plaintiffs herein now seek final damage judgments against the Taliban.

8.     This amended motion and declaration are being filed to clarify the liability and damage claims of these *Ashton-Dickey* Plaintiffs (and to comply with prior Orders of this Court), as their claims differ in several significant ways from the claims sought by virtually every other member of the Death and Injury Plaintiff's Executive Committee in this MDL litigation.

9.     The Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333 provides (emphasis added):

> *Any national* of the United States injured in his or her person, property, or business by reason of an act of international terrorism, *or his or her estate, survivors, or heirs*, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

10.     In the event of a death resulting from an act of international terrorism, this ATA cause of action is *not* clear as to which individuals fit within the scope of the phrase "his or her estate, survivors, or heirs."

11.     In this MDL litigation, plaintiffs claiming on behalf of 9/11 decedents have asserted causes of action based on both state wrongful death law and the ATA.

12.     In the default judgment filings sought against Iran, many of the plaintiffs were parents

---

both English and Arabic that they were required to answer the Complaints on that docket, which sought, among other things, compensatory, treble and punitive damages, within 60 days.  ECF 709 at 2; 735 at 2.

[3]     This Court's default liability judgment was issued on May 12, 2006 and stated that it applied to all claims, between plaintiffs and defendants, included up to and through the Sixth Amended Complaint.  ECF 1797.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 159 of 186
**A346**
Case 1:03-md-01570-GBD-SN   Document 9042   Filed 04/21/23   Page 4 of 14

and siblings of 9/11 decedents who asserted individual and personal claims as plaintiffs asserting the ATA cause of action (these individuals were not court-appointed personal representatives) and many were belatedly added to the litigation in amended pleadings; most of these parents-siblings of decedents were not within the "estate" of their 9/11 decedent, as that "estate" is defined by governing state law.

13. In claiming money damages for this class of plaintiffs under the ATA, the Death & Injury Plaintiffs' Executive Committee ("D&I PEC") has claimed that precedent issued by a different jurisdiction (the District of Columbia – a federal jurisdiction that applied "federal common law" in interpreting who may recover for a decedent's death under the ATA), in a default judgment setting, is relevant; in turn, the PEC implicitly suggested that the MDL court here could wholly ignore the interests and laws of the decedents' domiciles (state law) regarding wrongful death estate administration.[4] No precedent existed within the District Court (S.D.N.Y.) or the governing Circuit

---

[4] *See, e.g., Tex. Indus. v. Radcliff Materials*, 451 U.S. 630, 640–41 (1981) (Burger, C.J.) ("The vesting of jurisdiction in the federal courts does not in and of itself give rise to authority to formulate federal common law."). "The Supreme Court has put increasing emphasis on the notion that when determining the content of federal common law, forum state law should be adopted as federal law absent some good reason to displace it." 19 Fed. Prac. & Proc. § 4518 (3d ed. August 2019 update). A federal court has discretion to borrow from state law when there are deficiencies or lacunae in the federal statutory scheme. *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789 (2d Cir. 1999). *U.S. v. Smith*, 832 F.2d 774 (2d Cir. 1987) (state commercial law furnished convenient solutions that in no way were inconsistent with adequate protection of federal interests). When federal law does not expressly establish the legal rule for a federal question case, a federal court may borrow state law to fill the gap in the statutory scheme so long as the state rule does not impinge upon any federal interest. Particularly in the area of family relationships and domestic relations, a federal court should defer to the well-established law of the several states. *Nice v. Centennial Area School Dist.*, 98 F. Supp. 2d 665 (E.D. Pa. 2000). *See also De Sylva v. Ballentine*, 351 U.S. 570, 580–581, 76 S. Ct. 974, 980, 100 L. Ed. 1415 (1956), where the issue was whether the illegitimate son of a copyright owner is one of the owner's "children" within the meaning of the copyright statute, the Supreme Court said: "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. … This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern. … We think it proper, therefore, to draw on the ready-made body of state law to define the word 'children' …." (Harlan, J.); *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1326 (5th Cir. 1994) ("[t]he law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion") (abrogated on other grounds by, *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009)). "[T]here is no federal common-law or statutory rule that explicitly prohibits the application of state common-law remedies to cases of wrongful death." S. Speiser, *Recovery for Wrongful Death*, § 6:61 (4th ed. July 2018 update).

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 160 of 186
A347
Case 1:03-md-01570-GBD-SN   Document 9042   Filed 04/21/23   Page 5 of 14

(Second) on this novel choice of law issue at that time.

14.    In fact, each American *state* has different laws surrounding the distribution of wrongful death proceeds in administering the estates of decedents.   In New Jersey, for example, which governs the claims of the Plaintiffs on this motion, wrongful death damages are distributed *only* to members of a decedent's defined "estate," *i.e.,* immediate family members explicitly described within a statute, in proportion to their financial loss.   *See* N.J. Stat. Ann. § 2A: 31-4 and N.J. Stat. Ann. § 3B: 5-3.   Where a 9/11 decedent is survived by a spouse and children, for example, parents and siblings of the decedent are denied wrongful death damages under New Jersey law, regardless of any claimed injury.   N.J. Stat. § 3B: 5-3.   This fact has been given no regard in the MDL litigation to date.   Also, New Jersey state law gives the court-appointed personal representative of an estate the exclusive authority to bring an action for a wrongful death arising to a decedent's estate.   *See* N.J. Stat. Ann. § 2A: 31-2.

