UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:
*Ashton et al. v. al Qaeda Islamic Army, et al.*, 02-cv-6977 (GBD)(SN)

**The *Ashton 28* Motion for Final Damages for Estate Plaintiffs Without Prior Economic Loss Judgments and Solatium Plaintiffs Without Prior Judgments**

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and exhibits filed in connection with this motion, those *Ashton 28* Plaintiffs set forth in Exhibits B-1, B-2 and C filed with the proposed order (which is Exhibit A to the default judgment motion sheet) by and through their counsel, Kreindler & Kreindler LLP, respectfully move this Court for an Order:

1)  Awarding those Plaintiffs set forth on Exhibits B-1 and B-2 economic loss for damages as supported by the expert analysis and reports attached to the Kreindler Declaration;

2)  Awarding those Plaintiffs set forth on Exhibit C solatium damages for the losses they suffered as a result of the deaths of their immediate family members in the September 11, 2001 terrorist attacks in the amounts previously awarded by this Court;

3)  Awarding the *Ashton 28* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

4)  Granting the *Ashton 28* Plaintiffs permission to seek punitive damages and any other appropriate damages at a later date;

5)  Finding that service of process was properly effected upon the Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

1

6) Granting permission for all other plaintiffs in this action not appearing on Exhibits B-1, B-2 or C to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

This motion is made on behalf of the claimants listed in Exhibits B-1, B-2 and C attached to the proposed order (*Ashton 28* Plaintiffs), in light of this Court's previous order granting permission to allow remaining plaintiffs in the case to move for this relief. *See* ECF No. 3300.[1]

As the awards set forth in the proposed order represent the only direct recovery against Iran on behalf of the *Ashton 28* Plaintiffs listed in Exhibits B-1, B-2 and C to the proposed order, the proposed order will constitute final awards and judgments against Iran for those plaintiffs listed in Exhibits B-1, B-2 and C to it.

**I.      Procedural Background**

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the sponsors of the September 11, 2001 terrorist attacks, which included allegations against Iran. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 1. Plaintiffs, both United States nationals and non-nationals, asserted federal jurisdiction pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"). *Id.* at 28, 39 – 40, 43, 48. Iran was listed as a named defendant in the *Ashton* Plaintiffs' Consolidated Amended Complaint, filed on March 6, 2003, with the same jurisdictional assertions. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 17, ECF No. 11-5 at 45 - 49. This Consolidated Amended Complaint (the "CAC") was served in compliance with FSIA requirements through diplomatic channels, but Iran has

---

[1] References to the 03-md-1570 docket entries are noted only by the ECF document number. Any reference to a prior Order or filing on a different docket will include that docket number as well as the ECF document number.

2

never answered. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 424 at 2; *see also* 02-cv-6977 (S.D.N.Y.) ECF No. 358.  The *Ashton* Plaintiffs moved for a Certificate of Default, which the Clerk of the Court issued. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 651.

At the time that the CAC was first filed against Iran, the FSIA functioned as a pass-through statute, denying immunity for claims arising from certain acts of terrorism or material support for terrorism if the United States had designated the foreign sovereign a state sponsor of terrorism, thus allowing a plaintiff to pursue a claim in the federal courts in suits against a nation-state that had been officially designated a state-sponsor of terrorism, such as Iran. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241.  The substantive causes of action detailed in the CAC were for common-law wrongful death based on intentional murder, survival damages and injuries and assault and battery; violation of the Anti-Terrorism Act (18 U.S.C. § 2333); violation of the TVPA; and violation of the FSIA. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-5 at 245 – 50.

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, the *Ashton* Plaintiffs moved for a judgment of liability against Iran for claims arising out of the deaths of the plaintiffs' decedents. ECF No. 3008.  In their motion for a liability default judgment, the *Ashton* Plaintiffs relied on the Certificate of Default entered in the *Ashton* case, which was premised on the CAC that Iran had never answered. ECF No. 2970 at 2.  They then moved for a default judgment of liability against Iran only as to those causes of action established under the FSIA.

