**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:
*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)

**The *Ashton 30* Motion for Final Damages for Estate Plaintiff Without Prior Economic Loss Judgments**

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and exhibits filed in connection with this motion, that *Ashton 30* Plaintiff set forth in Exhibit B filed with the proposed order (which is Exhibit A to the default judgment motion sheet) by and through their counsel, Kreindler & Kreindler LLP, respectfully moves this Court for an Order:

1) Awarding that Plaintiff set forth on Exhibit B economic loss for damages as supported by the expert analysis and report attached to the Kreindler Declaration;

2) Awarding the *Ashton 30* Plaintiff pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

3) Granting the *Ashton 30* Plaintiff permission to seek punitive damages and any other appropriate damages at a later date;

4) Finding that service of process was properly effected upon the Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

5) Granting permission for all other plaintiffs in this action not appearing on Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

1

This motion is made on behalf of the claimant listed in Exhibit B attached to the proposed order (*Ashton 30* Plaintiff), in light of this Court's previous order granting permission to allow remaining plaintiffs in the case to move for this relief. *See* ECF No. 3300.[1]

As the awards set forth in the proposed order represent the only direct recovery against Iran on behalf of the *Ashton 30* Plaintiff listed in Exhibit B to the proposed order, the proposed order will constitute final awards and judgments against Iran for those plaintiff listed in Exhibit B to it.

## I.        Procedural Background

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the sponsors of the September 11, 2001 terrorist attacks, which included allegations against Iran. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 1.  Plaintiffs, both United States nationals and non-nationals, asserted federal jurisdiction pursuant to, among other things, the Alien Tort Statute (28 U.S.C. § 1350) ("ATS"), the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)) ("FSIA") and the Torture Victim Protection Act (28 U.S.C. § 1350 note) ("TVPA"). *Id.* at 28, 39 – 40, 43, 48.  Iran was listed as a named defendant in the *Ashton* Plaintiffs' Consolidated Amended Complaint, filed on March 6, 2003, with the same jurisdictional assertions. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 17, ECF No. 11-5 at 45 - 49.  This Consolidated Amended Complaint (the "CAC") was served in compliance with FSIA requirements through diplomatic channels, but Iran has never answered. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 424 at 2; *see also* 02-cv-6977 (S.D.N.Y.) ECF No. 358.  The *Ashton* Plaintiffs moved for a Certificate of Default, which the Clerk of the Court issued. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 651.

---

[1] References to the 03-md-1570 docket entries are noted only by the ECF document number. Any reference to a prior Order or filing on a different docket will include that docket number as well as the ECF document number.

At the time that the CAC was first filed against Iran, the FSIA functioned as a pass-through statute, denying immunity for claims arising from certain acts of terrorism or material support for terrorism if the United States had designated the foreign sovereign a state sponsor of terrorism, thus allowing a plaintiff to pursue a claim in the federal courts in suits against a nation-state that had been officially designated a state-sponsor of terrorism, such as Iran. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241.  The substantive causes of action detailed in the CAC were for common-law wrongful death based on intentional murder, survival damages and injuries and assault and battery; violation of the Anti-Terrorism Act (18 U.S.C. § 2333); violation of the TVPA; and violation of the FSIA. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-5 at 245 – 50.

Based on evidence and arguments submitted by various plaintiffs in this consolidated multi-district litigation arising out of the September 11, 2001 terror attacks, the *Ashton* Plaintiffs moved for a judgment of liability against Iran for claims arising out of the deaths of the plaintiffs' decedents. ECF No. 3008.  In their motion for a liability default judgment, the *Ashton* Plaintiffs relied on the Certificate of Default entered in the *Ashton* case, which was premised on the CAC that Iran had never answered. ECF No. 2970 at 2.  They then moved for a default judgment of liability against Iran only as to those causes of action established under the FSIA. ECF No. 2970 at 2, 10 – 18.  This Court granted that motion for a default judgment of liability. ECF No. 3014.[2]

---

[2] The *Ashton* Plaintiffs at the same time also moved for permission to file an Amended Consolidated Complaint against Iran, asserting the same jurisdictional allegations as in the prior complaints, adding a claim based on the new provision of the FSIA enacted subsequent to the filing of the original suits against Iran and adopting and incorporating by reference the prior *Ashton* allegations against Iran. ECF Nos. 2968, 2968-1 at 1 - 2 (adding allegations under 28 U.S.C. § 1605A).  The Court issued an Opinion and Order allowing the *Ashton* Plaintiffs to amend their pleadings as to Iran without requiring service of the amended pleadings. ECF No.

