IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re TERRORIST ATTACKS ON SEPTEMBER 11, 2001

Case No. 1:03-md-01570-GBD-SN

*This document relates to:*

*Ashton et al. v. Al Qaeda, and the Republic of Sudan et al.*, Case No. 02 Civ. 6977; *Nolan et al. v. Republic of the Sudan*, Case No. 20 Civ. 10720; *Parker et al. v. Republic of the Sudan*, Case No. 20 Civ. 10657; *Betru et al. v. The Republic of Sudan*, Case No. 20 Civ. 10615; *Clarke et al. v. The Republic of the Sudan*, Case No. 23 Civ. 07736; *Burnett et al. v. Al Baraka Inv. & Dev. Corp., et al.,* Case No. 03 Civ. 9849; *Federal Insurance Co., et al. v. Al Qaida, et al.,* Case No. 03 Civ. 6978; *Continental Casualty Co., et al. v. Al Qaeda, et al.,* Case No. 04 Civ. 5970; *Estate of John P. O'Neill, Sr., et al. v. Kingdom of Saudi Arabia, et al.,* Case No. 04 Civ. 1922; *Estate of John P. O'Neill, Sr., et al. v. Republic of the Sudan, et al.,* Case No. 18 Civ. 12114; *DeRubbio, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05306; *Morris, et al. v. Islamic Republic of Iran*, Case No. 18 Civ. 05321; *Bernaerts, et al. v. Islamic Republic of Iran*, Case No. 19 Civ. 11865; *Aronow v. Republic of Sudan*, Case No. 20-cv-7733; *King, et al. v. Islamic Republic of Iran*, Case No. 22 Civ. 05193; *Strauss v. Islamic Republic of Iran*, Case No. 22 Civ 10823; *Perry et al. v. Republic of the Sudan*, Case No. 23 Civ. 07391; *DiNardo et al. v. Republic of the Sudan*, Case No. 23 Civ. 07328; *Adler et al. v. Republic of Sudan*, Case No. 23 Civ. 07164; *Fennelly, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 10824; *Kone, et al. v. Islamic Republic of Iran*, Case No. 23 Civ. 05790; *Kelly, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 7283; *Lopez, et al. v. Islamic Republic of Iran, et al.*, Case No. 23 Civ. 08305; *Jelnek, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 05520; *Lum, et al. v. Islamic Republic of Iran*, Case No. 24 Civ. 07824.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
SUDAN'S MOTION FOR CERTIFICATION OF AN
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

February 19, 2025

*Counsel for the Republic of the Sudan*

**TABLE OF CONTENTS**

I. SUDAN'S MOTION IS FACIALLY SUFFICIENT ............................................................. 1

II. SUDAN'S MOTION WAS MADE IN REASONABLE TIME .......................................... 1

III. THE ORDER RAISES CONTROLLING ISSUES OF LAW ............................................. 4

IV. SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION EXIST .................... 7

V. CERTIFYING THE ORDER FOR IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION ............................................... 9

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*,
No. 01-cv-5661, 2003 U.S. Dist. LEXIS 11611
(S.D.N.Y. July 7, 2003) ..................................................................................................9

*Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*,
No. 01-cv-5661, 2023 U.S. Dist. LEXIS 112226
(S.D.N.Y. June 29, 2023) ................................................................................................5

*APCC Servs. v. ESH AT&T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003) ................................................................................8

*Ashton v. Al Qaeda Islamic Army*,
298 F. Supp. 3d 631 (S.D.N.Y. 2018) .............................................................................8

*Bolivarian Rep. of Venez. v. Helmerich & Payne International Drilling Co.*,
581 U.S. 170 (2017) ............................................................................................4, 5, 11

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ........................................................................................................7

*Century Pac., Inc. v. Hilton Hotels Corp.*,
574 F. Supp. 2d 369 (S.D.N.Y. 2008) .............................................................................5

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ........................................................................................................2

*Comcast Corp. v. Nat'l Ass'n of African-American Owned Media*,
589 U.S. 327 (2020) ........................................................................................................7

*Consub Delaware LLC v. Schahin Engenharia Limitada*,
476 F. Supp. 2d 305 (S.D.N.Y. 2007) .............................................................................4

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ......................................................................................................11

