UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

      TERRORIST ATTACKS ON
      SEPTEMBER 11, 2001


----------------------------------------------------------------X

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED:  3/17/2025           │
└─────────────────────────────────┘
```

03-MD-01570 (GBD)(SN)

REPORT &
RECOMMENDATION

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

This document relates to:

      Ashton v. al Qaeda Islamic Army, No. 02-cv-06977 (GBD)(SN)

      The estate of Andrzej Cieslik (the "Ashton Plaintiff") seeks a partial final default

judgment against the Islamic Republic of Iran ("Iran") for the personal injuries Mr. Cieslik

sustained in the 9/11 Attacks. See Pl.'s Mot., ECF No. 10751.[1] The Court recommends

GRANTING the motion and awarding $5 million in damages.

## BACKGROUND

      The Court assumes familiarity with this multidistrict litigation and summarizes only the

relevant procedural and factual background. In an earlier motion, the Ashton Plaintiff sought to

hold Iran liable under the private right of action provided by § 1605A of the Foreign Sovereign

Immunities Act ("FSIA"). See Pl.'s Mot., ECF No. 9879. That right of action, however, is

reserved for United States nationals, military personnel, and government employees. 28 U.S.C. §

1605A(c). Because Mr. Cieslik was not a United States national, member of the military, or

government employee on September 11, 2001, the Court found that his estate had failed to assert

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

a proper cause of action on his behalf. See ECF No. 10727, report and recommendation adopted by ECF No. 10780.

While the Court also found that it possessed personal jurisdiction and subject matter jurisdiction,[2] that Iran was properly served, and that Iran defaulted, it denied the Ashton Plaintiff's motion without prejudice. Id. The Court directed the Ashton Plaintiff to refile their motion and assert a new cause of action. Order, ECF No. 10708. The Ashton Plaintiff has now done so, asserting an assault and battery claim under New York Law. See ECF No. 10751. Accordingly, all that remains for the Court to decide is (1) whether Iran is liable to the Ashton Plaintiff for assault and battery under New York law; and (2) if Iran is liable, what damages are due.

## DISCUSSION

In 2011, the Court heard evidence linking the Iran Defendants to the 9/11 Attacks. Based on that record, it found that Iran was "aware[] of[] and involve[d] in[]" al Qaeda's plans and

---

[2] The Court previously found that it possessed subject matter jurisdiction under § 1605B(b) of the FSIA. See R. & R., ECF No. 10727 at 6–7. The Ashton Plaintiff now raises § 1605A(a) as an additional basis for subject matter jurisdiction. Pl.'s Mot., ECF No. 10751 at 3–8. That provision waives a state's foreign sovereign immunity in suits seeking "money damages" for deaths or personal injuries "caused" by certain acts of terror. § 1605A(a). It also requires that "the claimant or the victim" have been a U.S. national and that the defendant-state have been a designated state sponsor of terrorism "at the time the act" of terror occurred. Id.

In this case, the Court has explained that the Ashton Plaintiff is seeking "money damages" for "physical injuries" "caused" by the 9/11 Attacks and that Iran's material support proximately "caused" the Attacks. See R. & R., ECF No. 10727 at 6–7. Because the "claimant"—Mr. Cieslik's surviving spouse, Zofia Cieslik—was a U.S. national on September 11, 2001, and Iran was a designated state sponsor of terrorism on 9/11, the Court can "hear [her] claim" under § 1605A(a). § 1605A(a)(2)(A). The Court therefore possesses subject matter jurisdiction under both § 1605A(a) and § 1605B(b). See R. & R., ECF No. 10727 at 6–7 (finding subject matter jurisdiction under § 1605B(b)).

As the representative of Mr. Cieslik's estate, however, Ms. Cieslik still cannot bring a claim under the FSIA's private right of action. See § 1605A(c) (requiring that the defendant-state "be liable to" a U.S. national); see also Leibovitch v. Islamic Republic of Iran, 697 F.3d 561, 570 (7th Cir. 2012) (distinguishing the statute's jurisdictional standards—which waive immunity when either "the claimant or the victim" is a U.S. national—from its narrower scope under the private right of action).

