## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:
*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)

### The *Ashton 33* Motion for Final Damages for Solatium Plaintiffs Without Prior Judgments

For the reasons set forth below, and the statements contained in the declaration of James P. Kreindler, Esq. ("Kreindler Declaration") and exhibits filed in connection with this motion, those *Ashton 33* Plaintiffs set forth in Exhibit B filed with the proposed order (which is Exhibit A to the default judgment motion sheet) by and through their counsel, Kreindler & Kreindler LLP, respectfully move this Court for an Order:

1) Awarding the non-U.S. national Plaintiffs set forth on Exhibit B solatium damages for the losses they suffered as a result of the deaths of their immediate family members in the September 11, 2001 terrorist attacks in the amounts previously awarded by this Court;

2) Awarding the *Ashton 33* Plaintiffs pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

3) Granting the *Ashton 33* Plaintiffs permission to seek punitive damages and any other appropriate damages at a later date;

4) Finding that service of process was properly effected upon the Islamic Republic of Iran ("Iran") in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

5) Granting permission for all other plaintiffs in this action not appearing on Exhibit B to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

1

This motion is made on behalf of the claimants listed in Exhibit B attached to the proposed order (*Ashton 33* Plaintiffs), in light of this Court's previous order granting permission to allow remaining plaintiffs in the case to move for this relief. *See* ECF No. 3300.[1]

As the awards set forth in the proposed order represent the only direct recovery against Iran on behalf of the *Ashton 33* Plaintiffs listed in Exhibit B to the proposed order, the proposed order will constitute final awards and judgments against Iran for those plaintiffs listed in Exhibit B.

## I.    Procedural Background, Iran's Default and Liability Judgment

On September 4, 2002, the *Ashton* Plaintiffs filed their first complaint against the sponsors of the September 11, 2001 terrorist attacks, which included allegations against Iran. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 1.  The *Ashton* Plaintiffs here, including both United States nationals and non-United States nationals, asserted federal jurisdiction pursuant to, among other things, the Foreign Sovereign Immunities Act (28 U.S.C. § 1605(a)) ("FSIA") and the federal question doctrine (28 U.S.C. § 1331 and 28 U.S.C. § 1330 (actions against foreign states). *Id.* at 28, 39 – 40, 43, 48.

Iran was listed as a named defendant in the *Ashton* Plaintiffs' Consolidated Master Complaint, filed on March 6, 2003 and each complaint up through the Sixth Amended Complaint, with the same jurisdictional assertions. *See* 02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 17, ECF No. 11-5 at 45 – 49 ; ECF No. 465 at 2.  The *Ashton* complaint was served on Iran in compliance with FSIA requirements through diplomatic channels, but Iran never answered. *See* 02-cv-6977 (S.D.N.Y.), ECF No. 424 at 2; *see also* 02-cv-6977 (S.D.N.Y.) ECF No. 358.

---

[1] References to filings in the 03-md-1570 docket are noted only by the ECF number.  References to filings on a different docket cite the individual docket number as well as the ECF number, all of which are part of this MDL within the Southern District of New York.

At the time that the *Ashton* Plaintiffs first filed against Iran, the FSIA functioned as a pass-through statute, denying immunity for claims arising from certain acts of terrorism or material support for terrorism if the United States had designated the foreign sovereign a state sponsor of terrorism, thus allowing a plaintiff to pursue a claim in the federal courts in suits against those formally-designated nation-states, such as Iran. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241.

The substantive causes of action the *Ashton* Plaintiffs alleged were for, among other things, common law wrongful death based on intentional murder; common-law survival damages; common law assault and battery; violation of the Anti-Terrorism Act (18 U.S.C. § 2333) ("ATA"); violation fo the Torture Victim Protection Act (also known as the Alien Tort Act) (28 U.S.C. § 1350); and violation of the FSIA. *See* 02-cv-6977 ECF No. 11-5 at 245 – 50 and ECF No. 465 at 235 – 39.  Included in these counts were claims for wrongful death damages (economic loss and pain and suffering, among other things), personal injuries (both physical and mental), and solatium losses (along with loss of consortium, loss of support, loss of society and companionship, loss of parental care and guidance, and more). *Id.*

In 2008, Congress amended the FSIA with the passage of a new terrorism exception, codified at 28 U.S.C. § 1605A, and again in 2016 with the passage of the Justice Against Sponsors of Terrorism Act ("JASTA"), codified at 28 U.S.C. § 1605B.  Section 1605A allowed U.S. nationals to pursue a substantive claim under the FSIA against a formally designated state-sponsor of terrorism.  Section 1605B removed the sovereign immunity from suit in the U.S. of *any* nation for death or injuries caused by an act of terrorism in the U.S. and the tortious acts of the nation state (28 U.S.C. § 1605B(b)) without reference to a plaintiff's nationality and allowed

U.S. nationals to pursue substantive claims against that foreign state based on the federal Anti-Terrorism Act, 28 U.S.C. § 2333 (28 U.S.C. § 1605B(c)).

