**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD) (SN)<br>ECF Case |

This document relates to:

*Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (GBD)(SN)

# MEMORANDUM OF LAW IN SUPPORT OF *ASHTON* 3 PLAINTIFFS' REVISED MOTION FOR PARTIAL FINAL DAMAGES' JUDGMENTS AGAINST THE TALIBAN ON BEHALF OF NON-U.S. NATIONALS

KREINDLER & KREINDLER LLP
James P. Kreindler, Esq.
Steve R. Pounian, Esq.
Andrew J. Maloney, III, Esq.
Megan W. Benett, Esq.
James G. Simpson, Esq.
485 Lexington Ave., 28th Floor
New York, New York 10017
Tel: (212) 687-8181
Attorneys for *Ashton* Plaintiffs

## TABLE OF CONTENTS

Page(s)

MEMORANDUM OF LAW IN SUPPORT OF *ASHTON* 3 PLAINTIFFS' REVISED
MOTION FOR PARTIAL FINAL DAMAGES' JUDGMENTS AGAINST THE
TALIBAN ON BEHALF OF NON-U.S. NATIONALS ................................................... 1

TABLE OF CONTENTS ............................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................ iii

I.      Introduction ...................................................................................................... 1

II.     Background ....................................................................................................... 5

        A.      Applicable Orders ............................................................................... 7

        B.      Related Cases ...................................................................................... 8

III.    The Court Has Personal and Subject Matter Jurisdiction Over the Taliban .................... 9

IV.     Damages Should Be Awarded Against the Taliban Jointly and Severally for Non-U.S.
        Nationals ......................................................................................................... 13

        A.      New York Law Applies to the Common Law Claims at Issue Here ........................ 14

        B.      Wrongful Death ................................................................................. 16

        C..     Survival ............................................................................................. 16

        D.      Intentional Infliction of Emotional Distress ............................................. 17

        E.      Moving Plaintiffs with Claims Arising Under the Common Law Seek Application of
                Uniform Damages Principles as Those Employed Under the ATA. ........................ 22

        F.      Economic Damages for Estates .............................................................. 22

        G.      Punitive Damages ............................................................................... 24

        H.      Prejudgment Interest .......................................................................... 24

V.      CONCLUSION ................................................................................................ 25

<u>TABLE OF AUTHORITIES</u>

Cases                                                                                                                  Pages

21 CIV. 5720 (AT),
    2023 WL 24379 (S.D.N.Y. Jan. 3, 2023) ................................................................................ 21

*Armstead v. National RR Passenger Corp.*,
    954 F. Supp. 111 (S.D.N.Y. 1997) ........................................................................................ 16

*Baker v. Socialist People's Libyan Arab Jamahirya*,
    775 F. Supp. 2d 48 (D.D.C. 2011) ........................................................................................ 25

*Calder v. Jones*,
    465 U.S. 783 (1984) .............................................................................................................. 13

*Chamberlain v. City of White Plains*,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013) .................................................................................. 16

*Chrysler Capital Corp. v. Century Power Corp.*,
    778 F. Supp. 1260 (S.D.N.Y. 1991) ......................................................................... 11, 12, 13

*Estate of Heiser v. Islamic Rep. of Iran*,
    659 F. Supp. 2d 20 (D.D.C. 2009) ................................................................................. 20, 22

*Flanagan v. Islamic Republic of Iran*,
    87 F. Supp. 3d 93 (D.D.C. 2015) .................................................................................... 19, 23

*Flatow v. Islamic Republic of Iran*,
    999 F. Supp. 1 (D.D.C. 1998) .............................................................................................. 23

*Fraenkel v. Islamic Republic of Iran*,
    892 F.3d 348 (D.C. Cir. 2018) ............................................................................................. 22

*Heiser v. Islamic Republic of Iran*,
    466 F.Supp.2d 229 (D.D.C. 2006) ....................................................................................... 24

*Howell -v. NY Post Co.*,
    81 N.Y.2d 115 (1993) ........................................................................................................... 19

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003) ................................................................................................. 13

*In re Sept. 11th Litig.*,
    494 F. Supp. 2d 232 (S.D.N.Y. 2007) .................................................................................. 15

*In re Terrorist Attacks of Sept. 11,*
    *2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ....................................................................... 17

*Jenco v. Islamic Rep. of Iran*,
    154 F. Supp. 2d 27 (D.D.C. 2001) ....................................................................................... 20

*Johnson v. N.Y State Police*,
    659 F. Supp. 3d 237 (S.D.N.Y. 2023) .................................................................................. 17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .............................................................................................................. 16

*Menowitz v. Brown*,
    991 F.2d 36 (2d Cir. 1993) ................................................................................................... 15

*Merck Eprova AG v. Gnosis S.p.A.*,
    No. 07 CIV. 5898 (RJS), 2008 WL 5336587 (S.D.N.Y. Dec. 12, 2008) ................................. 12, 13

*Oveissi v. Islamic Republic of Iran*,
    573 F. 3d 835 (D.C. Cir. 2009) ............................................................................................ 18

