

KREINDLER & KREINDLER LLP | 485 Lexington Avenue | New York, NY 10017-2629
office: 212.687.8181 | fax: 212.972.9432 | www.kreindler.com

amaloney@kreindler.com
(212) 973-3479

February 9, 2026

VIA ECF
The Honorable Sarah Netburn
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 430
New York, NY 10007

This document relates to:

*In re terrorist Attacks on September 11, 2001*, 03-md-1570 (GBD)(SN) and
*Ashton et al. v. al Qaeda Islamic Army*, et al., 02-cv-6977 (GBD)(SN)

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF TWO *ASHTON* 3 PLAINTIFFS' REVISED MOTION FOR PARTIAL FINAL DAMAGES' JUDGMENTS AGAINST THE TALIBAN ON BEHALF OF NON-U.S. NATIONALS KILLED OUTSIDE OF NEW YORK**

Dear Judge Netburn,

     I respectfully submit this supplemental letter brief in support of a partial final judgement for damages against the Taliban for the *Asthon 3* Plaintiffs on behalf of two non-U.S. nationals who were murdered on September 11, 2001, when the planes on which they were passengers were hijacked by terrorists and crashed outside of New York , one into the Pentagon in Virginia and one in a field near Shanksville, Pennsylvania. All *Ashton 3* Plaintiffs pled, as relevant here, causes of action under state laws for murder/wrongful death, survival claims for the decedent's conscious pain and suffering, and emotional damages pursuant to intentional infliction of emotional distress.

     On January 29, 2026 (ECF No. 11550 at 2), the Court posed two questions to be answered in this supplemental brief concerning plaintiffs who were killed outside of New York:

- "assuming New York's choice-of-law rules apply to the Plaintiffs' claims, whether the claims for the VA/PA Decedents would be analyzed under the law of the state where the VA/PA each perished or under New York law;" and

- "assuming Virginia's or Pennsylvania's law applies to the claims for VA/PA Decedents, what statutes and case law from those states would govern the Taliban's purported liability to the VA/PA Decedents' estates or immediate family members."

**Factual Background**

Alan Beaven was a citizen of the United Kingdom and domiciled in California with his surviving spouse Kimberly K. Beaven who is a U.S. citizen and serves as his estate representative. Mrs. Beaven and their three American children have obtained solatium judgments against the Taliban as U.S. citizens. (ECF No. 8973 at 9-10; 8275-3 line 33; 11012 at 9 line 81-83). Mr. Beaven was a passenger on United Airlines Flight 93 that departed from Newark Airport, destined for California and was hijacked and crashed into the field in Pennsylvania. Plaintiffs seek a judgment for economic losses from Mr. Beaven's wrongful death and pain and suffering by the estate. Pennsylvania's only connection to the 9/11 terror attacks was the fortuitous crash of UA 93 in a field near Shanksville. It is believed that the intended target by the hijackers on that aircraft was the U.S Capitol in Washington D.C.

Yvonne Kennedy was an Australian citizen domiciled in Australia with her surviving spouse and personal representative, Donald F. Kennedy, who is also an Australian citizen. Mrs. Kennedy was a passenger on American Airlines Flight 77 that departed from Dulles Airport in Virginia and was hijacked and deliberately crashed into the Pentagon in Virginia. The Kennedys have not obtained any judgment against the Taliban and seek a judgement for their economic loss, estate pain and suffering, and loss of solatium for the surviving spouse and two children. Virginia has a greater connection to the 9/11 terror attacks than Pennsylvania does since AA 77 departed from Dulles Airport in VA and was intentionally crashed into the Pentagon in Virginia.

**Procedural Background**

On March 30, 2023, the District Court granted partial final judgments against the Taliban for its role in supporting the 9/11 attacks on behalf of U.S. Nationals under the Anti-Terrorism Act. (ECF No. 8973). The Court granted those motions as to plaintiffs for whom it determined that New York state law applied – that is, the U.S. national 9/11 victims who were killed in New York state but denied without prejudice judgements for non-U.S nationals and invited Plaintiffs to re-file their motions citing state laws authorizing a cause of action and address the basis for jurisdiction, the allegations in the complaint and the scope of damages under the relevant law.

**Choice of Law**

As this Court has already recognized, federal courts apply the choice-of-law rules of the state in which they sit. *Armstead v. National RR Passenger Corp.*, 954 F. Supp. 111, 112 (S.D.N.Y. 1997) (citing *Klaxon Co. v. Stentor* Elec. *Mfg. Co.*, 313 U.S. 487 (1941)). This Court therefore must apply New York choice of law rules. New York courts apply an "interest analysis" to determine the applicable law in tort cases, aiming to apply the law of the jurisdiction with the greatest interest in the outcome. *Global Net Financial.com, Inc. v. Frank Crystal & Co.,*

