UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:

                                                          03-MD-01570 (GBD)(SN)

TERRORIST ATTACKS ON SEPTEMBER 11, 2001

-------------------------------------------------------------------X

This document relates to:

> *Ashton et al. v. al Qaeda Islamic Army*, *et al.*, 02-cv-6977 (and member cases *Burlingame, et al. v. Bin Laden, et al.,* 02-cv-7230 (GBD)(SN) and *Schneider, et al. v. al Qaeda Islamic Army, et al.*, 02-cv-7209 (GBD)(SN)

## OBJECTIONS TO THE COURT'S MARCH 3, 2026
## REPORT & RECOMMENDATION (ECF NO. 11824) RE: RULE 54(b)
## CERTIFICATIONS & JUDGMENT REGISTRATIONS GRANTED TO
## "PARTIAL DEFAULT JUDGMENTS" AGAINST THE ISLAMIC REPUBLIC OF IRAN

Law Office of John F. Schutty, P.C.
Attorneys for the *Ashton-Burlingame*
and *Ashton-Schneider* Plaintiffs
445 Park Avenue, Ninth Floor
New York, New York 10022
Telephone: (646) 345-1441
john@johnschutty.com

**Table of Contents**

I.    INTRODUCTION .................................................................................................. 1

II.   STANDARD OF REVIEW ...................................................................................... 4

III.  ARGUMENT ......................................................................................................... 5

   A.  The Court Should Decline to Adopt the Report & Recommendation
       Since the R&R Fails to Offer a Clear and Unambiguous Right to Appeal .................. 5

   B.  The Awards Against Iran are "Inextricably Interrelated" under *Ginett* ........................ 6

   C.  Objecting *Ashton* Plaintiffs Have Standing Based on Impending Prejudice ................ 6

   D.  No "Just Reason for Delay" Exists; Only Just Reason for Unity ................................... 6

   E.  *Nunc Pro Tunc* Orders May Not Be Used to Deny a Right to Appeal ........................... 7

   F.  The Clerk of Court Must Be Instructed Immediately that the Partial Final
       Judgments Cannot Be Certified and Registered as Final to Another District
       Until the Clerk Can Certify that No Appeal Has Been Taken (30 Day Wait),
       Especially When an Appeal Is Expected to Challenge the Merits of the Judgments ...... 8

   G.  The PEC Has Not Made Any Evidentiary Offer of "Good Cause" for the
       Immediate Registration of Their Partial Final Judgments Through the Clerk of
       Court ........................................................................................................................ 9

   H.  The Arguments that Will Be Made on Appeal Here Have Great Merit ..................... 10

       1.  This Court Wrongfully Awarded Wrongful Death Damages to
           Non-Heirs of Decedents in Violation of State Law .......................................... 10

       2.  This Court Improperly Granted Default Judgments to Plaintiffs Who
           Failed to Satisfy the Statute of Limitations ..................................................... 12

   I.  Registration Under 28 U.S.C. § 1963 During Appeal Requires a Showing of
       Good Cause ............................................................................................................. 13

   J.  A Serious Legal Challenge on Appeal Undermines Any Claim of Good Cause .......... 14

   K.  The Partial Nature of the Judgments Further Counsels Against Registration
       at This Time ........................................................................................................... 14

   L.  Rule 62 Stay Principles Strongly Support Denial of Registration ............................. 15

IV.    THE MAGISTRATE JUDGE FAILED TO INCLUDE THE OBJECTING
       *ASHTON* PLAINTIFFS IN THE APPENDIX TO THE R&R AND THEY
       URGENTLY DEMAND INCLUSION TO OBTAIN RULE 54(b)
       CERTIFICATIONS ........................................................................................................ 17

V.     CONCLUSION .............................................................................................................. 17

## Table of Authorities

**Cases**

*Cassierer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107 (2022) ........................ 11

*Cody, Inc. v. Town of Woodbury*, 179 F.3d 52 (2d Cir. 1999) ........................................................ 8

*Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980) ............................................... 15

*Gelboim v. Bank of America Corp.*, 574 U.S. 405 (2015) ............................................................. 6

*Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1991) ....................................... 5, 6

*Juan v. Acevedo Feliciano*, 589 U.S. 57 (2020) ......................................................................... 7

*Maalouf v. Islamic Republic of Iran,* 923 F.3d 1095 (D. C. Cir. 2019) ...................................... 12

*Malek v. Feigenbaum*, 116 F.4th 118 (2d Cir. 2024) ................................................................... 8

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................... 15

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ......................................... 14

*United States v. Ferraro*, 992 F.2d 10 (2d Cir. 1993) .................................................................. 7

*United States v. Romano*, 794 F.3d 317 (2d Cir. 2015) ............................................................... 4

*Xerox Corp. v. JCTB Inc.*, No. 6:18-CV-06154-MAT, 2019 WL 6000997 (W.D.N.Y. Nov.
14, 2019) .................................................................................................................................. 15

**Statutes**

28 U.S.C. § 1605A(b) ................................................................................................................. 12