15.    New Jersey "estate distribution" law and wrongful death law, which require a result different than that reached by this Court in entering default judgments against Iran, was not only ignored, it was violated – by awarding money damages to individuals outside the state-prescribed and statutorily-defined "heirs of the estate."[5]   *See* accompanying Declaration of Patricia Ryan.

16.    In the event of a death by an act of international terrorism, the ATA is patently: (1) *silent* as to which individuals fit within the scope of the decedent's "estate, survivors, or heirs" (how that phrase should be interpreted), (2) *silent* as to whom may assert a claim for the decedent's "estate,

---

[5]       In fact, the probate exception to federal jurisdiction prohibits federal courts from hearing cases involving matters related to the probate of wills or administration of estates.   *Markham v. Allen*, 326 U.S. 490, 494 (1946).   It is a doctrine that has been described as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."   *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).   Yet, here, the court failed to give any regard to the interests of the states where the 9/11 decedents were domiciled – states left responsible for the future welfare and support of surviving widows and children.   These states are undeniably responsible for administering the estates of decedents in this country and they therefore have a far greater interest in the administration of the decedents' estates than the federal government.

survivors, or heirs" on their behalf, and (3) *silent* as to what damages may be awarded to surviving family members.[6]

17.    Typically, where a federal statute does not provide guidance on an issue relating to estate law, reference is made to state law.[7]

18.    Federal law is interstitial and federal courts often look to the law of the forum state to fill gaps in federal statutes, usually under the general mandate of the Rules of Decision Act.[8]

19.    Here, the laws of the domiciles of the decedents have apparently been given little regard in evaluating the wrongful death claims of individuals outside the "estate, survivors, or heirs" explicitly defined by state law.

20.    On matters of estate law and wrongful death damages distribution, the laws of the domiciles of the decedents should have been addressed, especially if an award of wrongful death damages is requested on behalf of a family member in direct disregard of state law, state interests and state policy.

21.    In seeking wrongful death damages in this litigation, my firm presently represents only court-appointed personal representatives and members of 9/11 decedent "estates," as that latter

---

[6]    When there are no well-established federal policies and no reasonable body of federal law, "as compared to the relative order and clarity of law established in state courts, the common law rule to be applied in federal court is thus uncertain and almost impossible to predict," which "combined with the substantive advantages to be gained by allowing states to formulate their own policies where feasible creates the presumption that state law should be applied."  Note, "The Federal Common Law," 82 Harv.L.Rev. 1512, 1519 (1969).

[7]    The District Court, when and if it reaches the merits of this issue again, will have to decide how the ATA should be applied as a wrongful death remedy.  It will have to address the applicable damage policies and, if state wrongful death causes of action are incorporated into the ATA, whether state damage limitations, such as ceilings on recoveries or prohibitions on awards for nonpecuniary losses, are also incorporated.

[8]     28 U.S.C. § 1652. The Rules of Decision Act applies to federal question as well as diversity cases, and requires the use of state law in certain cases in which the underlying statute is silent.  *See* Hill, *State Procedural Law in Nondiversity Litigation*, 69 Harv. L. Rev. 66 (1955).  There are also more specific federal statutes that require the use of state law on both procedural and substantive matters.  *See, e.g.*, 28 U.S.C. § 1738 (federal courts required to give state court judgments the same full faith and credit that state courts would give them); Federal Tort Claims Act, 28 U.S.C. § 1346(b).

term is defined by New York and New Jersey state law; my law firm has chosen to represent these limited family members (spouses and children) of 9/11 decedent estates, to avoid a conflict of interest (a battle over the distribution of wrongful death damages).[9]  My firm has rejected offers to represent parents and siblings of these decedents (who would be denied a distribution of wrongful death proceeds under New York and New Jersey state law), who might affect distributions to surviving spouses and children by diminishing their recoveries.

22.     The clients that I represent were allowed to seek compensation under the "Justice For United States Victims of State Sponsored Terrorism Act Fund" ["Iran Fund"], 42 U.S.C. § 10609(b)(2) a/k/a "USVSST," only after parents and siblings of 9/11 decedents had already received a distribution from the USVSST (and, thereafter, my clients received a smaller overall distribution than the parents and siblings).  Thus, the state-authorized heirs of decedents have been adversely affected by the default judgments entered in favor of "non-heirs."

23.     I continue to represent my clients zealously in claiming that they are the only "heirs" worthy of wrongful death proceeds in this MDL litigation under applicable law (and within the USVSST, where parents and siblings are siphoning large sums away from the decedent's true "heirs" because only a shared, limited fund exists).

24.     In requesting wrongful death solatium damages on behalf of individuals who are not within a defined "estate" under state law (*we request such damages, in the alternative, should the Court determine the solatium damages may be awarded despite the applicability of New York and New Jersey state law*), the attorneys who have been seeking these awards (presently the D&I PEC attorneys) have relied on ATA case law precedent rendered in the District of Columbia Circuit courts

---

[9]      *See* Rule 1.7(1)(a) of the New York State "Rules of Professional Conduct" for lawyers ("a lawyer shall not represent a client if a reasonable lawyer would conclude that…the representation will involve the lawyer in representing differing interests….").