ECF No. 2970 at 2, 10 – 18. This Court granted that motion for a default judgment of liability. ECF No. 3014.[2]

Thereafter, the *Ashton* Plaintiffs moved for partial summary judgment for the conscious pain and suffering that victims murdered on September 11, 2001 suffered before death, which this Court granted, and certain *Ashton* Plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See* ECF No. 3229 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and No. 3356 (awarding damages for economic loss). In addition, certain *Ashton* Plaintiffs moved for solatium damages suffered by immediate family members and those non-immediate family members who were the "functional equivalent" of immediate family members eligible to recover under the terrorism exception to the FSIA as well as for the economic loss suffered on behalf of the estates of some of those killed on September 11, 2001. *See, e.g.,* ECF Nos. 3295 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 4058 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 5535 (Motion for Final Judgment for *Ashton XVII* and *Betru VI* claimants seeking economic damages and final judgments for estates).

---

[2] The *Ashton* Plaintiffs at the same time also moved for permission to file an Amended Consolidated Complaint against Iran, asserting the same jurisdictional allegations as in the prior complaints, adding a claim based on the new provision of the FSIA enacted subsequent to the filing of the original suits against Iran and adopting and incorporating by reference the prior *Ashton* allegations against Iran. ECF Nos. 2968, 2968-1 at 1 - 2 (adding allegations under 28 U.S.C. § 1605A). The Court issued an Opinion and Order allowing the *Ashton* Plaintiffs to amend their pleadings as to Iran without requiring service of the amended pleadings. ECF No. 3227. Plaintiffs thereafter filed the Amended Consolidated Complaint on the docket. ECF. No. 3237.

This Court granted these motions, finding that an award to the immediate family members (or functional equivalent) of each decedent was proper, that economic damages and final judgments for estates were warranted and that prejudgment interest on the solatium loss amounts was warranted. *See, e.g.,* ECF Nos. 3300; 4106; 5926.

For the reasons below as well as those set forth in the prior motions for summary judgment on liability and prior motions for judgment for conscious pain and suffering and economic loss made on behalf of other *Ashton* wrongful death plaintiffs, the *Ashton 28* Plaintiffs listed in Exhibits B-1 and B-2 to the proposed Order now move this Court to grant the proposed Order awarding them economic loss damages combined with the previously granted compensatory awards for the conscious pain and suffering experienced by those individuals killed on September 11, 2001; and the *Ashton 28* Plaintiffs listed in Exhibit C to the proposed Order now move this Court to grant the proposed Order awarding solatium damages in the same amounts previously awarded to other plaintiffs with the same relationships to those killed in the September 11, 2001 Terrorist Attacks.  All *Ashton 28* Plaintiffs ask this Court to further direct that pre-judgment interest be assessed at 4.96 percent per annum and find that service of process was properly effected on Iran pursuant to the FSIA (28 U.S.C. § 1608(a)), as this Court has previously held in prior similar applications.  The *Ashton* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the exhibits attached to the proposed Order, should any other applications be warranted.

**II.      Damages**

Under 28 U.S.C. § 1605A ("Section 1605A"), which, among other claims, applies to the suit against Iran, available damages include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(a)(1) and (c)(4).  That is, the "estates of those who

[died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010). While a claim under Section 1605A is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," under the Alien Tort Statute, district courts have jurisdiction over claims brought by non-United States nationals who do not fit the Section 1605A categories. *See* 28 U.S.C. § 1350.

Those *Ashton 28* Plaintiffs set forth in Exhibits B-1 and B-2 to the proposed Order are either United States nationals, as noted on Exhibit B-1, or non-United States nationals, as noted on Exhibit B-2. Those *Ashton 28* Plaintiffs set forth on Exhibit C to the proposed Order are all immediate family members of the 9/11 Decedent listed on Exhibit C and they or the 9/11 Decedent was a United States national as of September 11, 2001 and they therefore are entitled to compensation under 28 U.S.C. § 1605A for the solatium losses suffered as a result of the wrongful death of each of their decedents.

As liability has been established in this matter, each moving plaintiff is now entitled to damages in the amounts set forth on Exhibits B-1, B-2 and C attached to the proposed Order which reflect (1) the damage amounts previously awarded by this Court for the conscious pain and suffering suffered by the 9/11 Decedents and the economic loss supported by the expert economic analysis and reports submitted herewith (Exhibits B-1 and B-2) and (2) the damages amounts previously awarded by this Court for solatium damages to immediate family members of 9/11 Decedents (Exhibit C).

A. **Economic Damages**

Economic damages are specifically contemplated in a suit against an officially designated state-sponsor of terrorism such as Iran. *See* 28 U.S.C. § 1605A(c). The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp. 1, 27 (D.D.C. 1998). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at 81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.) Thus, for example, United States District Court Royce C. Lambreth of the District of Columbia, in a series of decisions issuing final judgments against Iran, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[3]

Previously, this Court awarded economic damages in prior claims against Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. For those 9/11 Decedents on Exhibits B-1 and B-2 attached to the proposed Order for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages calculation previously provided by an economic expert or generated by the September 11 Victim Compensation Fund ("VCF").