Thereafter, the *Ashton* Plaintiffs moved for partial summary judgment for the conscious

pain and suffering that victims murdered on September 11, 2001 suffered before death, which

this Court granted, and certain *Ashton* Plaintiffs moved for default judgments on economic

damages suffered as a result of their decedents' wrongful deaths as well.  This Court granted

those motions. *See* ECF No. 3229 (adopting December 28, 2015 Report and Recommendation

awarding damages for conscious pain and suffering) and No. 3356 (awarding damages for

economic loss).  In addition, certain *Ashton* Plaintiffs moved for solatium damages suffered by

immediate family members and those non-immediate family members who were the "functional

equivalent" of immediate family members eligible to recover under the terrorism exception to

the FSIA as well as for the economic loss suffered on behalf of the estates of some of those

killed on September 11, 2001. *See, e.g.,* ECF Nos. 3295 (Motion for Final Judgment for *Ashton I*

claimants including claims for solatium damages); 4058 (Motion for Final Judgment for *Ashton*

*V* claimants, the "functional equivalent" of immediate family members, solely for solatium

damages); 5535 (Motion for Final Judgment for *Ashton XVII* and *Betru VI* claimants seeking

economic damages and final judgments for estates).

This Court granted these motions, finding that an award to the immediate family

members (or functional equivalent) of each decedent was proper, that economic damages and

final judgments for estates were warranted and that prejudgment interest on the solatium loss

amounts was warranted. *See, e.g.,* ECF Nos. 3300; 4106; 5926.

For the reasons below as well as those set forth in the prior motions for summary

judgment on liability and prior motions for judgment for conscious pain and suffering and

---

3227.  Plaintiffs thereafter filed the Amended Consolidated Complaint on the docket. ECF. No.
3237.

economic loss made on behalf of other *Ashton* wrongful death plaintiffs, the *Ashton 29* Plaintiffs listed in Exhibit B to the proposed Order now move this Court to grant the proposed Order awarding them economic loss damages combined with the previously granted compensatory awards for the conscious pain and suffering experienced by those individuals killed on September 11, 2001.  All *Ashton 29* Plaintiffs ask this Court to further direct that pre-judgment interest be assessed at 4.96 percent per annum and find that service of process was properly effected on Iran pursuant to the FSIA (28 U.S.C. § 1608(a)), as this Court has previously held in prior similar applications.  The *Ashton* Plaintiffs also ask for permission to continue to submit applications in subsequent stages on behalf of those claimants not included in the exhibits attached to the proposed Order, should any other applications be warranted.

## II.    Damages

Under 28 U.S.C. § 1605A ("Section 1605A"), which, among other claims, applies to the suit against Iran, available damages include "economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. § 1605A(a)(1) and (c)(4).  That is, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages."  *Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 83 (D.D.C. 2010).  While a claim under Section 1605A is available only to a "claimant or … victim [who] was … a national of the United States; a member of the armed forces; or otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment," under the Alien Tort Statute, district courts have jurisdiction over claims brought by non-United States nationals who do not fit the Section 1605A categories. *See* 28 U.S.C. § 1350.

5

That *Ashton 30* Plaintiff set forth in Exhibit B to the proposed Order is the representative

of the estate of a victim who was murdered on September 11, 2001 ("9/11 Decedent"), claims on

behalf of the 9/11 Decedent is asserted by the estate representative and that 9/11 Decedent and/or

estate representative were and are United States nationals.

As liability has been established in this matter, the moving plaintiff is now entitled to

damages in the amount set forth on Exhibit B attached to the proposed Order which reflects (1)

the damage amount previously awarded by this Court for the conscious pain and suffering

suffered by the 9/11 Decedent and the economic loss supported by the expert economic analysis

and report submitted herewith (Exhibit B).

### A. Economic Damages

Economic damages are specifically contemplated in a suit against an officially designated

state-sponsor of terrorism such as Iran. *See* 28 U.S.C. § 1605A(c).  The economic damages

provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which

result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran,* 999 F. Supp.

1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's estate [are] … entitled

to recover the present value of economic damages, including lost wages that the decedents might

reasonably have been expected to earn but for their wrongful deaths." *Valore,* 700 F. Supp. 2d at

81-82, citing *Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229 (D.D.C. 2006.)  Thus, for

example, United States District Court Royce C. Lambreth of the District of Columbia, in a series

of decisions issuing final judgments against Iran, has held Iran "liable for the economic damages

caused to decedents' estates." *Roth v. Islamic Republic of Iran,* 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore,* 700 F.Supp.2d at 78.[3]

Previously, this Court awarded economic damages in prior claims against Iran for the "economic losses stemming from the wrongful death of the decedent[.]" ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. For those 9/11 Decedents on Exhibit B attached to the proposed Order for whom economic damages are sought, the economic loss amount was calculated based on updated, present-value figures of either the economic damages calculation previously provided by an economic expert or generated by the September 11 Victim Compensation Fund ("VCF").