*Ferraro v. Sec'y of U.S. HHS*,
780 F. Supp. 978 (E.D.N.Y. 1992) .................................................................................4

*FG Hemisphere Assocs. v. Dem. Rep. of Congo*,
447 F.3d 835 (D.C. Cir. 2006) ........................................................................................3

*Flanagan v. Islamic Rep. of Iran*,
190 F. Supp. 3d 138 (D.D.C. 2016) ................................................................................8

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
    No. 01-cv-6217, 2003 U.S. Dist. LEXIS 18531
    (W.D.N.Y. Sept. 4, 2003) ...................................................................................................4

*Glatt v. Fox Searchlight Pictures Inc.*,
    No. 11-cv-6784, 2013 U.S. Dist. LEXIS 139594
    (S.D.N.Y. Sept. 17, 2013) ..................................................................................................8

*Green v. City of New York*,
    No. 05-cv-0429, 2006 U.S. Dist. LEXIS 77074
    (E.D.N.Y. Oct. 23, 2006) ...............................................................................................3, 4

*Guzman v. First Chinese Presbyterian Cmty. Affs. Home Attendant Corp.*,
    No. 20-cv-3929, 2021 WL 1852038
    (S.D.N.Y. May 7, 2021) .....................................................................................................6

*Harrison v. Republic of Sudan*,
    882 F. Supp. 2d 23 (D.D.C. 2012) .....................................................................................8

*In re Air Crash near Nantucket Island*,
    No. 00-md-1344, 2004 U.S. Dist. LEXIS 24983
    (E.D.N.Y. Oct. 8, 2004) ...................................................................................................10

*In re Facebook, Inc.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ................................................................................5

*In re MTBE Prods. Liab. Litig.*,
    No. 00-md-1898, 2008 U.S. Dist. LEXIS 47222
    (S.D.N.Y. June 18, 2008) ...................................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
    117 F.4th 13 (2d Cir. 2024) ................................................................................................2

*In re World Trade Ctr. Disaster Site Litig.*,
    469 F. Supp. 2d 134 (S.D.N.Y. 2007) ..............................................................................10

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*,
    376 F.3d 1123 (D.C. Cir. 2004) .................................................................................... 7-8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) .............................................................................................6, 7

*Martens v. Smith Barney*,
    238 F. Supp. 2d 596 (S.D.N.Y. 2003) ................................................................................4

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
   No. 11-cv-6521, 2013 U.S. Dist. LEXIS 181149
   (C.D. Cal. July 11, 2013) ...................................................................................................2

*Owens v. Republic of Sudan*,
   864 F.3d 751 (D.C. Cir. 2017) ...........................................................................................8

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .................................................................................................7

*Rux v. Republic of Sudan*,
   461 F.3d 461 (4th Cir. 2006) ..........................................................................................7, 8

*SEC v. Credit Bancorp, Ltd.*,
   103 F. Supp. 2d 223 (S.D.N.Y. 2000) ................................................................................9

*Simpson ex rel. Estate of Mostafa Fahmy Karim v. Socialist People's Libyan Arab
   Jamahiriya*,
   470 F.3d 356 (D.C. Cir. 2006) ...........................................................................................3

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. for S. Dist. of Iowa*,
   482 U.S. 522 (1987) .........................................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...........................................................................................................6

*Usoyan v. Republic of Turkey*,
   6 F.4th 31 (D.C. Cir. 2021) ................................................................................................3

*Vera v. Rep. of Cuba*,
   867 F.3d 310 (2d Cir. 2017) ...............................................................................................8

*Verlinden B.V. v. Cent. Bank of Nigeria*,
   461 U.S. 480 (1983) .........................................................................................................11

**STATUTES AND RULES**

28 U.S.C. § 1292 ........................................................................................................... passim

28 U.S.C. § 1605(a)(7) ...................................................................................................... 2, 3

28 U.S.C. § 1605A ........................................................................................................ passim

28 U.S.C. § 1605B ............................................................................................................. 2, 3

## OTHER AUTHORITIES

Nat'l Comm'n on Terrorist Attacks Upon the United States,
   The 9/11 Comm'n Rep. (2004),
   https://www.govinfo.gov/content/pkg/GPO-911REPORT/pdf/GPO-
   911REPORT.pdf ............................................................................................................... 6