provided "material support" to the terrorist group. In re Terrorist Attacks on Sept. 11, 2001 ("In re 9/11"), No. 03-md-01570 (GBD)(SN), 2011 WL 13244047, at *26, 41 (S.D.N.Y. Dec. 22, 2011). The Court concluded that Iran's "material support" proximately "caused" the 9/11 Attacks and, by extension, the resulting injuries. Id. at *41.

More recently, the Court confirmed that a non-U.S. national could hold Iran liable under New York's assault and battery law for the personal injuries they sustained in the 9/11 Attacks. See In re 9/11, 2024 WL 4268663 (S.D.N.Y. Jan. 5, 2024) ("King R&R"), report and recommendation adopted by 2024 WL 1312504 (Mar. 26, 2024) ("King Opinion"). The Court had "little trouble finding that the al Qaeda hijackers committed assault and battery" and "that Iran both knew of and substantially assisted al Qaeda's attacks on the United States." King Opinion, at *5. The Court thus found Iran liable to that plaintiff for assault and battery under New York law, and awarded him pain and suffering damages for his injuries. King R&R; King Opinion.

These findings bear directly on the Ashton Plaintiff's motion. But courts cannot take judicial notice of factual findings made in another case and rely on them "for the truth of the matter asserted." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (cleaned up). At the same time, the FSIA "does not require courts to relitigate issues that have already been settled in previous decisions." Lee v. Islamic Republic of Iran, 518 F. Supp. 3d 475, 480 (D.D.C. 2021) (cleaned up). Courts can respect these limits and avoid duplication of effort by taking judicial notice of decisions issued in related cases and "'review[ing] [the underlying] evidence,'" thereby obviating the need for its "'re-presentment.'" Id. (quoting Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 59 (D.D.C. 2010)). The Court leverages this practice as it answers the fact-bound questions below.

## I.      Iran Is Liable for Assault and Battery

The Ashton Plaintiff asks the Court to find Iran liable for assault and battery under New York law. See Pl.'s Mot., ECF No. 10751. **First,** the Court again confirms that state tort claims can be brought against foreign states. See King Opinion (holding that non-United States nationals may bring claims against Iran under New York's assault and battery law). "[A] foreign state, if found ineligible for immunity [under the FSIA], must answer for its conduct just as any other actor would." Cassirer v. Thyssen-Bornemisza Collection Found., 596 U.S. 107, 114 (2022). In effect, the FSIA acts as "a 'pass-through' to the substantive law that would govern a similar suit between private individuals." Cassirer, 596 U.S. at 114 (quoting Oveissi v. Islamic Republic of Iran, 573 F.3d 835, 841 (D.C. Cir. 2009); see also In re 9/11, 2023 WL 5132138, at *12 (S.D.N.Y. Aug. 10, 2023) (citing Leibovitch v. Islamic Republic of Iran, 697 F.3d 561, 572 (7th Cir. 2012), and Owens v. Republic of Sudan, 864 F.3d 751, 809 (D.C. Cir. 2017)), in support of the viability of state law claims against Sudan). Accordingly, Iran is subject to suit for assault and battery.

**Second,** the Court must determine which state law applies. The Court follows New York's choice-of-law doctrine because the Plaintiffs filed their complaint in this District. See Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (explaining that MDL courts apply the choice-of-law rules of "the jurisdiction in which the action was filed"). New York has different choice-of-law rules for "loss-allocating" and "conduct-regulating" torts, but under either framework, the law of the "place of the tort" controls. In re 9/11, 2023 WL 5207985, at *2–3 (S.D.N.Y. Aug. 14, 2023). Thus, the Court applies the law of the jurisdiction "where the last event necessary to make the [defendant] liable occurred," even if "the defendant's . . . [mis]conduct occur[red] . . . in another [jurisdiction]." Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 195 (1985).