In 2011, the *Ashton* Plaintiffs obtained a Certificate of Default against Iran. *See* ECF No. 2510. Based on evidence and arguments submitted by various plaintiffs in the consolidated litigation, the *Ashton* Plaintiffs also moved for a judgment of liability against Iran for claims arising out of the deaths of all of the plaintiffs' decedents. ECF No. 3008.  In their motion for a liability default judgment, the *Ashton* Plaintiffs relied on the Certificate of Default entered in the *Ashton* case, which was premised on the complaint that Iran had never answered. ECF No. 2970 at 2.  This Court granted that motion for a default judgment of liability. ECF No. 3014.

The *Ashton* Plaintiffs at the same time also moved for permission to file an Amended Consolidated Complaint against Iran, asserting the same jurisdictional allegations as in the prior complaints, adding a claim based on the new provision of the FSIA enacted subsequent to the filing of the original suits against Iran and adopting and incorporating by reference the prior *Ashton* allegations against Iran. ECF Nos. 2968, 2968-1 at 1 - 2 (adding allegations under 28 U.S.C. § 1605A).  The Court issued an Opinion and Order allowing the *Ashton* Plaintiffs to amend their pleadings without requiring service of the amended pleadings. ECF No. 3227. Plaintiffs thereafter filed the Amended Consolidated Complaint on the docket. ECF. No. 3237.

## II.    Liability

This Court has already concluded that Iran shares liability for the 9/11 terrorist attacks. *See* ECF No. 3014 (granting *Ashton* Plaintiffs a liability judgment against Iran).  The Court has also confirmed that it has subject matter jurisdiction over claims brought by non-U.S. nationals and can hold Iran liable to non-U.S. nationals under New York state law. *See, e.g.,* ECF No. 9506 (*King* Report and Recommendation as to subject matter jurisdiction and substantive claims

brought by non-U.S. national against Iran for physical injuries suffered on 9/11); ECF No. 9666

(adopting Report and Recommendation); ECF No. 10790 (Report and Recommendation as to

*Ashton* non-U.S. national plaintiff, recommending Court find subject matter jurisdiction and

apply New York state law to claims).

    The *Ashton* Plaintiffs alleged that Iran and its officers, agents and employees,

among other things:

- "provided material support and resources" to al Qadea and Osama bin Laden (02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 24-25) (¶ 22));
- "supported al Qaeda financially, materially and logistically for over a decade to support its goals" (02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 27 (¶ 31));
- worked together with al Qaeda and bin Laden "against their perceived common enemies …, particularly the United States" (02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 31 (¶ 43));
- hosted bin Laden's terrorist training camps (02-cv-6977 (S.D.N.Y.) ECF No. 11-2 at 31 (¶ 44));
- met with bin Laden representatives in 1998 to "establish 'an anti-U.S. alliance,'" with ten percent of bin Laden's calls from his satellite telephone being made to parties inside Iran (02-cv-6977 (S.D.N.Y.) ECF No. 11-3 at 27 (¶ 205));
- assisted a key al Qadea combat commander in the months leading up to the 9/11 attacks, during which time the operative traveled to Afghanistan from Iran shortly before the 9/11 attacks (02-cv-6977 (S.D.N.Y.) ECF No. 11-3 at 28 (¶ 208));
- provided escape routes for certain high-profile al Qaeda members after the 9/11 attacks, including Osama bin Laden (02-cv-6977 (S.D.N.Y.) ECF No. 11-3 at 28 (¶¶ 209-211));
- and, generally, engaged in a pattern of terrorism, providing training, facilities, planning, logistics, escape routes and leadership that enabled bin Laden and al Qadea to carry out acts of terrorism, including the 9/11 Attacks (02-cv-6977 (S.D.N.Y.) ECF No. 11-3 at 28 (¶ 216)).