*Rich v. Fox News Network, LLC,*
    No. 18 Civ. 2223 (GBD), 2020 WL 5768430 (S.D.N.Y. Sept. 25, 2020) ...................... 19
*Roth v. Islamic Republic of Iran,*
    78 F. Supp. 3d 379 (D.D.C. 2015)............................................................................ 24
*Salazar v. Islamic Rep. of Iran,*
    370 F. Supp. 2d 105 (D.D.C. 2005)........................................................................... 20
*Stethem v. Islamic Rep. of Iran,*
    201 F. Supp. 2d 78 (D.D.C. 2002)............................................................................ 20
*Surette v. Islamic Rep. of Iran,*
    231 F. Supp. 2d 260 (D.D.C. 2002).......................................................................... 20
*Turley v. ISG Lackawanna, Inc.,*
    774 F.3d 140 (2d Cir. 2014) .................................................................................... 22
*Ungar,*
    304 F. Supp. 2d............................................................................................................ 23
*United States v. Int'l Bhd. of Teamsters,*
    945 F. Supp. 609 (S.D.N.Y. 1996) ........................................................................... 13
*Valore,*
    700 F. Supp. 2d............................................................................................................ 24
*Wagner v. Islamic Rep. of Iran,*
    172 F. Supp. 2d 128 (D.D.C. 2001)........................................................................... 20

## Statutes

28 U.S.C. § 1605(b) ......................................................................................................... 13
28 U.S.C. § 1605A(c).......................................................................................................... 23
N.Y. Est. Powers & Trust Law§ 5-4.1(1) (McKinney 2023)............................................. 17
Section 5-4.1 of New York's Estates, Powers, and Trusts Law ................................... 16, 17
Section 11-3.2(b) of New York's Estates, Powers, and Trusts Law .................................. 17

## Rules

CPLR § 302(a)(2)......................................................................................................... 10, 11
CPLR § 302(a)(3)(ii)..................................................................................................... 12, 13
NY CPLR §3017 ............................................................................................................... 19

## Other Authorities

Executive Order 13129...................................................................................................... 12
Restatement (Second) of Torts § 46 (1965) ...................................................................... 20

## I.    Introduction

Plaintiffs in the above-captioned case include the personal representatives of non-U.S. nationals killed on September 11, 2001 in the terrorist attacks ("9/11 Decedents") and non-U.S. national immediate family members of 9/11 Decedents ("non-U.S. National Plaintiffs"). The non-U.S. National Plaintiffs in Exhibits B1, B2[1] and C ("Moving Ashton 3 Plaintiffs") to the Declaration of Andrew J. Maloney, III ("Maloney Declaration"), with a proposed order at Exhibit A to the Declaration, by and through their counsel, Kreindler & Kreindler LLP ("Kreindler"), respectfully submit this Memorandum of Law in support of their Motion for Partial Final Judgments as to Damages against the Taliban.

Moving Plaintiffs, all non-U.S. Nationals, previously obtained a default liability judgment against the Taliban and now seek partial final judgments as to their common law claims of intentional murder and intentional infliction of emotional distress (solatium), assault and survival claims against the Taliban and seek approval of the proposed Order attached as Exhibit A to the Maloney Declaration. Moving Plaintiffs also seek a damages' determination consistent with the determinations of prior subsets of plaintiffs in this MDL based on state law.

## II.    Background

The *Ashton* Plaintiffs represented by Kreindler filed a motion on July 27, 2022 for final partial judgements against the Taliban on behalf of estates and immediate family members for decedents who were killed during the September 11, 2001 Terrorist Attacks. (ECF No. 8274, 8275 & 8278).  On March 15, 2023, the Magistrate Court recommended that the motion be granted as to default damages' judgments pursuant to the  Anti-Terrorism Act ("ATA")  on behalf of the *Ashton* Plaintiffs who were U.S. Nationals, but denied without prejudice the

---

[1] Exhibit B lists estates of non-U.S. national 9/11 Decedents who have default judgments against the Taliban and is subdivided into B1 for pain and suffering and B2 economic losses where available for some of those estates; Exhibit C lists immediate family members of 9/11 Decedents where the 9/11 decedent was not a U.S. National *and/or* the immediate family member was not a U.S. National on September 11, 2001.

request for damages judgments made by non-U.S. Nationals, concluding that they were not eligible to rely on the ATA. (ECF No. 8929 at 5-6).  The District Court agreed and on March 30, 2023, ECF No. 8973, granted judgment to the U.S. nationals only. The Court invited the non-U.S. Nationals to re-file a motion that cited state laws authorizing a cause of action and address the basis for jurisdiction, the allegations in the complaint and the scope of damages under the relevant law. *Id.*[2]

For the reasons set forth below, and in the Maloney Declaration, as well as those presented in prior motions, Moving Plaintiffs now respectfully move this Court for an Order:

(1)    Confirming that service of process in the above-captioned matter was properly effected upon the Taliban;

(2)    Confirming that this Court possesses personal jurisdiction over the Taliban for the instant claims;

(3)    Determining that this Court has subject-matter jurisdiction over the Taliban under state common law for actions arising out of intentional murder and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks;

(4)    Awarding damages' judgments under applicable common law to Moving Plaintiffs identified in Exhibits B1, B2 and C against the Taliban in the same amounts previously awarded by this Court to the Moving Plaintiffs as against co-tortfeasor and co-defendant Iran with the exception of treble damages that were recoverable under the ATA that does not apply to these non-U.S. Nationals;

---

[2] Plaintiffs are aware of the recent 2d. Cir. decision in *Havlish et al. v. Taliban*, case no. 23-258, Aug. 26, 2025 affirming this Court's Order denying turnover and attachment motions against the assets held by DAB at the FRBNY.  *Ashton 3* Plaintiffs nonetheless seek partial final judgments to potentially pursue Taliban assets elsewhere.

(5)    awarding Moving Plaintiffs prejudgment interest at the rate of 4.96

percent per annum, compounded annually for the period from September 11, 2001

until the date of the judgment for damages;

(6)    granting Moving Plaintiffs permission to seek punitive damages,

additional economic damages, and other appropriate damages, at a later date;

(7)    granting permission for all other Plaintiffs not appearing in Exhibits

B and C to submit applications for damages awards in later stages, to the extent

such awards have not previously been addressed; and

(8)    granting Plaintiffs such other and further relief as this honorable

court deems just and proper.