449 F.3d 377, 384 (2d Cir. 2006). Before applying any test, the court must first determine if an actual conflict exists between the laws of the jurisdictions involved. *TBA Glob., LLC v. Proscenium Events LLC.,* 980 N.Y.S. 2d 459, 461 (App. Div. 2014)(quoting *Elmaliach v. Bank of China Ltd.*, 971 N.Y.S. 2d 504, 512 (App. Div. 2013)(noting that New York, as the forum, will choose its own law when the choice of law between NY and another state would not make a material difference); *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 331 (2d Cir. 2005)(demonstrating that under NY law there must be an actual conflict; the laws must provide different rules that are relevant to the issue and have a significant effect on the outcome of the trial). Accordingly, New York courts would not have occasion to embark on a choice-of-law analysis in the absence of an "actual conflict" between the applicable rules of two relevant jurisdictions. *See In re Allstate Ins. Co.,* 81 N.Y.2d 219, 597 N.Y.S.2d 904, 905, 613 N.E.2d 936 (1993). If there is no material difference, or the parties fail to identify one, New York courts typically apply New York law. See e.g. *Elmaliach* 971 N.Y.S. 2d at 512.

**Pennsylvania Law**

Pennsylvania law recognizes a cause of action for murder under its wrongful death statute (42 Pa.C.S. § 8301) and affords economic loss to not only survivors, but to the estate itself, affording the full economic value of a life. *Id.* It further provides for the loss of society and comfort to a surviving spouse and children *Slaseman v. Myers*, 309 Pa. Super. 537, 455 A.2d 1213, 1218 (1983); *Smith v. Sandals Resorts Int'l, Ltd.*, 709 F. Supp. 2d 350, 356 (E.D. Pa. 2010), aff'd, 437 F. App'x 178, 185 (3d Cir. 2011). Punitive damages, however, are not available. Harvey v. Hassinger, 315 Pa. Super. 97, 461 A.2d 814 (1983); *Walsh v. Strenz*, 63 F. Supp. 2d 548 (M.D. Pa. 1999.

Pennsylvania law also recognizes a survival action for the decedent's pain and suffering before death under 42 Pa.C.S. § 8302; *Frey v. Pa. Elec. Co.*, 607 A.2d 796 (1992); *Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015).  Pennsylvania law further provides for joint and several liability of tort feasors in cases involving an intentional tort. Pa.C.S. § 7102(3)(ii). *Bert Co. v. Turk*, 298 A.3d 44, 52 (Pa. 2023).

Pennsylvania law also recognizes a cause of action for intentional infliction of emotional distress ("IIED") caused by a defendant's outrageous conduct. *Taylor v. Albert Einstein Medical Center*, No. 33 E.D. Appeal Docket 1999, slip op. (May 17, 2000) citing the elements of the Restatement (Second) of Torts § 46(2); *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751 (Pa. Super. 2022).  The Restatement defines IIED as:

Outrageous Conduct Causing Severe Emotional Distress

 (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is  subject to liability if he intentionally  or  recklessly  causes severe emotional distress(a) to a member of such person's

immediate family who is present at the time, whether or not such distress results in bodily harm, or ….

**Virginia Law**

Va. Code Ann. § 8.01-50 recognizes an action for wrongful death and the recovery of lost income to surviving spouse and children and further recognizes the loss of society for spouse and children to recover for sorrow, mental anguish, solace, companionship, care and assistance. *Gamble v. Hill*, 208 Va. 171 (1967). Punitive damages are available but capped at $350,000. Va. Code Ann. § 8.01-38.1.

Virigina however, has a unique survival statute that maintains the decedent's legal claim available before death if the death was caused by an unrelated event. Va. Code Ann. § 8.01-25.49. If the decedent, however, sustains a personal injury before his death that later causes his death, the estate must convert the personal injury claim into a wrongful death claim only. VA Code Ann. § 8.01-56. The highjacking and threat of death and pre-impact fear that the AA 77 airline passengers experienced did not actually cause their death, and therefore arguably survives as a separate cause of action. On the other hand, these personal injuries were caused by the same common nucleus of facts and might not be cognizable as a separate claim under Virginia law. A Virginia court could then determine that the Kennedys have a claim for wrongful death but not for pre-death pain and suffering by the decedent.

Like Pennsylvania, Virginia recognizes a cause of action for IIED *Womack v. Eldridge*, 215 Va. 338 (1974); *Russo v. White*, 241 Va. 23 (1991).

In comparing New York to Pennsylvania and Virginia law, it is clear that all three states provide for a cause of action for murder and wrongful death, assault and battery and the intentional infliction of emotional distress. Thus there is no conflict for the conduct regulating aspect of the relevant torts here. All three jurisdictions provide for full damages for economic loss,[1] and emotional damages for the intentional infliction of emotional distress with no caps.[2] The only apparent material conflict here is pre-death pain and suffering under Virginia law, which does not appear to be available for the Kennedys if Virginia law were to apply.