28 U.S.C. § 1605A(c) ................................................................................................................. 11

28 U.S.C. § 1606 ........................................................................................................................ 11

28 U.S.C. § 1963 .................................................................................................................. passim

28 U.S.C. § 636(b)(1) ........................................................................................................ 2, 4

42 U.S.C. § 10609(b)(2) ........................................................................................................ 5

**Rules**

Fed. R. App. 4(a)(4)(A) ........................................................................................................ 3, 8

Fed. R. Civ. P. 62(a) ........................................................................................................ passim

Fed. R. Civ. P. 62(b) ........................................................................................................ passim

Fed. R. Civ. P. 72(b)(2) ........................................................................................................ 1, 2, 17

## I.     INTRODUCTION

On March 3, 2026, Magistrate Judge Sarah Netburn issued a decision (the "R&R" or the "Report," ECF No. 11824) on the requests (MDL ECF ##11674, 11720 and11800) by the Plaintiffs' Executive Committee (PEC) that the Court: (1) issue Rule 54(b) certifications to compensatory damage awards against the Islamic Republic of Iran (Iran) to *certain* subsets of plaintiffs, but not *all* plaintiffs who have compensatory damage awards against Iran, and (2) that the Court instruct the Clerk of the Court to issue AO 451 forms ("Clerk's Certification of a Judgment to be Registered in Another District") to them immediately (without showing the "good cause" required by 28 U.S.C. § 1963). My clients have formally opposed these requests by the PEC for the reasons set forth within my prior letters (MDL ECF ##11602, 11660, 11693, 11728, 11758, 11803, 11808 and 11823).

*First Objection*: The Magistrate Judge has offered the parties "until March 5, 2026, to file written objections to this Report and Recommendation" claiming unspecified "exceptional circumstances" other than certain plaintiffs' desire to pursue asset execution on property that may or may not belong to Iran ("directly affects the Plaintiffs' prospects of attaching or executing on the Bitcoin"). R&R at 12, 17 and 18. The R&R was served at 2:46 pm on March 3. A mere two days has been offered for the service of Objections to the R&R; this is incredibly unfair and a violation of the Federal Rules.[1] In federal court, a party has 14 days to file and serve specific written objections after being served with a copy of a U.S. Magistrate Judge's Report and Recommendation (R&R). Under Federal Rule of Civil Procedure (FRCP) 72(b)(2) and 28 U.S.C.

---

[1] This is especially egregious where the PEC *never* filed a formal motion for Rule 54(b) certifications and never filed a motion requesting immediate judgment registration under 28 U.S.C. § 1963. Without formal briefing on these subjects, the Magistrate Judge acted *sua sponte* in ruling that "good cause" existed for immediate judgment registration under § 1963, despite being told an appeal would be filed by my office challenging the merits of many of these plaintiffs' claims. Judgment registrations should not have been granted *sua sponte* without submitted proof of "good cause".

§ 636(b)(1), the mandatory 14-day clock typically begins the day after you are served with the R&R.  A district court generally does not have the authority to "thwart" this statutory period by imposing a significantly shorter deadline, especially one as brief as two days.  While the within Objections are being filed in great haste, we ask the Court to consider the unacceptable deadline set for them and ask the Court's indulgence if we need to supplement this filing within 14 days of the service of the R&R.

*Second Objection*: These Fed. R. Civ. P. 72(b)(2) Objections show that the March 3 Report failed to consider a fundamental legal right following from the Rule 54(b) certifications – the right to an understandable and fixed date for filing an appeal to the grant of certain "partial default judgments" now certified as "final."  The R&R suggests that the "partial final judgments" are certified as "final" under Rule 54(b) "*nunc pro tunc* to the filing of each underlying Iran Judgment, as listed in the attached Appendix (Column E)."  R&R at 17.  The latter ruling suggests that the time for taking an appeal from any such Iran Judgment may have expired years ago.  That is an absurd and impermissible suggestion since no appeal was permitted previously on interim compensatory damage awards against Iran.   The alleged "urgency" of the need for Rule 54(b) certifications must be weighed against the need for any plaintiff to appeal the rulings giving rise to the "Partial Final Judgments," since a right to appeal cannot be deprived in this manner.  A district court cannot use a *nunc pro tunc* order to "backdate" a judgment in a way that effectively evaporates a party's statutory window to file an appeal.  While courts may use *nunc pro tunc* to correct clerical errors or reflect actions that actually occurred but weren't recorded, federal law is protective of the "jurisdictional" nature of appeal deadlines.  This needs to be corrected.

*Third Objection*: The R&R directs the Clerk of the Court [immediately] "to process the Plaintiffs' requests to certify their Iran Judgments for registration in another judicial district," when

*it is patently clear that the Clerk of the Court must first wait at least thirty (30) days to ensure that no appeal is taken from the newly certified Iran Judgments*. The AO 451 forms expressly provide the following certification by the Clerk, a certification which cannot be immediately granted by the Clerk in light of my clients' stated intention to appeal (emphasis added): "I also certify, as appears from this court's records, no motion listed in Fed. R. App. 4(a)(4)(A) is pending, *the time for appeal is expired*, and no appeal has been filed or, if one was filed, it is no longer pending." The Clerk cannot issue any such certifications unless and until the Clerk can certify that the time for appealing the Rule 54(b) certifications has expired and certainly should not be ordered to do so *sua sponte* by the Court (with no briefing or hearing).