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 163 of 186
**A350**
Case 1:03-md-01570-GBD-SN   Document 9042   Filed 04/21/23   Page 8 of 14

(in a default judgment setting), precedent that has not been fully evaluated in the Second Circuit where state law is present (with a limiting effect on who is entitled to recover wrongful death damages[10]).

25.     Case law in the Second Circuit has yet to resolve these thorny ATA issues properly, and yet awards issued against the Republic of Iran have been awarded without a determination of whether the ATA is being properly interpreted in light of the applicability of state law.

26.     Virtually all of the D&I PEC law firms representing personal representatives have engaged in a "follow the leader" process and have "compelled" their personal representative clients to allow their firms also to represent "all immediate family members," apparently without advising the personal representatives of the consequences of such an acquiescence (dilution of fixed USVSST proceeds if state law "non-heirs" also recover); these D&I PEC law firms now have proceeded to present claims broadly on behalf of two separate classes of survivors against Sudan, Iran, Saudi Arabia and the Taliban: (1) all broadly alleged "survivors and heirs" of 9/11 decedents, under the ATA, for solatium and other damages, and (2) court-appointed personal representatives and "heirs," under state law, for traditional wrongful death and survival damages.

27.     As a great majority of these D&I PEC law firms are collecting attorneys' fees from these two classes of clients with very different interests, these firms have chosen *not* take a position on the very vital question of whether state wrongful death and survival law (based on the domicile of

---

[10]     *See, e.g., Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982) (rejecting constitutional claim of siblings); *Carter v. City of Emporia*, 543 F. Supp. 354 (D. Kan. 1982) (only heirs may bring wrongful death actions under Kansas law).  For example, courts that have considered the availability of § 1983 wrongful death claims by siblings who do not possess the right to sue under state law have generally refused to recognize a constitutional interest that can be enforced through a § 1983 wrongful death damage suit. *See Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984); *Sager v. City of Woodland Park*, 543 F. Supp. 282, 290 (D. Colo. 1982); *Sanchez v. Marquez*, 457 F. Supp. 359, 362-63 (D. Colo. 1978); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961)) ("Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." (citations omitted)).  *But see Trujillo v. Board of County Comm'rs*, 768 F.2d 1186 (10th Cir. 1985).

the 9/11 decedent) has any applicability when seeking recover wrongful death damages under the ATA.

28.     Moreover, an issue has arisen here as to whether a filing by a "personal representative" appointed under state law constitutes a timely filing for claims belatedly asserted by parents and siblings (among others) of 9/11 decedents who are not within their 9/11 decedent's defined "estate" under state law.

29.     The statute of limitations here required claimants to file ATA claims in this litigation by January 2, 2019, because Congress extended the ATA statute of limitations to that date.  18 U.S.C. § 2335; H.R. 4310, 112th Cong. §1251(c)(2013).

30.     The D&I PEC has argued that one lawsuit, filed broadly on behalf of an "estate," should be deemed an action filed on behalf of "all survivors" (undefined) of the decedent.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1; *see also* recent, belated filing by 2,900 plaintiffs seeking to be added to the litigation against The Taliban – MDL ECF#7654, 7657 and 7660.

31.     My clients have objected to this suggestion, contending that a "personal representative" appointed under New York and New Jersey state law (or other domicile state law) is *only* authorized to represent those individuals expressly within the "estate" of their decedent as defined in N.Y. Estate Powers & Trusts Law § 5-4.4 and N.J. Stat. Ann. § 2A: 31-2.  This objection has, thus far, been ignored (and thousands of parents and siblings have been added belatedly to this litigation).  This Court not only has the power to dismiss these claims, it should do so to ensure that claims are not filed decades after the statute of limitations has run, to prevent undue delays in the disposition of pending cases, and to avoid congestion in the calendars of this Court.

32.     Individuals "outside" the state-defined "estate," cannot claim that they are protected by a wrongful death filing by the "personal representative" appointed by the States of New York or New Jersey, *or by any other family member for that matter*.

-9-

33.     Under New Jersey and New York law, there is no question that the appointed personal representative under state law is the only person who can commence and ultimately resolve litigation against the defendants here.

34.     Finally, under New Jersey and New York law, it does not matter if the decedent and his parents and/or siblings had a great relationship with the decedent, or whether the decedent provided them with financial support, etc., because the extended family members are not within the legal class of beneficiaries entitled to share in damages.  Thus, regardless of their relationship with the decedent, New Jersey and New York law does not allow those individuals (extended family members) to recover.  Thus, the filing of a timely lawsuit by a personal representative (or other family member) does not protect an untimely filing by a parent or sibling of the decedent.

35.     My law office feels compelled to make this issue clearly at this time[11] because the undersigned attorney was retained precisely because the *Ashton-Dickey* Plaintiff families that I represent did not want to be forced to add their in-laws as party-plaintiffs at the urgings of their then-attorneys.