---

[3] In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

7

In this case, the *Ashton* Plaintiffs retained the services of John E. Beauzile, who has a Master's Degree in Actuarial Science from Columbia University and expertise in mathematics, economics, accounting, applied statistics, financial and economic modeling as well as models for life contingencies, among other things, to evaluate the present value of the previously-calculated economic losses resulting from decedent's death as a result of the September 11, 2001 terrorist attacks.  Kreindler Decl., Exhibit D, Declaration of John E. Beauzile, at ¶¶ 3-9.

As described in more detail in Mr. Beauzile's declaration (Exhibit D to the Kreindler Decl.), relying on materials provided by plaintiffs, economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information, and applying the methodologies and assumptions described in Mr. Beauzile's declaration, the economic damages amounts set forth in Exhibits B-1 and B-2 are accurate to a reasonable degree of accounting and actuarial certainty. Kreindler Decl., Exhibit D (Beauzile Decl.) at ¶ 9.  The updated reports are provided as Exhibit E to the Kreindler Declaration, submitted separately under seal. Kreindler Decl. at ¶ 10.

Accordingly, the *Ashton* Plaintiffs now respectfully request that this Court order economic loss awards to those 9/11 Decedents listed in Exhibits B-1 and B-2 of the proposed Order in the amounts set forth therein.

**B. Conscious Pain and Suffering**

Plaintiffs identified in Exhibits B-1 and B-2 attached to the proposed Order are all estates of 9/11 Decedents, who suffered through the September 11, 2001 terrorist attacks and were murdered on that day.  This Court has previously assessed claims for the extraordinary conscious pain and suffering experienced by those who lost their lives on September 11, 2001, including

for those 9/11 Decedents identified on Exhibits B-1 and B-2 as noted therein. Accordingly, the *Ashton* Plaintiffs now respectfully request that this Court grant those 9/11 Decedents whose estates are set forth in Exhibits B-1 and B-2 total compensatory damages judgment that reflects both the economic losses listed in Exhibits B-1 and B-2 as well as the previously awarded $2,000,000 for each 9/11 Decedent. That total final damages amount for each 9/11 Decedent are listed in Exhibits B-1 and B-2.

### C. Solatium Damages

The Foreign Sovereign Immunities Act (28 U.S.C. § 1605A) specifically provides for solatium damages. Under that provision, family members of the decedents may recover for "the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), *vacated on other grounds*, 404 F. Supp. 2d 261 (D.D.C. 2005). Other courts have previously noted that "[a]cts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). Given that, in FSIA cases solatium claims have been treated as comparable to claims for intentional infliction of emotional distress, in which the immediate family members of the decedent are treated as direct victims. *See, e.g. Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)("[c]ourts have uniformly held that a terrorist attack—by its nature—is directed not only at the victims but also at the victims' families."); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (treating solatium claim as "'indistinguishable' from the claim of intentional infliction of emotional distress.") (quoting *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Thus, this Court has previously awarded solatium damages to

"immediate family members" who, though not physically present at the site of the terrorist attacks, were nevertheless intended victims of the terrorist activities. *See* ECF 3358; *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (GBD)(SN), 2015 WL 9468813 (S.D.N.Y. Dec. 28, 2015); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MDL-1570 (GBD)(SN), 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012).

In defining those family members eligible to make a claim for solatium damages, this Court previously determined that spouses, parents, children and siblings who survived a victim killed in the September 11 terrorist attacks were entitled to recover for their losses, and set forth a framework for other family relationships that fell outside of those four categories, such as intimate partners, aunts and uncles and step-relationships, who, based on the particular factual circumstances in each case, may be considered the functional equivalent of immediate family members. *See* ECF No. 3363 (Report & Recommendation). The four established categories of family relationships – spouses, parents, children and siblings – do not require any additional showing of the nature of the underlying relationship.

  i. **Immediate Family Members**

To fashion a solatium award adequately compensating the surviving immediate family members in the litigation against Iran, this Court previously looked to the analysis undertaken by District Court Judge Royce Lambert in the case of *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). There, Judge Lamberth concluded that solatium damages should be awarded to each spouse of a deceased victim in the amount of $8 million, to each parent in the amount of $5 million, and to each sibling in the amount of $2.5 million. *Id.*[4]

---

[4] This formula may be adjusted upward or downward when circumstances warrant. *See, e.g., Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85.