In this case, the *Ashton* Plaintiffs retained the services of John E. Beauzile, who has a Master's Degree in Actuarial Science from Columbia University and expertise in mathematics, economics, accounting, applied statistics, financial and economic modeling as well as models for life contingencies, among other things, to evaluate the present value of the previously-calculated economic losses resulting from decedent's death as a result of the September 11, 2001 terrorist attacks. Kreindler Decl., Exhibit C, Declaration of John E. Beauzile, at ¶¶ 3-9.

As described in more detail in Mr. Beauzile's declaration (Exhibit C to the Kreindler Decl.), relying on materials provided by plaintiffs, economic expert reports, VCF applications, VCF work-papers and distribution plans, VCF determinations, underlying economic documents, VCF valuation files, tax submissions and other earnings information, and applying the methodologies and assumptions described in Mr. Beauzile's declaration, the economic damages

---

[3] In adopting this estate-accumulations calculation, Judge Lambreth recognized that case law under the FSIA was "develop[ing] … a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Roth,* 78 F.Supp.3d at 82.

amount set forth in Exhibit B are accurate to a reasonable degree of accounting and actuarial

certainty. Kreindler Decl., Exhibit C (Beauzile Decl.) at ¶ 9.  The updated report is provided as

Exhibit D to the Kreindler Declaration, submitted separately under seal. Kreindler Decl. at ¶ 10.

Accordingly, the *Ashton* Plaintiffs now respectfully request that this Court order an

economic loss award to that 9/11 Decedent listed in Exhibit B of the proposed Order in the

amount set forth therein.

### B.  Conscious Pain and Suffering

Plaintiff identified in Exhibit B attached to the proposed Order is the estate of a 9/11

Decedent, who suffered through the September 11, 2001 terrorist attacks and was murdered on

that day.  This Court has previously assessed claims for the extraordinary conscious pain and

suffering experienced by those who lost their lives on September 11, 2001, including for the 9/11

Decedent identified on Exhibit B as noted therein.  Accordingly, the *Ashton* Plaintiffs now

respectfully request that this Court grant the 9/11 Decedent whose estate i set forth in Exhibit B a

total compensatory damages judgment that reflects both the economic losses listed in Exhibit B

as well as the previously awarded $2,000,000 conscious pain and suffering.  That total final

damages amount for the *Ashton 30* 9/11 Decedent is listed in Exhibit B.

### C.  Punitive Damages

Plaintiffs are also entitled to punitive damages. *See* 28 U.S.C. § 1605A(c)(4).  Previously

in this case, the magistrate judge explained that a "3.44 ratio 'has been established as the

standard ratio applicable to cases arising out of' terrorist attacks."  ECF No. 2618 at 13 (quoting

*Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This

Court adopted that recommendation and awarded punitive damages on each compensatory

damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2.  The

Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No.

3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive

multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and

Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 (Judge Daniels applying 3.44

punitive multiplier).

However, in another case in the *In re Terrorist Attacks on September 11, 2001*

multidistrict litigation, a different magistrate judge recommended that the plaintiffs' request for

punitive damages be denied without prejudice. ECF No. 3363 at 28.  Judge Daniels adopted that

recommendation, denying without prejudice the plaintiffs' request for punitive damages. ECF

No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive

damage issues until a later stage of the litigation, the *Ashton* Plaintiffs request permission to

address the issue of punitive damages at a later date.  *See, e.g.*, ECF No. 3666 (Judge Daniels'

order authorizing plaintiffs to make an application for punitive damages at a later date consistent

with any future rulings of the Court).

### D. Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation,

adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims

arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum

from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose

elsewhere, 4.96 percent interest per annum compounded annually was appropriate.  *See* ECF No.

3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest

of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Ashton 30* Plaintiff asks that this Court direct that prejudgment interest of 4.96 percent per annum on their award running from September 11, 2001 until the date of judgment, as was done previously for other *Ashton* Plaintiffs, as well as for other plaintiffs in this consolidated litigation.

### III.    Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* Plaintiffs and other plaintiffs, the *Ashton 30* Plaintiffs respectfully request that this Court grant the proposed order and

1)    Award the Plaintiff set forth on Exhibit B of the proposed Order economic loss damages as supported by the expert analysis and reports attached as exhibits to the Kreindler Declaration and confirm the compensatory damages for conscious pain and suffering previously awarded by this Court;

2)    Award them pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

3)    Grant permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date;

4)    Find that service of process was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

5)    Grant permission for all other plaintiffs in this action not appearing on Exhibit B to the proposed Order to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated: June 25, 2024
       New York, New York

                              Respectfully submitted,

                              KREINDLER & KREINDLER LLP

                              BY:   /s/ James P. Kreindler
                              James P. Kreindler, Esq.
                              485 Lexington Avenue, 28th Floor
                              New York, New York 10017
                              Tel: (212) 687-8181
                              *Counsel for Ashton Plaintiffs*