Plaintiffs' Opposition (ECF No. 10713) fails to seriously contend with Sudan's arguments in support of § 1292(b) certification. The Opposition relies heavily on over-the-top rhetoric and rehashed arguments concerning Sudan's historical participation in this litigation under a prior government regime. Plaintiffs cannot avoid that this Court's Order on subject-matter jurisdiction and Sudan's foreign sovereign immunity presents controlling questions of law that meet the requirements of § 1292(b). Indeed, the "institutional efficiency of the federal court system" (Opp'n 4) would be best served if Sudan can seek immediate appellate review since reversal of the Court's Order could avoid years of protracted litigation. Given Sudan's sovereign status, the rescission of Sudan's designation as a state sponsor of terrorism in 2020, the devastating civil war unfolding in Sudan, and the issues of grace and comity at play, Sudan respectfully requests that this Court invite the views of the United States with respect to the issues raised in Sudan's Motion.

### I. SUDAN'S MOTION IS FACIALLY SUFFICIENT

As an initial matter, the Opposition's assertion (at 2) that Sudan does not identify specific questions of law that Sudan seeks to appeal is patently false. *See, e.g.*, Mot. 5 (identifying "the precise issues that would be reviewed on appeal here, including, for example, the proper causation standards"). This assertion is particularly disingenuous in the face of the Opposition's acknowledgment and treatment of Sudan's arguments on the "Court's causation determinations." *See* Opp'n 6. The Opposition is also devoid of any supporting authority for the baseless proposition (at 3) that Sudan's Motion is "facially deficient."

### II. SUDAN'S MOTION WAS MADE IN REASONABLE TIME

Plaintiffs' Opposition admits (at 5) that § 1292(b) "does not expressly provide a time limit" for moving for certification and fails to show that the timing within which Sudan filed its Motion was unreasonable.

The Opposition grossly exaggerates (at 4-6) Sudan's purported "delay" by arguing that the clock should start running in August 2023, when the Court issued its Order, instead of September 2024, when the Second Circuit issued its mandate. *See* Mandate, ECF No. 10393. The Opposition's focus on the August 2023 Order (at 5) misleadingly and erroneously suggests that Sudan failed to diligently pursue its appellate rights; in fact, Sudan asserted its appellate rights through a timely notice of appeal from the Order under the collateral order doctrine. Notice of Appeal, ECF No. 9334.

The Second Circuit, after briefing and oral argument, dismissed Sudan's appeal and remanded the case to this Court. The Second Circuit held that, by virtue of § 1605A(f), Sudan could not pursue a direct appeal of the Order's finding of subject-matter jurisdiction under § 1605(a)(7) or § 1605B, and that Sudan could appeal the Order only through certification under § 1292(b). *See In re Terrorist Attacks on Sept. 11, 2001*, 117 F.4th at 27. Because of the Second Circuit's decision, Sudan now moves for such certification. Thus, any purported "delay" should be measured from the date on which this Court regained jurisdiction after the Second Circuit issued its mandate. *See Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, No. 11-cv-6521, 2013 U.S. Dist. LEXIS 181149, at *19-20 (C.D. Cal. July 11, 2013) (granting § 1292(b) certification and assessing motion's timeliness from date of a decision providing new persuasive authority relevant to the certification request rather than from the date of the original order); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) ("An appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'") (citation omitted).

Plaintiffs mischaracterize (at 5) Sudan's notice of appeal as a "facile" attempt at delay. But Sudan's timely appeal was made in good faith in pursuit of its interlocutory appellate rights, long recognized as available to foreign sovereigns defending against an assertion of subject-matter jurisdiction under § 1605(a)(7) and § 1605B of the FSIA. *See, e.g.*, *Simpson ex rel. Estate of Mostafa Fahmy Karim v. Socialist People's Libyan Arab Jamahiriya,* 470 F.3d 356, 359 (D.C. Cir. 2006) (holding court of appeals had jurisdiction where district court found jurisdiction under § 1605(a)(7)); *Usoyan v. Republic of Turkey*, 6 F.4th 31, 37 (D.C. Cir. 2021) (same, but under § 1605B). Moreover, diligently pursuing one's appellate rights by filing a timely notice of appeal is fundamentally different from filing a motion for reconsideration as a means to circumvent the time limits for appeal under § 1292(b), which was the conduct criticized in the case that Plaintiffs cite (at 5). *See Green*, 2006 U.S. Dist. LEXIS 77074, at *6.