Because the <u>Ashton</u> Plaintiff was injured in the attack on the World Trade Center, the "last event necessary to make [the Defendants] liable" occurred in New York. Accordingly, the Court will apply New York tort law as it has done in prior cases.

**Third,** the Court considers the <u>Ashton</u> Plaintiff's claims under New York's assault and battery standards. Assault and battery claims turn on largely overlapping elements. Committing an "assault involves putting" the plaintiff in "fear" or apprehension of a battery. <u>Rivera v. State</u>, 34 N.Y.3d 383, 389 (2019) (cleaned up). A battery, in turn, requires someone to "intentionally" and "unjustifiably" "cause" harmful or offensive "contact" with the plaintiff. <u>Id.</u> (cleaned up). Qualifying contact can be made by the person himself or "by means of an instrumentality." <u>Aberbach v. Biomedical Tissue Servs., Ltd.</u>, 48 A.D.3d 716, 718 (2d Dep't 2008).

Importantly, liability for assault and battery extends beyond the principal tortfeasor to those who aided and abetted him. <u>See</u> <u>Lindsay v. Lockwood</u>, 625 N.Y.S.2d 393, 396–98 (N.Y. Sup. Ct. 1994). To prevail on an aiding and abetting theory, the plaintiff must show that: (1) a third party's "wrongful act" injured the plaintiff, (2) the defendant "knowingly and substantially assisted" the third party's misconduct, and (3) the defendant was "aware of his role" in "tortious activity" when he gave that assistance. <u>Id.</u> at 397 (cleaned up); <u>accord</u> <u>Halberstam v. Welch</u>, 705 F.2d 472, 477 (D.C. Cir. 1983). A defendant's assistance may come in "words or [actions]," <u>McKiernan v. Vaccaro</u>, 168 A.D.3d 827, 830 (2d Dep't 2019), but must "connect[]" him to the misconduct that "caus[ed] the injury," <u>Lindsay</u>, 625 N.Y.S.2d at 397. When deciding whether a defendant's conduct meets this standard, New York courts consider "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relations to the [tortfeasor,] and his state of mind." <u>Id.</u> (quoting Restatement (Second) of Torts § 876 cmt. d (Am. L. Inst. 1979)).

In plain terms, Iran is liable for aiding and abetting assault and battery if: (a) al Qaeda intentionally used a hijacked aircraft to injure and inspire fear in 9/11 victims, including Mr. Cieslik; and (b) Iran knew of al Qaeda's plan to attack the United States and gave the terrorist organization substantial help in carrying out its strike. The evidence presented in 2011 and adopted in the Ashton complaint, combined with the Ashton Plaintiff's affidavits and medical records, leaves little room for debate on either point. See In re 9/11, 2011 WL 13244047; Ashton Am. Comp. at 3–9, No. 03-md-01570, ECF No. 3237 (adopting Ashton Sixth Am. Comp., 02-cv-06977, ECF No. 465); ECF No. 10752.

The Ashton Plaintiff's evidence establishes that the 9/11 hijackers committed assault and battery. Al Qaeda operatives turned passenger planes into ordnance and used them to bring down the Twin Towers, terrorizing and injuring thousands within the collapse zone. See In re 9/11, 2011 WL 13244047, at *1. Mr. Cieslik was working in the South Tower when United Airlines Flight 175 struck the building, sending him flying into a marble pillar. See ECF No. 10752-2 ¶¶ 5–7. The fear and physical trauma he experienced was unquestionably "intentional and offensive," Rivera, 34 N.Y.3d at 389—the direct product of al Qaeda's use of an aircraft as an "instrumentality" of destruction, Aberbach, 48 A.D.3d at 718.