    These allegations detailed the conduct that has allowed this Court to conclude that

Iran shared in liability for the 9/11 Terrorist Attacks. *See* ECF Nos. 2516; 3014.  The

Court can and should reaffirm the liability finding again here, for non-U.S. nationals, to

the extent prior ones do not reach to non-U.S. nationals, on the basis of the same factual

allegations and judicial findings as before.

### III.     Prior Damages Proceedings

After obtaining the liability judgment, the *Ashton* Plaintiffs moved for partial summary judgment for the conscious pain and suffering that victims murdered on September 11, 2001 suffered before death, which this Court granted, and certain *Ashton* Plaintiffs moved for default judgments on economic damages suffered as a result of their decedents' wrongful deaths as well. This Court granted those motions. *See* ECF No. 3229 (adopting December 28, 2015 Report and Recommendation awarding damages for conscious pain and suffering) and No. 3356 (awarding damages for economic loss).  In addition, certain *Ashton* Plaintiffs moved for solatium damages suffered by immediate family members and those non-immediate family members who were the "functional equivalent" of immediate family members eligible to recover under the terrorism exception to the FSIA as well as for the economic loss suffered on behalf of the estates of some of those killed on September 11, 2001. *See, e.g.,* ECF Nos. 3295 (Motion for Final Judgment for *Ashton I* claimants including claims for solatium damages); 4058 (Motion for Final Judgment for *Ashton V* claimants, the "functional equivalent" of immediate family members, solely for solatium damages); 5535 (Motion for Final Judgment for *Ashton XVII* and *Betru VI* claimants seeking economic damages and final judgments for estates).  In addition to the pain and suffering, economic loss and solatium damages claims this Court has granted for U.S. nationals, it likewise has now granted several motions for solatium damages suffered by immediate family members who are not U.S. nationals, in cases other than *Ashton*. *See, e.g.,* ECF No. 9931 at 16-19.[2] This Court granted these motions, finding that an award to the immediate family members (or functional equivalent) of each decedent was proper, that economic damages and final

---

[2] The Magistrate Judge in this MDL has also recommended granting a judgment to a non-U.S. national plaintiff in the *Ashton* matter, which is pending before the District Court. ECF No. 10790.

judgments for estates were warranted and that prejudgment interest on the solatium loss amounts was warranted. *See, e.g.,* ECF Nos. 3300; 4106; 5926; 9931.

## IV.    The Non-U.S. Nationals in Exhibit B are Entitled to Damages Under State Law

In prior judgments entered on behalf of Plaintiffs in this case against Iran, the Court has looked to 28 U.S.C. § 1605A(c) to provide a cause of action for U.S. nationals injured or killed in terrorist attacks supported by designated state sponsors of terrorism.  For non-U.S. nationals this Court can look to state law to this claim for damages (and has done so previously), and can do so via the FSIA, 28 U.S.C. §§ 1605B(b) and 28 U.S.C. § 1606.  Section 1606 allows "plaintiffs [to] bring state law claims that they could have brought if the defendant were a private individual" against a state whose sovereign immunity has been abrogated. *Oveissi v. Islamic Rep. of Iran*, 573 F.3d 835, 841 (D.C. Cir. 2009). Here, the non-U.S. national plaintiffs have asserted jurisdiction pursuant to the FSIA (and its amendments) and have asserted claims for wrongful death and intentional infliction of emotional distress under state law. ECF No. 11-5 at 246-47 (¶¶ 604-606).  As it has before, this Court should conclude that the non-U.S. nationals in this case can pursue a state law damages claim. ECF No. 9506 at 10 (citing *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 114 (2022) (the FSIA acts as "a 'pass-through' to the substantive law that would govern a similar suit between private individuals.")).

### A.  Choice of Law

Recently, this Court evaluated state law claims brought by non-U.S. nationals pursuant to state law. ECF No. 9931.  In doing so, the Court started with a choice-of-law analysis, employing New York's choice-of-law rules because the "actions were filed in New York." ECF No. 9931 at 3.  Here, too, the Moving Plaintiffs' actions were filed in New York so, based on this Court's prior ruling, New York's choice-of-law rules would apply.

All non-U.S. national *Ashton 33* Plaintiffs are the immediate family member of a 9/11 Decedent who died in New York City. Kreindler Decl. at ¶ 4.  Accordingly, this Court's prior ruling that New York state law applies to claims for wrongful death, pain and suffering, emotional distress and estate economic losses should apply here. ECF No. 9287 at 4; ECF No. 9931 at 2-3.