The awards set forth in the attached Proposed Order (Exhibit A) represent the only direct

recovery against the Taliban on behalf of Moving Plaintiffs for the claims herein and will

constitute partial final awards and judgments against the Taliban for Moving Plaintiffs.

This motion replaces the motion at ECF No. 8275 as to the non-U.S. nationals.

## A.    Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by

this Court, and the form of this motion and the relief requested herein are intended to comply

with various orders of this Court, including the following:

a.    The Court's January 24, 2017 Order, ECF No. 3435, requiring that "[a]ll further motions for final judgment against any defaulting defendant shall be accompanied by a sworn declaration attesting that the attorney has (1) complied with the due diligence safeguards [referenced in Section II.D. of the January 23, 2017 letter from the Plaintiffs' Executive Committee, ECF No. 3433] and (2) personally verified that no relief has previously been awarded to any plaintiff included in the judgment (or, if relief has been awarded, the nature of that relief)."

b.    Magistrate Judge Maas' July 30, 2012 Report & Recommendation, ECF No. 2618, and this Court's October 3, 2012 Order, ECF No. 2623, adopting the Report & Recommendation in its entirety concerning the award of damages;

c.    The Court's October 14, 2016 Order, ECF No. 3363, concerning the

amounts of solatium damage awards.

d.      The Court's October 14, 2016 Order, ECF No. 3362, related to *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).

e.      The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated procedural rules.

f.      The Court's December 6, 2019 Order, ECF No. 5338, setting forth the scheduling order.

g.      The Court's April 11, 2022 Order, ECF No. 7870, setting forth specific procedures regarding seeking judgments for damages as to the Taliban.

h.      The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports submitted in support of default judgments.

i.      The Court's July 11, 2022 Order, ECF No. 8198, setting forth requirements for motions for default judgments against non-sovereign defendants.

j.      The Court's September 20, 2022 Order, ECF No. 8541, setting forth procedures for filing expert reports submitted in support of default judgments.

k.      The Court's June 25, 2025 Order modifying the tables and columns for damages' calculations with interest, ECF 11036.

## B.      Related Cases

Relying on evidence and arguments submitted by plaintiffs in *In re Terrorist Attacks on September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the September 11th Attacks, this Court, on March 30, 2023 (ECF 8973), granted an Order of Judgment on Liability and partial final judgment on damages in favor of the U.S. citizens of the *Ashton* plaintiffs and immediate family members against the Taliban.

The Court granted the estates of the *Ashton* U.S. citizens economic and pain and suffering damages against the Taliban and applied the same solatium values to claims of other solatium plaintiffs as to Iran in *Ashton, Burnett, O'Neill* and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation against Iran and sought against the Taliban. *See*, *e.g.*, ECF Nos. 2618, 2623-24, 3175 at 2, 3300

8

at 1, 3358 at 9, 3363 at 16, 3399, 3666, 3977 at 7, 4023, 4126, 4146, 4175, 5061-62, 5087, 5138, and 5356.

| Relationship of Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

The Court further awarded the *Ashton* Plaintiffs who were U.S. citizens an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 8973; 3383 at 2, 3384 at 6.  The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards throughout the MDL.

## III.   The Court Has Personal and Subject Matter Jurisdiction Over the Taliban

In its March 30, 2023 Memorandum Decision and Order, (ECF No. 8973), this Court has already found, the *Ashton* Plaintiffs, pursuant to the Court's authorization (ECF No. 445), served the Taliban by publication. *See* service verifications, (ECF 709 and 735). The *Ashton* Plaintiffs listed in that complaint included the non-U.S. Nationals that are the current Moving Plaintiffs. After the Taliban "neither responded nor appeared, Plaintiffs moved for an entry of default, which this Court granted on May 12, 2006. (See Order, ECF. No. 1797)" citing ECF No. 8973 at 2.

The Taliban's pervasive intentional and material support for, and conspiracy with al Qaeda, an organization committed to attacking U.S. interests, including attacks on U.S. soil, plainly satisfies New York's long arm statute and due process. Under CPLR § 302(a)(2), personal jurisdiction exists over a person who, personally or through an agent, "commits a

tortious act within the state." The horrific events of September 11th were the result of a world-wide terror conspiracy against the United States involving the Taliban and its proxy al Qaeda. Courts have defined "agent" to include co-conspirators and it is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR § 302(a)(2). *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Moving Plaintiffs have presented facts to support their *prima facie* showing that the Taliban was a witting participant in al Qaeda's attack on the United States. The Taliban gave al Qaeda freedom of movement within Afghanistan, allowed al Qaeda members to enter and exit Afghanistan without visas or immigration procedures, permitted al Qaeda members to purchase and import vehicles and weapons, permitted al Qaeda members to use official Afghan Ministry of Defense license plates, and al Qaeda was allowed to use Afghan state-owned Ariana Airlines to bring money into Afghanistan. 9/11 Commission Report at 66.[3] "The alliance with the Taliban provided al Qaeda a sanctuary in which to train and indoctrinate fighters and terrorists, import weapons, forge ties with other jihad groups and leaders, and plot and staff terrorist schemes." *Id.* Bin Ladin "benefited from the broad infrastructure of such facilities in Afghanistan made available to the global network of Islamist movements. U.S. intelligence estimates put the total number of fighters who underwent instruction in Bin Ladin-supported camps in Afghanistan from 1996 to 9/11 at 10,000 to 20,000. *Id.* at 66-67. Further, the Taliban would not expel Bin Ladin, despite being asked to do so by the State Department. *Id.* at 121. Instead, the Taliban continued to provide sanctuary to al Qaeda and Bin Ladin. *Id.* The Taliban should have expected an attack in New York given its material support to al Qaeda before and after Osama Bin Laden's February 22, 1998 fatwa that called on all Muslims to kill Americans

---

[3] The 9/11 Commission Report, http://govinfo.library.unt.edu/911/report/911Report.pdf, accessed June 12, 2023.