In the event of a material conflict, New York courts typically categorize the conflicting laws into one of two groups to determine the governing rule. The first group concerns the conduct regulating rules to determine if there is a cause of action – in this case, murder-wrongful death, a survival action for pre-death pain and suffering and intentional infliction of emotional

---

[1] PA and VA wrongful death laws provide for a far larger category of non-economic loss for surviving spouses and children that includes emotional damages to survivors, when compared to NY which is more limited. The result is immaterial here since NY also provides for emotional damages under IIED that are available to immediate family members.

[2] PA does not allow for punitive damages however, and VA places a cap of $350,000 on punitive damages. Punitive damages are available in NY with no caps.

distress. (*See e.g.* March 3, 2024 Memorandum and Decision by Judge Daniels ECF No. 9666 at 7 and FN 5). For the conduct regulating analysis, under New York law the place where the last event necessary to make the defendant liable generally applies, as that state has the greatest interest in regulating behavior within its borders. *Id.*[3]

Here, the tort occurred in U.S. airspace and the two relevant crashes causing the deaths occurred in Pennsylvania and Virginia. The conduct regulating laws are applied with equal force in all three states and there is therefore no conflict under this part of the analysis and therefore New York law should apply.

The second group for a conflicts analysis addresses loss allocating rules, which include but are not limited to damage remedies and comparative fault. There is no evidence of comparative fault by victims of the 9/11 attacks and this aspect is irrelevant. The grouping for damages remedies often prioritizes a plaintiff victim's domicile laws. Under the New York *Neumeier* rules[4] where neither plaintiff nor defendant share a common domicile, and the death did not occur in either party's home state, the law of the place of the injury usually governs unless displacing it would better serve the substantive legal purposes.

Of course Mr. Beaven and Mrs. Kennedy were not killed in New York and as the Court correctly indicated, the above analysis may or may not apply to them.

In this instance, if the Court were to find there is a conflict (which Plaintiffs contend exists only with regard to a survival action for the decedent's pain and suffering before death under Virginia law), then the Court should apply the law of the place of the injury. *See Armstead v. National RR Passenger Corp.,* 954 F. Supp. 111, 112-13 (stating "if…the tort did not occur in the domicile of either party, the lex *loci delicti*— law of the situs of the tort—will normally apply, unless displacing it [with another relevant jurisdiction's law] 'will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'").

Therefore if the Court were to find an actual material conflict among the applicable state laws in New York, Pennsylvania and Virginia, then the Court should apply Pennsylvania law to the Beaven action and Virginia law to the Kennedy action. Plaintiffs contend however, in applying Pennsylvania and Virginia law, the outcome will be the same as if it applied New York

---

[3] As this Court has already found in the non-U.S. nationals' case against Iran in the Memorandum Decision and Order, June 17, 2024 (ECF No. 9931): "Since all [Plaintiffs] actions were filed in New York, New York's choice-of-law rules govern. Distilled down, those rules essentially prescribe "an evaluation of the 'place of the tort - i.e*.,* 'the jurisdiction where the "last event necessary" to make the defendant liable occurred."' (ECF No. 9666, at 7 (internal citation omitted) (quoting *In re Sept. 11th Litig.,* 494 F. Supp. 2d 232, 239 (S.D.N.Y. 2007)). For these Plaintiffs, the estates of people killed at the World Trade Center and their family members, the relevant events occurred in New York City. This Court therefore ana1yzes their wrongful death, survival, and intentional infliction of emotional distress claims under New York law. *(See id.* at 7 & n.5.). *Id.* at 3."
[4] *Neumeier v. Kuehner*, 31 N.Y. 2d 121, 335 N.Y.S.2d 64 (1972).

law for two of the three causes of action pled in the complaint (wrongful death and IIED) as those claims are available in all three states with no caps.

The only material difference among the three jurisdictions is Mrs. Kennedy's conscious pain and suffering before her death. A claim that does not survive her death and is replaced solely by her wrongful death claim under Virginia law.[5]

**Conclusion**

Plaintiffs contend that there is no apparent relevant conflict among the applicable laws of New York, Pennsylvania and Virginia for wrongful death and IIED and under New York choice-of-law rules it should therefore apply New York state damages law on wrongful death and IIED claims to the Beaven and Kennedy cases. As to the conscious pain and suffering, there is likewise no conflict between New York and Pennsylvania damages law and this Court should therefore apply New York state law on conscious pain and suffering to the Beaven claim (and award the Estate of Alan Beaven an award for conscious pain and suffering consistent with what it previously awarded to 9/11 victims who were killed in New York state). As to the Estate of Yvonne Kennedy, because she died in Virginia and because Virginia survival law may be in conflict with New York state law, this Court may be bound to apply Virginia law under New York's choice-of-law rules. If it did, then the Estate of Yvonne Kennedy would not be entitled to an award for conscious pain and suffering.

Respectfully submitted,

KREINDLER & KREINDLER LLP

/S/ Andrew J. Maloney, III
Andrew J. Maloney, III Esq.

---

[5] Mrs. Kennedy was domiciled in Australia, but even under Australian law, she could not bring a claim for pre-death pain and suffering under these facts.