*Fourth Objection*: The R&R totally ignores the fact that the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs intend to file an appeal with the U.S. Court of Appeals for the Second Circuit from any Rule 54(b) certification of Iran Judgments; the appeal will show that certain plaintiffs have received default judgments against Iran improperly because of this Court's misinterpretation of the Foreign Sovereign Immunities Act. We contend that those plaintiffs with very questionable default judgments should not be allowed to proceed to asset execution until their default judgments are reviewed on appeal. Here, the PEC has wholly failed to establish "good cause" for immediate judgment registration under 28 U.S.C. § 1963 because no motion and no evidentiary support has been filed with the Court. The aforementioned appeal will challenge the legal sufficiency of many of the plaintiffs' claims and will raise purely legal issues subject to *de novo* review. If the Second Circuit agrees that certain plaintiffs have failed to state a viable cause of action, the judgments must be vacated. Where the validity of the plaintiff's judgment itself is under substantial appellate challenge, good cause cannot be established. Moreover, Rule 62

principles governing stays pending appeal strongly counsel against expanding enforcement mechanisms while the underlying legal foundation of the judgment remains unsettled.

*Fifth Objection:* The Magistrate Judge failed to add the Objecting *Ashton* Plaintiffs to the Appendix attached to the R&R despite a timely February 24, 2026 request (MDL ECF ##11803, 11804 and 11805). The Objecting *Ashton* Plaintiffs are entitled to no less relief than the plaintiffs represented by the PEC, *i.e.*, the Objecting *Ashton* Plaintiffs are entitled to the broad grant of Rule 54(b) certifications of prior "Partial Final Judgments" against Iran that have been promised to the PEC clients. The R&R fails to explain why the Objecting *Ashton* Plaintiffs were left off the Appendix.

## II.    STANDARD OF REVIEW

"If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015) (quoting 28 U.S.C. § 636(b)(1)). The *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs,[2] by and through these Objections, respectfully request that the Court decline to adopt the recommendations addressed herein without certain requested modifications.

---

[2]    The undersigned law firm represents the estates of nine 9/11 decedents; a "personal representative," appointed by a state Surrogates Court, has appeared to represent each of these nine estates in this litigation, and each personal representative filed a timely wrongful death action under both state and federal law (within two years of the decedent's death) against defendant Iran (all timely and viable claims). Claims brought on behalf of the Plaintiffs described herein were part of the original *Burlingame* Complaint, styled *Burlingame, et al. v. Bin Laden, et al.*, filed on September 10, 2002, bearing civil action no. 02-cv-7230, or the *Schneider* Complaint, styled *Schneider v. al Qaeda Islamic Army, et al.*, 02-cv-7209 (GBD)(SN), also filed on September 10, 2002, bearing civil action no. 02-cv-7209. The following *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs are represented on these Objections: [*Burlingame*] Irene Dickey, Joseph Dickey Jr., Elizabeth Dickey, Joanne Kelly, Erin Kelly, Brianne Kelly, Kaitlyn Kelly, Colleen Kelly, Eileen Lynch, Anne Lynch, Kathleen Lynch, Meaghan Lynch, Lisa O'Brien, John O'Brien, Madeline O'Brien, Jaqueline O'Brien, Dara Seaman, Michaella Seaman, Mary Seaman, Edward Seaman, Susan Sliwak, Ryan Sliwak, Kyle Sliwak, Nicole Sliwak, Allison Wallice, John Wallice, Christian Wallice, and Patrick Wallice, and [*Schneider*] Nancy Dimino and Sabrina Dimino. Here, where a limited fund of money may exist in the "possession" of a defendant-in-default (Iran), and that money is sought by a multitude of plaintiffs, the

## III.    ARGUMENT

### A.  The Court Should Decline to Adopt the Report & Recommendation Since the R&R Fails to Offer a Clear and Unambiguous Right to Appeal

The PEC and the moving plaintiffs appear to be attempting to use Rule 54(b) to "escape" an appeal that would normally affect them.  This Court is obliged to focus on finality and reduce the risk of procedural gamesmanship through an alleged need for "immediate judgment registration."   In the Second Circuit, the standard for Rule 54(b) certification is stringent, emphasizing that it should only be granted in "the infrequent harsh case."  *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1991).