36.     As the default judgments entered by this Court are having a dramatic effect on the distributions already made by the USVSST, and since any future distributions made from the judgments entered against the Taliban will likely have a serious effect on future distributions from any future-created limited fund,[12] the Plaintiffs on this motion urge the Court to reconsider the effect

---

[11]     At an April 26, 2022 court conference, Judge Daniels stated to me: "I can guarantee you that we will give you a full opportunity to be heard, as we have given you a full opportunity to be heard, on these issues - *the issues of the availability of funds, and who is entitled to some of the funds and what would be the best way to distribute available funds . . . So be assured that any concerns that you have about certain issues, the appropriate way to address them is to bring them to the attention of this Court and to the other side - anyone who disagrees with your position - be able to weigh in in this proceeding, in this MDL proceeding . . . you will all be heard*."  April 26, 2022 Transcript at 37-38 (emphasis added).

[12]     If any money is recovered from any damage awards against the Taliban, it may come from the assets held in the name of Afghanistan's central bank, Da Afghanistan Bank ("DAB"), held at the Federal Reserve Bank of New York (the "FRBNY").   When the Republic of Afghanistan fell in

of state law in interpreting the damages recoverable under the ATA, and the individuals who may claim damages within this precedent-setting litigation.

**Damages Due Diligence:**

37.     As to the damages claimed herein, the sources of my information and the basis for my belief in my statements contained herein are: (a) my personal involvement in this litigation and my regular review of the MDL docket; (b) my representation of the *Ashton-Dickey* Plaintiffs in connection with this litigation; (c) my communications directly with family members of the *Ashton-Dickey* 9/11 Decedents listed in Exhibit D; (d) my communications with counsel for other plaintiffs in the *In re Terrorist Attack on September 11, 2001* multidistrict litigation; and, (e) documents and records contained in my firm's files and other court records relating to the multi-district litigation to which the *Ashton-Dickey* Plaintiffs are parties. I can affirm that the *Ashton-Dickey* Plaintiffs seeking damages on this motion (the Breitweiser and Ryan families) are all United States citizens and all were domiciled in the State of New Jersey at the time of their respective decedents' death.  Any matters about which I lack personal knowledge are asserted herein upon information and belief.

38.     The *Ashton-Dickey* 9/11 Decedents listed in the accompanying Proposed Order and attached Exhibit D died in the September 11, 2001 terrorist attacks.   My law firm has been retained by the state-appointed personal representatives of the Estates of the *Ashton-Dickey* 9/11 Decedents listed in Exhibit D to represent those Estates.

---

August 2021, the DAB held approximately $7 billion in assets at the FRBNY.  *See* ECF MDL#8866 at 6.  In February 2022, President Biden issued an executive order titled "Protecting Certain Property of Da Afghanistan Bank for the Benefit of the People of Afghanistan."  Exec. Order No. 14,064, 87 Fed. Reg. 8391 (Feb. 11, 2022).  The frozen, limited assets of the DAB are now sought by the plaintiffs herein, through appeal from an Order of this Court.  ECF MDL#8866.  And a bill has been prepared, the so-called "Weber Bill,"  a bill that seeks to redirect $3.5 billion of frozen Afghan funds into the USVSST Fund, so that all U.S. victims of terror, including military and civilian victims and the families of deceased victims, will be equitably compensated for their losses.  The legislation would amend President Biden's executive order dictating that funds be distributed to a small subset of U.S.    terror    victims    through    the    American    legal    system.    *See* https://weber.house.gov/news/documentsingle.aspx?DocumentID=1333

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 167 of 186
**A354**
Case 1:03-md-01570-GBD-SN   Document 9042   Filed 04/21/23   Page 12 of 14

39.     For the *Ashton-Dickey* 9/11 Decedents listed in Exhibit D, we have confirmed that the decedent was a United States national as of September 11, 2001, based on documentary evidence (such as copies of birth certificates, passports and /or verified applications to the September 11, 2001 Victim Compensation Fund ("VCF")), or personal interviews and/or written communications with the Personal Representatives of the Estates of those 9/11 Decedents.

40.     Exhibit D sets forth the same compensatory damages amount this Court previously awarded to the Estates of the *Ashton-Dickey* 9/11 Decedents herein for conscious pain and suffering in connection with claims asserted against the Defendant Islamic Republic of Iran ("Iran").

41.     Exhibit D also sets forth claims by the Personal Representatives of the Estates of the *Ashton-Dickey* 9/11 Decedents for an award of economic damages in the amounts listed therein. These Estates, in seeking economic damages, base their claims upon reports prepared by economic experts who, relying on materials provided by the Plaintiffs herein (VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information), applied generally accepted methodologies and assumptions and calculated the present value of economic losses to a reasonable degree of accounting and actuarial certainty.   The economic losses claimed, as explained in connection with a prior motion for economic damages filed on behalf of the Estates of *Ashton-Dickey* 9/11 Decedents herein, are the same amounts that this Court granted following prior motions for economic damages in connection with claims asserted against the Defendant Islamic Republic of Iran.

42.     This Court previously awarded *solatium* damages to immediate family members to the individuals listed in Exhibit D in the following amounts *(should be the Court deem New Jersey state law is not a bar to such an award, we request that solatium damages be awarded to the within Plaintiffs)*:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Child | $8,500,000 |

43.     The *Ashton-Dickey* Plaintiffs herein, described within Exhibit A and Exhibit B, are the Personal Representatives of the Estates of the *Ashton-Dickey* 9/11 Decedents named in the *Ashton* Complaints underlying the default judgment against the Taliban, which asserted claims for all members of the Estate of the *Ashton* 9/11 Decedents – the widows and children of the *Ashton* 9/11 Decedents named in those Complaints (and recognized heirs of these Estates under state law). *See, e.g.,* 02-cv-6977 (S.D.N.Y.), ECF 485 at ¶ 482 (seeking, among other things, solatium damages). These individuals have been added by name via Notice of Amendment by the process this Court established concerning the claims against Iran and Sudan.   We have confirmed the relationship between the *Ashton* 9/11 Decedent and the individuals listed in Exhibits A and B through documentary evidence (attached Declarations) and interviews with and written confirmation with my clients.