Magistrate Judge Frank Maas previously recognized that the immediate family members of those killed in the September 11 terrorist attacks suffered and continue to suffer "profound agony and grief" and, "[w]orse yet, … are faced with frequent reminders of the events of that day." *See* ECF No. 2618 at 10 – 12.  Given the "extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families," Magistrate Judge Maas in his Report and Recommendation concluded that an upward departure from the *Heiser* framework was appropriate and recommended solatium damages in the following amounts:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

Subsequently, Magistrate Judge Maas and then Magistrate Judge Sarah Netburn issued orders awarding solatium damages in the amounts set forth above to various groups of plaintiffs.

The losses claimed in this motion are legally and factually comparable to those suffered by the prior *Ashton* claimants, and the other claimants involved in this litigation.  Each of the deaths in this case were sudden and unexpected and were the result of the terrorism defendants' extreme acts of malice.  The decedents were civilians whose deaths were intended to create an environment of fear and terror.  The claimants here were not attenuated victims but the immediate family members of the decedents and were directly and irrevocably harmed by the terrorist acts and consequences.  Many family members can visit no private cemetery plot or gravestone to visit their loved ones but are instead resigned to never have the closure that might

11

otherwise be expected after the death of an immediate family member.  The amount of solatium damages previously adopted by the District Court in the other *Ashton* cases as well as the other claimants involved in this litigation should apply equally to the *Ashton 28* Plaintiffs set forth on Exhibit C to the proposed Order.

The relationships between the decedent and the *Ashton 28* Plaintiffs are identified on Exhibit C accompanying the proposed Order.  As described in the Kreindler Declaration, all of the *Ashton 28* Plaintiffs listed in Exhibit C have direct relationships previously recognized as being presumptively qualified for solatium damages; the relationships between the *Ashton 28* Plaintiffs and their immediate family members, who were killed in the September 11, 2001 terrorist attacks, have been verified; all of the *Ashton 28* Plaintiffs survived the death of their immediate family member on September 11, 2001; and none of the *Ashton 28* Plaintiffs has another known claim pending before this Court for compensation against Iran.  The *Ashton* Plaintiffs therefore respectfully request that this Court issue a final judgment ordering payment of solatium damages to the *Ashton 28* Plaintiffs, listed in Exhibit C, in the same amounts set forth above, based on their relationship with their decedent and as described in the Kreindler Declaration and set forth in Exhibit C.

**D. Punitive Damages**

Plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4).  Previously in this case, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks." ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No.

3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 (Judge Daniels applying 3.44 punitive multiplier).

However, in another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, a different magistrate judge recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363 at 28. Judge Daniels adopted that recommendation, denying without prejudice the plaintiffs' request for punitive damages. ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, the *Ashton* Plaintiffs request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### E. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate. *See* ECF No. 3175 at 1 – 2. Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Ashton 28* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum on their awards running from September 11, 2001 until the date of judgment, as was done previously for other *Ashton* Plaintiffs, as well as for other plaintiffs in this consolidated litigation.

### III.    Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* Plaintiffs and other plaintiffs, the *Ashton 28* Plaintiffs respectfully request that this Court grant the proposed order and

1)    Award the Plaintiffs set forth on Exhibits B-1 and B-2 of the proposed Order economic loss to damages as supported by the expert analysis and reports attached as exhibits to the Kreindler Declaration and confirm the compensatory damages for conscious pain and suffering previously awarded by this Court;

2)    Award the Plaintiffs set forth on Exhibit C of the proposed Order solatium damages based on the deaths of their immediate family members, all of whom were killed on September 11, 2001 in the terrorist attacks;

3)    Award them pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

4)    Grant them permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date;

5)    Find that service of process was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

6)      Grant permission for all other plaintiffs in this action not appearing on Exhibits B-1, B-2 or C to the proposed Order to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: June 19, 2024
        New York, New York

                                        Respectfully submitted,

                                        KREINDLER & KREINDLER LLP

                                        BY:  /s/ James P. Kreindler
                                        James P. Kreindler, Esq.
                                        485 Lexington Avenue, 28th Floor
                                        New York, New York 10017
                                        Tel: (212) 687-8181
                                        *Counsel for Ashton Plaintiffs*