The timing of Sudan's Motion is also reasonable given the ongoing and terrible civil war in Sudan. The Opposition continues (at 3 n.1 & 6) to blithely dismiss these catastrophic events, in which nearly 19,000 civilians have been killed, 3 million people have been displaced, and 30.4 million people are in dire need of humanitarian assistance. This tone-deaf lack of sensitivity is frankly shocking in the face of the reports coming out of Sudan. *See* Mot. 9; *see also* Conor Lennon, *Sudan, 'the most devasting humanitarian and displacement crisis in the world'*, U.N. News (Feb. 14, 2025), https://news.un.org/en/story/2025/02/1160161. Plaintiffs also have no response to *FG Hemisphere*, in which the D.C. Circuit found the DRC's delay in responding to a motion to execute was excusable given similar circumstances in the DRC. *See FG Hemisphere*, 447 F.3d at 841 (finding "of course, the DRC was plainly hampered by its devastating civil war"). The situation in Sudan has been continually evolving and has consumed government resources to differing extents over the course of the war. Undersigned counsel's difficulty in liaising with

representatives of the Sudanese government during parts of 2024 is not at all surprising under the circumstances. None of the cases that the Opposition cites (at 5) addresses a litigant facing similarly extraordinary circumstances. Nor do these cases deny certification solely because the motion was deemed untimely, but because § 1292(b)'s requirements also were not met. *See Green*, 2006 U.S. Dist. LEXIS 77074, at *6 (denying certification because defendant failed to satisfy other requirements of § 1292(b)); *Martens*, 238 F. Supp. 2d at 601 (same); *Frontier-Kemper*, 2003 U.S. Dist. LEXIS 18531, at *9-10 (same); *see also Ferraro*, 780 F. Supp. at 979 (denying certification because of a change in law rendering an appeal moot). Here, the Order meets the requirements of § 1292(b). *See infra*; *see also* Mot. 3-9.

Finally, the Opposition offers no response to Sudan's argument that Plaintiffs would not be prejudiced if this Court certifies the Order for immediate appeal. Mot. 10; *see also* R. & R. at 69-70, ECF No. 7942 (holding that Plaintiffs had suffered no prejudice because the case was in its early stages and Plaintiffs had taken no steps toward seeking default judgments). Sudan has not moved for a stay of discovery and is committed to participating diligently in the discovery process to the best of its ability, so Plaintiffs would suffer no prejudice if the Order were certified for immediate appellate review.

### III.   THE ORDER RAISES CONTROLLING ISSUES OF LAW

Contrary to the Opposition (at 6-10), Sudan does not "sidestep[]" the question of whether the controlling issues are "pure" questions of law and, in fact, identifies (at Mot. 5-6) multiple such questions. In particular, the question of the proper jurisdictional-causation standards under the FSIA is a pure question of law, which the Second Circuit could decide quickly and cleanly. *See* Mot. 5-6 (citing *Helmerich*, 581 U.S. at 187; *Consub Delaware LLC*, 476 F. Supp. at 309). Plaintiffs themselves *concede* (at 7) that the legal standard governing jurisdictional causation is a

–4–

"question of law." Despite this concession, Plaintiffs *still* try to paint Sudan's request as raising a mixed question of law and fact. This is false.

In particular, the Opposition misses the mark (at 9) in its attempt to distinguish *Helmerich*, in which the Supreme Court explained that the question of sovereign immunity is "purely a legal one" where "the facts are not in dispute." *Helmerich*, 581 U.S. at 187. The circumstances are the same here where both the Court and Sudan have repeatedly acknowledged that the facts alleged in the Amended Complaints were *not in dispute* for purposes of Sudan's Motion. *See, e.g.*, Order 5, ECF No. 9278 (stating that the district court "accept[s] all factual claims in the complaint as true") (citation omitted); Mot. Dismiss 1 (arguing "even accepting the Amended Complaints' allegations as true for the purposes of this Motion"). Because the facts alleged in the Amended Complaints are accepted as true for purposes of Sudan's Motion, the issues presented are "purely legal one[s]," as in *Helmerich*, and thus meet the requirement for certification.