The Ashton Plaintiff's uncontroverted submissions similarly establish that the Iran Defendants aided and abetted the Attacks. Iran knew of "the plan to crash hijacked civilian airliners into American cities." In re 9/11, 2011 WL 13244047, at *22. "Iran provided direct support to al Qaeda specifically for th[ose] attacks" in the form of "planning, funding, facilitation of the hijackers' travel and training, and logistics, and . . . the provision of services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." Id. at *40. That support "vastly increased the likelihood of the operational

success of the 9/11 plot." Id. at *16. New York courts have deemed people liable for aiding and abetting battery based on far less "substantial" assistance. Lindsay, 625 N.Y.S.2d at 397; see, e.g., Wilson v. DiCaprio, 278 A.D.2d 25 (1st Dep't 2000) (affirming liability for assault and battery where defendant shouted encouragement for principal tortfeasors).

Altogether, this evidence "satisfactor[ily]" "establishes" the elements of assault and battery under New York law. 28 U.S.C. § 1608(e). Accordingly, the Court recommends finding Iran liable to the Ashton Plaintiff for assault and battery.

## II.    The Ashton Plaintiff Is Entitled to Damages

With liability established, the only remaining question is damages. The Ashton Plaintiff seeks compensatory damages for pain and suffering traceable to the personal injuries Mr. Cieslik sustained in the 9/11 Attacks. See Pl.'s Mot., ECF No. 10751. Victims of assault and battery can recover compensatory damages under New York law. See Allam v. Meyers, 906 F. Supp. 2d 274, 286–94 (S.D.N.Y. 2012); Restatement (Second) of Torts § 924 (Am. L. Inst. 1979). The Ashton Plaintiff is therefore entitled to damages.

The Court first set out its framework for personal injury damages in Burnett I. See ECF No. 5879. There, it categorized personal injuries into three groups with corresponding damages: a baseline award ($7,000,000) for "severe" injuries, a downward departure ($5,000,000) for "significant" injuries, and an upward departure ($10,000,000) for "devastating" injuries. Id. at 6–10. "Significant" injuries include "single broken bones," "mental health disorders," and "significant orthopedic injuries such as strains, sprains, or fractures that cause continuing intermittent pain and may require surgery." Id. at 6–7. "Severe" injuries, meanwhile, include "multiple broken bones," "significant injuries from falling, being buried, or being trampled," "severe orthopedic trauma requiring significant or multiple surgeries and/or causing severe constant pain or debilitation," or "serious spinal or head trauma." Id. at 7–8. For rare individuals

with exceptionally traumatic injuries, the Court has recommended damages above $10 million. See, e.g., ECF No. 5909 at 11–13 (awarding damages of $25,000,000 to a plaintiff whose injuries were "beyond devastating").

The Court has also extended the <u>Burnett I</u> framework to state law claims. <u>See</u> <u>King Opinion</u>. The Court saw "every reason to apply this framework to state law claims" to "promote the efficient adjudication of this litigation and, more importantly, restore a measure of parity to plaintiffs of different nationalities." <u>King R&R</u>, at *8. Accordingly, the Court analyzes the <u>Ashton</u> Plaintiff's claim for pain and suffering based on its familiar <u>Burnett I</u> framework.

### A. Andrzej Cieslik

On September 11, 2001, carpenter Andrzej Cieslik was working in the lobby of the second floor of the South Tower. ECF No. 10752-2 ¶ 5. When United Airlines Flight 175 struck the building, "the force from the crash and subsequent explosion rushed down the elevator shafts" and "sent a near-explosive column of hot air into the lobby." <u>Id.</u> ¶ 6. The force sent Mr. Cieslik flying into a marble pillar. <u>Id.</u> He injured his back, shoulder, and neck. <u>Id.</u> ¶ 7.