### B.  The Non-U.S. Nationals are Entitled to Solatium Damages Under New York's Intentional Infliction of Emotional Distress Law

This Court has relied on New York law to issue solatium judgments to non-U.S. national immediate family members of those killed in the September 11, 2001 terrorist attacks. ECF No. 9931.  It did so within the scope of New York's intentional infliction of emotional distress tort, explaining that:

> The tort of intentional infliction of emotional distress ('IIED') has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.' *Howell -v. NY  Post Co.,* 81 N.Y.2d 115, 121 (1993).  Liability for intentional infliction of emotional distress extends to those who aid and abet the primary tortfeasor. *See Rich v. Fox News Network, LLC,* No. 18 Civ. 2223 (GBD), 2020 WL 5768430, at *5-6 (S.D.N.Y. Sept. 25, 2020) (analyzing claim for aiding and abetting IIED).

*Id*. at 5.  Applying that test to the claims against Iran, this Court found that:

> Iran aided and abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks … [a]nd by carrying out the 9/11 Attacks, al Qaeda committed IIED.  In satisfaction of the first two elements, the 9/11 Attacks, as "[a]cts of terrorism[,] [were] by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Flanagan v. Islamic Republic of Iran,* 87 F. Supp. 3d 93, 115 (D.D.C. 2015). In satisfaction of the final two elements, the 9/11 Attacks killed the Plaintiffs' family members, thereby inflicting extreme emotional distress.

ECF No. 9931 at 5-6 (citing ECF No. 9666 at 8).

Just as in prior cases, the *Ashton 33* Plaintiffs satisfy all of those elements.  The *Ashton* Plaintiffs alleged that Iran, among others, engaged in "intentional and malicious acts of terrorism on September 11, 2001," that "have caused plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses, including but not limited to the following:

> Non-economic damages, including but not limited to, the loss of consortium, solarium [sic], society, companionship, care, comfort and love suffered by plaintiffs and decedents' other survivors."

02-cv-6977, ECF No. 465 (Sixth Amended Master Complaint) at 235. [3]

This provided Iran with notice that the all *Asthon* Plaintiffs, including the non-U.S. nationals who are part of the instant *Ashton 33* Plaintiffs' motion, were seeking these particular non-economic damages for their solatium damages.  While they did not plead a separate cause of

---

[3] The complaint underlying the motion at issue in ECF No. 9931 set forth claims for non-U.S. nationals pursuant to the Alien Tort Act, the FSIA and state law for wrongful death and survival. *DeRubbio et al. v. Islamic Republic of Iran*, 18-cv-5306, ECF No. 6 at 4 (adopting claims in *Burnett* Iran Complaint, 15-cv-9903, ECF No. 53).  Specifically, that adopted complaint alleged, first, that under the Alien Tort Act, family members of 9/11 Decedents who were not United States citizens were entitled to recover damages for, among other things, "intentional infliction of emotional distress, and solatium" (15-cv-9903, ECF No. 53 at 1084); and, second, that as a result of the wrongful death of the 9/11 Decedents, their family members would suffer "emotional distress, severe trauma, and lasting physical, emotional, and psychological injuries" (15-cv-9903, ECF No. 53 at 1087).  That is, though in *DeRubbio et al.* there was not a stand-alone count charging intentional infliction of emotional distress, based on the nature of the claims, damages and facts asserted, this Court concluded that those plaintiffs were entitled to damages for intentional infliction of emotional distress in the same amounts as previously awarded for solatium damages as against co-defendant Iran. ECF No. 9931 at 6.

The same is true here.  The non-U.S. national *Ashton 33* Plaintiffs expressly alleged that the various co-defendants' acts of terrorism inflicted upon survivors the "loss of consortium, sola[t]ium, society, companionship, care, comfort and love" of their family members. 02-cv-6977, ECF No. 465 at 235, 238-39. The non-U.S. national *Asthon 33* Plaintiffs' immediate family members have asserted claims for the extreme emotional distress they suffered as a result of the 9/11 Attacks in the same manner as have other non-U.S. national plaintiffs.

action in the complaint for intentional infliction of emotional distress, this Court can and has, issued solatium damages to other non-U.S. national immediate family members of 9/11 Decedents even when such were not explicitly enumerated as a separate cause of action or count in their complaint. *See e.g.,* ECF No. 9666 at 6 (though complaint did not expressly plead a separate cause of action for assault and battery, the facts alleged were sufficient to support a motion for damages under a state-law assault and battery theory). Indeed, under New York law, a "court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just." N.Y. CPLR §3017. The *Ashton* complaint adequately alleged facts and claims in support of solatium damages under an intentional infliction of emotional distress theory.