"wherever and whenever" they are found, and given its knowledge that al Qaeda previously attacked the World Trade Center in 1993. President Clinton ordered a missile strike inside Afghanistan on August 20, 1998 targeting al Qaeda camps in retaliation for the bombing of the U.S. Embassies in East Africa. President Clinton further issued Executive Order 13129 blocking the assets of the Taliban on July 4, 1999 and President Bush designated the Taliban a global terror organization on July 2, 2002 in Executive Order 13224 for its role in supporting al Qaeda and the 9/11 Attacks. The *Ashton* complaint sufficiently plead Taliban conspiracy at ¶¶11-12, 22, 78, 100, 123-24, 155, 193, 4986-89 at ECF No. 465.   Since the Moving Plaintiffs have presented facts to support their *prima facie* showing that the Taliban was a witting participant in al Qaeda's conspiracy to attack the United States, the Taliban is subject to personal jurisdiction under New York's long- arm statute before this act based on the acts of its co-conspirator, al Qaeda. *See Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991).

Further, under CPLR § 302(a)(3)(ii), personal jurisdiction exists over a person who, personally or through an agent, "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  *Merck Eprova AG v. Gnosis S.p.A.*, No. 07 CIV. 5898 (RJS), 2008 WL 5336587, at *3 (S.D.N.Y. Dec. 12, 2008).  The elements are satisfied here.  The Taliban's tortious conduct as a co-conspirator, as set forth above, resulted in the September 11th terrorist attacks that caused injury to both persons and property in New York and the Taliban should have expected consequences in New York given its material support to al Qaeda before and after Osama Bin Laden's February 22, 1998 fatwa and given that al Qaeda previously attacked the World Trade Center in 1993.  Moreover, the Taliban has derived substantial revenue from international commerce, including but not limited to opium production and drug trafficking. 9/11

11

Commission report at 171. Accordingly, Moving Plaintiffs can establish personal jurisdiction over the Taliban under CPLR § 302(a)(3)(ii). *Chrysler Cap. Corp.*, 778 F. Supp. at 1270; *Merck Eprova AG*, 2008 WL 5336587, at *3.

The Court exercising personal jurisdiction over the Taliban is also consistent with due process. Due process is satisfied when a defendant has certain minimum contacts with the forum so that exercise of jurisdiction is fair. *United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 620 (S.D.N.Y. 1996). Personal jurisdiction under the due process clause is proper where the defendant took "intentional, and allegedly tortious, actions ... expressly aimed" at the forum state. *Calder v. Jones,* 465 U.S. 783, 789 (1984); *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (citing *Calder* for the proposition that a "court may exercise personal jurisdiction over defendant consistent with due process when defendant is a primary participant in intentional wrongdoing—albeit extraterritorially—expressly directed at forum"). As set forth above, the Taliban provided material financial and logistical support to al Qaeda, an organization bent on attacking the United States, including enabling al Qaeda to create, supply, and operate at least five training camps in order to create an "Islamic Foreign Legion" capable of attacking their enemies throughout the world. Accordingly, personal jurisdiction is satisfied here and as detailed below, the Taliban was duly served.

Indeed, this Court has already determined that is has jurisdiction over the Taliban in this MDL (ECF No. 8973) and granted "judgment against the Taliban on claims brought by U.S. citizens for damages consistent with the prior awards against Iran." *Id.* at 4.

This Court also determined that non-U.S. Nationals present a proper cause of action for subject matter jurisdiction in this MDL in the *King* case (ECF No. 9666) and awarded damages to the non-U.S. plaintiff against Iran, citing 28 U.S.C. § 1605(b). *Id.* at 2-4. Once Iran was stripped of its immunity, it is treated like other non-sovereign actors, such as the Taliban.

On November 23, 2022, the Court extended the foregoing liability judgments (ECF No 3067) to all plaintiffs added pursuant to the Orders at ECF Nos. 7949, 8111, 8150, 8473, and 8695. *See* ECF No. 8770.

Moving Plaintiffs respectfully request that the Court confirm that the liability order entered at ECF No. 8973 and extend it to all *Ashton* plaintiffs, including Moving Plaintiffs' claims under applicable common law principles discussed *infra*.

Further, for the reasons set forth in this Court's Order at ECF No. 3163, and in this Court's Orders regarding Moving Plaintiffs at ECF Nos. 7949, 8111, 8150, 8473, and 8695, the Taliban has been properly served, and this Court has personal jurisdiction over the Taliban and subject-matter jurisdiction.

## IV.    Damages Should Be Awarded Against the Taliban Jointly and Severally for Non-U.S. Nationals

On March 30, 2023 this Court granted the *Ashton* Plaintiffs who were U.S. citizens' motion for partial final judgment for damages (ECF No. 8973).  By way of the instant motion, Moving Plaintiffs respectfully request that partial final judgments for damages be entered in their favor and against the Taliban jointly and severally. This Court's jurisdiction reaches the claims of these non-nationals who were injured or killed and their family members by virtue of the fact that the terrorist attacks took place on U.S. soil with the largest number of victims being injured or killed only blocks from this courthouse at the World Trade Center complex in lower Manhattan. Moving Plaintiffs identified on Exhibit B1 and B2 to the Maloney Declaration are the Estates of 9/11 decedents where the 9/11 decedent was known not to be  a United States National on September 11, 2001 while Exhibit C to the Declaration identifies immediate family members of 9/11 decedents where the 9/11 decedent was not a U.S. National and/or the immediate family member was not a U.S. National on September 11, 2001.