Under the Second Circuit's strict "finality" and "separability" requirements, certification is improper where, as here, a *subset* of plaintiffs seeks to decouple their claims from a consolidated MDL for strategic advantage.  *Ginett, supra*, at 1096.  Broadly granting the PEC's application, without recognizing an individual plaintiff's right to appeal, would permit a "rogue" judgment that binds the remaining plaintiffs to an incomplete record, violating the "historic federal policy against piecemeal appeals."  My clients submit that any Rule 54(b) certification of compensatory awards to Iran must include *all* plaintiffs *not a select few* to allow any interested plaintiff to take an appeal that will affect *all remaining plaintiffs*.  And the Order granting Rule 54(b) relief must clearly state that it allows an appeal from all the judgments then certified as "final" to provide a date certain for the taking of an appeal.  What is especially egregious is a claim that there is a need for "immediate

---

claims of various plaintiffs are adverse to one another, and their respective claims should be challenged to ensure that justice is obtained.  The docket of the court otherwise becomes a "blank-check-writing" enterprise for untested claims, rather than a court of law.  Each default judgment entered against Iran here results in new claims in the "Justice For United States Victims of State Sponsored Terrorism Act Fund" ("USVSST Fund"), 42 U.S.C. § 10609(b)(2), as modified by the "United States Victims of State Sponsored Terrorism Fund Clarification Act" (Title VII of Public law 116-69: Nov. 21, 2019) ("Clarification Act"), and those new claims and judgments dilute the recoveries of existing claimants who have filed viable and timely legal actions.

judgment registration" where questionable default judgments have been issued. The R&R ignores

that an appeal will follow that will necessarily seek a review of all the underlying Iran Judgments.

### B. The Awards Against Iran are "Inextricably Interrelated" under *Ginett*

The Second Circuit has made clear that Rule 54(b) certification is inappropriate for claims

that are "inherently inseparable" or "inextricably interrelated." *Ginett v. Computer Task Group,*

*Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1991).

- **Factual Overlap**: Because both the Moving Plaintiffs (identified on the PEC list – MDL ECF #11800 and Appendix to the R&R) and the Objecting *Ashton* Plaintiffs rely on the same nucleus of operative facts regarding the liability of Iran to the all plaintiffs herein, an immediate judgment and/or appeal by one group would require the appellate court to review the same factual record multiple times in the future and/or allow for asset execution before certain judgments are reviewed on appeal.

- **Preventing Piecemeal Review**: The Second Circuit favors reviewing such cases as "single units" to avoid inconsistent results.

### C. Objecting *Ashton* Plaintiffs Have Standing Based on Impending Prejudice

Although the Supreme Court in *Gelboim v. Bank of America Corp.*, 574 U.S. 405

(2015), clarified that individual cases in an MDL retain their identity, it did not grant parties a

license to use Rule 54(b) as a tactical shield to "escape" an appeal and the collective interests of

the MDL.

- **Standing to Oppose**: Objecting *Ashton* Plaintiffs have a concrete interest in the PEC "motions" because any judgment or appellate ruling obtained by the PEC—even if technically in "separate" cases—will create persuasive or binding precedent for the remaining MDL participants.

- **Prejudice via Wrongful Asset Execution**: If Movants (PEC) are allowed a judgment registration and the Second Circuit ultimately determines that many of them were not entitled to default judgments, the plaintiffs with viable default judgments will necessarily see potential assets of Iran depleted before appellate review of each plaintiff's merit.

### D. No "Just Reason for Delay" Exists; Only Just Reason for Unity

Rule 54(b) requires an express determination that there is "no just reason for delay."

While the Objecting Plaintiffs do not oppose Rule 54(b) certifications that will allow them to

appeal, they do oppose any judgment registration that would allow certain plaintiffs to escape

appeal.

1. **Judicial Administrative Interests**: The Second Circuit explicitly commands district courts to "take into account judicial administrative interests." Facilitating an "escape" judgment and/or appeal apart from other plaintiffs directly contradicts these interests by fracturing a unified litigation track. What the Objecting Plaintiffs request is simply that the Court recognize their appellate right now to contest the underlying rulings that give rise to the Rule 54(b) certifications.

2. **Lack of Hardship**: The PEC has identified no "harsh" circumstances or unique hardship that necessitates an immediate exit from the consolidated proceedings and judgment registrations. Their desire to insulate a judgment from a broader appeal is a strategic choice, not a legal necessity. And the PEC, while they claim that the Bitcoin assets they seek are "owned" by Iran, the U.S. Government has possession of the assets (not Iran) and the U.S. Government has thus far contested the claim that the Bitcoin are owned by Iran indicating that a long and drawn-out legal battle lies ahead.

### E. *Nunc Pro Tunc* Orders May Not Be Used to Deny a Right to Appeal

In the Second Circuit, a district court cannot use a *nunc pro tunc* order to retroactively

backdate a judgment if doing so would "defeat the jurisdiction of the appellate court" or deprive a

party of their statutory right to appeal. The Second Circuit strictly follows the principle that *nunc*

*pro tunc* orders are for clerical corrections, not for creating a legal reality that did not exist. The

Second Circuit applies the U.S. Supreme Court's holding in *Roman Catholic Archdiocese of San*

*Juan v. Acevedo Feliciano*, 589 U.S. 57 (2020), which clarified that *nunc pro tunc* orders must

"reflect the reality" of what actually occurred.