44.     The *Ashton-Dickey* Plaintiffs listed in Exhibit D are qualified heirs (widows and children) of the *Ashton-Dickey* 9/11 Decedents named in the *Ashton* Complaints (underlying the default judgment against the Taliban), which asserted claims for all the recognized heirs of the Estates of the *Ashton* 9/11 Decedents (even those not set forth by name individually in those Complaints as these individuals are represented by the appointed Personal Representative of each Estate).   The latter individuals (children of the decedent) have been added by name via Notice of Amendment of the Master Complaint by the process this Court established concerning the claims against Iran and Sudan. We have confirmed the relationship between each *Ashton-Dickey* 9/11 Decedent and the individuals listed in Exhibits A and B through documentary evidence (attached Declarations) and interviews with

-13-

and written confirmation with my clients.

45.      The *Ashton-Dickey* Plaintiffs described within the Exhibits to this declaration have received final judgments against Iran but have received no final judgment against the Taliban, nor have they collected anything close to the full amounts of their judgments against Iran.

46.      In order to allow the Plaintiffs described herein to attempt to satisfy any portion of the outstanding judgment amounts against the Taliban, the *Ashton* Plaintiffs respectfully request that the Court issue the same damage awards for these Plaintiffs that the Court ordered in the final judgments against Iran (as is reflected in Exhibits A, B and D) (with a consideration of whether solatium damages may be awarded in light of the applicability of the laws of the State of New Jersey), along with an award of treble damages under the ATA.

47.      For any *Ashton* Plaintiffs not set forth in the attached exhibits, including those represented by other *Ashton* counsel but consolidated on the *Ashton* Complaint, and for any damages not included herein, we expect additional claims to be asserted.

48.      For all of the reasons set forth in this Declaration and within the *Ashton-Dickey* Plaintiffs' Motion for Final Judgments against the Taliban, I respectfully request that this Court grant the instant motion and sign the Proposed Order filed herewith.

Dated: April 21, 2023
         New York, New York

                                        /s/ *John F. Schutty*
                                        John F. Schutty

-14-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |
| | ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD) (SN)

**DECLARATION OF PLAINTIFF KRISTEN BREITWEISER IN SUPPORT
OF DEFAULT JUDGMENT APPLICATION AGAINST THE TALIBAN**

Kristen Breitweiser, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.     I am the court-appointed personal representative of the Estate of Ronald M. Breitweiser, who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.     I submit this Declaration on my own behalf as the surviving spouse of Ronald M. Breitweiser, and on behalf of the only other New Jersey State designated "heir" of my late husband, our one child, Caroline Breitweiser.

3.     I can affirm to the Court that my deceased husband lived with me and our one child at a private home at 268 Monmouth Avenue, Atlantic Highlands, NJ 07716 at the time of his death.  I can further affirm that my child and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.     For the foregoing reasons, I ask that the Court to deem my child and me as the only "immediate family members" of Ronald M. Breitweiser.

**A358**

5.      My attorney (John F. Schutty) has advised me that under New Jersey State estate administration law, when a decedent is survived by a spouse and a child, they are considered the decedent's only "legal heirs" (New Jersey estate administration law explicitly denies parents and siblings of a decedent any wrongful death damages under such circumstances).

6.      My attorney has completed a search of the MDL docket and advised me about the substantial wrongful death damages that were awarded against the Islamic Republic of Iran ("Iran") and in favor of many "non-heirs" under applicable state law.

7.      I was dismayed to learn how large the awards were to the non-heirs and even more dismayed to learn how these judgments affected/reduced the distribution of money from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST"), a fund with limited assets, to me and my child.

8.      For example, I have reviewed the accompanying Declaration of Patricia Ryan and the Declaration of Lisa O'Brien (MDL ECF#8961) and was shocked to see the large awards made to non-heirs against the Islamic Republic of Iran and the damage awards now sought by non-heirs against the Taliban.

9.      Upon information and belief, awards against Iran were granted to non-heirs without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (a 10-year statute of limitations).  And non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants. Undeniably, my child and I were hurt by the award of wrongful death damages to non-heirs and the resulting payments by the USVSST.

10.      Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban.  Again, awards to non-heirs, and those who have filed

amongst claimants.   Undeniably, my child and I were hurt by the award of wrongful death damages to non-heirs and the resulting payments by the USVSST.

10.     Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban. Again, awards to non-heirs, and those who have filed untimely claims, will, at a minimum, reduce the recoveries of my child and me from the Taliban and any limited fund of money that may be available.

11.     I expressly object to the Court making wrongful death awards to "non-heirs."

12.     I also object to the Court issuing awards to plaintiffs who have filed claims after the statute of limitations has expired.   This Court apparently has previously determined that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent, against the statute of limitations. *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1.  Please do not allow non-heirs to "piggy-back" on timely legal actions, and then reduce the wrongful death damage money paid to my late husband's heirs.