The cases on which the Opposition relies (at 7-8) do not support any other outcome. *Century Pacific* and *In re MTBE Products Liability Litigation* concern requests to certify *summary judgment* orders, which necessarily involve more intensive fact-based inquiries than orders on motions to dismiss. *See Century Pac., Inc.*, 574 F. Supp. 2d at 372 ("[A] summary judgment ruling is 'essentially a fact-based inquiry, making an interlocutory appeal inappropriate.'") (citation omitted); *In re MTBE Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 47222, at *8-9 (same). *Altimeo Asset Management* is similarly inapplicable because it involved a "pleadings-based analysis" turning on "fact-bound determinations." 2023 U.S. Dist. LEXIS 112226, at *54-55. Finally, *In re Facebook, Inc.* concerns the question of defendants' potential violation of securities laws in the events leading up to an IPO, another intensely fact-based analysis. 986 F. Supp. 2d at 536.

The Opposition mischaracterizes (at 8) Sudan's "interpretations" of the 9/11 Commission Report as "dubious." But there is nothing "dubious" about the 9/11 Commission's express findings that: (i) "[n]ot until 1998 did al Qaeda undertake a major terrorist operation of its own, in large part because Bin Ladin lost his base in Sudan" (at 62); (ii) when Bin Laden was expelled from Sudan he was "in his weakest position since his early days in the war against the Soviet Union" (at 63 & 65); (iii) "the government of Sudan seized everything Bin Ladin had possessed there" (at 65); and (iv) "[n]or were Bin Ladin's assets in Sudan a source of money for al Qaeda" (at 169). The Opposition's questioning of Sudan's reliance on the 9/11 Commission Report is particularly specious given that the Amended Complaints themselves incorporate the 9/11 Commission Report by reference. *See, e.g.*, *Ashton* Am. Compl. ¶ 97, ECF No. 6537; CAC ¶¶ 19, 24, 26, 27, 103, ECF No. 6539. The 9/11 Commission Report therefore forms part of Plaintiffs' allegations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

The Opposition (at 9-10) also misreads § 1605A(f) as precluding this Court from deeming a denial of sovereign immunity — and the attendant finding of subject-matter jurisdiction — a "controlling question of law" under § 1292(b). Section 1605A(f) expressly allows Sudan to seek immediate appellate review "pursuant to section 1292(b)" and says absolutely nothing to alter the application of § 1292(b) in cases in which § 1605A(f) applies. The Opposition does not dispute that the issue of subject-matter jurisdiction is a "controlling question of law" or that reversal of the Order's finding of subject-matter jurisdiction would end this litigation in its entirety. *See, e.g.*, Mot. 5 (citing *Klinghoffer*, 921 F.2d at 24; *Guzman*, 2021 WL 1852038, at *2).

Finally, the Opposition's assertion (at 10) that the timeliness of Plaintiffs' § 1605A claims concerns only "certain" Plaintiffs ignores that *no* Plaintiff asserted § 1605A as a basis for subject-matter jurisdiction within the 10-year limitations period set forth in § 1605A(b).  *See* Mot. 8-9.  Reversal of this Court's Order on statute-of-limitations grounds would preclude any Plaintiff from pursuing § 1605A(c) or § 1605A(d) claims, which are only available where sovereign immunity has been abrogated under § 1605A(a).  And as the Second Circuit has held, "the resolution of an issue need not necessarily terminate an action in order to be 'controlling.'"  *Klinghoffer*, 921 F.2d at 24.

## IV.    SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION EXIST

Contrary to the Opposition (at 11-12), Sudan has delineated (Mot. 6-8) why grounds for a difference of opinion exist — both by identifying conflicting interpretations of statutory causation language as well as difficult issues of first impression.  Evidencing the inherent weakness of its position, the Opposition makes no effort to rebut *any* of the authorities on which Sudan relies.