Shaking, he stood up and helped a coworker out of the building. <u>Id.</u> A police officer directed them to a nearby fire station for first aid, where he received pain medication. <u>Id.</u> Then, the South Tower collapsed. <u>Id.</u> ¶ 8. He feared for his life as dust and debris "covered everything in sight." <u>Id.</u> "Everyone in the fire station," including Mr. Cieslik, "began to run in panic." <u>Id.</u> Enveloped by the toxic dust and debris, he struggled to breathe and took shelter beneath a mailbox. <u>Id.</u> Then the North Tower fell. <u>Id.</u> Mr. Cieslik tried to escape. <u>Id.</u> But he felt "disoriented, dizzy and weak," lost consciousness, and fell to the ground. <u>Id.</u> First responders picked him up and brought him to Beth Israel Hospital, where he was given pain medication and was discharged later that day. <u>Id.</u> ¶¶ 8, 9.

Andrzej Cieslik died on October 25, 2006. Id. ¶ 2. His spouse, Zofia Cieslik, brings this claim as the personal representative of his estate. Id. ¶ 1; see also ECF No. 9897 (order substituting Zofia Cieslik, as the personal representative of Andrzej Cieslik's estate, as a plaintiff in this litigation). The preceding narrative comes from her sworn declaration, which she reports is based on her conversations with Mr. Cieslik and on documents and records submitted to the 9/11 Victim Compensation Fund. ECF No. 10752-2 ¶ 2. Her declaration also describes Mr. Cieslik's multiple injuries, which included herniated and bulging discs in his spine, a pinched nerve, and a torn tendon in his shoulder that required arthroscopic surgery. Id. ¶¶ 9, 10, 11, 12; see also ECF No. 10752-3 at 17–19 (arthroscopic surgery). And it details the "debilitating" pain—physical, as well as emotional and psychological—that Mr. Cieslik suffered over the five years before his death. ECF No. 10752-2 ¶¶ 12, 13. His medical records confirm these injuries. ECF No. 10752-3.

The Ashton Plaintiff argues that Mr. Cieslik's injuries were "severe" and seeks $7 million in pain and suffering damages. See Pl.'s Mot., ECF No. 10751. Consistent with its Burnett I framework, however, the Court finds that Mr. Cieslik's injuries are "significant." See ECF No. 5879 at 6–8. Mr. Cieslik's herniated and bulging discs, pinched nerve, and arthroscopic surgery are "significant orthopedic injuries," not "severe orthopedic trauma requiring significant or multiple surgeries." ECF No. 5879 at 7. And while Ms. Cieslik describes Mr. Cieslik's injuries as "debilitating" and reports that he experienced daily pain, ECF No. 10752-2 ¶ 12, this finding is in line with the Court's previous recommendations. See, e.g., ECF No. 10727 at 16 (classifying Anthony Ciarnella's torn rotator cuff and subsequent arthroscopic surgery as a significant injury); id. at 29–30 (categorizing Edgar Gutierrez's torn meniscus that required surgery as a significant injury); id. at 32–33 (finding Thelma Savery's trampling injuries,

including a herniated disc in her back that required two surgeries, to be significant injuries).

Therefore, the Court recommends a $5 million award.

## CONCLUSION

The Court recommends granting the motion filed by the <u>Ashton</u> Plaintiff, entering a

partial final default judgment against Iran, and awarding $5 million in pain and suffering

damages. <u>See</u> ECF No. 10751. The <u>Ashton</u> Plaintiff should be awarded prejudgment interest at a

rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001,

until the date of the judgment. The <u>Ashton</u> Plaintiff should also be permitted to submit additional

applications for damages, including punitive damages, consistent with any future rulings of the

Court.

SARAH NETBURN
United States Magistrate Judge

DATED:     March 17, 2025
           New York, New York

*            *            *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have 14 days from the service of this Report and Recommendation to

file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure. <u>See</u> Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections

within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); <u>see</u> Fed. R. Civ. P. 6(a),

6(d). These objections shall be filed with the Court and served on any opposing parties. <u>See</u> Fed.

R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable George B. Daniels if

required by that judge's Individual Rules and Practices. Any requests for an extension of time for

filing objections must be addressed to Judge Daniels. <u>See</u> Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. James</u>, 712 F.3d 79, 105 (2d Cir. 2013).