As to the merits of those claims, this Court has already found that Iran provided knowing and substantial assistance in furtherance of the 9/11 Attacks and that the attacks were intended to cause the highest degree of emotional distress. The same is true here. And, further, as detailed in the Kreindler Declaration, all of the *Ashton 33* Plaintiffs are the immediate family members of individuals publicly murdered in the 9/11 Attacks. Kreindler Decl. at ¶ 7. Iran's outrageous and extreme conduct was intended to cause sever emotional distress and did, in fact, impose such trauma on the *Ashton 33* Plaintiffs. This Court should therefore award damages to the *Ashton 33* Plaintiffs according to the framework it has established for solatium claims because, as this Court has previously stated, "IIED claims 'are nearly indistinguishable from' solatium claims." ECF No. 9931 at 6 (citing *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 357 (D.C. Cir. 2018) (quoting *Flanagan*, 87 F.Supp. 3d at 115)).

Accordingly, those *Ashton 33* Plaintiffs set forth on Exhibit B to the proposed Order, all of whom are immediate family members of the 9/11 Decedents listed on Exhibit B, are entitled

to damages pursuant to the framework established by this Court for solatium damages, as set forth on Exhibit B.

## V.    Punitive Damages

Plaintiffs also alleged a claim for punitive damages. *See* ECF No. 11-5 at 250 – 51; ECF No. 465 at 240.  Previously in this case, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No. 2618 at 13 (quoting *Estate of Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory). ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases. *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 (Judge Daniels applying 3.44 punitive multiplier).

However, in another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, a different magistrate judge recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF No. 3363 at 28.  That recommendation was adopted without prejudice to a future request for punitive damages. ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, the *Ashton* Plaintiffs request permission to address the issue of punitive damages at a later date. *See, e.g.*, ECF No. 3666 (Judge Daniels' order authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

## VI.    Prejudgment Interest

On the issue of prejudgment interest, a December 28, 2015 Report and Recommendation, adopted by this Court, concluded that to the extent the *Ashton* wrongful death plaintiffs' claims arose out of injuries in New York State, the rate of prejudgment interest was 9 percent per annum from September 11, 2001 until the date judgment was entered, and to the extent the injuries arose elsewhere, 4.96 percent interest per annum compounded annually was appropriate.  *See* ECF No. 3175 at 1 – 2.  Subsequently, however, this Court concluded that the rate of prejudgment interest of 4.96 percent was more appropriate. ECF No. 3384 at 6.

Accordingly, the *Ashton 33* Plaintiffs asks that this Court direct that prejudgment interest of 4.96 percent per annum on their awards running from September 11, 2001 until the date of judgment, as was done previously for other *Ashton* Plaintiffs, as well as for other plaintiffs in this consolidated litigation.

## VII.    Conclusion

For all of the reasons herein, as well as those set forth in the previous submissions of the *Ashton* Plaintiffs and other plaintiffs, the *Ashton 33* Plaintiffs respectfully request that this Court grant the proposed order and:

1)    Award the Plaintiffs set forth on Exhibit B of the proposed Order solatium damages based on the deaths of their immediate family members, all of whom were killed on September 11, 2001 in the terrorist attacks;

2)    Award them pre-judgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

3)    Grant them permission to seek punitive damages, economic damages (if not sought herein), and other appropriate damages at a later date;

4)    Find that service of process was properly effected upon Iran in accordance with 28 U.S.C. § 1608(a) for sovereign defendants; and,

5)    Grant permission for all other plaintiffs in this action not appearing on Exhibit B to the proposed Order to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

Dated:  April 30, 2025
        New York, New York

                                    Respectfully submitted,

                                    KREINDLER & KREINDLER LLP

                                    BY:  ___/s/ James P. Kreindler_____
                                    James P. Kreindler, Esq.
                                    485 Lexington Avenue, 28th Floor
                                    New York, New York 10017
                                    Tel: (212) 687-8181
                                    *Counsel for Ashton Plaintiffs*