The terrorists who carried out the attacks on September 11, 2001 did not differentiate their victims by nationality. Individuals working in the North Tower of the World Trade Center when it was hit were not somehow sequestered based on their citizenship status. The terrorists attacked the United States, and while the vast majority of those who were killed in the orchestrated attacks against the United States were U.S. Nationals, a significant percentage of the victims were not. This does not mean that they were treated differently by the terrorists or that their loved ones did not experience the grief and loss that U.S. Nationals did. This disparity between U.S. Nationals and foreign nationals is reflected in the two statutes addressing the provision of support by foreign sovereigns acts of terrorism, and in the instant case against Iran, this Court has treated the non-U.S. Nationals the same in applying similar damage awards. As such, these Plaintiffs seek a determination from the Court that they are entitled to the same level of damages as U.S. National plaintiffs with claims against the Taliban with the exception of treble damages under the ATA for U.S. citizens.

A.    New York Law Applies to the Common Law Claims at Issue Here.

In applying state law this Court recently, after determining that Iran was not entitled to sovereign immunity, treated Iran like any other defendant, [like the Taliban] and evaluated the state law claims against Iran brought by non-U.S. Nationals. *See* ECF No. 9931, Memorandum Decision and Order, June 17, 2024.

> Analyzing its liability for state torts requires the Court to first conduct a choice-of-law analysis. Multidistrict litigation courts apply the choice-of-law rules "that would have been applied by a state court in the jurisdiction in which a case was filed." *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir. 1993).
>
> Since all [Plaintiffs] actions were filed in New York, New York's choice-of-law rules govern. Distilled down, those rules essentially prescribe "an evaluation of the 'place of the tort - i.e.,* 'the jurisdiction where the "last event necessary" to make the defendant liable occurred.'" (ECF No. 9666, at 7 (internal citation omitted) (quoting *In re Sept. 11th Litig.,* 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007)). For these Plaintiffs, the estates of people killed at the World Trade Center and their family members, the relevant events occurred in New York City. This Court therefore ana1yzes their wrongful death, survival, and intentional infliction of emotional distress claims under New York law.

*(See id.* at 7 & n.5.). *Id.* at 3.

Moving Plaintiffs all lost a loved one on September 11, 2001 in New York and have

brought claims here in New York to redress their injuries. As this Court has already recognized,

federal courts apply the choice-of-law rules of the state in which they sit. *Armstead v. National*

*RR Passenger Corp.*, 954 F. Supp. 111, 112 (S.D.N.Y. 1997) (citing *Klaxon Co. v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487 (1941)). In this instance, this Court should apply *lex loci delicti. See*

*Armstead*, 954 F. Supp. at 112-13 (stating "if…the tort did not occur in the domicile of either

party, the lex *loci delicti*— law of the situs of the tort—will normally apply, unless displacing it

[with another relevant jurisdiction's law] 'will advance the relevant substantive law purposes

without impairing the smooth working of the multi-state system or producing great uncertainty

for litigants.'").  Following *Armstead*, Plaintiffs' common-law claims would be analyzed under

the laws of New York as the situses of the tort.

## B.    Wrongful Death

This Court has previously addressed the claims of plaintiffs in this MDL under New

York common law for wrongful death and determined that

> Section 5-4.1 of New York's Estates, Powers, and Trusts Law imposes liability for (1)
> the "death of a human being" where (2) "a wrongful act, neglect or default ...  caused the
> decedent's death," (3) the decedent's survivors "suffered pecuniary loss by reason of the
> decedent's death," and (4) a "personal representative" has been appointed to represent the
> decedent. *Chamberlain v. City of White Plains,* 986 F. Supp. 2d 363,398 (S.D.N.Y.
> 2013). ECF No. 9931 at 3.

The Moving Estate Plaintiffs in Exhibit B2 seeking economic damages meet these

requirements.  First, they assert claims on behalf of people killed in the 9/11 Attacks; Second, as

this Court previously determined, the Taliban's default has essentially admitted the allegations

in the *Ashton* complaint that alleged that the Taliban's provision of material support  to al

Qaeda  proximately  caused  the 9/11 Attacks  and  the decedents' deaths. *See In re Terrorist*

*Attacks on Sept. 11, 2001,* No. 03 MDL 1570 (GBD), (ECF 8929 at 5-6). As the Taliban's "actions support liability for personal injuries, they satisfy the core requirement that wrongful death claims be predicated on conduct for which the defendant "would have been liable to the decedent … if death had not ensued." N.Y. Est. Powers & Trust Law§ 5-4.1(1) (McKinney 2023); *see In re Terrorist Attacks of Sept. 11, 2001,* 349 F. Supp. 2d 765, 829 (S.D.N.Y. 2005) (determining that plaintiff stated New York wrongful death claims where they alleged that the"[d]efendants supported, aided and abetted, or conspired with the September 11 terrorists"). Decedents' estates are also entitled to an award for their pre-death pain and suffering under New York law in the amounts listed at Exhibit B1. Third, the decedents' survivors suffered pecuniary losses, as detailed in their expert reports. *(See* ECF No. 8929.) And fourth, each of the estates is represented by a court appointed personal representative.