The Second Circuit has consistently held that *nunc pro tunc* orders may not be used to

affect appellate rights. In *United States v. Ferraro*, 992 F.2d 10, 12 (2d Cir. 1993), the court

explained that *nunc pro tunc* relief is appropriate only to correct the record, not to alter substantive

rights or jurisdictional consequences. Similarly, in *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52,

56–57 (2d Cir. 1999), the Second Circuit held that appellate deadlines run from proper entry of

judgment under Rule 58 and may not be manipulated by retroactive orders. The court emphasized

that jurisdictional time limits cannot be shortened by *post hoc* judicial action.  In *In re Cendant Corp. Securities Litigation*, 454 F.3d 235, 243–44 (2d Cir. 2006), the court reiterated that district courts lack authority to use *nunc pro tunc* orders to cure jurisdictional defects or retroactively affect appellate timelines.  A court cannot backdate an order to a time when it lacked jurisdiction or before it had actually made a specific ruling.  For example, the Second Circuit has ruled in cases like *Malek v. Feigenbaum*, 116 F.4th 118 (2d Cir. 2024), that federal appeal deadlines are "mandatory claims-processing rules."  By extension, district courts in this Circuit are prohibited from using *nunc pro tunc* logic to retroactively shorten the 30-day filing window mandated by Federal Rule of Appellate Procedure 4(a).

### F. The Clerk of Court Must Be Instructed Immediately that the Partial Final Judgments Cannot Be Certified and Registered as Final to Another District Until the Clerk Can Certify that No Appeal Has Been Taken (30 Day Wait), Especially When an Appeal Is Expected to Challenge the Merits of the Judgments

The Clerk of the Southern District of New York (SDNY) cannot issue a completed Form AO 451 if the time for taking an appeal has not yet expired.  Form AO 451, also known as the "Clerk's Certification of a Judgment to be Registered in Another District," contains a specific mandatory declaration that the Clerk or Deputy Clerk must sign.  By signing the form, the Clerk officially certifies that:

- No motions listed in Fed. R. App. P. 4(a)(4)(A) (such as a motion to alter or amend the judgment) are pending.

- The time for appeal has expired.

- No appeal has been filed, or if one was filed, it is no longer pending.

Under SDNY Clerk's Office procedures, a Writ of Execution requires a final judgment. Here, the SDNY Clerk lacks ministerial authority to issue a writ on an interlocutory order that remains "subject to revision at any time" under Rule 54(b) and any subsequent appeal.  The Clerk's

authority to issue Form AO 451 (Certification of Judgment for Registration in Another District) is strictly limited to judgments that are *final* and no longer subject to modification.    In *In re Chateaugay Corp.*, 922 F.2d 86 (2d Cir. 1990), the Second Circuit explicitly held that a partial judgment that is not certified under Rule 54(b) cannot be registered in another district under Section 1963 and, once an appeal is taken from a partial judgment that is certified, no AO 451 related to that partial final judgment may be issued because asset execution is stayed pending the appeal.  Fed. R. Civ. P. 62(b).

On behalf of the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs I have made clear that my office intends to file a notice of appeal within thirty (30) days of any Rule 54(b) certification order now issued by this Court to those cases described on the Appendix to the R&R. Because this is a fact that my office has made abundantly clear, the Clerk of the Court should be advised immediately that he must wait at least 30 days after the issuance of a Rule 54(b) certification to the cases referred to on the Appendix attached to the R&R to ensure no appeal is then pending.  The R&R appears to suggest that the Clerk of Court may immediately begin to issue AO 451 forms to the attorneys representing plaintiffs on the aforementioned Appendix and that would be completely improper.  This Court must make it clear for all concerned (especially the Clerk of Court) that AO 451 forms cannot be issued until the time for taking an appeal has expired.

### G. The PEC Has Not Made Any Evidentiary Offer of "Good Cause" for the Immediate Registration of Their Partial Final Judgments Through the Clerk of Court

The record is clear here – the PEC never made a proper and formal motion for Rule 54(b) certification of their "partial final judgment awards."  What they did instead was they requested judgment registrations from the Clerk of the Court without complying with the Federal Rules of Civil Procedure; the Federal Rules required the PEC first to establish that their clients'

compensatory awards were "final" under Rule 54(b).  Now, in the absence of a formal motion for Rule 54(b) certifications *and in the absence of a formal motion (with evidentiary support) for immediate judgment registration pursuant to 28 U.S.C. § 1963*, the Magistrate Judge has ruled *sua sponte* that the PEC's clients have "good cause" to register their "partial final judgments" under 28 U.S.C. § 1963 "immediately," and despite the fact that an appeal will be filed by the undersigned's clients.  To establish "good cause" under 28 U.S.C. § 1963 for registering a judgment while an appeal is pending, a judgment creditor must provide *specific evidence* demonstrating that the judgment is at risk of becoming uncollectible.  The PEC has made no such evidentiary showing here.  The promise of judgment registrations, *sua sponte*, by the Magistrate Judge was totally inappropriate.