Dated: New York, New York
      April _20_, 2023

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Kristen Breitweiser

-3-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN)<br><br>ECF Case |

This document relates to:

*Ashton, et al. v. al Qaeda Islamic Army, et al.,* 02-cv-6977 (GBD)(SN)

### DECLARATION OF PLAINTIFF PATRICIA RYAN IN SUPPORT <br> OF DEFAULT JUDGMENT APPLICATION AGAINST THE TALIBAN

Patricia Ryan, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury under the laws of the United States of America, that the following is true and correct:

1.      I am the court-appointed personal representative of the Estate of John J. Ryan, Jr., who perished at the World Trade Center as a result of the terrorist attacks on September 11, 2001.

2.      I submit this Declaration on my own behalf as the surviving spouse of John J. Ryan, Jr., and on behalf of the only other New Jersey State designated "heirs" of my late husband, our three children: Colin Ryan, Kristen Ryan and Laura Ryan.

3.      I can affirm to the Court that my deceased husband lived with me and my three children at a private home at 53 Ellsworth Drive, W. Windsor, New Jersey 08550, at the time of his death.  I can further affirm that my children and I were the only "immediate family members" living with my husband and that no other family member lived with us (or was dependent on my husband – financially or emotionally) at the time of his death.

4.      For the foregoing reasons, I ask that the Court to deem my children and me as the only "immediate family members" of John J. Ryan, Jr.

Case 1:03-md-01570-GBD-SN   Document 9095-4   Filed 05/18/23   Page 174 of 186
**A361**
Case 1:03-md-01570-GBD-SN   Document 9042-2   Filed 04/21/23   Page 2 of 108

5.      My attorney (John F. Schutty) has advised me that under New Jersey State estate administration law, when a decedent is survived by a spouse and children, they are considered the decedent's only "legal heirs" (New Jersey estate administration law explicitly denies parents and siblings of a decedent any wrongful death damages under such circumstances).

6.      I was originally unaware that my ex-in-laws (my deceased husband's parents and siblings) had filed lawsuits (separate apart from mine) for alleged wrongful death damages sustained as a result of my husband's death.

7.      My attorney only recently completed a search of the MDL docket and advised me about the substantial wrongful death damages that were awarded against the Islamic Republic of Iran ("Iran") and in favor of my ex-in-laws.

8.      I was dismayed to learn how large the awards were to my ex-in-laws and even more dismayed to learn how these judgments affected/reduced the distribution of money from the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") to me and my children.

9.      Here is what my attorney has told me about the default judgments that were awarded to my ex-in-laws against Iran:

| Non-Legal Heirs of John J. Ryan, Jr. Awarded Solatium Damages Against Iran | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards** |
| 12/28/2015 *Burnett* ECF#1 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 *(In-laws were individually named in complaint)* | Motley Rice LLC | John J. Ryan (Parent-Deceased) | $8,500,000 10/31/2016 ECF#3387 |
| ECF#3371-1 | *Bauer, et al. v. al Qaeda Islamic Army, et al.,* No. 02-cv-7236 *(In-laws were not individually named in complaint)* | Baumeister & Samuels, P.C. | Mary V. Ryan (Parent-Deceased) | $8,500,000 10/31/2016 ECF#3387 |
| | | | Colleen Ryan (Sibling-Deceased) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Aileen Ryan (Sibling) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Patrick Ryan (Sibling) | $4,250,000 10/31/2016 ECF#3387 |
| | | | Teague M. Ryan (Silbling) | $4,250,000 10/31/2016 ECF#3387 |
| **Total Solatium Damages Awarded to Non-Heirs Thus Far** | | | | **$34,000,000** |

10.     And here are the default judgment awards granted to me and my three children against Iran:

| Legal Heirs of John J. Ryan, Jr. Awarded Solatium Damages Against Iran[1] | | | | |
|---|---|---|---|---|
| Date Action Filed | Action | Attorneys | Name (Relation to Decedent) | Solatium Awards |
| 8/31/2015 ECF#3014 | *Ryan, et al. v. Islamic Republic of Iran, et al.,* No. 20-cv-00266 (default judgment now moved to *Ashton* action by virtue of MDL ECF#8985) | Law Office of John F. Schutty P.C. | Patricia Ryan (Spouse) | $12,500,000 2/21/2020 ECF#5999 |
| | | | Colin Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| | | | Kristen Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| | | | Laura Ryan (Child) | $8,500,000 2/21/2020 ECF#5999 |
| **Total Solatium Damages Awarded to Heirs Thus Far** | | | | **$38,000,000** |

11.   Upon information and belief, awards against Iran were granted to non-heirs without regard to whether the statute of limitations of the Foreign Sovereign Immunities Act was satisfied (a 10-year statute of limitations).  And non-heirs and heirs then proceeded into the USVSST where a limited amount of funds were available to be shared amongst claimants. Undeniably, my children and I were hurt by the award of wrongful death damages to my deceased husband's parents and siblings and resulting payments by the USVSST.