The Opposition's assertion (at 11) that there is no conflicting precedent supporting a but-for causation requirement improperly ignores the Supreme Court precedent holding that but-for causation is the default rule.  *See* Mot. 6 (citing *Comcast Corp.*, 89 U.S. at 332; *Bostock*, 590 U.S. at 655-56).  This Supreme Court precedent post-dates the decisions on which the Opposition relies and the Second Circuit has *never* addressed this issue (contrary to the Opposition's wholly unsupported suggestion (at 11)).  The question of whether *Rothstein*'s "direct relation" proximate causation requirement applies in all cases involving allegations of support for terrorism, including cases brought against foreign states, is another open question in the Second Circuit.  *See* Mot. 7 (citing *Rothstein*, 708 F.3d at 91-92).  Indeed, the Second Circuit's decision in *Rothstein* suggests that the Second Circuit may hold a different view from other circuits.  *Compare Rothstein*, 708 F.3d at 91-92, *with Rux v. Republic of Sudan*, 461 F.3d at 473; *Kilburn v. Socialist People's Libyan*

*Arab Jamahiriya*, 376 F.3d 1123, 1127-28 (D.C. Cir. 2004). This potential circuit split demonstrates that grounds for a difference of opinion exist. *See Glatt v. Fox Searchlight Pictures Inc.*, No. 11-cv-6784, 2013 U.S. Dist. LEXIS 139594, at *6 (S.D.N.Y. Sept. 17, 2013) (granting defendants' motion to certify order for appeal under 1292(b) and explaining, "[t]he intra-district split and decisions from other circuits clearly shows a substantial basis exists for difference of opinion"). In any event, "the mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no ground for difference of opinion." *APCC Servs. v. ESH AT&T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003).

The Opposition's focus (at 11-12) on *Owens*, *Flanagan*, *Harrison*, and *Rux* is misguided. Each of these cases involves a completely different procedural context — Sudan's challenge of a *default judgment* obtained against Sudan in *uncontested proceedings*. *See, e.g.*, *Vera v. Rep. of Cuba*, 867 F.3d 310, 317-18 (2d Cir. 2017) (stating that courts are not bound by jurisdictional findings made in the default context). These cases also concerned terrorist attacks that were closer in both time and location to Bin Laden's expulsion from Sudan in 1996 than the 9/11 Attacks. *See Owens*, 864 F.3d at 796-97 (concerning 1998 Embassy Bombings in Kenya and Tanzania); *Flanagan*, 190 F. Supp. 3d at 177-78 (concerning 2000 bombing of the U.S.S. *Cole* in Yemen); *Harrison*, 882 F. Supp. 2d at 33 (same); *Rux*, 461 F.3d at 474 (same). The facts alleged here are more akin to those alleged against the Saudi High Commission and addressed by this Court in *Ashton*. *See Ashton*, 298 F. Supp. 3d at 647 (finding allegations concerning conduct in Europe, the Middle East, and Africa "during the 1990s" were too "far removed, both in time and place, from the 9/11 Attacks" to be sufficient for purposes of jurisdictional causation).

As for Sudan's statute-of-limitations argument (Mot. 8-9), Plaintiffs do not dispute that the Second Circuit has not considered this issue, nor has any other court of appeals with the benefit of the adversarial process.

### V. CERTIFYING THE ORDER FOR IMMEDIATE APPEAL MAY MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION

Plaintiffs' argument (at 12-14) misapprehends the purpose of the material-advancement prong of § 1292(b) certification. Even if Plaintiffs' speculative theory were true — that certification could result in "a remand with instructions for this Court to assess jurisdictional causation under the revised standard" (Opp'n 13) — such an outcome would still be more efficient and judicious than spending years proceeding through fact discovery, expert discovery, summary judgment, and potentially trial, under the wrong legal standard. Ultimately, as Plaintiffs concede (at 4), "[t]he institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. at 226-27. This efficiency concern includes ensuring "the correctness of the district court's determination," and, naturally by extension, that the proper legal standard was used. *See ABN AMRO Verzekeringen BV v. Geologistics Ams., Inc.*, No. 01-cv-5661, 2003 U.S. Dist. LEXIS 11611, at *9-10 (S.D.N.Y. July 7, 2003).