The Moving Plaintiffs are therefore entitled to "pecuniary" damages. They have provided expert reports calculating those damages, and this Court has previously awarded economic damages based on such reports. ECF No. 9931 at 4.

## C.    Survival

Section 11-3.2(b) of New York's Estates, Powers, and Trusts Law preserves causes of action "for injury to [a] person" after the injured person's death. N.Y. Est. Powers & Trust Law§ 11-3.2(b) (McKinney 2016). Claims brought under this statute are used in tandem with Section 5-4.1 wrongful death claims and pe1mit estates to recover for "pain and suffering prior to death" due to a "decedent's injuries." *Johnson v. N.Y State Police,* 659 F. Supp. 3d 237, 261 (S.D.N.Y. 2023).

The 9/11 victims' estates have satisfied this theory of liability. The decedents sustained fatal injuries in the attacks on the World Trade Center. As this Court explained in granting a personal injury judgment, the Taliban is liable for aiding and abetting the assault and battery that

produced those injuries. *(See* ECF No. 8929) The same facts warrant holding Taliban liable for injuries that proved fatal under Section 1 l-3.2(b).

Accordingly, Moving Estate Plaintiffs in Exhibit B1 of the Maloney Declaration who are non-U.S. Nationals request the Court award damages for the decedents' for pain and suffering. This Court has consistently awarded $2,000,000.00 for pain and suffering to the estates of 9/11 victims and should do so again here, as set forth in Exhibit B1 to the Maloney Declaration.

D.    Intentional Infliction of Emotional Distress

The Moving Plaintiffs at Count One of their complaint, alleged not simply a wrongful death cause of action, which covers a potential claim for negligence, rather "Wrongful Death Based on Intentional Murder" and because the acts were "intentional and malicious acts of terrorism on September 11, 2001, defendants have caused plaintiffs' decedents' family members to suffer severe and permanent injuries, damages and losses, including but not limited to the following:

> Non-economic damages, including but not limited to, the loss of consortium, solarium, society, companionship, care, comfort and love suffered by plaintiffs and decedents' other survivors." (Sixth Am. Master Complaint at ¶¶463-466)."

This provided the Taliban with notice that Moving Plaintiffs were seeking these particular non-economic damages that are akin to a loss of solatium. While it is true that Moving Plaintiffs in Exhibit C to the Maloney Declaration did not plead a separate cause of action in the complaint for intentional infliction of emotional distress, this Court can and has, permitted other 9/11 Plaintiffs to make the claim for relief in their motions for final judgment that were not explicitly enumerated as a separate cause of action or count in their complaint. See e.g., ECF No. 9666, March 26, 2024 Memorandum Decision and Order at 5-6 ("In the FSIA context, "[w]hile [plaintiffs d[o] not have to identify the specific source of law in [their] complaint," they must "do so at an appropriate time in the litigation." *Oveissi v. Islamic Republic of Iran*, 573 F. 3d 835, 840 (D.C. Cir. 2009)"). The Court determined in the related *Burnett* action that did not specifically plead a separate cause of action for assault and battery, nonetheless

17

adequately did so in their motion for final judgement.  ECF No. 9666 at 5-6.  Indeed, under New York

law, a "court may grant any type of relief within its jurisdiction appropriate to the proof whether or not

demanded, imposing such terms as may be just."  NY CPLR §3017 ("Relief in the alternative or of

several different types may be demanded").  Moving Plaintiffs seek relief for the non-economic

damages incurred and  described above (and in their complaint) that are otherwise afforded under New

York law for the tort of intentional infliction of emotional distress.

> This Court has recently held that:

> > The tort of intentional infliction of emotional distress ("IIED") "has four elements:
> > (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial
> > probability of causing, severe emotional distress; (iii) a causal connection between the
> > conduct and injury; and (iv) severe emotional distress." *Howell -v. NY  Post Co.,* 81
> > N.Y.2d 115, 121 (1993).  Liability for intentional infliction of emotional distress extends
> > to those who aid and abet the primary tortfeasor. *See Rich v. Fox News Network, LLC,*
> > No. 18 Civ. 2223 (GBD), 2020 WL 5768430, at *5-6 (S.D.N.Y. Sept. 25, 2020)
> > (analyzing claim for aiding and abetting IIED).  ECF No. 9931 at 5-6, Memorandum
> > Decision and Order, June 17, 2024.

Here Moving Plaintiffs, whose family members were killed in the 9/11 Attacks, have

established the Taliban's liability for aiding and abetting IIED.  T h e  T a l i b a n  aided and

abetted al Qaeda by knowingly providing substantial assistance in plotting the 9/11 Attacks.

*(See* ECF No. 8973)  And by carrying out the 9/11 Attacks, al Qaeda committed IIED.  In

satisfaction of the first two elements, the 9/11 Attacks, as "[a]cts of terrorism[,] [were) by their

very definition extreme and outrageous and intended to cause the highest degree of emotional

distress." *Flanagan v. Islamic Republic of Iran,* 87 F. Supp. 3d 93, 115 (D.D.C. 2015).  In

satisfaction of the final two elements, the 9/11 Attacks publicly murdered the Moving Plaintiffs'

family members, thereby intentionally inflicting extreme emotional distress.