Moreover, in the Second Circuit and the SDNY, if an appeal challenges the very legal viability of the plaintiff's claim (*i.e.*, whether a cause of action even exists), it provides a strong basis for the district court to deny a request for registration under 28 U.S.C. § 1963 or, at minimum, to stay enforcement.  My clients request that judgment registration be denied or, at a minimum, such registration be stayed pending appeal under Fed. R. Civ. P. 62(a and b).  Here, the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs have made a clear record that the issues on appeal will be purely legal and subject to *de novo* review – specifically, this Court's interpretation of the Foreign Sovereign Immunities Act and whether certain plaintiffs now seeking immediate recognition of judgments were improperly granted default judgments.  A full record of what will be appealed is set forth in a Memorandum of Law previously filed with this Court.  *See* MDL ECF#11489.

### H.  The Arguments that Will Be Made on Appeal Here Have Great Merit

#### 1.  This Court Wrongfully Awarded Wrongful Death Damages to Non-Heirs of Decedents in Violation of State Law

10

While 28 U.S.C. § 1605A(c) of the FSIA lists "solatium" as a recoverable category of damages, it does not define the class of persons eligible to recover it, nor does it override the overarching mandate of 28 U.S.C. § 1606.  Section 1606 requires that a foreign state be held liable only "in the same manner and to the same extent as a private individual under like circumstances."

In New York, New Jersey, and Connecticut, the "mirror" for a private defendant is clear: where a decedent is survived by a spouse and children, parents and siblings are barred from recovering grief-related damages as a matter of law.  By granting solatium to these non-heirs under an Intentional Infliction of Emotional Distress (IIED) theory, the district court created a "sovereign-only" liability that would be impossible to assert against a private party in the Second Circuit:

1. *Section 1606 Controls the "Extent" of Liability*: As held in *Cassierer v. Thyssen-Bornemisza Collection Foundation*, 596 U.S. 107 (2022), the FSIA does not allow federal courts to fashion "federal common law" to expand liability.  Because a private individual in New York would owe zero dollars in grief damages to a parent or sibling when a spouse and children survive, the foreign sovereign's liability must similarly be zero.

2. *State-Law Priority is Substantive, Not Procedural*: The rules prioritizing spouses and children over parents and siblings are substantive "loss-allocation" rules.  Under the Second Circuit's interest analysis, these rules must be enforced to prevent the "unwarranted" expansion of damages that § 1606 was designed to prohibit.

3. *IIED Cannot Bypass the Statutory "Pecking Order"*: This Court's reliance on the Restatement (Second) of Torts to justify these awards constitutes an unauthorized "end-run" around the forum states' legislative decisions to limit the pool of claimants in death-related litigation.

### 2. This Court Improperly Granted Default Judgments to Plaintiffs Who Failed to Satisfy the Statute of Limitations

This Court's entry of default judgments in favor of plaintiffs who filed their actions long after the 10-year FSIA statute of limitations was an error of law that ignored the express gatekeeping requirements of Section 1608(e). Under the FSIA, "[n]o judgment by default … may be entered against a foreign state … unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." This statutory command creates an affirmative obligation for the court to ensure the legal viability of a claim, even in the absence of the defendant.

Many of the MDL plaintiffs cannot establish a "right to relief" because their claims were filed more than 10 years after the underlying incident on September 11, 2001. These filings, occurring after September 11, 2011, sit many years (and sometimes decades) outside the mandatory ten-year limitations period provided in 28 U.S.C. § 1605A(b).[3] While the D.C. Circuit in *Maalouf v. Islamic Republic of Iran,* 923 F.3d 1095 (D. C. Cir. 2019) held that a court cannot *sua sponte* dismiss a case against a foreign state on non-jurisdictional timeliness grounds, *that holding does not authorize a court to affirmatively grant a final judgment on a claim that is legally dead on its face.* Because the time-bar was patently obvious and precluded any right to relief as a matter of law, this Court was prohibited by Section 1608(e) from entering thousands of the default judgments against Iran below.

---

[3]    Allowing plaintiffs filing so late for default judgments (as late as 2025) to have immediate access to asset execution without appellate review is simply plain wrong and unjust. The Objecting Plaintiffs all filed their Complaints in 2002 and have been unable to obtain final judgments against Iran. Approving of the R&R and the judgment registrations will unfairly allow the untimely plaintiffs to "escape" appeal. I implore the Court to examine the last column of the Appendix to the R&R which lists the Civil Action numbers of the Complaints filed by those plaintiffs. The Court will note the overwhelming number of plaintiffs filed legal actions against Iran long after the FSIA's 10-year statute of limitation. If this Court has been wrong in granting these plaintiffs default judgments, as the Objecting Plaintiff's will contend on appeal, the Second Circuit may require that all default judgments issued to these untimely plaintiffs must be vacated. Under these circumstances and under Rule 62 (a and b), is it fair to allow these particular plaintiffs to pursue judgment registrations (and asset execution) when their judgments are so tenuous?