---

[1]      The Estate of John J. Ryan, Jr. was also awarded economic loss damages of $16,159,990 (ECF MDL#5999), but the U.S. Victims of State Sponsored Terrorism Fund ("USVSST") limited the legal heirs of my husband to a total cap of $35 million (solatium plus economic loss damages) before our USVSST awards were calculated, while individual "immediate family members" were given a cap of $20 million "for 9/11 family members who are not a 9/11 spouse or 9/11 dependent."  What is undeniable is that the recoveries of parents and siblings necessarily decrease the Fund's assets and limit what is available to heirs.  *See* USVSST website, FAQ 4.1, http://www.usvsst.com/faq.php.

12.    My attorney now has advised that my ex-in-laws also have filed default judgment applications for wrongful death damages against the Taliban.

13.    Below is what my attorney has advised me has been filed by the non-heirs and heirs of my deceased husband:

| Non-Heirs of John J. Ryan, Jr. Who Have Requested Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 01/20/2022 ECF#7618 | *Burnett et al. v. The Islamic Republic of Iran,* No. 15-cv-09903 | Motley Rice LLC | John J. Ryan (Parent-Deceased) | $8,500,000 01/20/2022 ECF#7621 |
| | | | Mary V. Ryan (Parent-Deceased) | $8,500,000 " |
| | | | Colleen Ryan (Sibling-Deceased) | $4,250,000 " " |
| | | | Aileen Ryan (Sibling) | $4,250,000 " " |
| | | | Patrick Ryan (Sibling) | $4,250,000 " " |
| | | | Teague M. Ryan (Silbling) | $4,250,000 " " |
| **Total Solatium Awards Sought Against the Taliban by Non-Heirs** | | | | **$34,000,000** |

| Legal Heirs of John J. Ryan, Jr. Seeking Solatium Damages against the Taliban | | | | |
|---|---|---|---|---|
| **Date Action Filed** | **Action** | **Attorneys** | **Name (Relation to Decedent)** | **Solatium Awards Sought** |
| 02/01/2022 ECF#7643 | *Ryan, et al. v. Islamic Republic of Iran, et al.,* No. 20-cv-00266 (default judgment now moved to *Ashton* action by virtue of MDL ECF#8985) | Law Office of John F. Schutty P.C. | Patricia Ryan (Spouse) | $12,500,000 02/01/2022 ECF#7644 |
| | | | Colin Ryan (Child) | $8,500,000 " " |
| | | | Kristen Ryan (Child) | $8,500,000 " " |
| | | | Laura Ryan (Child) | $8,500,000 " " |
| **Total Solatium Award Sought Against the Taliban by Legal Heirs** | | | | **$38,000,000** |

14.   Again, a limited fund of money (if any) is expected to be available to all plaintiffs making claims against the Taliban.  Again, awards to non-heirs, and those who have filed untimely claims, will, at a minimum, reduce the recoveries of my children and me from the Taliban and any limited fund of money that may be available.

15.   I expressly object to the Court making wrongful death awards to "non-heirs."

16.   I also object to the Court issuing awards to plaintiffs who have filed claims after the statute of limitations has expired.  This Court apparently has previously determined that one wrongful death lawsuit, filed by any family member, protects any subsequent wrongful death lawsuit filed by any other family member of the decedent, against the statute of limitations.  *See, e.g.*, ECF MDL#5095 at 1, 5096 at 1 and 5097 at 1.  Please do not allow non-heirs to "piggy-

back" on my timely legal action, and then reduce the wrongful death damage money paid to my

late husband's estate.

Dated: New York, New York
    April 2|, 2023

I declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

Patricia Ryan

# EXHIBIT C: COURT ORDERS APPOINTING "PERSONAL REPRESENTATIVE"

State of New Jersey

# Monmouth County Surrogate's Court

In the Matter of the Estate of
**Ronald Breitweiser,** Deceased
(aka: )

**LETTERS OF ADMINISTRATION**
Docket No. 194827

I, **Marie S. Muhler,** Surrogate of the County of **MONMOUTH** do certify that on **November 19th, 2001** Administration of the Goods and Chattels, Rights and Credits which were of **Ronald Breitweiser** late of the County of **MONMOUTH,** who died intestate, was granted by me to **Kristen Breitweiser** who is(are) the **Administrator/trix(s)** and is(are) duly authorized to administer the same agreeably to law.

WITNESS my hand and seal of office, this
**19th of November, 2001**

*Marie S. Muhler*

**Marie S. Muhler,** Surrogate

©FACSTORE, 1994 Form-A13 CASE: 48243   PRINT DATE: 11/19/2001          Page 1

## State of New Jersey
# Mercer County Surrogate's Court

In the Matter of the Estate of
**John J. Ryan, Deceased**

**LETTERS TESTAMENTARY**

I, **Diane Gerofsky,** Surrogate, do hereby certify the annexed to be a true copy of the Last Will and Testament and/or Codicil(s) of the above named decedent, late of the County of **Mercer,** and State of **New Jersey,** admitted to Probate on **November 30, 2001** by the Surrogate of **Mercer** County, and that Letters Testamentary were issued to **Patricia Ryan** the **Executor/rix(s)** named therein, who is (are) duly authorized to take upon himself/herself (themselves) the administration of the said testator agreeably to the said Will and/or Codicil(s).