Plaintiffs' assertion (at 13) that discovery will be largely "if not entirely complete" before the resolution of any appeal is irrelevant and also woefully optimistic. While Sudan is committed to completing discovery as quickly as possible, counsel for the Kingdom of Saudi Arabia felt "chastened" by an overly aggressive discovery schedule and acknowledged to this Court that cross-border discovery involving predominantly hard-copy documents in a foreign language is a "cumbersome" process, and that was absent any of the turmoil that Sudan is presently experiencing. Tr. at 6, ECF No. 4015. Further, the timelines for completion of fact discovery in

this MDL show that fact discovery likely would still be ongoing after any appeal is decided. For example, fact discovery against World Assembly of Muslim Youth lasted over nine years (*see* ECF Nos. 2381 & 4611); fact discovery against International Islamic Relief Organization and Muslim World League lasted fourteen years (*see* ECF Nos. 247 & 4484); fact discovery against Dubai Islamic Bank lasted eight years (*see* ECF Nos. 2260 & 3895); and jurisdictional discovery against the Kingdom of Saudi Arabia lasted thirty-nine months (*see* ECF Nos. ECF Nos. 3968 & 6546). Even after fact discovery is completed, the parties will still need to engage in expert discovery, summary judgment briefing, and possibly trial before Plaintiffs' claims against Sudan are finally resolved.

Plaintiffs' cases (at 13-14) do not contradict Sudan's position. The court in *In re World Trade Center Disaster Site Litigation* denied defendants' motion for certification where the underlying order did "not resolve the ultimate question of whether Defendants are entitled to the immunities they claim." 469 F. Supp. 2d at 145. Here, by contrast, the court of appeals *would* consider the "ultimate question" of Sudan's foreign sovereign immunity, which *was* resolved in the Order. *In re Air Crash near Nantucket Island* is similarly inapplicable. There, the court denied certification of the order denying defendant EgyptAir's motion to dismiss *cross-claims* and *third-party claims* for contribution and indemnification. *See* 2004 U.S. Dist. LEXIS 24983, at *1. The court held that certification would not materially advance the litigation because, regardless of the outcome on appeal, EgyptAir would still have to litigate *other parties' claims* that were not subject to the court's order. *Id.* at *4-5. Comparatively, were the Second Circuit to review this Court's order, Sudan could be dismissed from the case entirely and litigation against it could cease altogether.

The Opposition's argument (at 14) that "grace and comity" are unavailable to Sudan by virtue of § 1605A(f) is off-base. As Sudan has explained, § 1605A(f) expressly provides that Sudan may seek an appeal through § 1292(b). As the Opposition admits (at 4), courts "can consider any factor" in deciding this Motion, and Sudan's sovereign status and the rescission of its designation as a state sponsor of terrorism are important factors worthy of consideration. Indeed, this Court has recognized in this MDL "the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." Op. & Order at 3, ECF No. 6546 (quoting *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987)). The Opposition (at 14-15) fails to address the lack of any deterrent effect in denying certification given the rescission of Sudan's former designation as a state sponsor of terrorism, and continues to exhibit callous indifference to the difficulties presented by the civil war and humanitarian crises currently ravaging Sudan. The Opposition cannot bypass the principles of grace and comity central to foreign sovereign litigation, and this Court should refuse the Opposition's invitation to punish Sudan beyond what is expressly provided for in § 1605A. *See* Mot. 4-5 (citing *Dole Food Co.* 538 U.S. at 479; *Helmerich*, 581 U.S. 170, 179; *Verlinden B.V.*, 461 U.S. at 493-94).

Given the sovereign and comity interests at play here, particularly in light of the rescission of Sudan's designation as a state sponsor of terrorism and the devastating civil war currently unfolding in Sudan, Sudan respectfully requests that this Court invite the United States to submit a statement of interest to assist the Court in its determination.

## CONCLUSION

For the foregoing reasons, Sudan respectfully submits that the Court should certify the Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: February 19, 2025
       Washington, DC

Respectfully submitted,

**WHITE & CASE**

 /s/ *Christopher M. Curran*
Christopher M. Curran
Nicole Erb
Claire A. DeLelle
Nicolle Kownacki (*pro hac vice*)
Celia A. McLaughlin
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
nkownacki@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*

## CERTIFICATE OF COMPLIANCE

This memorandum of law complies with the word-count limitations of Local Civil Rule 7.1(c) because it contains 3,481 words.

February 19, 2025

                                                     /s/ *Christopher M. Curran*
                                                     Christopher M. Curran