But within the context of the claims against Iran, and in the same Report and

Recommendation, this Court held, "[b]ecause of the extreme and outrageous conduct inherent in

acts of terrorism, courts have held that solatium claims in FSIA terrorism cases are

'indistinguishable' from claims of intentional infliction of emotional distress." ECF No. 3358 at

8 (citing *Surette v. Islamic Rep. of Iran*, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting

*Wagner v. Islamic Rep. of Iran*, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)). Specific to the

terrorist attacks on September 11, 2001, the Court continued:

> Terrorist attacks, by their very nature, are meant to inflict severe emotional distress upon society as a whole, but the loved ones of their victims bear a burden which is unquestionably heavier. As the September 11 attacks have left deep scars in the consciousness of this city and this nation, family members of the decedents are left with constant and stark reminders of their tragic losses. *Id.*

This Court has held that "the common law of intentional infliction of emotional distress

governs questions of who is entitled to recover damages…. This is necessarily so because of the

'interest in promoting uniformity of determinations with respect to [state sponsored terrorist acts]'

and the fact that generally accepted legal standards of the states provide the only steady foundation

for the rules of decision." ECF No. 3363 at 2 (emphasis added) (quoting *Estate of Heiser v.*

*Islamic Rep. of Iran*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). In fact, the courts addressing

solatium damages have relied on the Restatement (Second) of Torts § 46 (1965), which is the

precise source of the law in each of New York, Virginia, and Pennsylvania. *Id.* at 3. While

physical proximity to the incident giving rise to the emotional distress is typically a required

element of negligent infliction of emotional distress claims, not so for a public and highly

televised intentional murder and "courts have uniformly held that a terrorist attack—by its

nature—is directed not *only at the victims but also at the victims' families." Id. (*quoting *Salazar v.*

*Islamic Rep. of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)); *Jenco v. Islamic Rep. of Iran*,

154 F. Supp. 2d 27, 35 (D.D.C. 2001). Acts of terrorism are, by their very definition, extreme and

outrageous and intended to cause the highest degree of emotional distress. *Stethem v. Islamic Rep.*

*of Iran*, 201 F. Supp. 2d 78, 89 (D.D.C. 2002). This Court has previously found that "[t]he 9/11

terrorist attacks are contrary to the guarantees 'recognized as indispensable by civilized peoples.'"

ECF No. 2515 at 50.  Under New York law, the tort of intentional murder provides a remedy for

intentional infliction of emotional distress and has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Zonshayn v. Sackler Sch. of Med. (New York)*, No. 21 CIV. 5720 (AT), 2023 WL 24379, at *8 (S.D.N.Y. Jan. 3, 2023). The Taliban's intentional material support for al Qaeda, which resulted in the 9/11 attacks, as set forth above, constitutes extreme and outrageous conduct, and resulted in severe emotional distress and "non-economic damages, including but not limited to the loss of consortium, solarium, society, companionship, care, comfort and love suffered by the plaintiffs and decedents' other survivors." ECF No. 465 at ¶466. The Taliban's material support to al Qaeda was extreme and outrageous, and was intended to and enabled al Qaeda in carrying out the September 11th attacks. The act of crashing two commercial airliners into the World Trade Center with the intent to kill Americans, and which, in fact, did kill Americans, constituted extreme and outrageous conduct on the part of the Taliban. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of the Taliban, the Moving Plaintiffs suffered and continue to suffer, severe emotional distress, including extreme mental anguish and emotional and physical pain and suffering. By way of example, family members of victims of the September 11th terrorist attacks watched in horror as the towers collapsed and was fearful for their loved ones' lives. Televised news accounts of the horror are repeated several times a year, and most especially on each anniversary.

As these Moving Plaintiffs' intentional infliction of emotional distress claims mirror those of the solatium claims actionable under the ATA for U.S. National plaintiffs in claims arising from the same nexus of events, the amount of Moving Plaintiffs' recovery here under the common law should be identical to the solatium damages framework established by this Court against Iran and applied to the claims under the ATA against the Taliban. In the FSIA context, this Court has emphasized the "interest in promoting uniformity of determinations with respect

to [state sponsored terrorist acts]", but the Court's citation to *Estate of Heiser* goes on to explain

that this uniformity is achieved through "well-established standards of state common law." *See*

ECF No. 3363 at 2 (quoting *Estate of Heiser*, 659 F. Supp. 2d 20, 24-25 (D.D.C. 2009)). Such

uniformity in outcome between plaintiffs who sustained injury arising from the same terrorist

attacks should be simple given the application of "well-established standards of state common

law" which is the undergirding of the claims of Moving Plaintiffs who lack standing to assert

claims under the ATA.

Here, each estate listed on Exhibits B1 and B2 to the Maloney Declaration  died on 9/11.

As set forth above, the Taliban committed several intentional acts which resulted in the 9/11

attacks.

The elements of intentional murder and infliction of emotional distress are satisfied here.

Plaintiffs in Exhibit B1 and B2, who were born alive, were killed as a direct result of the

Taliban's wrongful acts, its intentional material support for al Qaeda which resulted in the 9/11

attacks.  Further the Plaintiffs in Exhibit B1 and B2 left behind distributees who each suffered

deep pecuniary losses by reason of decedent's death. Maloney Declaration at ¶¶ 11; 13.  And as

detailed in the Declaration of Andrew J. Maloney, a personal representative' has been appointed

to administer each of those decedents' estates. Maloney Declaration at ¶ 8.

This Court should grant Moving Plaintiffs' request for compensatory damages for IIED.

*See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 146-47 (2d Cir. 2014) (approving

compensatory damages for IIED claim). This Court should award damages to immediate family

members of non U.S. National 9/11 victims according to an established framework developed

for solatium claims. (*See* ECF No. 2623.) As IIED claims are "nearly indistinguishable from"

solatium claims, the Court should therefore award damages here pursuant to the same

framework, as set forth in Exhibit C. *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 357

(D.C. Cir. 2018) (quoting *Flanagan,* 87 F. Supp. 3d at 115).