Thus, the PEC has asked here to register partial final judgments pursuant to 28 U.S.C. § 1963 during the anticipated pendency of a substantial merits appeal before the United States Court of Appeals for the Second Circuit.  The appeal will challenge the legal sufficiency of many of the Plaintiffs' claims and will raise purely legal issues subject to *de novo* review.  If the Second Circuit agrees that certain plaintiffs have failed to state a viable cause of action, the judgments must be vacated.  Where the validity of the plaintiff's judgment itself is under substantial appellate challenge, "good cause" cannot be established.  Moreover, Rule 62 principles governing stays pending appeal strongly counsel against expanding enforcement mechanisms while the underlying legal foundation of the judgments remains unsettled.

## I.  Registration Under 28 U.S.C. § 1963 During Appeal Requires a Showing of Good Cause

Registration under § 1963 is an "extraordinary remedy" when an appeal is or will be pending.  The plaintiff seeking registration bears the heavy burden of showing "good cause," which the Second Circuit generally interprets as a requirement to show a significant risk of asset dissipation.  No such showing has been made here.  Section 1963 does not, create an automatic right to nationwide enforcement during appeal; rather, it vests discretion in the district court.  Courts within the Second Circuit require a concrete showing of necessity—such as a serious risk of asset dissipation—before permitting registration pending appeal.  Absent such circumstances, expansion of enforcement authority is unwarranted.  Here, the Bitcoin assets in question are in the possession of the U.S. Government, so there is little chance that they will be dissipated by Iran.[4]

---

[4]    Since the Bitcoin assets are already in U.S. Government custody, the status quo is already secured, rendering immediate execution or judgment registration unnecessary.  The primary purpose of Rule 62 – ensuring the judgment creditor can eventually collect – is satisfied because the Bitcoin assets are already "frozen" and in the possession of the U.S. Government.  Unlike a standard debtor, who might dissipate funds, assets in a civil forfeiture action in another district are under strict federal control, providing the judgment creditor with a *de facto* guarantee that the "res" (Bitcoin) will not disappear during the appeal. Allowing judgment registration under 28 U.S.C. § 1963 or execution while an appeal is pending would

And the appeal addressed above has such merit and the threat of wrongful asset dissipation to plaintiffs not entitled to such relief is so real, that these factors substantially outweigh the risk of asset dissipation considered *sua sponte* by the Magistrate Judge. The "good cause" requirement is an equitable balancing test. While the primary factor is the location of assets, the court must also consider the merits of the appeal and the risk of asset execution by plaintiffs whose claims may ultimately be determined to have no merit.

### J.   A Serious Legal Challenge on Appeal Undermines Any Claim of Good Cause

If the Court of Appeals determines that certain default judgments fail as a matter of law, vacatur is required. The Supreme Court has repeatedly emphasized that federal courts must ensure that jurisdiction and legal sufficiency exist before enforcing judgments. As the Court explained in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), jurisdiction 'is a threshold matter' and cannot be presumed. Permitting registration in multiple districts while the existence of a viable claim is under direct appellate review would risk unnecessary satellite litigation and potential restitution complications if the judgment is reversed.

### K.  The Partial Nature of the Judgments Further Counsels Against Registration at This Time

Because the judgments will be entered pursuant to Rule 54(b), their certification and finality are themselves reviewable. The Supreme Court in *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980), cautioned that Rule 54(b) certification should not be routine and must preserve the historic federal policy against piecemeal appeals. If the Second Circuit determines certification was improvidently granted, appellate jurisdiction may be lacking, or the

---

cause irreparable harm by creating a "race to the courthouse" or conflicting claims between the civil judgment and the civil forfeiture.

judgments may be vacated. Registration before appellate resolution would multiply proceedings unnecessarily.

### L.   Rule 62 Stay Principles Strongly Support Denial of Registration

Federal Rule of Civil Procedure 62 reflects the principle that enforcement should ordinarily pause during appellate review. Under Rule 62(a), an automatic, mandatory, self-executing stay of execution is imposed on the enforcement of a judgment that begins immediately upon its entry. This pause or gap period allows for an appeal and/or a further stay. The Second Circuit applies the traditional four-factor test for stays under Rule 62(b) pending appeal: (1) likelihood of success on the merits; (2) irreparable injury absent a stay; (3) substantial injury to the opposing party; and (4) the public interest. *See, e.g.*, *In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007) (articulating the four-factor test and emphasizing the court's equitable discretion). Plaintiffs herein assert that they meet the criteria in the four-part test governing Rule 62(b) motions to stay injunctive or equitable relief pending an appeal, which considers the likelihood of success on appeal, injury to the movant, injury to the non-moving party, and the public interest. *Nken v. Holder*, 556 U.S. 418, 533 (2009); *see also Xerox Corp. v. JCTB Inc.*, No. 6:18-CV-06154-MAT, 2019 WL 6000997, at *3 (W.D.N.Y. Nov. 14, 2019) (in determining "good cause," a district court may consider the likelihood of success on appeal and if the defendant shows the appeal raises a "substantial question" regarding the legal sufficiency of the claim, the court may deny the registration request to prevent the "chaos" of enforcing a legally flawed judgment). While § 1963 does not explicitly require a "likelihood of success on the merits," judges use their equitable discretion to ensure registration doesn't cause irreparable harm for a judgment that is likely to be reversed.