WITNESS my hand and seal of office, this **30th day of November, 2001.**

**Diane Gerofsky, Surrogate**

**A370**

# State of New Jersey
# Mercer County Surrogate's Court

In the Matter of the Estate of
**John J. Ryan**, Deceased

**EXECUTOR
SHORT CERTIFICATE**

I, **Diane Gerofsky**, Surrogate, do hereby certify that the Last Will and Testament and/or Codicil(s) of the above named Decedent, late of the County of **Mercer** and State of **New Jersey**, was (were) admitted to Probate by the Surrogate of **Mercer** County, on **November 30, 2001,** and that Letters Testamentary were issued to **Patricia Ryan,** the **Executor/rix(s)** named therein, who is (are) duly authorized to take upon himself/herself (themselves) the administration of the estate of said testator agreeably to the said Will and/or Codicil(s) and said Letters Testamentary have never been revoked and still remain in full force and effect.

WITNESS my hand and seal of office, this
**30th day of November, 2001.**

**Diane Gerofsky,** Surrogate

## EXHIBIT D: LIST OF PLAINTIFFS & AWARDS FOR ENTRY OF PARTIAL FINAL JUDGMENTS AGAINST THE TALIBAN

| Estate | Immediate Family Members (Heirs) | Relationship | Solatium Damages | Conscious Pain & Suffering | Economic Loss | TOTALS |
|---|---|---|---|---|---|---|
| **Estate of Ronald M. Breitweiser** | **Breitweiser, Kristen** | Spouse/PR | $12,500,000.00 | $2,000,000.00 | $45,385,507.00 | $59,885,507.00 |
| | **Breitweiser, Caroline** | Child | $ 8,500,000.00 | | | $ 8,500,000.00 |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban** | | | | | | **$68,385,507.00** |

| Estate | Immediate Family Members (Heirs) | Relationship | Solatium Damages | Conscious Pain & Suffering | Economic Loss | TOTALS |
|---|---|---|---|---|---|---|
| **Estate of John J. Ryan** | **Ryan, Patricia** | Spouse/PR | $12,500,000.00 | $2,000,000.00 | $16,159,990.00 | $30,659,990.00 |
| | **Ryan, Colin** | Child | $ 8,500,000.00 | | | $ 8,500,000.00 |
| | **Ryan, Kristen** | Child | $ 8,500,000.00 | | | $ 8,500,000.00 |
| | **Ryan, Laura** | Child | $8,500,000.00 | | | $ 8,500,000.00 |
| **Total Judgment to Personal Representative for Entry of Partial Final Judgments Against Taliban** | | | | | | **$56,159,990.00** |

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN) ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN) (and member case
  *Bauer et al. v. al Qaeda et al.,* 02-cv-7236 and *Burlingame v. Bin Laden, et al.,* 02-cv-7230)

**[PROPOSED] ORDER FOR FINAL
JUDGMENTS AGAINST THE TALIBAN
ON BEHALF OF CERTAIN *ASHTON-DICKEY* PLAINTIFFS**

      Upon consideration of the evidence and arguments submitted by the Personal

Representatives of the Estates of Ronald M. Breitweiser and John J. Ryan, Jr. (set forth in the

Declaration of John F. Schutty, Esq. and the exhibits thereto), regarding their wrongful death

claims (the Plaintiffs named herein are *Ashton-Dickey* parties to the above-captioned litigation),

and in light of the Judgment by Default for liability against defendants the Taliban entered on

May 12, 2006 (ECF No. 1797), together with the entire record in this case, and in addition to the

prior default judgment award for compensatory damages for the pre-death conscious pain and

suffering of the decedents Ronald M. Breitweiser and John J. Ryan, Jr., (*see* ECF Nos. 4011 and

5999) and the economic losses and solatium damages previously awarded herein to these

Plaintiffs under this Court's OrderS of May 29, 1018 (ECF #4011) and February 21, 2020 (ECF

#5999) awarding damages against the Defendant Islamic Republic of Iran, it is hereby;

      **ORDERED** that partial final judgment is entered on behalf of the *Ashton-Dickey* Plaintiffs

identified in the attached Exhibit A (Exhibit D to the Schutty Declaration) against the Taliban;

and it is

**ORDERED** that the *Ashton-Dickey* Plaintiffs identified in the attached Exhibit A are awarded economic damages as set forth in Exhibit A; and it is

**ORDERED** that the *Ashton-Dickey* Plaintiffs identified in the attached Exhibit A are awarded *solatium* damages as set forth in Exhibit A; and it is

**ORDERED** that the *Ashton-Dickey* Plaintiffs identified in the attached Exhibit A are awarded $2 million for the conscious pain and suffering of their decedent as set forth in Exhibit A; and it is

**ORDERED** that prejudgment interest on those awards is to be calculated at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; and it is

**ORDERED** that the *Ashton-Dickey* Plaintiffs identified in the attached Exhibit A may submit a future application for punitive damages consistent with any future rulings of this Court; and it is

**ORDERED** that the *Ashton-Dickey* Plaintiffs not appearing on Exhibit A who were not previously awarded *solatium* and/or economic damages may submit applications in later stages and they will be approved on the same basis as currently approved for those Plaintiffs appearing on Exhibit A.

*Furthermore, the Court respectfully directs the Clerk of the Court to terminate the Motion at ECF No. ####.*

Dated: New York, New York
         April 21, 2023

                                        SO ORDERED:


                                        _____
                                        GEORGE B. DANIELS
                                        UNITED STATES DISTRICT COURT JUDGE