E.    Moving Plaintiffs with Claims Arising Under the Common Law Seek Application of Uniform Damages Principles as Those Employed Under the ATA.

To promote the uniformity discussed above, Moving Plaintiffs asserting claims under the common law seek damages equal to those of their co-plaintiffs asserting claims under the ATA with the exception of the ATA's award of treble damages. The immediate family members asserting claims under the common law of intentional infliction of emotional distress, a/k/a solatium damages, found at Exhibit C to the Maloney Declaration  also assert that they should be awarded damages against the Taliban in the same manner as those awarded damages under both 28 U.S.C. § 1605A(c) and the ATA: $12,500,000 for the spouse of a 9/11 Decedent; $8,500,000 for the child of a 9/11 Decedent; $8,500,000 for the parent of a 9/11 Decedent; and $4,250,000 for the sibling of a 9/11 Decedent. The Exhibit C spreadsheet provides these damages figures relative to the relationship of each individual plaintiff.

F.    Economic Damages for Estates

Economic damages are specifically contemplated in terrorism litigation, whether under the FSIA, the ATA or the common law.  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998); *see also Ungar*, 304 F. Supp. 2d at 264-65 (its legislative history "indicates that the ATA was to be construed broadly" and giving weight to its co-sponsor's statement that the ATA "'empowers victims with all the weapons available in civil litigation,'" suggesting "that Congress intended that the full range of damages should be available to persons entitled to bring actions pursuant to § 2333(a)."). Accordingly, "the beneficiaries of each decedent's estate [are] … entitled to recover the present value of economic damages, including lost wages that the decedents might

reasonably have been expected to earn but for their wrongful deaths." *Valore*, 700 F. Supp. 2d at 81-82 (citing *Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006)). Thus, sponsors of terrorist attacks that kill victims are routinely "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015) (quoting *Valore*, 700 F.Supp. 2d at 78). Previously, this Court awarded economic damages in Iran and Taliban cases under NY law for the "economic losses stemming from the wrongful death of the decedent[.]" *See, e.g.*, ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports. Certain of the Estates set forth in Exhibit B2 and as specifically identified and set forth therein,[12] and which provided economic expert reports, previously transmitted to the Court in the Iran default judgment case as indicated in the Maloney Declaration, seek economic damages, similar to the plaintiffs in the prior Taliban and Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  M a l o n e y  Declaration at ¶¶ 11; 13. As described  in the Maloney Declaration, Moving Plaintiffs retained the services of John F. Beauzile, an expert who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from decedents' death as a result of the September 11th Attacks.  Maloney Declaration at ¶11.

As described in more detail in the Maloney Declaration, and the Expert's Declaration attached as Exhibit D thereto, we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a substantial number of 9/11 decedents represented by undersigned counsel[4].  Those files, along

---

[4] We are still awaiting the receipt of additional VCF files from the Department of Justice via multiple outstanding FOIA requests, the processing of which has been adversely impacted by both "normal" delays in responding to FOIA requests as well as special circumstances related to the ongoing COVID pandemic.

with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work papers and distribution plans, VCF determinations, underlying economic documents, and the like. Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared up-to-date economic loss expert reports, copies of which are deemed appended to the Expert's Declaration (Exhibit D to the Maloney Declaration) and being filed on ECF with access restricted to the Court pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports in support of default judgments.

Based on the foregoing, Moving Plaintiffs respectfully ask that this Court award economic damages to the estates set forth in Exhibit B2 of the Maloney Declaration in the amounts stated therein, as supported by the expert reports.

### G.       Punitive Damages

Moving Plaintiffs are also entitled to punitive damages. In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date. *See*, *e.g.*, ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### H.       Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011). This Court awarded the *Havlish* plaintiffs prejudgment interest

at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14. This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%.

In *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims. ECF No. 3363 at 28-29. Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims. ECF No. 3384 at 6.

## V.    CONCLUSION

For the reasons set forth herein, the statements contained in the Maloney Declaration, as well as those set forth in prior motions for damages, Moving Plaintiffs respectfully request that the Court grant an Order:

(1)    Confirming that service of process in the above-captioned matter was properly effected upon the Taliban;

(2)    Confirming that this Court possesses personal jurisdiction over the Taliban for the instant claims;

(3)    Determining that this Court has subject-matter jurisdiction over the Taliban under state common law for actions arising out of intentional murder  and intentional infliction of emotional distress based on the intentional acts of international terrorism perpetrated on September 11, 2001 that targeted innocent civilians resulting in death, personal injury, and significant grief sustained by family members of those killed in the attacks;

(4)    Awarding damages judgments under applicable common law to

Moving Plaintiffs identified in Exhibits B1, B2 and C against the Taliban in the same amounts previously awarded by this Court to the Moving Plaintiffs as against co-tortfeasor and co-defendant Iran;

(5)    awarding Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages;

(6)    granting Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date;

(7)    granting permission for all other Plaintiffs not appearing in Exhibits B and C to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; and

(8)    granting Plaintiffs such other and further relief as this honorable court deems just and proper.


Dated: New York, New York          Respectfully submitted,
       August 27, 2025
                                   KREINDLER & KREINDLER LLP

                                   BY: /s/ Andrew J. Maloney, III
                                   James P. Kreindler, Esq.
                                   Steve R. Pounian, Esq.
                                   Andrew J. Maloney, III, Esq.
                                   Megan W. Benett, Esq.
                                   James G. Simpson, Esq.
                                   485 Lexington Ave., 28th Floor
                                   New York, New York 10017
                                   Tel: (212) 687-8181
                                   Attorneys for *Ashton* 3 Plaintiffs