Where serious legal questions are presented like here, the Second Circuit recognizes that a stay may be appropriate even absent a showing of probable success, provided the balance of hardships tips decidedly in the movant's favor. Registration under § 1963 is functionally an expansion of enforcement authority. If a stay would be appropriate under Rule 62 principles, it follows that registration—an even broader enforcement mechanism—should likewise be denied. Allowing nationwide registration while serious merits issues are pending would undermine Rule 62's purpose and impose significant hardship if the judgment is later vacated. Because the anticipated appeal presents substantial legal questions that, if resolved in the Objecting Plaintiffs' favor, will require vacatur of certain partial judgments, the plaintiffs seeking judgment registration cannot demonstrate good cause for registration under 28 U.S.C. § 1963. Rule 62 principles further counsel against expanding enforcement authority during the pendency of appellate review. The Court should deny Plaintiff's request for judgment registration until the appeal of the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs is resolved.

Because the "partial final judgments" will likely be entered by this Court pursuant to Rule 54(b), their certification and finality are themselves subject to appellate review. If the Second Circuit determines that certification was improper or that many of the underlying claims fail as a matter of law, the judgments will be vacated. Thus, judgment registration prior to resolution of these issues on appeal would multiply proceedings unnecessarily. The decision within the R&R to allow for judgment registration should be rescinded under Rule 62(a) and the Clerk of the Court should be advised that the issuance of AO 451 forms is stayed pursuant to Rule 62(b) until the Second Circuit rules on the validity of the Iran Judgments.

## IV. THE MAGISTRATE JUDGE FAILED TO INCLUDE THE OBJECTING *ASHTON* PLAINTIFFS IN THE APPENDIX TO THE R&R AND THEY URGENTLY DEMAND INCLUSION TO OBTAIN RULE 54(b) CERTIFICATIONS

Despite the explicit request (MDL ECF ##11803, 11804 and 11805) on February 24, 2026 of the Objecting *Ashton* Plaintiffs identified in footnote 2 – to be added to any list of compensatory damage awards being granted Rule 54(b) certifications – the Magistrate Judge failed to include these Objecting Plaintiffs within the Appendix to the R&R.  We do not understand why.

We urgently request of Your Honor that these Plaintiffs be added immediately to the Appendix to the R&R with the information provided with the February 24 application.  As we have argued above, these Objecting Plaintiffs are entitled to no less relief than any other plaintiffs listed in the Appendix (for Rule 54(b) certification) and these Plaintiffs wish to participate in obtaining "Partial Final Judgments" certified as "final" by the Court.

## V. CONCLUSION

Rule 54(b) is an exception, not a rule.  Because the PEC's claims are inextricably linked to those of the remaining plaintiffs, and because an early judgment registration will severely prejudice the Objecting Plaintiffs' appellate rights, for the reasons set forth above, and pursuant to Fed. R. Civ. P. 72(b)(2) and 62(a and b), the *Ashton-Burlingame* and *Ashton-Schneider* Plaintiffs respectfully request that the Court decline to adopt the R&R (MDL ECF#11824) and issue a new Order that: (1) makes clear that any Rule 54(b) Order certifying Iran Judgments as final is appealable as of the date of service of that particular Order, (2) that if such an Order is issued, that the Clerk of the Court is not authorized to issue AO 451 forms until thirty (30) days after the service of such Order to ensure that no appeal has been filed under Rule 62(a), and (3) denies and stays the requested registration of any partial final judgments under 28 U.S.C. § 1963 under Rule

62(b) if an appeal is filed challenging the viability of certain claims asserted against Iran which

may lead to their dismissal.

Dated:  New York, New York
       March 5, 2026

                          Respectfully submitted,

                          By: *John F. Schutty*

                              John F. Schutty, Esq.
                                (JS2173)
                          Law Office of John F. Schutty, P.C.
                          Attorneys for the *Ashton-Burlingame*
                          and *Ashton-Schneider* Plaintiffs
                          445 Park Avenue, Ninth Floor
                          New York, New York 10022
                          Telephone: (646) 345-1441
                          john@johnschutty.com

## **CERTIFICATE OF COMPLIANCE**

While I acknowledge the type-volume limitation of Local Rule 72.1 (a word count of 3,500 words), I am mindful also Judge George B. Daniels' "Individual Rules," which provide:

- Memoranda of Law (Objections/Oppositions): Limited to 25 pages unless the Court grants prior permission for a longer filing.

- Reply Memoranda: Limited to 10 pages**.**

- Mandatory Tables: Any memorandum of 10 pages or more must include both **a** Table of Contents and a Table of Authorities**.**

Dated: March 5, 2026

By:   *John F. Schutty*

John F. Schutty
*Counsel for Plaintiffs-Appellants*